## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| ERIC DE FORD, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 6:22-cv-00652-PGB-DCI ) |
| JAMES KOUTOULAS, JEFFREY CARTER, ERIK NORDEN, ALEX MASCIOLI, ISLAND LIQUIDITY, LLC, BRANDON BROWN, BRANDONBILT MOTORSPORTS, LLC, NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, CANDACE OWENS, DAVID J. HARRIS, JR., AUSTEN FLETCHER a/k/a FLECCAS, BRENDON LESLIE, CORPORATE DEFENDANT DOE, JOHN DOES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## DEFENDANT'S MOTION TO DISMISS PURSUANT TO 12(b)(6) AND MEMORANDUM OF LAW

Defendant, James Koutoulas ("Mr. Koutoulas"), by and through his undersigned counsel, files this Memorandum of Law in Support of his Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and respectfully states as follows:

## INTRODUCTION

## BACKGROUND

1

As of the filing of this Motion, Plaintiff has not served a single defendant—including Mr. Koutoulas. Mr. Koutoulas previously requested Plaintiff voluntarily dismiss the Complaint on April 6, 2022, but neither Plaintiff nor his attorney responded—not even to ask Mr. Koutoulas to waive service. Mr. Koutoulas cannot sit idly by while Plaintiff causes Mr. Koutoulas millions of dollars of reputational damage by having filed a malicious and frivolous suit that is doing continuous damage to him and his businesses by existing as an open matter while not attempting to advance it in the most minimal of ways.[1]

Even though the Complaint is 79 pages, it contains very little by way of facts, and what is left out is telling. The "Let's Go Brandon" phrase stems from a reporter's misunderstanding of chanting against Joe Biden that occurred while she was interviewing Brandon Brown following his Talladega Speedway win on October 2, 2021. Compl. ¶ 29. After Mr. Koutoulas' "Let's Go Brandon" themed Halloween costume, some of his friends decided to mint the coin to advocate for free speech, patriotism, and charity. *Id*. ¶¶ 28; 30. Mr. Koutoulas was gifted one trillion LGBcoins. Compl. ¶ 31. LGBcoin was minted as a decentralized meme coin on the

---

[1] Mr. Koutoulas is the CEO of an SEC and CFTC registered hedge fund and mutual fund sub-advisor. He is also a securities lawyer with an accomplished career in investor protection litigation, most notably leading the recovery of all $6.7 billion in customer assets frozen in the MF Global bankruptcy, which he did entirely *pro bono*. *See* Jeffrey Carter, *Congratulations to An Unsung American Hero*, Points & Figures, Nov. 1, 2021, *available at* https://jeffreycarter.substack.com/p/congratulations-to-an-unsung-american?s=r (last visited May 12, 2022).

Ethereum Blockchain with the goal of inspiring positivity and patriotism and has no intrinsic value. LET'S GO BRANDON, LETSGOBRANDON.COM (last visited May 2, 2022). The LGBcoin went viral and generated millions of mentions through traditional and social media. *See, e.g.,* Compl. at p. 14-59 (citing articles, social media posts, and other posts in the public domain mentioning LGBcoin).

On December 30, 2021, Brown announced LGBcoin as his full season primary sponsor partner for 2022. Compl. ¶ 51. After the NASCAR sponsorship announcement, LGBcoin reached a market value of approximately $570 million. NASCAR approved the sponsorship. *Id.* at ¶ 59. Subsequently, NASCAR revoked its approval. *Id.* at ¶ 96. After its revocation, the price of LGBcoin fell substantially. *Id.* at ¶ 96.  On January 28, 2022, LGBcoin's trading value was effectively $0. Compl. ¶ 105. Also on January 28, 2022, it was announced that LGBcoin would re-mint and relaunch via an Airdrop. *Id.* at ¶ 109. Despite the $0 price and announcement of a re-mint, Plaintiff purchased his LGBcoin on January 28, 2022. A true and correct copy of Plaintiff's emails to LGBcoin are attached as Group Exhibit A, at p. 3. Plaintiff flaunted his support for the "Let's Go Brandon" movement and Mr. Koutoulas, and even offered his expertise in multimedia and advertising. *Id.* at p. 1-2. On February 24, 2022, LGBcoin was relaunched as

$LETSGO.[2] Compl. ¶¶ 112-114.  On February 25, 2022, well after the alleged misconduct and just after the relaunch, Plaintiff described his appreciation for the LGBcoin and political movement:

> I've been in crypto for *seven years* now and really am impressed with James' approach to fight back against cancel culture, political initiatives to help veterans and help bring our Conservative party into the 21st century. With the current political climate across the country and beyond our borders I feel James Koutoulas would be a great topic on The Dana Show. His initiative creating a *real functional crypto token*, LETSGO (Lets Go Brandon) has driving purpose to actually help redirect our misguided nation.

Ex. A at 2. (Emphasis added).

Importantly, in January 2022, Ethereum entered a strong bear market. As LGBcoin's primary trading pair is Ethereum, 50% of its value is based on Ethereum's price. Ethereum itself has decreased in price from $3,722 on January 1, 2022, to $1,891, as of the date of this Memorandum. A true and correct copy of Coinmarketcap.com's Chart showing Ethereum's price from January 1, 2022, through May 12, 2022 is attached as Exhibit B. LGBcoin's value decreased with it. *See id.*

As adduced by Plaintiff in his own words, there was no fraud or scheme; rather, LGBcoin is a meme coin representing certain political ideals and Plaintiff's Complaint is utterly frivolous. In the more than 30 days since the Complaint was filed and summons issued, Plaintiff has taken no action to serve any Defendants,

---

[2] For ease of reference, Plaintiff shall refer to the LGBcoin and relaunched $LETSGO as "LGBcoin."

including Mr. Koutoulas. On April 6, 2022, Mr. Koutoulas' attorney sent a letter to Plaintiff's attorney requesting voluntary dismissal.[3] Plaintiff's attorneys never responded—not even to ask Mr. Koutoulas to waive service.

## LEGAL ARGUMENT

### I.    Standard of Review.

Plaintiff's Complaint must be dismissed because it is a shotgun pleading in violation of Rule 8 and because it fails to state a claim for which relief can be granted under Rule 12(b)(6). First, Rule 8 of the Federal Rules of Civil Procedure requires a short and plain statement that shows the pleader is entitled to relief. Fed. R. Civ. Pro 8(a)(2); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018). Shotgun pleadings violate Rule 8. *Id.* Shotgun pleadings "fail[ ] to one degree or another to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (internal quotations and citations omitted). The Eleventh Circuit has little tolerance for shotgun pleadings. *Id.* "A district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits which includes the ability to dismiss a complaint on shotgun pleading grounds. *Id.* (internal quotations and citations omitted); *see also Vujin v. Galbut*, 836 Fed. Appx. 809, 814-15 (11th Cir. 2020) (identifying four types of shotgun

---

[3] In an effort to reduce time and expense, Defendant's counsel provided copies of these emails to Plaintiff's counsel with the letter requesting an immediate dismissal. Plaintiff has not responded.

pleadings, including "multiple counts where each count adopts the allegations of all preceding counts causing each successive count to carry all that came before and the last count to be a combination of the entire complaint" and "complaints that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants claim is brought against") (internal quotations and citations omitted). Plaintiff's Complaint is the epitome of a shotgun pleading and should be dismissed outright.

Second, Plaintiff's Complaint also fails under Rule 12(b)(6). In ruling on a 12(b)(6) motion to dismiss, the Court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the non-moving party. *See, e.g., Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Sewell v. D'Alessandro & Woodyard, Inc.*, No. 2:07-cv-343-FTM-29SPC, 2008 WL 4459260, at *4 (M.D. Fla. Sept. 29, 2008). "On the other hand, conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts are insufficient to prevent dismissal." Indeed, "[a]lthough the threshold is exceedingly low for a complaint to survive a motion to dismiss for failure to state a claim, a court may nonetheless dismiss a complaint on a dispositive issue of law." *Day*, 400 F.3d 1272 at 1276. While the Court must limit its consideration to well-pleaded facts and documents central to those referenced in the complaint, matters judicially noticed may also be considered. *Id.* "A court may consider a document attached to a motion

to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day*, 400 F.3d 1272 at 1276; *see also Sewell*, 2008 WL 4459260, at *4 ("The Court may consider documents that are central to the plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment.") Here, Defendant attaches undisputed email communications to the Complaint from Plaintiff to various members of the LGBcoin community. *See* Group Ex. A. These emails further support a swift disposition of this inappropriate lawsuit.[4]

Finally, while Plaintiff does not title any of his causes of action as "fraud," the allegations in the Complaint ring of fraud. *See, e.g.,* Compl. at ¶¶ 2 ("scheme among various individuals" and "made false or misleading statements . . . disguised their control over the Company"); 3 ("In furtherance of this scheme"); 36 ("To entice investors . . ."); 13 ("The Pump- Executive, Racing, and Promotor Defendants Shill the LGB Tokens"); 50 ("The re-Pump and Dump"). Accordingly, Plaintiff must meet the heightened pleading standard of Rule 9(b). *See* Fed. R. Civ. Pro. 9(b). "[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* The Eleventh Circuit has explained that Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise

---

[4]

misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Plaintiff's shotgun pleading does not even satisfy Rule 8, let alone Rule 9(b), providing an additional basis for dismissal.

## II.   Plaintiff's Complaint is a Shotgun Pleading that should be dismissed with prejudice.

As a threshold matter, Plaintiff's complaint is devoid of the actual role any Defendant played under any cause of action. Rather, in sweeping fashion, Plaintiff spends 79 pages listing out various "facts" then merely recites the elements of each cause of action and blanketly attributes those elements to all Defendants. This is a typical shotgun pleading for which the Eleventh Circuit has little tolerance. *See Vibe Micro*, 878 F.3d 1291 at 1294; *Vujin*, 836 Fed. Appx. 809, 815 (affirming amended complaint was a shotgun pleading "replete with conclusory, vague, and immaterial facts obviously not connected to any particular cause of action."). That is, "it fail[s] to provide even minimal notice to the individual Defendants as to what conduct they are alleged to have participated in." *See Vibe* Micro, 878 F.3d 1291 at 1294 (citing *Vibe Micro, Inc. v. Shabanets*, No. 15-cv-80999, 2015 WL 11438937, at *4) (S.D. Fla. Dec. 4, 2015)). In *Vibe Micro*, plaintiff filed a 56-page amended complaint with 168 pages of exhibits for breach of fiduciary duty, civil conspiracy, and RICO, alleging he was the victim of a scheme to force him off the board of a bill payment

company. *See Vibe Micro*, 878 F.3d 1291 at 1293-94. The District Court in *Micro Vibe* observed:

> The Amended Complaint is a mostly incoherent document that violates Rule 8's requirement for a short and plain statement of the claim. The allegations are duplicative, the Plaintiffs' labels and numbering are inconsistent, and most of its contentions are wholly conclusory. Many of its paragraphs span multiple pages. Allegations are oftentimes not connected to a particular Defendant or set of Defendants, making it impossible to understand who did what. For this reason alone, this Motion to Dismiss the Amended Complaint are granted.

*Vibe Micro*, 2015 WL 11438937, at *4 (internal quotations and citations omitted). Here, like *Micro Vibe*, the Plaintiff has filed a massive 79-page Complaint replete with allegations that are not directly connected to any particular Defendant or third-party or the actual causes of action pleaded. *See id.*; *Micro Vibe*, 878 F.3d 1291 at 1296 (affirming dismissal with prejudice). Indeed, Mr. Koutoulas (and all other Defendants) is at a disadvantage in attempting to sift through the 79 pages and bring forth a readily discernible Motion to Dismiss.

For example, under Count I, Plaintiff alleges, "By soliciting investor funds in the manner in which they did, Defendants engaged in 'trade and commerce' within the meaning of Fla. Stat. § 501.203(8)." Compl. at ¶ 150. This is a legal conclusion that fails to identify the Defendants or the acts they engaged in. *See Vibe Micro*, 2015 WL 11438937, at *4. To the extent Plaintiff will argue he has incorporated by reference prior allegations or counts, the Eleventh Circuit has struck this down as typical shotgun pleading that is insufficient to save a claim, let alone survive a

motion to dismiss. *See Vujin*, 836 Fed. Appx. 809 at 814-15 ("[W]e have identified four rough types of shotgun pleadings. First: complaints that contain "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."). This is exactly what Plaintiff has done. *See* Compl. at ¶¶ 146; 161; 169; 173; 184; 189 ("Plaintiff restates and realleges all preceding allegations above as if fully stated herein."). The same can be said of the remaining paragraphs of this Count. *See, e.g.,* Compl. at ¶ 153 ("Defendants' acts and omissions constitute both deceptive and unfair trade practices . . ."). Even where Plaintiff attempts to identify various Defendants, it is limited to grouping those Defendants. *See, e.g.,* Compl. at ¶¶ 163-165 ("The Executive Defendants" or "The Promotor Defendants" or "all Defendants"). Similarly, in Count II, Plaintiff concludes, "Defendant received a financial benefit from the sale of their LGB Tokens at inflated prices and are in possession of this monetary value that was intended to be used for that benefit of, and rightfully belongs to, Plaintiff and members of the class." Compl. at ¶ 170. This is a legal conclusion that fails to identify any actual Defendant. *See Vibe Micro*, 2015 WL 11438937, at *4. For brevity, Mr. Koutoulas will not go through each Count, but the remaining Counts fair no better. Accordingly, and on this basis alone, the Motion to Dismiss should be granted.

**III.    Plaintiff purchased the Meme Coin *after* all of the purported misconduct alleged in the Complaint.**

A glaring omission that effects each Count in the Complaint is Plaintiff's failure to plead any allegations related to his actual purchase of LGBcoin. Nowhere does Plaintiff allege when he purchased his LGBcoin, how he purchased it (e.g., through which exchange or wallet, etc.), when he purchased it, or how much he spent on the purchase. While glaring, it is not an innocent omission. Rather, Plaintiff intentionally conceals this information because it would undermine his claims. According to Plaintiff's own email, he purchased LGBcoin on January 28, 2022, well *after* any alleged misstatements, acts or omissions of any Defendants. *See* Ex. A. By the time of his purchase, all of the wrongful information he purports to have relied upon for his claims was public and LGBcoin had already plummeted in value. *See* Compl. at ¶105. This was nearly a month after the revocation of the NASCAR sponsorship. *See id.* at ¶ 95-96; *see also* n. 46 (citing to January 4, 2022, Washington Post article titled "NASCAR Rejects Sponsorship Deal Based on 'Let's Go Brandon' Chant"). Plaintiff's purchase of the coin occurred on the same day he alleges the coin had a "trading value of $0" and "significantly less than its initial capital." *See* Compl. at ¶ 105. Thus, Plaintiff's Complaint fails as a matter of law because he does not plead any fact related to his actual purchase of LGBcoin, and, any such purchase, was with full knowledge of the very public information regarding the coin—as detailed in his Complaint.

**IV.    Plaintiff has failed to allege any damages.**

Similar to his failure to plead any facts regarding his purchase of LGBcoin, Plaintiff has not quantified his purchase or his purported loss therefrom. Plaintiff does not allege a single fact as to the cash or coin value of his purchase and, not surprisingly, does not allege the value of his loss (if he actually has any loss). *See, e.g., Stewart Agency, Inc. v. Arrigo Enter., Inc.*, 266 So. 3d 207, 212 (Fla. Ct. App. 2019) (holding a FDUTPA claim requires plaintiff "establish three elements: 1) a deceptive or unfair practice; 2) causation; and 3) *actual damages*.") (emphasis added). As further detailed below under each Count, damages are an essential element of each cause of action and his failure to allege any loss outside of conclusory allegations is insufficient as a matter of law.

**V.    Plaintiff has failed to plead a cause of action for Violation of Florida's Deceptive and Unfair Trade Practices Act.**

Plaintiff has failed to state a cause of action for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). To state a cause of action under the FDUTPA, a plaintiff must establish: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Stewart Agency*, 266 So. 3d 207 at 212. The Florida Supreme Court has defined an unfair practice as:

> One that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Additionally, it has defined deception as a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.

*Id.* (internal quotations and citations omitted). Here, there is no factual allegation that any Defendant committed an unfair or deceptive trade practice against Plaintiff that injured Plaintiff. *See id.* First, Plaintiff does not actually identify any unfair or deceptive act linked to a specific Defendant that caused Plaintiff actual damages. Plaintiff spends dozens of pages copying and pasting social media posts or photographs; yet, fails to connect a single one of those to Plaintiff's purported purchase. *See id.* Conclusory allegations are insufficient. *See Day*, 400 F.3d 1272 at 1276.

Second, according to Plaintiff, he purchased the LGBcoin *after* all of the purported misconduct pleaded which was publicly known, and he fails to allege any subsequent purchase in reliance on any actions after January 28, 2022. *See generally* Compl. Moreover, as noted on Let's Go Brandon's website, "Lets Go Brandon *has no intrinsic value and you should not purchase it with any expectation that you will be able to resell it.* Please do not spend money that you cannot afford." LET'S GO BRANDON, LETSGOBRANDON.COM (last visited May 2, 2022).[5] Thus, even assuming Plaintiff relied upon some misleading representation (which he did not), LGBcoin (and its successor) warns purchasers that there is no intrinsic value and should not be purchased with the expectation of resale. *See id.*; *see also Stewart Agency*, 266

---

[5] This information has been on LGBcoin's website since its inception.

So. 3d 207 at 212 (holding defendant disclosed defective airbag to every purchaser prior to purchase meaning there was no unfair or deceptive act). Third, as detailed above, Plaintiff fails to plead any damages whatsoever. Accordingly, Count I must be dismissed.

## VI.  Plaintiff has failed to plead a cause of action for Aiding and Abetting.

Plaintiff's second cause of action fails to plead a single factual allegation that supports any element of aiding and abetting. To state a cause of action for aiding and abetting, the Plaintiff must allege: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *See Perlman v. Wells Fargo Bank, N.A.*, 559 Fed. Appx. 988, 993 (11th Cir. 2014). First, Plaintiff does not even identify the actual underlying violation or wrongdoing. Instead, like much of the Complaint, Plaintiff vaguely concludes that various Defendants (not clearly identified) engaged in marketing or promotional activities that violated various Florida or federal statutes described in the Complaint. *See* Compl. ¶¶ 163-164. That is, Plaintiff does not identify the primary wrongdoing Defendant or the underlying violation committed by that primary wrongdoer. *See Fagan v. Central Bank of Cyprus*, No. 19-80239-CIV, 2021 WL 2845034, at *7 (S.D. Fla. June 28, 2021) (Slip Copy) (holding plaintiff's aiding and abetting claim failed because it was "not entirely clear what

underlying 'violation' Plaintiff alleges Defendants were aiding and abetting."). The closest Plaintiff comes to identifying a violation is citing "violations of Florida state consumer protection statutes alleged herein." Compl. at ¶ 167. As detailed above, Plaintiff has failed to state a cause of action for violation of the FDUTPA, and, therefore, it cannot serve as the predicate violation for a claim of aiding and abetting. Similarly, Plaintiff has not pleaded a cause of action for any other violation of Florida or federal law meaning there is no predicate wrongdoing alleged. *See Fagan*, 2021 WL 2845034, at *7.

Second, Plaintiff has not alleged actual knowledge by any of the Defendants of the other Defendants' underlying, yet unidentified, violation(s). *See id.* "Significantly, the second element– knowledge—will only be satisfied if the plaintiff pleads facts demonstrating that the secondary wrongdoer had ***actual knowledge*** of the wrongdoings." *Angell v. Allergan Sales, LLC*, No. 3:18-cv-282-J-34JBT, 3:18-CV-283-J-34JBT, 2019 WL 3958262, at *8 (M.D. Fla. Aug. 22, 2019) (emphasis added). Thus, Plaintiff must not only allege the actual violation of the wrongdoer, but evidence establishing the actual knowledge of each alleged aider and abettor of each underlying wrong committed. *See id.* Red flags and even reckless conduct are insufficient as a matter of law to establish actual knowledge. *See id.* Here, Plaintiff has not identified the alleged wrongdoing, let alone actual knowledge by an actual, identified Defendant. Rather, in conclusory fashion, Plaintiff attempts

to impute knowledge or allege a general awareness onto all Defendants. *See* Compl. at ¶¶ 162-167. These conclusory and general allegations are insufficient as a matter of law. *See Angell*, 2019 WL 3958262at *10 ("Plaintiffs do allege throughout the [Complaint] that Allergan knew Claymans were lying to their patients, but these general allegations of knowledge are insufficient.") (internal quotations and citations omitted). Moreover, since Plaintiff's Complaint reeks of fraud allegations, the allegations must be even more detailed to meet Rule 9(b), which they do not. *See, e.g., Brooks,* 116 F.3d 1364 at 1371.

Third, like the other elements, Plaintiff has failed to identify any actual acts by a Defendant that could be plausibly viewed as rendering substantial assistance in committing the unidentified violation of law. *See ZP No. 54 Ltd. Partnership v. FDIC of MD*, 917 So. 2d 368, 371 (Fla. Ct. App. 2005) (holding plaintiff failed to allege substantial assistance in the commission of fraud). Here, Plaintiff merely concludes that, without the misleading marketing strategy devised by certain Defendants, other Defendants would not have been able to commit violations of Florida law. Compl. at ¶ 167. This is wholly deficient. *See ZP No. 54 Ltd. Partnership*, 917 So. 2d 368 at 371. Finally, as detailed above, Plaintiff has also failed to allege actual damages. Accordingly, Count II should be dismissed as a matter of law.

## VII.   Plaintiff has failed to plead a cause of action for Unjust Enrichment or Restitution.

Count III fairs no better. To state a cause of action for unjust enrichment, a plaintiff must show: "(1) plaintiff has conferred benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. Ct. App. 1996). Importantly, "the benefit must be conferred ***directly*** from plaintiff to the defendant." *See Fagen*, 2021 WL 2845034, at *15 (citing *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (denying receiver's claim for unjust enrichment where transfers—a monetary benefit—could not be traced to defendant's accounts). Here, Plaintiff does not and cannot allege a benefit directly conferred upon a specific Defendant by Plaintiff. *See Peoples Nat'l Bank*, 667 So. 2d 876 at 879. Here, like in *Peoples National Bank*, any purported monetary benefit conferred upon any Defendant would not have been directly conferred as there was no direct exchange of funds by Plaintiff onto any Defendant. *See id.* In *Peoples National Bank*, the plaintiff sought recovery of overpayments by an insolvent bank to other lenders prior to its insolvency. *Id.* at 878. There, the Court held plaintiff did not and could not allege unjust enrichment because plaintiff never directly conferred the monetary benefit onto the defendants. *Id.* at 879. Similarly, here, Plaintiff did not purchase LGBcoin directly through any of the Defendants, but

"purchased through U.S.-based cryptocurrency exchanges Coinbase and Uniswap." *See id.*; *see also* Compl. at 6. Moreover, Plaintiff does not actually accuse any specific Defendant of directly obtaining the monetary benefit he purportedly conferred. Thus, at no time was a monetary benefit directly conferred by Plaintiff onto a Defendant. *See Peoples Nat'l Bank*, 667 So. 2d 876 at 879; *Fagen*, 2021 WL 2845034, at *15 (holding plaintiff did not directly provide benefit to defendant and, in fact, plaintiff repeatedly alleged lack of knowledge of fraudulent scheme to launder). Plaintiff's remaining allegations with respect to this Count are nothing short of formulaic recitation of the elements of unjust enrichment without a single factual allegation. As noted above, Plaintiff has also failed to plead any quantifiable damages. In any event, Plaintiff will never be able to allege a direct benefit conferred, and, therefore, this Count should be dismissed with prejudice.

## VIII.  Plaintiff has failed to plead any cause of action for violations of federal or state securities laws.

Plaintiff's remaining counts are for securities-related violations under both federal and state law. Plaintiff cannot state a cause of action for securities fraud because this meme coin is *not* a security. Accordingly, the Complaint must be dismissed with prejudice.

### A. LGBcoin is not a security.

Plaintiff's securities counts are predicated on his unsupported legal conclusion that LGBcoin is a security. Plaintiff is wrong. As noted by the Securities & Exchange

Commission, "the Ethereum network and its decentralized structure, current offers and sales of Ether are not securities transactions." William Hinman, Director, Division of Corp. Fin., SEC [hereinafter "Hinman Trans."] (June 14, 2018). Likewise, LGBcoin is a decentralized meme cryptocurrency on the ERC-20 subset of the Ethereum Blockchain for digital collectibles and has no intrinsic value. *See id.*; *see also* LETSGOBRANDON.COM. Indeed, in reviewing LGBcoin under *Howey*, the Court must conclude it is not a security subject to federal or state registration requirements. More recently the President and SEC signaled that future regulation would be forthcoming—but it does not encompass meme coins today.[6]

Plaintiff generally argues LGBcoin is a security because he pleads that he purchased the coin with the expectation of profit. However, unlike other cryptocurrencies or even traditional securities, LGBcoin is a meme coin to support free speech and charity. It is not, as Plaintiff alleges, an enterprise taking in investments for the purpose of raising capital or securing profits. Under *Howey* an asset is considered a security when it involves: (1) an investment of money; (2) in a

---

[6] The White House, *Fact Sheet: President Biden to Sign Executive Order on Ensuring Responsible Development of Digital Assets*, Mar. 9, 2022, *available at* https://www.whitehouse.gov/briefing-room/statements-releases/2022/03/09/fact-sheet-president-biden-to-sign-executive-order-on-ensuring-responsible-innovation-in-digital-assets/ (last visited May 5, 2022); Sarah Alessandrini, *SEC Chair Gensler says agency is planning greater oversight of crypto markets to protect investors*, Apt. 4, 2022, *available at* https://www.cnbc.com/2022/04/04/sec-chairman-proposes-expanded-protections-for-crypto-investors.html (last visited May 5, 2022).
[3] *Available at* https://www.coindesk.com/sec-chief-not-icos-bad (last visited May 5, 2022).

common enterprise; and (3) with the expectation of profits solely or predominantly from the efforts of others. *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1975). All three elements must be established to be a security. *Id.*

In order to determine whether there was an investment of money, the Court must determine if a purchaser chose to give up specific consideration in return for a separable financial interest. *Howey Co.*, 328 U.S. 293 at 301; *see also Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. V. Daniel*, 439 U.S. 551, 559 (1979). Here, in the abstract, Plaintiff may allege he invested in LGBcoin for the purpose of making a profit. Plaintiff, however, fails to plead a single fact involving his actual purchase of LGBcoin. In any event, even if Plaintiff were to plead specific facts regarding his purchase, he cannot reasonably allege that he did so for a separable financial interest. He was purchasing a collectible, meme coin without intrinsic value. He was voicing his support for a political movement—more akin to buying a political t-shirt. Thus, Plaintiff cannot satisfy the first element.

The second element requires a showing of a common enterprise. The Eleventh Circuit has adopted the Vertical Approach to determine whether a common enterprise exists. *See, e.g., In re Mona Lisa at Celebration, LLC*, 436 B.R. 179, 198 (Bankr. M.D. Fla. 2010). Under the Vertical Approach, the success or failure of a project depends on the efforts and expertise of a third party. *Id.* Here, the goals of the LGBcoin are not profit seeking nor do they require specific expertise. Rather,

LGBcoin sought a direct on-track NASCAR sponsorship of Brandon Brown's car to aid Brown who lost sponsors due to the association with the politically charged phrase that he did not willingly create. That on-track sponsorship was approved by NASCAR then subsequently rescinded by NASCAR. LGBcoin's other goal is a Pro-America message promoting free speech, the American Dream, and charitable giving. *See* LETSGOBRANDON.COM Landing Page. Moreover, the SEC has advised that Ethereum sales do not constitute securities. *See* Hinman Trans. Like Ethereum, LGBcoin is a decentralized coin. Indeed, LGBcoin's value, to a substantial degree, is dependent on the value of Ethereum.

The third element requires that a person is led to expect profits solely from the efforts of the promotor or a third party. *Howey*, 328 U.S. 293, 298-99. Here, to the contrary, LGBcoin has disclaimed any right to profits and even advised that the meme coin has no intrinsic value. Plaintiff impermissibly concludes that LGBcoin is an investment contract because "*Plaintiff invested money*" with the expectation of profits. *See* Compl. at ¶ 175 (emphasis added); *see also* Compl. at ¶ 193. Under *Howey*, an investor's subjective intent is insufficient to transform a meme coin into a security. *See Howey*, 328 U.S. 293 at 301. Even if certain purchasers had an expectation of profits, any such profits were speculative at best and would be affected by market conditions. *SEC v. Glenn W. Turner Enters., Inc.*, 424 F.2d 476, 482 (9th Cir. 1973). Here, LGBcoin has not only advised potential purchasers that it

is a meme coin to further free speech, charitable giving, and other political rhetoric,

but has affirmatively disclaimed any expectation of profit:

> Lets Go Brandon coin ($LETSGO) is America's Coin: an ERC-20 ***digital collectible meme coin*** on the Ethereum Blockchain . . . Lets Go Brandon ***has no intrinsic value*** and you ***should not purchase it with any expectation that you will be able to resell it***. Please do not spend money that you cannot afford.

LETSGOBRANDON.COM Landing Page (emphasis added). *See* attached Group Exhibit

C. Any expectation of profit is obviated by the plain text on the website. *See id.* As

noted previously, the language on the current website was identical to the language

on the prior website. In fact, the website advises individuals not to spend money. *See*

*id.* Plaintiff understood this was the purpose of the LGBcoin when he purchased it,

and he did not actually purchase it with the expectation of profits. Plaintiff wanted

to participate in and further the cause elucidated by LGBcoin. *See* Ex. A. Plaintiff

has not and cannot satisfy the third prong of the *Howey* test, meaning LGBcoin is

not a security.

### A. Plaintiff has failed to plead a cause of action for violation of Section 12 of the 1933 Securities Act.

As detailed above, LGBcoin is not a security; therefore, it is not subject to

regulation or a private cause of action under Section 12 of the 1933 Securities Act.

Nevertheless, Defendants are not "Sellers" under Section 12 and cannot be liable.

Plaintiff must establish that each Defendant: (1) transferred title to the security; and

(2) successfully solicited the purchase. *See In Re CNL Hotels & Resorts, Inc.*, No.

2005 WL 2291729, at *3 (M.D. Fla. Sept. 20, 2005). Here, Plaintiff makes no allegation in Count IV that any Defendant actually sold or transferred an LGBcoin to Plaintiff. *See id.*; *see* Compl. at ¶¶ 173-183. Much like the plaintiff in *CNL*, Plaintiff merely recites the elements of a cause of action under Section 12 without reference to any specific Defendant or specific sale. *See id.* Similarly:

> to state a claim under § [12(2)], the complaint must allege by whom the plaintiffs were solicited and from whom they purchased shares; these assertions must be supported by specific factual allegations demonstrating a direct relationship between the defendant and the plaintiff purchaser. Along those same lines, a plaintiff must allege not only that the defendant actively solicited investors, but that the plaintiff purchased securities as a result of that solicitation.

*In re CNL*, 2005 WL 2291729, at *5. Here, like in *CNL*, Plaintiff has not and cannot show a direct solicitation by any Defendant that led to Plaintiff's purchase of LGBcoin. *See id.* Rather, Plaintiff, again, alleges in conclusory fashion that Defendants are "sellers" because they solicited investments, that Plaintiff paid to purchase the LGBcoin, and that Plaintiff relied upon the expertise and efforts of the Defendants. *See* Compl. at ¶¶ 173-183. These allegations are insufficient as a matter of law. *See In re CNL*, *In re CNL*, 2005 WL 2291729, at *5. Plaintiff has not and cannot meet his burden under Section 12, and this Count must be dismissed with prejudice.

**B. Plaintiff has failed to plead a cause of action for violation of Section 15(a) of the 1933 Securities Act.**

Plaintiff's Seventh Count is the only Count directed towards a specific Defendant, Mr. Koutoulas. That is as specific as the Count gets. Thereafter, the allegations are nothing more than bare assertions that Mr. Koutoulas has a "high-level position" which gives him power and control over the Company, as well as the power to influence and control the solicitation of funds for unregistered securities from investors. *See* Compl. at ¶¶ 184-188. First, there were no securities. Second, the bare-boned allegations do nothing to provide any plausible cause of action against Mr. Koutoulas for control person liability. *See Tippens v. Round Island Plantation LLC*, No. 09-CV-14036, 2009 WL 2365347, at *10 (S.D. Fla. July 31, 2009). Third, there is no Company, LGBcoin is a decentralized project.

**C. Plaintiff has failed to plead a cause of for violation of Florida's Securities and Investor Protection Act for unregistered offer and sale of securities.**

Plaintiff's final Count under the Florida Securities and Investor Protection Act ("FSIPA") is identical to his federal claims. In essence, Plaintiff alleges Defendants engaged in the solicitation and sale of LGBcoin as part of a common enterprise to secure profits and that Plaintiff relied upon Defendants' expertise. *See* Compl. at ¶¶ 189-198. Again, Plaintiff does nothing more than generically recite the elements of a cause of action without reference to specific acts or specific Defendants. In any event, as detailed above, LGBcoin is not a security, and, therefore, is not subject to the registration requirements of state or federal law. Florida applies the *Howey* test

24

to determine whether an asset is an investment contract. *Tippens*, 2009 WL 2365347, at \*10. Under *Howey*, LGBcoin is not an investment contract, and, therefore, not a security. *See supra* § VIII. There was no expectation of profit—in fact, LGBcoin disclaimed any expectation of profit. *See* LETSGOBRANDON.COM Landing Page.

## CONCLUSION

WHEREFORE, Defendant, James Koutoulas, respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety with prejudice, and to award Defendants appropriate attorneys' fees and costs.

Dated: May 16, 2022                                    Respectfully submitted,

/s/    *Nicole Martell*_____
**NICOLE MARTELL, ESQ.**
Florida Bar No.: 100172
nicole@ddpalaw.com

**DI PIETRO PARTNERS, PLLC**
901 East Las Olas Blvd, Suite 202
Fort Lauderdale, FL 33301
*Primary Email Address:*
service@ddpalaw.com
*Secondary Email Address:*
paralegal@ddpalaw.com
Telephone: (954) 712-3070
Facsimile:  (954) 337-3824

**SERVICE LIST**

Aaron M. Zigler (pro hac vice forthcoming)
Robin Horton Silverman (FL Bar 0027934)
ZIGLER LAW GROUP, LLC

308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312-673-8427
aaron@ziglerlawgroup.com
robin.horton@ziglerlawgroup.com

John T. Jasnoch (pro hac vice forthcoming)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
jjasnoch@scott-scott.com

Sean T. Masson (pro hac vice forthcoming)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: 212-223-6444
smasson@scott-scott.com