# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CASE NO.:  6:22-cv-652-PGB-DCI

ERIC DE FORD, SANDRA BADER,
Individually and on behalf of All Others
Similarly Situated,

      Plaintiffs,

v.

JAMES KOUTOULAS, JEFFREY
CARTER, ERIK NORDEN,
ALEXANDER HOPE MASCIOLI, ARIS
GEORGE MICHALOPOULOS,
THOMAS McLAUGHLIN, CORAL
CAPITAL LLC, CORAL CAPITAL
MANAGEMENT LLC, CORAL DEFI LP,
BRANDON BROWN, BRANDONBILT
MOTORSPORTS, LLC, and NATIONAL
ASSOCIATION FOR STOCK CAR
AUTO RACING, LLC,

      Defendants.

_____/

# CORAL DEFENDANTS' MOTION TO
# DISMISS SECOND AMENDED CLASS ACTION
# COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION................................................................................................1

LEGAL STANDARD .........................................................................................4

ARGUMENT .......................................................................................................4

I.  The Court Lacks Personal Jurisdiction Over the Coral Defendants.................4

    A.  The Court Lacks Specific Jurisdiction Over the Coral
    Defendants Pursuant to Florida's Long-Arm Statute ...........................7

        1.  The SAC Does Not Plead Plausible Facts Showing that the
        Coral Defendants Engage in Business in Florida, Which in
        All Events They Do Not ................................................................8

        2.  The SAC Does Not Plead Plausible Facts Showing that the
        Coral Defendants Are Subject to Jurisdiction Under the
        Tortious Activities Prong, Which in All Events they Are Not .......10

    B.  Exercising Jurisdiction Under Any Basis Over the Coral
    Defendants Would Violate Their Due Process Rights.........................12

        1.  The Coral Defendants Do Not Have "Minimum Contacts"
        with Florida Such That They Were Fairly on Notice That
        They Could Be Subject to the Jurisdiction of this Court ...............13

        2.  Exercising Personal Jurisdiction Over the Coral Defendants
        Would Violate Traditional Notions of Fair Play and Substantial
        Justice.........................................................................................14

II.  Count IV (Conspiracy) Fails to Satisfy the Applicable Heightened
    Pleading Standard as to the Coral Defendants.............................................16

    A.  Plaintiffs Fail to Plead the Existence of *Any* Agreement
    Involving the Coral Defendants .........................................................17

    B.  Count IV Does Not Comply with the Governing Heightened
    Pleading Standards ............................................................................18

## <u>TABLE OF CONTENTS (continued)</u>

**Page**

III.   Because the SAC Fails to Allege that the Plaintiffs Conferred
a Direct Benefit on the Coral Defendants, Count V (Unjust
Enrichment) Likewise Fails to State a Claim ................................................. 20

CONCLUSION ................................................................................................. 23

LOCAL RULE 3.01(g) CERTIFICATION ........................................................ 24

CERTIFICATE OF SERVICE ............................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Albra v. City of Fort Lauderdale,*
    232 F. App'x 885 (11th Cir. 2007) ................................................................. 16

*Alhassid v. Bank of Am., N.A.,*
    60 F. Supp. 3d 1302 (S.D. Fla. 2014) ..................................................... 18, 19

*Am. Safety Ins. Serv., Inc. v. Griggs,*
    959 So. 2d 322 (Fla. 5th DCA 2007) ........................................................... 21

*Am. United Life Ins. Co. v. Martinez,*
    480 F.3d 1043 (11th Cir. 2007) ............................................................... 16, 19

*Arch Aluminum & Glass Co. v. Haney,*
    964 So. 2d 228 (Fla. 4th DCA 2007) ........................................................... 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................4

*BCIJ, LLC v. LeFevre,*
    No. 09-cv-551, 2010 WL 1289842 (M.D. Fla. Mar. 24, 2010) ...................... 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................ 4, 18

*Bioheart, Inc. v. Peschong,*
    No. 13-cv-60304, 2013 WL 1729278 (S.D. Fla. Apr. 22, 2013) .................... 15

*Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc.,*
    140 F.3d 898 (11th Cir. 1998) ..................................................................... 16

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,*
    137 S. Ct. 1773 (2017) ...................................................................................6

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,*
    116 F.3d 1364 (11th Cir. 1997) .................................................................... 17

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Calder v. Jones,*
  465 U.S. 783 (1984) ...................................................................... 13

*Caldwell v. Compass Ent. Grp. LLC,*
  No. 14-cv-1701, 2016 WL 7136181 (M.D. Fla. Feb. 4, 2016) ....................... 21

*Consol. Dev. Corp. v. Sherritt, Inc.,*
  216 F.3d 1286 (11th Cir. 2000) ..................................................... 5

*Daimler AG v. Bauman,*
  571 U.S. 117 (2014) ..................................................................... 6

*Estate of Scutieri v. Chambers,*
  386 F. App'x 951 (11th Cir. 2010) ................................................ 14

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.,*
  1 So. 3d 400 (Fla. 3d DCA 2009) ................................................ 20

*Florida Action Comm., Inc. v. Seminole Cnty.,*
  212 F. Supp. 3d 1213 (M.D. Fla. 2016) ........................................ 4

*Fraser v. Smith,*
  594 F.3d 842 (11th Cir. 2010) ............................................. 5, 7, 8

*Full Sail, Inc. v. Spevack,*
  No. 03-cv-887, 2003 WL 25277185 (M.D. Fla. Oct. 21, 2013) .................... 14

*Fullman v. Graddick,*
  739 F.2d 553 (11th Cir. 1984) .................................................... 16

*Future Tech. Today, Inc. v. OSF Healthcare Sys.,*
  218 F.3d 1247 (11th Cir. 2000) .................................................... 5

*Gary v. D. Agustini & Asociados, S.A.,*
  898 F. Supp. 901 (S.D. Fla. 1995) ............................................. 22

*GJR Invs., Inc. v. Cnty. of Escambia, Fla.,*
  132 F.3d 1359 (11th Cir. 1998) .................................................. 16

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Goode v. Celebrity Cruises, Inc.*,
  No. 16-CV-24131, 2017 WL 4347133 (S.D. Fla. 2017) ......................... 6, 9, 11

*Hinkle v. Cont'l Motors, Inc.*,
  268 F. Supp. 3d 1312 (M.D. Fla. 2017) ......................................................... 8

*Kaufman v. Mach. Wholesalers Corp.*,
  574 So. 2d 1225 (Fla. 3d DCA 1991) ............................................................ 9

*Keston v. FirstCollect, Inc.*,
  523 F. Supp. 2d 1348 (S.D. Fla. 2007) ........................................................ 10

*Licciardello v. Lovelady*,
  544 F.3d 1280 (11th Cir. 2008) ................................................................... 13

*Madara v. Hall*,
  916 F.2d 1510 (11th Cir. 1990) ......................................................... 5, 12, 15

*Melgarejo v. Pycsa Panama, S.A.*,
  537 F. App'x 852 (11th Cir. 2013) .............................................................. 12

*Melton v. Century Arms, Inc.*,
  243 F. Supp. 3d 1290 (S.D. Fla. 2017) ........................................................ 21

*Miller v. Gizmodo Media Grp., LLC*,
  383 F. Supp. 3d 1365 (S.D. Fla. 2019) ........................................................ 15

*Navitar, Inc. v. eScholar, LLC*,
  No. 11-CV-20266, 2011 WL 13223668 (S.D. Fla. July 7, 2011) ................... 14

*Oldfield v. Pueblo de Bahia Lora, S.A.*,
  558 F.3d 1210 (11th Cir. 2009) ............................................................... 7, 13

*PG Creative Inc. v. Affirm Agency, LLC*,
  No. 18-CV-24299, 2019 WL 5684219 (S.D. Fla. Oct. 31, 2019) ................... 13

*Princeton Excess & Surplus Lines Ins. Co. v. Hub City Enterprises., Inc.*,
  418 F. Supp. 3d 1060 (M.D. Fla. 2019) .................................................... 4, 23

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Radiation Med. Physicians, P.A. v. TomoTherapy Inc.*,
  533 F. Supp. 3d 1127 (M.D. Fla. 2021) .........................................................4

*Russo v. Fink*,
  87 So. 3d 815 (Fla. 4th DCA 2012) .............................................................18

*SEC v. Carrillo*,
  115 F.3d 1540 (11th Cir. 1997)............................................................... 7, 13

*St. Francis Holdings, LLC v. Pawnee Leasing Corp.*,
  No. 20-cv-1101, 2020 WL 6287684 (M.D. Fla. Oct. 27, 2020) ..... 16, 19, 20, 21

*Taylor Forge Int'l, Inc. v. Specialty Maint. & Constr., Inc.*,
  685 So. 2d 1360 (Fla. 2d DCA 1996)............................................................9

*Tucci v. Smoothie King Franchises, Inc.*,
  215 F. Supp. 2d 1295 (M.D. Fla. 2002) .............................................16, 17, 18

*United States ex rel. Blankenship v. Lincare, Inc.*,
  No. 19-cv-00104, 2021 WL 649795 (S.D. Ala. Jan. 29, 2021) .......................19

*United Techs. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2009).............................................................. 10, 12

*Verizon Trademark Servs., LLC v. Producers, Inc.*,
  810 F. Supp. 2d 1321 (M.D. Fla. 2011) ........................................................4

*Virgilio v. Ryland Grp., Inc.*,
  680 F.3d 1329 (11th Cir. 2012)...................................................................22

*Wiand v. Waxenberg*,
  611 F. Supp. 2d 1299 (M.D. Fla. 2009) ......................................................23

*Williams Elec. Co., Inc. v. Honeywell, Inc.*,
  854 F.2d 389 (11th Cir. 1988) ...................................................................10

*Williams v. Wells Fargo Bank N.A.*,
  No. 11-cv-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011).....................21

## TABLE OF AUTHORITIES (continued)

**Page(s)**

**STATUTES**

Fla. Stat. § 48.193(1) ................................................................................................ 6

Fla. Stat. § 48.193(1)(a)(1) ................................................................................... 6, 8

Fla. Stat. § 48.193(1)(a)(2) ..................................................................................... 6

**RULES**

Fed. R. Civ. P. 8(a) ............................................................................................... 19

Fed. R. Civ. P. 9(b) ............................................................................. 2, 16, 17, 19

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 4

M.D. Fla. L.R. 1.08 ................................................................................................ 1

M.D. Fla. L.R. 3.01 ................................................................................................ 1

Defendants Thomas McLaughlin ("Mr. McLaughlin"), Coral Capital LLC ("Coral Capital"), Coral Capital Management LLC ("Coral Management"), and Coral DeFi LP ("Coral DeFi" and, collectively with Mr. McLaughlin, Coral Capital, and Coral Management, the "Coral Defendants") hereby move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Middle District of Florida Local Rules 1.08 and 3.01, for the entry of an Order dismissing the Second Amended Class Action Complaint (the "SAC," ECF No. 74) of Plaintiffs Eric De Ford and Sandra Bader as to the two counts, Counts IV and V, brought against the Coral Defendants for the reasons set forth below.

## **INTRODUCTION**

As a threshold measure, the SAC should be dismissed as to the Coral Defendants for lack of personal jurisdiction. Plaintiffs – one a citizen of Missouri and the other a citizen of Idaho, *see* SAC, ¶¶ 14-15 – fail to plead sufficient plausible allegations to bring any of the Coral Defendants under Florida's long-arm statute and, even if they had, there is no such jurisdiction on the merits. And even if there was, haling any of the Coral Defendants into this District, particularly in light of the abject lack of any connection between Plaintiffs' two claims against the Coral Defendants and any contacts the Coral Defendants are alleged to have had with Florida (which are none), would violate the Due Process Clause.

Beyond this, of the eight counts in the SAC, Plaintiffs assert only two against the Coral Defendants: civil conspiracy (Count IV) and unjust enrichment (Count V). Stripped of its hyperbole and rhetoric and distilled to its core, the SAC alleges

nothing more than that some of the Coral Defendants (the SAC is ambiguous as to exactly who) received, and then sold, an amount of a crypto-currency called "LGBCoin."   Plaintiffs superficially (and confusingly) identify Mr. McLaughlin as a founder/creator, consultant, developer, and/or spokesperson for LGBCoin d/b/a LGBCoin.io (the "Company"), *see* SAC, ¶ 31, but, despite pages of allegations concerning promotional statements and activities done on behalf of the Company and multiple meetings concerning other Defendants, ***not a single allegation*** concerning such developmental or promotional activities even ***mentions*** Mr. McLaughlin or any of the other Coral Defendants.

On this reed-thin foundation, Plaintiffs sue the Coral Defendants for a civil conspiracy that sounds in fraud – one to "fraudulently promote the LGBCoin" and "artificially inflate the value and liquidity" of it. *Id.*, ¶ 265.  It is well established that such a claim is subject to a heightened, Rule 9(b) pleading standard, which Count IV comes nowhere close to meeting.   Among other matters, there is not a ***single*** allegation that any of the Coral Defendants (let alone all of them) entered an agreement with any other defendant to engage in the conspiracy,[1] which is an essential element of such claim.   Indeed, the key paragraph in the conspiracy claim (¶ 265) expressly pleads that the Coral Defendants did not agree to ***anything*** with ***anyone*** about the LGBCoin:

---

[1]      It frankly appears that the Coral Defendants have gotten wrapped into a lawsuit that is more about personality conflicts than anything merits-based.  *See, e.g.*, Koutoulas's Mot. to Dismiss, ECF No. 101, at Exh. A (composite of emails between Koutoulas and De Ford).  They do not belong here.

> On information and belief, on or about November 2, 2021, *the Executive Defendants*[2] *agreed* to fraudulently promote the LGBCoin as associated with Brown, BMS and NASCAR in an effort to artificially inflate the value and liquidity of the LGBCoin while they worked to liquidate the retained LGBCoin to maximize their joint and individual returns.

*Id.* (emphasis added).  Because Count IV does not satisfy the heightened pleading standard applicable to a conspiracy claim sounding in fraud, it fails to state a claim as to the Coral Defendants.

Plaintiffs' count for unjust enrichment, Count V, fares no better.  While there are allegations that some of the Coral Defendants received and then sold LGBCoin, there are no plausible allegations that the Plaintiffs purchased LGBCoin *from* the Coral Defendants – indeed, Plaintiffs expressly plead they bought the coin "via the U.S.-based cryptocurrency exchanges Coinbase and Uniswap." *Id.*, ¶¶ 14-15.[3]  In light of these allegations, the unjust enrichment claim fails to satisfy the "direct benefit" element required by Florida law.  Moreover, the vast amount of trading in which some of the Coral Defendants are alleged to have engaged took place *before* December 31, 2021, which is the first date either Plaintiff is alleged to have purchased *any* LGBCoin.  In other words, the Coral Defendants are alleged to have sold the lion's share of their LGBCoin before Plaintiffs purchased any such coins.

---

[2] The SAC defines the "Executive Defendants" as James Koutoulas, Jeffrey Carter, Erik Norden, and Aris George Michalopoulos.   *See* SAC, p. 1.

[3]        While not necessary for the dismissal of the claims discussed in this motion, the Coral Defendants do note that Plaintiffs' allegation about the exchanges from which they purchased the LBGCoin is erroneous, as the LGBCoin (which was a meme coin) was never traded on the Coinbase exchange.

Given these circumstances, there simply is no way that Plaintiffs could have conferred *any* benefit on the Coral Defendants as to any pre-December 31, 2021 transaction at all.  For these reasons, Count V likewise fails to state a claim as to the Coral Defendants.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim for relief that is plausible on its face."  *Florida Action Comm., Inc. v. Seminole Cnty.*, 212 F. Supp. 3d 1213, 1223 (M.D. Fla. 2016) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For a claim to be plausible, it must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Radiation Med. Physicians, P.A. v. TomoTherapy Inc.*, 533 F. Supp. 3d 1127, 1134 (M.D. Fla. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Notably, "'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Princeton Excess & Surplus Lines Ins. Co. v. Hub City Enterprises, Inc.*, 418 F. Supp. 3d 1060, 1064 (M.D. Fla. 2019) (citing *Iqbal*, 556 U.S. at 678).

## ARGUMENT

## I.   The Court Lacks Personal Jurisdiction Over the Coral Defendants

"A court must dismiss an action against a defendant over which it has no

personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323 (M.D. Fla. 2011) (citation omitted) (granting motion to dismiss for lack of personal jurisdiction).   To withstand a motion to dismiss for lack personal jurisdiction, the plaintiff must first plead a *prima facie* case of jurisdiction over a nonresident defendant.   *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) ("Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for the exercise of such jurisdiction.") (per curiam).   If, as here, the defendant comes forward with affidavits or other competent evidence to rebut the plaintiff's allegations, the burden shifts to the plaintiff to substantiate its jurisdictional allegations through competent evidence of its own.   *Id.*

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements."   *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (internal quotation marks and citation omitted).   As a result, determining whether the court has "personal jurisdiction over a nonresident defendant requires a two-part analysis."   *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).   The first inquiry requires the court to determine whether the Florida long-arm statute is satisfied.   *Id* at 1515-16.   The second inquiry requires that, if the long-arm statute is satisfied, the court analyze whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of "due process"

and "traditional notions of fair play and substantial justice." *Id.*

Regarding the first prong of this analysis, Florida's long-arm statute provides, in relevant part, that a defendant "submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from" the defendant's activities "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state" or "[c]omitting a tortious act within this state."  § 48.193(1)(a)(1)-(2), Fla. Stat.[4]  In this regard, Florida's long-arm statute has a close "nexus" requirement. It provides that a person "who personally or through an agent does any of the acts enumerated in this subsection" submits himself or herself to the jurisdiction of this state "for any ***cause of action arising from*** any of the following acts."  Fla. Stat. § 48.193(1) (emphasis added); *see also Goode v. Celebrity Cruises, Inc.*, No. 16-CV-24131, 2017 WL 4347133, at *4 (S.D. Fla. 2017) ("Specific jurisdiction arises out of a party's ***activities in the forum*** that are ***related to*** the cause of action alleged in the complaint.") (internal citations omitted) (emphases added).  The Supreme Court has also emphasized this close nexus requirement for specific jurisdiction:  "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' . . . When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's

---

[4]    Plaintiffs do not allege that the Court has general jurisdiction over any of the Coral Defendants under Florida's long-arm statute (which, following the Supreme Court's *Daimler* case, *see AG Daimler v. Bauman,* 571 U.S. 117 (2014), and its progeny, is not at all surprising), *see* SAC, ¶ 41, so the only issue is whether the Court can exercise specific jurisdiction over them.

unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017) (internal citation omitted).

As to the second prong of the analysis, "[t]he exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Fraser*, 594 F.3d at 846 (citation omitted). The three criteria of minimum contacts for specific jurisdiction are: (1) the contacts must relate to the plaintiff's cause of action; (2) the contacts must show the defendant's purposeful availment to the forum; and (3) the contacts must be of such character that the defendant should reasonably anticipate being haled into court in the forum. *See SEC v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997).

Finally, "[i]t goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).

### A. The Court Lacks Specific Jurisdiction Over the Coral Defendants Pursuant to Florida's Long-Arm Statute

Plaintiffs claim that the Coral Defendants are subject to specific jurisdiction in Florida because they, along with the other defendants who are abjectly lumped into the same allegation, have "conducted business in Florida, committed tortious acts in

Florida and have engaged in substantial activity in Florida." SAC, ¶ 41. But at least with respect to the Coral Defendants, there are literally *no* plausible facts then pled to support any of these assertions, which in all events are simply not true. The Coral Defendants do not engage in business in the State of Florida, and there is no tortious conduct that occurred in or was directed toward Florida (particularly bearing in mind that Plaintiffs do not even live in this State, *see* SAC, ¶¶ 14-15) that could subject the Coral Defendants to specific personal jurisdiction as to this matter.

**1. The SAC Does Not Plead Plausible Facts Showing that the Coral Defendants Engage in Business in Florida, Which in All Events They Do Not**

Section 48.193(1)(a)(1) of the long-arm statute requires Plaintiffs to demonstrate that the Coral Defendants have "operat[ed], conduct[ed], engag[ed] in, or carri[ed] on a business" in the state of Florida." § 48.193(1)(a)(1), Fla. Stat. "To establish a court's specific jurisdiction under § 48.193(1)(a), however, a nonresident defendant's activities 'must . . . show a general course of business activity in the State *for pecuniary benefit*." *Fraser*, 594 F.3d at 848 (emphasis in original) (citation omitted). "Additionally, there must be a nexus between the alleged causes of action and [the defendant's] alleged business activities." *Hinkle v. Cont'l Motors, Inc.*, 268 F. Supp. 3d 1312, 1323 (M.D. Fla. 2017).

Here, aside from the conclusory allegation that "the remaining defendants [which presumably include the Coral Defendants] . . . have conducted business in Florida . . . and have engaged in substantial activity in Florida," SAC, ¶ 41, there is literally *no factual allegation* even attempting to show that the Coral Defendants have

done any such thing.  *See generally* SAC (failing to allege any business activities any of the Coral Defendants undertook in Florida).  This alone is fatal to Plaintiffs' efforts to bring the Coral Defendants within the jurisdiction of this Court under this prong of the long-arm statute.  *See*, *e.g.*, *Taylor Forge Int'l, Inc. v. Specialty Maint. & Constr., Inc.*, 685 So. 2d 1360, 1361 (Fla. 2d DCA 1996) ("Because the complaint fails to allege the basis for long-arm jurisdiction, the trial court should have granted Taylor Forge's motion to dismiss."); *Kaufman v. Mach. Wholesalers Corp.*, 574 So. 2d 1225, 1227 (Fla. 3d DCA 1991) (reversing order denying motion to dismiss for lack of personal jurisdiction over nonresident defendant because the plaintiff's "complaint fails to allege sufficient jurisdictional facts to comply with Florida's long-arm statute") (per curiam).

The conclusory allegation is also flatly inaccurate.  Mr. McLaughlin is a resident of the Commonwealth of Puerto Rico, and he does not transact business in the State of Florida.  *See* Declaration of T. McLaughlin, attached as Ex. "A," ¶¶ 2-9. The other Coral Defendants are also headquartered in Puerto Rico (with Coral Capital and Coral Management being Puerto Rico limited liability companies as well), and none of them has an office or registered agent in Florida, nor are they licensed to do business in Florida.  *See* Declaration of the Coral Entities, attached as Ex. "B," ¶¶ 2-13.  None of the Coral Defendants thus transacts business in the State of Florida, let alone anything related to the basis for this action.  *See Goode*, 2017 WL 4347133, at *4 ("Specific jurisdiction arises out of a party's ***activities in the forum*** that are ***related to*** the cause of action alleged in the complaint.") (internal citations

omitted) (emphases added).   Indeed, the plethora of allegations concerning the various marketing efforts and meetings involving persons allegedly associated with the Company do not mention any of the Coral Defendants *at all*.   *See, e.g.,* SAC, ¶¶ 4, 5, 69, 78-79, 81, 87-89, 95, 100, 104, 116, 172, 186, 211-13, 246-49.   In sum, Plaintiffs have not pled and cannot establish that the Coral Defendants are subject to personal jurisdiction under the "business activities" prong of the long-arm statute.

### 2.   The SAC Does Not Plead Plausible Facts Showing that the Coral Defendants Are Subject to Jurisdiction Under the Tortious Activities Prong, Which in All Events They Are Not

Establishing personal jurisdiction under Section 48.193(1)(a)(2) of the Florida long-arm statute requires the alleged tortious activity to have a nexus to Florida.   *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1282 (11th Cir. 2009) (declining personal jurisdiction over defendant where plaintiff "alleged nothing that clearly connected [defendant] to a conspiracy made or carried out in Florida"); *see also Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988) (holding that Section 48.193(1)(a)(2) requires that the defendant must have "committed a substantial aspect of the alleged tort in Florida . . . [that] [is] essential to the success of the tort") (citation omitted); *Keston v. FirstCollect, Inc.*, 523 F. Supp. 2d 1348, 1353 (S.D. Fla. 2007) (same).

In the SAC, Plaintiffs claim that there is jurisdiction over all alleged co-conspirators "where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction

is sought individually committed no act in, or had no relevant contact, with Florida."
SAC, ¶ 41.   In making this claim, Plaintiffs tacitly acknowledge the flimsy basis for
seeking to hale the Coral Defendants, *i.e.*, persons as to whom there are no
allegations of activity in or any relevant contact with Florida, into court in Florida.
The problem for Plaintiffs, however, is the lack of connection between the alleged
conspiracy and the State of Florida, as well as the overall weakness of the conspiracy
claim itself.  *See Arch Aluminum & Glass Co. v. Haney*, 964 So. 2d 228, 235 (Fla. 4th
DCA 2007) (rejecting claim that a conspiracy was directed at Florida and thus served
as a basis for specific personal jurisdiction).   Plaintiffs are not Floridians, so they
certainly were not injured in the State of Florida when they bought LGBCoin.  *See*
SAC, ¶¶ 14-15.   The SAC is also void of any allegations regarding where (or when)
the alleged co-conspirators, including the Coral Defendants, met and agreed to
undertake the alleged conspiracy.   Aside from the fact that certain of the other
defendants are alleged to be residents of Florida and a passing allegation regarding
an event at Mar-a-Lago in Palm Beach, Florida, *see* SAC, ¶¶ 23, 27, 29-30, 38, 95,
there is next to nothing Florida-specific about the SAC at all.  *See Goode*, 2017 WL
4347133, at *4 ("Specific jurisdiction arises out of a party's **activities in the forum** that
are  **related to**  the cause of action alleged  in  the  complaint.")  (internal  citations
omitted) (emphases added).

   But, even if the Court accepted the nebulous Florida-related allegations as the
basis to tie the alleged conspiracy to Florida, the conspiracy count is not plausibly
pleaded, at least as to the Coral Defendants.   *See*  Argument, Sect. II *infra*.  In this

regard, the Eleventh Circuit has unsurprisingly held that when a plaintiff has not plausibly pleaded a conspiracy, the plaintiff cannot use the conspiracy claim as a basis for personal jurisdiction under the Florida long-arm statute. *See Mazer*, 556 F.3d at 1283 (citation omitted) ("In sum, the complaint does not allege viable facts from which the inference could reasonably be drawn that APM was part of a conspiracy either engineered in Florida or pursuant to which a tortious act in furtherance was committed in Florida. Thus, APM is not subject to conspiracy-imputed personal jurisdiction under Florida's long-arm statute."). The same analysis applies here, and thus the same result should obtain.

### B.    Exercising Jurisdiction Under Any Basis Over the Coral Defendants Would Violate Their Due Process Rights

Even if the Court found that Plaintiffs have proven the elements of one or both of the two sections of the Florida long-arm statute that could apply to the Coral Defendants – which it should not – the Court should still dismiss the SAC as to the Coral Defendants because retaining jurisdiction would violate due process.[5] "[W]hether the assertion of personal jurisdiction over a nonresident defendant comports with due process is itself a two-prong inquiry," involving both "minimum contacts" as well as "fair play and substantial justice." *Madara*, 916 F.2d at 1515-1516.

---

[5]    If the Court finds that Plaintiffs have not met the burdens imposed by the long-arm statute, then there is no need to consider the Due Process Clause because it "imposes a more restrictive requirement than does Florida's Long-Arm Statute." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 859 (11th Cir. 2013) (citation omitted).

1. **The Coral Defendants Do Not Have "Minimum Contacts" with Florida Such That They Were Fairly on Notice That They Could Be Subject to the Jurisdiction of This Court**

Due process requires a defendant have "minimum contacts" with a forum such that there is "fair warning that a particular activity may subject [the defendant] to the jurisdiction of a foreign sovereign." *Id.* (citation omitted). This is satisfied only if the "defendant has purposefully directed . . . activities at the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* The criteria for minimum contacts is: (1) the contacts must relate to the plaintiff's cause of action; (2) the contacts must show the defendant's purposeful availment to the forum; and (3) the contacts must be of such character that the defendant should reasonably anticipate being haled into court in the forum. *See Carrillo*, 115 F.3d at 1542.

Moreover, in the context of intentional torts, the "*Calder*" effects test provides that personal jurisdiction exists only if (1) the defendant committed an intentional act, (2) directly aimed at the forum state, and (3) that caused harm that the defendant should have anticipated would be incurred in the forum state. *See Oldfield*, 558 F.3d at 1220 n.28 (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).[6]

Here, the only specific allegations concerning the Coral Defendants involve

---

[6]     *See also Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008); *PG Creative Inc. v. Affirm Agency, LLC*, No. 18-CV-24299, 2019 WL 5684219, at *4 (S.D. Fla. Oct. 31, 2019) (applying effects test and rejecting conclusory allegations, holding plaintiff had not established defendants purposefully availed themselves of the forum). Plaintiffs cannot satisfy these tests.

them purchasing and then selling LGBCoin. *See* SAC at ¶¶ 132-57. The SAC is devoid of any allegation that would reasonably lead the Coral Defendants to contemplate that their selling of LGBCoin would ever tie them to a lawsuit in Florida or that such actions were specifically targeted at Florida or Florida residents. *See Full Sail, Inc. v. Spevack*, No. 03-cv-887, 2003 WL 25277185, *6 (M.D. Fla. Oct. 21, 2013) (applying the effects test, holding that the court lacked personal jurisdiction over defendants because there was no evidence that conduct targeted or was otherwise aimed at Florida). Plaintiffs do not allege that they suffered an injury in Florida from the Coral Defendants' (or any other Defendants') out-of-state conduct. In fact, Plaintiffs are not even residents of Florida – as stated previously, they are from Missouri and Idaho. SAC, ¶¶ 14-15; *see Navitar, Inc. v. eScholar, LLC*, No. 11-CV-20266, 2011 WL 13223668, at *3 (S.D. Fla. July 7, 2011) (granting motion to dismiss for lack of personal jurisdiction because "[p]laintiff . . . [was] a New York corporation . . . and it[s] . . . damages, if any, were suffered anywhere it conducts business"); *Estate of Scutieri v. Chambers*, 386 F. App'x 951, 956 (11th Cir. 2010) (concluding the long-arm statute was not satisfied where plaintiff did not suffer injury in Florida). Thus, there is no evidence that the Coral Defendants should have anticipated that their (innocuous, purchase-and-sale) activities could cause harm in or subject them to suit in Florida.

**2.  Exercising Personal Jurisdiction Over the Coral Defendants Would Violate Traditional Notions of Fair Play and Substantial Justice**

Only if the minimum-contacts prong is met does the Court need to turn to the

fair play and substantial justice inquiry, which requires the consideration of factors such as "the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies." *Madara*, 916 F.2d at 1517. Where these factors "do not weigh strongly in favor or against jurisdiction," a court should find that traditional notions of fair play and substantial justice do not warrant subjecting a foreign defendant to suit in Florida. *See Bioheart, Inc. v. Peschong*, No. 13-cv-60304, 2013 WL 1729278, *5 (S.D. Fla. Apr. 22, 2013) (holding, as to individual California defendant, that where "it is not clear that resolving this action in Florida would be more convenient or effective than doing so elsewhere, particularly in California," exercising personal jurisdiction would be improper).

Here, the Coral Defendants are all Delaware and/or Puerto Rican residents, and Plaintiffs are also not Floridians. *See* SAC, ¶¶ 14-15, 31-34, Ex. A, ¶¶ 2-3; Ex. B, ¶¶ 2-4. Courts have noted that the burden on a non-resident defendant being forced to defend a lawsuit away from its home base "would be more than minimal," even in modern times and with advances in technology. *See Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1375 (S.D. Fla. 2019) (citing *Madara*, 916 F.2d at 1519). Moreover, where, at least with regard to Plaintiffs and the Coral Defendants, "no party resides in this state," the Court should find that its "exercise of personal jurisdiction over [the Coral Defendants] in this case would offend fair play and

substantial justice." *Id.*

For these reasons, Plaintiffs have not pled, and cannot establish, that any of the Coral Defendants are subject to this Court's personal jurisdiction. But even if they had and they could, each of the two claims Plaintiffs assert against the Coral Defendants fails on its own merits.

## II.    Count IV (Conspiracy) Fails to Satisfy the Applicable Heightened Pleading Standard as to the Coral Defendants

To state a claim for civil conspiracy, "a plaintiff must allege: 1) an agreement between two or more parties to achieve an illegal objective; 2) an overt act in furtherance of that illegal objective; and 3) resulting injury." *Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1300 (M.D. Fla. 2002) (citing *Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 912 (11th Cir. 1998)). Furthermore, "[i]t is not enough simply to aver in the complaint that a conspiracy existed." *St. Francis Holdings, LLC v. Pawnee Leasing Corp.*, No. 20-cv-1101, 2020 WL 6287684, *7 (M.D. Fla. Oct. 27, 2020) (citing *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). Instead, "a plaintiff must make 'particularized allegations' that are more than vague or conclusory.'" *Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 890 (11th Cir. 2007) (citing *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998)). Furthermore, where, as here, the tort that is the "illegal objective" of the conspiracy sounds in fraud, the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067-68 (11th Cir. 2007) ("[W]here a conspiracy claim alleges that two or

more parties agreed to commit fraud, the plaintiffs must plead this act with specificity."). The purpose of the Rule 9(b) particularity requirement is to alert defendants "to the precise misconduct with which they are charged and [protect] defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (citations omitted).

### A. Plaintiffs Fail to Plead the Existence of *Any* Agreement Involving the Coral Defendants

A conspiracy claim fails unless it alleges that the defendant entered into an agreement with one or more other parties to engage in illegal conduct. *See Tucci*, 215 F. Supp. 2d at 1300. The conspiracy count here, however, fails to allege even this most basic requirement as to the Coral Defendants—instead, the SAC pleads that "the ***Executive Defendants agreed*** to fraudulently promote the LGBCoin…in an effort to artificially inflate the value." SAC, ¶ 265 (emphasis added). Plaintiffs have even gone so far as to admit in other filings in this matter that the agreement did ***not*** involve the Coral Defendants. *See, e.g.,* ECF No. 103, p. 18 ("The SAC contains a series of allegations that demonstrate an agreement, both explicit and implicit, ***among Brown and BMS and the other Executive Defendants and Mascioli*** to create, promote, and sell the unregistered LGBCoins.") (emphasis added).[7] Because the SAC, on its face, fails to allege the Coral Defendants' agreement to the alleged conspiracy, Count

---

[7] The SAC also does not name any of the Coral Defendants in any of the fraud counts, and Plaintiffs' voluntary and intentional decision ***not*** to do so speaks volumes about the strength of their claim that the Coral Defendants nonetheless conspired to commit such fraud. *See* SAC, Counts I-III, VII.

IV should be dismissed as to the Coral Defendants. *See Tucci*, 215 F. Supp. 2d at 1300 (dismissing conspiracy for, among other matters, failure to adequately allege the existence of an agreement); *see also Russo v. Fink*, 87 So. 3d 815, 819 (Fla. 4th DCA 2012) ("Because [plaintiff] never alleged there was an agreement, it has failed to allege sufficient facts with respect to the conspiracy count.").

Moreover, even if Plaintiffs were to argue that the existence of an agreement should be "implied" from the fact that some of the Coral Defendants allegedly purchased and sold LGBCoin, this sort of "parallel conduct" alone is insufficient to establish the existence of a conspiracy. *See Alhassid v. Bank of Am., N.A.,* 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014) (rejecting a conspiracy count that relied on "parallel conduct" only). Here, Plaintiffs do not allege any agreement between the Coral Defendants and anyone else, but rather just that the Coral Defendants purchased and sold LGBCoin. *See* SAC, ¶¶ 132-57. Thus, Plaintiffs, like plaintiffs in *Alhassid*, "do not actually allege that [the Coral Defendants] and [the other defendants named in the conspiracy count] acted together, but merely that they engaged in the same 'scheme.' An allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy." *Alhassid*, 60 F. Supp. 3d at 1319 (citing *Twombly*, 550 U.S. at 556-57). For these reasons, Count IV fails to state a claim.

### B.   Count IV Does Not Comply with the Governing Heightened Pleading Standards

Because Count IV does not allege that the Coral Defendants entered into an

agreement with anyone, about anything, it fails as a matter of law under the usual Rule 8(a) pleading standards.   But, as noted earlier, to sufficiently state this claim, Plaintiffs must actually comply with the ***heightened*** pleading standards mandated by Rule 9(b).[8]   *See Am. United Life Ins. Co.*, 480 F.3d at 1067-68.   "Rule 9(b) thus forces a plaintiff 'to offer more than mere conjecture,' *U.S. ex rel. Clausen v. Lab. Corp. of Amer., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and 'requires that a complaint plead facts giving rise to an inference of fraud.'   *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008)."   *Alhassid*, 60 F. Supp. 3d at 1316.

Plaintiffs' SAC does not meet the Rule 9(b) standards.   The *St. Francis Holdings* decision, which addressed a conspiracy claim governed by those standards, noted that "[c]ourts have rejected conclusory allegations" as insufficient to support a conspiracy claim where the complaint "merely assert[s] these parties acted 'in concert with one another' to structure a 'non-cancellable' deal, without providing any specificity as to the time or place of the parties' conspiratorial agreement, or the role [the defendant] allegedly agreed to play in the conspiracy."   *St. Francis Holdings*, 2020 WL 6287684, at *8.   Here, the SAC suffers the same fatal defect:  it provides no allegations that the Coral Defendants ever agreed to anything, let alone the time or place that they did, or any facts that show that the Coral Defendants were

---

[8]   Arguably, given Plaintiffs' failure to meet the 8(a) pleading standards, discussion of the heightened pleadings standard is unnecessary. *See, e.g., United States ex rel. Blankenship v. Lincare, Inc.*, No. 19-cv-00104, 2021 WL 649795, *13 n.14 (S.D. Ala. Jan. 29, 2021) (declining to analyze whether Rule 9(b) met after finding pleading failed to meet 8(a) standards).

involved in any of the marketing regarding the LGBCoin at the heart of the allegedly fraudulent scheme.  Aside from an initial conclusory allegation that Mr. McLaughlin is a "co-founder/creator of the Company," "served as a consultant, developer, and spokesman for the Company," and "exercised control over the Company and directed and/or authorized, directly or indirectly, the sale and/or solicitations of LGBCoin to the public," SAC, ¶ 31, the myriad allegations concerning the various marketing efforts and meetings do not even mention Mr. McLaughlin or any of the other Coral Defendants.  *See, e.g.,*  SAC, ¶¶ 4, 5, 69, 78-79, 81, 87-89, 95, 100, 104, 116, 172, 186, 211-13, 246-49.  If anything, the SAC provides even *less* detail than the insufficient detail the *St. Francis* court found as cause for dismissal of the conspiracy claim before it.  For this reason as well, this claim should be dismissed as to the Coral Defendants.

### III.   Because the SAC Fails to Allege that the Plaintiffs Conferred a Direct Benefit on the Coral Defendants, <u>Count V (Unjust Enrichment) Likewise Fails to State a Claim</u>

"The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."  *BCIJ, LLC v. LeFevre*, No. 09-cv-551, 2010 WL 1289842, *6 (M.D. Fla. Mar. 24, 2010) (citing *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.,* 1 So. 3d 400, 404 (Fla. 3d DCA 2009)).   Importantly, with respect to the "benefit" element of the cause of action, "a plaintiff must show that he

*directly* conferred a benefit on the defendant." *Caldwell v. Compass Ent. Grp. LLC*, No. 14-cv-1701, 2016 WL 7136181, * 2 (M.D. Fla. Feb. 4, 2016) (emphasis in original) (citing *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007)).[9]

With regard to the claim at issue here, Plaintiffs spend a number of paragraphs discussing the amount of sales transactions some of the Coral Defendants[10] purportedly engaged in with respect to LGBCoin.   *See* SAC, ¶¶ 132-57.   While Plaintiffs fail to provide the grand total amount for the Coral Defendants' sales or specify exactly when all such sales occurred, what is clear is that significant amounts of those sales occurred before December 31, 2021 – the *first* date that either Plaintiff is alleged to have purchased *any* LGBCoin.   *See id.* at ¶¶ 14-15.   For example:

- McLaughlin Pass Through 1 Wallet allegedly sold $186,823.15 worth of LGBCoins on November 5, 2021, *see id.* at ¶ 136;[11]

- Mr. McLaughlin also allegedly sold $105,451.89 worth of LGBCoin between November 23 and November 28, 2021, *see id.* at ¶ 139;

- Mr. McLaughlin allegedly used McLaughlin Pass Through 2 Wallet

---

[9]      While "no direct contact is required for a direct benefit to be conferred," *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1307 (S.D. Fla. 2017), the benefit must still be direct, even if the contact is indirect or involves "the benefit" being "passed through an intermediary." *Williams v. Wells Fargo Bank N.A.*, No. 11-cv-21233, 2011 WL 4901346, *5 (S.D. Fla. Oct. 14, 2011).  Here, there are no plausible facts alleged to show any such direct benefit being conferred.

[10]      Notably, the only Coral Defendants who Plaintiffs even allege to have bought and sold LGBCoin are Mr. McLaughlin and Coral DeFi.  *See* SAC, ¶¶ 57, 132-157.  As such, while there is no basis for any claim against *any* of the Coral Defendants, this is particularly so for Coral Capital and Coral Management.

[11]      For purposes of this Motion to Dismiss, the Coral Defendants accept the facts pled that link them to the purported Wallets though they, of course, reserve the right to challenge such fact should this lawsuit proceed.  *See St. Francis Holdings*, 2020 WL 6287684 at *3 (holding that, when reviewing a motion to dismiss, "[c]ourts must…view the complaint in the light most favorable to the plaintiff and resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor").

and various others to sell $336,814.51 worth of LGBCoin between November 11 and November 26, 2021, *see id.* at ¶ 141;

- McLaughlin Pass Through 4 Wallet allegedly was used for $92,821.11 worth in sales before December 31, 2021, *see id.* at ¶ 146; and

- Coral Wallet allegedly sold $218,209.54 worth of LGBCoin between November 10 and December 29, 2021, *see id.* at ¶¶ 152-53.

This chronology is important, as the unjust enrichment claim necessarily relies on Plaintiffs allegedly conferring a benefit ***by purchasing LGBCoins*** held by the defendants, including the Coral Defendants.  *See id.* at ¶ 272.  However, as to all but the most negligible amount of the aforementioned cumulative sales of $1,080,749.19, Plaintiffs cannot have conferred any benefit at all since the sales took place ***before*** Plaintiffs made their first purchases on December 31, 2021, and January 1, 2022, respectively.  Where, as here, a plaintiff fails to confer any benefit on a defendant, a claim for unjust enrichment will not lie.  *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (holding no claim for unjust enrichment where party other than plaintiffs conferred a benefit).[12]

But there is an additional reason why the Coral Defendants should be dismissed from Count V: Plaintiffs expressly allege that they purchased their LGBCoins from "the U.S.-based cryptocurrency exchanges Coinbase and Uniswap."

---

[12]     Although the SAC is styled as a class action complaint, Plaintiffs have not moved for class certification.  Accordingly, the Court is to consider only Plaintiffs' individual claims in deciding this motion to dismiss.  *See Gary v. D. Agustini & Asociados, S.A.*, 898 F. Supp. 901, 903 (S.D. Fla. 1995) (holding that because plaintiff had not moved for class certification, "the Court will consider the second amended complaint only in terms of [the plaintiff]'s individual claims").

SAC, ¶¶ 14-15.[13]   While direct contact may not be required to establish a direct benefit has been conferred, Plaintiffs *still* need to trace their purchases back to the Coral Defendants.  *See Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1311 (M.D. Fla. 2009) (holding failure to show transfers could be traced to defendant fatal to unjust enrichment claim).  The SAC makes no attempt to even plead that Plaintiffs' alleged LGBCoin purchases directly benefited the Coral Defendants, and is bereft of any explanation of how Plaintiffs' purchases might plausibly be tied to the Coral Defendants.   The failure to plausibly link the Coral Defendants to Plaintiffs' purchases beyond the conclusory allegation that "Defendants received a financial benefit from the sale of their LGBCoin," SAC, ¶ 273, is likewise fatal to the unjust enrichment claim as pled against the Coral Defendants.  *See*, *e.g.*, *Princeton Excess & Surplus Lines Ins. Co.*, 418 F. Supp. 3d at 1064 (rejecting similarly conclusory allegations).  For this reason as well, that claim should be dismissed as to the Coral Defendants.

## CONCLUSION

For the foregoing reasons, the Court should enter an Order granting this Motion and dismissing Counts IV and V as to the Coral Defendants either for lack of personal jurisdiction or for failing to state a claim.

---

[13]     *But see supra* at n.3.

## <u>LOCAL RULE 3.01(g) Certification</u>

Undersigned counsel hereby certifies that on September 6, 2022 he conferred with counsel for Plaintiffs via electronic mail regarding the relief sought in this motion and counsel for Plaintiffs indicated that Plaintiffs oppose the relief requested in the motion.

Dated: September 6, 2022.    Respectfully submitted,

By: */s/ Allen P. Pegg*
Allen P. Pegg
Florida Bar No. 597821
allen.pegg@hoganlovells.com
David Massey
Florida Bar No. 86129
david.massey@hoganlovells.com
HOGAN LOVELLS US LLP
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Telephone: 305-459-6500
Facsimile: 305-459-6550

*Counsel for Defendants Thomas McLaughlin,*
*Coral Capital LLC, Coral Capital Management*
*LLC, and Coral DeFi LP*

24

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 6, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

By:   /s/  *Allen P. Pegg*