UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ERIC DE FORD and SANDRA BADER,**

      **Plaintiffs,**

v.                                                                                            Case No: 6:22-cv-652-PGB-DCI

**JAMES KOUTOULAS, JEFFREY CARTER, ERIK NORDEN, BRANDON BROWN, BRANDONBILT MOTORSPORTS, LLC, NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, CORPORATE DEFENDANT DOE, ARIS GEORGE MICHALOPOULOS, THOMAS MCLAUGHLIN, CORAL CAPITAL LLC, CORAL CAPITAL MANAGEMENT LLC, CORAL DEFI LP and ALEXANDER HOPE MASCIOLI,**

      **Defendants.**

## ORDER

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:** Motion for Alternate Service (Doc. 107)
>
> **FILED:** August 30, 2022
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED in part** and **DENIED without prejudice in all other respects**.

I. **Background**

Plaintiffs seek to have the Court approve alternative service means for effectuating service on Defendants Jeffrey Carter and Alexander Hope Mascioli (collectively, for purposes of this Order, Defendants), including via email, LinkedIn and Twitter direct message, online publication, and (most creatively) non-fungible token. Doc. 107 (the Motion). The Motion is due to be granted in part and denied without prejudice in all other respects.

This case revolves around LGBCoin, a self-proclaimed meme cryptocurrency,[1] created using the Ethereum blockchain, which derives its namesake from the anti-Biden Administration slogan "Let's Go Brandon." Doc. 74 at 15, 16 (the Complaint). While meme cryptocurrencies

---

[1] Meme cryptocurrencies have gained growing attention and popularity over the past decade. Dogecoin, created in 2013, is considered the original and (currently) is the largest (by market cap) meme cryptocurrency. *See* Dan Ashmore, *What Are Meme Coins? Are They Worth Investing In?*, FORBES (August 4, 2022, 1:34 P.M.), https://www.forbes.com/advisor/investing/cryptocurrency/what-are-meme-coins-are-they-worth-investing-in/; *see also* Catherine Ostroff, *Bitcoin and Dogecoin Prices Soar to Records as Coinbase Lists*, THE WALL STREET JOURNAL (April 14, 2021, 6:25 P.M.), https://www.wsj.com/articles/cryptocurrencies-soar-to-records-ahead-of-coinbase-listing-11618400809. Just as LGBCoin is based on the "Let's Go Brandon" slogan, Dogecoin is based on the "doge" meme—represented by a particular picture of Kabosu the Shiba Inu—which is incorporated into Dogecoin's logo, for reference:



*See* Kalhan Rosenblatt, *Iconic 'Doge' Meme NFT Breaks Record, Selling for $4 Million*, NBC NEWS (June 11, 2021, 2:36 P.M.), https://www.nbcnews.com/pop-culture/pop-culture-news/iconic-doge-meme-nft-breaks-records-selling-roughly-4-million-n1270161; *see also* David Rodeck and Benjamin Curry, *An Introduction to Dogecoin, the Meme Cryptocurrency*, FORBES (April 8, 2022, 3:37 P.M.), https://www.forbes.com/advisor/investing/cryptocurrency/what-is-dogecoin/.

allude—as implied by their name—to lighthearted memes,[2] Plaintiffs allege in the Complaint that Defendants are at the heart of a fraudulent meme crypto-conspiracy. Doc. 74 at 6, 10, 17. Plaintiffs allege that LGBCoin is the brainchild of Defendant Mascioli, *id.* at 2, and that Defendant Carter deployed all 330 trillion LGBCoins through his cryptocurrency wallets, *id.* at 16–17. As described in the Motion and the accompanying declaration, Plaintiffs have attempted numerous times to personally serve Defendants over several months, all to no avail. Doc. 108 at 1–7. Plaintiffs have also sent the Complaint and Summonses to emails associated with Defendants, to Defendant Mascioli's Twitter account, and to Defendant Carter's LinkedIn account. *Id.* at 6–8; Doc. 107 at 3. Plaintiffs also published the Complaint and Summonses online at https://scott-scott.com/cryptocurrency-cases/lgbcoin/. Doc. 108 at 9.

## II. Standard

Federal Rule of Civil Procedure 4(e) allows a plaintiff to serve a defendant "within a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]"

"Under Florida Statutes section 48.181, any person who . . . conducts or operates a business in [Florida], and who conceals his or her whereabouts has effectively appointed the Secretary of State as their agent on whom all process may be served." *Walker v. Kirkman Mgmt., LLC*, 2021 WL 3518276, at *2 (M.D. Fla. Mar. 25, 2021) (citation omitted). "Because the statute allowing substituted service is an exception to the general rule requiring a defendant to be personally served, there must be strict compliance with the statutory requirements so as to protect due process

---

[2] *Meme*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/meme ("An amusing or interesting item (such as a captioned picture or video) or genre of items that is spread widely online especially through social media.").

guarantees." *Great Am. Assurance Co. v. Walters*, No. 3:15-CV-1008-J-39JBT, 2016 WL 9526443, at *2 (M.D. Fla. Apr. 14, 2016) (quoting *Hernandez v. State Farm Mut. Auto. Ins. Co.*, 32 So. 3d 695, 698 (Fla. Dist. Ct. App. 2010)). In addition, "the service must strictly comply with Section 48.161, which sets forth the method of substituted service of process." *Id.*; *see also Lombard v. Another S. Holding Co., LLC*, No. 6:17-cv-1952-ORL-31DCI, 2019 WL 4694535, at *1 (M.D. Fla. Sept. 26, 2019) (vacating judgment based on finding of improper service under section 48.161).

To effectuate proper service of process pursuant to Florida Statutes section 48.161, a plaintiff must: (1) allege facts in the complaint that bring the defendant within the purview of the substitute service statute; (2) serve the Secretary of State by providing him or her (or their delegate) with a copy of the summons and complaint; (3) pay the requisite fee to the Secretary of State; (4) provide Notice of service upon the Secretary of State to the defendant by sending him or her a copy of the summons and the complaint by registered or certified mail; (5) file the registered or certified mail return receipt; and (6) file an affidavit of compliance on or before the return date of the process. Fla. Stat. § 48.161(1); *see also EHR Aviation v. Lawson*, 2011 WL 46119, at *1–2 (M.D. Fla. Jan. 6, 2011) (citing *Hernandez*, 32 So. 3d 695, 699).

### III.  Discussion

#### a.  Section 48.161

Plaintiffs have not complied with the requirements of section 48.161. Section 48.161 first requires that Plaintiffs allege facts in the Complaint that bring Defendants within the purview of the statute. *See Lawson*, 2011 WL 46119, at *1. Plaintiffs have not done so.

Section 48.161 also requires that Plaintiffs "send notice of service and a copy of the process by registered or certified mail" to Defendants. *Smith v. Leaman*, 826 So. 2d at 1078. Plaintiffs

assert that they have complied with this requirement by stating that they have "sent the Summonses and Complaint via certified mail to the last known addresses of [Defendants]." Doc. 108 ¶19; *see* Doc. 107 at 14 n.17. This is insufficient. Nowhere do Plaintiffs allege that they have served the Secretary of State and thereafter sent "notice of service and a copy of the process" to Defendants. *Leaman*, 826 So. 2d at 1078; *see Jennings v. Montenegro*, 792 So. 2d 1258, 1261 (Fla. 4th DCA 2001) ("Our review of the amended complaint supports that while [Plaintiffs] may have exercised due diligence in attempting to locate [Defendants], they failed to serve the Secretary of State with their latest amended complaint. . . . Therefore, we reverse and remand with instructions that the trial court afford [Plaintiffs] another chance to properly effect service of process.").

Accordingly, Plaintiffs have failed to comply with the requirements of section 48.161, and, therefore, the Court finds that the Motion is due to be denied without prejudice in this regard.

### b. Other Methods of Alternate Service

Plaintiffs also seek approval of other alternate methods of service besides section 48.161—including email, LinkedIn and Twitter direct message, online publication, and non-fungible token. However, almost all the cases Plaintiffs cite supporting these alternate methods involve Federal Rule of Civil Procedure 4(f), which "sets forth the procedural requirements for effecting service upon individuals in foreign countries." *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 689 (S.D. Fla. Jan. 11, 2012). Nowhere do Plaintiffs assert that Defendants are in "a place not within any judicial district of the United States," Fed. R. Civ. P. 4(f), so it is unclear how these cases are relevant to the instant case. And as these cases do not appear to rely on any Florida state law, it is unclear what their relevance is to Rule 4(e)(1).[3] *See Verizon Trademark Servs., LLC v. Producers,*

---

[3] For the same reason, the Court finds Plaintiffs' citations of non-Florida state court cases, which do not apply Florida law, to be unhelpful. Further, it does not appear that Plaintiffs are asserting

*Inc.*, 2011 WL 3296812, at *3 (M.D. Fla. Aug. 2, 2011) ("[Rule 4(e)] allows a plaintiff to serve a defendant within 'a judicial district of the United States by . . . following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.'").  Accordingly, the Court finds these cases unhelpful and unpersuasive.

Plaintiffs do cite two Florida state cases, but the relevance of these cases to the instant case is also unclear.  For instance, one case dealt with service requirements before terminating a teacher's employment, *Schimenti v. School Bd. of Hernando Cty.*, 73 So. 3d 831 (Fla. 5th DCA 2011), and the other dealt with service requirements before terminating parental rights, *M.J.W. v. Dept. of Children and Families*, 825 So. 2d 1038 (Fla. 1st DCA 2002).  Neither case appears to apply any Florida statute or caselaw that is relevant to this proceeding, and Plaintiffs do not explain these cases' relevance to the instant case, so the Court also finds these cases unhelpful and unpersuasive.

Finally, the Court notes that section 48.161 "sets forth the 'method' of substitute service, rather than any authorization to serve by substitute service." *U.S. v. Faro*, 2022 WL 111229, at *1 (M.D. Fla. Jan. 12, 2022).  Plaintiffs have not identified any Florida law that would generally authorize substitute service in this case.

---

that New York state law (or any other state law besides Florida, for that matter) applies here via Rule 4(e)(1), and the Court will not make Plaintiffs' argument for them.  *See, e.g., E.L.V.H. v. Bennett*, 2018 WL 6131947, at *1 (C.D. Cal. May 2, 2018) ("[Rule 4(e)] provides for service of process on an individual in the United States according to the laws of the state where the district court is located or where service is made. . . . In this case, [Defendant] can be served according to the laws of New York, (where he is believed to live), or under California law, the state where this Court is located.").

Accordingly, the Court finds that Plaintiffs have not shown that any of their asserted alternate methods of service apply to the instant case and, therefore, the Motion is due to be denied without prejudice in this regard.

### c. Extension of Time to Make Service

Finally, in the alternative, Plaintiffs request an extension of time to serve Defendants. Based on the representations in the Motion, the Court finds that an extension is warranted here. Accordingly, Plaintiffs shall have up to and including January 17, 2023, to serve Defendants.

Accordingly, it is hereby **ORDERED** that the Motion (Doc. 107) is **GRANTED in part**, such that:

1) Plaintiffs' deadline to serve Defendants Jeffrey Carter and Alexander Hope Mascioli pursuant to Rule 4(m) is extended to January 26, 2023; and

2) The Motion (Doc. 107) is **DENIED without prejudice** in all other respects.

**ORDERED** in Orlando, Florida on December 12, 2022.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE