# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF FLORIDA

# ORLANDO DIVISION

| | |
|---|---|
| ERIC DE FORD, SUSAN BADER, SHAWN R. KEY, Individually and on Behalf of All Others Similarly Situated, | ) Case No.: 6:22-cv-00652-PGB-DCI ) ) ) CLASS ACTION |
| Plaintiff, | ) ) |
| v. | ) ) |
| JAMES KOUTOULAS, LETSGOBRANDON.COM FOUNDATION d/b/a LGBCOIN FOUNDATION, LGBCoin, LTD, PATRICK BRIAN HORSMAN, and NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, LLC, | ) JURY TRIAL DEMANDED ) ) ) ) ) ) ) |
| Defendants. | ) |

## **MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT WITH PREJUDICE**

COMES NOW, Defendant, JAMES KOUTOULAS ("Mr. Koutoulas"), by and through the undersigned counsel, hereby moves this Court to Dismiss the Third Amended Complaint (D.E. 284)] with Prejudice under Federal Rule of Civil Procedure 12(b)(6) and in support thereof, states as follow:

1

**INTRODUCTION**

As of the present date, Plaintiffs have filed four (4) versions of their complaint – Complaint (D.E. 1); First Amended Complaint (the "FAC") (D.E.21), which was dismissed *sua sponte;* the Second Amended Complaint (the "SAC") (D.E. 74), in which all but one Count against Mr. Koutoulas were dismissed (*See* Order on Mr. Koutoulas' Motion to Dismiss ("Dismissal Order") (D.E.229)[1]; and the Third Amended Complaint (the "TAC") (D.E.245).

This is Plaintiffs' fourth bite at the apple to plead a coherent complaint, and it is the most disjointed and contradictory of them all, despite the benefit of 8,000+ pages of ill-gotten discovery. The TAC fails to make any allegations to pierce the corporate veil against Mr. Koutoulas, thereby all counts against him fail. It continues to violate the PSLRA by not pleading with particularity. It is replete with contradictory, unsupported actions, omits all but a few cites to discovered materials and public sources so it can intentionally distort them, excludes materially relevant evidence against Mr. Koutoulas that negate theories Plaintiffs advance against him. It fails to make the most basic applications of securities law and fails to establish that LGBcoin is a security. It does not allege a single transaction between Plaintiffs and Mr. Koutoulas or any privity of contract between the parties. It serves simply to harass him and non-parties associated with LGBcoin. It also attempts to usurp Counts 8 and 9 from the Foundation which is the best-suited party to bring those charges (along with defamation) against NASCAR- the real culprit in this case. This is all after a year of violating the PSLRA on multiple fronts, wasting millions of dollars of costs and expenses on improper discovery.

---

[1] In dismissing Plaintiffs' Second Amended Complaint this Court stated that complaint was no longer a shotgun pleading. However, the fact that this Court referred to the LGBcoins themselves, which were mischaracterized by Plaintiffs as a 'Company,' and was not named in the caption as a defendant nor ever served shows just how confusing the SAC was and should be taken under consideration when evaluating this fourth defective complaint.

2

I. **The TAC Fails to State a Cause of Action Against Mr. Koutoulas Individually.**

   a. **Plaintiffs fail to pierce the Corporate Veil**

Plaintiffs have brought this action against Mr. Koutoulas in his individual capacity alleging statutory and common law violations. The allegations set forth in the TAC are premised entirely on actions Mr. Koutoulas took while either serving as a trustee on behalf of all LGBcoins, or as an authorized person on behalf of the director of the LGBcoin Foundation (which was later renamed to the LetsGoBrandon.com Foundation) (the "Foundation"). Pursuant to a Trust Agreement dated October 29, 2021, Mr. Koutoulas's law firm, Koutoulas Law, LLC, served as the trustee on behalf of all LGBcoins pending the completion of the formal organization of the Foundation. A true and correct copy of the Trust Agreement is attached as Exhibit A. Plaintiffs have failed to allege actionable grounds to hold Mr. Koutoulas personally liable for actions taken on behalf of the Foundation in his capacity as either an authorized person or trustee. In order to hold Mr. Koutoulas personally liable in either capacity, Plaintiffs must allege sufficient facts to warrant a piercing of the corporate veil.

Nowhere in the 193-page TAC do Plaintiffs allege grounds for piercing the corporate veil against Mr. Koutoulas. Under Florida law, the corporate veil will not be pierced unless the party requesting that the corporate veil be pierced pleads "instrumentality and improper conduct." *Cowan v. Florida Dep't of Bus. & Prof'l Regulation*, 207CV184FTM29SPC, 2008 WL 11334899, at *2 (M.D. Fla. May 7, 2008) citing *Raber v. Osprey Alaska, Inc.*, 187 F.R.D. 675, 678–679 (M.D. Fla.1999); *Morris v. Bischoff*, 1997 WL 128114 *8 (M.D. Fla. March 4, 1997)); *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1117 (Fla.1984). Plaintiffs did not cite to any of these authorities, or *any* authority for that matter, and provided no legal or factual grounds, which make it appropriate to name Mr. Koutoulas in his individual capacity. Despite 107 pages that attempt to

3

smear Mr. Koutoulas and non-parties associated with the Foundation, Plaintiffs had their common law fraud claim against Mr. Koutoulas dismissed with prejudice. Plaintiffs then did not replead any of the other fraud claims against Mr. Koutoulas that they had alleged in prior complaints- a tacit admission Mr. Koutoulas did not commit fraud. Yet, throughout this litigation Plaintiffs claimed that their grounds for naming Mr. Koutoulas personally instead of the initial LGBcoin trust, the rights of which were later assumed by the Foundation upon formation, was that Mr. Koutoulas allegedly committed the intentional tort of fraud. Without any surviving fraud claims and an apparent inability to replead any other intentional tort, Plaintiffs have no standing to pierce the corporate veil and name Mr. Koutoulas personally for *any* count. It is apparent that leave to amend would be futile, therefore, all claims against Mr. Koutoulas should be dismissed with prejudice.

b. **Plaintiffs fail to meet many of the PSLRA's statutory requirements**

In the TAC, Plaintiffs bring claims of securities violations subject to the PSLRA. The requirements in the PSLRA must be strictly adhered to in order to sustain causes of actions such as that brought in the TAC. Plaintiffs have attempted to conceal the very small amount of alleged damages they have relative to the supposed Class. Plaintiffs have failed to comply with several of the PSLRA requirements in order to sustain Count I. Despite multiple admitted violations of the PSLRA and, even after having the benefit of over 8,000 pages of ill-gotten discovery,[2] Plaintiffs

---

[2] The PSLRA provides that, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." However, this Court did not enter an automatic stay upon filing and permitted discovery despite the pendency of multiple motions to dismiss. In its Writ of Certiorari in *PIVOTAL SOFTWARE, INC., ET AL.*, v. *ZHUNG TRAN, ET AL.*, the Supreme Court confirmed that the PSLRA's discovery stay is "automatic" in claims brought in federal court and sought to evaluate its applicability in state court claims, but the case was subsequently settled before a ruling on state courts could be made.

4

remain in violation of several of the PSLRA's mandatory requirements. They filed the required general notice and plaintiffs' certifications over a year later than provided by the statutory requirement.

They also violate the PSLRA's heightened pleading standards[3] requiring Plaintiffs to plead any statement alleged to be misleading and the reasons those statements are misleading with particularity. Plaintiffs also still failed to meet the PSLRA's heightened pleading standards, and, for example, still improperly make thirty-nine (39) allegations upon "information and belief." Plaintiffs repeatedly make vague assertions based upon "information and belief" that ….. Without alleging more than general allegations of ...,, the Court must dismiss the claims against him.[4]

But, if their (defective) securities counts (I and II) were somehow granted, that relief would be unconscionable as it would force NASCAR to promote an unregistered security. Moreover, only 5 of 23,000 cryptocurrencies are registered in the US, and account for approximately 0% of volume traded in the US[5]. So, if LGBcoin was ruled a security, it would be an instant death sentence for the coin. Therefore, the only plausible reason Plaintiffs have included the litany of bad faith allegations against Mr. Koutoulas is to harass him for his political beliefs and cause damage to his reputation and regulated financial services business in violation of Rule 11.

While Plaintiffs securities arguments fail for many reasons as described below, the above failures to comply with the mandatory requirements of the PSLRA alone require this Court to dismiss Count I with prejudice.

---

[3] 15 U.S.C.A. § 78u-4
[4] This Court has already dismissed a Count for failing to plead with specificity (D.E. 229)
[5] Committee on Capital Markets Regulation, *"Cryptoasset Trading Platforms Cannot Register as Securities Exchanges,"* https://capmktsreg.org/wp-content/uploads/2023/06/CCMR-Crypto-Exchanges-Cannot-Register-With-the-SEC-06-06-23.pdf

c. **Plaintiffs' advance legal theories that are blatantly unsupported by evidence obtained in ill-gotten discovery**

Plaintiffs in bad faith advance theories that are demonstrated as false in the documents obtained in the ill-gotten discovery.[6] For example, Plaintiffs allege that Mr. Koutoulas was the creator of $LETSGO coin, which was actually created as an unauthorized hard fork led by Alex Mascioli and BMS after they breached the sales restrictions in the BMS sponsorship agreement with the Foundation three weeks after NASCAR's revocation of the sponsorship approval. Mascioli and BMS then sold LGBcoin to 0 in an attempt to get NASCAR to issue a renewed sponsorship approval for this new coin that Mr. Koutoulas was not involved with ($LETSGO)[7]. Mascioli and BMS created a website illicitly using the Foundation's intellectual property, which Plaintiffs improperly ascribe to Mr. Koutoulas (TAC at 346). This was detailed extensively in Mr. Koutoulas's draft complaint with exhibits that was produced pursuant to one of Plaintiffs' many motions to compel. Plaintiffs failed to attach any of these documents to the TAC as they would have shown their theories to be false. Plaintiffs also misconstrue criticisms that Mr. Koutoulas, Mr. Norden, and Ms. Giuliani made regarding $LETSGO as if they pertained to LGBcoin (TAC at 342).

Plaintiffs' allegations are premised on a supposed misrepresentation of a sponsorship between LGBcoin and Brandon Brown, believed to have been made for the sole benefit of LGBcoin. Plaintiffs have been provided direct correspondence from NASCAR that demonstrates

---

[6] Mr. Koutoulas maintains objection that discovery in this case was improper. However, since this Court has repeatedly ruled that Plaintiffs can incorporate that discovery in the TAC, Mr. Koutoulas refers to this discovery in order to respond in kind to Plaintiffs' allegations, however, Mr. Koutoulas does so subject to previously-raised objections.

[7] The parties later settled and the Foundation, Mr. Koutoulas, and others became supportive of $LETSGO.

the sponsorship was approved. Additionally, Plaintiffs have been provided a copy of the Sponsorship Agreement between LGBcoin and Brandon Brown. Yet, Plaintiffs fail to note that the Sponsorship Agreement, on which many of their claims are premised, provided for an irrevocable license to use the phrase "Let's Go Brandon," and for an off-track sponsorship of Brandon Brown, regardless of whether or not NASCAR approved the on-track sponsorship. Thus, Plaintiffs' allegations that Mr. Koutoulas falsely promoted an affiliation with Brandon Brown are baseless. NASCAR's correspondence and the Sponsorship Agreement, despite reliance on such, were not attached as exhibits to the TAC, likely because doing so would contradict Plaintiffs' entire legal theory.

Plaintiffs also gained, albeit through ill-gotten discovery, evidence that Mr. Koutoulas as Trustee for and the Foundation received independent legal opinions that LGBcoin is not a security. Plaintiffs are also in receipt of documented conversations in which Mr. Koutoulas told prospective buyers that he, himself a securities lawyer, made many decisions with regards to the coin to ensure LGBcoin itself was not a security and that it was never used as the underlying assets as part of an investment contract, but Plaintiffs unethically withheld that information from the TAC. And, still, even after having improper discovery, Plaintiffs make many statements derived from discovered materials, but ***only actually cited four (4)*** Bates numbers to obfuscate their mischaracterizations. Based on the totality of the documents produced and cited in the TAC, Plaintiffs cannot under any circumstance sustain their causes of action against Mr. Koutoulas. Accordingly, the Court has further grounds to dismiss the TAC with prejudice.

    **d. Plaintiffs' contradictory allegations fail to set forth a clear legal theory upon which they can substantiate claims against Mr. Koutoulas requiring dismissal**

The TAC is replete with contradictory allegations that make it impossible to decipher what Plaintiffs allege Mr. Koutoulas supposedly did that warrants claims being brought against him personally. If taken as true, Plaintiffs' allegations as a whole cannot co-exist simultaneously without defying logic and the evidence. More specifically, Plaintiffs also continue to argue that Mr. Koutoulas somehow simultaneously "falsely promoted" (TAC at 401, 402) a sponsorship agreement where they admit NASCAR's "sponsorship approval was unambiguous" (TAC at 227) so that insiders could sell coins (TAC at 397), while violating uncited meme coin supposed 'best practices' to limit selling by insiders (TAC at 96), while also maintaining "an artificially high price for LGBcoin by also limiting the ability of holders to sell into the market" (TAC at 133), while also spending $70,000 to try and fight the unauthorized, hostile hard fork done in breach of the sponsorship agreement. (TAC at fn 14). Plaintiffs also absurdly allege that Mr. Koutoulas "did not implement any fraud prevention controls" in LGBcoin (TAC at 96) while acknowledging Koutoulas did not mint LGBcoin (TAC at 94), while also alleging he directed its minting without any supporting citation or allegation pled with particularly, knowing full well that the computer code for LGBcoin as a digital collectible could not be changed after minting. The TAC, in its efforts to spew vitriol at Mr. Koutoulas, is replete with these completely contradictory allegations not pled in the alternative make it impossible for Mr. Koutoulas to ascertain what Plaintiffs are actually accusing him of.

Plaintiffs' theory of the case is consistently contradictory and is not something that relief can be granted on and accordingly exists only to harass Mr. Koutoulas and others in violation of Rule 11. Even if all allegations are assumed to be true as per the standard for evaluating a Rule 12(b)(6) motion, they are so contradictory that together they are meaningless.

### e. Harassment of Mr. Koutoulas and Others

Plaintiffs spent 107 pages making *ad hominem* attacks on Mr. Koutoulas in the TAC, mischaracterizing many facts of the case, failing to cite repeatedly, and attacking his professional accomplishments. Some of the most egregious examples being: TAC at 24 where in a desperate attempt to discredit Mr. Koutoulas's thousands of hours of extremely successful *pro bono* work on behalf of fraud victims, Plaintiffs three times quote a blogger criticizing Koutoulas's work in MF Global and on the Board of the National Futures Association without giving citations. Had Plaintiffs done so, the Court would see that the blogger had a conflict of interest in that he was paid by the National Futures Association ("NFA"), against which Mr. Koutoulas became a CFTC whistleblower (despite being ineligible for compensation) to report alleged fraud by NFA's senior management. That source provides "Editor's Note: John Lothian News is supported by the NFA in the form of sponsorship and paid newsletter subscriptions."[8] Despite criticizing Mr. Koutoulas's work in MF Global *after* Koutoulas became a whistleblower against his client, Lothian had previously heralded Koutoulas for it and endorsed him for election to NFA's Board of Directors before deleting the endorsement.[9] Then, in TAC at 161 Plaintiffs mischaracterize widespread consumer excitement about the project as "brag[ging] about the naivety." Plaintiffs also use headings to falsely smear Mr. Koutoulas and LGBcoin, using them to call the project a "pump and dump," which is a term of art, yet did not bring a claim for that, since they know that the selloff

---

[8] John Lothian, *James Koutoulas needs to put up or step aside,* https://johnlothiannews.com/james-koutoulas-needs-put-step-aside/
[9] John Lothian, *A Radical Choice in NFA's CTA/CPO Election Category,* which was deleted by Lothian but is still available on an internet archive- https://web.archive.org/web/20130329150026/http://www.johnlothiannewsletter.com/2012/12/a-radical-choice-in-nfas-ctacpo-election-category/

was triggered by NASCAR's illegal revocation of the sponsorship approval, not by manipulation. Plaintiffs also repeatedly try and impute ill intent to Messrs. Koutoulas and Norden factually stating the collective value of all LGBcoins. Accordingly, the TAC should be dismissed for violating Rule 11.

## II. Counts I and II Fail to State a Cause of Action

The TAC, like Plaintiffs' three defective prior complaints, merely provides conclusory allegations rather than applying any alleged facts to the elements of each Count. For instance, Count I simply recites the elements of the *Howey* Test, but in no way alleges how LGBcoin is supposedly an investment contract. See TAC at Count I. Plaintiffs did not- and cannot- allege that LGBcoin is an investment contract because it is not; rather, LGBcoin is a digital collectible that has no investment contract associated with it. In *Howey,* the court held that the *contract* that governed the proceeds from the management of orange trees was the investment contract, *not the orange trees themselves.* Plaintiffs do not allege that there was a prospectus, limited partnership agreement, SAFT, SAFE, or any other offering documents or contract associated with the purchase of LGBcoin. Nor do they allege any privity of contract between Plaintiffs and Mr. Koutoulas. Plaintiffs do not allege that Mr. Koutoulas claimed that the proceeds from sales of LGBcoin would be used for investment purposes, such as building a blockchain network or protocol. Instead, purchasers of LGBcoin were clearly told that unspecified portions of the proceeds from money "*spent*" on LGBcoin would be used for advocacy, charity, and supporting political candidates- not activities that a reasonable person would derive an expectation of profit from. Plaintiffs admit that LGBcoin also has no functionality whatsoever (TAC at 384). In the TAC, Plaintiffs do not allege LGBcoin is a company. All of these factors differentiate LGBcoin from the LBC token at issue in LBRY *See SEC v. LBRY, Inc., No. 1:21-cv-00260-PB (D.N.H. filed Mar. 29, 2021)* in which *initial*

sales were ruled to be securities.[10] However, even if LGBcoin was somehow a security despite all of the above, the Court in *SEC v. LBRY* held that secondary sales of LBC did not constitute sales of securities. Plaintiffs do not allege they participated in any initial sales of LGBcoin and thus do not have standing to bring any securities-related claim. Furthermore, Plaintiffs filed a mandatory certification of transactions over a year after it was required to be filed, however, the certifications do not allege any secondary transactions between themselves and Mr. Koutoulas, nor do they provide any information pertaining to on what decentralized exchange they were executed on or even if they were executed on nodes with the United States. Therefore, Plaintiffs again lack standing to bring this claim.

Further, Count I fails to allege how LGBcoins could possibly constitute a "common enterprise" despite the coins not giving buyers a claim on the ownership of any business, interest, dividends, cash flows, or voting rights. *Id.* Instead, Plaintiffs merely make the conclusory allegation, "Plaintiffs invested money into the common enterprise of LGBCoin with the expectation of profits coming solely from the efforts of others." (TAC at 373), which just regurgitates the elements of *Howey* into one sentence.

Count I fails to properly allege the third prong of *Howey* requiring that the expectation of profit come *solely* from the efforts of *others*. See (TAC 372) (emphasis added). Plaintiff DeFord was very active in the promotion of LGBcoin and LetsGo on his own volition, introducing Mr. Koutoulas to a podcast host and creating his own promotional material. Plaintiffs previously made

---

[10] *See also SEC v. Ripple Labs Inc, et al, 20 Civ. 10832 (AT) (SN)- BRIEF AMICUS CURIAE, XRP HOLDERS, IN OPPOSITION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,* https://www.crypto-law.us/wp-content/uploads/2022/11/11152022-Amicus-Brief-XRP-Holders-Copy.pdf and "The Ineluctable Modality of Securities Law: Why Fungible Crypto Assets Are not Securities," https://papers.ssrn.com/sol3/Delivery.cfm/SSRN_ID4282385_code3145971.pdf?abstractid=4282385&mirid=1

the judicial admission in the FAC and SAC that the "LGBcoin is a digital commodity whose value rises with its demand." *See* (D.E. 1 at ¶ 3); [D.E. 74 at ¶ 3)].[11] The TAC still takes multiple contradictory positions on what LGBcoin is -- classifying it is a "digital currency" (TAC at 5) and a "meme coin" (TAC at 331). (a "meme coin"). Plaintiffs even admit that LGBcoin is "non-functional." (TAC at 384).

The TAC is also silent as to how LGBcoin can be a security when dogecoin (which Plaintiff DeFord also admittedly bought), is structurally very similar minus LGBcoin's provisions for advocacy and charity, has been in existence since 2010 without being classified as a security nor is there any statute or SEC rule classifying meme coins as securities or promulgating a process whereby a meme coin could register with the Commission. Congress has just begun the drafting of legislation to close the "regulatory gap" that the SEC acknowledged privately in the recently released "Hinman Documents[12]" and give clarity to the cryptocurrency industry with the release of a discussion draft between the House Financial Services and House Agriculture Committee.

"Legislation from Congress is needed to protect U.S. consumers and investors, as well as to preserve America's role as a global leader in finance, technology, and innovation," said Chairman of the Subcommittee on Digital Assets, Financial Technology and Inclusion, French Hill (AR-02). "The discussion draft from the House Financial Services and Agriculture Committees represents a common approach to digital asset regulation that would bring existing consumer and investor protections to digital asset-related activities and intermediaries under the principle of 'same risk, same regulation.' We look forward to public feedback on this discussion

---

[11] More likely than not, Plaintiffs only changed this judicial admission in the TAC *after* Mr. Norden filed his Motion for Sanctions against Plaintiffs arguing their admission defeats their own causes of action. *See* Norden Motion (ECF No. 236).
[12] The Hinman Docs: implications for XRP, SEC credibility and more available at https://cointelegraph.com/news/hinman-docs-xrp-sec (last visited June 22, 2023)

draft.[13]" Even still, that draft bill only provides for a mere *study* of decentralized finance, the category within crypto that LGBcoin exists within. So even should this draft bill become law, LGBcoin still would not have a statute promulgating regulation of it. Moreover, LGBcoin exists on the Ethereum blockchain, which the SEC declared both the network and tokens on the network as not securities in 2018[14], LGBcoin exist entirely on the decentralized Ethereum network.

Count II is similarly defective. Count II fails, just as Count I, to plead how LGBcoin could possibly be a security. It simply makes the conclusion that LGBcoin is an investment contract in TAC at 387, without the slightest bit of analysis. Similarly, Count II just progressively lists elements along with unsupported conclusions and no analysis. Plaintiffs are very experienced PSLRA lawyers who have knowingly violated the statute and their continued attempts to amend the operative complaint highlight their sheer inability to plead a valid complaint. Mr. Koutoulas can identify many egregious errors in the TAC, which they have be attempting to "perfect" for fourteen (14) months. While these errors, such as failing to replace "place holder language" with case specific terms, comingling Defendants or failing to define key references throughout the complaint, are readily apparent, it is more so obvious that any amendment to these clerical matters would not allow Plaintiffs to sidestep the larger substantive issues as raised in the foregoing Motion to Dismiss, and therefore, they should not be permitted to amend now a fifth time. That Plaintiffs have so many egregious errors in their complaint fourteen (14) months into this proceeding is yet another example of how their shoddy work product exists not to seek relief for the Class, but

---

[13] Discussion Draft Bill available at https://financialservices.house.gov/uploadedfiles/glb_03_xml.pdf (last visited June 22, 2023)

[14] *Ethereum's officially not a security — here's why it matters for other coin offerings* available at https://markets.businessinsider.com/currencies/news/ethereum-not-a-security-what-it-means-for-ico-coin-offerings-cryptocurrencies-blockchain-bitcoin-2018-6-1027123435?op=1 (last visited June 22, 2023)

instead, to harass Mr. Koutoulas, and make it impossible to adequately understand what claims they are making against him, and why the TAC should be dismissed with prejudice.

### III. Count III Civil Conspiracy Fails to Allege Any New Facts from the Version Dismissed in the SAC

Count III is virtually identical to the version dismissed in the SAC, only with more errors added. Twice (TAC at 397 and 398), Plaintiffs refer to "Executive Defendants," which is not defined in the TAC, but in the SAC refers to Mr. Norden whom this Court ordered could not be included in any further complaints. Count III is also shotgun in nature, not making it clear what individuals or entities conducted alleged activities, and claims that 7 individuals/entities that are not parties to the TAC engaged in this fanciful conspiracy. Again, Plaintiffs despite having the benefit of ill-gotten discovery falsely claim that "Individual Defendants purposefully did not include any direction to create a 'locking' or vesting mechanism within the code to protect investors from insiders immediately selling off the LGBCoin allocations the insiders received pre-launch" (TAC at 398). Plaintiffs make this allegation despite knowing that neither of the Individuals Defendants minted the coin nor had the ability to change its code. Plaintiffs repeatedly claim that Koutoulas and others "falsely promoted" that "Koutoulas and Norden repeatedly touted the rapid increase in the market capitalization of LGBCoins since launch" but do not allege that this rapid increase was false nor make any specific allegations of other plausible falsehoods. (TAC at 401, 402) Rather than 'touting,' Messrs. Koutoulas and Norden were simply justifiably enthusiastic of the viral demand for LGBcoins and speaking factually. Plaintiffs allege that unspecified parties falsely claimed LGBcoin was a sponsor approved by NASCAR in TAC 1, but later confirm that NASCAR approved the sponsorship unambiguously in writing (TAC at 227). Even then, Plaintiffs (correctly) allege that it was Mascioli and BMS that issued a release

announcing the sponsorship approval, not Mr. Koutoulas (TAC at 228). It is worth noting that Mr. Koutoulas did not have an ability to review the press release which is obvious as it misspells the name of his company ("Typhoon" instead of "Typhon"). The closest Plaintiffs come to actually pleading false statements are TAC at 99-101 where they claim that Jeff Carter's origin story was false and that Mr. Koutoulas shared a false story. But Plaintiffs do not allege why it is false. They instead reference an uncited, undated, unsourced "zoom interview" as they have in previous complaints so that Mr. Koutoulas cannot view it or contest its accuracy or even whether or not it exists (TAC at 200). Accordingly, Count III should be dismissed with prejudice, as well.

Plaintiffs' Civil Conspiracy Count is not properly pled and contradicts itself through the allegations incorporated by reference. *See DHG Props., LLC v. Ginn Cos., LLC*, No. 3:09-cv-735-J-34JRK, 2010 WL 5584464, at *11 (M.D. Fla. Sept. 28, 2010) (holding plaintiff did not properly plead in the alternative where the claim relies on the same factual predicate common to all claims); *Gregory v. Miami-Dade Cnty*, 86 F. Supp. 3d 1333, 1337 (S.D. Fla. 2014) (holding "Plaintiffs failed to plead in the alternative by incorporating the above-mentioned general factual allegations into each of their claims against the County."). Like the SAC before this, Plaintiffs still fail to allege a single fact that supports a cause of action for civil conspiracy. To state a cause of action for civil conspiracy, Plaintiffs must allege: (1) an agreement among two or more parties; (2) the doing of an unlawful act or a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of the acts. Haskin v. R.J. Reynolds Tobacco Co., 995 F. Supp. 1437, 1440 (M.D. Fla. 1998). "An actionable conspiracy requires an actionable underlying tort or wrong. *Wright v. Yurko*, 446 So. 2d 1162, 1165 (Fla. Ct. App. 1984). Here, the unlawful act alleged appears to be fraud; thus, the heightened pleading standard of Rule 9(b) applies. Plaintiffs' previous Count for fraud against Mr. Koutoulas was

dismissed with prejudice and Plaintiffs have failed to reallege a cause of action for fraud meaning they cannot state a cause of action for civil conspiracy. *See Haskin*, 995 F. Supp. 1437 at 1440 (holding that as count for fraud is being dismissed and is the basis for civil conspiracy count it must also be dismissed).

Plaintiffs also do not allege a single allegation showing Mr. Koutoulas entered into an unlawful agreement with any other Defendant to fraudulently promote the LGBcoin. See generally TAC at. 1-193. Rather, Plaintiffs vaguely assert "on information and belief" that Mr. Koutoulas entered into an unlawful agreement with other Defendants while simultaneously engaging in unlawful activity. Id. at ¶ 397-398. However, allegation amounting to "parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest a conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1319 (S.D. Fla. 2014). This bare formulaic recitation is insufficient to establish an unlawful agreement. *See, e.g., Id.*; *see also St. Francis Holdings, LLC v. Pawnee Leasing Corp.*, No. 8:20-CV-1101-T-02, 2020 WL 6287684, at *8 (M.D. Fla. Oct. 27, 2020) (dismissing civil conspiracy count where plaintiff only alleged conclusory allegations of a conspiracy without any particularity). In fact, in this Court's Order on Mr. Koutoulas' Motion to Dismiss Plaintiffs' SAC on these very same grounds. See D.E. 229 at III.C.1. In a near identical recitation of the civil conspiracy claim raised in Plaintiffs' SAC, the allegations in the TAC regarding civil conspiracy lack any specificity. With Mr. Koutoulas's conduct just as consistent with parallel conduct and accompanied only by general allegations of conspiracy, the Court must *again* dismiss the claims against him. Based on the foregoing, Plaintiffs Count III for civil conspiracy must be dismissed with prejudice.

  **IV.**  **Count IV is completely unsupported by law and the record**

Count IV is a modified version of the only one of many Counts between the three previous complaints that was not dismissed. This version of the sole surviving claim from the SAC is considerably different from that pled in the SAC, however, and thus warrants *de novo* review. The TAC's version of Count IV incorporates by reference many paragraphs that are the product of ill-gotten discovery for which it is in violation of the statute to be pled in a complaint also containing a PSLRA claim (Count I). Those paragraphs are: 6, 7, 8, 9, 10, 11, 12, 26, 27, 28, 29, 30, 34, 35, 38, 43, 45, 52, 55, 56, 57, 58, 61, 65, 76, 77, 78, 79, 80, 81, 82, 83, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 140, 141, 142, 144, 145, 146, 147, 148, 151, 152, 153, 154, 155, 156, 159, 160, 161, 162, 164, 165, 167, 168, 170, 171, 172, 179, 189. Still, none of the paragraphs incorporated by reference include alleged transactions between Mr. Koutoulas and Plaintiffs nor any damages pled with specificity.

Moreover, paragraph 405 claims that the price of LGBCoin was "inappropriately and artificially inflated prices." This claim is contradicted by the factually correct theory of the case set forth in part in TAC at 227 that states "The sponsorship approval was unambiguous."; TAC at 288 "Based upon this written approval, Mascioli and BMS subsequently issued a press release announcing the LGBCoin sponsorship approval on December 30, 2021."; TAC at 230 " NASCAR did not deny it had given its approval or publicly issued a withdrawal of that approval until seven days later on January 5, 2023."; TAC 231 " During this seven-day period, LGBCoin soared to new all-time-highs and record volume of over 5 million on December 31, 2021, as the announcement generated millions of media views globally and thousands of new buyers purchased LGBCoin in reliance on NASCAR's approval of the LGBCoin sponsorship of Brandon's car." Count IV was

not pled in the alternative to any other counts. So again, while Plaintiffs spend 107 pages smearing Mr. Koutoulas, they admit that the rapid decline in LGBCoin was NASCAR's fault. They cannot have it both ways.

Furthermore, TAC at 406 claims that "Koutoulas received a financial benefit from the sale of LGBCoin at inflated prices and is in possession of this monetary value that was intended to be used for the benefit of, and rightfully belongs to, Plaintiffs and members of the Class." This is completely unsupported. No statements were ever made by Mr. Koutoulas that LGBcoin, as a digital collectible, would use proceeds for the direct benefit of Plaintiffs, nor do Plaintiffs even allege with particularly any such statements. Again, LGBcoin was never sold pursuant to an investment contract, SAFT, SAFE, prospectus, or any other form even remotely resembling even an investment term sheet (nor do Plaintiffs ever allege that it was). Mr. Koutoulas has said that a portion of proceeds would be used to support advocacy, charity, and political candidates and they, in fact, were. Never, ever did Mr. Koutoulas represent or insinuate that 100% of proceeds would be used for those purposes, nor do Plaintiffs allege with particularity that he did. But even still, those uses would not be for the direct monetary benefit of Plaintiffs.

And, Plaintiff DeFord acknowledged this and lauded Mr. Koutoulas months after the NASCAR revocation for doing exactly what he said he was going to do. DeFord stated via email,

> "I've been in crypto for seven years now and really am impressed with James' approach to fight back against the cancel culture, practical initiatives to help veterans and to help bring our Conservative party into the 21st century. With the current political climate across the country and beyond our borders I feel James Koutoulas would be a great topic on the Dana Show. His initiative creating a real functional crypto token, LETSGO (Lets [sic] Go Brandon) has driving purpose to actually help redirect our misguided nation. . . I do not know James or Alex personally, but can vouch for their initiatives who really care about people.[15]"

---

[15] See D.E. 113

Nowhere does Plaintiff DeFord allege that Koutoulas misled him in the slightest, rather he was happy Koutoulas was doing exactly what he said he was going to do. Given that Plaintiffs certifications do not allege any transactions with Mr. Koutoulas, therefore they do not have standing to bring this claim.

**Conclusion**

Enough is enough. This is Plaintiffs' fourth bite at the apple to plead a coherent complaint, and it is the most disjointed and contradictory of them all, despite the benefit of 8,000+ pages of ill-gotten discovery. The TAC fails to make any allegations to pierce the corporate veil whereby no claims are validly pled against Mr. Koutoulas. It is replete with contradictory, unsupported allegations, omits all but a few cites to discovered materials and public sources so it can intentionally distort them, excludes materially relevant evidence that negates allegations made against Mr. Koutoulas, and fails to establish LGBcoin as a security. Rather it merely provides conclusory allegations and recitations of elements without any factual application. It does not allege a single transaction between Plaintiffs and Mr. Koutoulas or any privity of contract between the parties. The TAC fails to establish any civil conspiracy, or any unjust enrichment. Instead, it serves solely to harass him and non-parties associated with LGBcoin. It also attempts to usurp Counts 8 and 9 from the Foundation which is the best-suited party to bring those charges (along with defamation) against NASCAR- the real culprit in this case. This is all after a year of violating the PSLRA on multiple fronts, wasting millions of dollars of costs and expenses on improper discovery. Accordingly, it is time for this Court to finally dismiss this sham proceeding with prejudice.

**Local Rule 3.01(g) Certification**

The parties conferred over the phone on June 26, 2023 and were unable to narrow the issues presented.

**Dated**: June 26, 2023.

> Respectfully submitted,
>
> */s/ Nicole Martell*
> **NICOLE MARTELL, ESQ.**
> Florida Bar No.: 100172
> nicole@ddpalaw.com
> **DI PIETRO PARTNERS, PLLC**
> 901 East Las Olas Blvd, Suite 202
> Fort Lauderdale, FL 33301
> Primary Email Address:
> service@ddpalaw.com
> Secondary Email Address:
> paralegal@ddpalaw.com
> Telephone: (954) 712-3070
> Facsimile: (954) 337-3824

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 26, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses on the Electronic Mail Notice List.

> */s/ Nicole Martell*