## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| ERIC DE FORD, et al., | Case No: 6:22-cv-652-PGB-DCI |
| Plaintiffs, | CLASS ACTION |
| v. | |
| JAMES KOUTOULAS, et al., | |
| Defendants. | |

### LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, APPOINTMENT OF CLASS COUNSEL AND SUPPORTING MEMORANDUM OF LAW

Lead Plaintiffs, through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (g), respectively move to certify this Action as a class action, appoint Lead Plaintiffs as Class Representatives, and appoint Scott+Scott Attorneys at Law LLP ("Scott+Scott") and Zigler Law Group LLC ("Zigler Law Group") as Class Counsel.

## I.    INTRODUCTION

Defendant James Koutoulas ("Koutoulas") created a cryptocurrency named LGBCoin in November 2021 and marketed it personally, and through Defendant LGBCoin, LTD ("LGBCoin"), to potential investors as having an official affiliation with NASCAR and Republican influencers and celebrities. ECF No. 245; ECF No.

338 at ¶¶ 43-105. But on January 4, 2022, NASCAR announced that there was no sponsorship. ECF No. 245 ¶11. While this played out, insiders sold and the value of LGBCoin fell to zero erasing a $570 million market cap. *Id*. ¶10, 12.[1]



Investigation of the origins of LGBCoin reveals every indication that its founders never intended LGBCoin to be successful. One founder has a history of stock price manipulation. *Id*. ¶¶17-21. Another founder wrote the LGBCoin code to allow for unrestricted insider trading and a lack of the controls to prevent abuse that best practices dictate. *Id*. ¶51. And examination of trading records shows

---

[1] Cryptocurrencies use a decentralized system commonly called the blockchain to record these transactions and issue new digital currency units. Transactions of cryptocurrencies from wallet to wallet are recorded on the blockchain's distributed public ledger, which is maintained as a database across multiple different computers. The amount of cryptocurrency transacted, the sender's wallet address, the recipient's wallet address, the date, and the time of the transfer between wallets can be viewed using various blockchain websites. https://etherscan.io/token/0x21e783bcf445b515957a10e992ad3c8e9ff51288

insiders profiting handsomely while the price of LGBCoin climbed. *Id.* ¶¶131-170.
This Court denied motions to dismiss unjust enrichment claims against Koutoulas
and LGBCoin as well as Federal and Florida unregistered securities claims against
Koutoulas. ECF No. 354 at 18-21; 23-24. Plaintiffs now move for class certification
under Rule 23(b)(3).

Class certification should be granted. The class is easily ascertainable as its
definition consists of objective characteristics established by common transac-
tional facts and includes thousands of members.

Moreover, common issues predominate over any individual issues. Courts
regularly hold that putative securities class actions raise questions of law and fact
common to all proposed class members, and that litigating unregistered securities
claims for Lead Plaintiffs will necessarily resolve them for all proposed Class
members. Those common issues also predominate over any other issues, because,
in a strict liability Securities Act case, the most substantial issue, and indeed the
"the core inquiry," is the common question of whether Defendants sold and or
solicited unregistered securities. For the same reason, Lead Plaintiffs' claims are
typical of those of the proposed Class members, as they all purchased the same
unregistered offering, and thus have identical claims based on the same

misconduct.

Certifying this case as a class action is superior to other available means of resolving this dispute, since it offers a single, efficient, and effective means for the litigants and the Court to resolve this matter at one time, rather than attempting to do so through piecemeal litigation. Many of the proposed Class members would also, as a practical matter, be barred from bringing individual cases, because the substantial costs of litigating these claims on their own would significantly diminish, if not outweigh, any potential recovery therefrom.

Finally, class-wide damages can also be calculated using a common methodology. Each of Plaintiffs' causes of action provides for recessionary relief that can be mechanically calculated for each member of the proposed classes. For these reasons, as discussed in more detail below, the Court should certify the proposed class under Rule 23(b)(3).

## II.    BACKGROUND

Plaintiffs allege that Defendants created LGBCoin and made it available for purchase. ECF No. 245 ¶¶6-17; 94-98. Defendants thereafter targeted potential LGBCoin purchasers by engaging in a widespread social media and influencer marketing strategy to increase interest in LGBCoin. ECF No. 245 ¶¶79; 83, 86-90;

99-102; 118-125; 130; 132; 158-211. But LGBCoin was never registered as a security with federal or state authorities.

The promotional activities by Koutoulas and others generated the trading volume needed for the insiders to offload their LGBCoin allocations onto unsuspecting investors. *See* Hakala Decl. ¶¶ 15-21. While Lead Plaintiffs and class members were buying the inappropriately promoted LGBCoin, Individual Defendants and their cohorts were able to, and did, sell their LGBCoin during the Relevant Period for substantial profits. Before long, insiders sold far too much of their large personal token allocations, there was no more liquidity, and the value of LGBCoin fell to zero. Lead Plaintiffs, for example, collectively lost over $15,000 on LGBCoin in 2021 and 2022. ECF No. 320.

## III.    LEGAL STANDARDS FOR CLASS CERTIFICATION

To qualify for class certification, the movant must first demonstrate that the proposed class is adequately defined and clearly ascertainable. Next, plaintiffs must establish the four requirements of Rule 23(a) and at least one of the standards of Rule 23(b) that is appropriate to the relief sought. *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025 (11th Cir. 2001). Rule 23(a) sets four threshold requirements for class certification: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common

to the class ("commonality"); (3) the claims of the representative parties must be typical of the claims of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy").FED.. R. CIV. P. 23(a).  Rule 23(b)(3) requires plaintiffs to show that common questions of law or fact predominate and that a class action is superior to other methods. *See Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021).  This case easily satisfies each of these requirements.

## IV.    THE PROPOSED CLASS

Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs move for certification of the following class:

> All persons who, between November 2, 2021 and March 15, 2022, purchased LGBCoin.

Excluded from the proposed class are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers, and directors; (c) Plaintiffs' counsel and Defendants' counsel; and (d) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

## V.    THIS ACTION SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION.

Claims regarding the sale of unregistered securities generally affect a large number of investors and focus on the conduct of the defendants as they do not

involve individual issues of reliance. Accordingly, federal courts have routinely granted class certification in Securities Act cases that are substantially similar to this one. *See, e.g.*, *Zakinov v. Ripple Labs, Inc.*, No. 18-CV-06753, 2023 WL 4303644, at *9 (N.D. Cal. June 30, 2023) (certifying nationwide class of purchasers of unregistered cryptocurrency-related securities); *see also Balestra v. Cloud With Me Ltd.*, No. 2:18-CV-00804, 2020 WL 4370392, *2 (W.D. Pa. July 2, 2020), *report and recommendation adopted*, 2020 WL 4370392, *3 (W.D. Pa. July 30, 2020) (same); *Davy v. Paragon Coin, Inc.*, No. 18-cv-00671, 2020 WL 4460446, *6 (N.D. Cal. June 24, 2020) (same); *Williams v. KuCoin*, No. 20CV2806, 2021 WL 5316013, *11 (S.D.N.Y. Oct. 21, 2021), report and recommendation adopted, No. 20CIV2806, 2022 WL 392404 (S.D.N.Y. Feb. 9, 2022) (partially certifying class of purchasers of unregistered securities i.e. TOMO tokens); *Katz v. MRT Holdings, LLC*, No. 07-61438-CIV, 2008 WL 4725284, at *6 (S.D. Fla. Oct. 24, 2008) (certifying class alleging sale of unregistered securities); *Cooper v. Miller Johnson Steichen Kinnard, Inc.*, 2003 WL 1955169, *5 (D. Minn. Apr. 21, 2003) (finding action involving claims for the sale of unregistered securities "easily" meets the predominance requirement); *Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) (finding action involving claims for sale of unregistered securities satisfies the predominance requirement).

This case is no different. Class certification should be granted.

## A.    The Proposed Class Is Ascertainable

Ascertainability serves as an implied prerequisite of Rule 23. *Cherry*, 986 F.3d at 1302. This threshold showing requires class representatives to establish that their proposed class is "adequately defined and clearly ascertainable before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." *Id.* "A class is "clearly ascertainable" if we are certain that its membership is "capable of being" determined … But membership can be capable of determination without being capable of convenient determination. Administrative feasibility is not an inherent aspect of ascertainability." *Cherry*, 108 F. 3d at 1303 (internal citations omitted).

The Eleventh Circuit recently addressed ascertainably in a matter that similarly involving claims related to the sale of an unregistered cryptocurrency. *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1370 (11th Cir. 2021). The *Rensel* court found the proposed class there was ascertainable as "[m]embership in each of the subclasses turns on the objective, verifiable criterion of having purchased a particular security within a particular date range." *Id*. (citing *Cherry* at 1303.). The *Rensel* court further found that class members were identifiable from Defendants' records or the submission of claims forms. *Id*.

As in *Rensel*, the proposed class here is both objectively defined and verifiable. Class members can easily determine their membership by referencing their own records. *See also, Williams v. KuCoin*, 2021 WL 5316013 (S.D.N.Y. Oct. 21, 2021). These records can be verified using the publicly available blockchain ledger. *See* Long Decl. at ¶14.

Although, "the party seeking certification need not establish its ability to identify class members in a convenient or administratively feasible manner," *Rensel*, 2 F.4th at 1361, here it will not be a difficult task. A class list can be constructed for notice purposes from transactional records available from Defendants, or alternatively from publicly accessible blockchain ledger information, and other public sources. As Plaintiffs' experts explain, purchasers of LGBCoin can be identified by accessing the LGBCoin transaction history on the blockchain and filtering it by those that show a swap of ETH for LGBCoin. Long Decl. at ¶14. Track and trace methodologies can be utilized to trace individual class member wallets to cryptocurrency exchanges or VASPs (Virtual Asset Service Providers), that maintain KYC (Know Your Customer) information containing personal identifiers such as name, and address. Long Decl. ¶¶22, 53. Network logs of Node Providers can be used to identify purchasers' IP addresses to reveal their geographic location. Long

Decl. at ¶42.  Additionally, notice can be securely provided to each class member

through electronic means.  Long Decl. at ¶54-55.  In short, Plaintiffs could use a

substantially similar notice plan that was approved for use in *Rensel*.[2]

**B.     Rule 23(a)(1): The class is so numerous that it would be impractica-
ble to join each class member as a party.**

A plaintiff can establish numerosity by providing a reasonable estimate of

the number of purported class members.  *See Kuehn v. Cadle Co., Inc.*, 245 F.R.D.

545, 548 (M.D. Fla. 2007).  While there is no fixed rule, generally a class size of more

than forty is adequate.  *Williams v. Wells Fargo Bank,N.A.*, 280 F.R.D. 665, 671–72

(S.D. Fla. 2012) (citing *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489–90 (S.D. Fla.

2003)).  The numerosity requirement of Rule 23(a)(1) is also generally assumed to

have been met in class action suits involving securities.  *Thorpe v. Walter Investment*

*Management Corp.* 2016 WL 4006661 (S.D. Fla. March 16, 2016).

In this case, there are thousands of putative class members.  Publicly avail-

able records show that on January 5, 2022, there were more than 10,000 unique

account holders of LGBCoin.  ECF No. 245 ¶363.[3]  Koutoulas admits thousands of

---

[2] *Rensel v. Centra Tech, Inc.*, No. 1:14-cv-24500 (S.D. Fla.) ECF. Nos. 325, 329. The *Rensel* Motion for
Approval and Order approving the Notice Plan are attached as Exhibits 9 and 10 to the Zigler
Decl.

[3] This computer-generated data is admissible for the truth of the matter asserted. *See CA, Inc. v.
Simple.com, Inc.*, 780 F.Supp.2d 196, 224 (E.D.N.Y.2009) (citing 5–900 Weinstein's Federal
footnote continues on next page ….

people bought LGBCoin.  ECF Nos. 338-35 at ¶83.  Plaintiffs' expert's event study

shows there are thousands of damaged individuals if this action's allegations are

true.  Hakala Decl. at ¶12(a).  Thus, the proposed class meets Rule 23's numerosity

requirement. *See Kron v. Grand Bahama Cruise Line, LLC,* 328 F.R.D. 694, 700 (S.D.

Fla. 2018) ("[P]roposed class satisfies the numerosity requirement as Plaintiff has

established a reasonable basis to believe that thousands of class members exist.").

### C. Rule 23(a)(2): This case involves common issues of fact and law that can be proven class-wide.

To be common, the questions must be of "such a nature that [they are] ca-

pable of class-wide resolution," such that determination of their "truth or falsity

will resolve an issue that is central to the validity of each one of the claims in one

stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Accordingly, com-

monality requires the putative class's claims to present an "issue [that] is suscep-

tible to generalized, class-wide proof."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S.

442, 453 (2016).  "A common issue is one that will likely be proved using the same

evidence for all class members; an individualized issue, by contrast, is one that

---

Evidence § 900.07[1][a] ) ("[A]bsent proof of alteration, computer generated data, such as a time
stamp attached to a file when it is saved, is generally admissible and taken as true.")

will likely be proved using evidence that varies from member to member." *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1306 (11th Cir. 2023).

Thus, examination of commonality begins with the elements of Plaintiffs' claims. For Plaintiffs' securities claims, Plaintiffs generally must show that LGBCoins were securities; LGBCoins were not registered as a security; and Koutoulas sold LGBCoins. ECF No. 354 at pp.18-20. "Failure to register [a security] results in strict liability for the recission of the transactions." *Musolino v. Yeshiva Machzikei Hadas Belz*, 137 F. App'x 321, 323 (11th Cir. 2005).

The proof of each of these elements focuses on the conduct of the defendants and accordingly, proof for one will be proof for all. LGBCoins are either securities or they are not. They are not securities for some but not for others. *See Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 197 (S.D.N.Y. 2023) ("*Howey* makes no such distinction between purchasers."). LGBCoins were either registered as securities or they were not. The answer to this question will not depend on the actions or beliefs of class members.

As for Plaintiffs' unjust enrichment claims, they must show (1) plaintiffs have conferred a benefit on Koutoulas or LGBCoin, (2) Koutoulas or LGBCoin voluntarily accepted and retained that benefit, and (3) the circumstances are such that

it would be inequitable for the Koutoulas or LGBCoin to retain it without paying the value thereof. ECF No. 354 at p. 23.

In this case, the elements of this claim also focuses on Defendants' conduct and will be common to all class members. As this Court has held "the distributed ledger of the Ethereum blockchain provides an immutable record to check if Plaintiffs conferred a sufficiently direct benefit on Defendant Koutoulas through their purchase of LGBCoin." See ECF No. 229 at 32. The blockchain records likewise provide proof that the conferred benefit was retained. Moreover, common proof, such as evidence of Defendants' fraud and wrongful motive, will show that it would be inequitable for defendants to retain these benefits.

"Unjust enrichment claims can be certified for class treatment if common circumstances bear on whether the defendant's retention of a benefit received from class members was just or not." *Haines v. Fid. Nat'l Title of Fla., Inc.*, No. 8:19-CV-2995, 2022 WL 1095961, at *19 (M.D. Fla. Feb. 17, 2022), *report and recommendation adopted*, No. 8:19-CV-2995, 2022 WL 612099 (M.D. Fla. Mar. 2, 2022).

Although a single common legal issue is sufficient for class certification, the issues here give rise to numerous common questions that can be proven though generalized class-wide evidence. These include: whether LGBCoin is a security;

whether it was registered; whether Koutoulas promoted or sold LGBCoins; whether plaintiffs conferred a sufficiently direct benefit; whether it would be inequitable for Koutoulas or LGBCoin to retain money paid for LGBCoins. These common questions of law and fact are more than enough to establish commonality under Rule 23(a)(2). *See Katz* 2008 WL 4725284, at *3 (finding similar issues of law and fact related to the sale of unregistered securities satisfied commonality requirement).

Of course, district courts addressing similar unregistered securities class actions have likewise found these issues sufficient to satisfy the commonality requirement. *See, e.g.*, *KuCoin*, 2021 WL 5316013, at *11 (partially certifying class and holding that "questions common to members of the class" include "whether the TOMO Tokens are securities" and "whether KuCoin offered or sold the TOMO Tokens to members of the class"); *Balestra*, 2020 WL 4370392, at *3 (certifying class and finding common questions include whether "Defendants offered and sold unregistered securities in violation of the federal securities laws"); *Davy*,2020 WL 4460446, at *6 ("whether the PRG Tokens qualify as 'securities'" is a common question).

**D.    Rule 23(a)(3): Plaintiffs' claims are typical of class members' claims.**

"Rule 23(a)(3) requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.' " "The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct irrespective of whether the fact patterns that underlie each claim vary." *Chianne D. v. Weida*, No. 3:23-CV-985, 2024 WL 1743334, at *22 (M.D. Fla. Apr. 23, 2024) "The main focus of the typicality requirement is that the plaintiffs will advance the interests of the class members by advancing their own interests." *Id*.

Here, like all members of the Class, Plaintiffs each allege the same legal theories against Defendants.  Plaintiffs' claims are typical of those of the Class as they have the same interests and have suffered the same injuries as the other members of the Class.  *See, e.g.*, *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008); *Williams*, 2021 WL 5316013, at *12 ("Williams' claims are typical of the claims of the putative class of persons who purchased and sold TOMO Tokens during the relevant time period[]"); *Davy*, 2020 WL 4460446, at *6 (holding typicality satisfied because "Plaintiffs allege the same harm as absent class members – purchase of PRG Tokens").

**E.       Rule 23(a)(4): Plaintiffs will adequately represent the Classes.**

15

"To satisfy the adequacy requirement, the named plaintiff and his counsel must demonstrate they will adequately protect the interests of the putative class. . . . Adequacy of representation under Rule 23(a) 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby*, 513 F.3d at 1323; *Valley Drug Co. v. Geneva Pharmaceuticals. Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Lead Plaintiffs are well suited to represent the Class. Lead Plaintiffs' interests are the same as those of the absent Class members, and there are no conflicts between them and the Class. Lead Plaintiffs' claims arise from the same events, are based on the same legal theory, and are subject to the same recovery as the other Class members, which directly aligns their interests in prosecuting the action with those of the proposed Class. Furthermore, Lead Plaintiffs have been actively involved in this litigation. As evidenced by their participation in this litigation and declarations submitted in support of the instant motion, Lead Plaintiffs are members of the class they seek to represent, are willing to serve as representative parties on behalf of the class and are aware of their fiduciary duties to absent class

members if appointed class representatives. *See* Deford Decl.; Baden Decl.; Key Decl.

**F.    Common questions of fact and law predominate over questions affecting individual class members.**

The predominance inquiry asks whether Rule 23(a)(2)'s common questions "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453. "Predominance is 'a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance.' " *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) (*quoting Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir.2014)).

The Supreme Court has recognized that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud…" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 656 (S.D. Fla. 2012) (citing *Amchem*, 521 U.S. at 625 ("Indeed, predominance is 'a test readily met in certain cases alleging consumer or securities fraud . . ..'") Indeed, unregistered securities cases are even more straightforward than the typical Section 10b-5 securities fraud case, in which predominance is

"readily met." The *Howey* test for unregistered securities is "objective," (*see U.S. Sec. & Exch. Comm'n v. Hui Feng*, 935 F.3d 721, 729 (9th Cir. 2019); *Ave. Cap. Mgmt. II, L.P. v. Schaden*, 843 F.3d 876, 884 (10th Cir. 2016)), and there is no need to show reliance or scienter. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (referring to the related 12(a)(2) claim as "virtually absolute" liability).

Thus, the important questions in this case are all common to the class. As discussed in the commonality section above, the required elements of plaintiffs' claims in this case are all best resolved through generalized proof applicable to all class members. The critical questions in this case: whether LGBCoin is a security; whether it was registered; whether Koutoulas promoted or sold LGBCoins; whether plaintiffs conferred a sufficiently direct benefit; whether it would be inequitable for Kotoulas or LGBCoin to retain money paid for LGBCoins, are all of greater importance than any individual question that defendants might raise in defense.

For example, although damages often raise numerous "individual" questions, the presence of individual damage calculations generally do not defeat a finding that common issues predominate. *Brown*, 817 F.3d at 1239.  Individual

damages only defeat predominance if computing them "will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable." *Id*. There is no such burden here.  As Plaintiffs' experts show, the data for calculating damages is readily available on the blockchain and requires simple arithmetic. Long Decl. at ¶ 48-52.

Here, there is a predominance of common questions over individual issues because the important questions – the elements of Plaintiffs' claims - present common questions that are susceptible to class-wide resolution.

### G.    Class treatment is superior to other methods of adjudication.

"The focus of the superiority analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.' " *Kron*, 328 F.R.D. at 702 (quoting *Sacred Heart Healthy Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183–84 (11th Cir. 2010)). Here, class action treatment is superior to other methods for the fair and efficient adjudication of this controversy.

The alternatives to a class action are generally either no recourse for thousands of investors who cannot afford to prosecute their claims, or a multiplicity of individual suits resulting in the inefficient administration of justice. Such "[s]eparate actions by each of the class members would be repetitive, wasteful, and

an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). This duplication of actions is the very "evil that Rule 23 was designed to prevent." *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979).

This is particularly true here as most class members made modest purchases of LGBCoin. Hakala Decl. ¶ 13. Accordingly, the "realistic alternative" to this class action is not thousands of individual suits, "but zero individual suits, as only a lunatic or a fanatic sues for $30." *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). This is why it is not at all surprising that the docket reveals no other related cases seeking restitution for the sale of unregistered LGBCoin. ECF No. 203. The only related action, LGBCoin Foundation's action against NASCAR, does not raise the claims brought in this case. ECF Nos. 338-35. Even if it did, that suit is an inappropriate alternative for these claims as LGBCoin Foundation is ineligible to bring an action in Florida. *See* Fla. Stat. Ann. § 607.1502(1) ("A foreign corporation transacting business in this state or its successors may not prosecute or maintain an action or proceeding in this state until it has obtained a certificate of authority to transact business in this state.").

Accordingly, this action is appropriate for class certification, embodying, as it does, all the hallmarks of securities class actions traditionally certified in this

Circuit and elsewhere.

### H.      Class Counsel satisfy Rule 23(G)'s adequacy requirements

Under Rule 23(g), the Court must consider (1) the work counsel has done, (2) counsel's experience handling class actions and other complex litigation, as well as the types of claims asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class. FED. R. CIV. P. 23(g)(i)-(iv).  All four factors demonstrate class counsel's adequacy here.

Both firms have extensive experience in successfully prosecuting complex financial class actions such as this Action, and are well-qualified to represent the class. ECF Nos. 320-5 and 320-6.  This Court approved the law firms of Zigler Law Group and Scott + Scott as interim lead counsel for the co-lead Plaintiffs.  ECF No. 335. "[T]he considerations pertinent to the appointment of lead counsel at the time a class is certified…applies equally to the appointment of interim lead counsel before certification."  *In re Disposable Contact Lens Antitrust*, 2015 WL 10818781 at *1 (M.D. Fla. Oct. 7, 2015).

As described more fully in previous filings in the matter,[4] both firms are experienced in the areas of class actions and securities litigation, and particularly securities litigation involving initial coin offerings.  Lead Plaintiffs' counsel have the skill and knowledge to effectively and expeditiously prosecute this action on behalf of the Class.  Additionally, Lead Plaintiffs' counsel have been vigorously prosecuting the claims on behalf of the putative claims.

Furthermore, both firms have dedicated significant resources to investigating, substantiating, and pursuing the class's claims.  Accordingly, Scott + Scott and Zigler Law Group satisfy the requirements of Rule 23(g) and should therefore be appointed Class Counsel.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court: (1) certify this action as a class action under Rules 23(a) and (b)(3); (2) appoint Plaintiffs as Class Representatives; and (3) appoint Scott + Scott and Zigler Law Group as Class Counsel.

## <u>REQUEST FOR HEARING</u>

---

[4] Both firm's resumes can be found as exhibits attached to the Masson Declaration In Support of Motion for Appointment of PSLRA Lead Plaintiff and Lead Counsel.  *See* ECF Nos. 320-5 and 320-6.

Pursuant to L.R. 7.1(b), Lead Plaintiffs request a hearing on their Motion for class certification.  Lead Plaintiffs believe that oral argument on the Motion would assist the Court with addressing any novel issues concerning cryptocurrencies and blockchain technologies that may distract from the core legal questions at issue. Plaintiffs estimate that approximately one (1) hour would be necessary to hold a hearing on this Motion.

Dated: July 22, 2024                    Respectfully submitted,

                                        s/ Aaron M. Zigler
                                        Aaron M. Zigler (admitted *pro hac vice*)
                                        Mary Jane Fait (admitted *pro hac vice*)
                                        Nidya S. Gutierrez (admitted *pro hac vice*)

**ZIGLER LAW GROUP, LLC**
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312-673-8427
aaron@ziglerlawgroup.com
maryjane@ziglerlawgroup.com
nidya@ziglerlawgroup.com

John T. Jasnoch (admitted *pro hac vice*)         Sean T. Masson (admitted *pro hac vice*)
**SCOTT+SCOTT**                                   **SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**                          **ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300                       The Helmsley Building
San Diego, CA 92101                               230 Park Avenue, 17th Floor
Tel.: 619-233-4565                                New York, NY 10169
jjasnoch@scott-scott.com                          Tel.: 212-223-6444
                                                  smasson@scott-scott.com

*Attorneys for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on July 22, 2024, I caused the foregoing to be elec-

tronically filed with the Clerk of the Court using the CM/ECF system, which will

send notification of such filing to the email addresses denoted on the Electronic

Mail Notice List.

<u>*s/ Aaron M. Zigler*</u>