UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ERIC DE FORD, SUSAN BADER, SHAWN R. KEY, Individually and on Behalf of All Others Similarly Situated, | ) Case No.: 6:22-cv-00652-PGB-DCI )  ) ) CLASS ACTION |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JAMES KOUTOULAS, LGBCoin, LTD. | ) JURY TRIAL DEMANDED ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION

Defendants, James Koutoulas ("Mr. Koutoulas") and LGBCoin, LTD., together, ("Defendants"), by and through their undersigned counsel, hereby files this Opposition to Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, Appointment of Class Counsel (the "Motion") [ECF 373], and in support thereof respectfully states:

### INTRODUCTION

As of the present date, Plaintiffs have filed four (4) versions of their complaint – Complaint [ECF 1]; First Amended Complaint (the "FAC") [ECF 21], which was dismissed *sua sponte;* the Second Amended Complaint (the "SAC") [ECF 74], in which all but one Count against Mr. Koutoulas were dismissed (*See* Order on Mr. Koutoulas' Motion to Dismiss ("Dismissal Order") [ECF 229]); and the Third Amended Complaint (the "TAC") [ECF 245] in which all Defendants other than Mr. Koutoulas and LGBCoin, LTD. were dismissed [ECF 354].

Plaintiffs bear the burden of the proving four prerequisites under Fed. R. Civ. P. 23 (a) in order to establish viability of their claims for class certification: (1) Numerosity; (2) Commonality; (3) Typicality; and (4) Adequacy. *S.S. by S.Y. v. City of Springfield, Massachusetts*, 318 F.R.D.

210 (2016); *Speerly v. General Motors, LLC*, --- F.4th ---- (2024); *Guadagna v. Zucker*, 332 F.R.D. 86 (2019).

Additionally, one of the conditions under Rule 23(b) that must be satisfied, which may include showing that separate actions by individual class members would create a risk of inconsistent adjudications, that the party opposing the class has acted on grounds generally applicable to the class, or that common questions of law or fact predominate over questions affecting only individual members and that a class action is superior to other methods for fairly and efficiently adjudicating the controversy. *Speerly v. General Motors, LLC*, --- F.4th ---- (2024); Fed. R. Civ. P. 23. Plaintiff's Motion for Class Certification fails to meet these requirements. Notwithstanding, Plaintiffs lack standing to bring a federal securities claim, and therefore the Court does not have federal question jurisdiction. There is no other basis for jurisdiction in this Court for the other claims.

## I. *Plaintiffs Committing Abuse of Process.*

Plaintiffs have been committing abuse of process for over two years. Plaintiffs' claims lack the legal sufficiency to move forward. Since initiating this action, Plaintiffs have:

1) Failed to timely comply with the Private Securities Litigation Reform Act ("PSLRA") leading to eight (8) months of illegal discovery;
2) Failed to certify a single transaction with privity between the Plaintiffs and Defendants;
3) Failed to establish any transaction at issue was the result of an initial sale;
4) Failed to demonstrate standing to bring the claims at issue; and
5) Fail to meet the jurisdictional requirements under Class Action Fairness Act ("CAFA").

By failing to timely file the required PLSRA filings for over a year, Plaintiffs have been able to avoid the fact that they still <u>have not (and cannot) certify a single transaction with privity</u> between themselves and Mr. Koutoulas or LGBcoin, LTD. or that any of the transactions occurred

through an initial sale *even* with all of the improper discovery they have benefitted from. Plaintiffs cannot allege that any of the transactions occurred through an initial sale, since all purchases were made at least seven (7) weeks *after* LGBcoin was available on Uniswap. Plaintiffs lack standing to bring their only federal question claim under Section 12 of the Securities Act and therefore they undeniably lack federal question jurisdiction to proceed in this Court, at all.

I. ***Plaintiffs do Not Have Standing to Bring Claims as a Class Action.***

Plaintiffs fail to have jurisdiction under the Class Action Fairness Act ("CAFA"), which requires an aggregate amount in controversy of $5 million to have jurisdiction to bring a federal class action under diversity. *See 28 USC* § 1332(d)(2),(6). The only surviving Defendants to this action are Mr. Koutoulas and/or LGBcoin, Ltd. Plaintiffs claimed they were seeking over $5 million in damages when NASCAR was still a party to this litigation. See TAC [ECF 245] at ¶ 61. Plaintiffs further allege that "Koutoulas received over $1.6 million for his LGBcoin sales between November 2021 and January 2022." See TAC [ECF 245] at ¶ 242. Plaintiffs have not alleged any sales of LGBcoin between themselves and Mr. Koutoulas, nor by Defendant LGBcoin, LTD. LGBcoin, LTD. has never owned a cryptocurrency wallet nor conducted any transactions with anyone, let alone Plaintiffs. Plaintiffs clearly fall short of CAFA's amount in controversy threshold and cannot have a federal class certified. Moreover, since Plaintiffs cannot proceed in this Court because the aggregate of Plaintiffs' claimed damages is only $19,000 and they also fail to meet diversity requirements for their state claims.

Plaintiffs fail to discount their unjust enrichment allegation to account for Mr. Koutoulas's numerous charitable and political donations made from a portion of the sales of LGBcoin per the articulated purpose of LGBcoin. Plaintiffs also do not discount their allegation for operating expenses advanced to the Foundation ahead of its organization being completed. The only

remaining counts allege violations of state law, which do not have an independent basis for federal jurisdiction. Instead, they are brought under a claim of diversity jurisdiction. In order maintain jurisdiction pursuant to diversity, at least one named plaintiff must allege a minimum of $75,000 in damages individually.[1] Moreover, even if each Plaintiff sought to maintain their own claims, none of them allege $75,000 individually. Given Plaintiffs also only claim $19,000 in *total* alleged damages in the TAC, Plaintiffs do not even meet diversity to proceed in federal court (other than over the mandatory PSLRA sanctions phase of this case). Nevertheless, since there are no surviving defendants beyond Mr. Koutoulas and LGBcoin, LTD., Plaintiffs surviving allegations fall far below the $5 million in damages sought. Therefore, Plaintiffs cannot proceed with state securities or unjust enrichment Class Action claims in federal court. Plaintiffs proceeded to file this Motion despite Defendants putting Plaintiffs on notice of these deficiencies.

While the above alone is sufficient for the Court to deny the Motion, Plaintiffs failed to satisfy any element of Rule 23(a) by a preponderance of the evidence as well as any provisions of 23(b) or Rule 23(g).

## Legal Standard

Fed. R. Civ. P. 23 provides:
> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; **and**
>> (4) the representative parties will fairly and adequately protect the interests of the class.
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied **and** if:
>> (1) prosecuting separate actions by or against individual class members would create a risk of:
>>> (A) inconsistent or varying adjudications with respect to

---

[1] See *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) , *Cappuccitti v. Directv, Inc.*, 611 F.3d 1252 (11th Cir. 2010).

> individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

"A party must… 'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *See Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013) quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348-52 (2011). And, a "party must . . . satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."

Accordingly, Plaintiffs must prove by the preponderance of the evidence that they meet **all** of the requirements of Rule 23(a) and at least one of the provisions of Rule 23(b). However, Plaintiffs have met *none* of these requirements.

## ARGUMENT

### I.  Plaintiffs Do Not Have Standing to Bring a Section 12(a) Claim.

As noted above, Plaintiffs were over a year late in filing the statutory mandated transaction

certifications in flagrant violation of the PSLRA. When Plaintiffs finally filed the transaction certifications, *Plaintiffs failed to certify a single transaction with either of Defendants*. "To state a claim under § [12(2)], the complaint must allege [sic] from whom they purchased shares; these assertions must be supported by specific factual allegations demonstrating *a direct relationship between the defendant and the plaintiff purchaser*." See Motion to Dismiss SAC [ECF 101] at ¶ 2, 10, 19, 29.

Standing to sue under Section 12 of the Securities Act of 1933 is limited to those "persons who have directly purchased the securities from the underwriting defendants in the subject public offering(s), and not in the secondary market." *Pub. Emps.' Ret. Sys. Of Mississippi v. Merrill Lynch & Co.,* 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (citing *Gustafson v. Alloyd Co.,* 513 U.S. 561, 578 (1995)); *see also, Caiafa v. Sea Containers Ltd.,* 525 F. Supp. 2d 398, 407 (S.D.N.Y. 2007) ("[B]ecause the plaintiffs fail to allege that they purchased the securities in a public offering, as opposed to in the aftermarket, their Section 12(a)(2) claim [is] dismissed." Therefore, if plaintiffs demonstrate that they purchased shares directly in the initial public offering, they have standing to sue under Section 12 and do not need to "trace" their purchases as they would for a Section 11 claim. *In re Am. Bank Note Holographics, Inc. Sec. Litig.,* 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000); *see also In re BioScrip, Inc. Sec. Litig.,* 95 F. Supp. 3d 711, 744 (S.D.N.Y. 2015) ("Section 12(a) provides that persons who 'offer[] or sell[] a security . . . shall be liable ... *to the person purchasing such security from him*…. 15 U.S.C. § 77l(a).'"(*emphases added*).

Notwithstanding, Plaintiffs did not allege any direct transactions with Defendants nor any initial offering transactions. Plaintiffs fail to certify a single transaction that was conducted in an initial sale by the LGBcoin Trust in early November 2021. Rather, the earliest transaction provided by the three proposed Plaintiff representatives is December 29, 2021, almost two months later.

Moreover, the certifications also lack information on what decentralized exchange the transactions were supposedly executed on, or if they were executed in the US as required under *Morrison v. National Australia Bank*, 561 U.S. 247 (2010). To the contrary, the certifications clearly show that all alleged transactions were on secondary exchanges. Not a single transaction was executed with either remaining Defendant or in an initial offering. Plaintiffs admit all of their transactions were on secondary exchanges in their depositions.[2]

Accordingly, none of the Plaintiffs have standing to bring *any* lawsuit against either Defendant, let alone act as lead Plaintiffs in a Class Action. While raised in Defendants' Motion to Dismiss, the Court's Order did not address these fatal failings, leaving the issue ripe for consideration. While the Court's Order focused on the possibility of LGBcoin as a security, its regulatory classification is irrelevant given the lack of any privity between Plaintiffs and either Defendant. Based on the foregoing, Plaintiffs cannot be considered adequate Class Representatives under Rule 23 given they lack any standing to pursue either security count. *See TransUnion LLC v. Ramirez,* 2021 WL 2599472 (U.S. June 25, 2021) (holding that to recover damages in a class action, every class member must satisfy the standing requirement of Article III); *See also Drazen v. Pinto,* 41 F.4th 1354, 1359 (11th Cir. 2022) (holding that every settlement class member must have standing before a settlement class can be certified).

Furthermore, Plaintiffs fail to allege any additional evidence in the Motion to support their flimsy allegations that LGBcoin is a security after simply reciting the elements of the *Howey* test in the TAC with no application of alleged facts. In their depositions, two proposed Class Representatives both summarily admitted that none of the *Howey* factors are met. Most notably, the two proposed Class Representatives admit they were not promised a share of profits, a share

---

[2] See Ex. 1 De Ford Transcript 115:13-116:22, 117:16-118:16; Ex. 2, Bader Transcript 85:4-90:5.

of a business, any dividends, any price appreciation, any share of transaction fees, or anything else that would satisfy the *Howey* test.[3]

The SEC recently admitted that a term "Crypto Asset Security" was incorrect and that tokens themselves are not securities, but can be the subject of securities transactions like the oranges in *Howey*. Plaintiffs have incorrectly pled that LGBcoins are securities which they are obviously are not by Plaintiffs' own admissions.[4] The cases cited by Plaintiffs are differentiated from the instant case, in that Plaintiffs fail to *allege a single trade that was an initial purchase or a single trade between any Plaintiffs and any Defendants*. Similarly, in *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 20 CIV. 10832 (AT), 2023 WL 4507900 (S.D.N.Y. July 13, 2023), which was filed as supplemental authority in this case, the Court held that:

a. "XRP, as a digital token, is not in and of itself a 'contract, transaction[,] or scheme' that embodies the Howey requirements of an investment contract" and thus, did not satisfy the third prong of the *Howey* test. *Ripple*, 20 CIV. 10832 (AT), 2023 WL 4507900, at *8.

b. Programmatic sales to public buyers on digital asset exchanges "does not establish the third *Howey* prong." *Ripple*, 20 CIV. 10832 (AT), 2023 WL 4507900, at *11.

c. "Ripple did not make any promises or offers because Ripple did not know who was buying XRP, and the purchasers did not know who was selling it." *Ripple*, 20 CIV. 10832 (AT), 2023 WL 4507900, at *12.

Therefore, Plaintiffs, whose certified transactions were exclusively secondary purchases on digital asset exchanges, would have no basis for alleging that LGBcoin is a security even if they had privity with Defendants, which they do not. Moreover, both deposed proposed Class Representations admit never being solicited by Mr. Koutoulas or having a single communication

---

[3] See Ex. 1 De Ford Transcript 31:9-32:24, Ex. 2, Bader Transcript 33:12-36:5. The third proposed Class Representative, Shawn Key, has refused to sit for a deposition for over 5 months and cannot be considered a suitable Class Representative.
[4] See *SEC v. Binance Holdings, Ltd,* DCD, Case No: 1-23-cv-01599-ABJ-ZMF, [Dkt. 273], fn 6, Discussion of SEC conflicting statements by Paul Grewal, Coinbase Chief Legal Officer, available at https://x.com/iampaulgrewal/status/1835121452938363037 (last accessed September 17, 2024).

with him prior to purchasing LGBcoin.[5]

Based on the foregoing, it is impossible for any of the Plaintiffs to serve as an adequate class representative under Rule 23 when *none of them have standing to bring a claim against either of Defendants* in federal court.

**II.     Plaintiffs Do Not Have Standing to Bring State Law Claims in this Court.**

Plaintiffs fail to allege how LGBcoin could be a security, simply claiming LGBcoins are investment contracts without supporting facts or analysis. In their depositions, the proposed Class Representatives admit that no *Howey* factors apply, *see* FN2, FN5, *infra*. As noted above, Plaintiffs do not allege a single transaction with either Defendant, nor do any of them allege a purchase of securities in an initial offering. A claim under §517.211 requires the same standing test as §12[2] described above. *See E.F. Hutton Co., Inc. v. Rousseff*, 537 So. 2d 978 (Fla. 1989). Moreover, given that <u>Plaintiffs have alleged a total of $0.00 in transactions with Defendants</u>, Plaintiffs fail to meet CAFA's $5 million amount in controversy standard, *See 28 USC § 1332(d)(2)*. No named Plaintiff has alleged $75,000 individually under this count, and thus, do not have standing to bring their state securities or unjust enrichment claims in federal court.[6]

**III.    Plaintiffs Proposed Class Does Not Meet the Superiority Threshold Required by the Federal Rules.**

A Class Action lawsuit is not a superior mechanism for pursuing relief for LGBcoin holders. Instead, The Foundation has brought an action in Miami-Dade County against NASCAR for its misconduct, which resulted in $96 million in direct damages to the Foundation and LGBcoin holders, such as the Plaintiffs. *See LetsGoBrandon.com Foundation v. NASCAR*, Miami-Dade County Court Case No. 23-002831 CA 01 (the "State Court Case). The Judge in the State Court

---

[5] See Ex. 1 De Ford Transcript 117:9-15, Ex. 2, Bader Transcript 87:14-89:13
[6] See *Exxon Mobil Corp. v. Allapattah Services, Inc.*, *supra*, *Cappuccitti v. Directv, Inc.*, *supra*.

case confirmed the Foundation has direct standing to sue for its own damages as well as indirect standing under the Trust Agreement (*See Ex. 3*) to sue on behalf of all LGBcoins for $571 million. *See Ex. 4.*

Moreover, all four of the Foundation's claims against NASCAR on behalf of all LGBcoins have survived NASCAR's Motion to Dismiss, whereas *none* of Plaintiffs' similar claims against NASCAR did in the matter at hand, further supporting the superiority of the Foundation's claims. *Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1278-79,* (11th Cir. 2009) ("This reality poses serious challenges to the efficiency and manageability of a class action proceeding. Yet Vega has done nothing to acknowledge these issues or propose a trial plan that would feasibly address them, and the district court does not appear to have given any meaningful consideration to how this case, with its individualized claims and defenses, would be tried.")

Although Plaintiff's surviving claims are separate from the Foundation's claims in the State Court Case, they arise out of common facts. The relief that Plaintiffs seek is mutually exclusive to the Foundation's claims and are vastly inferior to the Foundation's claims against NASCAR from both an adequacy standpoint and in terms of the amount of damages each lawsuit has a reasonable chance of recovering. The notion that Plaintiffs with less than 0.02% of the direct damages of the Foundation are best suited to pursue recoveries from the facts here are deeply flawed and cannot be supported by Rule 23.

The State Court case has uncovered indisputable evidence of NASCAR's actual malice, including e-mails from NASCAR representatives directing reporters such as USA Today be added to a "libel list" (*See Ex. 5*) of media to smear the Foundation. The Foundation has asserted potential damages against NASCAR in excess of $1.7 billion with punitive damages in the State Court Case. Any eventual recoveries will then be easily distributed to all coinholders via the blockchain

without a claims process (which would be incredibly complicated in this case given Plaintiffs' proposed exclusions from the Class and anonymity of the blockchain). This instant lawsuit is not superior since Plaintiffs failed to certify a single transaction that supports any securities counts, and more importantly lack standing. Moreover, the relief Plaintiffs seek would damage all coinholders by making LGBcoins illegal to trade.[7] In its answer to the State Court Case, NASCAR repeatedly pleads the existence of this proposed class action as an affirmative defense, underscoring the conflict this baseless action poses to LGBcoin holders receiving recoveries under the far superior State Court Case. *See Ex. 6, pg. 15.*

Allowing this action to continue perpetuates a massive conflict of interest. Should Plaintiffs' case be allowed to proceed, the Court would be endorsing a tyranny of the minority. The Plaintiffs' $19,000 in alleged damages (for which they have no standing to bring securities claims and accordingly no standing to bring their state law claims in this court) would jeopardize over $1.7 billion in sound claims on behalf of all LGBcoin holders, including themselves. Thus, *only* Plaintiffs' Counsel stands to benefit from the proposed Class being certified, causing the proposed Class to fail Rule 23(b)(1)(B).

Instead, these Plaintiffs, including the initial Plaintiff, Eric De Ford, who has *repeatedly admitted Mr. Koutoulas is not at fault,*[8] are conducting wasteful, attorney-driven litigation. Plaintiff De Ford admits that Plaintiffs' Counsel is his former brother-in-law[9] raising all sorts of ethical questions as to why someone who had less than 0.01% of the damages caused by NASCAR and lauded Mr. Koutoulas's efforts as a conservative advocate would seek to be in a Class

---

[7] In the United States, there is no statute or regulation that provides for the registration of an exchange to trade cryptocurrency securities. *Committee on Capital Markets Regulation, "Cryptoasset Trading Platforms Cannot Register as Securities Exchanges,"* https://capmktsreg.org/wp-content/uploads/2023/06/CCMR-Crypto-Exchanges-Cannot-Register-With-the-SEC-06-06-23.pdf
[8] *See Ex. 11, 13.*
[9] *See Ex. 1,* De Ford Transcript 100:2-4.

Representative. Assuming the proposed Class definition conservatively excludes 50% of LGBcoins **(see analysis in § IV below)** and a jury gave no setoff for the substantial operating expenses, charitable donations, and political donations made by Mr. Koutoulas and his law firm to fulfill LGBcoins' stated purpose of using a portion of sales to support charitable and political giving, from the $1.6 million in alleged damages, the three proposed Class Representatives maximum total recovery would be approximately $320 when pro-rated against the $571 million in LGBcoin value held by coinholders.

Furthermore, two of the Class Representatives admit that they have not communicated any updates to the proposed Class, nor have they met or even communicated with each other, nor have any proposed Class Members sought their representation, nor can they articulate why this proposed Class Action is superior to the State Court Case.[10] Ms. Bader admits she is essentially a professional plaintiff, having been involved in more litigations than she can remember.[11] Neither De Ford nor Bader could describe any of the claims against the surviving or dismissed Defendants, incorrectly claiming they are still suing Mr. Koutoulas for fraud, and constantly deferred questions of any evidence against Defendants to the Third Amended Complaint, or their lawyers.[12] Neither De Ford nor Bader had any awareness of the State Court Case and the relative difference in potential damages between the two cases.[13] Ms. Bader's $97 in claimed damages in this case (which assuming the same Class estimates as De Ford above) would result in approximately $0.01 recovery for her. Clearly, neither De Ford nor Bader are suitable Class Representatives.

Plaintiffs have already cost the defendants in this case over 50 times the costs and expenses they allege they were damaged. The instant litigation serves no purpose other than to massively

---

[10] See Ex. 1., De Ford Transcript 94:7-25, 105:14-108:25, Ex. 3 Bader Transcript 80:5-82:13.
[11] See Ex. 2, Bader Transcript 60:19-61:13.
[12] See generally, Ex. 1., Ex. 2., Ex. 1 4:23-9:1,73:25-74:9, 95:19-96:13, 98:2-99:24, Ex. 2 75:25-76:6
[13] See Ex. 1, 103:13-105:13, Ex. 2, 76:9-13, 81:9-82:13.

distract, drain resources, and tarnish the reputation of Mr. Koutoulas who has in good faith led the litigation on behalf of all LGBcoins in his role as trustee of the Foundation. After failing to properly add the Foundation as a party to one of their many error-ridden complaints, Plaintiffs furthermore committed abuse of process by trying to falsely attach a dba to LGBcoin, LTD in a deposition notice.[14] In that notice, Plaintiffs falsely claimed LGBcoin, LTD did business as the LGBcoin Foundation, when LGBcoin, LTD is a governance-only entity, not an operating entity. LGBcoin, LTD has never done business, especially not in the name of the Foundation. Plaintiffs demonstrate they understood that LGBcoin, Ltd. is the "sole director of LetsGoBrandon.com Foundation" emphasizing the bad faith nature of the deposition notice. See TAC [ECF 245] at ¶ 324.

Moreover, cryptocurrency is not generally well-suited to class actions. Unlike actual securities class actions, cryptocurrencies do not have a register of class members with contact names or mailing addresses or emails. It is accordingly difficult to notice cryptocurrency users. Most users disregard the proposed NFT-notice plan put forth by Plaintiffs' improperly used pre-*Daubert* 'experts' because they view them as likely phishing attempts. Claim forms are also extremely complex to complete and process. The Foundation has proposed in the State Law Class that it will simply airdrop *pro rata* net recoveries to all LGBcoin holders as of the date of NASCAR's improper revocation and libel and then use the Foundation's share of damages to buyback LETSGO so that both sets of coinholders will recoup damages without complex notice and claim processes as this proposed Class Action would require. This is a vastly more efficient, fair, and plainly superior plan to what has been proposed by Plaintiffs. Obviously $1.7 billion in potential damages is vastly superior to the $1.6 million (before discounting for donations and legitimate expenses) proposed recovery in this highly deficient matter meaning the proposed Class

---

[14] *See Ex. 10.*

fails to satisfy Rule 23(b)(3)(B).

**IV.     Plaintiffs' Class Definition Fails to Satisfy Multiple Other Sections of Rule 23.**

In ¶ 359, Plaintiffs limit the proposed Class to '*purchasers*' of LGBcoin. In ¶ 362, Plaintiffs further propose to restrict from the Class "Defendants; (b) Defendants' affiliates, agents, employees, officers, and directors;". Then in ¶ 363 they claim there are 10,000 '*holders*' of LGBcoin, but do not propose any mechanism for reconciling the three subsets and determining commonality, not to mention determining US-based holders as required in a Class Action by *Morrison v. National Australia Bank*, 561 U.S. 247 (2010). Large numbers of coins were given to charities, politically-aligned persons, and individuals in need of medical assistance from COVID19 bills. Over half of all LGBcoins minted were owned by the myriad of approximately 30 defendants (and their affiliates, employees, officers and directors) Plaintiffs named in various iterations of their complaints. Plaintiffs have proposed no way to differentiate them and ascertain[15] a cogent Class to meet the commonality requirement of Rule 23(a)(2). Moreover, Plaintiffs did not transact prior to December 29, 2021 including during what they call the "initial coin offering" and thus do not have any justification to allege a Class Period beginning on December 28, 2021 let alone November 2, 2021, shrinking the range of a Class they could represent even further.

Given Plaintiffs complete failure to differentiate these subsets of LGBcoin holders, it has not met its burden of showing common questions of law or fact as required under 23(a)(2) or how these questions predominate under 23(b)(3).

**V.     Plaintiffs Fail to Pierce the Corporate Veil.**

Other than LGBcoin, LTD. which has never had a cryptocurrency wallet or bank account,

---

[15] "Ascertainability" is an implicit requirement within Rule 23 that requires that class members be identifiable. *See City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 443 (3d Cir. 2017). The Eleventh Circuit has also applied the requirement but only in unpublished opinions. 867 F.3d 434, 443 n.3.

Plaintiffs maintain this action against Mr. Koutoulas in his individual capacity alleging statutory and common law violations. Plaintiffs have not certified a single transaction with privity with either Defendant. Rather, Plaintiffs' claims are premised entirely on actions Mr. Koutoulas took while either serving as trustee on behalf of all LGBcoins, or as an authorized person on behalf of the director of the Foundation. Pursuant to a Trust Agreement dated October 29, 2021, Koutoulas Law, LLC, served as the trustee on behalf of all LGBcoins pending the completion of the formal organization of the Foundation. A true and correct copy of the Trust Agreement is attached as Exhibit 3. Plaintiffs have failed to allege actionable grounds to hold Mr. Koutoulas personally liable for actions taken on behalf of the Foundation in his capacity as either an authorized person or trustee. Plaintiffs failed to allege sufficient facts to warrant a piercing of several corporate veils of either Defendants, to wit: the Trust and the Foundation for both Defendants; and LGBcoin, Ltd. and Koutoulas Law, LLC for Mr. Koutoulas, individually.

Under Florida law, the corporate veil will not be pierced unless the party requesting that the corporate veil be pierced pleads "instrumentality and improper conduct."[16] Plaintiffs failed to cite to any authority, legal or factual grounds, to bring claims against either surviving Defendants. In fact, Plaintiffs had their common law fraud claim against Mr. Koutoulas dismissed *with prejudice*. Without any surviving fraud claims, Plaintiffs have no standing to pierce the corporate veil and name Defendants for *any* count.

### VI. Plaintiffs' Counsel have Persistently and Willfully Violated Their Duty to Investigate Under Rule 11(b) and Rule 23(g)(1)(A)(i)

In the Order on Defendants' Motions to Dismiss this Court stated that "Defendant

---

[16] See *Cowan v. Florida Dep't of Bus. & Prof'l Regulation*, 207CV184FTM29SPC, 2008 WL 11334899, at *2 (M.D. Fla. May 7, 2008) citing *Raber v. Osprey Alaska, Inc.*, 187 F.R.D. 675, 678–679 (M.D. Fla.1999); *Morris v. Bischoff*, 1997 WL 128114 *8 (M.D. Fla. March 4, 1997)); *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1117 (Fla.1984).

NASCAR took actions to correct this public misperception, which led a representative for Brandonbilt Motorsports to request that Defendant NASCAR "correct the misleading narrative that [Defendant] NASCAR had leaked to the media." (Id. ¶ 302).""" [ECF 354 at p. 27], Discovery has shown that not only is that incorrect, but that NASCAR maliciously ordered reporters added to a "libel list" of media to widely spread maliciously false statements to, causing the $390 million single day drop in the aggregate value of LGBcoins. *See Generally, Ex. 6- 3rd Amended Complaint, page 4, 20-27, Ex. 5*. Plaintiffs have been on notice of this for over a year with proof of NASCAR's willful libel produced to Plaintiffs under their ill-gotten discovery. To maliciously continue to subject Mr. Koutoulas to the cost, expenses, and unwarranted reputational damage of this litigation when he and the Foundation were obvious targets of libel is unconscionable and yet another reason the Class must not be certified under Rule 23(a)(4).

Furthermore, Plaintiffs have repeatedly admitted that Mr. Koutoulas is not at fault. Plaintiffs *admit* that NASCAR *did approve* the on-track sponsorship and that Mr. Koutoulas *reasonably relied upon NASCAR's representations*.[17] [ECF 74 at ¶¶ 85, 120, 215, 216] *See also* Ex. 11 and 13[18]. Plaintiffs *admit* that NASCAR *did approve* the on-track sponsorship and that Mr. Koutoulas *reasonably relied upon NASCAR's representations*. [ECF 74 at ¶¶ 85, 120, 215, 216]. The Court must not deem these Plaintiffs "adequate" when they have repeatedly admitted that Mr. Koutoulas is not at fault and therefore should be denied as adequate Class Representatives. Moreover, Plaintiffs have repeatedly ignored the fact that the documented Sponsorship Agreement (*See Ex. 8)* gave the Foundation the use of Brandon Brown's name, image, and likeness and offtrack sponsorship regardless of the status of the on-track sponsorship approval, so their baseless claims that Mr. Koutoulas somehow lied about LGBcoin having an affiliation with Brandon Brown

---

[17] See Ex. 6, pg 3.
[18] Luchadude is Plaintiff Eric De Ford's telegram screen name.

are patently false. Neither of the proposed Class Representatives can point to a single specific piece of evidence that Mr. Koutoulas lied to them about anything involving LGBcoin.[19] Continuing to maintain false claims against Mr. Koutoulas in the face of ample evidence and Plaintiffs' admissions to the contrary violates Rule 23(g)(1)(A)(i) and Rule 11(b).

### VII. Plaintiffs Claims are Adverse to the Proposed Class

Rule 23(a)(4) requires Class Representatives to adequately protect the interests of the Class. If Plaintiffs' wholly defective securities counts were somehow "successful," the resulting relief would be unconscionable as it would it make LGBcoin's successor, LETSGO, untradeable in the US as there is no registered broker dealer capable of trading a security meme coin. There does not exist in the United States any statute or regulation to provide for the registration of a crypto security broker dealer, nor is there one for registering a meme coin as a security. Moreover, only 5 of 23,000 cryptocurrencies are registered in the US, and account for approximately 0% of volume traded in the US.[20] If LGBcoin was ruled a security, it would be an instant death sentence for the coin and destroy the five-million-dollar market value of LETSGO coins as of September 30, 2024 based on the flawed reasoning of Plaintiffs with $19,000 in alleged damages and no standing to pursue securities claims against either remaining Defendant.

Moreover, should the Foundation, prevail against NASCAR in the State Court Case on behalf of all coin holders, the full peak value of all coins would likely be restored fully or near its entirety. In that case, the "relief" sought by Plaintiffs would destroy approximately $571 million in value, as transactions involving those coins would be illegal. If punitive damages are imposed on NASCAR, Plaintiffs could destroy over a billion dollars in value should they prevail in this

---

[19] See Ex. 1 De Ford Transcript 33:19-35:19, Ex. 2, Bader Transcript 36:5:42:24, 46:19-55:20
[20] Committee on Capital Markets Regulation, *"Cryptoasset Trading Platforms Cannot Register as Securities Exchanges," supra.*

deficient action. Moreover, if somehow their baseless claims survived appeal, the ruling could be used as precedent against the hundreds of billions of dollars in value represented by other meme coins which have existed since 2010 without such security classification and make those untradeable and effectively worthless to US customers. This would include damaging the initial lead Plaintiff, Eric De Ford, who stated he has traded other meme coins since 2015.[21]

Furthermore, Mr. Koutoulas continues to be well supported by the LGBcoin community of coinholders who, other than the three (3) Plaintiffs with 0.02% of alleged damages, support his prosecution of the State Court Case as trustee of the Foundation and continued political advocacy. Meanwhile, *no one* aside from Plaintiffs, has expressed support for their proposed Class Action, but rather for the State Court Case and Mr. Koutoulas which have widespread support in the LGBcoin community. *See Ex. 9.* Clearly, Ex. 9 shows that the proposed Class is not in favor of concentrating LGBcoin-related litigation in this jurisdiction as required by Rule 23(b)(3)(C). Even Plaintiff De Ford has endorsed the advocacy initiatives Mr. Koutoulas has carried out as trustee for the Foundation and personally engaged in promotion of the coins, subsequent to the destruction in value caused by NASCAR. *See Ex. 11.*

### VIII. Plaintiffs' Improperly Rely on Purported Expert Reports ahead of *Daubert* Motions.

In the Eleventh Circuit, evidence in support of class certification generally must be admissible.[22] In *American Honda Motor Co. v. Allen*, the seminal decision for this approach, the Seventh Circuit held that a complete *Daubert* analysis must be performed prior to class certification when the expert opinion "is critical to class certification."[23] The Eleventh Circuit has

---

[21] See Ex. 11, Ex. 12
[22] *See Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–17 (7th Cir. 2010).
[23] *Id.* at 816; *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812–13 (7th Cir. 2012) (holding that regardless of how a court rules on a certification motion, it must first "conclusively" decide any *Daubert* issues on expert testimony that are "critical" to the certification decision).

favorably cited and applied the *American Honda* rule in an unpublished decision.[24] Plaintiffs have prematurely submitted expert reports in an improper attempt to support the evidentiary standards of Rule 23, and Defendants ask that this Court does not consider them for purposes of the Motion.

### IX. Plaintiffs' Counsel does not Satisfy Rule 23(G)'s adequacy requirements

Plaintiffs' counsel is not well-qualified to pursue a Class Action. For instance, Plaintiffs' counsel flagrantly violated the PSLRA multiple times and is subject to mandatory sanctions which this Court has deferred until the conclusion of this litigation. Moreover, Plaintiff's Counsel has repeatedly abused the class action process by knowingly filing false claims against Mr. Koutoulas. It has filed glaringly deficient motions, such as the instant Motion, which does not allege a single transaction with Defendants. By failing to timely file the required PLSRA certifications, Plaintiffs' Counsel improperly concealed Plaintiffs' inability to allege a single transaction in privity with defendants, which is required for standing in both of its securities counts or meet the threshold damages for diversity. Plaintiffs' counsel has also filed claims in direct contradiction of its clients' statements and seeks relief purportedly for the benefit of a tiny subset of LGBcoin purchasers that would damage the rest of the proposed Class, and even Plaintiffs themselves. Additionally, prior to this Court granting a Motion to Compel, Plaintiffs refused to make themselves available for depositions in the forum *they* chose despite opposing Mr. Koutoulas's *forum non conveniens* motion, unjustly depriving Mr. Koutoulas of this crucial discovery to contest their adequacy in this response until right before the extended deadline to file this motion. Proposed Class Representative Key has dodged depositions for over 5 months and has failed to respond to RFPs requiring Defendants to file a motion to compel and they do not have the benefit of his testimony for this response. Plaintiffs must not be rewarded for their continuous illegal and unethical conduct by

---

[24] *See Sher v. Raytheon Co.*, 419 F. App'x 887, 890–91 (11th Cir. 2011) (citing *Am. Honda*, 600 F.3d at 817).

having this highly-deficient proposed Class certified.

WHEREFORE, Defendant, James Koutoulas, respectfully requests that the Court enter an Order denying Plaintiffs' Motion with Prejudice together with such further relief this Court deems just and proper and move this case to the mandatory sanctions phase as dictated by the PSLRA.

**Dated**: October 2, 2024.

Respectfully submitted,

*/s/ Nicole Martell*
**NICOLE MARTELL, ESQ.**
Florida Bar No.: 100172
nicole@ddpalaw.com
**DI PIETRO PARTNERS, PLLC**
901 East Las Olas Blvd, Suite 202
Fort Lauderdale, FL 33301
Primary Email Address:
service@ddpalaw.com
Secondary Email Address:
paralegal@ddpalaw.com
Telephone: (954) 712-3070
Facsimile: (954) 337-3824

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 2, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses on the Electronic Mail Notice List.

*/s/ Nicole Martell*