**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ERIC DE FORD, SANDRA
BADER and SHAWN R. KEY,**

               **Plaintiffs,**

**v.**                                **Case No: 6:22-cv-652-PGB-DCI**

**JAMES KOUTOULAS and
LGBCOIN, LTD,**

               **Defendants.**

_____/

**<u>ORDER</u>**

This cause is before the Court upon Plaintiffs Eric De Ford, Sandra Bader, and Shawn R. Key's (collectively, the "**Plaintiffs**" or the "**named Plaintiffs**") Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel. (Doc. 373 (the "**Motion**")). Defendants James Koutoulas and LGBCoin, LTD (collectively, the "**Defendants**") filed a response in opposition. (Doc. 403 (the "**Response**")). Additionally, Defendants filed two notices of supplemental authority. (Docs. 439, 445 (the "**Notices of Supplemental Authority**")). Plaintiffs filed a reply. (Doc. 406 (the "**Reply**")). Upon due consideration, the Motion is due to be granted in part and denied in part.[1]

---

[1] The Court notes that a *pro se* non-party filed a Motion to Intervene pursuant to Federal Rule of Civil Procedure 24. (Doc. 452). The Court will address the Motion to Intervene by separate order.

## I.    BACKGROUND

The lengthy factual and procedural backgrounds of this case are largely laid out in the Court's prior orders. (*See*, *e.g.*, Docs. 229, 354, 388, 389).

This putative class action was initiated on April 1, 2022, and arises from the creation, marketing, and sale of LGBCoin, a cryptocurrency. (Doc. 1). Defendant James Koutoulas ("**Defendant Koutoulas**") created LGBCoin in November of 2021 and marketed it both personally and through Defendant LGBCoin, LTD ("**Defendant LGBCoin**"). (Doc. 373, p. 1). The named Plaintiffs, Eric De Ford, Sandra Bader, and Shawn R. Key, purchased LGBCoin and now bring suit on behalf of themselves and all others similarly situated nationwide. (Doc. 245, ¶¶ 19–21; Doc. 376, ¶¶ 2–11; Doc. 377, ¶ 2; Doc. 378, ¶¶ 2–4).

The following claims remain: (1) violation of Section 12(a)(1) of the Securities Act of 1933 (15 U.S.C. § 77l(a)(1)) against Defendant Koutoulas; (2) unjust enrichment against Defendant Koutoulas; and (3) unjust enrichment against Defendant LGBCoin. (Doc. 245 (the "**Third Amended Complaint**"), ¶¶ 369–81, 404–07, 416–19; *see generally* Docs. 1, 21, 74, 229, 245, 354).

Ultimately, Plaintiffs filed the instant Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel. (Doc. 373).[2] Defendants filed a Response to the Motion, and Plaintiffs filed a Reply

---

[2]    Plaintiffs' supporting evidence can be located at Docs. 374 through 379. (*See*, *e.g.*, Doc. 374 (Expert Declaration of Scott D. Hakala, Ph.D., CFA); Doc. 375 (Expert Declaration of Brennan Long); Doc. 376 (Declaration of named Plaintiff Eric De Ford); Doc. 377 (Declaration of named Plaintiff Sandra Bader); Doc. 378 (Declaration of named Plaintiff Shawn R. Key); Doc. 379 (Declaration of attorney Aaron M. Zigler and accompanying exhibits)).

thereto. (Docs. 403, 406). Defendants subsequently filed their Notices of Supplemental Authority. (Docs. 439, 445). The matter is thus ripe for the Court's review. Upon consideration, the Court grants the Motion in part and denies it in part.

## II.    STANDARD OF REVIEW

"Questions concerning class certification are left to the sound discretion of the district court." *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985). To certify a class action, the moving party must satisfy several prerequisites. First, the movant must demonstrate that the named plaintiffs have standing. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). Second, the putative class must meet the requirements enumerated and implied in Federal Rule of Civil Procedure 23(a). *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Those requirements are ascertainability, "numerosity, commonality, typicality, and adequacy of representation." *Id.* (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003)). Third, the putative class must fit into at least one of the three class types defined by Rule 23(b). *Id.*

Certifying a class involves "rigorous analysis of the [R]ule 23 prerequisites." *Vega*, 564 F.3d at 1266 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). Ultimately, the burden to show that the elements required for certification are "in fact satisfied" lies with the moving party. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013)). "Of course, the district court can consider

the merits 'only' to the extent 'they are relevant to determining whether the Rule
23 prerequisites'" are met. *Id.* (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr.
Funds*, 568 U.S. 455, 466 (2013)); *Vega*, 564 F.3d at 1266 (quoting *Valley Drug*,
350 F.3d at 1188 n.15) (noting the class certification inquiry is not a merits
determination, though the court "can and should consider the merits of the case to
the degree necessary to determine whether the requirements of Rule 23 will be
satisfied"). "But if a question of fact or law is relevant to that determination, then
the district court has a duty to actually decide it and not accept it as true or construe
it in anyone's favor." *Brown*, 817 F.3d at 1234 (citing *Comcast*, 569 U.S. at 33–34).

## III.    DISCUSSION

Plaintiffs seek to certify the following class pursuant to Federal Rule of Civil
Procedure 23(a) and 23(b)(3): "All persons who, between November 2, 2021, and
March 15, 2022, purchased LGBCoin." (Doc. 373, p. 6 (the "**Class**")). The following
persons are excluded from the Class: Defendants; Defendants' affiliates, agents,
employees, officers, and directors; Plaintiffs' counsel and Defendants' counsel; and
Judge Byron, his staff, and any member of his immediate family. (*Id.*).

The Court first addresses Defendants' miscellaneous arguments in the
Response. Next, the Court addresses Article III standing. Finally, the Court
analyzes each of the requirements for class certification under Rule 23(a) and Rule
23(b)(3). However, the Court's Rule 23(a) analysis is limited to Plaintiffs' Section

12(a)(1) claims because the Court's Rule 23(b)(3) predominance analysis is
dispositive of Plaintiffs' unjust enrichment claims.[3]

### A.    Defendants' Miscellaneous Arguments

As an initial matter, the Court notes that Defendants' Response is largely
composed of "perfunctory and underdeveloped" arguments, and thus, the Court
need not consider such arguments.[4] (Doc. 403); *see U.S. Steel Corp. v. Astrue*, 495
F.3d 1272, 1287 n.13 (11th Cir. 2017) (noting that the court need not consider
"perfunctory and underdeveloped" arguments and that such arguments are
waived). In any event, the Court briefly addresses and rejects the arguments that
are somewhat supported.

#### 1.    Merits Contentions

##### a.    Plaintiffs' Standing to Sue Under Section 12(a)(1)

Defendants' Response primarily hinges on the assertion that Plaintiffs lack
"standing" to sue under Section 12 of the Securities Act of 1933.[5] (Doc. 403, pp. 5–

---

[3]   "Because the Court finds Rule 23(b)(3)'s predominance requirement to be dispositive here, it
limits its discussion to that aspect of the certification inquiry." *See Birmingham v. RoFx.net*,
No. 21-cv-23472, 2023 WL 3378177, at *3–5 (S.D. Fla. May 11, 2023).

[4]   In the Response, Defendants adopt the approach of throwing every argument at the wall with
the hope that the Court will sift through to see what sticks. (*See generally* Doc. 403). For
example, Defendants fail to develop several arguments and fail to cite to legal authority or to
the record. (*Id.*). In the few instances where there are citations, the citations are either
incomplete, inaccurate, or do not properly support the stance Defendants present. (*Id.*).
Further, in a cursory manner, Defendants recycle various arguments that the Court has
thoroughly addressed in previous Orders. (*Id.*). The Court advises defense counsel to refrain
from such practices in all future filings.

[5]   Defendants seemingly conflate Article III standing with "statutory standing." (*See* Doc. 403,
p. 7 (relying on Article III to argue that Plaintiffs cannot state their claims under Section
12(a)(1)); *see also* Doc. 403, pp. 5–7, 11, 17, 19). Article III standing limits "the judicial power
to resolving 'Cases' and 'Controversies.'" *See Lexmark Int'l, Inc. v. Static Control Components,*

7, 11, 17, 19). While this assertion seemingly relates to a merits determination, the Court addresses it to the extent Defendants maintain that it pertains to the Rule 23 requirements. *See Vega*, 564 F.3d at 1266 (noting that courts "can and should consider the merits of the case [only] to the degree necessary to determine whether the requirements of Rule 23 will be satisfied" (quoting *Valley Drug*, 350 F.3d at 1188 n.15)).

In sum, Defendants maintain that Plaintiffs cannot pursue their claims under Section 12(a)(1) because they have not alleged "any direct transactions with Defendants nor any initial offering transactions." (Doc. 403, p. 6). Defendants thus conclude that "it is impossible for any of the Plaintiffs to serve as an adequate representative under Rule 23." (*Id.* at p. 8). In support, Defendants cite to cases analyzing claims under Section 12(a)(2). (*Id.* at p. 6). Plaintiffs' claims, however, arise under Section 12(a)(1). (Doc. 245, ¶¶ 369–81). Yet, Defendants do not cite to—nor has the Court otherwise located—any cases supporting their assertion that Plaintiffs cannot bring their Section 12(a)(1) claims for secondary market purchases. (*See* Doc. 403).

Like the Defendants here, the defendants in *Hardin v. TRON Foundation*, No. 20-CV-2804, 2024 WL 4555629, at *11–12 (S.D.N.Y. Oct. 23, 2024) made the

---

*Inc.*, 572 U.S. 118, 125 (2014). As such, the requirements for Article III standing are grounded in the Constitution and are further discussed *infra* Section III.B. *See id.* In contrast, "statutory standing" seeks to "ascertain, as a matter of statutory interpretation, the scope of the private remedy created by Congress . . . and the class of persons who could maintain a private damages action under that legislatively conferred cause of action." *Id.* at 126. Thus, Defendants' "standing" assertion refers to statutory standing—rather than Article III standing—because Defendants' arguments challenge whether Plaintiffs can maintain their claims under Section 12(a)(1). (*See* Doc. 403, pp. 5–7, 11, 17, 19).

same, mistaken assertion.[6] The *Hardin* court clarified that "unlike Section 12(a)(2), Section 12(a)(1) applies to the unlawful sale of an unregistered security in an initial offering and in any subsequent sales." *See id.* (collecting cases); *see also Zakinov v. Ripple Labs, Inc.*, No. 18-cv-06753-PJH, 2020 WL 922815, at *11–12 (N.D. Cal. Feb. 26, 2020) (analyzing the statutory text in support of this proposition). The *Hardin* court also clarified the Supreme Court's decision in *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), a case that Defendants here rely upon in their Response. (Doc. 403, p. 6)*; see Hardin*, 2020 WL 922815, at *11; *see also Zakinov*, 2020 WL 922815, at *11 (clarifying *Gustafson* in the same context). Specifically, the *Hardin* court explained that in *Gustafson*:

> [T]he word "prospectus" in Section 12(a)(2) of the Securities Act applied to "documents related to public offerings by an issuer or its controlling shareholder," thus barring Section 12(a)(2)'s application to secondary market purchasers that do not involve a prospectus. [] However, Section 12(a)(1) does not include any reference to a prospectus, but rather provides that "[a]ny person who . . . offers or sells a security in violation of section [5] of this title . . . shall be liable, subject to subsection (b), to the person purchasing such security from him." 15 U.S.C. § 77l(a).

*See Hardin*, 2020 WL 922815, at *11 (citations omitted).

Thus, "[t]he logic that prohibits secondary market purchasers from bringing a claim under Section 12(a)(2) because they did not participate in the initial coin offering does not extend to Section 12(a)(1) claims," and the Court declines to extend it here. *Id.* at *12; *see Zakinov*, 2020 WL 922815, at *12 (finding that it may

---

[6]   "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018).

consider a Section 12(a)(1) claim "outside the initial distribution context" because "subsection (a)(1) provides a broader basis for assigning liability than its subsection (a)(2) counterpart"). Consequently, the Court finds Defendants' arguments as to Section 12(a)(1) "standing" unavailing.

### b.    Whether LGBCoin Is a Security

Next, in the Response and in the Notices of Supplemental Authority, Defendants, ad nauseam, raise the argument that LGBCoin should not be considered a security. (*See* Docs. 403, 439, 445). The inquiry of whether LGBCoin is a security relates to the elements of Plaintiffs' Section 12(a)(1) claims. *See* discussion *infra* Section III.D.1.a. (outlining the elements of a Section 12(a)(1) claim). As such, this is a merits contention that the Court may only consider to the degree necessary to decide the certification issues at this procedural juncture. *See Brown*, 817 F.3d at 1234 (citing *Amgen*, 568 U.S. at 466); *Zakinov v. Ripple Labs, Inc.*, No. 18-cv-06753-PJH, 2023 WL 4303644, at *3–4 (N.D. Cal. June 30, 2023) (referring to the question of whether the cryptocurrency was a security as a merits issue). While Defendants repeatedly raise this merits contention, they fail to demonstrate how this contention is relevant to the Court's Rule 23 analysis. (*See* Docs. 403, 439, 445). Therefore, the Court may not address this argument.[7] *See Amgen*, 568 U.S. at 466 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." (citations omitted)).

---

[7]    The Court will, of course, consider these merits arguments at the proper procedural posture.

### c.    Piercing the Corporate Veil

Next, devoid of any legal authority in support, Defendants assert that Plaintiffs fail to pierce the corporate veil. (Doc. 403, pp. 14–15). This argument, too, is a merits contention, and thus, the Court will not consider it at this procedural juncture. *See Brown*, 817 F.3d at 1234 (citing *Amgen*, 568 U.S. at 466); *see also supra* note 7. Additionally, the Court previously rejected this exact argument raised by Defendant Koutoulas.[8] (*See* Doc. 354, p. 18 n.8).

### 3.    Arguments Previously Addressed by the Court

Then, Defendants vaguely allude to Plaintiffs' alleged violations of the Private Securities Litigation Reform Act ("**PSLRA**"). (Doc. 403, pp. 2, 6, 19). The Court invites Defendants to review three of its prior Orders in which it addressed Defendants' similar arguments regarding the PSLRA. (*See* Docs. 284, 300, 354).

Finally, in a cursory manner, Defendants repeatedly argue that Plaintiffs have not alleged a "single transaction in privity with" Defendants. (Doc. 403, pp. 2, 7–8, 15). As Plaintiffs note in their Reply, the Court previously rejected this argument when it ruled on Defendant Koutoulas's Motion to Dismiss. (Doc. 406, p. 2; *see* Doc. 229, pp. 37–39)

---

[8] In an Order ruling on Defendant Koutoulas's Motion to Dismiss, the Court welcomed him "to bring this defense later at a different procedural posture." (Doc. 354, p. 18 n.8). However, as explained above, class certification is typically not the proper procedural posture to raise merits contentions. To the extent Defendant Koutoulas seeks to raise this argument again, the Court cautions Defendant Koutoulas that, per the Court's prior Order, he must "marshal record evidence to warrant" his conclusion as to piercing the corporate veil. (*See id.*).

### B.    Standing

A plaintiff's standing to bring and maintain a lawsuit is a fundamental component of a federal court's subject matter jurisdiction. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To establish standing, the plaintiff bears the burden of demonstrating that he suffered an actual injury, that a causal connection exists between the injury and the defendant's conduct, and that the injury is likely to be redressed by a favorable decision. *Harrell v. Fla. Bar*, 608 F.3d 1241, 1253 (11th Cir. 2010). Prior to summary judgment, meeting these elements is not a particularly onerous task and will be completed by asserting "general factual allegations of injury resulting from the defendant's conduct." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Only the named plaintiffs in a putative class action must demonstrate standing upon seeking certification, even while courts must eventually ensure that no relief is granted to absent class members who might later turn out not to have standing. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271–74 (11th Cir. 2019).

The named Plaintiffs allege facts sufficient to demonstrate their standing to bring and maintain their claims. The named Plaintiffs purchased LGBCoin and consequently suffered investment losses. (Doc. 245, ¶¶ 19–21; Doc. 376, ¶¶ 2–11; Doc. 377, ¶ 2; Doc. 378, ¶¶ 2–4; Doc. 403-1, 28:18–20, 30:20–31:6, 83:17; Doc. 403-2, 11:25–12:3, 12:21–22). The named Plaintiffs demonstrate a causal connection between their financial injury and Defendants' promotion and sale of

LGBCoin. (Doc. 245, ¶¶ 22, 28; Doc. 374, pp. 4, 29–32). Finally, Plaintiffs' financial injuries will be redressed assuming a favorable judgment through damages.

## C.    Rule 23(a)[9]

"The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug*, 350 F.3d at 1187. As a threshold matter, "the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004).

### 1.    *Ascertainability*

Ascertainability is an implied prerequisite of Rule 23(a). *Cherry v. Domestic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021); *Little*, 691 F.3d at 1304. "Before a district court may grant a motion for class certification, a plaintiff seeking to represent a putative class must establish that the putative class is adequately defined and clearly ascertainable." *Little*, 691 F.3d at 1304. To that end, "a putative class is ascertainable if it is adequately defined such that its membership is capable of determination." *Cherry*, 986 F.3d at 1302. The Eleventh Circuit, however, does not require administrative feasibility under Rule 23(a)'s ascertainability requirement. *Id.* at 1302–04. Instead, ascertainability requires only that the class definition avoid vague or subjective criteria so that it is adequately defined. *Id.* at

---

[9] The Court again notes that because its Rule 23(b)(3) predominance analysis is dispositive as to Plaintiffs' unjust enrichment claims, the Court limits its Rule 23(a) analysis to Plaintiffs' Section 12(a)(1) claims. *See supra* note 3. As such, because Plaintiffs' Section 12(a)(1) claims are pled only as to Defendant Koutoulas, the Court limits most of its discussion to Defendant Koutoulas.

1302. Put another way, if the putative class contains vague or subjective criteria, then the certifying court cannot ascertain who belongs in the class. *Id.*

Here, Plaintiffs contend that the class is readily ascertainable because "[a] class list can be constructed for notice purposes from transactional records available from Defendants, or alternatively from publicly accessible blockchain ledger information, and other public sources." (Doc. 373, pp. 8–9). In support of the blockchain ledger option, Plaintiffs provide an expert declaration to explain the use of the blockchain to identify, verify, and notify purchasers of LGBCoin.[10] (*See id.* at pp. 9–10; *see also* Doc. 375). In response, Defendant Koutoulas summarily argues that Plaintiffs "have proposed no way to differentiate" the excluded persons from the Class definition. (Doc. 403, p. 14).

The Court finds that Plaintiffs sufficiently demonstrate that Class "membership is capable of determination." *Cherry*, 986 F.3d at 1302. Indeed, membership in the Class turns on the objective, verifiable criterion of having purchased LGBCoin during the specific dates of the Class period. (Doc. 373, pp. 8–

---

[10] In the Response, Defendant Koutoulas asks the Court to not consider Plaintiffs' expert reports for the purposes of this Motion. (Doc. 403, pp. 18–19). Defendant Koutoulas cites to the Eleventh Circuit's unpublished opinion in *Sher v. Raytheon Co.*, 419 F. App'x 887, 890–91 (11th Cir. 2011) for the proposition that "a complete *Daubert* analysis must be performed prior to class certification when the expert opinion 'is critical to class certification.'" (*Id.*). Defendant Koutoulas's reliance on *Sher* is misguided. (*See id.*). The *Sher* court explained that: "In *American Honda* [*Motor Co., Inc. v. Allen*, 600 F.3d 813 (7th Cir. 2010)], the Seventh Circuit found that 'when an expert's report or testimony is critical to class certification, as it is here . . . , a district court *must conclusively rule on any challenge to the expert's qualifications or submissions* prior to ruling on a class certification motion.'" 419 F. App'x at 890 (emphasis added). Accordingly, in *Sher*, the Eleventh Circuit found "that the district court erred by not weighing conflicting expert testimony presented by both parties at the class certification stage." *Id.* at 891. Such is not the case here. Defendant Koutoulas has not provided conflicting expert testimony, nor has he submitted any challenges to the qualifications or submissions of Plaintiffs' experts.

10; *see* Docs. 374, 375). As detailed by Plaintiffs' expert, "track and trace" methodologies can be used to trace "information containing personal identifiers such as name [] and address." (Doc. 373, p. 9 (citing Doc. 375, ¶¶ 22, 53); *see* Doc. 373, p. 2 n.1). With this information, Plaintiffs can identify and separate those persons excluded from the Class definition. Plaintiffs have thus, in fact, proposed a way to differentiate the excluded persons from the Class definition, and consequently, Defendant Koutoulas's argument fails.

2.   *Numerosity*

Numerosity requires that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). A general rule of thumb is that more than forty members is sufficient to demonstrate that joinder is impracticable. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012). While the party seeking certification need not identify the exact number of members in the putative class, they cannot rest on "mere allegations of numerosity." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). Rather, the movant must provide the court with sufficient proof to support a reasoned finding that the certified class would meet the numerosity requirement. *Vega*, 564 F.3d at 1267.

Plaintiffs maintain there were "more than 10,000 unique account holders of LGBCoin" during the Class period. (Doc. 373, p. 10 (citing Doc. 245, ¶ 363)). In support, Plaintiffs provide an expert declaration detailing that "[t]here were thousands of accounts and trades analyzed from publicly available decentralized exchange data" for LGBCoin. (Doc. 374, ¶ 13). Defendant Koutoulas does not

13

contest this element. (*See* Doc. 403). The numerosity requirement is easily met through this number alone.

### 3.   Commonality

Commonality requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). This prerequisite does not demand that all questions of law or fact be common among the class members, only that all members base their claims on a common contention that is "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). The common question of law or fact is sufficient so long as answering the question can help determine the validity of all class members' claims "in one stroke" and in a way that will "aid in the resolution of the case." *Id.* at 359. The commonality requirement is not to be confused with the predominance requirement for certifying a Rule 23(b)(3) class because commonality is satisfied by only one common question.[11] *Vega*, 564 F.3d at 1268.

Plaintiffs advance a series of "questions of law or fact common" to the Class with respect to their Section 12(a)(1) claims against Defendant Koutoulas. (Doc. 373, pp. 12–14); *see* FED. R. CIV. P. 23(a)(2). These common questions include whether LGBCoin is a security; whether LGBCoin was registered as a security; and

---

[11]   The predominance requirement of Rule 23(b)(3), in contrast, refers to the class's cohesion as a whole by testing whether common questions of law and fact predominate over issues unique to each class member. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622–23 n.18 (1997).

whether Defendant Koutoulas offered or sold LGBCoin. (Doc. 373, p. 12; Doc. 245, ¶¶ 369–81).

Defendant Koutoulas does not dispute the commonality element.[12] (*See* Doc. 403). Nonetheless, based upon the common questions outlined above, the Court readily finds the commonality element met in this case. *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009) (noting that Rule 23(a)(2) is a "low hurdle"); *see also Wal-Mart*, 564 U.S. at 359 ("[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." (internal quotation marks and citation omitted)).

### 4.    *Typicality*

Typicality demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This element of certification "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)), *cert. denied*, 528 U.S. 1159 (2000). The named plaintiffs' claims do not need to be identical to the claims of the absent class members, but there must be a "sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney*

---

[12]    At most, Defendant Koutoulas briefly mentions the commonality element when asserting his arguments related to ascertainability, but the Court has already addressed and rejected such arguments. *See supra* III.C.1.

*World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (citation omitted). A "sufficient nexus" exists when "the claims or defenses of the class and the class representative[s] arise from the same event or pattern or practice and are based on the same legal theory." *Id.*

Plaintiffs argue that their claims "are typical of those of the Class as they have the same interests and have suffered the same injuries as the other members of the Class." (Doc. 373, p. 15). Defendant Koutoulas does not address typicality.

The claims of the named Plaintiffs here are typical of the claims of the putative Class of persons who purchased LGBCoin during the relevant Class period. (Doc. 373, p. 6). The putative Class members' claims and the named Plaintiffs' claims involve the alleged sale of LGBCoin, an unregistered security. (Doc. 245, ¶¶ 369–81). The named Plaintiffs, like all members of the putative Class, purchased LGBCoin. (Doc. 245, ¶¶ 19–21; Doc. 403-1, 28:18–20, 30:20–31:6, 83:17; Doc. 403-2, 11:25–12:3, 12:21–22). The named Plaintiffs, like all members of the putative Class, seek to recover damages suffered in connection with their respective purchases of LGBCoin. (Doc. 245, ¶ 381; Doc. 376, ¶¶ 2–11; Doc. 377, ¶ 2; Doc. 378, ¶¶ 2–4). Thus, considering the "similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent," Rule 23(a)(3) typicality is met. *See Mullen*, 186 F.3d at 625.

### 5. *Adequacy of Representation*

The final Rule 23(a) element, adequacy of representation, requires that that "the representative parties will fairly and adequately protect the interests of the

class." FED. R. CIV. P. 23(a)(4). Adequacy of representation refers both to the named plaintiff who intends to represent the absent class members and to the lawyers who intend to serve as class counsel. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003).

### a.    Adequacy of Named Plaintiffs

A named plaintiff will be adequate as long as (1) he is qualified, and (2) he has no substantial conflict of interest with the class. *Valley Drug*, 350 F.3d at 1189. A named plaintiff is qualified if he holds a basic understanding of the facts and legal theories underpinning the lawsuit and is willing to shoulder the burden of litigating on the class's behalf. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). At the certification stage, inquiry into a putative representative's qualifications is not especially stringent. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) (stating that certification should only be denied for inadequate representation where the plaintiff's lack of knowledge and involvement essentially amounts to abdication of his role in the case), *cert. denied*, 485 U.S. 959 (1988). A named plaintiff will have a substantial conflict of interest "only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." *Carriulo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016). A conflict is "fundamental" when "some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Valley Drug*, 350 F.3d at 1189.

The named Plaintiffs assert they are well suited to represent the Class because they "have been actively involved in this litigation." (Doc. 373, p. 16). The named Plaintiffs note they have participated in this litigation and are "aware of their fiduciary duties to absent class members if appointed class representatives." (*Id.*). Moreover, the named Plaintiffs maintain that their claims arise from the same events and legal theory, and thus, their interests are "directly aligned" with those of the putative Class. (*Id.*). In response, Defendant Koutoulas asserts that Plaintiffs cannot adequately protect the interests of the Class because their claims are adverse to the putative Class. (Doc. 403, p. 17). Defendant Koutoulas posits that if Plaintiffs' claims were to succeed, the "resulting relief would be unconscionable as it would [] make LGBCoin's successor, LETSGO, untradeable in the US as there is no registered broker dealer capable of trading a security meme coin." (*Id.*).

As to qualifications, the Court finds the named Plaintiffs are qualified because they have a general understanding of the claims, facts, and theory of the present case, as well as the relief being sought. (Doc. 376, ¶ 14; Doc. 377, ¶ 5; Doc. 378, ¶ 8; Doc. 403-1, 4:23–5:14, 6:18–7:5, 96:3–12)*; see also New Directions Treatment Servs.,* 490 F.3d at 313. Each of the named Plaintiffs, in their respective declarations, represent that they have "supervised and monitored the progress of this litigation" by communicating with counsel, reviewing filings, and producing documents pursuant to Defendants' discovery requests. (Doc. 376, ¶ 14; Doc. 377, ¶ 5; Doc. 378, ¶ 8).

With respect to conflicts of interest, the Court does not find a "fundamental" conflict, "going to the specific issues in controversy." *See Carriulo*, 823 F.3d at 989. Defendant Koutoulas argues that classifying LGBCoin as a security would be "unconscionable" as it would make LGBCoin's successor, LETSGO, untradeable.[13] (Doc. 403, p. 17). The Court notes that Defendant Koutoulas fails to provide any explanation or evidence in support of this argument, and for that reason alone, this argument fails. *See In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 410 (M.D. Fla. 2018) ("Moreover, a conflict will not defeat the adequacy requirement if it is merely speculative or hypothetical." (internal quotation marks omitted) (quoting *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010))).[14] Even if Defendant Koutoulas properly supported this argument, he still misses the mark here and ignores what a "fundamental conflict" is for Rule 23(a)(4) purposes. (Doc. 403, p. 17). Specifically, Defendant Koutoulas fails to demonstrate that his conduct has harmed some members of the class while benefiting others. (*See id.*); *see Valley Drug*, 350 F.3d at 1189 ("A fundamental conflict exists where some

---

[13]   The Court briefly addresses an additional argument Defendant Koutoulas raises as to a potential conflict of interest under Rule 23(a)(4). Defendant Koutoulas presents that he "continues to be well supported by the LGBCoin community of coinholders who, other than the three (3) Plaintiffs with 0.02% of alleged damages, support his prosecution of the State Court Case as trustee of the Foundation and continued political advocacy." (Doc. 403, p. 18). Simply put, the issue before the Court is whether Defendant Koutoulas sold unregistered securities, which is irrelevant to whether potential class members "support" him as an individual. (*Id.*).

[14]   "'Potential' conflicts of interest are likewise insufficient to defeat certification; instead, a district court should continue to monitor the matter going forward and may 'revisit the issue and de-certify the class if a true conflict ever manifested.'" *In re Disposable Contact Lens Antitrust*, 329 F.R.D. at 410 (quoting *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 113 (E.D.N.Y. 2012)); *see* FED. R. CIV. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

party members claim to have been harmed by the same conduct that benefitted
other members of the class.").

Furthermore, Defendant Koutoulas's argument also fails under *Zakinov*. In
*Zakinov*, the defendants similarly argued, as to Rule 23(a)(4), that: "many of the
putative class members disagree with the premise of plaintiff's lawsuit because
they do not think XRP should be considered a security [and thus,] those differing
beliefs place plaintiff in conflict with those class members." 2023 WL 4303644, at
*3. The *Zakinov* court held:

> Because the *Howey* test is an objective one, defendants'
> argument that the class members are in conflict due to
> "differing expectations" is inapposite. The merits issue of
> whether XRP is a security will be the same for all class
> members, regardless of each member's individual
> expectations. And to the extent that defendants invoke the
> prospect of harm and/or legal liability to those dissenting
> class members, that argument relies on speculation. Most
> importantly of all, as the court pointed out at the hearing that
> any disagreements by potential class members over the
> premise of the lawsuit can be remedied by the standard opt-
> out procedure, allowing any dissenting class members to
> simply remove themselves from the lawsuit. The ability to opt-
> out addresses any concern over potential disagreements
> between class members as to the aims of the lawsuit. *See also*,
> *e.g.*, *Lee v. Pep Boys-Manny Moe and Jack of California*,
> 2015 WL 9480475 (N.D. Cal. Dec. 23, 2015) ("[a] difference of
> opinion about the propriety of the specific relief sought in a
> class action among potential class members is not sufficient
> to defeat certification."); *Californians for Disability Rights,
> Inc. v. California Dept. of Transportation*, 249 F.R.D. 334,
> 348 (N.D. Cal. 2008) (holding same). Thus, for all of those
> reasons, the court concludes that defendants['] arguments
> regarding the disagreement between class members over the
> legal issue of whether XRP qualifies as a "security" does not
> defeat adequacy.

*Id.* at *3–4 (alteration in original).

This reasoning is equally applicable here, and thus, Defendant Koutoulas's argument does not defeat adequacy. Therefore, considering the named Plaintiffs are qualified and no substantial conflict of interest is present, the Court finds that Plaintiffs meet the adequacy element. *Valley Drug*, 350 F.3d at 1189.

> b.    *Adequacy of Named Plaintiffs' Counsel*

Class counsel will adequately represent the class if they are "qualified, experienced, and generally able to conduct the putative litigation." *Griffin*, 755 F.2d at 1533. This requires the court to evaluate a number of factors, including counsel's knowledge and experience with class action litigation, counsel's knowledge and experience with the substantive law governing the class's claims, the resources available to counsel to pursue the class's claims, the quality of counsel's litigation efforts so far, and any other relevant factor speaking to counsel's ability to represent the class's legal interests. *See* William B. Rubenstein, *Newberg on Class Actions*, §§ 3:73–3:79 (5th ed. 2011).

Plaintiffs present that Class counsel "are experienced in the areas of class actions and securities litigation." (Doc. 373, p. 22). Plaintiffs cite to the firms' resumes displaying Class counsel's skills and knowledge. (*Id.* (citing Docs. 320-5, 320-6)). In response, Defendant Koutoulas raises a series of arguments that have been previously addressed by the Court or are "perfunctory and underdeveloped," and as such, the Court need not address these arguments. (Doc. 403, pp. 19–20); *see U.S. Steel Corp.*, 495 F.3d at 1287 n. 13.

The Court finds that the putative Class counsel are sufficiently qualified to represent the Class. Counsel have litigated several federal cases nationally and have been appointed lead or co-lead counsel in multiple class actions. (*See* Docs. 320-5, 320-6). Additionally, counsel are experienced in securities litigation. (*Id.*). Therefore, putative Class counsel are "qualified, experienced, and generally able" to represent the Class's legal interests. *See Griffin*, 755 F.2d at 1533.

### D. Rule 23(b)

In addition to satisfying standing and Rule 23(a)'s four prerequisites, a plaintiff must show that the putative class they wish to certify falls into at least one of Rule 23(b)'s class types. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); FED. R. CIV. P. 23(b). Plaintiffs seek to proceed as a Rule 23(b)(3) class.

Rule 23(b)(3) permits certification of a class where: (1) common questions of law or fact predominate over questions affecting class members individually, and (2) a class action is the superior method for resolving these common questions. FED. R. CIV. P. 23(b)(3). These two elements are referred to as "predominance" and "superiority," respectively, and the Court discusses them in turn.

#### 1. Predominance

Predominance refers to the class's cohesion as a whole and examines whether adjudication of members' individual interests on a classwide basis would be appropriate. *Amchem*, 521 U.S. at 623. In determining predominance, the district court assesses the issues of law and fact likely to arise during the litigation and weighs whether issues common to the class predominate over issues which are

unique to each individual class member. *Id.* at 622–23, 623 n.18. Ultimately, predominance revolves around the quality, rather than the quantity, of the class members' shared interests. *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 272 (4th Cir. 2010). Where the litigation is defined by individualized inquiries regarding the defendant's possible liability to each class member, predominance is lacking and certification should be denied. *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010). However, where the class members seek answers to the same questions and those answers would "have a direct impact on every class member's effort to establish liability," common issues predominate and certification should be granted. *Id.* (internal quotation marks and emphasis omitted) (quoting *Vega*, 564 F.3d at 1270).

Plaintiffs generally argue that the common questions of law and fact predominate over any individual issues. (*See* Doc. 373, pp. 17–19); *see also supra* Section III.C.3. Defendants do not dispute the predominance element. (*See* Doc. 403).

### a.    *Predominance: Section 12(a)(1) Claims*

Regarding Plaintiffs' Section 12(a)(1) claims, the Court agrees with Plaintiffs that the common questions of law and fact predominate over any individualized inquiries. (*See* Doc. 373, pp. 17–19). To establish liability under Section 12(a)(1), Plaintiffs must prove that: (1) Defendant Koutoulas "sold or offered to sell securities; (2) no registration statement was in effect as to the securities; and (3)

interstate transportation or communication and the mails were used in connection with the sale or offer of sale." *See Rensel v. Centra Tech, Inc.*, No. 17-24500-Civ-Scola, 2021 WL 4134984, at \*10 (S.D. Fla. Sept. 20, 2021) (citing *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017)). These elements do not raise any individualized inquiries, and thus, "the same evidence will suffice for each [class] member" in answering these inquiries. *See Brown*, 817 F.3d at 1234. Accordingly, the predominance element of Rule 23(b)(3) is satisfied. *See Rensel*, 2021 WL 4134984, at \*10 (collecting cases); *see Amchem,* 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . securities fraud." (citation omitted)).

### b.  *Predominance: Unjust Enrichment Claims*

Plaintiffs fail to provide any argument as to predominance for their unjust enrichment claims. (*See* Doc. 373). At most, Plaintiffs reiterate their arguments as to Rule 23(a)(2)'s commonality requirement, but Rule 23(b)(3)'s predominance inquiry "is far more demanding." *See Vega*, 564 F.3d at 1270 (quotations and citations omitted) (explaining the stark difference between commonality and predominance).

Even if Plaintiffs properly provided argument, the Court would still be unable to find that Plaintiffs satisfied the predominance requirement for their unjust enrichment claims. Plaintiffs seek to certify a nationwide class for their unjust enrichment claims that arise under state law. (Doc. 245, ¶¶ 404–07, 416–19). Considering these unjust enrichment claims could implicate the law of all fifty states, "it falls to the plaintiff to demonstrate the homogeneity of different states'

laws, or at least to show that any variation they contain is manageable." *Sacred Heart*, 601 F.3d at 1180 (citation omitted). Plaintiffs make no attempt to identify what state laws apply to the potential Class members' unjust enrichment claims, nor do they identify whether there is a homogeneity or manageable variation among such states' laws.[15] *See Birmingham v. RoFx.net*, No. 21-cv-23472, 2023 WL 3378177, at *3–5 (S.D. Fla. May 11, 2023).[16] Absent this information, the Court is unable to determine whether "the legal questions governing each class members' claims are predominantly subject to generalized proof." *See id.* at *3. Consequently, the Court cannot adequately assess predominance, nor can it grant

---

[15] In the Third Amended Complaint, Plaintiffs brought their unjust enrichment claims under Florida common law. (Doc. 245, ¶¶ 404–07, 416–19). However, to date, Plaintiffs have not established that Florida law applies to its nationwide class. Specifically, Plaintiffs have not shown an absence of actual conflicts amongst the relevant states' laws, nor have they provided the Court with a choice-of-law analysis. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816–23 (1985). Merely pleading the claims under forum state law is insufficient. *See id.* at 820 ("A plaintiff's desire for forum law is rarely, if ever controlling . . . 'if a plaintiff could choose the substantive rules to be applied to an action . . . the invitation to forum shopping would be irresistible.'" (citation omitted)).

[16] In *Birmingham*, the court addressed a similar situation like the one at issue here. *See* 2023 WL 3378177, at *3–5. The plaintiffs moved to certify a global class for common law fraud and unjust enrichment. *Id.* at *3. Further, the five named plaintiffs came from four different states, and the underlying scheme was conducted entirely online. *Id.* at *4. The *Birmingham* court denied class certification because the plaintiffs failed to satisfy predominance under Rule 23(b)(3). *Id.* In doing so, the *Birmingham* court explained that:

> Accordingly, it is likely that the potential class members' claims are governed by many different jurisdictions' laws, but the Court is unable to make this determination because the Plaintiffs' briefing ignores all aspects of the relevant inquiry: for example, it does not suggest grouping the potential class members by jurisdiction, address whether the Court would need to conduct a choice of law analysis on what law might apply to the potential claims, or even indicate in what state the majority of claims may originate.

*Id.* (citing *Simmons v. Ford Motor Co.*, 592 F. Supp. 3d 1262, 1296 (S.D. Fla. 2022)).

class certification on Plaintiffs' unjust enrichment claims. *See, e.g.*, *Vega*, 564 F.3d at 1278 ("[P]redominance . . . is perhaps the central and overriding prerequisite for a Rule 23(b)(3) class."); *Sacred Heart*, 601 F.3d at 1180 (reversing a district court's certification of a class because its lack of analysis of the variations in applicable state law resulted in "a critical legal deficiency—insufficient evidence of predominant common legal issues"); *Parker v. Perdue Foods, LLC*, No. 5:22-cv-00268, 2024 WL 3993855, at *8 (N.D. Ga. Aug. 29, 2024) ("If a plaintiff fails to carry his or her burden of demonstrating similarity of state laws, then certification should be denied." (collecting cases)); *Simmons v. Ford Motor Co.*, 592 F. Supp. 3d 1262, 1296 (S.D. Fla. 2022) (citing *Sacred Heart*, 601 F.3d at 1180) (denying class certification as to an unjust enrichment claim because plaintiffs failed to identify the state law variations and whether such variations could be effectively managed).

In sum, Plaintiffs satisfy Rule 23(b)(3)'s predominance requirement for their Section 12(a)(1) claims, but not for their unjust enrichment claims. Considering the lack of predominance as to Plaintiffs' unjust enrichment claims, the Court denies class certification for these claims. *Valley Drug*, 350 F.3d at 1187 ("The burden of proof to establish the propriety of class certification rests with the advocate of the class."). The Court thus limits the remainder of its discussion to Plaintiffs' Section 12(a)(1) claims.

### 2.    Superiority

Superiority refers to whether the class action mechanism "would be the best or the fairest way" to resolve the parties' dispute when compared to available alternatives. *Ungar v. Dunkin' Donuts of Am., Inc.*, 68 F.R.D. 65, 148 (E.D. Pa. 1975), *rev'd on other grounds*, 531 F.2d 1211 (3d Cir. 1976), *cert. denied*, 429 U.S. 823 (1976). Determining superiority requires the court to evaluate the four factors enumerated by Rule 23(b)(3). *See Vega*, 564 F.3d at 1278. These four factors are: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3)(A)–(D). If a district court reaches the manageability factor, it may consider the administrative feasibility of providing notice to absent class members as part of its Rule 23(b)(3)(D) calculus. *Cherry*, 986 F.3d at 1304. If manageability presents particularly thorny issues to providing the required class notice, courts have discretion not to certify a class based on the circumstances of the case even though the administrative feasibility of ascertaining absent class members will "rarely, if ever, be dispositive." *Id*. at 1304–05.

"The class[ ]action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v.*

*Yamasaki*, 442 U.S. 682, 700–01 (1979)). Class actions mitigate against the unlikelihood that individuals will pursue small claims "by aggregating the relatively paltry potential recoveries into something worth someone's . . . labor." *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997)). Ultimately, the superiority determination will be evaluated "in comparative terms . . . because the superiority requirement of Rule 23(b)(3) turns on whether a class action is better than other available methods of adjudication." *Cherry*, 986 F.3d at 1304.

Plaintiffs maintain that this suit is superior to other available methods because most Class "members made modest purchases of LGBCoin." (Doc. 373, p. 20). Plaintiffs thus posit that "the 'realistic alternative' to this [C]lass action is not thousands of individual suits, 'but zero individual suits, as only a lunatic or a fanatic sues for $30.'" (*Id.* (quoting *Carnegie v. Household Int'l*, 376 F.3d 656, 661 (7th Cir. 2004))). Defendant Koutoulas asserts that this action is not superior to the lawsuit LetsGoBrandon.com Foundation has filed against NASCAR, pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. *See LetsGoBrandon.com Found. v. Nat'l Ass'n for Stock Car Racing, LLC*, No. 2023-002831-CA-01 (the "**state court case**"); (Doc. 403, pp. 9–13). Defendant Koutoulas also contends that providing notice to the Class will be difficult given the nature of cryptocurrency. (Doc. 403, p. 13).

In considering the Rule 23(b)(3) factors, the Court finds that trying this case as "a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." First, litigating each individual claim separately would not be cost effective given the comparatively small payout of each claim. (Doc. 374, ¶ 12 ("Many of the individuals damaged would have insufficient claims to justify individual litigation as plaintiffs.")). Such a sum would not likely cover the legal costs necessary to secure a favorable outcome; the economics of the case thus make it improbable that individual absent class members have an interest in directing its prosecution. (*See id.*); *see also Kron v. Grand Bah. Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018); Fed. R. Civ. P. 23(b)(3)(A). In short, this case is a prototypical example of the benefits of aggregate litigation.

Second, the Court does not find "any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). While Defendant Koutoulas argues that the state court case defeats superiority, he operates under a mistaken understanding of Rule 23(b)(3)(B). (Doc. 403, pp. 9–13). Rule 23(b)(3)(B) pertains to actions "already begun by or against class members." The state court case was brought by non-party LetsGoBrandon.com Foundation, which is an entity specifically excluded from the Class here. (*See* Doc. 373, p. 6).

Even if the state court case was brought by Class members, Defendant Koutoulas still fails to demonstrate how it threatens the superiority of this Class action. (Doc. 403, p. 10). Importantly, Rule 23(b)(3)(B) "is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001)

(quoting 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
FEDERAL PRACTICE AND PROCEDURE § 1780 (2d ed. 1986)). Specifically, the Court is
charged with assessing whether "a clear threat of multiplicity and a risk of
inconsistent adjudications" exist. *Id.* This Class action pertains to Plaintiffs' claims
for the sale of unregistered securities against Defendant Koutoulas. (Doc. 245, ¶¶
369–81). The state court case pertains to the following claims against NASCAR:
defamation, defamation by implication, promissory estoppel, and breach of
contract. *See LetsGoBrandon.com Found. v. Nat'l Ass'n for Stock Car Racing,
LLC*, No. 2023-002831-CA-01. The Court struggles to find how the state court case
presents a "clear threat of multiplicity" or "a risk of inconsistent adjudications,"
and Defendant Koutoulas does not provide any explanation or evidence to reach
such a finding. (*See* Doc. 403). At most, Defendant Koutoulas—in a conclusory
fashion—alleges a factual connection, but ultimately, as Defendant Koutoulas
concedes, Plaintiffs' "surviving claim[] [is] separate from the Foundation's claims"
in the state court case. (*Id.* at p. 10). Therefore, the Court rejects Defendant
Koutoulas's argument that the state court case obviates the need for class
certification.

Third, because this litigation has been ongoing for several years before this
Court, this forum is desirable. (*See* Doc. 389 (denying Defendants' Motion to
Dismiss and/or Transfer Venue for Forum Non Conveniens)). Moreover, neither
party proposes that another forum would be a more favorable venue for the case at
this stage in the proceedings. *See* FED. R. CIV. P. 23(b)(3)(C).

Fourth, while providing notice to the Class and conducting an efficient and
fair trial will present some manageability issues, none of them are so
insurmountable to warrant not certifying the Class. FED. R. CIV. P. 23(b)(3)(D). To
start, Plaintiffs present a straightforward process—which Defendant Koutoulas
never directly undercuts—that will be used to notify the class in an administratively
feasible manner. (Doc. 373, pp. 9–10; *see* Doc. 403). To demonstrate this
straightforward process, Plaintiffs provide a sample notice plan approved in
*Rensel*, a cryptocurrency class action, and an expert declaration. (*See* Docs. 379-9,
379-10; *see also* Doc. 375, ¶¶ 53–56). To that end, the slight difficulties that may
arise in this action are insufficient to show that this Class action is not superior to
other available methods. The Court thus finds that Rule 23(b)(3) superiority is
satisfied.

In sum, Plaintiffs establish the propriety of class certification as to their
Section 12(a)(1) claims under Rule 23(a) and Rule 23(b)(3). However, as to their
unjust enrichment claims, Plaintiffs fail to satisfy Rule 23(b)(3)'s predominance
requirement, and thus, class certification is improper as to these claims. The Court
therefore finds that partial certification under Rule 23(c)(4) is warranted here. *See
Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2011)
("[S]ubsection 23(c)(4) should be used to separate 'one or more' claims that are
appropriate for class treatment, provided that within that claim or claims (rather
than within the entire lawsuit as a whole), the predominance and all other
necessary requirements of subsections (a) and (b) of Rule 23 are met." (citation

omitted)); *see also Kalow & Springut, LLP v. Commence Corp.*, No. 07–3442, 2011 WL 3625853, at *3–4 (D.N.J. Aug. 15, 2011) (granting partial certification for a single cause of action because the other claim failed Rule 23(b)(3) predominance for a lack of choice-of-law analysis).

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (Doc. 373) is **GRANTED IN PART AND DENIED IN PART**.

2.    The Court hereby certifies a Rule 23(b)(3) Class with respect to Plaintiffs' Section 12(a)(1) claims only. The Class consists of the following: "All persons who, between November 2, 2021, and March 15, 2022, purchased LGBCoin."

3.    Plaintiffs Eric De Ford, Sandra Bader, and Shawn R. Key are hereby certified as Representatives of the Class.

4.    Counsel from Zigler Law Group and Scott + Scott are hereby certified as Class counsel pursuant to Rule 23(g).

5.    On or before April 11, 2025, the parties shall jointly file for approval by the Court a putative notice to Class members. Alternatively, if the parties cannot agree on a putative notice, Plaintiffs shall file a putative notice on or before April 11, 2025, and Defendant Koutoulas shall file

any objections within three (3) days of the filing of Plaintiffs' putative
notice.

**DONE AND ORDERED** in Orlando, Florida on March 28, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties