# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| ERIC DEFORD, et al, | Case No. 6:22-cv-652-PGB-DCI |
| Plaintiffs, | CLASS ACTION |
| v. | |
| JAMES KOUTOULAS, et al., | |
| Defendants. | |

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' MOTION TO DECERTIFY CLASS

COMES NOW the Plaintiff Class ("Plaintiffs"), by and through their Counsel, and hereby files this Response to Motion to Decertify Class (Doc. 490).

"[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 832 (8th Cir. 2016) (denying class decertification). But Defendants have no good reason for the present Motion. They raise nothing but trivial grievances, which they have known of for years. And they conclude, based on these quibbles about discovery, that DeFord must be disqualified as Class Representative because he is a potential promoter of LGBCoin.

Contrary to Defendants' argument, DeFord gave truthful, accurate responses to discovery. Both his responses to requests for production and questions at his deposition accurately reflect his actions, none of which constitute promotion of a security under federal law, and all of which pale in comparison to the extensive promotions engaged in by Koutoulas. *See* Rule 1006 Summary of Social Media Posts (Ex. B).

## I.    RELEVANT PROCEDURAL HISTORY

On March 27, 2023, Defendant James Koutoulas filed a Motion for Sanctions, stating in part:

> Notwithstanding, discovery obtained at this stage of litigation has confirmed that Plaintiff DeFord actively engaged in promotional efforts for LGBcoin upon his own volition. Plaintiff **DeFord's promotional efforts include** but are not limited to connecting Mr. Koutoulas to a podcast host for purposes of discuss LGBcoin on said podcast, **creating a promotional video for LGBcoin and actively posting to the LGBcoin telegram group** (message board) in support of LGBcoin.

(Doc. 223) at 10-11 (emphasis added). The Court struck Koutoulas's Motion for Sanctions (Doc. 225).

On October 2, 2024, Defendants filed their Response in Opposition to Class Certification, arguing, in part, that the Class should not be certified because,

> Plaintiff DeFord has endorsed the advocacy initiatives Mr. Koutoulas has carried out as trustee for the Foundation and ***personally engaged in***

2

*promotion of the coins*, subsequent to the destruction in value caused by
NASCAR.

(Doc. 403) at 18 (emphasis added).

On September 10, 2024, Eric DeFord gave his deposition (Doc. 403-1). When

asked about Telegram messages, he testified:

> **Q. I'm going to show you what was marked and produced as DeFord
> 000003. Please tell me what that document is.**
>
> A. This is an email, it's a personal email. I said: "I searched for it in Tele-
> gram. Sent a message. I hope it's right. I'm not trying to be a jerk, I want to
> see this thing fly." And then, "Not showing" – "Not showing you" -- I guess
> LG -- this is like a support trying to find some contact and it says:
>
> "Not showing you in chat or banned. Maybe try link. **Try DMing[1] the ad-
> min pyro if that doesn't work."**
>
> **"Thanks. I'll check it out."**
>
> Oh. Because they kept -- they pulled the old chat. Yeah. This was in January
> 30th. They closed the old Telegram, whoever the admins were, I can only -
> - besides Pyro, who was admin in that, and James was involved, and he
> deleted a bunch of stuff out of the old Telegram and then they reissued Tel-
> egram. They had a whole other Telegram account, which I guess they're
> saying because of this new token reissue.
>
> So I couldn't get any answers. So this was, like, oh, I'm not going to get
> tokens, like, what's going on here? So -- yeah. Two things here.

65:17-66:19. After discussing these initial DMs with PyroBrain, Mr. DeFord pro-

ceeded to discuss his Telegram messages with PyroBrain, Koutoulas, and others

---

[1] A "DM" is a private message sent on social media to a specific individual or group. "DM."
Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dic-
tionary/DM. Accessed 30 Jun. 2025.

in great detail[2]. *Id.*, Defendants presented this evidence to the Court in connection with their Opposition to Class Certification (Doc. 403).

The Court certified the Plaintiff Class over Defendants' objection. The Court rejected Defendants' arguments regarding some amorphous conflict of interest, stating, "With respect to conflicts of interest, the Court does not find a "fundamental" conflict, "going to the specific issues in controversy." (Doc. 455 at 19). The Court noted Defendants' failure to appropriately evaluate conflicts of interest under Rule 23(a)(4):

> Even if Defendant Koutoulas properly supported this argument, he still misses the mark here and ignores what a 'fundamental conflict' is for Rule 23(a)(4) purposes. Specifically, Defendant Koutoulas fails to demonstrate that his conduct has harmed some members of the class while benefiting others.

The Court also warned Defendants against repeating arguments already raised and rejected by the Court: "Defendants recycle various arguments that the Court has thoroughly addressed in previous Orders. The Court advises defense counsel to refrain from such practices in future filings." (Doc. 455) at 5 n.4.

---

[2] (Doc. 403-1) at 10:18-12:11 (discussing messages with Koutoulas and PyroBrain), 53:18-54:16 (discussing first impressions of Koutoulas and PyroBrain from Telegram), 12:17-13:15 (discussing reasons for starting and using Telegram account), 22:1-22 (discussing promotions viewed on Telegram), 58:1-11 (discussing Telegram messages), 58:15-63:10 (discussing particular Telegram message), 65:5-15 (same), 70:7-14 (same), 72:23-73:15 (same), 84:19-85:21 (same, and making it an exhibit).

On April 7, 2025, Defendants moved to reconsider. (Doc. 457).

On April 8, 2025, the Court denied the motion to reconsider. (Doc. 459).

On April 10, 2025, Defendants filed a Petition seeking permission to appeal
with the Eleventh Circuit arguing that the Order on Class certification was legally
flawed. *Koutoulas v. DeFord*, (Doc. 1), No. 2025-90007 (11th Cir. 2025).

On May 2, 2025, the Eleventh Circuit denied permission to appeal. *Id.* (Doc.
6).

On June 17, 2025, Defendants moved to decertify the class, arguing yet again
that Mr. DeFord is not an adequate class representative due to the same "promo-
tional activities" identified in the Motion for Sanctions (Doc. 223) and Opposition
to Motion to Certify Class (Doc. 403). Defendants also included argument about
PSLRA violations (Doc. 490) at 8-9, just as they did in the Opposition to Motion to
Certify Class (Doc. 403) at 19-20.

## II.    ARGUMENT

### A.    Defendants' Motion is a Veiled, Untimely, Meritless Motion for Sanctions.

Defendants claim this Motion is timely, and these matters could not have
been included in their Response to Motion to Certify (Doc. 403) because Defend-
ants only "learned of these critical documents after this Court certified Plaintiffs'

class through a non-party who was helping with wallet analysis for Defendants' motion." *See* Motion (Doc. 490) at 7. This is untrue.

In reality, Defendants have been aware of the private messages between Mr. DeFord and PyroBrain since Mr. DeFord's deposition on September 10, 2024, at the latest. *See* Deposition of Eric DeFord (Doc. 403-1) at 65:17-66:19 (testifying that he had direct messages with PyroBrain). Defendants were aware of the video even earlier, since at least March 2023 when Koutoulas included it in his Motion for Sanctions. *See* Doc. 223 at 10-11 ("Plaintiff DeFord's promotional efforts include . . . creating a promotional video for LGBcoin and actively posting to the LGBcoin telegram . . ."). Based on Defendants' failure to raise this issue during the discovery period, their present Motion to Decertify based on alleged discovery misconduct should be denied as untimely and waived.

It should also be denied because there was no discovery misconduct. Defendants complain that Plaintiffs' response to a discovery request seeking Telegram messages was evasive. Not so. Defendants requested from DeFord "All documents and communications made to any of the named Defendants or any other Person involved with LGBCoin or LetsGo." Plaintiffs responded to Defendants' discovery request, objecting that Plaintiffs cannot fully respond "in the absence of

a definition of those 'involved with LGBCoin or LetsGo.'" This problem is one of

Defendants' making, given Defendants' shifting and inconsistent descriptions of

the LGBCoin project and individual participants.

Plaintiffs, noting their objection, then agreed to provide all records of com-

munications with the named defendants. Defendants did not object to this re-

sponse, nor did they challenge it with a motion to compel. Similarly, Defendants

did not seek additional information about communications with PyroBrain after

DeFord mentioned those messages in his deposition. (Doc. 403-1) at 65:17-66:19.

Nor was DeFord's testimony denying promotions misleading. The "promo-

tional materials" discussed by Defendants consist of one short instructional video

entitled "How to Buy LETSGO" and an instructional pdf of the same title. Both

explain how to buy the "correct" LETSGO token after LGBCoin became defunct.

Counsel asked about DeFord's efforts to promote LGBCoin:

> 19    BY MS. MARTELL:
> 20    **Q. Did you ever make materials to help**
> 21    **promote LGBCoin?**
> 22    MR. MASSON: Objection, form and
> 23    foundation.
> 24    THE WITNESS: No.

DeFord's denial that he created materials to help promote LGBCoin is accu-

rate. LETSGO and LGBCoin are different cryptocurrencies. *See, e.g.*, Doc. 403 at 17

(describing LETSGO as LGBCoin's successor). DeFord's how-to video concerns
LETSGO, not LGBCoin. Docs. 490-2, 490-3. It cannot be said to promote LGBCoin,
since it was instructing users how to buy a different token--LETSGO[3]. DeFord's
testimony is true. He never made material to promote LGBCoin.

Further, these were not promotional materials. DeFord created these mate-
rials after having difficulty purchasing LETSGO himself. DeFord Decl. (Ex. C) ¶6.
One user reached out to DeFord for help buying the correct LETSGO token. *Id.*
DeFord prepared a .pdf guide and video, sent a copy to Pyro to check the accuracy,
and then sent the guide to the requesting user. *Id.* DeFord did not publicly post
these materials. *Id.* ¶7. And as a multimedia professional, Mr. DeFord does not
consider these materials to be "promotional materials" of the sort he normally cre-
ates or that Defendants created and spread on their social media. *Id.* ¶8.

Having been informed in the deposition at length about DeFord's Telegram
activity, including DMs to PyroBrain, and being aware of the video since 2023,
Defendants had the option to argue that Plaintiffs' answers were misleading and
to seek additional documents. To do so, Defendants could have conferred with
Plaintiffs as the parties have done repeatedly in this case. Had those conferral

---

[3] In fact, these materials say ***not*** to buy LGBCoin, saying, "Old token don't use". (Doc. 490-3) at
6.

efforts been unsuccessful, Defendants could have filed a motion to compel. If a motion to compel was unable to obtain the documents, Defendants could have then sought relief under Rule 37. Defendants instead only opted to raise this supposed issue after the discovery period ended on April 1, 2025.

Defendants' choice to raise this issue in a Motion to Decertify is an apparent attempt to end-run around the Court's Order on Discovery Motions and avoid the Court's warnings that Defendants should not simply repeat the same failed arguments. Rather than heed that advice, Defendants have raised the present Motion to Decertify based on evidence they have possessed for several years and repackaged failed arguments. Defendants' arguments should be rejected yet again for the same reasons previously discussed in the Court's Order on Class Certification (Doc. 455).

**B.    Decertification Is An Extreme Step and Requires Evidence of a Change In Circumstances That Is Not Present Here.**

Similarly, Defendants have failed to meet the standard of proof to justify the extreme relief of decertification of the class. Decertification should "only take place after some change, unforeseen at the time of the class certification, that makes alteration of the initial certification decision necessary." 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:34 (6th ed., 2025). "In the absence of materially

changed or clarified circumstances ... courts should not condone a series of rear-guments on the class issues ... in the guise of motions to reconsider the class ruling." *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 6:17CV890ORL40LRH, 2020 WL 5534514, at *2 (M.D. Fla. Apr. 8, 2020) (Byron, J), *aff'd*, No. 21-11769, 2023 WL 5608014 (11th Cir. Aug. 30, 2023) (cleaned up).

This is true even when the certification decision was made early, without the benefit of discovery. But where, as here, the initial certification decision was made on a robust evidentiary record and with the benefit of extensive briefing by the parties, the party seeking decertification "bears a more onerous burden in challenging certification." *Day v. Celadon Trucking Servs., Inc.,* 827 F.3d 817, 832 (8th Cir. 2016); *see also Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-CV-1306-J-34JRK, 2015 WL 12859422, at *3 (M.D. Fla. Mar. 11, 2015) (denying decertification where "nothing has changed since the Court's Order granting class certification" and movant failed to "point to [ ] new evidence relevant to the dispute"); *Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2015 WL 464237, at *5 (S.D. Fla. Jan. 16, 2015) (declining to alter class certification order in an "unnecessarily protracted" litigation with numerous delays and requests for extensions of time because, *inter alia*, doing otherwise would lead to "the inevitable requests to reopen discovery, extend the (now

expired) time for filing dispositive motions, explore and decide class notice issues,
and file further dispositive motions").

Here, only a few months have passed since the Court's certification decision.
Defendants' Motion does not raise new evidence—it includes only matters well
known to the Defendants for months or years. Nor does it detail any changed cir-
cumstances. Instead, it simply rehashes the same arguments Defendants made
against DeFord on the Motion for Sanctions (Doc. 223) and in Defendants Opposi-
tion to Class Certification (Doc. 403).  Despite the Court's warnings, Defendants
continue to "recycle various arguments that the Court has thoroughly addressed
in previous Orders." (Doc. 455) at 5, n.4.  Such behavior is particularly inappropri-
ate with respect to class certification decisions, where repeatedly revisiting class
certification can create unique burdens for the Court and the Plaintiffs. *See* 3, NEW-
BERG AND RUBENSTEIN ON CLASS ACTIONS § 7:39 (5th ed. 2013) (noting that if a de-
fendant can require a court to revisit certification decisions without any showing
whatsoever and place the onus on the plaintiff to once again prove certification,
"its incentives will be skewed")

To the extent Defendants rely on the alleged discovery of private messages
between DeFord and PyroBrain, those messages do not create a basis to reconsider

class certification. Defendants argue that decertification would be appropriate because DeFord could be considered a promoter of LGBCoin under Section 12(a)(1) and, therefore, he would have a fundamental conflict with the Class. *See generally* Mot. at 7-9.

At the outset, Plaintiffs note that *private* messages to an LGBCoin administrator are not *public* solicitations under 12(a)(1).  Indeed, when determining that online crypto advertisements were solicitations for purposes of Section 12(a), the Eleventh Circuit repeatedly emphasized that the promotions constituted solicitations because they were widely available to the public. *See, e.g., Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022). Defendants have failed to provide any evidence to suggest (much less to demonstrate) that (a) DeFord's private messages and video were ever seen publicly or (b) anyone made a purchase of LGBCoin because of the video.  Because DeFord has not (and cannot) be shown to be a solicitor under 12(a)(1), this cannot provide a basis for a motion to decertify.

Further, Defendants' attempt at raising an *in pari delecto* defense to oppose certification of a Section 12(a)(1) class is similarly wrong.  Indeed, such a defense requires a showing that plaintiffs "have themselves violated the law *in cooperation with the defendant*." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1308

(11th Cir. 2013) (emphasis in original).  Here, Defendants have failed to establish

that DeFord (much less all three of the class representatives) actively cooperated

with Defendants in violating Section 12(a)(1).  This dooms the use of an *in pari*

*delecto* defense.  *See id*. (affirming rejection of *in pari delecto* defense where plaintiffs

were not "active, voluntary participant[s] in the unlawful activity *that is the subject*

*of the suit*") (\*emphasis in original).

### C.    Defendants Fail to Present Evidence That a Conflict Now Exists

Defendants argue that these private messages and the single instructional

video are sufficient to make Mr. DeFord a promoter under Rule 12(a)(1) and, as

such, he has such a fundamental conflict that he cannot be a valid class representa-

tive. *See* Motion at 8. Defendants then argue that since the Class would lose of one

of its three Class Representatives if Mr. DeFord is found to have a fundamental

conflict, then the class must be decertified in its entirety. *Id*. at 8. Defendants are

wrong on both points.

### 1.   Where a Defendant raises adequacy issues for one of three class representatives, decertification is not an appropriate remedy.

Even if Defendants' allegations regarding DeFord were true (they are not),

decertification of the class would still be inappropriate. Here, DeFord is one of

three Class Representatives, each of whom has been working in parallel to

represent LGBCoin purchasers. Any order striking DeFord as a class representa-
tive still would not affect the two remaining class representatives. "[S]triking him
from the class at this point would be meaningless because there are other credible
named plaintiffs." *See Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576, at *5 (N.D. Ill.
Apr. 30, 2015), *aff'd sub nom. Lacy v. Cook Cnty., Illinois*, 897 F.3d 847 (7th Cir. 2018).

Defendants do not challenge Shawn Key or Sandra Bader or their accepta-
bility as Class Representatives. Instead, Defendants challenge Mr. DeFord alone
and assume that, if Mr. DeFord is somehow unacceptable, then the Class as a
whole must be decertified. Defendants offer no explanation or legal authority for
why decertification would be appropriate with two remaining class members. Ac-
cordingly, Defendants' motion is pointless and should be denied as moot.

**2. Where a promoter attempts to allege fault of another purported
wrongdoer, the doctrine of *in pari delicto* applies, and DeFord's
efforts and interests are minimal compared to Koutoulas.**

Additionally, Mr. DeFord remains an adequate Class Representative, de-
spite Defendants' complaints. Defendants make a clumsy argument that DeFord
cannot be an adequate class representative because he is subject to the same claims
as Koutoulas—namely, he could be held to be a promoter under federal securities
laws and therefore be an inadequate class representative. Defendants' argument

14

fails, however, because DeFord's alleged conduct and interests are *de minimus* compared to Defendant Koutoulas.

"The equitable defense of *in pari delicto*, which literally means 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). *Pearlman v. Alexis*, No. 09-20865-CIV, 2009 WL 3161830, at *2 (S.D. Fla. Sept. 25, 2009).  In securities litigation, the defense is properly invoked only where: (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress; and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11 (1985); *Pearlman v. Alexis*, No. 09-20865-CIV, 2009 WL 3161830, at *2 (S.D. Fla. Sept. 25, 2009)

*Pinter* notes the *in pari delicto* defense has rarely succeeded. *See* 486 U.S. at 635 n. 12. And as the Eleventh Circuit has more explicitly stated: "[U]nless the degrees of fault are essentially indistinguishable or the plaintiff's responsibility is clearly greater, the *in pari delicto* defense should not be allowed, and the plaintiff should be compensated."  *Banco Indus. de Venezuela, C.A. v. Credit Suisse*, 99 F.3d

1045, 1049 (11th Cir. 1996) (citing *Pinter*, 486 U.S. at 636).

Mr. DeFord's single, instructional video does not compare to Mr. Koutoulas's extensive promotional efforts. Koutoulas has openly admitted that he viewed his efforts as valuable to LGBCoin holders. Mr. Koutoulas had literally hundreds of social media posts, tweets, replies, and interviews touting the LGB-Coin project and his efforts to increase the value of LGBCoin. *See* Declaration of Kevin McCormack in Support of Rule 1006 Summary (Ex. A), Fed. R. Evid. Rule 1006 Summary of Social Media Promotions (Ex. B).  He has even demanded that damages in this case be offset against the value he provided coinholders through his promotional activities. *See* (Doc. 403 at 12).

Here, there is ample evidence Koutoulas, not DeFord, engaged in essential managerial efforts which affected the success of the LGBCoin enterprise. Koutoulas owned and/or controlled the Foundation, marketing, and discretionary charity wallets. (Doc 488-9), 39:3-13, 40:4-41:22. Koutoulas, without community input or approval, transferred varying values of LGBCoin as charitable donations and used those donations to promote LGBCoin on their social media accounts. *See Id.*, 62:-5, (Doc. 488-7, Ex. B). Koutoulas was solely responsible for negotiating and entering into the Sponsorship Agreement with the NASCAR team. (Doc. 488-9),

108:19-109:10. And Koutoulas further attempted to secure a new LGBCoin spon-
sorship after the NASCAR deal fell through. *See* (Doc. 488-2), 253:12-255:7

As discovery has revealed and Koutoulas himself insists, he had the sole
authority for negotiating and entering into all contractual agreements on behalf of
the Foundation and LGBCoin that ultimately determined the success and failure
of the enterprise. (Doc. 488-9), 29:11-31:14. Koutoulas stated that only he, as trustee
for the Foundation, has the legal authority to bring lawsuits on behalf of LGBCoin
purchasers and engage legal counsel. *Id.* 35:13-36:13.

Koutoulas also confirmed that he and he alone had the discretion to use
funds from the Foundation treasury wallet to pay for (1) promotional services and
hire a marketing agency; and (2) any associated legal fees. *Id.*, 195:10-196:11.
Koutoulas purposefully chose not to create a governance or voting structure for
the Foundation and did not have to seek approval from any LGBCoin purchaser
(much less a majority) before unilaterally deciding to deplete the funds in the
Foundation's treasury wallet. *Id.* 31:15-34:14. Koutoulas and not community mem-
bers could, and did, remove funds from the LGBCoin liquidity pool at his discre-
tion.(Doc. 488-2), 60:6-16, 63:5-64:1.

Unlike Koutoulas, DeFord did not create LGBCoin. He did not control the Foundation, or the reserve wallets. He did not retain more than 50% of all of the LGBCoin in existence. He did not hire social media personnel to act as his agents in posting promotional materials, nor did he retain final authority over those channels. Most importantly, DeFord did not publicly solicit any sales of LGBCoin.

### 3. As before, Defendants misunderstand the fundamental conflicts that would affect certification.

As the Court noted in ruling on Class Certification, Defendants "ignore what a 'fundamental conflict' is for Rule 23(a)(4) purposes." (Doc. 455) at 19. Defendants Motion to Decertify makes the same mistake. Defendants fail to demonstrate that Plaintiffs' conduct harmed some class members while benefiting others. *Id.* (citing *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 410 (M.D. Fla. 2018), *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010)).

As before, Defendants have provided no evidence to support a fundamental conflict in this case. Defendants assert, without proof, that DeFord's action of creating a single private instructional video is equivalent with Koutoulas' extensive, documented public promotional efforts. Yet, Defendants have not shown how DeFord benefitted in any way from the alleged promotional activity, as required by Eleventh Circuit precedent.

18

Since Mr. DeFord's actions are not on par with Koutoulas' broad promotional efforts, DeFord may still recover from Koutoulas. And since he may recover the same damages as other Class Members, no fundamental conflict of interest could possibly arise between DeFord and the Class.

III.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Decertification and, pursuant to its inherent powers, grant any other such relief that is appropriate under the circumstances.


Dated: July 1, 2025                    Respectfully submitted,

                                       <u>s/    Kevin McCormack         </u>
                                       Aaron M. Zigler (admitted *pro hac vice*)
                                       Nidya S. Gutierrez (*pro hac vice*)
                                       Lawrence V. Ashe (FL Bar 932280)
                                       Kevin M. McCormack (*pro hac vice*)
                                       **ZIGLER LAW GROUP, LLC**
                                       308 S. Jefferson Street | Suite 333
                                       Chicago, IL 60661
                                       Tel: 312-673-8427
                                       aaron@ziglerlawgroup.com
                                       nidya@ziglerlawgroup.com
                                       larry@ziglerlawgroup.com
                                       kevin@ziglerlawgroup.com

John T. Jasnoch (admitted *pro hac vice*)
Sean T. Masson (admitted *pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169

600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
jjasnoch@scott-scott.com
smasson@scott-scott.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 1, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses on the Electronic Mail Notice List.

*s/*    Kevin McCormack