**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ERIC DE FORD, et al, | Case No. 6:22-cv-652-PGB-DCI |
| Plaintiffs, | CLASS ACTION |
| v. | |
| JAMES KOUTOULAS, et al., | |
| Defendants. | |

**MOTION FOR SANCTIONS**

Defendant James Koutoulas and his counsel have treated the rules of this Court as optional and its orders as suggestions while engaging in behavior that is simply antithetical to the practice of law. They have knowingly submitted false discovery responses, willfully disobeyed Court orders,[1] including orders compelling discovery, and concealed and destroyed evidence. They have repeatedly pressed arguments this Court previously rejected across more than a dozen separate motions. They have submitted fabricated legal authority across at least eight filings—citations to cases that do not exist, quotations from cases that say no such thing, and citations to reversed decisions that counsel knew or should have known

---

[1] This Motion only discusses additional misconduct that was not addressed during the Court's hearing on the Order to Show Cause (Docs. 539, 569).

were no longer good law. The conduct has continued in the face of the Court's explicit sanctions warnings.

None of this is arguable or excusable. Defendants concealed witnesses, communications, and financial information through the close of discovery, preventing Plaintiffs from taking depositions of individuals who were likely solicited by Koutoulas, tainting the discovery that was taken, and undermining the settlement conference with Magistrate Judge Hill. Every step imposed burdens on the Plaintiffs—and often the Court—to attempt to find fabricated citations, respond to frivolous recycled motions, and reconstruct discovery that should have been produced years ago. This conduct has irreparably prejudiced Plaintiffs and their ability to present evidence at trial.

Plaintiffs request case-terminating sanctions, or in the alternative, an award of attorneys' fees and costs for each category of misconduct identified below, exclusion of belatedly disclosed witnesses under Rule 37, an adverse inference instruction regarding concealed communications and destroyed Telegram messages, and such other relief as the Court deems appropriate.

### LEGAL STANDARDS

Section 1927 authorizes sanctions against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously," requiring payment of

"excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Eleventh Circuit employs an objective bad-faith standard for Section 1927 and does not require a finding of conscious impropriety. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239–41 (11th Cir. 2007).

The Court "must compare the attorney's conduct against the conduct of a 'reasonable' attorney." *Id*. at 1240. A district court has inherent authority to impose sanctions for conduct which abuses the judicial process. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). The Court has considerable discretion to fashion an appropriate remedy, including terminating sanctions. *See Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1372 (11th Cir. 2024) (affirming a sanction of default judgment).

Rule 37(c)(1) separately mandates exclusion of witnesses not timely disclosed under Rule 26(a) unless the failure was substantially justified or harmless, and authorizes monetary sanctions for discovery violations. Fed. R. Civ. P. 37(b)(2)(A), (c)(1); *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

## **ARGUMENT**

Case-dispositive sanctions are a last resort. But they are appropriate where the record shows willful or bad-faith misconduct, substantial prejudice, and the inadequacy of lesser measures. The bad faith conduct by Koutoulas and his

3

counsel requires severe sanctions to serve as a deterrent against further abuses.

Bad faith exists where a party knowingly or recklessly raises a frivolous argument,

delays or disrupts the litigation, or hampers enforcement of a court order. *See*

*Hummel v. Tamko Building Products, Inc.*, 2017 WL 11632865, at *1 (M.D. Fla. Sept.

7, 2017) (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)). Here,

Koutoulas and his counsel have done all the above and more, warranting sanctions

under three provisions of law: 28 U.S.C. § 1927; the Court's inherent powers; and

Rule 37.

I.    **Section 1927 Sanctions Are Warranted for Koutoulas's Sustained and Ongoing Pattern of Bad-Faith Filings**

    A.    **Repeating Rejected, Unmeritorious Arguments is Objectively Unreasonable and Multiplied Proceedings**

Filing a motion that "simply repeats the movant's earlier arguments, without showing that something material was overlooked or disregarded, presenting

previously unavailable evidence or argument, or pointing to substantial error of

fact or law," is frivolous and sanctionable. *Miller v. Norfolk S. Rwy. Co.*, 208 F. Supp.

2d 851, 853-54 (N.D. Ohio 2002). Courts in this circuit consistently affirm § 1927

sanctions for exactly this conduct. *Spolter v. SunTrust Bank*, 403 F. App'x 387, 391

(11th Cir. 2010); *Stann v. First Liberty Ins. Corp.*, 2022 WL 682759, at *2 (M.D. Fla.

Mar. 8, 2022); *Burgos v. Sand Canyon Corp.*, 2020 WL 3258417, at *2 (M.D. Ga. June

4

16, 2020) ("Filing five meritless 'motions' to advance the same frivolous arguments that were already made in a response brief fit the textbook definition of unreasonable and vexatious multiplication of litigation. This behavior merits § 1927 sanctions.").

Koutoulas and his counsel have filed numerous pleadings (*see, e.g.*, Docs. 293, 294, 297, 301, 403; 457, 463; 470; 477; 490; 520, 535; 543 and 545) that repeat, reframe, or repackage previously rejected frivolous arguments.[2] Their conduct was systematic, not incidental. Defendants raised the argument that LGBCoin is not a security in at least four filings after the Court first rejected it (Docs. 403, 439, 445, 547), and even after the Court criticized Defendants for raising the contention "ad nauseum." (Doc. 455 at 8–9). Defendants' argument that the SEC has effectively exonerated them first appeared in the original motion to dismiss (Doc. 18) and has been reasserted in Docs. 439, 445, 463, 468, 469, 470, 477, 520, 535, 543, 547, 561, 574, 576, 577, and 607 — at least seventeen filings over four years. Similarly, Defendants' SEC Staff Statement argument, a subset of this theory, was introduced in February 2025 and has been raised in at least eleven filings. It was expressly

---

[2] For ease of reference, Plaintiffs have prepared the attached Selected Email and Filing Timeline, illustrating Defendants' repeated arguments (Ex. A).

rejected in Doc. 515.[3] Yet Defendants raised it again in Docs. 520, 535, 547, 561, 574, and 576-577 — at least seven more times after the rejection. Defendants raised PSLRA-related arguments in at least seven separate filings (Docs. 271, 293, 294, 301, 302, 403, 547)—a category so thoroughly rejected that the Court "invite[d] Defendants to review three of its prior Orders" on the subject. (Doc. 455 at 9). Defendants repeated their corporate-veil defense (Doc. 535) after the Court had twice rejected it and cautioned that Defendants must "marshal record evidence" before raising it again. (Docs. 354 and 455). And Defendants have raised the lack-of-privity argument in at least eight filings spanning the full life of this case, including Docs. 18, 301, 403, 463, 468, 469, 477, and 520, even after the Court confirmed it had "previously rejected this argument" at the motion-to-dismiss stage. (Doc. 455). Each new filing required a substantive opposition; and none presented new law or new facts that would have justified re-litigation.[4]

---

[3] Defendants' Renewed Motion for Summary Judgment (Doc. 607) is just another example. It recycles the same *Skidmore* deference and SEC guidance arguments the Court rejected repeatedly. It was dressed in new clothes, but the arguments are materially identical to those this Court already found unpersuasive.

[4] Koutoulas openly plans to re-argue all these points at the trial of this matter, regardless of the Court's rulings. As Koutoulas wrote in the pre-trial order, "Defendants dispute any suggestion that any element of the Howey analysis has been conclusively established for trial purposes and expressly preserve their right to present evidence and argument to the jury on each element of the Howey test, **notwithstanding any prior summary judgment rulings**." Pre-Trial Statement (Doc. 563 at 11) (emphasis added). Koutoulas also signaled

No reasonable attorney could have misread the Court's warnings. The decision to file again was not a good-faith reassessment of the law. Rather, it was a deliberate choice to continue multiplying proceedings at Plaintiffs' and the Court's expense. Plaintiffs' counsel was required to prepare opposition briefs to recycled motions (*see, e.g.,* Docs. 463, 470, 477, 490, 535, and 545) on issues this Court had already decided. That forced expenditure of attorney time on phantom disputes is the paradigm case for § 1927 fee-shifting. *See Robinson v. Alutiq-Mele, LLC,* 643 F. Supp. 2d 1342, 1344 (S.D. Fla. 2009).

Koutoulas also coordinated with others to vexatiously multiply proceedings and drive up costs. Koutoulas admitted in his deposition to using Class Members when they are helpful in litigation. (Ex. B, Koutoulas Dep. at 94:2-17, 199:2-15). On February 24, 2025, one such class member, Albert Sheeler filed a motion to intervene with the thinly-veiled goal of dismissing this case against Koutoulas. (Doc. 441 at 15). Besides being wrong on the merits, facts, and law, Mr. Sheeler's pleadings included legal arguments advanced privately by Koutoulas but not included in any public pleadings, including specific damages numbers not filed publicly.

---

his intent to reprise arguments about PSLRA sanctions (*Id.* at 35), corporate veil-piercing (*Id.* at 9, 32), and privity (*Id.* at 9, 12, 15, 20-21, 29, 32-33).

(Doc. 444-2 at 2-4). (Ex. C, McCormack Decl. ¶¶ 22-36).

The attached timeline of events (Ex. A) illustrates the coordination. After his Motion to Intervene was denied, Mr. Sheeler filed a Motion to Withdraw on October 10, 2025, stating his "intention to **opt out of the certified class**[sic]" and requesting that Class Counsel remove Mr. Sheeler from any communications regarding this matter. (Doc. 525). Later, on December 28, 2025, Koutoulas advised he would be representing himself *pro se* in this case, including on trial preparation. (Doc. 537).

Just one week after Koutoulas took complete control of case strategy, Mr. Sheeler reversed his position and demanded to testify at trial. (Doc. 560 at 7). Mr. Sheeler provided no explanation for his sudden reversal from demanding no contact in October to demanding an active role at trial in January. Simultaneously, Koutoulas added Mr. Sheeler to the witness list as a witness *for the Defendants*. (Doc. 563 at 18). Subsequently, Mr. Sheeler filed a renewed motion to intervene (Doc. 560) and a collateral lawsuit in the United States District Court for the District of Columbia[5] related to this matter, both regurgitating the same arguments

---

[5] Koutoulas testified that class members "proactively filed complaints about [Judge Byron] with the Department of Justice" and that "I've helped with those. I didn't run them, but they filed them." *See* Koutoulas Dep. 215:5–9 (Doc. 488-9).

raised by Koutoulas. *See Sheeler v. United States*, No. 1:26-cv-00212 (D.D.C., 2026).

Based on the similarity of their arguments, as well as the timing of some of those

arguments, Plaintiffs' counsel reasonably believe Koutoulas coordinated with Mr.

Sheeler in bad faith to submit these vexatious filings.[6] McCormack Decl. ¶¶22-36.

### B. Fabricated Citations and Fabricated Quotations Required Plaintiffs and the Court to Expend Resources on Phantom Authority

Submitting a case citation that does not exist is not a failure of advocacy—it

is a misrepresentation to the Court. Filing a quotation that cannot be found in the

cited opinion is not imprecision—it is fabrication. No competent attorney signs a

brief without verifying citations. *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024). ("At

the very least, the duties imposed by Rule 11 require that attorneys read, and

thereby confirm the existence and validity of, the legal authorities on which they

rely."). Defendants' submission of fabricated authority, across at least eight filings

---

[6] For example, Mr. Sheeler's initial Motion to Intervene claims that "[t]his case is over 400 docket entries, many of which individually cost *us* more than Plaintiffs' aggregate claimed damages." (Doc. 441 at 9). It is unclear how a docket entry could cost class members any money whatsoever. More importantly, this argument mirrors one made by Defendant Koutoulas in his deposition, where he insisted that "[the Court] has allowed [Plaintiffs] to damage me many multiples of what you have alleged your clients have [been] damaged [by] me." (Ex. B, Koutoulas Dep. at 222:6-8). The Motion also claims that a punitive damages claim against NASCAR in the state case "has potential damages as high as $5 billion," a number that did not appear in litigation previously, but that was mentioned by Koutoulas in his deposition, the transcript of which was not prepared until *after* Mr. Sheeler filed his motion. (Doc. 441) (filed on 2/24/2025) and (Ex. B. Koutoulas Dep. at 97: 2-7) (taken on 3/3/2025).

and more than forty instances, is precisely what § 1927 was designed to reach.[7] *See* McCormack Decl. ¶¶ 3-9.

Courts in this circuit and elsewhere have imposed § 1927 sanctions on materially identical facts. In *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1356 (S.D. Fla. 2025), the court found that an attorney who "repeatedly us[ed] AI to generate hallucinated cases and quotations" forced parties and the court to "spen[d] significant resources on orders to show cause and attending and preparing for . . . hearing[s], which necessitated further briefing as additional facts came to light regarding [counsel's] misrepresentations." The court held that § 1927 sanctions were "undeniab[ly]" warranted.

The same analysis applies here, and the conduct in this case is worse: the fabrications span more filings, more citations, and they continued after an explicit judicial warning. *See also Williamson v. Trans Union LLC*, 2025 WL 2443390, at *4 (M.D. Fla. May 13, 2025) (sanctioning attorney under court's inherent authority for submission of fictitious cases, finding conduct warranted referral to Florida Bar); *DOC App, Inc. v. Leafwell, Inc.*, 2025 WL 3288251, at *3–4 (M.D. Fla. Nov. 26, 2025)

---

[7] Koutoulas's submission of false authority has occurred repeatedly throughout this case. (Ex. D, Spreadsheet of Non-existent Cases, Quotations, and Other Citation Errors).

(imposing Rule 11 sanctions where motion contained fabricated citations, citations that do not contain quoted language, and citations that do not relate to the purported proposition).

Defendants submitted fabricated authority across at least eight separate filings: Docs. 403, 463, 470, 477, 490, 535, 545, and 582. Plaintiffs have catalogued more than forty such instances. McCormack Decl. ¶¶3-9. After identifying fabricated authority in its Summary Judgment Order, the Court issued an explicit sanctions warning: "citing to cases that do not exist is a misrepresentation to the Court and is sanctionable under Federal Rule of Civil Procedure 11(c) . . . . Consequently, if Defendants continue to use such unethical practices in later briefings, the Court may impose appropriate sanctions against Defendants." *Id.*

Rather than correct course, Defendants filed a voluntary Notice of Candor that argued the citations were "inadvertent clerical errors" and that AI could not have produced them because Westlaw is a "closed source." (Doc. 552 at 3, ¶6). This Notice was not candid. It contained verifiable misrepresentations.[8]

This was no "clerical error." Defendants identify the three fabricated

---

[8] *See also*, Doc. 574 at 6 ("references to 'AI-generated cases' … mischaracterize counsel's Notice of Candor, which demonstrated that the cited cases existed and that any pin cite errors were clerical—not fabricated.")

citations as having been "intended" to be *Gorog v. Musk, Underwood v. Coinbase Global, Inc.,* and *Risley v. Universal Navigation Inc.*—but that substitution does not explain away the misconduct; it confirms it. Defendants' motion for summary judgment cited those cases for the proposition that comparable token projects are not securities under *Howey*. None of the three real cases so holds. Additionally, Defendants included a quotation from "In re: Uniswap" in their brief that does not appear anywhere in the substitute case. The quotation is fabricated, and a review of other quotations in the pleading reveal the same defect. (Ex. D). Pointing to real cases as the "intended" citations does not make fabricated quotations real—it confirms only that the original citations were fabricated.

The "clerical error" defense has been uniformly rejected by courts. In *Schlichter v. Kennedy*, 116 Cal. App. 5th 24 (2025), an attorney responded to an order to show cause by asserting that the citation errors were "entirely clerical in nature" and that "the core allegation as to using 'AI hallucination' cases is entirely untrue." *Id*. at 28. The court found that explanation "not credible," found that counsel "lacked candor," and imposed sanctions. *Id*. at 32. In *United States v. Hayes*, 763 F. Supp. 3d 1054, 1068–69 (E.D. Cal. 2025), an attorney who submitted a fabricated citation claimed the quoted language was drawn from another case—which also

12

proved false. When the court pressed further at the hearing, the attorney refused to concede the cited case was not real. The court found the attorney's explanations not credible, held the conduct to be bad faith, imposed monetary sanctions, and referred counsel to two state bars. *Id.* at 1073. Both decisions confirm the same principle: a corrective filing that substitutes one false account for another does not cure the original misconduct—it compounds it. That is precisely what the Notice of Candor does here.

The Westlaw "closed source" argument is equally false. Counsel asserted that because Westlaw requires a subscription, AI "would not have referenced a 'WL' document citation." (Doc. 552 at 3, ¶6). But AI hallucinations often contain Westlaw citations. In *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023), an attorney's ChatGPT-generated brief cited "Martinez v. Delta Airlines, Inc., 2019 WL 4639462 (Tex. App. Sept. 25, 2019)," and "Estate of Durden v. KLM Royal Dutch Airlines, 2017 WL 2418825 (Ga. Ct. App. June 5, 2017)." *Id.* at 451. Neither case exists. *Id.* at 456. Both citations carried WL numbers in proper Westlaw format. *See, also, Montes v. Suns Legacy Partners, LLC*, 2026 WL 879001, at *14 (D. Ariz. Mar. 31, 2026) (sanctioning for hallucinations and noting, "nearly all the fictitious citations contained Westlaw reporter numbers").

While the Notice of Candor sought to assure the Court that Defendants had not engaged in sanctionable behavior, the Notice of Candor is itself an independent ground for sanctions. A voluntary filing—signed as a true statement of fact and law, submitted to a court that had just warned of sanctions—that affirmatively misrepresents the substance of the very cases it attaches as exhibits is not good-faith disclosure. It is the opposite.

Despite the Court's warning, Koutoulas and his counsel continue to cite to fabricated authority. Defendants' recently filed Motion to Bifurcate (Doc. 582) purported to quote *Dzafic v. Geovera Specialty Ins. Co.*, 2008 WL 3874602, at *1 (M.D. Fla. 2008). But the quoted language does not appear in *Dzafic*, nor any other published federal case.[9] *See* Plaintiffs' Response to Motion to Bifurcate (Doc. 595 at 2). Attributing a fake quote to a real case is no less sanctionable. *United States v. Farris*, 2026 WL 915082, at *5-6 (6th Cir. Apr. 3, 2026) (per curiam).

Defendants' submission of fake cases and quotations should be sanctioned pursuant to Section 1927 as it has unreasonably multiplied the proceedings in this

---

[9] The same pattern persists in Koutoulas's Petition for Writ of Mandamus to the Eleventh Circuit, which contains two fabricated quotations, two citations of overturned authority and numerous other indicia of unverified AI output. *See* AI Spreadsheet, Ex. D. In denying Koutoulas's Petition, the Eleventh Circuit noted that the Petition was inadequately supported by legal authority. *See In re: James Koutoulas*, No. 26-10500, Order on Pet. For Writ of Mandamus at *5-6 (11th Cir. Apr. 13, 2026).

14

matter.[10] Courts in this District regularly sanction such conduct. *See, e.g.*, *O'Brien v. Flick*, 2025 WL 242924, at *5–8 (S.D. Fla. Jan. 10, 2025), *aff'd*, 2025 WL 2731627 (11th Cir. Sept. 25, 2025) (issuing terminating sanctions for, *inter alia*, the unapologetic citation of nonexistent cases); *Force v. Cap. One, N.A.*, 2025 WL 2930308, at *4 (M.D. Fla. Oct. 15, 2025).

## II.    The Court Should Issue Sanctions Pursuant to its Inherent Authority

Defendants' conduct during this litigation demonstrates bad faith. They have corrupted the justice system, tainting the record with falsehoods, unsupported arguments, fabricated quotes, and fake cases. Their actions did not stop with the Court's first warning, or its second, and persisted even in the face of an Order to Show Cause why he should not be held in contempt. Accordingly, this warrants an exercise of the Court's inherent powers to issue terminating sanctions. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (affirming default judgment sanction); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (same).

## III.    Rule 37 Sanctions for Defendant's Discovery Misconduct Are Appropriate

In February 2023, Magistrate Judge Irick granted Plaintiffs' motions to

---

[10] Should the Court grant this Motion, Plaintiffs request leave to file an associated fee and cost application.

compel and ordered Koutoulas to produce, among other things, communications about LGBCoin and wallet addresses corresponding to LGBCoin sales. (Doc. 199 at 2). Recently, however, Plaintiffs discovered that Defendants violated that Order and the obligation to supplement Rule 26 disclosures. Koutoulas has withheld significant evidence including: (1) the identity of individuals with relevant information about his defenses; (2) the identity and contact information of Class Members; (3) communications with such individuals; and (4) financial information including cryptocurrency wallet addresses used for LGBCoin transactions.

*First*, pursuant to the Court's Order on Class Notice (Doc. 534), Koutoulas identified nine individuals as potential class members to whom Class Notice should be provided. Six of them had not been previously disclosed as part of Defendants' Rule 26(a)(1) initial disclosures, a violation that subjects them to mandatory exclusion under Rule 37(c)(1).

*Second*, in his testimony at the show cause hearing, Koutoulas admitted that he regularly speaks to LGBCoin purchasers (*i.e.* class members). (Doc. 569 at 19:16-20:02). Koutoulas sold significant amounts of LGBCoin in over-the-counter transactions directly with purchasers. McCormack Decl. ¶¶10-18. These over-the-counter sales are direct, one-on-one transactions between Koutoulas and individual

purchasers—the strongest possible evidence that Koutoulas successfully solicited LGBCoin purchases.[11] But Koutoulas failed to produce communications between himself and all of these purchasers in response to Plaintiffs' discovery requests. This violates the Motions to Compel Order, which explicitly directed Defendant to produce the requested information. (Doc. 199 at 2).[12]

These communications have been extensive, continuous, and ongoing. (Ex. G). Many messages have been permanently destroyed, despite preservation obligations and an Order compelling production.[13] Rule 37(e) authorizes sanctions—including adverse inference instructions—where electronically stored information "that should have been preserved. . . is lost because a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e). Koutoulas's preservation obligations

---

[11] Mr. Koutoulas admitted privately that one insider alone was "useful for OTC money coming in (brought 10M for LGB)". Ex. F. Records of these sales, contact information for the buyers, and records of where the money went are missing.

[12] The requested information included Requests for Production Nos. 26 *See* Docs. 161 (Second Motion to Compel); 161-1 (Plaintiffs' First Set of Requests for Production). REQUEST FOR PRODUCTION NO. 26: All postings made on any social media account, instant messaging service or platform, and/or mobile application, including photographs, videos, and statements, made by you from October 2, 2021 to the present concerning LGBCoin. Such social media and instant messaging and accounts shall include, but not be limited to, Facebook, Twitter, Instagram, Reddit, Telegram, and Discord.

[13] Koutoulas testified that Telegram's auto-delete feature is "a good deterrent against frivolous lawsuits" because "discovery is very expensive." (Dep. Tr. 34:13–35:8). Messages before April 22, 2025 have been deleted from the Telegram channel. *See* McCormack Decl. ¶20.

began no later than the filing of the complaint in 2022. Telegram's automatic mes-sage-deletion feature does not excuse a party's failure to take affirmative steps to preserve relevant communications. Koutoulas was obligated to preserve, disclose, and produce his communications with each class member he subsequently identi-fied and all social media posts regarding LGBCoin, (Doc. 199 at 2), yet he chose to withhold such evidence.

The Motions to Compel Order also directed Koutoulas to disclose wallet ad-dresses corresponding to LGBCoin sales. (Doc. 199 at 2).[14] At the time, he identified 28 wallet addresses that he used for LGBCoin transactions. (Ex. H). In his state court case, however, Koutoulas identified four additional wallets as being under his ownership and/or control that were used for LGBCoin transactions that he has not identified in this case. (Ex. I). Upon learning of the concealment, Plaintiffs ex-pended significant amounts of time scouring other discovery for undisclosed wal-let addresses and have found another five, in addition to the four discussed above, that Koutoulas concealed. (Ex. J).[15]

---

[14] *See also* Doc. 166 (Fourth Motion to Compel); 166-1 (Plaintiffs' Second Set of Interroga-tories). Interrogatory 9: "Identify whether you purchased, received, sold or transferred any LGBCoins (as defined above), and the date(s), amounts, and Wallet IDs correspond-ing to those transactions. "

[15] This disclosure prompted a further review of discovery from this case and *LetsGoBran-don.com Foundation v. NASCAR,* which uncovered an additional 15 names of ostensible

18

There are a significant number of transactions in these wallet addresses related to LGBCoin during the class period. Importantly, these wallets also contain several transactions where stablecoin tokens like USDC, and USDT are sent to centralized exchanges like Gemini, Coinbase, and FTX. For example, the wallet address ending in a047 receives over $225,000 of USDC tokens from wallets heavily transacting in LGBCoin, and promptly sends the USDC to the centralized exchange Gemini. *See* a047 Wallet Token Transactions (Ex. K ). On-chain analytics literature consistently recognizes that transfers of cryptocurrency to centralized exchanges are associated with efforts to liquidate.[16]

Koutoulas's concealment of the requested information has meaningfully prejudiced Plaintiffs' ability to litigate this matter. Koutoulas's decision to hide witnesses with relevant information prevented Plaintiffs from taking depositions of these LGBCoin purchasers who were required to communicate directly with Koutoulas to purchase LGBCoins OTC and have the best evidence of Koutoulas

---

LGBCoin purchasers that were known to Defendant and his counsel but not disclosed or properly identified in this matter. McCormack Decl. (Ex. C) at ¶12.

[16] *See* Glassnode, *Bitcoin On-Chain Exchange Metrics: The Good, The Bad, The Ugly*, https://insights.glassnode.com/exchange-metrics/ ("Inflows into exchanges can be indicative of … investors looking to take profits"); Arkham Intelligence, *A Complete Guide to On-Chain Analysis*, https://info.arkm.com/research/on-chain-analysis-guide (noting that inflows to exchanges "often indicate[] tokens being deposited … for the purpose of selling")(last accessed April 10, 2026).

promising an "expectation of profits" for their LGBCoin purchases. Likewise, Koutoulas's failure to preserve and produce social media communications has resulted in the destruction of direct evidence of Koutoulas's solicitations. This is the sole element of the three-part *Howey* test that the Court reserved for the jury.

Further, Koutoulas's refusal to disclose relevant financial information regarding his LGBCoin wallet addresses has hindered Plaintiffs' ability to evaluate damages and potential collectability issues. Plaintiffs and their expert relied on the incomplete wallet list to analyze the transactions in this case, the amount of damages, the size of the class, and the profits made by Koutoulas. Defendants' mistruths about his finances also suggest that Koutoulas intends to ignore even a jury verdict and final judgment in this case by rendering himself assetless on paper, and therefore judgment-proof.[17] These discovery violations warrant the most severe sanctions under Rule 37(c). *See Hornady*, 118 F.4th at 1372 (affirming default judgment).

---

[17] Ex. G. at 61: Koutoulas: "Basically seems both judge and co counsel don't want me to tell you that you have the option to object or opt out and that their case is not supported by law or fact. If it wasn't clear before, though, obviously there is a conflict because if somehow they do manage to both convince a jury and survive appeal, you could potentially lose a payout from me. *But joke's on them since I spent virtually all of my assets defending this nonsense and suing Nascar.*"(emphasis added).

## IV.    Lesser Sanctions Cannot Remediate the Misconduct

Case-dispositive sanctions are a last resort. But they are appropriate in a case where the record shows willful or bad-faith misconduct, substantial prejudice, and the inadequacy of lesser measures. That is this case.

Warnings have failed. This Court repeatedly warned Defendants about deficient, repetitive, and unsupported briefing. Yet the misconduct continued. Defendants continue recycling arguments the Court has already rejected. Defendants continued to submit briefing containing fabricated or unsupported authority. A party who persists after repeated warnings demonstrates that admonitions and ordinary fee exposure are not sufficient deterrents.

Moreover, monetary sanctions alone will not repair the trial prejudice. Fees cannot restore the discovery record that Defendants withheld. Plaintiffs cannot now recreate the missing LGBCoin communications with the 21 newly-identified witnesses. They cannot go back and incorporate the concealed wallet addresses into expert work, settlement evaluation, and discovery strategy on the timetable the Court originally ordered. The prejudice is therefore not merely financial. It is evidentiary and strategic, and much of it is irreversible.

Reopening discovery would not cure the problem. At this stage, reopening would reward the very misconduct that created the gap. It would impose yet

21

more cost and delay on Plaintiffs, require re-depositions, expert revisions, and renewed motion practice, and still would not restore what has been lost. Memories have faded. Trial preparation has already been shaped around an incomplete record. Settlement proceedings occurred without the concealed financial information. And to the extent relevant Telegram or other communications were not preserved, they cannot simply be "reopened" back into existence.

When viewed cumulatively, the record shows a sustained effort to impose cost, create confusion, and deprive Plaintiffs of a fair litigation process. The prejudice is greater than any single evidentiary sanction can cure. Plaintiffs should not now be forced into a choice between going to trial on a record distorted by Defendants' misconduct or absorbing still more delay and expense in an attempt to reconstruct what Defendants should have produced years ago. That is precisely why terminating or issue-dispositive sanctions exist. Indeed, because a "do-over" is not possible and lesser sanctions would be ineffective, the Court need not go through "the vain gesture of first imposing those ineffective lesser sanctions." *See Browning v. Bay Radiology Assocs. PL,* 2024 WL 3200472, at *2 (11th Cir. June 27, 2024) (quoting *Malautea,* 987 F.2d 1536 at 1542). They are not punitive excess; they are the only effective means of protecting the integrity of the

proceedings when lesser sanctions would leave the innocent party substantially prejudiced.

At minimum, if the Court declines default, it should impose a package of sanctions sufficient to approximate the position Plaintiffs would have occupied absent the misconduct, including, but not limited to: full fee-shifting, exclusion of the untimely disclosed witnesses, preclusion of undisclosed wallet and financial evidence, adverse inferences as to concealed communications and profits, and any issue-preclusion relief necessary to prevent Defendants from benefiting from their obstruction. Anything less would leave Plaintiffs bearing the very prejudice that the Court has already warned Defendants not to create.

## V.   Defendants' Anticipated Defenses Do Not Defeat Sanctions

Mr. Koutoulas may argue Section 1927 sanctions cannot reach him because he is a party rather than counsel of record. But Section 1927 "is applicable not only to lawyers who represent clients but also to a lawyer who represents himself." *Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010). *See also In re Wizenberg*, 838 F. App'x 406, 413 (11th Cir. 2020) (imposing Section 1927 sanctions on a *pro se* attorney). Furthermore, even if Koutoulas is viewed solely as a party defendant, Rule 37 and the Court's inherent authority still reaches both parties and non-parties alike. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).

23

Ms. Martell may argue she was executing client instructions and bears no personal responsibility for the misconduct catalogued above. The Eleventh Circuit has rejected that defense in binding terms: "An attorney cannot silently acquiesce to a client who demands that the attorney pursue measures in the litigation that conflict with applicable ethics provisions. Rather, the attorney must stand his or her ground and refuse to act in a manner that flies in the face of the relevant ethics rules." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1327–28 (11th Cir. 2002). Ms. Martell signed the offending pleadings and falsely verified the truthfulness and accuracy of their contents. She also doubled down with the misleading Notice of Candor. Sanctions against her specifically are appropriate.

## CONCLUSION

Defendants' misconduct is so pervasive that it affects nearly every aspect of this case. Sanctions are needed to protect the Class, punish Koutoulas's misconduct, remedy the negative effects, and defend the integrity of proceedings and the justice system against attacks levied by an officer of the court. But due to the passage of time, fading of memories, and natural loss of evidence attendant with time, no effective remedy exists save one: default judgment.

## REQUESTED RELIEF

Plaintiffs respectfully request the Court grant default judgment pursuant to

24

Rule 37 and/or its inherent authority to remedy Koutoulas's multi-year pattern of misconduct, and award fees under Section 1927. In the alternative, Plaintiffs request any such other sanctions as the Court deems fit, such as: 1) their attorneys' fees expended in this litigation; 2) an instruction to the jury that Koutoulas has concealed evidence of his solicitations and his profits from LGBCoin in bad faith; 3) exclusion at trial of any witnesses or evidence not provided in initial disclosures; or 4) if the Court determines the record can still be meaningfully supplemented, an order reopening discovery at Defendants' expense to allow Plaintiffs to depose undisclosed witnesses and seek withheld evidence, re-depose Defendants, and re-designate experts.

Dated: April 13, 2026

Respectfully submitted,

s/ *Aaron M. Zigler*

Aaron M. Zigler (admitted *pro hac vice*)
Kevin McCormack (admitted *pro hac vice*)
Lawrence V. Ashe (FL Bar 932280)
Nidya S. Gutierrez (admitted *pro hac vice*)
**ZIGLER LAW GROUP, LLC**
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312-673-8427
aaron@ziglerlawgroup.com
kevin@ziglerlawgroup.com
larry@ziglerlawgroup.com
nidya@ziglerlawgroup.com

John T. Jasnoch (admitted *pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-236-0508
jjasnoch@scott-scott.com

Sean T. Masson (admitted *pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: 212-223-6444
Fax: 212-223-6334
smasson@scott-scott.com

*Counsel for Plaintiffs and the Proposed Class*

26

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), Plaintiffs' counsel sought to confer with counsel for Defendants on April 10, 2026 regarding the relief sought by this Motion. Plaintiffs requested Defendants' availability and offered times on April 10 or April 11. Plaintiffs again requested Defendants' availability on April 13. Counsel for Defendants advised that she is unable to confer on behalf of Defendants due to a conflict of interest.

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*s/ Aaron M. Zigler*
Aaron M. Zigler
