UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ERIC DE FORD, et al.,
Plaintiffs,

v.

JAMES KOUTOULAS, et al.,                    **Case No: 6:22-cv-652-PGB-DCI**
                                             **CLASS ACTION**

Defendants.


**DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR RULE 11 SANCTIONS (Doc. 637)**

Plaintiffs' Opposition (Doc. 639) devotes its first seven pages to the

argument that Defendant's Motion must be denied because he served a safe

harbor letter rather than the motion itself. Even accepting Plaintiffs' reading of

Rule 11(c)(2), the procedural objection is moot: Defendant first gave notice on

April 15, 2026, conferring a proposed motion to strike identifying the deficiencies

in Plaintiffs' Motion. Plaintiffs chose to maintain their Motion. Defendant then

served a detailed Rule 11 safe harbor letter on April 27, identifying seven

categories of misrepresentations and affording twenty-one days to withdraw or

correct. Plaintiffs did not respond. They then received the actual motion via

CM/ECF on May 19, and rather than correcting any challenged representation,

filed a 17-page opposition defending every one of them. The safe harbor's

purpose has been fully served. What Plaintiffs' Opposition does *not* do is address

the substance of the misrepresentations Defendant identified. Instead, Plaintiffs

recharacterize fabrications as "factual disputes," misrepresent binding authority,

and ask the Court to award fees against a *pro se* defendant for a technical sequencing error—while they themselves deliberately circumvented the very safe harbor provision they now champion.

**I.      The Safe Harbor's Purpose Has Been Fully Served**

Plaintiffs argue that Rule 11(c)(2) requires pre-filing service of the actual motion, and that Defendant's April 27, 2026 letter was insufficient. (Doc. 639, pp. 1–7). Defendant does not now dispute that the better practice would have been to serve the motion before filing, but he gave notice multiple times in good faith.

But the safe harbor provision exists for a purpose: to afford the target twenty-one days' notice of the specific conduct challenged, so that the target may withdraw or correct the challenged paper before the motion is filed. *See* Fed. R. Civ. P. 11 advisory committee's note (1993) (the safe harbor is intended "to provide a mechanism for the offending party to avoid sanctions by withdrawing or correcting"). That purpose has been fully satisfied. Plaintiffs' counsel received the actual motion via CM/ECF on May 19, 2026, and responded by filing a 17-page opposition defending virtually every challenged representation rather than withdrawing or correcting any of them.

That Plaintiffs chose to double down rather than correctdoes not entitle them to dismissal of the Motion on procedural grounds when its purpose has been served. Finally, Defendant is proceeding *pro se* and his filed documents should be "liberally construed." A technical sequencing error should not bar the

Court from considering serious misrepresentations by experienced securities class action counsel. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Equity cuts both ways. Rule 11(c)(2)'s safe harbor exists so that the target of a sanctions motion has twenty-one days to withdraw or correct before being hauled into court. Defendant received no such courtesy. Plaintiffs' counsel filed their 27-page Motion with 16 exhibits the night before defense counsel's withdrawal hearing—generating a salacious Law360 article[1] before Defendant had any opportunity to respond. Defendant, newly pro se, conferred with Plaintiffs' counsel on April 15, 2026—just two days after the Motion was filed— raising the procedural deficiencies. (Doc. 626, p. 2). Plaintiffs chose to maintain their Motion. Defendant then researched Plaintiffs' numerous claims across 27 pages and 16 exhibits and served a detailed safe harbor letter on April 27. Plaintiffs have been on notice since April 15—fifty-one days—and have not withdrawn or corrected a single misrepresentation. If the Court is inclined to enforce strict safe harbor compliance, the equities overwhelmingly favor the pro se defendant who imperfectly but promptly complied over the seven attorneys who deliberately served nothing at all.

## II.    Plaintiffs Cannot Demand Procedural Rigor They Refused to Observe

Plaintiffs' counsel now demand to the letter Rule 11(c)(2) compliance from a *pro se* defendant. Yet when Plaintiffs' counsel filed their own Motion for Sanctions (Doc. 614), they deliberately avoided invoking Rule 11 entirely,

---

[1] See Investors Wants Sanctions For Fake Citations In LGBCoin Suit - Law360 available at
https://www.law360.com/articles/2465015 (last accessed June 3, 2026).

choosing instead to proceed under § 1927, inherent authority, and Rule 37, for the express purpose of evading that same safe harbor, while citing Rule 11 twice as rationale for their filing. Plaintiffs' counsel served nothing and engineered their Motion to avoid the safe harbor entirely. This is not accidental—it is the hallmark of a SLAPP, using litigation filings to inflict reputational harm on Defendant for using his right to free speech via his LGBcoin advocacy.[2]

The timing reveals the broader strategy. The SEC and CFTC have now published a formal Joint Release[3] confirming the findings of the SEC investigation into LGBcoin's regulatory status as well as what Plaintiffs themselves admitted in their Second Amended Complaint: that LGBcoin is a digital commodity, not a security. (Doc. 74, ¶3). Plaintiffs seek a default judgment through sanctions—an end-run around the dispositive legal question the expert agencies have resolved against them.

This sanctions motion is the latest in a pattern of abuse documented in Defendant and Norden's four deferred sanctions motions (Docs. 113, 223, 236, 271). Plaintiffs initiated this case with shotgun pleadings, the first voluntarily withdrawn, the second dismissed *sua sponte*, filed despite their own plaintiff's emails praising Defendant and blaming NASCAR. Plaintiffs violated the PSLRA for over a year, conducting impermissible discovery that formed the sole basis for the only certified class claim. They did not comply with the PSLRA until NASCAR was dismissed from the case due to their shoddy pleadings, deterring

---

[2] See Fla. Stat. § 768.295(4).
[3] See 17 CFR Parts 231 and 241 [Release Nos. 33-11412; 34-105020; File No. S7-2026-09]li RIN 3235-AN56

any competent counsel from entering the case after their illegal late notice. Plaintiffs withheld NASCAR's own "libel list" to smear Defendant from the Court. Plaintiffs still refuse to disclose their litigation funder. De Ford withheld his own promotional materials and Reddit posts touting returns—evidence dispositive of *Howey* analysis. His lawyers now seek sanctions over post-class-period messages that Plaintiffs already possess, potential clerical errors on citations Defendant's counsel sought to correct via a Notice of Candor, and a raft of manufactured misrepresentations designed to smear Defendant. Plaintiffs filed an untimely cross-motion for summary judgment riddled with misrepresentations yet still were allowed briefing by the Court. Every motion Defendant has filed to address this misconduct has been deferred—Defendant's most recent sanctions motion (Doc. 271) was struck the same day it was filed— while Plaintiffs' Motion (Doc. 614) was permitted full briefing, including a Reply that introduced new exhibits and new legal theories despite no safe harbor or conferral compliance. The asymmetry is striking.

Plaintiffs' counsel, seven active attorneys (of a total of ten over the life of the case) from three law firms (four over the life of the case) backed by an anonymous litigation funder, ask this Court to deny Defendant's Motion because a *pro se* litigant served a letter and a motion to strike instead of the sanctions motion itself, while Plaintiffs' own sanctions motion was filed without any safe harbor or conferral compliance whatsoever despite invoking Rule 11 twice in their own brief. Plaintiffs aim to weaponize a procedural requirement they deliberately circumvented.

### III.    Plaintiffs' Substantive Misrepresentations Remain Uncorrected

Plaintiffs' Opposition characterizes each challenged misrepresentation as a "factual dispute" or "good-faith advocacy." (Doc. 639, pp. 8–14). That framing does not withstand scrutiny.

*The OTC trade.* Plaintiffs presented earlier emails from a chain to the Court as proof that Defendant completed a trade with Heckman—while omitting the later emails from that same chain showing the trade was never consummated because Coinbase froze the sending capability. (Bates Nos. LGBcoin003459–3461). The complete, publicly verifiable transaction history of the wallet referenced in the email confirms there is no transaction of the size discussed. This is not a "factual dispute," it is selective presentation of evidence that the blockchain definitively disproves.

*The wallet addresses.* Plaintiffs' Opposition states that the wallet attributions are "tied directly to Koutoulas's productions." (Doc. 639, p. 9). But Plaintiffs do not address the two wallet addresses cited in their Motion that appear to be invalid blockchain addresses, nor do they address that wallet 0xD666 belongs to outside counsel Rafael Yakobi and never held LGBcoins, nor that wallet 812e belongs to Alex Giuliani as stated in the very document Plaintiffs cited and ignored. Presenting wallets as belonging to Defendant that either do not exist on the blockchain or are demonstrably owned by third parties is not "record-based advocacy"—it is a violation of Rule 11(b)(3)'s requirement that factual contentions have evidentiary support.

*Kleiner.* Plaintiffs' Opposition now argues that *Kleiner*'s holding is grounded in Rules 23(b)(3) and 23(d), not a pre-existing order. (Doc. 639, p. 12). But Plaintiffs conflate the *Kleiner* court's discussion of a court's *authority* to enter protective orders under Rule 23(d) with the *basis* for the finding of misconduct—which was the defendant's violation of an existing court order. 751 F.2d at 1200–01. No such order exists in this case, and Plaintiffs have not sought one. They have now cited *Kleiner* across multiple filings, Docs. 538, 614, and 639, without ever disclosing this material distinction to the Court.

## **CONCLUSION**

The safe harbor's purpose has been served. The substantive misrepresentations remain uncorrected. Defendant respectfully requests that the Court deny Plaintiffs' sanctions motion, consider the substance of Defendant's Motion on the merits, and enter sanctions against Plaintiffs for this latest in four years of systematic misconduct, and for all of Defendant's other sanctions motions as well as that filed by Erik Norden. Defendant's fees and expenses for the entirety of this abusive litigation are warranted.

Respectfully submitted,

/s/ James Koutoulas
James Koutoulas, *Pro Se*
10 N. Dearborn St., Suite 400
Chicago, IL 60602
312-451-4088
james@koutoulaslaw.com

Dated: June 5, 202

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on June 5, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s/ James Koutoulas