## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ERIC DE FORD, et al.,

Plaintiffs,

v.

JAMES DEFENDANT, et al.,

Defendants.

**Case No: 6:22-cv-652-PGB-DCI**

**CLASS ACTION**

### DEFENDANT JAMES KOUTOULAS'S SURREPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS

Plaintiffs' Reply (Doc. 635) introduces new legal theories, new evidence, and new arguments that Defendant had no prior opportunity to address. Defendant's Response (Doc. 626) prioritized threshold procedural deficiencies: Plaintiffs' failure to serve a Rule 11 safe harbor, their failure to confer exhibits under Local Rule 3.01(g), and their improper invocation of 28 U.S.C. § 1927 against a party. Contrary to a misrepresentation in their Reply, Defendant argues that the 3.01(g) violation was Plaintiffs' refusal to produce the hundreds of pages of exhibits via which scores of allegations were made.[1]

That Defendant opposed the Motion due to its procedural flaws does not "concede" the merits. Defendant expressly reserved the right to address the merits if the Court declined to deny the Motion on procedural grounds given page limits. (Doc. 626, p. 1 n.1). Defendant again reserves that right given the vast number of ill-researched allegations raised. Plaintiffs' new argument that the Motion should be granted as unopposed against former counsel Ms. Martell under Local Rule 3.01(c) (Doc. 635, pp. 2, 10) is meritless. Ms. Martell had moved to withdraw months before the Motion was filed, yet the Motion seeks relief against Defendant, who responded. This surreply addresses the new arguments and evidence Plaintiffs improperly raised for the first time in their Reply.

## I.    28 U.S.C. § 1927 Does Not Reach a Represented Party

Plaintiffs' original Motion invoked § 1927 without explaining how a statute directed at "any attorney or other person admitted to conduct cases" could reach

---

[1] It is impossible to respond to Plaintiffs' hundreds of pages of allegations given page limits enforced by the Court.

a represented defendant. In their Reply, Plaintiffs attempt to fill that gap with an new theory: that Defendant is subject to § 1927 because he holds law licenses in New York and Illinois. (Doc. 635, pp. 4–6). This argument fails. Defendant was represented for the vast majority of this litigation. Holding a law license does not transform a party into "counsel" for purposes of § 1927 any more than a doctor-defendant in a malpractice case becomes an expert witness. Plaintiffs' misrepresent state bar ethics opinions and ignore that Rule 7.3 of both bars allow contact if a prior relationship exists, as one does here given Defendant's pre-existing and ongoing role as trustee for the Foundation.

The two filings Plaintiffs point to, Doc. 545 and the Petition for Writ of Mandamus, were neither frivolous nor evidence of "vexatiously multiplying" proceedings. Doc. 545 was stricken on a procedural timing issue, not for lack of merit. The mandamus petition was denied on grounds of not warranting "extraordinary relief," the standard disposition, and the Eleventh Circuit made no finding of frivolity. Plaintiffs ironically seek the same type of extraordinary relief, but here based mostly on wildly fabricated allegations.

## II.    The OTC Trade Evidence Shows the Opposite of What Plaintiffs Claim

The Reply introduces for the first time a November 2021 email chain (Exhibit B) and an LGB Consortium OTC Sale Sheet (Exhibit C), neither of which appeared in the original Motion. Plaintiffs use these documents to claim Defendant was "a party to OTC trades with James Heckman" and that his Response contained "obvious falsehoods." (Doc. 635, pp. 6–7). The email chain shows a discussion regarding a contemplated trade with Heckman associates Jeff

Hanson and Lesley Wilhelmi. Plaintiffs themselves provide the wallet address referenced in the email, a wallet Defendant disclosed multiple times in discovery. Viewing that wallet's complete token transaction history on the publicly accessible Ethereum blockchain[2] demonstrates that the contemplated trade was never completed: there is no transaction anywhere near the size discussed.

Moreover, Defendant produced in discovery the continuation of this very email chain (Exhibit B, Bates Nos. LGBcoin003459–3461). On November 22, 2021, Wilhelmi emailed Defendant: "Account still restricted for sending. I send a ticket to support. I will keep you posted." (Ex. B at LGBcoin003459). A Coinbase account screenshot in the same chain shows $999,990 in USDC unable to be sent because Coinbase had restricted sending functionality. (Ex. B at LGBcoin003460). Plaintiffs had this document and presented only the earlier emails as proof Defendant completed a trade while omitting the later emails showing it was never consummated. That is selective, bad-faith presentation of evidence to mislead the Court. Had Plaintiffs complied with Rule 11's safe harbor, Defendant could have pointed this out before the Motion was filed. On April 27, 2026, Defendant served Plaintiffs' counsel with a Rule 11 safe harbor letter identifying these misrepresentations. Plaintiffs instead double downed with more misrepresentations in their response.

### III.    Plaintiffs' Wallet Allegations Are Incorrect Speculation, Not Evidence

---

[2] https://etherscan.io/address/0xe88045b2c67d931635BAb9b372351c17398fA047#tokentxns

Defendant has never hidden any cryptocurrency or other assets despite Plaintiffs' unsupported allegations. The Reply presents a revised "Undisclosed Wallet List" (Exhibit D) that differs from the original Motion's list. (Doc. 635, pp. 7–8). Of all the "concealed" wallets Plaintiffs attribute to Defendant, the only one that is actually his was disclosed in discovery early in the case. Plaintiffs' complaint is that it was not identified a second time in response to a later request; that is not concealment. The remaining attributions are unsupported guesses presented as established facts. Wallet 0xD666 clearly belongs to Rafael Yakobi, outside counsel for the non-party Foundation, and never held LGBcoins. Wallet 0xe880 never held LGBcoins and was not responsive to the cited interrogatory, yet was nevertheless produced. At least two addresses (0x85e1 and 0x65ad) appear to be invalid blockchain addresses. (Doc. 626, pp. 15–16). Wallet 812e belongs to Alex Giuliani as stated in the document Plaintiffs themselves cited (03102023PROD26S0001). The wallets that bought coins that funded the liquidity pool are not owned by Defendant and he has no way to identify their owners but Plaintiffs may message them on the blockchain.

**V.     <u>Plaintiffs' Discovery Arguments Lack Legal Basis and Chill Free Speech</u>**

Plaintiffs argue Defendant's communications with LGBcoin purchasers are improper, relying on *Kleiner v. First National Bank of Atlanta*. But *Kleiner*'s finding of a rule violation was predicated on a pre-existing order prohibiting informal contacts with Class Members. No such order exists in this case. Without one, Plaintiffs are asking the Court to sanction Defendant for speech he has every right to engage in. *See* Responsive Exhibit 1 which responds to Plaintiffs'

allegations made in their exhibits G and M-P. *See* also Responsive Exhibit 2 for a detailed schedule showing that all of the Class Members Plaintiffs wrongly claim were concealed in their Exhibit L were produced in discovery.

Defendant, while disagreeing with several orders in this case such as that compelling discovery of clearly attorney-client privileged materials, has nonetheless always acted in good faith. He has produced all ordered privileged documents, even ones in which his attorney clearly state they are attorney-client privileged. He scoured old computers for messages that others deleted via Signal and produced them. He has acted with the honor and professionalism consistent with his record of leading the recovery of over $7 billion dollars for 48,000 fraud victims *pro bono* in two separate bankruptcies, being a federal whistleblower on his own regulator while serving on their board and executive committee, and worked *pro bono* to assist both the SEC and FBI. Plaintiffs' attacks on his character supported by obviously incorrect factual arguments are grossly unprofessional, especially as he continues to work on behalf of the Class.[3]

---

[3] Defendant, through the LetsGoBrandon.com Foundation, took NASCAR to trial on behalf of LGBcoin holders in *LetsGoBrandon.com Foundation v. NASCAR*, Case No. 2023-002831-CA-01 (Fla. 11th Cir. Ct.), now on appeal, Case No. 3D26-0564 (Fla. 3d DCA)(Ex. D). At trial, the jury found that NASCAR's Director of Sponsorship Approval did indeed approve the on-track sponsorship. NASCAR agreed that the off-track sponsorship component did not require approval and that a senior NASCAR communications executive, Mike Forde allowed BMS's press release announcing the on-track sponsorship saying that despite referencing "Let's Go Brandon," they "position it ok." NASCAR's Chief Communications Officer then lied to reporters, including the Washington Post, claiming the on-track sponsorship had "not been properly approved" and that NASCAR's decision "was not a reversal." NASCAR's Howell testified that telling the press the team had "jumped the gun" would be a false statement. LGBcoin's market capitalization collapsed $390 million following these false statements, not because of anything Defendant did. The appeal challenges the trial court's errors in granting summary judgment on the defamation claims, excluding the Washington Post

Plaintiffs, funded by an anonymous party undisclosed in violation of Local Rule 3.03 and representing approximately 0.05% of alleged direct damages caused by NASCAR, seeks to silence the one person who proved at trial that NASCAR wronged the class, and who continues to lead the damages appeal on their behalf. The reason is financial: Plaintiffs' counsel does not get paid when Defendant wins the NASCAR case for the Class. Unable to prevail on the merits of claims the SEC and CFTC have entered a formal regulation confirming they fall outside the securities regime, Plaintiffs' counsel seeks a backdoor through sanctions and default judgment: an attorney-driven litigation strategy that prioritizes counsel's fee over the Class's interests.

## VI.    Any Citation Errors Do Not Warrant Sanctions

Plaintiffs argue for the first time in their Reply that the Motion should be granted as unopposed under Local Rule 3.01(c) because Ms. Martell did not file her own response. (Doc. 635, pp. 2, 10). This argument is both new and wrong. Ms. Martell was counsel for Defendants, not a party. She had moved to withdraw before long before the Motion was filed. The Motion for Sanctions seeks default judgment against Defendant for alleged conduct by his withdrawn counsel. If Plaintiffs wish to pursue sanctions against Ms. Martell personally for

---

articles from evidence (despite NASCAR's executive confirming under oath he was the source), preventing the deposition of NASCAR's Commissioner who has since been forced to resign due to anti-conservative text messages exposed in Michael Jordan's team's lawsuit against NASCAR, and NASCAR improperly misleading that jury that the Foundation's behavior did not change based on NASCAR's approval. Lead plaintiff De Ford admitted the price decline was not Defendant's fault. (Ex. E). When Plaintiffs' counts against NASCAR were dismissed, they have focused primarily on maliciously attacking Defendant for years rather than seeking recoveries for the Class.

her conduct as an attorney, they must separately move against her with proper

notice and an opportunity to be heard. Plaintiffs are "not entitled to a default

judgment under this Court's inherent authority to sanction fraud. That power is

reserved for "only the most egregious misconduct, such as bribery of a judge or

members of a jury, or the fabrication of evidence....""[4] Without waiving privilege,

Defendant states that Ms. Martell has always conducted herself with integrity

and acted with utmost good faith. While her office has made technical errors,

such as formatting issues in PDF conversion, she has maintained the utmost

professionalism despite repeated unprofessional and abusive conduct by

Plaintiffs' counsel.[5] To the extent any citation errors, such as paraphrases within

quote marks, may appear to be associated with AI, context matters. The lines

between what is and is not "AI-generated" research have become increasingly

blurred. Google, Lexis, and Westlaw have all integrated AI-powered search

features into their platforms without clear disclosure until recently. "The lack of

transparency also threatens lawyers' ability to comply with ethical and

professional responsibility requirements."[6] Ms. Martell engaged in extensive

human research and citation checking of all briefs and Defendant believes *if* AI

---

[4] *Bennett v. Waters*, No. 3:23-cv-1347-HES-LLL, 2026 U.S. Dist. LEXIS 64625, at *3 (M.D. Fla. Mar. 25, 2026) citing *Patterson v. Lew*, 265 F. App'x 767, 768 (11th Cir. 2008)

[5] For example, on Fourth of July weekend 2025, Plaintiffs' lead counsel emailed Ms. Martell, "Your brief is late." forcing her to abandon her first holiday weekend after giving birth to file an emergency extension motion, for a brief that was not, in fact, late. (Ex. A.) Many other verbal examples exist that Ms. Martell can discuss if ordered to.

[6] Stanford University Human-Centered AI, "AI on Trial", available at https://hai.stanford.edu/news/ai-trial-legal-models-hallucinate-1-out-6-or-more-benchmarking-queries (last accessed June 11, 2026).

resulted in mistakes, it was not through her intentional use of AI. Ms. Martell

filed a Notice of Candor in a good faith attempt to correct her error which was

struck by the Court. (Ex. F)[7] Plaintiffs' characterization of technical errors as

evidence of deliberate misconduct must be viewed in the context of their own

pattern of behavior. Plaintiffs throughout this case have relentlessly

mischaracterized the law conflating promoting a commodity as somehow

transforming it into a security without any alleged promises of cash flows or tech

development. All cases cited in Plaintiffs' untimely summary judgment brief

failed to distinguish the facts of underlying tokens from LGBcoin. That brief also

contained myriad factual misrepresentations. Plaintiffs, *still* continue to cite

*Kleiner* without noting that that case involved a gag order. Should Defendant

assume that these repeated errors stem from AI use and file yet another sanctions

motion against Plaintiffs?

## VII.    The Broader Context Plaintiffs Ignore

Plaintiffs' Motion and Reply exist in a vacuum of their own creation. While

arguing that Defendant "vexatiously multiplied proceedings," they do not

mention that Defendant has argued at different procedural postures that

LGBcoin is not a security. The SEC itself has stated it cannot even allege that

LGBcoin is a security even with the benefit of Plaintiffs' defective complaints and

ill-gotten discovery. Plaintiffs admitted years ago that the coin is a commodity

---

[7] In a case where an attorney again used AI to try and correct mistakes made by AI
itself, a sanction of $1,000 was awarded, nothing close to a default judgment. *Brooks v.
Lowes Home Centers LLC* WDLa Case: 1:24-cv-01063-JE-JPM

(Doc. 74, ¶3), have never even alleged the promises of cash flows or entrepreneurial efforts required under *Howey*, nor have they alleged that LGBcoin was sold as part of an investment contract. These arguments remain valid, especially at heightened summary judgment standards. The Court has been silent on Defendant's arguments on commodities, collectibles, and Plaintiffs' admissions. It has not performed *Skidmore* analysis per the test outlined by the Supreme Court and upheld post-*Chevron*[8]. It has declined to perform a statutory seller analysis. Accordingly, it is appropriate for Defendant to preserve them. Communications produced in discovery by third-party Phil Potter, the former CFO of Bitfinex, one of the world's largest cryptocurrency exchanges, confirm that within days of LGBcoin's minting, Defendant explicitly told Potter and Walton Comer, CIO of XBTO (a major institutional crypto market maker), that he would not do anything to implicate securities classification. (See Ex. C, pp. 8–9). It defies logic that Defendant would promise equity stakes to retail purchasers while simultaneously assuring the most sophisticated investors in the industry that LGBcoin was a "straight meme coin" outside security classification. There is no evidence of any profit sharing, transaction taxes, dividends or any cash flows being shared with buyers whatsoever. The Court should weigh Plaintiffs' demand for default judgment against this backdrop.

## CONCLUSION

---

[8] *Bastias v. U.S. Att'y Gen.*, 158 F.4th 1188, 1203 (11th Cir. 2025) and *Citadel Securities LLC v. U.S. Securities & Exchange Commission*, No. 25-13631, ___ F.4th ___, 2026 WL _____ (11th Cir. May 29, 2026)

Plaintiffs filed this sanctions motion in violation of Rule 11's safe harbor to manufacture grievances while having unclean hands given their own admitted PSLRA violations, carrying mandatory sanctions under 15 U.S.C. § 78u-4(c), remain deferred along with other misconduct. ***Plaintiffs never pled a complaint that survived a motion to dismiss on a securities count until they were permitted to use ill-gotten discovery in the TAC in violation of the statute.***

Defendant put Plaintiffs on notice of the many errors in their sanctions motion April 15th. Plaintiffs have not withdrawn or corrected any challenged representation. Even if the allegations were true, which they are not, Plaintiffs have not been prejudiced in any way as no relief has been granted on the basis of any these disputed items nor has any evidence been withheld. Rather, most cited filings were struck on other procedural grounds and not responded to by Plaintiffs. Here, Plaintiffs project their own misconduct- attempting to add exhibits with a single descriptive line and no attachments, Bates numbers, or even web links roughly an hour before the previous PTO deadline. Yet, Plaintiffs seek the most extreme remedy possible. There does not appear to be a single case in the 11th circuit granting default for any of Plaintiffs' allegations which pale in comparison to the prejudice caused by their own admitted misconduct.

Defendant respectfully requests that the Court 1) deny Plaintiffs' Motion; 2) hold a hearing on Defendant's deferred sanctions motions that Plaintiffs' own litigation conduct-- shotgun pleadings, PSLRA violations, baseless fraud allegations, withheld evidence of De Ford's promotion, and pattern of misrepresentation-- may finally be adjudicated on the merits.

Respectfully submitted,

/s/ James Koutoulas
James Koutoulas, *Pro Se*
10 N. Dearborn St., Suite 400
Chicago, IL 60602
312-451-4088
james@koutoulaslaw.com

Dated: June 12, 2026

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 12, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s/ James Koutoulas