# RESPONSIVE EXHIBIT 1

### Response to Plaintiffs' Telegram Archive (Doc. 614-7)

### and Sheeler Coordination Theory (Docs. 614-13 through 614-16)

## I.     Response to Telegram Archive (Plaintiffs' Exhibit G)

Plaintiffs' Exhibit G is a 177-page archive of the '$LETSGO Chat' Telegram group. Plaintiffs characterize Defendant's participation in this group as evidence of concealed communications with class members. The archive refutes this characterization:

First, this is a public group chat. Any person could join the group and view its contents by clicking a public link and passing an anti-spam check. Defendant has been aware of Plaintiffs' presence in the group for years. Characterizing public group messages as 'concealed' communications is misleading. Plaintiffs' attempts to chill Defendant's speech and preventing him from messaging in a public chat ask the Court to violated his rights to free speech and right to assemble and are characteristic of a SLAPP suit. LGBcoin originated from the political phrase "Let's Go Brandon," a widely used expression of political dissent. (TAC ¶ 75). The TAC treats political association as evidence of wrongdoing: it names President Trump, Donald Trump Jr., Peter Thiel, Governor Abbott, Candace Owens, Charlie Kirk, and numerous conservative media outlets as participants in what it characterizes as a fraudulent scheme. (TAC ¶¶ 158–175, 325–326). Defendant is described throughout as a "Republican influencer." (TAC ¶ 20). Plaintiffs originally named numerous conservative public figures as defendants, then dropped them after extracting reputational damage and causing them to distance themselves from the project out of fear of baseless litigation. The TAC's own sources confirm the political nature of the project and the underlying dispute.

Second, the archive itself shows that Defendant's messages concern the procedural status of the litigation-- explaining court rulings, discussing the appeal process, and answering community questions about case developments. This is transparency, not securities promotion or discovery evasion. Nothing in the archive constitutes investment advice, promises of returns, or any content relevant to Plaintiffs' securities fraud theory.

Third, the messages at issue post-date the class period and are not responsive to any discovery request. Plaintiffs themselves retained copies of these messages and produced screenshots as exhibits in this litigation. Plaintiffs cannot seek sanctions over messages that (1) they already possess, (2) post-date the class period and the discovery request in question, and (3) were not responsive to any discovery request. The auto-delete function is a platform default that Defendant did not create and was not authorized to disable. Plaintiffs quote Defendant's counsel saying that we would produce any other communications that turn up from the period in question. Not irrelevant messages that post-date the Class Period and the discovery request in question.

Fourth, Magistrate Judge Irick previously adjudicated the broader question of auto-deleting messaging platforms (Doc. 202, pp. 18-21), put Defendant on notice regarding preservation, and ordered production of all responsive documents not already destroyed. Defendant complied. Plaintiffs' attempt to re-slice this issue by platform is an effort to relitigate a decided issue.

Fifth, Plaintiffs' again lie and claim that Defendant "bragged, automatically deleting ESI is a good deterrent against frivolous lawsuits like this one," because it leads to "less messages to be produced in discovery." But, again, misrepresent the record that was Defendant relaying a quote of others, not his own statement.

Sixth, there is no court order prohibiting Defendant from communicating in a public chat channel. Plaintiffs' reliance on *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), is misplaced because *Kleiner*'s finding was predicated on a pre-existing court order (the 'Gulf order') prohibiting informal contacts with class members. No such order exists here, and Plaintiffs have not sought one. The logical extension is untenable: should Defendant be prohibited from tweeting, posting on Instagram, conducting interviews, or making any public statement because a Class Member that follows Defendant might see it? This argument is part of a broader pattern. The TAC is, at its core, a SLAPP suit targeting protected political speech and Class Member's rights to assemble.

The SLAPP dynamic is further confirmed by Doc. 628, in which Plaintiffs ask the Court to treat Defendant's pursuit of reconsideration based on the SEC-CFTC Joint Release as additional evidence of sanctionable conduct seeking to punish Defendant for exercising his right to seek judicial relief on a theory the expert regulatory agencies agree with on multiple levels and for which deference analysis is required by the Supreme Court.

Plaintiffs' consternation over Class communications belies the simple fact that the vast majority of the Class hates them and disagrees with this case. The LGBcoin Telegram and Discord chats are public, subject only to spam filtering. The list of followers of the LGBcoin X and Instagram accounts are public, as well. All addresses that ever owned LGBcoin are public on the blockchain. Plaintiffs can contact any and every LGBcoin buyer they want. But, they have chosen to never post in the Telegram or Discord channels simply because they know the Class will call them out for maintaining this abuse of process in their names without their consent.

## II.     Response to Sheeler Coordination Theory (Plaintiffs' Exhibits M-P)

Plaintiffs contend that four filings by non-party Albert Sheeler (Exhibits M through P) demonstrate 'coordination' with Defendant to 'disrupt' this case. This characterization strips Mr. Sheeler of his agency and independent judgment. Defendant did not solicit Mr. Sheeler to file anything in this case. Mr. Sheeler is an avid defender of his own rights and has represented himself in numerous other matters pro se.

## A.     Mr. Sheeler Is an Independent Actor

Albert Sheeler is a certified class member who invested approximately $400,000 in LGBcoin. He represents himself pro se in several other cases and is independently capable of recognizing the procedural irregularities that have characterized this litigation. The suggestion that any class member who agrees with Defendant must have been 'coordinated with' to 'disrupt' the case is both patronizing and unsupported by evidence.

## B.     The Overlapping Arguments Reflect Public Information

Plaintiffs point to overlapping language between Sheeler's filings and Defendant's filings. But the arguments at issue-- that the SEC closed its investigation, that the PSLRA notice was 14 months late, that LGBcoin is not a security, that class certification was premature-- are all based on publicly available facts. Any informed person following this case could independently identify these issues. Shared conclusions derived from the same public record do not prove coordination.

## C.     Response to Specific Exhibits

*Exhibit M (Motion for Reconsideration).* Sheeler's motion raised three concrete new developments: (1) the PSLRA notice was 14 months late, (2) state court discovery contradicted federal claims, and (3) the SEC closed its investigation. These are verifiable facts that became

available after the original intervention was denied. Raising new facts in a motion for reconsideration is exactly what Rule 59(e) contemplates.

*Exhibit N (Motion to Substitute Counsel).* This motion contains factual allegations about Plaintiffs' counsel's conduct during a conferral call: including alleged threats, an allegedly secret recording, and lead plaintiff De Ford's failure to produce promotional materials he created. These are factual claims by a class member about counsel adequacy. Whether the motion is procedurally proper is a separate question from whether it was 'coordinated.' Nevertheless, it should be reviewed by the Court as additional evidence of Plaintiffs' pervasive misconduct in this case.

*Exhibit O (Draft Recusal Motion).* Plaintiffs argue this never-filed motion contains 'near-verbatim' language from Defendant's mandamus petition. Even if specific phrases overlap, the underlying factual arguments (SEC closure, PSLRA violations, class certification timing) are drawn from the public record. The recusal motion's legal theory is weak, adverse rulings are almost never grounds for recusal, but a weak legal argument is not evidence of coordination. Many pro se litigants file unsuccessful motions. Here, Mr. Sheeler did not even file the motion.

*Exhibit P (Email Requesting to Testify).* Sheeler, as a certified class member who invested $400,000, requested to testify at trial and raised concerns about class counsel's exclusion of dissenting viewpoints. A class member has standing to raise adequacy-of-representation concerns under Rule 23(a)(4). That he copied Defendant on the email does not transform a legitimate class member concern into 'coordination.'

In sum, Plaintiffs' coordination theory rests on the premise that a class member who shares Defendant's view of the case must be acting at Defendant's direction. That premise is both legally unsupported and factually unfounded. Class members are entitled to their own views,

their own legal arguments, and their own participation in the litigation, and an overwhelming

percentage of class members appear to agree with counsel in terms of the merits of this case.