DocuSign Envelope ID: C2714284-2C38-4BAB-BA26-E52799ACC0B6

25 - _ 3 3 0 1

**Exhibit 1 - Subscription 200 K**

2025 MAR 17 PM 3:21

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## SUBSCRIPTION AGREEMENT
## AND INVESTOR QUESTIONNAIRE
### (the "Agreement")

Real Brands Inc.
11 Royal Road
Brookline, MA 02445
Attn: Thom Kidrin

Dear Mr. Kidrin:

The undersigned (the "Investor") desires to purchase an equity interest constituting shares of the common stock (the "Common Stock") of Real Brands Inc., a Nevada corporation (the "Company" and together with the Investor, the "Parties").

1. **Subscription and Payment.** Subject to the terms and conditions hereof, the undersigned hereby irrevocably subscribes for and agrees to purchase (the "Subscription") 5,714,285 shares of Common Stock (the "Shares") for a purchase price of $0.035 per Share for an aggregate investment of $200,000 (the "Purchase Price"). On the date of Closing (as defined below), the Purchase Price shall be delivered to the Company via wire transfer pursuant to the Instructions contained on **Schedule A** hereto. The date of Closing shall occur no later than May 7, 2021.

2. **Acceptance of Subscription.** The Investor understands and agrees that this Subscription is made subject to the unconditional right of the Company to reject any subscription, in whole or in part, in its sole and absolute discretion. This Agreement shall become effective only upon acceptance by the Company. This Subscription is made subject to the terms and conditions set forth below. Closing on the sale of the Shares hereunder will be referred to as the "Closing."

3. **Representations and Warranties of the Investor.** The Investor understands that the Shares to be issued to the Investor are being offered and sold under one or more of the exemptions from registration provided for in Sections 4(a)(2) and 3(b) of the Securities Act of 1933, as amended (the "1933 Act"), including Regulation D promulgated thereunder, that the Company's reliance upon such exemption(s) is predicated upon the Investor's representations set forth in this Agreement, and that the Investor is purchasing the Shares without being offered or furnished any offering literature or prospectus. The Investor also understands that this transaction has not been scrutinized by the Securities and Exchange Commission or by any administrative agency charged with the administration of the securities laws of any state. The Investor hereby further represents, warrants and covenants as follows:

a. the Investor has such knowledge and experience in financial and business matters as to be capable of evaluating the risks of an investment in the Company and understands that (i) this investment is suitable only for an investor who is able to bear the economic consequences of losing his, her or its entire investment, (ii) the Company is in the process of developing its business and has limited financial and operating history, (iii) an investment in the Shares is a speculative investment that involves a high degree of risk of loss by the Investor of his, her or its investment therein, and (iv) it may not be possible to liquidate the Investor's investment in the Company in case of an emergency;

1

DocuSign Envelope ID: C2714284-2C38-4BAB-BA26-E52799ACC0B6

## Exhibit 1 - Subscription 200 K

     b.    the Investor is an "accredited investor" as defined in Regulation D as promulgated by the Securities and Exchange Commission and has the financial ability (i) to bear the economic risk of an investment in the Company, (ii) to hold the Shares for an indefinite period of time, and (iii) currently to afford a complete loss of this investment without experiencing any undue financial difficulties, and the Investor's commitment to all speculative investments (including this one if accepted by the Company) is reasonable in relation to the Investor's financial capabilities and circumstances;

     c.    the Investor acknowledges that (i) an investment in a private enterprise with limited resources like the Company is inherently risky and speculative, (ii) any projections for the Company are inherently uncertain and unreliable, and should not be used as a substantial basis for determining to purchase the Shares, (iii) to succeed, the Company likely will need to attract additional capital and additional personnel, and there can be no assurances that the Company will be able to attract same; and (iv) the Company faces a great variety of risks in its business, including, without limitation, the following: (a) the risk of changing consumer preferences away from the Company's products; (b) raw materials included in the Company's products typically are commodities, meaning that the Company's profitability is heavily dependent on commodity pricing over which the Company has no control; (c) the Company participates in the hemp industry, so that aspects of the Company's business are subject to significant regulations, the effect of changes in which could be materially adverse to the Company's business; (d) competition, and especially from companies with greater financial and other resources than the Company, could emerge that could be materially adverse to the Company; (e) the Company's ability to manufacture hemp oil and isolate in commercial quantities with acceptable quality and at affordable prices; and (f) the Company is dependent on third parties for the manufacture and distribution of the Company's finished and/or packaged for retail products;

     d.    the Investor (i) is familiar with and/or is operating in the Company's industry or has a pre-existing personal or business relationship with the Company, or any of the Company's controlling persons such that the Investor is aware of the character, business acumen, and general business and financial circumstances of the Company, or (ii) by reason of such Investor's business or financial experience (or the business or financial experience of such Investor's professional advisors) has the capacity to protect his, her or its own interests in connection with an investment in the Company;

     e.    when executed and delivered by the Investor, and assuming execution and delivery by the Company, this Agreement will constitute a valid obligation of the Investor, enforceable in accordance with its terms, except to the extent that such enforcement may be subject to applicable federal or state bankruptcy, insolvency, reorganization, arrangement, moratorium, fraudulent conveyance or other laws or court decisions relating to or affecting the rights of creditors generally, and such enforcement may be limited by equitable principles of general applicability;

     f.    in making the decision to purchase the Shares, the Investor has relied solely upon the representations and warranties of the Company set forth in this Agreement and the independent investigation made by the Investor and his, her or its representative, if any;

DocuSign Envelope ID: C2714284-2C38-4BAB-BA26-E52799ACC0B6

**Exhibit 1 - Subscription 200 K**

  g. the Investor and his, her or its representatives and advisors, if any, have been given the opportunity to ask questions of, and to receive answers from, officers of the Company concerning the terms and conditions of this offering, and to obtain any additional information, to the extent such officers possess such information or can acquire it without unreasonable effort or expense;

  h. the Investor is acquiring the Shares in good faith solely for his, her or its personal account, for investment purposes only, and the Shares are not being purchased with a view to or for the resale, resyndication, distribution, subdivision or fractionalization thereof;

  i. the Investor confirms that his, her or its representations, declarations and warranties contained herein are true and accurate, and understands that the Company is relying on the truth and accuracy of the representations, declarations and warranties made by the Investor in this Agreement in offering the Sharers for sale without having first registered the Shares under the 1933 Act;

  j. the Investor realizes that, in the absence of registration under the 1933 Act, any disposition of the Shares by the Investor may require compliance with an exemption under the 1933 Act; the Investor has been advised or is aware of the provisions of Rule 144 promulgated under the 1933 Act, which permit limited resale of securities purchased in a private placement subject to the satisfaction of certain conditions;

  k. the Investor acknowledges that there have been no representations, guarantees or warranties made to the Investor or his, her or its representatives by the Company, its officers, agents or employees, or by any other person, expressly or by implication, with respect to (i) the approximate length of time that the Investor will be required to remain as the owner of the Shares, or (ii) the return on investment to be realized, if any, as a result of his, her or its investment;

  l. the Investor acknowledges that the Company is relying on the truth and accuracy of the information provided by the Investor in response to the investor questionnaire attached hereto as **Attachment A**, and will immediately notify the Company of any change in such information;

  m. If the Investor is an individual, the Investor is at least twenty-one (21) years of age, a bona fide resident and domiciliary (not a temporary or transient resident) of the state or jurisdiction indicated on the signature page to this Agreement, and he or she has no present intention of becoming a resident of any other state or jurisdiction;

  n. If the Investor is an entity, this purchase has been duly authorized by all necessary directors, officers, shareholders, partners, members or other necessary persons of the entity and will not violate any agreement to which the entity is a party; and this Agreement shall be valid and binding against the entity and enforceable against it in accordance with its terms;

  o. the Investor is not relying on the Company or any of its representatives for advice as to tax, legal, or economic considerations as they relate to the Investor's circumstances, and the Investor acknowledges that neither the Company nor any other person will be responsible or liable for the tax consequences to such Investor of an investment in the Company;

3

DocuSign Envelope ID: C2714284-2C38-4BAB-BA26-E52799ACC0B6

**Exhibit 1 - Subscription 200 K**

p.      the Investor acknowledges that the Company reserves the right to issue additional equity securities in the future, which issuance would dilute the percentage interest of the Investor in the Company; and

q.      the Investor acknowledges that he, she or it has been advised to consult with his, her or its own attorney regarding all legal matters concerning an investment in the Company and the tax consequences of participating in the Company, and has done so, to the extent he, she or it considers necessary.

r.      The Investor understands that the Company may rely on the foregoing representations and warranties in determining whether to accept the Investor's Subscription.

4.      <u>Representations and Warranties of the Company</u>. The Company hereby represents and warrants to the Investor as follows:

a.      All requisite action on the part of the Company or its officers, directors and shareholders necessary for the authorization, execution and delivery of this Agreement, the Shares and the performance of all obligations of the Company hereunder has been taken or will be taken prior to the acceptance of this Subscription.

b.      This Agreement constitutes a valid and legally binding obligation of the Company, enforceable in accordance with its terms, except to the extent that such enforcement may be subject to applicable federal or state bankruptcy, insolvency, reorganization, arrangement, moratorium, fraudulent conveyance or other laws or court decisions relating to or affecting the rights of creditors generally, and such enforcement may be limited by equitable principles of general applicability.

c.      Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, has all the corporate power and authority to execute and deliver, and to perform its obligations pursuant to this Agreement, and has all requisite power and authority to own its properties and to carry on its business as now being conducted. The Company is duly qualified to transact business and is in good standing in each jurisdiction in which the failure so to qualify would have a Material Adverse Effect (as defined below). "Material Adverse Effect" means a material adverse effect on the condition (financial or otherwise), prospects, assets relating to, or results of operations of the business of the Company, as presently conducted and proposed to be conducted.

e.      The Company is not in violation or default of any provisions of the Certificate of Incorporation or the Bylaws of the Company or of any judgment, order, writ, decree, instrument, mortgage, agreement or contract to which it is a party or by which it is bound or, to the Company's knowledge, of any provision of any federal or state statute, rule or regulation, (including without limitation environmental and labor laws, filing requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Agricultural Act of 2014 ("Farm Bill"), applicable to the Company. The execution and delivery of this Agreement by Company and the issuance of the Shares in accordance with the terms hereof, do not and will not conflict with or result in a breach by Company of any of the terms or provisions of, or constitute a default under (a) Company's formation documents or bylaws, each as currently in

DocuSign Envelope ID: C2714284-2C38-4BAB-BA26-E52799ACC0B6

**Exhibit 1 - Subscription 200 K**

effect, (b) any indenture, mortgage, deed of trust, or other material agreement or instrument to which Company is a party or by which it or any of its properties or assets are bound, or (c) any existing applicable law, rule, or regulation or any applicable decree, judgment, or order of any court, United States federal or state regulatory body, administrative agency, or other governmental body having jurisdiction over Company or any of Company's properties or assets. The authorized capital of the Company consists of:

(1) Two million (2,000,000) shares of blank check Preferred Stock, $0.001 par value, 1,000,000 of which are issued and outstanding immediately prior to the Closing.

(2) Three billion nine hundred ninety-eight million (3,998,000,000) shares of Common Stock, $0.001 par value, of which 2,634,573,957 shares will be issued and outstanding immediately prior to the Closing.

f.      The Company is in compliance with the Immigration Reform and Control Act of 1986, as amended, and all employees who are not United States citizens are authorized under United States immigration laws to hold United States employment and are otherwise in compliance with United States immigration laws.

g.      The Company has all franchises, permits, licenses, and any similar authority necessary for the conduct of its business as now being conducted by it, the lack of which could have a Material Adverse Effect, and the Company believes it can obtain, without undue burden or expense, any similar authority for the conduct of its business as planned to be conducted. All of such franchises, permits, licenses or other similar authorities are in full force in effect. The Company is not in default in any material respect under any such franchises, permits, licenses, or other similar authority.

h.      Within 90 days of the Closing, the Company will file a registration statement with the Securities and Exchange Commission to register the Shares.

5.      Restrictions on Transferability of Securities. The certificates evidencing the Shares shall be stamped or otherwise imprinted with a conspicuous legend in substantially the following form:

The Shares represented by this certificate have not been registered under the Securities Act of 1933 or under any state law and, except pursuant to an effective registration statement under such Act and other laws, may not be offered, sold, transferred, or otherwise disposed of without an opinion of counsel, satisfactory to the Company, that such disposition may be made without such registration.

6.      Miscellaneous.

a.      Governing Law; Interpretation. This Agreement will be governed by and construed in accordance with the laws of the State of Delaware as applicable to contracts wholly made and performed in Delaware. The captions in this Agreement are for convenience only and will not define or limit the meaning of any provision of this Agreement. Each party hereto acknowledges that it has participated, with the advice of counsel, in the preparation of this Agreement. No

DocuSign Envelope ID: C2714284-2C38-4BAB-BA26-E52799ACC0B6

**Exhibit 1 - Subscription 200 K**

party hereto is entitled to any presumption with respect to the interpretation of any provision hereof or the resolution of any alleged ambiguity herein based on any claim that any other party hereto drafted or controlled the drafting of this Agreement.

b.     <u>Assignment</u>. The Investor agrees not to transfer or assign the right to purchase Shares under this Agreement.

c.     <u>Survival</u>. This Agreement will survive the death or disability of the Investor and will be binding upon the Investor's heirs, executors, administrators, successors and assigns, if any. The representations, warranties, acknowledgements and ongoing obligations of the parties as set forth herein will survive delivery of this Agreement to and acceptance of this Agreement by the Company and will survive the closing of the transactions contemplated herein, including without limitation, the issuance of the Shares to the Investor.

d.     <u>Expenses</u>. The Company and the Investor shall each bear its own legal and other expenses relating to transactions contemplated hereby.

e.     <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof. This Agreement may be amended by the written consent of the Company and either (a) the Investor or (b) the persons then holding at least a majority of the Shares purchased pursuant to this Agreement.

f.     <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered, shall be considered an original, and such counterparts shall together constitute one and the same instrument.

g.     <u>Waiver</u>. No waiver of any provision of this Agreement shall be effective unless it is in the form of a writing signed by the party granting the waiver. No waiver of any provision or consent to any prohibited action shall constitute a waiver of any other provision or consent to any other prohibited action, whether or not similar. No waiver or consent shall constitute a continuing waiver or consent or commit a party to provide a waiver or consent in the future except to the extent specifically set forth in writing.

h.     <u>Voluntary Agreement</u>. Investor has carefully read this Agreement and has asked any questions it needed to understand the terms, consequences and binding effect of this Agreement and fully understands it. Investor has had the opportunity to seek the advice of an attorney of its choosing and is executing this Agreement voluntarily and without any duress or undue influence by Company or anyone else.

i.     <u>Arbitration and Venue</u>. Any dispute, controversy, claim or difference arising out of, or in connection with, or resulting from this Agreement, its application or interpretation, or a breach thereof, which cannot be settled amicably by the parties, shall be resolved definitively and exclusively by arbitration under the Rules of Arbitration of the American Arbitration Association (the "Rules") then prevailing, which arbitration shall be held in New York, New York. Arbitration shall be by a single arbitrator within thirty (30) calendar days after demand for arbitration. The arbitrator shall be chosen in accordance with the Rules. The decision of the arbitrator shall be final and binding on the parties, and judgment upon any award rendered may be entered in any court having jurisdiction thereof.

DocuSign Envelope ID: C2714284-2C38-4BAB-BA26-E52799ACC0B6

**Exhibit 1 - Subscription 200 K**

j. <u>Notices</u>. Any notice or demand required or permitted to be given or made hereunder to or upon any party hereto shall be deemed to have been duly given or made for all purposes if (i) in writing and delivered (x) personally or by messenger or an overnight courier service against receipt, or (y) certified or registered mail, postage paid, return receipt requested, or (ii) sent by telegram, telecopy (confirmed orally), telex, email or similar electronic means, provided that a written copy thereof is sent on the same day by postage-paid first-class mail, to such party at the addresses set forth above or such other address as any party hereto may at any time, or from time to time, direct by notice given to the other parties in accordance with this Section. Except as otherwise expressly provided herein, the date of giving or making any such notice or demand shall be, in the case of clause (i)(x), the date of the receipt; in the case of clause (i)(y), four business days after such notice or demand is sent; and, in the case of clause (ii), the business day next following the date such notice or demand is sent.

[Signatures appear on following page.]

DocuSign Envelope ID: C2714284-2C38-4BAB-BA26-E52799ACC0B6

**Exhibit 1 - Subscription 200 K**

IN WITNESS WHEREOF, the undersigned Investor has hereby executed this Agreement this **30** day of **April**_____, 2021.

DocuSigned by:

—28FA341F4B914E6...

Signature of Authorized Representative

Albert Sheeler

Print Name

President

Title

Address of Entity:

14 boxwood atreet

East Hampton

New York 11937

State of Principal Place of Business

Real Brands Inc. hereby accepts the subscription by the Investor, subject to the terms and conditions of this Agreement, as of 4/30/2021_____, 2021

**REAL BRANDS INC.**

DocuSigned by:

By: _____
     6FB03AC6BF50410...
     Thom Kidrin, CEO

Attachment A – Investor Questionnaire

Schedule A – Wire Transfer Instructions

[Signature Page to Subscription Agreement and Investor Questionnaire]

DocuSign Envelope ID: C2714284-2C38-4BAB-BA26-E52799ACC0B6

## Exhibit 1 - Subscription 200 K

**ATTACHMENT A**

**REAL BRANDS INC.**

**POTENTIAL INVESTOR QUESTIONNAIRE FOR ENTITIES**

1. Investor's Name: **Albert Sheeler**

   Telephone: **+19179136185**

   Address: **14 Boxwood Street**

   City: **East Hampton**     State: **NY**     Zip: **11937**

   Taxpayer Identification No.: **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**

   Jurisdiction of Formation: _____

   Type of Entity: **Personal** _____

2. Total Assets

   [ ] less than $1,000,000

   [●] $1,000,000 - $4,999,999

   [ ] $5,000,000 or more

3. This entity, or its decision-makers, previously have purchased private (restricted) securities.

   Yes **●** _____     No _____

4. This entity was formed for the purposes of making this investment.

   Yes **●** _____     No _____

5. This entity is a trust whose purchase is directed by a person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of the prospective investment.

   Yes **●** _____     No _____

A2-1

DocuSign Envelope ID: C2714284-2C38-4BAB-BA26-E52799ACC0B6

**Exhibit 1 - Subscription 200 K**

6. This entity is a tax exempt organization which is qualified under Section 501(c)(3) of the Internal Revenue Code of 1986 as amended.

   Yes _____     No __•____

7. Each of the equity owners in this entity is an "accredited investor" as defined in Regulation D of the Securities Act of 1933, as amended.

   Yes __•____     No _____

   I hereby certify on behalf of such entity that the foregoing information is true, correct and complete.

   By: _Albert Sheeler_____  ┌─ DocuSigned by:
                                     └─ 28FA341F4B914E6...

   Name: _Albert Sheeler_____

   Title: _____

   Date: _5/12/2021_____