## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| ERIC DE FORD, SANDRA BADER, and SHAWN R. KEY, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>JAMES KOUTOULAS and LGBCOIN, LTD,<br><br>    Defendants. | Case No. 6:22-cv-652-PGB-DCI<br><br>CLASS ACTION |

## DEFENDANT JAMES KOUTOULAS'S EMERGENCY MOTION TO STAY THE COMPELLED-STATEMENT AND FEE PROVISIONS OF THE COURT'S CONTEMPT ORDER (DOC. 658) PENDING APPEAL

**EMERGENCY — EXPEDITED TREATMENT REQUESTED UNDER LOCAL**

**RULE 3.01(e).** This motion presents a true emergency. The Court's contempt

Order (Doc. 658) requires the undersigned to publish a Court-authored statement

within five days of the Order. The Order was entered late on July 22, 2026 (but is

dated July 23, 2026); absent a stay, compliance is due on or about July 27, 2026.

Once published to Defendant's followers, the compelled statement cannot be

1

withdrawn, so the harm is immediate and irreparable. Defendant respectfully requests a ruling before the five-day compliance deadline.

Defendant James Koutoulas respectfully moves, under Federal Rule of Civil Procedure 62 and Federal Rule of Appellate Procedure 8(a)(1), for an order staying the compelled-statement provisions of the Court's contempt Order (Doc. 658), and the twenty-one-day fee-application timeline set by that Order, pending appeal to the United States Court of Appeals for the Eleventh Circuit. Defendant is contemporaneously filing a notice of appeal. A stay is warranted because the Order compels Defendant to publish speech the Court has scripted, imposes a punitive sanction without the protections of criminal process, and inflicts irreparable First Amendment injury that cannot be undone once the statement is published.

## I. BACKGROUND

By Order entered July 22, 2026 (Doc. 658), the Court held Defendant in civil contempt and ordered two forms of relief. First, within five days, Defendant must "post, or cause to be posted, on LGBCoin Telegram and Discord Channels, the LGBCoin website, and the LGBCoin subreddit page" a statement the text of which the Court itself supplied. (Doc. 658 at 7.) Second, within twenty-one days,

2

Plaintiffs may apply for an award of costs and attorney's fees. (Id. at 9.)

Compliance with the compelled-statement provision is due on or about July 27,

2026.

The compelled statement is not a copy of the class notice. It is a Court-

drafted retraction and apology that Defendant must publish over his own name

and identity, to an audience of his own followers. Among other things, it

requires Defendant to state that he "regret[s]" his "prior comments and

apologize[s] for them," that he "should not have made those earlier statements,"

that his audience "should disregard [his] statements," and that he "do[es] not

represent the interests of the class members." (Doc. 658 at 8.) Defendant is filing a

notice of appeal and now asks this Court, in the first instance as Rule 62 and

Appellate Rule 8 require, to stay the compelled-statement provisions pending

that appeal.

## II. THE ORDER IS APPEALABLE AND THIS MOTION IS PROPERLY BROUGHT HERE FIRST

The compelled-statement provision is an affirmative, mandatory

injunction: it commands Defendant to speak, in a prescribed manner, through

prescribed channels, by a date certain. An order granting an injunction is

immediately appealable under 28 U.S.C. § 1292(a)(1). Independently, because the

3

sanction is punitive rather than coercive, see Part III.B below, it is a final order in the nature of criminal contempt and is appealable as such. Federal Rule of Appellate Procedure 8(a)(1) requires that a motion to stay an order pending appeal be made in the district court in the first instance; this motion is that application.

## III. A STAY PENDING APPEAL IS WARRANTED

A stay pending appeal turns on four factors: (1) whether the movant has made a strong showing of likelihood of success on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay would substantially injure other interested parties; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 425-26 (2009); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Where, as here, the movant raises a serious First Amendment challenge, the first two factors substantially merge, because the deprivation of First Amendment freedoms is itself the irreparable injury. Each factor favors a stay.

### A. Defendant is likely to succeed because the Order compels speech.

The Order does not merely restrain speech; it compels it. Defendant is required to publish, over his own name, a statement the Court composed, recanting his prior expression and apologizing for it. The First Amendment

protects against compelled speech as fully as against censorship: the right "to refrain from speaking at all" is "complementary" to the right to speak. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The State may not compel an individual "to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable." Id. at 715. And no authority may "prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 642 (1943). A government-scripted apology, published under compulsion, is the paradigm of the compelled ideological statement these cases forbid. The Order makes no attempt to satisfy the exacting scrutiny such a compulsion must survive, and it cannot. Defendant raised this very objection when Plaintiffs first sought to compel him to publish their notice on his own platforms, invoking *Wooley* and the right to refrain from speaking. (Doc. 462 (Defs.' Opp. to Pls.' Mot. for Approval of Proposed Class Notice Plan, Apr. 16, 2025).) The Court overruled that objection and compelled the posting; the present Order compounds the compulsion by scripting the very words Defendant must now speak.

5

The compulsion is aggravated by what the scripted statement requires Defendant to say. The Order directs Defendant to publish, over his own name, that he "do[es] not represent the interests of the class members." (Doc. 658 at 8.) Defendant, however, is the trustee of the foundation pursuing litigation against NASCAR on behalf of the very community he addresses — litigation directed at the conduct that, as Plaintiffs themselves acknowledge, drove the decline in the asset. Compelling Defendant to broadcast a government-scripted disavowal of that relationship burdens not only his right against compelled speech but the First Amendment freedoms of assembly and association that he and that community share — the right of the people peaceably to assemble and to associate for common ends, including the pursuit of collective litigation. See *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-61 (1958); *NAACP v. Button*, 371 U.S. 415, 429-31 (1963) (collective litigation activity is a protected form of First Amendment expression, assembly, and association). Forcing a fiduciary to publish the government's disavowal of the community he serves is a distinct and serious First Amendment injury.

The compulsion is more troubling still because the Order forces Defendant to disavow his own protected opinion on a question that remains genuinely

6

disputed. The scripted statement requires Defendant to tell his audience that, "to the extent [they] viewed [his] earlier post as providing legal advice, including as to the merits of the lawsuit, [they] should disregard [his] statements," and that he "should not have made those earlier statements." (Doc. 658 at 8.) Whether LGBCoin is a security, however, remains contested and unadjudicated, and Plaintiffs' own pleadings cut against any premise that Defendant's commentary was false: their Second Amended Complaint describes the asset as "a digital commodity whose value rises with its demand" (Doc. 74 ¶ 3), and their operative Third Amended Complaint alleges that Plaintiffs "relied upon the approval" of NASCAR "in deciding to" purchase (Doc. 245 ¶¶ 423, 438). A party's commentary on the strength of his own case is protected opinion on a disputed question, not a false statement of fact, and the First Amendment does not permit a court to compel a speaker to brand his own protected opinion as something his listeners "should disregard."

The compelled recantation also overrides Defendant's own First Amendment interest, as a party and as the trustee of the foundation that represents the community he addresses, in stating his litigation positions and defending himself against public claims on his own platforms. Whatever latitude

7

a court may have to restrain a trial participant's speech to protect the fairness of a trial, this Order does the opposite: it does not restrict speech to prevent prejudice, it compels Defendant affirmatively to publish a scripted recantation and apology. The statements the Order compels Defendant to disavow largely restated the position the Court's own approved notice attributes to him — that "Defendants do not believe that LGBCoin constitutes a security" and are "not subject to any portion of the Securities Act of 1933" (Doc. 658 at 2, 8) — together with the legal arguments Defendant has pressed in his filings. Compelling him to brand that protected speech as something his audience "should disregard" is not a fair-trial measure; it is the compelled ideological speech that *Wooley* and *Barnette* forbid.

That the speech the Order compels Defendant to recant was itself constitutionally protected only deepens the injury. A party may not be punished by contempt for out-of-court statements about a pending judicial proceeding unless they pose a clear and present danger to the administration of justice — a standard demanding that "the substantive evil be extremely serious and the degree of imminence extremely high." *Wood v. Georgia,* 370 U.S. 375, 383–85 (1962) (citation omitted). In Wood, the Court reversed a contempt conviction

8

imposed on a party for public statements criticizing a pending proceeding, emphasizing that he spoke "as a private citizen" and that his publications created no such danger. Id. at 394–95. Here the Order identifies no danger to the administration of justice at all; it faults Defendant's commentary only as "contrary to" the class notice. Nor did any danger materialize: no class member opted out of the class in response to Defendant's commentary. A remedy that compels Defendant to recant speech that could not have been punished directly cannot be reconciled with the First Amendment.

**B. Defendant is likely to succeed because the sanction is punitive, and punitive contempt requires criminal process that was not afforded.**

A civil contempt sanction must be either coercive, designed to compel future compliance and purgeable by that compliance, or compensatory, designed to make the complainant whole for a proven loss. *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827-29 (1994). A one-time, backward-looking command to apologize for past speech is neither. It coerces no future conduct, and it compensates no loss. It is punitive: its object is to sanction Defendant for what he already said. A punitive contempt sanction is criminal in nature and may be imposed only through criminal process, including notice of the criminal character of the proceeding and proof beyond a reasonable doubt.

9

Id.; *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 631-33 (1988). The hallmark of civil contempt is that the contemnor "carries the keys of his prison in his own pocket," *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911) (quoting *In re Nevitt*, 117 F. 448, 451 (8th Cir. 1902)); a compelled apology, once demanded, offers no key. Because the Order imposes a punitive sanction without any of the protections criminal process requires, Defendant is likely to prevail.

**C. Defendant is likely to succeed because the remedy is not narrowly tailored.**

Even if some remedy were appropriate, compelling Defendant personally to broadcast the Court's message is not the least restrictive means of serving any legitimate interest. If the Court's concern was that class members receive accurate notice, class counsel had access to the same public channels and could have posted the notice themselves, without conscripting Defendant's voice. The LGBCoin Telegram and Discord channels are public and open to anyone, and Plaintiffs have full access to them; indeed, a named Plaintiff has himself been an active participant in the Telegram channel. (Doc. 462 (Defs.' Opp. to Pls.' Mot. for Approval of Proposed Class Notice Plan, Apr. 16, 2025).) Plaintiffs' counsel could therefore have delivered the notice directly. The authority on which the Order rests is distinguishable. In *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193

10

(11th Cir. 1985), the sanctioned party violated an existing order restricting communications with the class. Here, by contrast, the underlying restraint began as an unconditional prohibition on Defendant's protected speech, and Defendant stood in a pre-existing fiduciary and trustee relationship with the very community he addressed. A remedy that commands a fiduciary to publish the court's words to his own beneficiaries, when a less intrusive alternative was available, is not tailored and cannot stand.

**D. Defendant is likely to succeed because a punitive contempt should not have been adjudicated by a judge who had become personally embroiled with him.**

Due process imposes a further limit on a punitive contempt sanction. Where a presiding judge becomes personally embroiled with the party during contempt proceedings, the Due Process Clause requires that the contempt be adjudicated by a different judge. *Taylor v. Hayes*, 418 U.S. 488, 501-03 (1974); *Mayberry v. Pennsylvania*, 400 U.S. 455, 465-66 (1971); *Offutt v. United States*, 348 U.S. 11, 14 (1954). At the show-cause hearing, the presiding judge announced from the bench that he would personally file a bar grievance against Defendant (Doc. 569 at 11), stated to Defendant "I don't believe you" (Doc. 569 at 31), and warned that at their next encounter "there will be a U.S. Attorney sitting at that

11

table" (Doc. 569 at 37-38). Under *Taylor*, *Mayberry*, and *Offutt*, that degree of personal involvement calls for the punitive contempt to be resolved by a neutral judge. Because the punitive, compelled-speech remedy was crafted and imposed by the embroiled judge rather than referred to another, Defendant is likely to succeed on appeal, and a stay should preserve the status quo while that question is decided.

### E. Absent a stay, Defendant will suffer irreparable injury.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). That principle is dispositive here. Once the compelled statement is published to Defendant's followers, it cannot be recalled; the compulsion will have been carried out and the injury completed before the appeal can be heard. The reputational and associational harm to a fiduciary forced to recant his own views before the community that relies on him is not measurable in money and cannot be repaired by a later reversal. A stay is the only way to preserve the status quo and the Eleventh Circuit's ability to grant meaningful relief.

**F. A stay will not substantially injure Plaintiffs, and the public interest favors a stay.**

A brief stay pending appeal works no cognizable harm to Plaintiffs. The opt out period is over so the class can take no action on the basis of any statement. The compelled statement is symbolic and retrospective; delaying it while the Court of Appeals reviews its legality deprives Plaintiffs of nothing to which they are presently entitled, particularly where any legitimate notice function can be served by class counsel in the interim. The balance of equities and the public interest both favor a stay, because it is always in the public interest to prevent the violation of a party's constitutional rights. The public interest in orderly appellate review of a novel compelled-speech sanction far outweighs any interest in its immediate, unreviewable execution.

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court stay the compelled-statement provisions of Doc. 658, and the twenty-one-day fee-application timeline, pending Defendant's appeal to the Eleventh Circuit, and grant an expedited ruling before the five-day compliance deadline. In the alternative, Defendant requests a temporary administrative stay sufficient to

permit application to the Court of Appeals under Federal Rule of Appellate

Procedure 8(a)(2).

Respectfully submitted,

/s/ James L. Koutoulas
James L. Koutoulas, Esq.
*Pro se*
10 N. Dearborn St., Suite 400
Chicago, IL 60602
james@koutoulaslaw.com

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned conferred with counsel for Plaintiffs on July 24, 2026 regarding the relief requested in this Motion. Plaintiffs oppose. Given the five-day compliance deadline, the undersigned has sought Plaintiffs' position on an expedited basis.

## LOCAL RULE 3.01(e) CERTIFICATION

Pursuant to Local Rule 3.01(e), the undersigned certifies that this motion presents a true emergency: Doc. 658 requires compliance within five days of the Order, the compelled statement cannot be withdrawn once published, and a ruling is therefore needed before the compliance deadline of on or about July 27, 2026. The undersigned has stated the date by which action is needed and the nature of the emergency above.

Dated: July 24, 2026

Respectfully submitted,

/s/ James L. Koutoulas
James L. Koutoulas, Esq.
*Pro se*
10 N. Dearborn St., Suite 400
Chicago, IL 60602
james@koutoulaslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 24, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ James L. Koutoulas