# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ERIC DE FORD, SANDRA BADER,
and SHAWN R. KEY,

       Plaintiffs,

v.

JAMES KOUTOULAS and
LGBCOIN, LTD,

       Defendants.

Case No: 6:22-cv-652-PGB-DCI

_____/

## DEFENDANT'S MOTION TO AMEND THE COURT'S JULY 28, 2026 ORDER (DOC. 672) TO INCLUDE A CERTIFICATION UNDER 28 U.S.C. § 1292(b)

## I.  INTRODUCTION

Defendant James L. Koutoulas respectfully moves under 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5(a)(3) to amend the Court's July 28, 2026 Order (Doc. 672) to include the statement described in § 1292(b), certifying a single question of law to the United States Court of Appeals for the Eleventh Circuit:

> Whether, following *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *Bastias v. U.S. Attorney General*, 158 F.4th 1188 (11th Cir. 2025), a district court applying *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), may decline to consider otherwise relevant agency interpretive materials under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), solely because those materials lack binding legal force or because the court concludes the statute is unambiguous.

This Motion does not seek reconsideration of any ruling. The Court has ruled on the merits of Defendant's position several times, most recently in Doc. 672, and Defendant accepts, for purposes of this Motion, that those rulings stand. Certification under § 1292(b) asks a different and narrower question: whether the court of appeals should be permitted to answer a controlling legal question now, before the parties, the Court, and a jury commit to a fourteen-day trial beginning October 5, 2026 (Doc. 620), rather than after final judgment, when the same question will arrive at the Eleventh Circuit in the ordinary course.

That sequencing accords with the Court's own stated view. At the January 16, 2026 show cause hearing, the Court observed that whether a party "agrees with the order, agrees with the process, agrees with the analysis" is not a question for this Court: "That's what the Eleventh Circuit is for. If there's a disagreement as to a legal ruling, it's appealed, and the appellate court will make the appropriate determination." (Doc. 569, Tr. 14:11–15). And again: "If they disagree with the order, there's appellate remedies. And that's fine. They should be able to pursue those." (*Id.* at 14:23–25). Defendant agrees. This Motion asks only that the appellate determination the Court itself contemplates occur before, rather than after, a fourteen-day jury trial.

## II.    BACKGROUND

On December 2, 2025, the Court denied Defendants' Amended Motion for

Summary Judgment and granted partial summary judgment to Plaintiffs on the

first two elements of the *Howey* test. (Doc. 531, p. 17). In doing so, the Court

declined to give weight to the SEC's Staff Statement on Meme Coins because that

statement disclaims "legal force or effect," and found unavailing Defendant's

reliance on the statement the SEC consented to make public in connection with the

unopposed dismissal of *Koutoulas v. SEC*: that the SEC had "formally concurred

with Mr. Koutoulas's position, admitting it could not allege that LGBcoin was a

security and closed its investigation without issuing any findings of wrongdoing."

(Doc. 531, pp. 14–15; *Koutoulas v. SEC*, No. 1:23-cv-22345-JEM (S.D. Fla.), Dkt. 15-

1, p. 2, ¶ 4; see also Doc. 579; *Koutoulas v. SEC*, No. 24-12376 (11th Cir.), Dkt. 30).

That statement followed a two-and-a-half-year formal investigation spanning two

administrations into the very question presented here.

On March 17, 2026, the SEC and CFTC jointly issued Release Nos. 33-11412

and 34-105020, a formal interpretive release adopted at the Commission level and

published in the Federal Register (the "Joint Release"). Defendant moved for

reconsideration on April 24, 2026, arguing that the Joint Release is entitled to

*Skidmore* consideration under the Eleventh Circuit's decision in *Bastias v. U.S.*

*Attorney General*, 158 F.4th 1188 (11th Cir. 2025). (Doc. 624, pp. 7–8, 12). On June 8, 2026, Defendant filed a Notice of Supplemental Authority identifying *Citadel Securities LLC v. SEC*, No. 25-13631 (11th Cir. May 29, 2026), a published decision applying "a particularly deferential review to matters . . . that implicate an agency's technical expertise." (Doc. 649, p. 3 (quoting slip op. at 24)).

On July 28, 2026, the Court denied reconsideration, holding that because Section 12 of the Securities Act is not ambiguous, "this Court is not required to consider the agency's interpretation of the law." (Doc. 672, p. 5). The Order did not address *Bastias* or *Citadel Securities*. Defendant does not here quarrel with the Order's conclusion; he asks only that the Eleventh Circuit be permitted to review the legal premise on which it rests.

## III.  LEGAL STANDARD

Section 1292(b) permits a district judge to certify an order for interlocutory appeal upon three findings: that the order "involves a controlling question of law," that there is "substantial ground for difference of opinion" as to that question, and that an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Where, as here, the order did not originally contain the statement, Federal Rule of Appellate Procedure 5(a)(3) authorizes the district

court to amend the order to include it, "either on its own or in response to a party's motion," and the ten-day period for petitioning the court of appeals runs from entry of the amended order. Fed. R. App. P. 5(a)(3).

The Eleventh Circuit has explained that § 1292(b) certification is reserved for "pure questions of law" that are "controlling of at least a substantial part of the case," *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004), questions the court of appeals "can decide quickly and cleanly without having to study the record," id. at 1258 (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000)). Certification is the exception, not the rule, and Defendant does not suggest otherwise. But the exception exists for precisely this situation: an abstract legal question, dispositive in effect, on which reasonable jurists have already reached differing conclusions, presented on the eve of a lengthy jury trial.

## IV.   ARGUMENT

### A.   The Question Presented Is a Controlling Question of Pure Law.

The certified question does not ask the court of appeals to weigh the Joint Release, to apply *Howey* to the summary judgment record, or to disturb any factual determination. It asks only the antecedent, purely legal question: whether a court

may refuse to consider relevant agency interpretive materials under *Skidmore* solely because those materials are nonbinding, or because the statute is deemed unambiguous. That question concerns the method of decision, not its outcome, and it can be answered "quickly and cleanly without having to study the record." *McFarlin*, 381 F.3d at 1258 (quoting *Ahrenholz*, 219 F.3d at 677). It is a question about the method of decision, not its outcome.

The question is controlling. The partial summary judgment on the first two *Howey* elements (Doc. 531) structures the entire trial of the certified class claim under Section 12(a)(1), the only claim certified for class treatment. (Doc. 455, pp. 2, 32). The Court's July 28 Order rests expressly on the premise that no consideration of the agencies' interpretation is required. (Doc. 672, p. 5). If the Eleventh Circuit concludes that the weighing is required, the analytical framework underlying the partial summary judgment changes; if it agrees with this Court, the issue is settled for trial and for any later appeal. Either answer controls a substantial part of the case.

## B.  Substantial Ground for Difference of Opinion Exists.

In *Loper Bright*, the Supreme Court held that "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute

Page 6 of 17

is ambiguous," 603 U.S. at 413, while reaffirming that the weight of an agency's judgment "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140. The Eleventh Circuit in *Bastias* read these holdings together: "although a court may be persuaded by an agency's interpretation, it is not bound by that interpretation; it must conduct the analysis de novo." 158 F.4th at 1203. And in *Citadel Securities*, decided on a petition for review of Commission action, the Eleventh Circuit applied "a particularly deferential review to matters . . . that implicate an agency's technical expertise." Slip op. at 24. The procedural posture there differs from this private action, but the premise does not: the operation of the securities markets is a subject on which the Eleventh Circuit credits the Commission's technical expertise. Indeed, *Citadel Securities* reiterated that this Circuit considers it "appropriate to 'give an extreme degree of deference to the agency when it is evaluating scientific data within its technical expertise.'" Slip op. at 24 (quoting *Nat'l Min. Ass'n v. Sec'y, U.S. Dep't of Lab.*, 812 F.3d 843, 866 (11th Cir. 2016)). It goes without saying that cryptocurrency classification is technical in nature.

This Court has concluded that, absent statutory ambiguity, it "is not required to consider the agency's interpretation of the law." (Doc. 672, p. 5). Defendant respectfully submits that reasonable jurists could instead read *Loper Bright* and *Bastias* to require a court to conduct the *Skidmore* weighing whenever a formal agency interpretation bears on the question presented, even if the court ultimately finds the interpretation unpersuasive. To be precise about what Defendant contends is binding: nothing in *Bastias* dictates the outcome of the weighing. What *Bastias* requires is the weighing itself, a de novo assessment of (1) the thoroughness evident in the interpretation's consideration; (2) the validity of its reasoning; (3) its consistency with earlier and later pronouncements; and (4) all other factors giving it power to persuade. 158 F.4th at 1203; *Skidmore*, 323 U.S. at 140. Having conducted that assessment, a court remains entirely free to find the interpretation wanting. The disagreement here concerns the step before: whether the assessment may be dispensed with altogether. The distance between "not bound by" and "not required to consider" is exactly the kind of legal disagreement § 1292(b) exists to resolve. Whether the Joint Release would ultimately persuade is not the certified question; the certified question is only whether it must be weighed at all.

The same substantial ground exists as to the Staff Statement and the SEC's statements concerning LGBcoin itself. The Supreme Court has held that *Skidmore* respect is not limited to Commission-level pronouncements: interpretations in formats such as opinion letters are "entitled to respect" to the extent they have the "power to persuade," *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), and "an agency's interpretation may merit some deference whatever its form," *United States v. Mead Corp.*, 533 U.S. 218, 234–35 (2001). *Skidmore* itself directs courts to weigh an interpretation's "consistency with earlier and later pronouncements." 323 U.S. at 140. On that view, the Staff Statement and the statements the SEC consented to make public after its two-and-a-half-year formal investigation of LGBcoin, admitting it "could not allege that LGBcoin was a security," are at minimum earlier and later pronouncements that the required weighing must take into account. This Court concluded instead that the Staff Statement's disclaimer of "legal force or effect" removed it from consideration. (Doc. 531, pp. 14–15). Whether a disclaimer of binding force removes an agency pronouncement from *Skidmore* weighing altogether, or instead merely bears on its persuasive weight, is itself a pure question of law on which reasonable jurists can differ. The most recent Order likewise observed that the Joint Release disclaims any intent to supersede

or replace the *Howey* test. (Doc. 672, pp. 5–6). Defendant agrees with that reading, and it is the premise of his position rather than an answer to it: material that does not displace binding precedent is precisely the material *Skidmore* addresses. Its nonbinding character governs how much weight it earns, not whether it is considered at all. Indeed, disclaimers of legal force are what candor requires of an agency after *Loper Bright*: with *Chevron* overruled, no agency may claim interpretations that bind the courts, and an agency that expressly disclaims binding force speaks in exactly the register *Skidmore* contemplates — interpretation that persuades rather than controls. *Skidmore* remains good law after *Loper Bright*; the disclaimers confirm the applicable framework rather than excuse departure from it.

The subject matter reinforces the substantiality of the disagreement. Defendant does not ask the Court to revisit its conclusion that Section 12 is unambiguous; the certified question takes that conclusion as a given. But textual clarity and settled application are different things, and the agencies themselves have acknowledged the difference. The Joint Release records that the Commission initially applied *Howey* to crypto assets "mostly in the context of enforcement actions," an approach some "described . . . as 'regulation by enforcement,'" and

that the "unique attributes of crypto assets have prompted divergent views among market participants, financial regulators, and the courts over the application of the *Howey* test." (Joint Release at 4–5). The Commission's own Crypto Task Force convened a public roundtable titled "How We Got Here and How We Get Out – Defining Security Status." (Joint Release at 6; see Doc. 624, p. 7). And throughout that enforcement era — including while the Commission was litigating against Defendant's challenge to its investigative subpoena, when a single sentence alleging that LGBcoin is a security would have explicitly defeating that challenge — the Commission never made the allegation. (Doc. 624, p. 17). An area this technical, in which the responsible agencies' own application of *Howey* has evolved this publicly, is one in which reasonable jurists can differ over whether those agencies' considered interpretation must at least be weighed.

The division of opinion extends well beyond this case. Eighteen States sued the Commission itself, alleging that its enforcement-led application of the securities laws to digital assets exceeded the authority Congress granted it. Complaint, *Kentucky v. SEC*, No. 3:24-cv-00069 (E.D. Ky. Nov. 14, 2024). That litigation was later held in abeyance on the parties' joint motion after the Commission changed course, the same shift in approach that culminated in the

Joint Release. Congress is legislating on the same premise: the Digital Asset Market Clarity Act, H.R. 3633, 119th Cong., passed the House of Representatives in July 2025 and remains pending before the Senate, and its short name speaks for itself. Defendant does not offer these developments to relitigate this Court's conclusion that Section 12 is unambiguous; he accepts that conclusion for purposes of this Motion. He offers them because § 1292(b) asks a different question: whether substantial ground for difference of opinion exists. Where the administering agencies describe "divergent views" among regulators and courts, eighteen States alleged statutory overreach, and Congress advances legislation titled the Clarity Act, jurists of reason can differ — both on how plainly the securities laws speak to crypto assets and on whether the agencies' interpretations of those laws must at least be considered.

Nor is this disagreement one of recent vintage, or one Defendant has overstated. Defendant has never contended that the agencies' positions are dispositive standing alone. From the summary judgment briefing forward, his contention has been the narrower one: that those positions are persuasive authority due consideration under *Skidmore*. He has pressed that point in the Amended Motion for Summary Judgment (Doc. 477, pp. 5–6), the first motion for

reconsideration (Doc. 535, p. 6), the Renewed Motion for Summary Judgment (Doc. 607), the second motion for reconsideration (Doc. 624, pp. 7–8, 12), and the Notice of Supplemental Authority (Doc. 649). The Orders resolving those filings have adhered to the same conclusion. (See Doc. 672, p. 6 (citing Docs. 531, 565, 609)). Yet no Order in this case has conducted the *Skidmore* weighing or mentioned *Skidmore* at all, and the most recent Order does not address *Bastias* or *Citadel Securities*. When a question of law recurs this many times in a single case, and the authorities most directly bearing on it remain unaddressed, the disagreement is substantial by any measure, and § 1292(b) supplies the mechanism Congress provided to resolve it.

Defendant recognizes that the Court has viewed his successive agency-related filings as repetition. (Doc. 672, pp. 2–3, 6). He intends no disrespect in noting the distinction on which this Motion rests. An argument that a court has considered and rejected is, when renewed, fairly described as relitigation. An argument grounded in binding circuit precedent that no order has yet addressed is different: the question it presents has not been resolved against the movant; it remains open. *Bastias* is binding precedent in this Circuit, and a district court is not free to leave binding precedent unapplied. Whether *Bastias*'s de novo *Skidmore*

framework governs the agency materials in this case accordingly remains to be answered, and Defendant respectfully submits that the Eleventh Circuit, whose precedent it is, is best positioned to answer it. Certification offers a resolution more productive than a further exchange of filings between the parties and this Court on the same unaddressed authority.

The practical stakes of the method question underscore the substantiality of the disagreement. Registration under the Securities Act runs exclusively through the SEC: a security is registered by filing a registration statement with the Commission, and with no one else. 15 U.S.C. §§ 77e, 77f(a). When the only agency with which registration is possible states, in a formal joint release and in case-specific statements it consented to make public, that an asset is not subject to the securities laws, that position bears with particular force on whether strict liability under Section 12(a)(1) can attach to the failure to register. Cf. *Mead*, 533 U.S. at 234–35 (*Skidmore* respect reflects the agency's "specialized experience and broader investigations and information"). Meme coins have traded publicly since Dogecoin's launch in December 2013; market aggregators track thousands of them, with an aggregate market value that surpassed $140 billion in late 2024; and, as Defendant noted without contradiction, no meme coin has ever been registered

with the SEC as a security. (Doc. 624, pp. 16–17); see *Memecoins Reach $140B Market Cap and Gain Ground in Crypto Economy*, CoinDesk (Dec. 5, 2024), https://www.coindesk.com/markets/2024/12/05/memecoins-reach-140-b-market-cap-and-gain-ground-in-crypto-economy; *Top Meme Coins by Market Cap*, CoinGecko, https://www.coingecko.com/en/categories/meme-token (last visited July 28, 2026) (tracking more than 5,400 meme tokens). There is no mechanism by which to register a meme coin as a security. A ruling that this entire asset class is subject to a registration regime that its administering agencies say does not apply, reached without weighing those agencies' interpretations, is precisely the kind of consequential legal determination on which the Eleventh Circuit should have the opportunity to speak before trial.

### C.  An Immediate Appeal May Materially Advance the Termination of This Litigation.

Trial is set for the October 5, 2026 term and is expected to occupy fourteen trial days before a jury. (Doc. 620). The Section 12(a)(1) class claim that will consume most of that trial is tried within the framework the partial summary judgment established. Absent certification, this same question will arrive at the Eleventh Circuit after final judgment, into which the interlocutory orders merge. If the Eleventh Circuit were to answer the certified question in Defendant's favor

after trial, the parties would face the prospect of trying this case twice. Answering

it now would either settle the framework before trial or eliminate the issue entirely,

and in either event would "avoid a trial or otherwise substantially shorten the

litigation." *McFarlin*, 381 F.3d at 1259.

Certification imposes no delay of its own. An application under § 1292(b)

"shall not stay proceedings in the district court unless the district judge or the

Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). Defendant

does not by this Motion request any alteration of the pretrial schedule, and pretrial

preparations will continue in accordance with the Sixth Amended Case

Management Order.

## V.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court

amend its July 28, 2026 Order (Doc. 672) to include the statement prescribed by 28

U.S.C. § 1292(b) with respect to the question presented above. If the Court certifies,

Defendant will file his petition for permission to appeal with the Eleventh Circuit

within ten days of entry of the amended order, as Federal Rule of Appellate

Procedure 5(a)(3) provides.

Dated: July 29, 2026.

By: /s/ James Koutoulas
James Koutoulas, pro se
james@koutoulaslaw.com
312-451-4088
10 N. Dearborn St., Suite 400
Chicago, IL 60602

## LOCAL RULE 3.01(g) CERTIFICATION

Defendant conferred with Plaintiffs' counsel regarding the relief requested

in this Motion by email on July 29, 2026, and Plaintiffs oppose the Motion.

By: /s/ James Koutoulas

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, a copy of the foregoing was filed with

the Clerk of Court for the United States District Court for the Middle District of

Florida using the CM/ECF system, which will send notification of such filing to all

counsel of record.

/s/ James Koutoulas
James Koutoulas