# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ERIC DE FORD, SANDRA BADER and SHAWN R. KEY,**

**Plaintiffs,**

**v.**                                                    Case No: 6:22-cv-652-PGB-DCI

**JAMES KOUTOULAS and LGBCOIN, LTD,**

**Defendants.**
_____/

## <u>ORDER</u>

This cause is before the Court upon Plaintiffs Eric De Ford, Sandra Bader, and Shawn R. Key's (collectively, the "**Plaintiffs**") Motion for Sanctions. (Doc. 614 the "**Motion**")). Defendant James Koutoulas's ("**Koutoulas**") filed a Response in Opposition (Doc. 626 (the "**Response**")), and, with leave of the Court, the Plaintiffs submitted a Reply (Doc. 635 (the "**Reply**")). Upon due consideration, the Plaintiffs' Motion for Sanctions is granted.

The Court finds that Defendant Koutoulas's conduct,[1] described more fully below, was egregious and was undertaken in bad faith. Accordingly, the Court enters default judgment against Defendant Koutoulas under its inherent authority and Federal Rules of Civil Procedure 37(b), (c). The Court further grants Plaintiffs

---

[1] The Court notes that the Plaintiffs are not seeking sanctions against Defendant LGBCoin, LTD, even though, according to Koutoulas, he was "[a]t all times material hereto . . . acting in his capacity as . . . [LGBCoin,] LTD's director and in-house counsel." (Doc. 248, ¶¶ 17–18).

leave to file a petition for an award of reasonable attorney's fees for Koutoulas's discovery violations set forth herein and for unreasonably and vexatiously multiplying these proceedings. *See* 28 U.S.C. § 1927.

## I.    BACKGROUND[2]

This class action was initiated on April 1, 2022, and arises from the creation, marketing, and sale of LGBCoin, a cryptocurrency. (*See generally* Doc. 1).

Now, in the instant Motion, Plaintiffs seek sanctions against Defendant Koutoulas, including the entry of default judgment, based on his pattern and practice of vexatious litigation, submission of fabricated legal authority, false discovery responses, and willful disobedience of the Court's Orders. (Doc. 614, p. 1). In his Response, Defendant Koutoulas fails to address the majority of the Plaintiffs' accusations. (Doc. 626). Plaintiffs replied, and the matter is now ripe for the Court's review.

## II.    STANDARD OF REVIEW

"A district court may impose sanctions for litigation misconduct under its inherent power." *Maus v. Ennis*, 513 F. App'x 872, 877–78 (11th Cir. 2013)[3] (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009)) (affirming the district court's entry of default judgment against a *pro*

---

[2]    The lengthy factual and procedural backgrounds of this case are largely laid out in the Court's prior orders. (*See, e.g.*, Docs. 229, 354, 388, 389).

[3]    "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

*se* party for disrespectful conduct and refusal to participate in discovery). "The key to unlocking the inherent power of the Court is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001). Sanctions may be imposed where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). Additionally, Federal Rule of Civil Procedure 37 gives district courts "broad discretion to fashion appropriate sanctions for violation of discovery orders." *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, 754 F. App'x 995 (11th Cir. 2018) (quoting *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993)).

"[I]n fashioning sanctions, courts should ensure that the sanctions are just and proportionate to the offense." *Wallace v. Superclubs Props., Ltd.*, 2009 WL 2461775, at *5 (S.D. Fla. Aug. 10, 2009) (internal quotation marks and citations omitted). The "severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *U.S. v. 32%2C Scorpion Go-Fast Vessel*, 339 F. App'x 903, 905 (11th Cir. 2009) (citation and quotations omitted) (noting that the court is not required to first impose lesser sanctions if doing so would be ineffective).

## III.    DISCUSSION

### A.    Koutoulas Engaged in Bad Faith Litigation

### i.    *Tampering with the Class Notice*

On December 22, 2025, the Court granted in part the Plaintiff's Motion for

Approval of the Proposed Class Notice Plan and ordered Defendant Koutoulas to

post a link to the summary notice (the "**Summary Notice**") on the LGBCoin

Telegram and Discord Channels. (Doc. 534, pp. 12–13 (granting in part and

denying in part Doc. 460)). Putting aside for the time being the litany of vexatious

pleadings filed prior to this point, Koutoulas's bad faith misconduct and his intent

to abuse the judicial process are evident in the steps he took to undermine the

Court's authority and the judicial process more generally.

For the Summary Notice, the Court approved the following language:

> This Action was filed on April 1, 2022, and subsequently
> amended multiple times with the final amendment on April
> 14, 2023. This Action was brought by Plaintiffs Eric De Ford,
> Sandra Bader, and Shawn Key ("Plaintiffs") against James
> Koutoulas and LGBCoin, LTD (collectively, "Defendants").
> The claims against all Defendants other than Mr. Koutoulas
> and LGBCoin, LTD have been dismissed.
>
> Plaintiffs allege that between November 2, 2021 and March
> 15, 2022 (the "Class Period"), Defendants violated the federal
> securities laws by engaging in the unlawful sale of
> unregistered securities in violation of Section 12(a)(1) of the
> Securities Act of 1933.
>
> Defendants deny these allegations against them. Defendants
> do not believe that LGBCoin constitutes a security, but
> instead, Defendants assert that LGBCoin is a meme coin
> dedicated to conservative advocacy. As such, Defendants
> contend they are not subject to any portion of the Securities
> Act of 1933.

(*Id.* at p. 10 (emphasis omitted)).

Instead of using the language ordered by the Court, Mr. Koutoulas posted

the following modification:

> Hi guys, big legal update. We are still on track for our hearing January 28 on a new trial. We also have state court appeals ready if that fails, and are working on a class action complaint if that fails. Should be helped by discovery in the MJ case that their president and chairman routinely hate on conservatives.
>
> Also, the Obama-appointed Honorable Judge Byron ignored the SEC's multiple statements to federal courts that they cant [sic] even allege LGBCoin is a security and is trying to make me bear the expense of standing trial. I have filed a motion to reconsider pointing out many of the errors in it which ChatGPT described as "flawed under at least 12 separate legal doctrines." He has also ordered I post this notice in here:
>
> . . .

(Doc. 539, p. 3). Koutoulas quoted the language of the Summary Notice and added

the following:

> As of now, the Plaintiffs lawyers have not added instructions on how to opt out or object if you are so inclined to do so, here are instructions: Important: The LGBCoin class action site does not have an opt-out form, but you can still opt out. To exclude yourself, submit a written, signed request stating "I request to be excluded (opt out) from the LGBCoin class action, De Ford v. Koutoulas, Case No. 6:22-cv-652 (M.D. Fla.)," including your name, address, email/phone, and date, before the opt-out deadline, either by filing with the Court via the Middle District of Florida web filing portal (https://apps.flmd.uscourts.gov/cmecf/filings_form.cfm) and/or by sending it to Plaintiffs' counsel (aaron@ziglerlawgroup.com) and the claims agent (info@lgbcoincryptoaction.com) (best practice: also copy Defense counsel at james@koutoulaslaw.com). If you want to stay in the class but object, send a written, signed objection explaining what you oppose and why, with the case info, to the Court, Plaintiffs' counsel, Defense counsel, and the claims agent by the objection deadline. If you do nothing, you stay in the class and are bound by the result. Here is his order on

5

> summary judgment and my motion to reconsider which
> explain how egregiously he has erred in his application of the
> law[.]

(*Id.* at pp. 3–4 (emphasis omitted)).[4]

Rather than post the Summary Notice as ordered, Koutoulas informed class members of a "legal update," underscoring that he, and Defendant LGBCoin, LTD, continue to fight while depicting the presiding judge as the "Obama-appointed" judge who ignored SEC statements that LGBCoin is not a security. (See *id.*). In so doing, Koutoulas attempts to persuade class members that the Plaintiffs' case is flawed, and the presiding judge is politically motivated and biased. Koutoulas doubles down on his efforts to undermine confidence in the Court and the viability of the class action Plaintiffs' suit, by stating, "I have filed a motion to reconsider, pointing out many errors" in the actions and describing it as "flawed under at least 12 separate legal doctrines." (*Id.* at p. 3).

Koutoulas casts himself as the victim of a partisan judge: "the Obama-appointed Honorable Judge Byron ignored the SEC's multiple statements to federal courts that they cant [sic] even allege LGBCoin is a security and [he] is trying to make me bear the expense of standing trial." (*Id.*). In so doing, Koutoulas, a licensed attorney, disparages the Court and doxes the presiding judge by

---

4    On January 12, 2026, Defendants submitted evidence of their class notice post on the LGBCoin Discord Channel. (Doc. 548-1). Defendants' submission revealed that Mr. Koutoulas' post on the LGBCoin Discord Channel was identical to his post on the LGBCoin Telegram channel, both of which modified the Court-Approved Summary Notice and deviated from the Order by adding the same preamble and postscript to the Court-Approved Summary Notice. (*Id.* at p. 1; Doc. 539, pp. 3–4).

identifying him by name and by telling LGBCoin purchasers that the judge is an unfair Obama appointee. Koutoulas completes his diatribe by counseling class members that they "can still opt out" or "object" to the class.[5] (*Id.* at pp. 3–4). Koutoulas attaches to the class notice his motion for summary judgment and for reconsideration to show class members how "egregiously [the Judge] has erred in his application of the law."[6] (*Id.*).

Based on the foregoing, the Court entered an Order to Show Cause why Koutoulas should not be held in civil contempt. (Doc. 539). The Court conducted an evidentiary hearing at which Defendant Koutoulas testified. (*See* Docs. 540, 569). The Court thereafter held Koutoulas in civil contempt. (Doc. 658). As discussed below, Defendant Koutoulas remained undeterred by the contempt citation and continued to file motions that contain intentional misrepresentations of law and fact. Koutoulas's efforts to undermine the Court's authority, disparage the judicial system, and encourage class members to opt out or object to the class

---

[5]   The Defendant conveniently omits from his post that the "Obama-appointed" Judge also served on active duty in the Army under Presidents Reagan and George H. W. Bush, served in the Department of Justice as an Assistant U.S. Attorney under both Bush Presidencies, was on the short-list for U.S. Attorney under President George W. Bush, prosecuted war crimes in Europe, and served again under George W. Bush in the Department of Justice advising countries around the world on anti-money laundering and counter-terrorist financing post-911. He also skips the fact that the undersigned was unanimously confirmed by the U.S. Senate. Koutoulas's intent was to play to the biases he believes class members have against Obama appointees and the Judiciary more generally and thus encourage them to opt out or object to class certification.

[6]   Defendant Koutoulas, who is licensed to practice law and represented to this Court that he is in-house counsel for Defendant LGBCoin, LTD, directs class members to copy Defense counsel at james@koutoulaslaw.com with their opt-out form. (Doc. 539, pp. 3–4; *see also* Doc. 248, ¶¶ 17–18). Defendant Koutoulas is not a mere client in the instant action; he is actively serving as legal counsel for himself.

are sufficiently malicious to warrant entry of default judgment, even setting aside the litany of vexatious pleadings and discovery violations committed before and after the contempt citation.

In *Kleiner v. First National Bank of Atlanta*, the court discussed the deleterious impact on class actions when defense counsel attempts to solicit class exclusion requests to reduce its potential liability. 751 F.2d 1193, 1197–1200 (11th Cir. 1985) The defendant bank in *Kleiner*, like Defendant Koutoulas here, commenced a communications program "to [e]nsure that the class members . . . understood the merits of the dispute and their right to opt out" with an objective to persuade borrowers to opt out. *Id.* at 1198. An evidentiary hearing followed, and the court issued an order declaring the solicitation scheme illegal and finding the defendant had acted in bad faith. *Id.* at 1199.

The *Kleiner* court observed that when confronted with a class action, "it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusions requests." *Id.* at 1202 (citation omitted). However, "[s]uch conduct reduces the effectiveness of the [Federal Rule of Civil Procedure] 23(b)(3) class action for no reason except to undermine the purpose of the rule." *Id.* (citation omitted). The court went on to state that "[a] unilateral communications scheme . . . is rife with potential for coercion." *Id.* "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from

8

misstatements could well be irreparable." *Id.* at 1203. Such schemes also "relegate[] the essential supervision of the court to the status of an 'afterthought.'" *Id.*

In *Kliener*, the court found that the bank's actions "obstructed the district court in the discharge of its duty to 'protect both the absent class and the integrity of the judicial process by monitoring the actions before it.'" *Id.* (quoting *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 331 (1980)). This was precisely what Koutoulas aimed to accomplish. Additionally, in *Maus v. Ennis*, the Court affirmed the entry of default judgment as a sanction for the defendant's "rude and disrespectful conduct," where the defendant accused the district court of "ignorance" and "incompetency" and one plaintiff of being a "bigot" and a "racist." 513 F. App'x. 872, 878 (11th Cir. 2013). Here, Defendant Koutoulas accuses the district court of worse. He claims that the Court intentionally "ignored" SEC statements, issued seriously "flawed" orders, "egregiously" erred in applying the law, and is a biased Obama appointee. As an officer of the Court, Defendant Koutoulas knows he has a duty to refrain from such conduct. Sanctions less severe than entry of default judgment are insufficient to remedy the harm caused by Defendant Koutoulas to this class action litigation and to public confidence in the judiciary.

### ii.    *Intentional Misrepresentations*

Defendant Koutoulas has not only engaged in a pattern and practice of disregarding the Court's rulings but has also affirmatively misrepresented the law

and the facts to the Court in various pleadings. By way of background, the Court granted partial summary judgment in favor of Plaintiffs on the first two prongs of the *Howey* test[7] for determining whether the offering in question qualifies as a "security" under § 12(a)(1) of the Securities Act. (Doc. 531, pp. 16–17). The Court also rejected Koutoulas's argument that the "SEC's Findings and Guidance Confirm LGBcoin is not a security." (Doc. 477, pp. 5–6; Doc. 531, p. 14).[8]

Having lost on the SEC Staff Statement argument, Koutoulas sought reconsideration of the Court's Order Granting Partial Summary Judgment in Favor of Plaintiffs. (Doc. 624). This time, he argued that the SEC and the Commodity Futures Trading Commission (**"CFTC"**) jointly issued Release Nos. 33-11412; 34-105020, titled "Application of the Federal Securities Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets,"[9] constitutes an intervening change in the law warranting reconsideration of the Court's prior order. (*Id.* at p. 1). Defendant Koutoulas attempted to distinguish the "joint release" from SEC Staff Statements by acknowledging — albeit belatedly — that

---

[7]    The canonical test to determine what constitutes an "investment contract" and thus, a security, was established by the Supreme Court in *Securities & Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946).

[8]    *See Staff Statement on Meme Coins*, U.S. SECS. & EXCH. COMM'N (Feb. 27, 2025), https://www.sec.gov/newsroom/speeches-statements/staff statement-meme-coins ("This statement, like all staff statements, has no legal force or effect: it does not alter or amend applicable law, and it creates no new or additional obligations for any person.")

[9]    *See* Application of the Federal Securities Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets, Securities Act Release Nos. 33-11412, 34-105020, 17 C.F.R. pts. 231, 241, available at https://www.sec.gov/files/rules/interp/2026/33-11412.pdf (Mar. 17, 2026). For citation purposes, the Court will refer to this release as the "Interpretive Release."

Staff Statements disclaim legal force, while characterizing the "joint release" as having the force of law. (*Id.* at pp. 4, 6–8). However, the interpretive release by the SEC and CFTC includes a disclaimer that "[t]he interpretation in this release does not supersede or replace the Howey test, which is binding legal precedent." Interpretive Release at p. 8. Defendant Koutoulas intentionally misrepresented the joint release in seeking reconsideration of the Order granting summary judgment. (*See generally* Doc. 624).

Another example of Defendant Koutoulas intentionally misleading this Court arises in the context of his Motion for Rule 11 Sanctions. (*See* Doc. 637). Approximately one month after the Plaintiffs filed the instant Motion seeking case-ending sanctions, Defendant Koutoulas filed a motion for sanctions against Plaintiffs' counsel under Rule 11. (*See* Docs. 614, 637). The Court denied the motion as both procedurally flawed and on the merits. (Doc. 675). One of the arguments advanced by Defendant Koutoulas merits discussion herein.

Plaintiffs' counsel alleges in their Motion that Defendant Koutoulas destroyed *Telegram* communications. (Doc. 614, p. 17). Defendant Koutoulas responded that Magistrate Judge Irick "previously adjudicated the broader question of auto-deleting messaging platforms and denied relief." (Doc. 637, p. 6 (citing Doc. 202, pp. 18–21)). Not so. Magistrate Judge Irick observed that a user may opt to have conversations on *Signal* automatically deleted after a set period and noted that if Defendants allowed conversations to be deleted after this

litigation started, it could be a spoliation issue. (Doc. 202, 18:24–19:3). Magistrate Judge Irick then ordered:

> To the extent that they [i.e., Signal communications] exist in any format, they need to be turned over and searched. So to the extent they're in an iCloud backup or anything like that… To the extent that that exists, Counsel, you-all have an obligation to look for that and to look everywhere it could exist, including iCloud backups.

(*Id.* 19:21–20:9).

Magistrate Judge Irick was addressing Signal communications that were deleted before this litigation began, not Telegram messages that were deleted after litigation commenced. (*See* Doc. 639, pp. 12–13). While Plaintiffs' Motion discusses Defendant Koutoulas's failure to preserve Signal communications created during this case, Defendant Koutoulas misrepresents Magistrate Judge Irick's order concerning Telegram communications to make it appear the Plaintiff violated Rule 11 by seeking sanctions. (*Id.* at p. 13 (citing Doc. 614); Doc. 637, p. 6)

### B.    Vexatious Litigation by Koutoulas

#### i.    *Waiver and Concession*

Plaintiffs contend that Defendant Koutoulas engaged in a pattern and practice of vexatious litigation, submission of fabricated legal authority, false discovery responses, and willful disobedience of the Court's Orders. (Doc. 614, p. 1). In his Response, Defendant Koutoulas only addresses three of the Plaintiffs' grounds for imposition of sanctions, leaving nearly all of the Plaintiffs' accusations unaddressed. (Doc. 626). When a party fails to respond, it indicates the motion is unopposed. *See, e.g., Local Access LLC v. T-Mobil USA, Inc.*, Case No. 6:17-cv-

382-Orl-41-TBS, 2017 WL 3118535, at *1 (M.D. Fla. July 21, 2017) (citing *Foster v. Coca–Cola Co.*, No. 6:14-cv-2102-Orl-40TBS, 2015 WL 3486008, at *1 (M.D. Fla. June 2, 2015)); *Kramer v. Gwinnett Cnty.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").

In his Response, Koutoulas devoted fifteen pages of his twenty-page response to: complaining that the Plaintiffs were required to proceed under Rule 11 and, thus, provide him a safe harbor (Doc. 626, pp. 1–5); arguing that the timing of Plaintiffs' motion was an aggressive litigation tactic (*Id.* at pp. 6–7); claiming — incorrectly — that Plaintiffs failed to comply with the Local Rules before filing the motion (*Id.* at pp. 7–8); contending that sanctions should be delayed until the conclusion of the case (*Id.* at pp. 8–10); asserting that 28 U.S.C. § 1927 applies to attorneys, not parties (*Id.* at p. 10); and claiming that the Plaintiffs lack "clean hands" to seek sanctions. (*Id.* at pp. 11–14). None of these arguments address the merits of Plaintiffs' Motion.

### ii.     *Defendant's Perfunctory Responses*

Defendant did, however, respond to Plaintiffs' assertion that he hid cryptocurrency wallets, albeit in a perfunctory manner. (*Id.* at pp. 15–17). Plaintiffs moved for sanctions in part because Koutoulas failed to disclose pursuant to Rule

26, and following a motion to compel, financial information, including cryptocurrency wallet addresses used for LGBCoin transactions. (S*ee* Doc. 614, pp. 16–18). In his Response, Defendant Koutoulas contends, without attaching any evidence, that "[t]he wallet-related allegations are factually incorrect." (Doc. 626, pp. 15–17). The Court rejected Defendant Koutoulas's argument as perfunctory and unsupported, finding "[i]t is axiomatic that arguments not supported and properly developed are deemed waived." (Doc. 675, p. 3); *see also See W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017); *see also U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped arguments" and that such are waived.).

Defendant Koutoulas also addresses in his Response Plaintiffs' assertions that he deleted Telegram documents, albeit by misrepresenting the Magistrate Judge's Order. (Doc. 626, pp. 13, 17). As noted in Section III(A)(ii), the Defendant misstated the Magistrate Judge's order, which addresses lost Signal communications that occurred before the litigation, and is silent on the Plaintiffs' assertion that Defendant destroyed or failed to preserve Telegram communications after the lawsuit was filed. *See* discussion *supra* Section III(A)(ii). Defendant Koutoulas's Response fails to address the Plaintiffs' complaint of misconduct.

The Plaintiffs additionally moved for sanctions because Koutoulas failed to disclose the identity and contact information for class members in response to

Plaintiffs' discovery requests. (Doc. 614, pp. 16–18). Defendant Koutoulas responded, again without supporting evidence, that one undisclosed class member was gifted LGBCoin and another was fully refunded, to justify the non-disclosure in discovery. (Doc. 626, p. 18). Again, the Court found the Defendant's Response to be perfunctory and unsupported. (Doc. 675, pp. 4–5).

Finally, in response to Plaintiffs' assertion that he failed to produce communications between himself and purchasers of LGBCoin, rather than denying improper contact with class members, Defendant Koutoulas argues that a court order is required before such contact is prohibited. (Doc. 614, p. 17; Doc. 626, p. 18). The Defendant does not, however, deny that he communicated with class members, or explain why he failed to disclose his communications in accordance with Plaintiffs' discovery request. Defendant's failure to respond to the Plaintiffs' contention that he engaged in this misconduct constitutes an admission. *Local Access LLC*, 2017 WL 3118535, at *1.

The Court finds Defendant Koutoulas's conclusory, unsupported, and misleading responses to Plaintiffs' Motion constitute a waiver and renders unopposed Plaintiffs' assertions that he hid cryptocurrency wallets, concealed class members' identities, failed to preserve evidence, and improperly communicated with class members. These discovery violations warrant severe sanctions under Rule 37, including entry of default judgment.

### iii.        *The Uncontested Assertions of Vexatious Conduct*[10]

As discussed *supra*, the majority of the Plaintiff's assertions concerning sanctionable conduct is unrebutted by Defendant Koutoulas. *See* discussion *supra* Section III(B)(i). The Court has nonetheless analyzed the Plaintiffs' arguments to assess their merit. The Court will discuss Defendant Koutoulas's vexatious litigation tactics followed by his discovery violations.

### a.        Disregard for the Court's rulings

The Plaintiffs argue, and Defendant Koutoulas does not deny, that Defendant has "repeatedly pressed arguments this Court previously rejected across more than a dozen separate motions . . . [and has] submitted fabricated legal authority across at least eight filings — citations to cases that do not exist, quotations from cases that say no such thing, and citations to reversed decisions." (Doc. 614, pp. 1–2). Plaintiffs correctly note that filing a motion that "simply repeats the movant's earlier arguments, without showing that something material was overlooked or disregarded, presenting previously unavailable evidence or argument, or pointing to substantial error of fact or law," is frivolous and sanctionable. (*Id.* at p. 4); *Miller v. Norfold S. Rwy. Co.*, 208 F. Supp. 2d 851, 853–54 (N.D. Ohio 2002); *see also Spolter v. SunTrust Bank*, 403 F. App'x 387, 391 (11th Cir. 2010). The Plaintiffs prepared a chart that accurately recounts

---

[10]   The Plaintiffs present evidence that Defendant Koutoulas used a class member, Mr. Albert Sheeler ("**Mr. Sheeler**"), as a Trojan Horse for his arguments. (Doc. 614, pp. 7–9; Doc. 614-1; Doc. 614-3, ¶¶ 22–36). The Defendant does not refute these allegations. That said, the Court's imposition of sanctions rests on the litany of abuses described in this Order, without relying on actions of Mr. Sheeler directed by the Defendant.

Defendant Koutoulas' repetition of arguments the Court previously rejected. (Doc. 612-1).

Early in this litigation, the Court cautioned Defendant Koutoulas that "any further filings of premature motions for sanctions — or any other improper filing — will be seen as an abuse of the Court's resources and will be resolved accordingly." (Doc. 121, p. 4 n.1). Defendant Koutoulas subsequently filed a Motion for Sanctions and to Strike the Third Amended Complaint on the ground that the Plaintiffs violated the PSLRA. (Doc. 271). The Court denied the motion because the PSLRA does not prescribe specific sanctions for failure to comply with its provisions. (Doc. 284, pp. 3–7). On June 14, 2023, Koutoulas sought reconsideration of the Court's ruling and reiterated arguments previously rejected. (Doc. 293). The same day, Defendant LGBCoin, LTD, for which Koutoulas is general counsel, filed a motion to strike the Third Amended Complaint for violation of the PSLRA (Doc. 294, pp. 6–10). The Court rejected these recycled arguments (Doc. 300 (denying Docs. 293, 294)).

After the Court rejected the PSLRA arguments raised twice by Koutoulas and once by LGBCoin, LTD, Defendant Koutoulas repeated those arguments three days later. (Doc. 301). Koutoulas moved to dismiss the third amended complaint, arguing that the Plaintiffs violated the PSLRA and that LGBCoin is a collectible. (*Id*. at pp. 2–4, 10). The Court entered an Order again rejecting the PSLRA and "collectible" arguments. (Doc. 354, pp. 18–19; *see also* Doc. 229, pp. 33–34). Despite the Court's consistent rulings on the PSLRA issue and its rejection of the

notion that LGBCoin is a collectible, Defendant Koutoulas's opposition to class certification raised both issues. (Doc. 403, pp. 2, 9).

The Court again rejected these arguments and chastised Koutoulas for his "approach of throwing every argument at the wall . . . to see what sticks." (Doc. 455, p. 5 n.4). Four days later, Koutoulas and LGBCoin, LTD moved for reconsideration of class certification, arguing that the SEC Staff Statement precludes finding that LGBCoin is a security (Doc. 457, pp. 2–3). Ten days later, Koutoulas and LGBCoin moved for reconsideration of the Order entered a year earlier, which denied their motion to dismiss the third amended complaint. (Doc. 463). Defendants merely recycled their SEC Staff Statement and PSLRA arguments. (*Id.* at pp. 2–4, 6–7).

The Court, again rejecting these arguments, noted that "despite the Court's advisements, Defendants have again thrown every argument at the Court, with little to no citations to legal authority" and that they used "citations [that] do not accurately support Defendants' positions" (Doc. 515, p. 3). "Moreover, [the Court observed], Defendants — as they have done for the past three years of litigation — rehash various arguments that the Court has thoroughly addressed in previous Orders" (*Id.*). The Court also pointed out that Koutoulas misrepresented that "[t]he SEC, following a comprehensive review of discovery in this case and in LetsGoBrandon.com Foundation v. NASCAR, stipulated in the Eleventh Circuit that it could not, in good faith, allege LGBCoin to be a security," when "it is, in fact, a motion filed by Defendant James Koutoulas in a separate case pending before the Eleventh Circuit Court of Appeals." (Doc. 515, p. 5 (quoting Doc. 463, pp. 2–3)).

18

The Court also directed Defendants to the SEC Staff Statement's position that it "is not a rule, regulation, guidance, or statement of the [SEC] . . . [t]his statement, like all staff statements, has no legal force or effect." (*Id.*). Defendant Koutoulas omitted this disclaimer from his argument.

Despite the Court's pronouncements that SEC Staff Statements have no legal effect, Defendant Koutoulas and LGBCoin LTD argued in their Reply to Plaintiffs' Motion for Summary Judgment that LGBCoin is not a security, citing the SEC Staff Statement. (Doc. 520, pp. 1, 8, 11). As expected, the Court rejected this debunked argument and granted partial summary judgment in favor of Plaintiffs on the first two prongs of the *Howey* test. (Doc. 531, p. 14). Two days later, Koutoulas moved for reconsideration of that Order, claiming, in part, that the Court failed to afford proper deference to the SEC Staff Statements. (Doc. 535, p. 5). The Court rejected this argument, finding "[u]pon thorough review of Defendants' arguments related to *Howey* therein, the Court finds that Defendants' arguments are substantively the same as those presented by Defendants in their Motion for Summary Judgment and in their Reply in Support of the Motion for Summary Judgment." (Doc. 565, p. 9 (*comparing* the arguments in Doc. 477, *with* the arguments in Doc. 520)).

Defendant Koutoulas's intentional disregard for the Court's Orders is nothing short of stunning. The Defendant has vexatiously multiplied this litigation through a campaign of delay and obfuscation. Arguments repeatedly rejected by the Court are renewed, often within days of the Court's rulings. In their Motion, Plaintiffs provide a succinct example of Koutoulas's abusive filings:

> Defendants' argument that the SEC has effectively exonerated them first appeared in the original motion to dismiss (Doc. 18) and has been reasserted in Docs. 439, 445, 463, 468, 469, 470, 477, 520, 535, 543, 547, 561, 574, 576, 577, and 607 — at least seventeen filings over four years. Similarly, Defendants' SEC Staff Statement argument, a subset of this theory, was introduced in February 2025 and has been raised in at least eleven filings. It was expressly rejected in Doc. 515.3 Yet Defendants raised it again in Docs. 520, 535, 547, 561, 574, and 576-577 — at least seven more times after the rejection.

(Doc. 614, pp. 5–6).

Moreover, "Defendants raised PSLRA-related arguments in at least seven separate filings (Docs. 271, 293, 294, 301, 302, 403, 547)—a category so thoroughly rejected that the Court "invite[d] Defendants to review three of its prior Orders" on the subject. (Doc. 455 at 9)." (*Id.* at p. 6). Defendant Koutoulas's litigation strategy is the epitome of bad faith. And he cannot blame this on his lawyer. Koutoulas is a licensed attorney, and he persisted in advancing frivolous arguments *pro se* after his lawyer resigned.[11]

### b.   Hallucinated Cases

Further, Defendants Koutoulas and LGBCoin LTD submitted fabricated authority across at least eight separate filings: Docs. 403, 463, 470, 477, 490, 535, 545, and 582. (*See* Doc. 614-3). Plaintiffs have catalogued more than forty such instances in a spreadsheet attached to their Motion. (Doc. 614, pp. 9–15; Doc. 614-4). Federal courts around the country are taking a firm stance against AI-hallucinated case citations. This is just one of Defendant Koutoulas's many

---

[11]   A litigant's *pro se* status does not excuse compliance with the Federal Rules of Civil Procedure or the Court's orders. Moon v. Newsome, 863 F.2d 835, 837–39 (11th Cir. 1989).

sanctionable acts, including terminating sanctions. *See e, e.g., O'Brien v. Flick,* 2025 WL 242924, at *5–8 (S.D. Fla. Jan. 10, 2025), *aff'd,* 2025 WL 2731627 (11th Cir. Sept. 25, 2025) (issuing terminating sanctions for, inter alia, the unapologetic citation of nonexistent cases); *Force v. Cap. One, N.A.,* 2025 WL 2930308, at *4 (M.D. Fla. Oct. 15, 2025).

## IV.   CONCLUSION

The Court finds Defendant Koutoulas's conduct was egregious and was undertaken in bad faith. The Defendant intentionally acted to undermine the Court's Order through his comments accompanying the Class Notice. (*See* Doc. 539). He willfully disparaged the Court to the Class Members. (*Id.*). He has intentionally misrepresented the law and the facts to the Court in various pleadings. Defendant Koutoulas engaged in serious discovery violations, and he perpetrated a multi-year campaign of vexatious litigation designed to delay these proceedings and increase the cost of litigation for opposing counsel. Nothing short of the most severe sanctions is appropriate for this egregious conduct.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Sanctions (Doc. 614) is **GRANTED**;

2. The Clerk of Court is **DIRECTED** to enter default judgment in favor of the Plaintiffs on their Third Amended Complaint (Doc. 245) against Defendant James Koutoulas.

3. Plaintiffs are entitled to reasonable attorneys' fees and costs as a sanction for Defendant James Koutoulas' discovery violations

described herein in an amount to be determined by the Court upon motion of the Plaintiffs.

**DONE AND ORDERED** in Orlando, Florida on August 4, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties