UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ERIC DE FORD, SANDRA BADER, and SHAWN R. KEY, individually and on behalf of all others similarly situated, | Case No. 6:22-cv-652-PGB-DCI |
| | CLASS ACTION |
| Plaintiffs, | |
| v. | |
| JAMES KOUTOULAS and LGBCOIN, LTD, | |
| Defendants. | |

**DEFENDANT JAMES KOUTOULAS'S MOTION FOR
DISQUALIFICATION FROM A CRIMINAL CONTEMPT
TRIAL OR HEARING COVERED BY
FED. R. CRIM. P. 42(a)(3), AND FROM DEFINED
REMAINING PROCEEDINGS IN THIS ACTION
UNDER 28 U.S.C. § 455(a)**

Defendant James Koutoulas respectfully moves for disqualification, and asks for it in two parts.

**First**, under Federal Rule of Criminal Procedure 42(a)(3), that if a criminal contempt proceeding is initiated on the compelled-statement provision of the July 22, 2026 order and the contempt charged involves

1

disrespect toward or criticism of the presiding District Judge, he be disqualified from presiding at the contempt trial or hearing. Defendant states expressly that **he does not consent** to the presiding Judge conducting that trial or hearing.

**Second**, under 28 U.S.C. § 455(a), that the presiding District Judge disqualify himself from the proceedings that remain against Defendant in this action, and that those matters be reassigned in the ordinary course. Those proceedings are the determination of damages following the Clerk's entry of default judgment, and any future adjudication, trial, hearing, or disposition of criminal contempt. They do not include the antecedent decision whether to initiate proceedings, or the issuance of notice.

The relief requested is prospective. Defendant does not ask by this motion that any order already entered be altered, vacated, stayed, or reconsidered.

## PRELIMINARY STATEMENT

Two things this motion does not do.

**It does not ask the Court to postpone anything.** Defendant does not request that this motion delay the August 7, 2026 compliance deadline set by Doc. 685, the entry of any order, or any other date in this case. He has not designated it as a time-sensitive motion and does not request a ruling by any particular date.

**It does not accuse the Court of subjective bias.** Neither Rule 42(a)(3) nor § 455(a) requires that showing, and Defendant does not make it. Rule 42(a)(3) operates by its terms. Section 455(a) asks whether "impartiality might reasonably be questioned," a question answered from the perspective of a disinterested observer, not from the judge's own knowledge of his intentions. A judge may be entirely certain of his own fairness and still be required to step aside, because the statute protects the appearance of justice as well as its substance. Every fact set out below is drawn from this Court's own transcripts and orders.

Defendant files now because Doc. 685 provides that failure to comply by 5:00 p.m. on August 7, 2026 "will result in the initiation of criminal

3

contempt proceedings," and because a request of this kind is better made before such a proceeding exists than after.

## I. RULE 42(a)(3) DISQUALIFIES THE PRESIDING JUDGE FROM A CRIMINAL CONTEMPT TRIAL OR HEARING THAT INVOLVES CRITICISM OF HIM, AND DEFENDANT DOES NOT CONSENT

Federal Rule of Criminal Procedure 42(a)(3) provides: "If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents."

Two things follow directly, and neither requires any inquiry into the Court's state of mind.

**The rule is conditional, and Defendant states the condition rather than assuming it.** Rule 42(a)(3) applies if the criminal contempt charged involves disrespect toward or criticism of a judge. No notice has issued, and Defendant does not presume its contents. What he submits is what the existing orders show about the subject matter such a charge would have. Defendant does not concede that his December 2025 communication was

4

disrespectful or improper, and he does not waive any position he has taken about it. He relies on how the orders themselves describe the conduct.

The July 22, 2026 order directs Defendant to publish a statement acknowledging that his earlier posts "included improper commentary on the impartiality of the Judge presiding over this case." (Doc. 658 at 7–8.) The August 4, 2026 order describes the conduct as "efforts to undermine the Court's authority, disparage the judicial system," and states that Defendant acted "to disparage the Court." (Doc. 682 at 7–8; Doc. 658 at 7.)

If the notice charges failure to publish the compelled statement as criminal contempt, the charge would necessarily concern Defendant's refusal to publish a court-authored acknowledgment that his commentary on the presiding Judge was "improper." Defendant therefore submits that such a charge would "involve[] . . . criticism of a judge" within Rule 42(a)(3). The rule does not require the contemnor to concede that the criticism was improper, and Defendant makes no such concession.

**Defendant does not consent.** He states that plainly and in advance, so the question is resolved before a proceeding is noticed rather than during it.

Defendant is careful about the scope of this ground. Rule 42(a)(3) addresses who may preside at the contempt trial or hearing. It does not address who may issue notice, request the appointment of a prosecutor, or make the antecedent decision whether to initiate proceedings at all. Defendant does not contend otherwise and does not ask the Court to disqualify itself from those steps under Rule 42.

## II. THE DUE PROCESS GROUND: CONTEMPT VINDICATING THE COURT'S OWN AUTHORITY

Where a presiding judge has become personally embroiled with a litigant, due process requires that contempt be adjudicated by a different judge, and the requirement operates without regard to whether the embroilment has an extrajudicial source. *Taylor v. Hayes*, 418 U.S. 488, 501–03 (1974); *Mayberry v. Pennsylvania*, 400 U.S. 455, 465–66 (1971); *Offutt v. United States*, 348 U.S. 11, 14 (1954).

6

Defendant states the reach of these authorities precisely. They concern the adjudication, trial, and disposition of contempt, and the punishment imposed for it. They do not hold that an embroiled judge may not issue notice or set a proceeding in motion. Defendant relies on them for what they decide: that the adjudication of a contempt vindicating the presiding Judge's own authority should be conducted by a different judge.

Defendant states the limit of that line, and the authority that sets it. In *Ungar v. Sarafite*, the Supreme Court declined "to bottom a constitutional rule of disqualification solely upon such disobedience to court orders and criticism of its rulings during the course of a trial," 376 U.S. 575, 584 (1964), while assuming that "there are criticisms of judicial conduct which are so personal and so probably productive of bias that the judge must disqualify himself to avoid being the judge in his own case." Id. at 583.

*Ungar* identifies what makes the difference. Distinguishing *Offutt*, the Court explained that the record before it did "not leave us with an abiding impression that the trial judge permitted himself to become personally embroiled with petitioner," because "[w]hatever disagreement there was

7

between petitioner and the judge stemmed from the petitioner's resistance to the authority of the judge and its exercise during the trial," and because "[n]either in the courtroom nor in the privacy of chambers did the judge become embroiled in intemperate wrangling with petitioner." Id. at 585.

Defendant does not rest on disobedience or on criticism of rulings. He rests on what the record adds beyond them: the announced intention to file a bar grievance against him, the statement that a United States Attorney would be present at the next encounter, the expanded biographical response in the order of August 4, 2026, and the written finding in that order concerning his intent in describing the presiding Judge.

That configuration is present here. The order under appeal directs Defendant to publish a statement acknowledging "improper commentary on the impartiality of the Judge." (Doc. 658 at 7–8.) The August 4, 2026 order describes the sanctioned conduct as "efforts to undermine the Court's authority, disparage the judicial system, and encourage class members to opt out or object to the class," and finds that conduct "sufficiently malicious to warrant entry of default judgment." (Doc. 682 at 7–8.) The judge whose

authority the contempt vindicates would be the judge who determines whether it was offended and what follows.

## III. SECTION 455(a): THE OBJECTIVE APPEARANCE

Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The provision is self-executing and is satisfied by an appearance, not by proof of actual partiality. Defendant proceeds under § 455(a) alone. He does not invoke § 455(b)(1), which turns on actual personal bias or prejudice, and he makes no such allegation.

In *Liteky v. United States*, remarks made in the course of judicial proceedings are disqualifying when "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." 510 U.S. 540, 555 (1994). What the Court excused were "expressions of impatience, dissatisfaction, annoyance, and even anger" and a judge's "ordinary efforts at courtroom administration." Id. at 555–56. The example the Court gave of a statement on the far side of the line was the trial judge's declaration in *Berger v. United States* that "[o]ne must have a very judicial mind, indeed,

not [to be] prejudiced against the German Americans" whose "hearts are reeking with disloyalty." Id. at 555 (quoting *Berger v. United States*, 255 U.S. 22, 28 (1921)).

***A. The Court reached in January the conclusion it entered as a finding in August.***

On January 16, 2026, before the evidence on contempt had closed, the Court described from the bench what it understood Defendant's December posts to have been doing:

> "So he does that in three ways. One, by saying it's an Obama-appointed judge, as if that means something. I'm sure — I'll be fair to Mr. Koutoulas. I'm sure there are some judges appointed by presidents — particularly recently — who abandon the rule of law in favor of party politics and favoritism. I don't do that. But he points it that way, 'cause that's a dog whistle. So he does that to get people to think this is a flawed proceeding."

(Doc. 569 at 11.) Seven months later, in the order directing entry of default judgment, the Court entered the same conclusion as a finding:

> "Koutoulas's intent was to play to the biases he believes class members have against Obama appointees and the Judiciary more generally and thus encourage them to opt out or object to class certification."

(Doc. 682 at 7 n.5.) Defendant does not suggest that a judge may never form a view of the evidence, or that consistency between a

preliminary impression and a later finding is itself improper. He asks the

Court to consider how the sequence appears to a disinterested observer: a

conclusion about a litigant's state of mind, expressed from the bench in

January in the vocabulary of a "dog whistle," and entered in August as an

adjudicated finding supporting a terminating sanction.

   *B. The August 4 order answers a characterization of the presiding
Judge with his own biography.*

   Footnote 5 of Doc. 682 states, in full:

   "The Defendant conveniently omits from his post that the
   'Obama-appointed' Judge also served on active duty in the
   Army under Presidents Reagan and George H. W. Bush, served
   in the Department of Justice as an Assistant U.S. Attorney
   under both Bush Presidencies, was on the short-list for U.S.
   Attorney under President George W. Bush, prosecuted war
   crimes in Europe, and served again under George W. Bush in
   the Department of Justice advising countries around the world
   on anti-money laundering and counter-terrorist financing post-
   911. He also skips the fact that the undersigned was
   unanimously confirmed by the U.S. Senate."

   (Doc. 682 at 7 n.5.) Defendant intends no disrespect to the service the

footnote describes and does not question a word of it. His point is narrow,

and he states what he is not saying. He does not contend that the Court has

any personal stake in the outcome of this case, financial or otherwise. He

11

does not contend that the sanction rested on his omission of favorable biographical detail; the order rests on the communication as a whole and on separate discovery and litigation findings. What he submits is that an expanded autobiographical response, in an order, to a litigant's description of the judge contributes to an appearance of personal involvement in the controversy, and that § 455(a) exists to address appearances of that kind.

### C. The remaining statements from the January 16 hearing.

Defendant quotes these rather than characterizing them, because the objective standard asks what they convey to an observer rather than what they were intended to convey.

The Court announced: "I will be filing a Bar grievance against you, sir, just so you understand." (Doc. 569 at 11.) It stated: "I don't believe you. I'm just being honest." (Id. at 31.) It foreclosed the civil path and stated: "we won't have a second civil contempt proceeding. That's not how I work. The next time you meet me, there will be a U.S. Attorney sitting at that table if this doesn't go the way it's supposed to go." (Id. at 37–38.)

12

*Liteky* excuses impatience, dissatisfaction, annoyance and anger, and it excuses the ordinary work of running a courtroom. 510 U.S. at 555–56. Defendant respectfully submits that an announced intention to file a bar grievance is not courtroom administration but the initiation of a proceeding against the litigant outside this case; that "I don't believe you" is a credibility determination stated before the evidence closed; and that a statement that a United States Attorney will be present at the next encounter identifies, from the officer who would make the referral, the consequence of an adverse outcome. Doc. 685 has now attached that consequence to a deadline.

Defendant adds one fact and states its limits. In the four years this action has been pending, the docket reflects one hearing held before the presiding District Judge: the show cause hearing of January 16, 2026. (Doc. 555.) Every other proceeding held in this case was conducted before a Magistrate Judge. (Docs. 197, 594, 597, 615.) Defendant does not offer that to suggest pervasive conduct, and it does not suggest any. He offers it because these statements were made on the single occasion the presiding

13

Judge took the bench in this case, and because the order that followed that hearing is the order now on appeal.

### D. The announced bar grievance differs in kind from the other statements.

Defendant addresses the extrajudicial-source question directly, because the April 13, 2026 order in No. 26-10500 rested on it.

Most of what is set out above consists of statements made in the course of these proceedings, and Defendant does not contend that they arise from a source outside them. Under § 455(a) they need not. The statute asks how the proceeding appears, and *Liteky* holds that views formed during proceedings are disqualifying where they "display a deep-seated favoritism or antagonism that would make fair judgment impossible." 510 U.S. at 555.

One statement is different in kind, and Defendant separates it from the others for that reason. An announced intention to file a bar grievance is not the expression of a view about the evidence, the parties, or the merits. It is the undertaking of a role in a separate proceeding, before a different tribunal, in which the presiding Judge would stand as complainant and

14

Defendant as respondent. That relationship would exist outside this action,

would be governed by another body's rules, and would not end when this

case ends.

Defendant states the limits of what he knows. He has not been

notified that any such grievance has been filed, and he does not assert that

one has been. He relies on the announcement itself, which was made on the

record and directed to him by name. (Doc. 569 at 11.)

This motion proceeds under Federal Rule of Criminal Procedure

42(a)(3) and 28 U.S.C. § 455(a) only. Defendant does not proceed under 28

U.S.C. § 455(b)(1) or 28 U.S.C. § 144.

## IV. TIMELINESS, AND WHAT DEFENDANT HAS PREVIOUSLY SOUGHT

Although § 455 contains no express deadline, a motion under § 455(a)

must be timely. *Summers v. Singletary*, 119 F.3d 917, 920 (11th Cir. 1997)

("the jurisprudence of this circuit has previously recognized that a motion

to disqualify a judge or magistrate under § 455(a) must be timely filed")

(citing *United States v. Slay*, 714 F.2d 1093, 1094 (11th Cir. 1983)). Defendant

15

files within one business day of the August 4 and 5, 2026 events that materially crystallized the present grounds.

Defendant states his position on timing candidly, and corrects any impression that these concerns are raised for the first time.

Defendant has not previously moved this Court for disqualification. He has sought reassignment in the Eleventh Circuit. His petition for a writ of mandamus, docketed August 2, 2026 in No. 26-12688, asks that Court to direct that further proceedings be conducted before a different judge, and relies in part on the January 16, 2026 statements quoted above.

Defendant sets out the Eleventh Circuit's April 13, 2026 order in No. 26-10500 in full rather than in part, because it cuts both ways. That order stated that Defendant had "the adequate alternative remedy of moving the district court judge to recuse himself under 28 U.S.C. § 144 and § 455." It also stated, in the same paragraph, that Defendant "has not shown any 'exceptional circumstances' warranting a recusal challenge through mandamus, as he does not provide evidence that the district judge has a bias against him stemming from an extra-judicial source," and that "[w]hile

Koutoulas points to several comments made by the district court, the comments do not demonstrate that the district judge has 'a personal bias or prejudice' against Koutoulas."

Defendant does not ask this Court to disagree with that assessment, and this motion does not depend on it being wrong. He states the doctrine accurately. The extrajudicial-source principle applies under § 455(a) as well as under § 455(b)(1), and where the asserted grounds arise during judicial proceedings, *Liteky* requires the extraordinary showing described above, antagonism so deep-seated as to make fair judgment impossible. 510 U.S. at 555.

What distinguishes this motion is not a different legal standard but a different record. The April order addressed the record as it stood in April. It did not address the order of August 4, 2026, the compliance deadline set on August 5, or the statement that noncompliance "will result in the initiation of criminal contempt proceedings." Nor did the April order address Rule 42(a)(3). Although the January hearing forecast possible criminal contempt, no criminal-contempt proceeding had been initiated,

17

and no order had then set a compliance deadline carrying the stated

consequence of initiation. Rule 42(a)(3), moreover, operates without

reference to an extrajudicial source.

Through the spring of 2026 the contempt proceeding was styled and

understood as civil. (Doc. 539; Doc. 658 at 1.) Defendant did not read the

January 16 hearing as foreclosing a fair adjudication of a coercive,

purgeable sanction, and did not wish to be heard to say that a judge who

ruled against him must therefore be disqualified. He accepted this Court's

2023 assurance that "the political content of his beliefs has nothing to do

with the Court's conclusions." (Doc. 229 at 27 n.12.)

What changed is specific, and Defendant identifies the operative new

ground rather than relying on accumulation. The order of August 4, 2026

expanded on biographical matters the Court had referenced at the January

16 hearing, and paired that expanded account with a specific written

finding about Defendant's intent in describing the presiding Judge. The

order relied on that intent finding, together with other conduct, in

imposing default judgment. The January 16 statements are offered as

18

context for that footnote, not as the ground. The orders of August 5, 2026 set a compliance deadline carrying a stated consequence of criminal contempt proceedings and struck the filing by which Defendant had sought to preserve his objection without disobeying. Those orders materially crystallized and expanded the grounds for a motion in this Court. No Rule 42 prosecution has been initiated, and Defendant does not suggest otherwise. The August 5 order gave him a concrete reason to record his non-consent prospectively rather than after a notice issues. Defendant files the next business day.

## V. THE RELIEF REQUESTED DOES NOT DISTURB ANY ORDER ON APPEAL

Defendant's appeal in No. 26-12606 concerns the contempt adjudication and the compelled-statement provision of the July 22, 2026 order. On August 3, 2026, the Eleventh Circuit held that portion appealable and retained it, and denied the stay motion then pending. (No. 26-12606, Doc. 14 at 2–3.) This motion seeks no stay.

Defendant states three things so the point is addressed rather than assumed.

1. He does not ask this Court by this motion to alter, vacate, stay, or reconsider the order on appeal, or to relieve him of the August 7 compliance deadline. He recognizes that, absent a stay, a district court ordinarily retains authority to enforce an order while an appeal from it is pending.

2. A motion for disqualification is collateral to the merits of the appealed order. The proceedings to which the requested relief is addressed, a future criminal contempt trial or hearing and the determination of damages following the Clerk's entry of default judgment, are not aspects of the case involved in that appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Doe v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001) (a notice of appeal "may not divest the district court of jurisdiction over collateral matters not affecting the questions presented on appeal"); *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003) (a notice of appeal does not "prevent the court from entertaining motions on matters collateral to those at issue on appeal").

3. To the extent the Court concludes that any portion of the requested relief would bear on an aspect now before the court of appeals, Defendant asks that the Court defer that portion rather than deny the motion, and decide the remainder.

## VI. RELIEF REQUESTED

Defendant respectfully requests that the Court:

1. Record Defendant's statement that he does not consent, and direct that if a criminal contempt proceeding is initiated and the notice charges a contempt involving disrespect toward or criticism of the presiding Judge, the contempt trial or hearing be conducted before a different judge, as Federal Rule of Criminal Procedure 42(a)(3) provides;

2. Under 28 U.S.C. § 455(a), disqualify himself from the proceedings remaining against Defendant in this action, and direct that those matters be reassigned in the ordinary course. Those proceedings are the determination of damages following the Clerk's entry of default judgment, and any future adjudication, trial, hearing, or disposition of criminal contempt. They do

21

not include the antecedent decision whether to initiate proceedings, or the issuance of notice;

3. If the Court regards the relief requested in paragraph 1 as premature because no Rule 42 proceeding has been initiated, defer that request without prejudice, this filing serving as Defendant's express record of non-consent; and

4. Grant such other relief as is just.

Defendant does not seek by this motion to postpone any deadline, does not ask that any pending matter be held pending its resolution, and does not ask that any order already entered be altered by it.

## CONCLUSION

Defendant has litigated before this Court for more than four years and has not previously asked it to step aside. He asks now, as to defined future proceedings, because Rule 42(a)(3) speaks directly to the first of them and because the record of the past week has made the question one he cannot responsibly leave unasked. He asks that the motion be measured

22

on the Court's own words and on the rule's own terms, and he will abide

the ruling.


Respectfully submitted,

/s/ James L. Koutoulas

James L. Koutoulas, Esq.

Pro se

10 N. Dearborn St., Suite 400

Chicago, IL 60602

(312) 836-1180

james@koutoulaslaw.com

Dated: August 6, 2026

## LOCAL RULE 3.01(g) CERTIFICATE

Pursuant to Local Rule 3.01(g), and as this Court directed at Doc. 621, the undersigned served this Motion and its attachments on counsel for Plaintiffs by electronic mail early on August 6, 2026, and telephoned counsel at 10:45 a.m. Eastern Time on August 6, 2026 in order to confer regarding the relief sought.

As Local Rule 3.01(g)(2)(B) requires, the undersigned states whether the parties agree on the resolution of all or part of the Motion. As of the filing of this Motion, counsel for Plaintiffs had not responded, and the parties have not agreed on the resolution of any part of it.

Pursuant to Local Rule 3.01(g)(3), the undersigned will continue to try diligently to confer with counsel for Plaintiffs for three days after filing, and will promptly file a supplemental certificate stating whether the parties have resolved all or part of the Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 6, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ James L. Koutoulas
James L. Koutoulas