Case 6:22-cv-00652-PGB-DCI    Document 692-2    Filed 08/06/26    Page 1 of 49 PageID 16659

9/25/2024                Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
Confidential

## Page 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

--------------------------X
ERIC DE FORD, et al.,      :
            Plaintiffs,  : CASE NO. 6:22-cv-652-PGB-DCI
    vs.                  : CLASS ACTION
JAMES KOUTOULAS, et al.,   :
            Defendants.  :
--------------------------X

CONFIDENTIAL
VIDEOTAPED DEPOSITION OF:
Rule 30(b)(6) Witness of
Defendant LGBCoin LTD d/b/a LGBCoin Foundation
Through
JAMES KOUTOULAS

Wednesday, September 25, 2024
10:20 a.m. - 12:55 p.m.

STENOGRAPHICALLY REPORTED BY:
NANCY E. PAULSEN, CRR, CRC, RPR, RSA

_____

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

## Page 2

APPEARANCES:

On Behalf of the Plaintiffs
    SEAN T. MASSON, ESQUIRE (via Zoom)
    Scott+Scott Attorneys at Law LLP
    230 Park Avenue, 24th Floor
    New York, New York  10169
    800-404-7770
    Smasson@scott-scott.com
On Behalf of the Plaintiffs
    MOLLIE CHADWICK, ESQUIRE (via Zoom)
    Scott+Scott Attorneys at Law LLP
    600 West Broadway, Suite 3300
    San Diego, California  92101
    800-332-2259
    Mchadwick@scott-scott.com
On Behalf of the Defendants
    NICOLE M. MARTELL, ESQUIRE
    TYLER L. MUTSCHLER, ESQUIRE
    Di Pietro Partners, PLLC
    901 East Las Olas Boulevard, Suite 202
    Fort Lauderdale, Florida  33301-2320
    954-712-3070
    Nicole@ddpalaw.com
    Tyler@ddpalaw.com

Also Present:
    Michael Massa, Videographer
    Billy Fahnert, Hotseater (via Zoom)
    London Balcita, Paralegal (via Zoom)
    Kamryn Brody, Intern (via Zoom)

## Page 3

I N D E X

Deponent                                    Page

James Koutoulas

DIRECT EXAMINATION BY MR. MASSON              6


E X H I B I T S

No.      Description                        Page

Exhibit 1    Plaintiffs  notice of rule      14
             30(b)(6) deposition of defendant
             LGBCoin LTD d/b/a LGBCoin
             Foundation........................

Exhibit 2    Koutoulas LinkedIn profile.........  9

Exhibit 3    Cover sheet of a class action for   23
             violation of securities laws in
             the Block.one class action.........

Exhibit 4    Form for LGBCoin, LTD, Bates       38
             number Koutoulas-PL 000274_001.....

Exhibit 5    Incorporation Pack  Cayman         42
             Foundation Company, LGBCoin
             Foundation........................

Exhibit 6    Email thread between Koutoulas      51
             and Piano starting at
             Koutoulas-PL 000280_001............

## Page 4

E X H I B I T S CONT

No.      Description                      Page

Exhibit 7    LGBCoin Agreement, Bates number      77
             03102023PRODKLE00278..............

Exhibit 8    LGBCoin Foundation Token          85
             Agreement, Bates number
             03102023PRODKLE00082..............

Exhibit 9    Mutual Referral Agreement, Bates     99
             number 03102023PRODKLE00014........

Exhibit 10   Parler Newsletter Sponsorship      112
             Agreement, Bates number
             03102023PRODKLE00019..............

1 (Pages 1 to 4)

9/25/2024                Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
Confidential

---

Page 5

(Proceedings commencing at 10:20 a.m.)

THE VIDEOGRAPHER:  Good morning, this is Tape Number 1 of the videotaped deposition of James Koutoulas taken by the plaintiffs in the matter of De Ford versus Koutoulas.  This is filed in the US District Court, Middle District of Florida, Orlando Division.

This deposition is held at 901 East Las Olas Boulevard, Suite 202, Fort Lauderdale, on September 25th, 2024.  The time is 10:20 a.m.  My name is Mike Massa, I am the legal videographer from Digital Evidence Group.  Our court reporter is in association with Digital Evidence Group, Nancy Paulsen.

Would counsel please state your appearance for the record, after which our court reporter will swear in the witness.

MR. MASSON:  Sean Masson for Scott+Scott Attorneys at Law on behalf of the plaintiffs.

MS. MARTELL:  Nicole Martell with Di Pietro Partners on behalf of the defendants James Koutoulas and LGBCoin, LTD.

---

Page 6

MR. MUTSCHLER:  Tyler Mutschler on behalf of the defendants James Koutoulas and LGBCoin, LTD.

THE COURT REPORTER:  Would you raise your right hand, please.

Do you swear or affirm the testimony you are about to give will be the truth and nothing but the truth?

THE WITNESS:  I do.

THE COURT REPORTER:  Thank you.

THEREUPON,

JAMES KOUTOULAS

was adduced as the deponent herein, and being first duly sworn on oath was questioned and stated as follows:

DIRECT EXAMINATION

BY MR. MASSON:

Q.  Good afternoon, Mr. Koutoulas.  Or good morning, sorry.  Thank you for coming in this morning.

I'm going to go over some road route -- road rules for this deposition.  I'm going to assume that you're familiar with a lot of this stuff.  Just for the record, I'm going to put it out there?

So this is a 30(b)(6) deposition.  I'll be

---

Page 7

asking you questions.  The default will be that you're to answer these questions unless your attorney advises you to not answer the question.

Do you understand that?

A.  Yes.

Q.  I'm sorry, could you please speak up?

A.  Yes.

Q.  Thank you.

Yeah, that's another thing, just under the circumstances, I would ask that you please just speak loudly and clearly so that the court reporter can take down an accurate record.  I have made a promise that I won't talk over you in an effort to keep a -- a clean record and make the court reporter's life easier.  I would ask that you do the same.

Is that all right?

A.  Sure.

Q.  Thank you.

Generally I take -- I like to take breaks every hour.  Given the time constraints here, there might not be that many of it.  But if at any point you need to take a break, that's totally fine, I would just

---

Page 8

ask that if there was a question pending, that you answer the question first before the break is taken.

Do you understand that?

A.  Yes.

Q.  Can you please state your name and address for the record?

A.  James Koutoulas.  I don't recall the address of the Foundation or LGBCoin, LTD.

Q.  And what is your address?

A.  1300 Monad Terrace, Unit 4B, Miami Beach, Florida, 33139.

Q.  Okay.  And, Mr. Koutoulas, before we begin the -- the examination, I just want to make one more point for the record.  This is a 30(b)(6) deposition.  Given the scheduling conflicts, we will be adjourning this at 1:00 p.m., and we can at a certain -- your counsel and I at a certain point later on can determine a mutually agreeable time to continue the deposition.

Mr. Koutoulas, how were you selected to be the corporate designee of LGB, LTD?

A.  I believe by Harneys Fiduciary.

Q.  I'm sorry, could you repeat that, please?

---

2 (Pages 5 to 8)

Page 9

A.  I believe it was by Harneys Fiduciary.

Q.  **Harney Fiduciary designated you as the corporate designee for this deposition?**

A.  Oh, I'm sorry, I thought you meant to be a director of LGBCoin, LTD.  By this, I designated myself.

Q.  **And who did you consult with to make this designation?**

A.  No one.

Q.  **Are you being compensated for your deposition testimony today?**

A.  I assume I will later following the conclusion of further litigation.

Q.  **You assume you will be compensated at the conclusion of this litigation for your testimony today?**

A.  Of other certain litigations.

Q.  **So I'm asking you if there is any compensation directly tied to your deposition testimony today.**

A.  I will be billing you at some point, yes.

MR. MASSON:  Billy, can you please pull up tab A?

BY MR. MASSON:

Q.  **Mr. Koutoulas, are you familiar with this**

Page 10

document?

A.  Yes.  And we have an objection to it as well.

MR. MASSON:  I'm sorry, could we go off the record for a second, please?

THE VIDEOGRAPHER:  Stand by, please.  One moment.

(Off the record from 10:26 a.m. to 10:27 a.m.)

THE VIDEOGRAPHER:  And we're back on the record, sir.

Tell him we're back on the record, I guess he couldn't hear.

THE WITNESS:  We are back on the record.

BY MR. MASSON:

Q.  **Mr. Koutoulas, I'll just reask the question.**

**Are you familiar with this document?**

A.  Yes.  And we have an objection to it.

Q.  **You have an objection to it?**

A.  LGBCoin, LTD, has an objection to it.  The timing is incorrect.

Q.  **Did you file objections and responses to this notice?**

MS. MARTELL:  We reached out to you to confer

Page 11

related to the time frame of November 1st, 2021, through May 1st, 2022.  So you guys are on notice that it's our position that this time frame is outside the position -- the time frame alleged in the complaint and in all discovery as the relevant class time frame.

We believe the time frame alleged in all of the prior documents in this litigation is November of 2021 through March of 2022.

BY MR. MASSON:

Q.  **Okay.  Mr. Koutoulas, you have seen this document; correct?**

A.  Yes.

Q.  **And are you familiar with the deposition topics listed in Schedule A?**

A.  Yes.

Q.  **And are you prepared to testify on those topics today?**

A.  Yes.

Q.  **Did you review any materials or rely on any materials to prepare for this deposition?**

A.  I briefly glanced at the incorporation

Page 12

documents.

Q.  **And did these documents refresh your recollection of the topics?**

A.  A little bit.

Q.  **Do you have personal knowledge of the facts and circumstances related to the topics you're testifying about today?**

A.  Yes.

Q.  **Are you authorized to bind LGB, LTD, with your testimony today?**

A.  Not that particular entity, but the entity that is noticed, yes.

Q.  **So as the 30(b)(6) designee for LGBT, you are not authorized to bind LGBT with your testimony today; is that your -- is that correct?**

A.  So you are giving a second incorrect entity name.  I would appreciate if you used the correct entity name.  Maybe read your own notice.

Q.  **I'm not sure what you're saying.  I'm asking if you're here as the LTD designee and if your testimony -- if you are authorized to bind them with your testimony.**

3  (Pages 9 to 12)

Page 13

A. Can you please read the entire entity name, because that is the third different way you have referred to the entity.

I am authorized on behalf of LGBCoin, LTD.

Q. Okay. So just -- just for the -- the -- the sake of this deposition, I'm just going to refer to that entity that you just described as LTD. Okay?

A. Sure.

Q. Are you authorized to bind LTD with your testimony today?

A. Yes.

Q. Are you qualified and prepared to testify fully and completely regarding the subjects in the deposition topics in Schedule A?

A. Yep.

Q. And do you understand that your testimony is under oath and subject to penalties for perjury?

A. Yes.

Q. Is there anything preventing you from testifying competently today?

A. No.

Q. Okay.

Page 14

MR. MASSON: I would like to move tab A into evidence as Exhibit 1.

Let's, for the naming convention, use Koutoulas 1, please.

MS. MARTELL: Sean, I'm limited in what I can see on the screen. Just so that we're clear, this is just a complete copy of the notice of deposition; correct?

MR. MASSON: Yes, correct. Let me give it a clean record.

Moving in as Koutoulas 1, this is Plaintiffs' Notice of the Rule 30(b)(6) Deposition.

THE WITNESS: Oh, and actually, we have another objection. So there was never a doing business of LGBCoin Foundation of this entity. That is wholly incorrect.

BY MR. MASSON:

Q. Okay. I think that if you have objections, these should be made in writing through your attorney. But for the rest of this deposition, why don't I just ask questions and you answer those questions. Is that okay?

Page 15

A. Sure. But your notice is incorrect, so.

MS. MARTELL: Sean, perhaps you can clear it up through your questions. But we just want to be clear that LGBCoin, LTD, is not the same as the LGBCoin Foundation.

MR. MASSON: Sure, and I'm going to -- I'm going to go through the various documents to kind of pull that out.

MS. MARTELL: Okay.

BY MR. MASSON:

Q. Before we get into that, though, let's discuss a little bit about your background, Mr. Koutoulas.

MR. MASSON: Billy, can you please pull up tab B?

BY MR. MASSON:

Q. Mr. Koutoulas, do you recognize this document?

A. Yep.

Q. Sorry, I didn't hear you say yeah.

A. I said yes.

Q. So for the record, this is a downloaded copy of the LinkedIn profile of the witness, James Koutoulas.

Mr. Koutoulas, did you create this profile?

Page 16

A. Mostly.

Q. You see -- let's just go through the education and work background real quickly. Please describe your educational background.

A. Sure.

I went to University of Florida, graduated with a finance degree. Went to Northwestern University School of Law, graduated with a JD.

Q. And we're really going to only focus on the -- the first or the most recent of your work experience.

Where do you presently work?

A. Several companies. So Typhon Capital Management; Koutoulas Law, LLC; JurisTrade.

Q. So you indicated Typhon Capital Management. And according to your LinkedIn profile, you are the chief executive officer of Typhon Capital; is that correct?

A. Yes.

Q. And what does Typhon Capital Management do?

A. It's a -- I guess you would call it hedge fund, manages managed accounts and pool investment vehicles and futures, equity, and cryptocurrency.

4 (Pages 13 to 16)

Page 17

Q.  Does Typhon Capital Management engage in cryptocurrency trading?

A.  Yes.

Q.  And which tokens are traded by Typhon Capital Management?

A.  Generally --

THE WITNESS:  That's fine.

A.  Generally the top ten largest non-privacy coins via market cap.  It has never traded LGBCoin or Lets Go.

BY MR. MASSON:

Q.  Just to be clear, when you say non-privacy, what do you mean by that?

A.  Coins such as Monero and Zcash.

Q.  And how long have you been a CEO of Typhon Capital Management?

A.  Since March 18th, 2008.

Q.  And that's to the present?

A.  Yes.

Q.  Uninterrupted?

A.  Yes.

Q.  And prior to -- strike that.

Page 18

Do you also presently hold a position as the chief executive officer of JurisTrade?

A.  Yes.

Q.  And according to your LinkedIn profile, "JurisTrade is a techn-" -- "technology platform giving sophisticated investors and litigators access to the first secondary marketplace for litigation finance."

Do you see that?

A.  Yes.

Q.  Could you explain in layman terms what that means?

A.  I think that description is in layman's terms.

Q.  What do you mean by access to the first secondary marketplace for litigation finance?

A.  I think it's pretty self-explanatory.

So, for example, if you got litigation finance on this case, and your funder realized that they wanted to refinance that, they could potentially use our technology to trade it.

MR. MASSON:  And, Billy, if you could go back to the "About" section.

BY MR. MASSON:

Page 19

Q.  In the first paragraph, the -- the third line, I'll read the whole sentence, but "Typhon is a deconstructed multi-strategy trading firm where managers can focus only on trading under an umbrella of unified operations, compliance, and risk management."

Do you see that?

A.  Yes.

Q.  Please elaborate on the compliance and risk management efforts at Typhon.

MS. MARTELL:  Objection, form.

A.  So Typhon's regulated by the National Futures Association, previously the SEC.  It's registered with the Cayman Island Monetary Authority and the UK Financial Conduct Authority.

BY MR. MASSON:

Q.  Then in the third paragraph, it states "Mr. Koutoulas is also a leader in investor protection. He cofounded the Commodity Customer Coalition, a nonprofit consumer advocacy organization."

Do you see that?

A.  Actually, it doesn't say that.  You misquoted it.

Page 20

MS. MARTELL:  By the way, I'm going to object to relevance.

A.  But, yes, I do see the paragraph that you misquoted.

BY MR. MASSON:

Q.  I'll reread the para- -- matter of fact, why don't you just read the first sentence of that para- -- the third paragraph, Mr. Koutoulas, please.

A.  "Mr. Koutoulas is also a leader in investor protection."

Q.  And the second sentence, please?

A.  "He cofounded the Commodity Customer Coalition, a nonprofit customer advocacy organization, in response to the MF Global bankruptcy."

Q.  And what is the Commodity Customer Coalition?

MS. MARTELL:  Objection, relevance.

A.  A nonprofit customer advocacy organization formed in response to the MF Global bankruptcy.

BY MR. MASSON:

Q.  What causes do you advocate for?

MS. MARTELL:  Objection.

A.  Customer protections in the commodity

5 (Pages 17 to 20)

Page 21

industry.

BY MR. MASSON:

Q.  And then in the fifth paragraph, the second sentence, would you please read that?

A.  "He is a member of the Illinois Bar, holds a Series 3, and is registered with UK FCA as a CF1 and CF30."

Q.  And could you please just -- let's pick up these terms.

What is a Series 3?

MS. MARTELL:  Objection, relevance.

A.  It's a license for acting as an associated person in the commodities industry.

BY MR. MASSON:

Q.  And what does the Series 3 allow one to do?

MS. MARTELL:  Objection, relevance.

A.  As I just stated, it allows someone to act as an associated person in the commodity industry.

BY MR. MASSON:

Q.  What is an associated person?

MS. MARTELL:  Objection, relevance.

A.  An associated person is someone who is able to

Page 22

do business in the commodities industry.

BY MR. MASSON:

Q.  And what is a CF1?

MS. MARTELL:  Objection, relevance.

A.  I believe that is a authorized supervisor for a UK registered firm.

BY MR. MASSON:

Q.  And then finally, what is a CF30?

MS. MARTELL:  Objection, relevance.

A.  I believe it's -- a CF30 is the designation to transact on behalf of customers or give them investment advice in the UK.

BY MR. MASSON:

Q.  And could you just tell us what the UK FCA means?

A.  The United --

MS. MARTELL:  Objection, relevance.

A.  The United Kingdom Financial Conduct Authority.

BY MR. MASSON:

Q.  So just to be clear, you had to register with the UK Financial Conduct Authority to get your CF1 and

Page 23

CF30; is that right?

A.  Yes.

MS. MARTELL:  Objection.

BY MR. MASSON:

Q.  And what regulatory body do you have to register for the Series 3?

A.  It's the CFTC by virtue of the NFA.

MR. MASSON:  Okay, Billy, I'm done with that one.

Oh, sorry.  Oh, I am done with it.  You can take it off the screen.

But I would like to move into evidence as Koutoulas Number 2 the LinkedIn profile.

Billy, can you pull up tab C, please?

BY MR. MASSON:

Q.  Mr. Koutoulas, do you recognize this document?

A.  Yes.

Q.  And what is it?

A.  It is a cover sheet of a class action for violation of securities laws in the Block.one class action.

Q.  And are you familiar with this document?

Page 24

A.  Generally.

Q.  And why are you familiar with it?

A.  I represented -- or I think I'm still counsel to Brendan Blumer, who is -- or, sorry, not Brendan Blumer, Crypto Assets Opportunity Fund.

MR. MASSON:  And, Billy, if you could go to the second -- or third-to-last PDF page.

There you go.

BY MR. MASSON:

Q.  This is the signature page of this complaint. Do you see the -- that is dated May 18th, 2020?

A.  Yep.

Q.  And are you a signatory to this document?

A.  Yes.

Q.  What was this lawsuit about, Mr. Koutoulas?

MS. MARTELL:  Objection, relevance.

A.  So Block.one conducted a $4 billion fraud, marketed that they were raising capital in a cryptocurrency offering where they would use the proceeds to build a world-class decentralized blockchain.

They did neither.  Instead, they booked all

6 (Pages 21 to 24)

9/25/2024            Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
Confidential

Page 25

4 billion in ICO proceeds as their own revenue, which has appreciated as high as about $13 billion, without directing any of those proceeds to the investors who were investing in that technology in blockchain development.

BY MR. MASSON:

Q. And what were the claims, the legal claims at issue in that case?

A. If you would like to scroll to the --

Q. Feel free, if you need to refresh your recollection, you're more than welcome to look through the document.

A. I don't have it in front of me, so.

Q. Okay.

MR. FAHNERT: I can give you --

MR. MASSON: I'll direct you -- Billy, I'll direct you to what page.

MR. FAHNERT: Sure.

BY MR. MASSON:

Q. So this is page 38.

A. Oh, actually, you know what, this -- none of this has anything to do with LGBCoin, LTD, so. It's not

Page 26

really the place to go through this.

Q. Mr. Koutoulas, I'm going to be asking you questions. If there is an objection, your attorney will raise that objection. But again, as I mentioned in the beginning, the default will be that you are to answer the questions unless you are directed otherwise.

Do you understand that?

A. Well, in a 30(b)(6) deposition, my role is to answer questions on behalf of the company. And LGBCoin, LTD, had nothing to do with this lawsuit.

MS. MARTELL: Sean, I did object to relevance. I would also add you're -- it's outside the scope of your notice. None of this notice pertains to Mr. Koutoulas personally.

MR. MASSON: Are you -- Nicole, are you directing him not to answer?

MS. MARTELL: I -- I voiced my objections.

MR. MASSON: Okay.

BY MR. MASSON:

Q. Then, Mr. Koutoulas, you are -- you are required to answer my questions at this deposition.

MR. MASSON: Billy, can you please -- thank

Page 27

you, you've got page 38.

BY MR. MASSON:

Q. Mr. Koutoulas, what's the first cause of action in the Block.one complaint?

MS. MARTELL: Objection, relevance, harassment, outside the scope of the subpoena notice.

A. Violations of section 5 and 12(a)(1) of the Securities Act.

BY MR. MASSON:

Q. And is this a claim for the sale of unregistered securities?

A. Yep.

Q. And that's the same claim at issue in this case; correct?

A. No.

Q. Is there a sale of unregistered securities claim at issue in the LGB case?

A. Not under these sections of the code.

Q. Mr. Koutoulas, as part of the Block.one complaint, did you go through a analysis of the Howey factors?

Page 28

A. Yes.

Q. And just for the record, what is your understanding of the Howey factors?

MS. MARTELL: I'm going to object, it calls for a legal conclusion.

BY MR. MASSON:

Q. You can answer.

A. I'm not giving you legal analysis in a deposition.

MR. MASSON: Billy, can you pull up page 28, please?

Pardon me, 29.

BY MR. MASSON:

Q. Do you see the subheading 10 at the bottom of the page?

A. Yes.

Q. And what is the title of that subheading?

A. "Defendants' failure to register the EOS securities violated section 5 and 12(a)(1) of the Securities Act."

Q. And then if you turn to the next page, do you see the subheading small (i)?

7 (Pages 25 to 28)

Case 6:22-cv-00652-PGB-DCI    Document 692-2    Filed 08/06/26    Page 8 of 49 PageID
16666

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
Confidential

Page 29

A.  Yep.

Q.  **What does that state?**

A.  "EOS token purchasers invested money."

Q.  **Is that one of the Howey factors, to your understanding?**

MS. MARTELL:  Objection, calls for a legal conclusion.

A.  It is a portion of one Howey factor.

MR. MASSON:  And then you can take down this, Billy, just the highlighted portion.

BY MR. MASSON:

Q.  **Then there is subsection (ii).  Do you see that at the bottom?**

A.  It's rather small.

MR. MASSON:  Billy, could you...

BY MR. MASSON:

Q.  **And what does that subheading state?**

A.  "EOS token purchasers invested into a common enterprise."

Q.  **And is that also one of the Howey factors?**

MS. MARTELL:  Objection, calls for a legal conclusion, relevance.

Page 30

A.  A portion of one, as is distinguished in paragraph 111 from your baseless claims.

MR. MASSON:  And then if you can turn to the next page, Billy, 31.

And if you could highlight subsection (iii).

BY MR. MASSON:

Q.  **And what does that subheading state, Mr. Koutoulas?**

A.  "EOS token purchasers expected to profit from owning EOS securities."

Q.  **And is that one of the Howey factors?**

MS. MARTELL:  Objection, calls for a legal conclusion, relevance.

A.  It is a subset of factors.  And again, paragraph 115 differentiates from your baseless claims.

MR. MASSON:  And then if you could go to page 33.  Subsection (i) -- (I've).

BY MR. MASSON:

Q.  **What does that state, Mr. Koutoulas?**

A.  "EOS token purchasers expected profits to be derived from defendants' efforts."

Q.  **Is that one of the Howey factors?**

Page 31

MS. MARTELL:  Objection, calls for a legal conclusion, relevance.

A.  It is also a subset of one of the Howey factors and also differentiated in paragraph 122 from your baseless claims.

BY MR. MASSON:

Q.  **So, Mr. Koutoulas, is it fair to say that section 10, "Defendants' failure to register the EOS securities violated section 5 and 12(a)(1) of the Securities Act"** --

MS. MARTELL:  Objection, calls for a legal conclusion, no relevance, and outside the scope of -- I'm sorry?

MR. MASSON:  I didn't even finish the question.

MS. MARTELL:  Go ahead.

THE WITNESS:  Sounded like you did.

MS. MARTELL:  It did.  But go ahead.

A.  Could you please repeat?

BY MR. MASSON:

Q.  **Sure.**

**Is it fair to say that section 10 of the**

Page 32

**Block.one complaint goes through an analysis of the Howey factors?**

MS. MARTELL:  Objection, relevance, calls for a legal conclusion, outside the scope of the notice.

A.  Sorry, where is section 10?  Section (iv) is on the screen.

BY MR. MASSON:

Q.  **Pages 29 through 35.  The four subheadings that we just discussed.**

A.  And could you repeat the question?

Q.  **Yes.**

**Is it fair to say that section 10 of the Block.one complaint goes through an analysis of the Howey factors?**

A.  Probably, to address claims different from your baseless claims.

Q.  **I'm sorry, is that a yes or a no?**

A.  I gave my answer.

Q.  **Okay.  I'm going to move to strike everything after "probably."**

A.  It was not asked as a yes-or-no question.

8 (Pages 29 to 32)

9/25/2024                Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
Confidential

Page 33

Q. Mr. Koutoulas, yes or no, is it fair to say that section 10 of the Block.one complaint goes through an analysis of the Howey factors?

A. Yes or --

MS. MARTELL: Objection.

A. Yes or no, I think if you want to ask me legal analysis, you should go get a motion to compel, because it wasn't in the notice of deposition, and these are different claims than your baseless claims.

MS. MARTELL: Sean, respectfully, we've been going for 40 minutes, and we've maybe asked one question that's related to this entity and this notice. He's going to be deposed at another time in another capacity, and if you want to notice it for all these topics, by all means.

But it's getting to the -- a little excessive at this point, and I may have to either shut it down or get a court order.

MR. MASSON: Maybe -- I'm going through the deposition, I'm going through his background and his understanding of the claims at issue here. Okay? If you don't like that, I'm sorry, but

Page 34

that's -- that is relevant to this claim, to the claims at issue, and his deposition in particular.

MS. MARTELL: All right, we have a difference of opinion. We don't need to argue here. This is a separate lawsuit. If we need to take it up with the court, we can. But respectfully, --

MR. MASSON: Okay.

MS. MARTELL: -- there is nothing in this notice that says he needed to be prepared to discuss his personal background or alternative litigation.

MR. MASSON: He is here as the corporate designee of a company that is selling unregistered securities.

MS. MARTELL: Allegedly.

THE WITNESS: First of all, that's not true, and as we provided, the entity that you noticed never even had a cryptocurrency wallet, let alone sold anything. Your claims are baseless, and an abuse-of-process suit is coming.

So if you want to keep racking up the hours and keep violating your ethical duties as a lawyer,

Page 35

go for it, but this isn't in the scope of the dep, and you're violating all sorts of ethical rules here, bro.

MR. MASSON: Billy, please pull up page 31. Let's start with 30.

BY MR. MASSON:

Q. Subsection 2, "EOS token purchasers invested in a common enterprise."

Do you see that?

A. Yes.

Q. Then on page 31, paragraph 112, the end of the -- beginning at the end of the first line states "Defendants' financial interests were aligned with those of investors because it had allocated 10 percent of EOS securities."

Do you see that?

MS. MARTELL: Sean, if we're going to just continue to go through litigation that had nothing to do with LGBCoin, LTD, I think we're going to end this and we're going to need to address it with the court.

MR. MASSON: It's my next -- get this answer

Page 36

and you'll see where I'm going.

A. I decline to answer anything else about Block.one. The complaint speaks for itself.

BY MR. MASSON:

Q. I'm asking if you see what it says.

A. I see you committing abuse of process.

Q. What's the allocation that you received of LGB tokens?

MS. MARTELL: Mr. Koutoulas or LGBCoin, LTD?

BY MR. MASSON:

Q. Let's start with LTD.

A. Zero.

Q. And what about you personally?

MS. MARTELL: Objection, relevance, outside the scope of the notice, harassment.

A. I -- I don't know.

BY MR. MASSON:

Q. Answer the question.

You don't know how many tokens you received?

A. No.

MR. MASSON: Would you highlight paragraph 113?

9 (Pages 33 to 36)

Page 37

BY MR. MASSON:

Q. States "EOS securities were also tradeable on online cryptocurrency exchanges, and all investors were affected equally if the demand and the price of EOS securities increased or decreased."

Do you see that?

A. Yes. But again, restated, we're not here -- this isn't an EOS deposition. It's an LGBCoin, LTD, deposition. You're wasting my time, you're racking up, you know, further damages for future litigation. And, you know, if you want to ask me LGBCoin, LTD, questions, go for it, but this isn't in the scope.

Q. I asked if you were competent to testify --

A. I'm very competent. I'm much more competent than you are, that is established and we can let the record show that, but I'm only asking [sic] questions about LGBCoin, LTD.

MS. MARTELL: Sean, we have already established through his testimony that LGBCoin, LTD, received no tokens related to this.

MR. MASSON: You know what, that's fine. I'll move on.

Page 38

Billy, let's please pull up tab D.

BY MR. MASSON:

Q. I'm going to represent that this is a document that was produced to plaintiffs from the defendant, and it's designated Bates number Koutoulas-PL 000274_001.

Are you familiar with this document, Mr. Koutoulas?

A. No.

MR. MASSON: Can you please turn to page 2? Actually...

A. Okay.

BY MR. MASSON:

Q. You've never seen this document before?

A. I didn't say that. I said I wasn't familiar with the previous page.

Q. Have you ever seen this document?

A. Probably.

Q. Did you fill it out?

A. Possibly.

Q. In part 1, section 1A, "Company name," what's the company that's listed there?

A. Appears to say LGBCoin, LTD.

Page 39

Q. And then below that in section 1C, it says, "Intended nature of the business activities."

Do you see that?

A. Yes.

Q. And there is a space where text has been filled in. What does that state?

A. "Other VASP or fintech."

Q. Apologies. I was referring to the section below, "Please give a full statement as to the intended activities of the company."

A. "The company will act as the supervisor to LGBCoin Foundation."

Q. And what is a supervisor of LGBCoin Foundation?

A. I believe that's a corporate governance concept whereas this company was the director or some similar role to LGBCoin Foundation.

Q. Do you see where it says the "Country of intended business activities" near the bottom?

A. Yep.

Q. And you listed United States; correct?

A. Again, I don't believe I filled out the form.

Page 40

But it does say United States.

Q. Okay. And turning to the next page, section 1D. It says, "Additional risk assessment questions."

Do you see that?

A. Yes.

Q. And then it asks "Will the company be involved in," 2, 3, 4.

Do you see that fourth box?

A. Yes.

Q. And it says, "The company will be involved in the creation or provision of any one of the following: Blockchain technology, the creation or issuance of virtual assets or tokens."

Do you see that?

A. Yes.

Q. And what box is checked on the risk -- the additional risk assessment questions? And I'm referring to number 4.

A. "No."

Q. So the company -- so according to this form, the company will not be involved in the creation or issuance of virtual assets or tokens; correct?

Page 41

A. That is correct.

Q. And then if you turn the page to section 1E. The previous -- that section, "Source of funds."

A. Um-hum (affirmatively).

Q. What is listed as the source of funds?

A. It says, "The cost of the company will be funded personally by James Koutoulas."

Q. And were there costs --

A. There was --

Q. -- to the company you personally funded?

A. I don't believe I personally funded anything. I believe my law firm advanced funding.

Q. "The cost of the company will be funded personally by James Koutoulas."

So just to be clear, you're -- you're testifying that you personally did not fund anything, but rather your law firm advanced funding?

A. I believe that is accurate. I don't have the ledger in front of me.

Q. And just to be clear, the law firm we're talking about is Koutoulas Law?

Page 42

A. Yes.

Q. And then if you could go to the next page, part 2, "Directors and officers."

A. Um-hum (affirmatively).

Q. The first one, who is listed as a director?

A. Me.

Q. Is there any other directors listed?

A. It does not appear so.

Q. Then if we turn the page to part 4, "Shareholdings," who is the first person listed there?

A. Me.

Q. And are there any other parties listed?

A. Not on this form.

MR. MASSON: Okay, I'm done with this for now, Billy.

I would like to move this in. Are we at Koutoulas 3?

MS. MARTELL: 4.

MR. FAHNERT: No, that would be 4.

MR. MASSON: And if you could pull up the next tab.

BY MR. MASSON:

Page 43

Q. And, Mr. Koutoulas, are you familiar with this document?

A. It just looks like a form.

Q. Have you seen it before?

A. Probably.

Q. Did you fill it out?

A. I don't believe so.

Q. Who do you believe filled it out?

A. I believe it was counsel at Harneys, which is why it was designated as privileged.

The last document --

Q. Counsel at Harneys?

A. -- was also privileged.

I'm sorry?

Q. Who is that?

A. Harneys is the LGBCoin, LTD's law firm. You can note it says harneysfiduciary.com at the bottom.

Q. In part 1, "Company details," section 1A, what's the company name listed?

A. LGBCoin Foundation.

Q. And then in -- in section 1D, "Intended nature of business activities," in that first box, it states

Page 44

"Please select one classification from the down-drop list that best describes the main intended activity."

And what's listed as the main intended activity?

A. "Financial technology developer - distributed ledger/blockchain/cryptographic encryption/fintech."

Q. And then it asks to give a full statement as to the intended activities of the company. "Please include details of any other legal entities in which the company will hold interests, i.e. shares, partnership interests, et cetera."

And then there is some text there that was filled in starting with "The company will."

Do you see that?

A. It's very small.

MR. MASSON: Billy, could you highlight that, please?

A. You want me to read the bottom box?

BY MR. MASSON:

Q. Yes, please.

A. "The company will receive donations of newly-minted and never-before-traded tokens and will use

11 (Pages 41 to 44)

Page 45

these tokens to fund their promotion, to provide liquidity in support of exchange listings and act as the legal entity in all relevant contractual agreements."

Q. Do you agree that this was the intended activities of the LGBCoin Foundation?

A. Generally.

Q. And just -- just to be clear, "The company will receive donations of newly-minted and never-before-traded tokens." Are those referring to LGBCoins?

A. Probably.

Q. Could they be referring to other coins?

A. Could.

Q. On the next page, at the very top, it's "Country of intended business activities," and it says the primary country is the United States.

Do you see that?

A. Yes.

Q. Do you agree that the US was the intended country for business activities?

A. Yes.

Q. Below that, section 1E states "Additional risk

Page 46

assessment questions."

Do you see that?

A. Um-hum (affirmatively).

Q. And then much like the document we just looked at for LTD, do you see number 4, it states the -- that "The company will be involved in the creation or provision of any one of the following: Blockchain technology, the creation or issuance of virtual assets or token," as the first two bullets.

Do you see that?

A. Yep.

Q. And which box is checked?

A. "No."

Q. So why is that checked "No" if the section 1D, "Intended nature of business activities," indicates blockchain? Do you know?

A. So the Foundation did not create any technology. And then again, the developer created the tokens, which were donated --

Q. But it says the creation or issuance; right?

A. Yeah. It didn't issue.

Q. Going to the next page.

Page 47

A. It also did not create an exchange.

Q. The first box at the top states "If you have answered yes to any of the questions above, please provide details."

And then it states "The formation costs of the company will be funded personally by James Koutoulas and thereafter by donations of the newly-minted and never-before-traded tokens received from donors."

Do you see that?

A. Yes.

Q. Did you personally fund the formation costs of the Foundation?

MS. MARTELL: Objection, relevance.

A. Well, I didn't. It was either my law firm or the trust. Unsure of when this form was dated if this is a final form or whatnot.

MS. MARTELL: Can we just -- you used the term "Foundation." Are you referencing Foundation or LTD?

THE WITNESS: Well, so this form is for the Foundation, which is not the LGBCoin, LTD.

MS. MARTELL: Okay.

Page 48

THE WITNESS: So this is a form for a nonparty.

MS. MARTELL: Sean, do you have that clear for the record?

MR. MASSON: Yeah.

Let's go to page 6.

BY MR. MASSON:

Q. This is the -- this is part 4, "Directors," and it provides the details of directors and two names.

Do you see that?

A. No.

MR. MASSON: Billy, you're going to have to -- yeah, there you go.

BY MR. MASSON:

Q. What's the first listed name of the director?

A. It's my name.

Q. And the second director?

A. It's LGBCoin, LTD.

Q. LTD is listed as a director of the Foundation; correct?

A. Yes.

If I recall, I was never personally a director

12 (Pages 45 to 48)

Page 49

of the Foundation, but that could be incorrect.

**Q.   But according to this form, you are listed as a director of the Foundation; correct?**

A.   Look, I don't know if this is a signed form, a completed form, a draft form.  You -- it's just --

**Q.   You're saying this form --**

A.   It's just a privileged form that, you know, should not be admissible anyway, but -- and whatever draft that you're looking at, my name is on there.

**Q.   Have you produced the final form of these documents in response to plaintiffs' discovery requests?**

A.   I'm not sure.  Everything was produced, privilege logged, and then what was what I believe to be erroneously compelled was produced.

**Q.   Okay.  We'll -- we'll table your document preservation efforts for later on, I'm just going to finish up on this --**

A.   It's not document preservation.  It's if you have a draft, I don't know.

**Q.   Well, you are here as the 30(b)(6) deposition designee; correct?**

A.   Yeah.  And you've done nothing to establish

Page 50

the timing of this.  The bottom of the document says "Effective September 2021," so the form could be from anywhere, you know, from that date throughout formation and organization.

MS. MARTELL:  Well, and just recall, this is an LGBCoin Foundation form, not an LGBCoin, LTD, form.

BY MR. MASSON:

**Q.   Part 4, "Directors," lists LGBCoin, LTD, as a director; correct?**

A.   Yep.

**Q.   Part 5, "Supervisors."**

**Do you see that?**

A.   Yep.

**Q.   And then if you go to the next page, who is the listed supervisor?**

A.   Me.

**Q.   So according to this document, you are the supervisor, director, and member of the Foundation; is that correct?**

A.   According to this document, yes.

I'm pretty sure if you check the Cayman

Page 51

reg- -- Cayman registry, that I am not personally a member of LGBCoin Foundation, however.

MR. MASSON:  So let's move this one -- Billy, let's move this one into evidence as, I guess, Koutoulas 5.

And then if you could pull up tab E.1.

MS. MARTELL:  Sean, just so we preserve the record, we object to this form as not being relevant to LTD since it was a Foundation form, just so that we have a clear record.

MR. MASSON:  Objection noted.

MS. MARTELL:  Thanks.

BY MR. MASSON:

**Q.   I am going to represent that this is a email that was produced by defendant Koutoulas to plaintiffs as a part of this litigation.  And this is a email thread starting at Koutoulas-PL 000280_001.**

THE WITNESS:  Privileged.

MS. MARTELL:  Hmm?

THE WITNESS:  Privileged.

BY MR. MASSON:

**Q.   And the topmost email is from James Koutoulas**

Page 52

**dated January 4th, 2022, to Marc Piano at Harneys.**

**Do you see that?**

MS. MARTELL:  Yes.

MR. MASSON:  And, Billy, can you give the witness a chance to review this document?

MS. MARTELL:  And, Sean, we have claimed privilege as to this document and the confidentiality needs to be maintained, especially if it's attached to the deposition.

MR. MASSON:  Understood.

MR. FAHNERT:  Yeah, just direct where you want to go.

MR. MASSON:  I want to make sure he's had a chance to look at this.

THE WITNESS:  I saw part of it, but now it's zoomed out, so.

MR. FAHNERT:  Yeah, I'm just saying there is three pages.  Where would you like me to start?

BY MR. MASSON:

**Q.   Are you done with reviewing the first page, Mr. Koutoulas?**

A.   Could you put it back up?

13 (Pages 49 to 52)

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.     James Koutoulas 30(b)(6)
Confidential

Page 53

Yep.

Q. Do you recognize this email?

A. Vaguely.

Q. Do you -- strike that.

MR. MASSON: Turn to the last page, please, Billy.

Yeah, exactly.

BY MR. MASSON:

Q. So the first email in this thread is dated **December 16, 2021, from Marc Piano at Harneys to you, James Koutoulas.**

Do you see that?

A. No.

MR. MASSON: Can you highlight the "from," "sent," "to," "cc," "subject" line?

A. That I see, but I don't see an invoice directed to me.

BY MR. MASSON:

Q. **"To: James Koutoulas at James"** -- **"james@koutoulaslaw.com."**

Do you see that?

A. Yep.

Page 54

Q. **So that is addressed to you; correct?**

A. Yes.

Q. **And in this -- in the body of the email, it states "Engagement letter, retainer invoice, KYC," in bolded letters.**

Do you see those?

A. Yeah.

Q. **For KYC, it asks, "Can you please either, A, complete the attached individual compliance questionnaire and return it to me together with a proof of identity; or, B, complete a Harneys app submission, no separate proof of identity required."**

Do you see that?

A. Yes.

Q. **Which one of these did you provide to Harneys?**

A. Umm, I don't remember.

Q. **Is there something that you could look at that would refresh your recollection?**

A. Umm, no. Because the app submission, it's just a -- on their website. If you have a questionnaire, then I probably did the questionnaire.

Q. **So do you recall having done it through the**

Page 55

**Harneys app submission --**

A. I --

Q. **-- as opposed to the --**

A. I don't recall.

Q. **And then see -- in the KYC section, the line beginning "To accept the payments," do you see that?**

MR. MASSON: Billy, could you just highlight that?

BY MR. MASSON:

Q. **Do you see where I'm directing your attention to, Mr. Koutoulas?**

A. Yep.

Q. **It says, "To accept the payments in USD and LGBCoin, please also complete and return" --**

A. Sorry, you did not quote that properly.

THE COURT REPORTER: You need to wait until he finishes. I can't get both of you at the same time.

THE WITNESS: Yeah, but he didn't read correctly.

A. So you want to try again?

BY MR. MASSON:

Page 56

Q. **Mr. Koutoulas, could you please read the sentence beginning "To accept the payments in USD"?**

A. "To accept the payments in USDC and LGBCoin, please also complete and return the attached source of funds and source of wealth declaration forms."

Q. **And did you provide the source of funds and source of wealth declaration forms to Harneys?**

A. I would assume so.

Q. **Did you produce those as a part of this litigation?**

A. Anything that I had was loaded into e-discovery and anything that was compelled was produced.

Still maintain these are privileged documents, and if it comes to that, we'll handle accordingly.

Q. **So are there additional privileged documents that you've withheld regarding the source of funds and source of wealth declaration forms as a part of your Harneys application?**

A. I don't know. We submitted a privilege log and produced what was compelled, which we believe to be wrongly compelled.

14 (Pages 53 to 56)

9/25/2024                Eric De Ford, et al. v. James Koutoulas, et al.      James Koutoulas 30(b)(6)
Confidential

Page 57

MR. MASSON:  The next line, Billy.

BY MR. MASSON:

Q.  Starts "For the source of funds."  Can you please read that sentence, Mr. Koutoulas?

A.  "For the source of funds document, please tick 'gift' and when returning it, please indicate."

Q.  Then (a) and (b), please.

A.  "(a), the wallet address the LGB is held at and confirm that these were gifted to you and by whom."

And "(b), the wallet address that USDC is held at or the name of the exchange and your user name."

Q.  Does LTD maintain a list of wallet addresses that hold LGBCoin?

A.  No.  LGBCoin does not have any wallets.

Q.  And does LTD maintain any wallet address for USDC?

A.  LGBCoin, LTD, does not have wallets for anything.

Q.  Then the next highlighted section says, "Foundation company incorporation form."

Do you see that?

A.  Yes.

Page 58

Q.  It says, "Attached  I have filled out some of it.  A few points."

Do you see that?

A.  Yes.

Q.  The second bullet point, "Part 3 on page 5, members," states "This can be you and then you will immediately resign, leaving the company 'ownerless.'"

Do you see that?

A.  Yes.

Q.  Why would it be a good thing for the company to be ownerless?

MS. MARTELL:  Objection, relevance, form.

A.  I have no idea.

BY MR. MASSON:

Q.  The next bullet states "Part 4 on page 6, directors:  The company needs at least two directors.  This can be you and the company we will incorporate, but you may prefer to have a separate company or individual as the second director.  Let me know which approach you prefer and we'll also need KYC on the second individual or company."

Do you see that?

Page 59

A.  Yes.

Q.  Who were the directors --

MS. MARTELL:  Objection.

BY MR. MASSON:

Q.  -- of the --

MS. MARTELL:  Objection, relevance, outside the scope of the notice.  This all pertains to the Foundation.

A.  Yeah, again, this was all privileged attorney work product.  Everybody on this email is counsel.

But the directors varied over time.

BY MR. MASSON:

Q.  Is LTD one of the directors?

A.  I believe so.

Q.  Are you personally the other director?

MS. MARTELL:  Objection, privileged, relevance, outside the scope.

A.  Yeah, again, this has changed I think multiple times, if I recall.

BY MR. MASSON:

Q.  Have you ever not been a director?

A.  So --

Page 60

MS. MARTELL:  A director of what?

THE WITNESS:  Yeah.

MS. MARTELL:  If you could clarify.

BY MR. MASSON:

Q.  A director of the Foundation.

MS. MARTELL:  Objection, relevance, outside the scope.

A.  Yeah, I mean, again, this is a 30(b)(6) for LGBCoin, LTD.  So me personally is not in the scope, neither is the Foundation.  You failed to provide a valid subpoena or notice for a Foundation deposition, and you're not going to backdoor one here.

BY MR. MASSON:

Q.  Mr. Koutoulas, I'm asking you questions about LTD as its -- in its role as a director of the Foundation.

A.  Okay.

Q.  Do you understand that?

A.  You're doing a little more than that.

Q.  I would appreciate it if you just answer the question asked.  If you --

A.  I would appreciate it if you stick to a

15 (Pages 57 to 60)

Page 61

30(b)(6) deposition.

Q.  The fourth bullet point states "Part 5 on page 7, supervisors:  This will be the company we incorporate, as a supervisor can also be a director."

Do you see that?

A.  Yes.

Q.  Has anyone other than yourself individually been considered as a -- to be a director of LTD?

A.  I believe so.

Q.  And who was that?

A.  So pursuant to a subsequent sale -- settlement agreement, Alex Giuliani, James Heckman, and Scott Walker were all supposed to become directors.  I believe Alex completed the process.  And then I believe Heckman and Walker stopped after your meritless lawsuit was filed.

And I believe also Harneys Fiduciary was a director.

Q.  Mr. Koutoulas, are you aware that this action has survived a motion to dismiss?

A.  Erroneously.

Q.  So you don't like how the judge ruled against

Page 62

you, do you?

MS. MARTELL:  Objection.

A.  The judge failed to consider your multiple violations of federal law, including the PSLRA, and the fact that you have no standing to bring any of your claims, that you do not have a federal-question jurisdiction due to the lack of standing and, accordingly, don't have standing to bring your unjust enrichment claim, and that you do not have the threshold to bring a federal class action on that claim.

And you are aware of that.  We've made you notice of that.  And further charges will be forthcoming.

BY MR. MASSON:

Q.  The judge didn't rule any of that, did he?

A.  That's why we have appeal courts.

And actually, I believe he did rule that you violated the PSLRA and that sanctions will be considered at the conclusion of the litigation.

And you know, as a supposed experienced class action attorney, that you committed multiple bright-line violations of the PSLRA.

Page 63

Q.  I'm going to move to strike everything after "That's why we have appeal courts."

MS. MARTELL:  His answer is his answer.

MR. MASSON:  If you could pull up the second page of this email, Billy.

BY MR. MASSON:

Q.  At the very top it's an email Marc Piano dated December 21, 2021, to James Koutoulas.  It states "Hi, James.  Thanks for the documents.  A few questions below."

Do you see that?

A.  Yes.

And I'll also remind you that this is privileged attorney work product.

Q.  And what is the purpose of this reminder?

A.  You do with it what you will.

Q.  The second bullet point, in bold it says, "Selfies."

Do you see that?

A.  Yes.

Q.  And then the second sentence -- or I'll just read the whole thing.

Page 64

"Selfies:  Can you please take a selfie with the wallet app showing the address the LGB tokens are at?  This demonstrates control of the account, which keeps our compliance team happy."

Do you see that?

A.  Yes.

Q.  Did you provide selfies with the wallet app showing the addresses for LGB tokens?

A.  Probably.

Q.  Do you agree that that demonstrates control of the account?

A.  Yes.

MS. MARTELL:  Objection.  I believe this is vague and could potentially be irrelevant without further clarification and lack of foundation.

Which entity are you referencing here?

MR. MASSON:  I am referencing the entities being discussed in this email.

MS. MARTELL:  Shall we establish --

BY MR. MASSON:

Q.  The third bullet point says, "Source of funds."  And Mr. Piano states "Looks good.  I'll

9/25/2024        Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
Confidential

Page 65

cross-reference it to" -- and then gives a URL link to the Jeffrey Carter Substack article.

Do you see that?

A. Yep.

Q. So does this mean that the source of funds for the Foundation is traced back to Jeffrey Carter?

MS. MARTELL: Objection, vague, irrelevant, outside the scope, privileged, work product.

A. Yeah, and I honestly don't know.

BY MR. MASSON:

Q. So in the next bullet point, "Source of wealth," Mr. Piano says again, "Looks good. Will include links to the TCM and Koutoulas law sites as well as your selfie showing token holdings."

Do you see that?

A. Yep.

Q. Did you produce the selfie showing token holdings that you provided to Harneys?

A. If I had it and it was compelled, then yes.

Q. Then do you see it says "Next steps," and the first bullet point is "Payment." It states "Payment: I will get compliance sign-off on the above, including the

Page 66

wallet selfies. We have the wallet set up to receive the LGBCoin. I'll move this as quick as possibly so that the transfers can happen Thursday or Friday."

Do you see that?

A. Um-hum (affirmatively).

Q. How were you paying Harneys for their -- their work in incorporating the Foundation and LTD?

MS. MARTELL: Objection, compound question, lack of foundation, privileged, lack of --

MR. MASSON: I'll withdraw. I get it.

MS. MARTELL: As to Foundation, that's irrelevant.

Okay. Withdrawn. Go ahead.

BY MR. MASSON:

Q. Do you know how Harneys was paid for their services?

A. I don't recall.

MS. MARTELL: On behalf of which entity?

MR. MASSON: I'm referring to the entities being discussed in this email.

MS. MARTELL: Okay, so --

MR. MASSON: Both the Foundation and LTD.

Page 67

MS. MARTELL: So I'll object to the extent that you're requesting information related to the Foundation.

A. So I don't recall, --

BY MR. MASSON:

Q. Where -- "We have set up" --

A. -- it may have come --

Q. "We have the wallet set up to receive the LGBCoin."

Is it fair to say that Harneys was being paid at least in part in LGB tokens?

A. Yes.

Q. Do you know what percentage of the payment came in the form of LGB tokens?

A. I don't recall.

Q. Is there a document memorializing that?

A. I don't remember.

Q. If there was, where would that document be located?

MS. MARTELL: Objection, lack of foundation, relevance. And to the extent that this is applying to the Foundation, again, it's outside the scope

Page 68

and irrelevant to this deposition.

THE WITNESS: Privileged.

MS. MARTELL: Hmm?

THE WITNESS: And privileged.

MS. MARTELL: It is also privileged information.

A. Yeah, I don't know, maybe Harneys.

BY MR. MASSON:

Q. The bullet point says "Analysis: The analysis should be with you early January."

Do you see that?

A. Yep.

Q. What analysis is Mr. Piano referring to?

A. I don't know.

Q. The next bullet point says, "Incorporation: I will start the internal processes for risk committee approval to incorporate the Foundation company and exempted company and provide registered office and secretarial services, with a view to incorporate these in early to mid-January."

Do you see that?

A. Yes.

www.DigitalEvidenceGroup.com    Digital Evidence Group C'rt 2024        202-232-0646

9/25/2024                 Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
                                         Confidential

Page 69

Q. Exempted company, is that the LTD?

A. I don't know.

Q. The fourth bullet point, KYC, are you familiar with the term "KYC"?

A. Yes.

Q. What does that mean?

A. Know your customer.

Q. The bullet point says, "KYC: Please can you provide me with the names and contact details of the individuals and entities who will be donating the tokens."

Do you see that?

A. Yes.

Q. Did you, in fact, provide him with the name and contact details of individuals and entities who will be donating tokens?

A. Probably.

MR. MASSON: If you can go to the first page.

The -- the second string.

BY MR. MASSON:

Q. This is an email later in the thread from January 4th, again from Mr. Piano to James Koutoulas.

Page 70

It states "Hi, James. We have the green light for payment and incorporation. I'm getting the USDC and LGBCoin addresses and will send these to you ASAP when received. Can you please confirm that the USDC for payment of disbursements will come from the same wallet as where the LGBCoin is kept?"

Do you see that?

A. Yes.

Q. So does this mean that Harneys was receiving LGBCoin and USD as payment for their services?

A. Yes.

MS. MARTELL: Objection, privileged, lack of foundation, outside the scope of this deposition and notice to the extent that this applies to the Foundation. It's also vague as we haven't established what these coins would be in payment for, LTD or Found- -- the Foundation.

BY MR. MASSON:

Q. And is it also -- is this also asking for confirmation that the USDC and LGB tokens are kept in the same wallet?

MS. MARTELL: Objection, lack of relevance,

Page 71

lack of foundation, privileged, outside the scope.

A. Probably.

BY MR. MASSON:

Q. Then it says, the next paragraph, "Given timings, we can incorporate the Foundation and supervisor on an express basis, i.e. within 24 hours of submitting documents to the registry, for additional US$988 per entity. Would you like us to do this?"

Do you see that?

A. Yep.

Q. And then at the topmost email, your response, you state: "Wonderful. Confirmed same wallet."

Do you see that?

A. Yep.

Q. But you are confirming that the USDC and LGBCoin that you are paying Harneys is from the same wallet; right?

A. No.

MS. MARTELL: Objection.

A. Oh, yeah.

THE WITNESS: It doesn't matter.

MS. MARTELL: Okay, go ahead.

Page 72

A. Yes.

BY MR. MASSON:

Q. Just to be clear, was your answer yes to that question?

A. Yes.

Q. And then in the second line, you state: "Confirmed additional 988 okay. Cc'ing in James Heckman from team as well."

Do you see that?

A. Yep.

Q. So in this, you're stating that James Heckman is a part of your team?

A. He was in the process of becoming a director.

MR. MASSON: So, Nicole, this is a good organic time to take a break. We've been kind of going for a bit now. Do -- is this good?

MS. MARTELL: Sure.

THE VIDEOGRAPHER: Stand by, please. One moment.

We'll go off the record at 11:45.

(Recess taken.)

THE VIDEOGRAPHER: And we're back on the

18 (Pages 69 to 72)

9/25/2024        Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
Confidential

Page 73

record at 12 noon.

BY MR. MASSON:

Q. So, Mr. Koutoulas, I just want to drill down a bit on the corporate structure that we're talking about here. And I'm going to lay out what I think it is, and if I'm incorrect, please correct me.

Actually, strike all of that.

For the corporate structure, does LGB Foundation sit at the top?

A. No.

Q. What entity does?

A. LGBCoin, LTD.

Q. LTD sits at the top?

A. Yep.

Q. And then below that would be the Foundation?

A. Yep.

Q. Are there any other entities in the corporate structure line?

A. There was a VVI subsidiary of the Foundation.

Did not exist during your proposed class period.

Q. And when was that subsidiary created?

Page 74

A. Outside of the class period.

Q. Do you have an idea on the exact --

A. No.

Q. -- month and date?

What was the name of the subsidiary?

MS. MARTELL: Objection, relevance, outside the scope.

A. Yeah, it's not really a 30(b)(6)-appropriate question.

BY MR. MASSON:

Q. One of the deposition topics was the corporate structure, Mr. Koutoulas. I'm just trying to understand what the structure is.

A. Yeah, I don't remember the name anyway.

Q. Are you able to testify to that?

A. I don't remember the name of it. It's something -- something to the effect of LGBCoin Foundation VVI or LetsGoBrandon.com Foundation VVI.

Q. Mr. Koutoulas, we've also discussed at several points today the various roles that you've held, whether it's a supervisor, a member, or a director.

Do you recall that testimony?

Page 75

A. Yeah.

Q. How do you keep track of which role you were operating in at any given point?

A. Depends on the function.

Q. Would you please elaborate?

A. So if I'm acting as legal counsel, then that's going to be through my capacity at, you know, Koutoulas Law where I was trustee of the trust. If there's a compliance filing, you know, for an entity, then we're making it in that role.

It's not super complicated.

Q. So if there is a com- -- if there is a compliance filing for an entity, are you saying, like, when you have to file something?

A. Um-hum (affirmatively).

Q. Okay. The -- the entity receiving the filing, how does the -- how do they know whether you're operating as the trustee or as the supervisor or as the director?

A. Well, as for me, I'm an authorized person on all of them, so if I call my lawyers and say we have a filing for this, then it's filed under the appropriate

Page 76

entity.

Q. So is it fair to say that you kind of move in and out of these roles pretty fluidly?

MS. MARTELL: Objection, mischaracterization of testimony.

A. No.

BY MR. MASSON:

Q. No?

So you have a rigid stop when you're operating as a trustee to then operate as a member?

A. Asked and answered.

Q. When you are communicating with entities outside of LGB, do you announce yourself in the role that you are operating under?

MS. MARTELL: Objection, lack of foundation, vague.

A. I don't understand the question.

BY MR. MASSON:

Q. When you contacted Harneys, did you say, "I am James Koutoulas, the trustee of LGB"?

A. I don't believe I ever made that particular statement. I was introduced to Harneys.

www.DigitalEvidenceGroup.com    Digital Evidence Group C'rt 2024        202-232-0646

Page 77

MS. MARTELL: I'm going to object to the extent that any discussions with Harneys would be privileged attorney-client information.

MR. MASSON: I'm not going to go into those. Could we pull up tab G, please, Billy?

I'm going to, for the record, represent that this is the -- this is a document produced from defendant to the plaintiffs as a part of this litigation. It is titled "LGBCoin Agreement." And the Bates number is 03102023PRODKLE00278.

BY MR. MASSON:

**Q. Mr. Koutoulas, are you familiar with this document?**

A. Yeah.

**Q. And what is it?**

A. Alex Mascioli wrote this up, I believe it was an appendix to the sponsorship agreement with BMS Motorsports.

**Q. And this is dated November 5th -- 15th -- strike that.**

**This is dated November 15th, 2021; correct?**

A. Yep.

Page 78

Q. And what is -- what's -- what is this agreement agreeing to?

A. It's basically related to how Alex Mascioli wanted to allocate proceeds from the LGBCoin Foundation sponsorship agreement between him and members of BMS.

But again, it's outside the scope of this deposition.

Yeah, I think it would help if my counsel could actually, like, see what exhibits you're putting up.

MS. MARTELL: Is this the one that was dated November 21st, 2021?

THE WITNESS: This is November 15th, but...

BY MR. MASSON:

Q. I'm just looking -- I'm just looking at the top, where it says "entered into 15th." There is a date on the back, which we could get into in a second.

A. Regardless, this was prior to the incorporation of LGBCoin, LTD, and beyond the scope of the deposition.

Q. Deposition topic number 13 is "Your role in the solicitation and sale of LGBCoin tokens from

Page 79

**January 21 to the present, including the identities, location, and description of the promotional and marketing activities engaged in by you or on your behalf."**

A. Yeah, and none of this -- I assume "you" means the top -- the party of the deposition, which is LGBCoin, LTD. And --

**Q. Or on your behalf.**

A. This wasn't on its behalf, it was on a subsidiary's behalf. You could serve a subpoena on the subsidiary.

**Q. Which subsidiary, Mr. Koutoulas?**

A. LGBCoin Foundation, which was at this point in -- in process of formation and this was a -- done pursuant to the trust agreement and not LGBCoin, LTD.

**Q. Second line --**

A. No, I'm not answering -- it's not within the scope. So you could move on.

**Q. I'm not going to move on.**

A. Okay, well, then, we could leave. You can ask on the scope or we could leave, it's up to you.

MR. MASSON: Nicole, are you directing your

Page 80

witness not to answer these questions?

MS. MARTELL: Sean, I have objected based for lack of foundation. I think there needs to be an establishment that this is related to LGBCoin, LTD, and falls within the scope of the 30(b)(6).

BY MR. MASSON:

**Q. I'm saying we discussed that topic 13 is on your behalf, on behalf of the Foundation. LTD is a director of the Foundation.**

MS. MARTELL: Well, I think that's a mischaracterization of the testimony, because Mr. Koutoulas did just state on the record that this was not done on behalf of LTD. So I think that we need to establish that foundation to go down this road.

**Q. No, I'm not saying it's on behalf of LTD. It's on behalf --**

A. It's not, bro. LGBCoin, LTD, had no benefit from the Foundation as a supervisory entity.

**Q. I'm going to move to strike everything from "It's not, bro," to "supervisory entity."**

**The top of this agreement, the second line**

20 (Pages 77 to 80)

Case 6:22-cv-00652-PGB-DCI Document 692-2 Filed 08/06/26 Page 21 of 49 PageID 16679

9/25/2024     Eric De Ford, et al. v. James Koutoulas, et al.     James Koutoulas 30(b)(6)
Confidential

Page 81

states --

A. I'm not answering, so you can move on.

MS. MARTELL: Let's let him ask -- ask the question, we'll object.

Go ahead, ask the question.

BY MR. MASSON:

Q. "In exchange for certain marketing services, including primary sponsorship of the number 68 Xfinity NASCAR and NASCAR driver Brandon Brown during the 2022 season."

Do you see that?

A. No.

MR. MASSON: Billy, can you please highlight that second sentence?

BY MR. MASSON:

Q. Now do you see it?

A. Yeah.

And I still object that this is not in the scope of your 30(b)(6) dep, so.

I think it all speaks for yourself, but it is not in the scope of this dep. So I would appreciate it if you would stop wasting my time.

Page 82

Q. And I move to strike everything after "Yeah."

MS. MARTELL: Do you have a question that relates us back to LGBCoin, LTD?

MR. MASSON: All of my questions relate back to LTD to the extent he is serving as the director for the Foundation.

MS. MARTELL: But you -- respectfully, you haven't established that they were -- that it was acting in a supervisory capacity in -- in doing anything related to this, though.

THE WITNESS: And it didn't exist at the time, bro.

MS. MARTELL: So if it didn't exist, it couldn't have acted on anybody's behalf.

THE WITNESS: There was no trust for LGBCoin, LTD.

BY MR. MASSON:

Q. Mr. Koutoulas, were you operating on behalf of any LGB entity before they were created?

A. Yes, the trust.

Q. "In exchange for certain marketing services," do you see that?

Page 83

A. Uh-huh (affirmatively).

Q. Does this agreement in front of you indicate that Alex Mascioli is being delivered LGB tokens in exchange for certain marketing services, including the primary sponsorship of Brandon Brown?

MS. MARTELL: Objection, lack of relevance, lack of foundation to the extent this has not established that there is a direct relation to LGBCoin, LTD.

We also -- or a time frame where LGBCoin, LTD, existed.

MR. MASSON: Same thing you gave me. You're giving way too long speaking objections. Just give the objection and the basis, please.

THE WITNESS: Yeah, but hers are valid, unlike yours.

MS. MARTELL: All right, at the same time, I -- you continued, you stated what you needed to on the record.

A. Listen, you could read the document, but this has no relevance to LGBCoin, LTD.

BY MR. MASSON:

Page 84

Q. Who signed on behalf of the Foundation?

A. Um-hum (affirmatively).

MR. MASSON: Will you turn the page?

BY MR. MASSON:

Q. Is that you?

A. What?

Q. Who was the signatory on behalf of LGB?

A. There is a signatory for the trustee for LGBCoin, which is me.

But again, this is not relevant to LGBCoin, LTD. So I am going to stop -- I am going to stop answering any more questions on that, even though the answers are obvious.

MR. MASSON: Are you directing your client to not answer my questions, Nicole?

MS. MARTELL: I haven't directed anything. I have placed my objections on the record. He has established that this has nothing to do with LGBCoin, LTD.

MR. MASSON: Okay.

A. You have no standing with LGBCoin, LTD, you have no privity with LGBCoin, LTD. LGBCoin, LTD --

21 (Pages 81 to 84)

Page 85

BY MR. MASSON:

Q. Please ask that you let me ask a question before you respond.

THE COURT REPORTER: We missed your -- what you said because he was speaking.

MR. MASSON: I understand. That's the problem.

BY MR. MASSON:

Q. It's dated 11/21/2021; correct?

A. Yeah.

MR. MASSON: Can you pull up tab I, please?

For the record, this is a document titled -- produced to the plaintiffs from defendants, document is titled "LGBCoin Foundation Token Agreement," Bates number 03102023PRODKEL -- KLE00082.

BY MR. MASSON:

Q. Are you familiar with this document, Mr. Koutoulas?

MS. MARTELL: We object to the extent that this is a Foundation document and not relevant or related to the LGBCoin, LTD.

Page 86

A. What she said.

BY MR. MASSON:

Q. Are you familiar with this document?

A. Not in my capacity as LGBCoin, LTD, director.

Q. Who is allowed to make decisions for the LGBCoin Foundation?

A. Not within the scope of this dep.

Q. Who is allowed to make decisions for LTD?

A. Myself, Alex Giuliani, at times James Heckman, at times Scott Walker, at times Alex Mascioli, at times Rick Latona.

Q. Who is Alex Giuliani?

A. She's a woman. What do you mean who is she?

Q. You just listed her as somebody allowed to make decisions for LTD. I'm asking you who she is.

A. She is a woman.

Do you want to ask a more specific question?

Q. What is Alex Giuliani's role within the LGB Foundation?

A. It's not within the scope of this dep.

Q. What is Alex Giuliani's role within LTD?

A. She was a director for a period of time.

Page 87

Q. And what was that period of time?

A. I don't recall the specific dates, but around January 2022 to probably, you know, late 2022.

Q. And in late 2022, did she sever her connections with the LTD entity?

A. As a formal director.

Q. Why was that?

A. You can ask her that.

Q. It was a voluntary departure?

A. Yep.

Q. And who is James Heckman?

A. He was another buyer of the coin and, you know, involved heavily on the charity side and the EOS side.

Q. Did Mr. Heckman provide any marketing services in relation to LGBCoin?

A. I don't believe marketing, but he owns RoundTable Media and wrote press releases, arranged interviews, things of that nature.

He arranged our donations to Dr. Robert Malone, to other doctors that were advocating against COVID mandates.

Page 88

Q. And what about Scott Walker?

A. He was one of the first people to buy the coin. He is heavily involved in cryptocurrency. A lot of his friends also bought the coin and provided technical services and things of that nature.

Q. But Scott Walker was not engaged to do any marketing activities on behalf of LGB; correct?

MS. MARTELL: Objection, vague.

Can you clarify, LGB what?

BY MR. MASSON:

Q. LTD.

A. Yeah, LTD conducted no marketing activity.

Q. Who did?

A. I'm sorry?

Q. You said Mr. Davis?

A. What? I -- we have a miscommunication going on.

I said LGBCoin, LTD, did not conduct any marketing or anything. It provided supervision to LGBCoin Foundation, and that is it.

Q. Okay. Can you please explain what that supervision of the Foundation entails?

22 (Pages 85 to 88)

9/25/2024                Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
Confidential

Page 89

A. So I'm not a Cayman attorney, but the way our attorneys described to me in a privileged way, and again, maintaining the privilege of this --

MS. MARTELL: I would object to the extent this is going to divulge attorney-client privileged information.

A. Yeah, I actually probably shouldn't answer that, yeah.

But, basically, it was created at the advice of our Cayman Island -- our attorneys as being required for having a Cayman crypto foundation.

BY MR. MASSON:

Q. Okay. And just to be clear, I'm not asking you to divulge any privileged communications with your attorneys. I am only asking what supervisory activities LTD was engaged in.

A. Just in terms of Cayman Island compliance. It did not have any day-to-day role in the Foundation, did not own any cryptocurrency, is not -- it's not an operating business.

Q. So it's just essentially a -- a placeholder, a corporate entity structure?

Page 90

A. I don't want to call it placeholder.

MS. MARTELL: Objection.

A. It's a governance entity.

BY MR. MASSON:

Q. And who controls LTD?

A. Currently me.

Q. And I'm turning back to -- this is --

A. And I -- actually, could I expand that answer?

Q. No, thank you.

MR. MASSON: Are we on Exhibit 6?

MS. MARTELL: 7.

MR. FAHNERT: No, actually, 8.

MR. MASSON: 8, okay.

MR. FAHNERT: Sorry about that.

BY MR. MASSON:

Q. Mr. Koutoulas, do you recognize this document?

A. Not in my capacity of LGBCoin, LTD.

Q. Do you recognize it in your individual capacity?

A. I'm not here in my individual capacity.

You want to ask me more stuff about LGBCoin, LTD, I'm happy to answer.

Page 91

Q. LTD is a director of the Foundation; correct?

A. Yep.

Q. And the Foundation is entering into a contract with David Gillels; correct? According to this document?

A. Maybe.

Q. Is David Gillels Pyro?

A. I don't know.

Q. Do you know who Pyro is?

A. I believe I've met him a few times.

Q. Do you know his real name?

A. No.

Q. Are you sure about that?

A. No.

It could be him, I just am not sure.

Q. No, you're not sure; or no, you don't know his real name?

A. I have not seen his driver's license or any documents like that. It might be this guy, I've never --

Q. Has he told you that his name is Dave Gillels?

A. No.

Page 92

Q. So you don't know who this is at all?

A. I mean, it might be Pyro, but again, we're here for an LGBCoin, LTD, dep. LGBCoin, LTD, did not sign off in Foundation contracts, it did not have any day-to-day operating role.

Q. He was a supervisor of the Foundation; correct?

A. Yes.

Q. At the lower half of this document, it says, "Whereas, David Gillels is a moderator and supervisor of developers."

Do you see that?

A. I don't see those exact words, no.

MS. MARTELL: We maintain our same objection to the document that it's irrelevant and outside the scope as it does not pertain to LGBCoin, LTD.

BY MR. MASSON:

Q. Do you know what a moderator is?

A. Yep.

Q. What is it?

A. It's someone who generally is deleting spam and providing technical support within a chat room.

23 (Pages 89 to 92)

Page 93

Q.  Is the leading spam, did you say?

A.  Deleting spam.

Q.  Deleting, deleting spam, okay.  Got it.

And what -- what exactly is spam?

A.  I think that's pretty obvious.

Q.  Please explain your understanding for the jury.

A.  Spam is irrelevant communications, phishing attempts, inappropriate content, things of that nature.

Q.  And are you familiar with the term "developer" in the cryptocurrency context?

A.  Yep.

Q.  And what is your understanding of that term?

A.  It's a very broad term.  It could be as simple as meaning a standard contract for GitHub or writing code related to a contract, writing code relating to a protocol, project managing, either of those things.

It's a very broad term.

Q.  And would developers be the parties responsible for creating locking mechanisms within the code?

A.  I'm going to object that that's hypothetical.

Page 94

MS. MARTELL:  Object to lack of foundation.

BY MR. MASSON:

Q.  Mr. Koutoulas, do you know what a locking mechanism is?

A.  I know of many locking mechanisms.

Q.  In the cryptocurrency context?

A.  Uh, yes.

Q.  Do you know if the LGBCoins were locked via any sort of locking mechanism at any point?

A.  Umm, I believe they were.

Q.  And at what point was a locking mechanism implemented?

A.  So again, this is not within the scope of this deposition, but I believe at some point the liquidity pool was locked.

Q.  The liquidity pool was not, though, locked at the inception; correct?

A.  I don't believe so.

Q.  Then on that -- back to the document, point 1, "Party obligations," states "During the term outlined below, recipient will use its best efforts to moderate the LGBCoin Telegram and Discord channel, manage

Page 95

CoinMarketCap and CoinGecko listings and ongoing maintenance, develop slash manage developers helping with the LGB ecosystem in such projects such as staking, bonding, et cetera."

Do you see that?

A.  Again, you could read me documents, but this is not within the scope of LGBCoin, LTD.

MS. MARTELL:  We maintain our objection that this document's irrelevant for purposes of LGBCoin, LTD.

BY MR. MASSON:

Q.  Mr. Koutoulas, are you familiar with Telegram?

A.  Yes.

Q.  What is the LGBCoin Telegram channel?

A.  I don't know.

There probably is not one anymore.

Q.  Did LGBCoin previously have a Telegram channel?

A.  Yes.

Q.  Were there multiple channels created?

MS. MARTELL:  Objection.

A.  Possibly.

Page 96

BY MR. MASSON:

Q.  And what is Discord?

A.  A different chat app.

Q.  Was there an LGBCoin Discord channel?

A.  Probably.

Q.  What is the LGB ecosystem?

MS. MARTELL:  Objection, lack of foundation, relevance.

A.  Just anything related to LGBCoin.  None of the things in this contract were actually created.

BY MR. MASSON:

Q.  What does staking mean?

Sorry.  Do you know what staking means?

A.  Somewhat.

Q.  What is your understanding of that term in the cryptocurrencies context?

A.  I believe it allows a user to lend or otherwise encumber a cryptocurrency in exchange for rewards of some type.

Q.  Do you know what bonding means in the cryptocurrency context?

A.  I don't.

24 (Pages 93 to 96)

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.     James Koutoulas 30(b)(6)
Confidential

Page 97

Q. And if you turn to the next page, at the top, under "Compensation."

Do you see that it states that Mr. Gillels will receive 5 trillion tokens?

A. It's, yeah, 5 trillion LGBT -- or LGB2 tokens, which were never released.

Q. "Recipient shall be entitled to 5 trillion LGB2 tokens." Is that right?

A. Yep.

Q. So this is the -- the second version of the tokens after the fork; correct?

A. So LGB2 -- LGB2 was never released. There was an illegal hostile hard fork done by BMS, and that coin was Lets Go.

Q. And just to be clear, you say the hard fork done by BB. Who is BB?

A. Sorry, BMS, Brandonbilt Motorsports and their representative.

Q. Apologies. There is still a little bit of, like, difficulty hearing you. I'm not asking you to repeat yourself just to just do that.

MS. MARTELL: His microphone just fell off.

Page 98

We just reattached it. You should be fine now.

MR. MASSON: Okay.

And then just go to the second-last page.

BY MR. MASSON:

Q. Who is the authorized signer for the LGBCoin Foundation listed?

A. Me.

Q. And that's dated when?

A. February 7th, 2022.

Q. That -- do you see below that David Gillels?

A. Yep.

Q. Who is the email listed?

A. Pyrobraindave@gmail.

Q. Does that refresh your recollection on whether Mr. Gillels is Pyro?

A. That sounds -- assuming that's his real name.

Q. So is it a yes?

A. Assuming that's his real name, then yeah, it sounds like it.

Q. All right. Let's move this one into evidence as Koutoulas 8 or 9.

MS. MARTELL: We maintain our objection that

Page 99

this document is irrelevant for purposes of LGBCoin, LTD.

MR. FAHNERT: It will be Exhibit 8.

MR. MASSON: Okay, let's pull up tab J, and we'll mark this as Exhibit 9.

BY MR. MASSON:

Q. And for the record, this is a document that was produced to plaintiffs from the defendants in response to discovery requests, and it is titled "Mutual Referral Agreement" with the Bates number 03102023PRODKLE00014.

A. Yeah, and it's --

Q. Are you familiar with this document, Mr. Koutoulas?

A. Not in my capacity as LTD.

Q. And what about in your individual capacity?

MS. MARTELL: Objection.

A. It doesn't matter.

BY MR. MASSON:

Q. Have you never seen this document before?

A. I've probably seen it, but it's not in the scope of the dep.

Page 100

Q. Well, you earlier indicated that you move in and out of your positions.

Do you recall that?

MS. MARTELL: Objection, that's a mischaracterization --

THE WITNESS: A mischaracterization.

MS. MARTELL: -- of testimony.

A. You want to ask any LTD questions?

BY MR. MASSON:

Q. I will.

So this is a Mutual Referral Agreement. What is your understanding of the term "mutual referral"?

A. I don't know.

Q. You don't know?

A. No.

MR. MASSON: Could we go to the last page, please?

BY MR. MASSON:

Q. Who is the signatory for the Foundation?

A. Me.

Again, it's not an LTD document.

Q. Who is the signatory?

25 (Pages 97 to 100)

Page 101

MS. MARTELL: Objection, relevance.

A. Look, you have documents. If you want to use the documents, be my guest, but we're on a 30(b)(6) deposition for LTD.

BY MR. MASSON:

Q. I'm just --

A. Well, I'm not answering questions on it.

Q. Who is the signatory?

MS. MARTELL: Objection, relevance.

A. You can see who it is, but LGBCoin, LTD, is not involved.

BY MR. MASSON:

Q. Well, since you're reluctant to say it, I will.

A. I'm not reluctant.

MS. MARTELL: I'll move to strike your testimony.

BY MR. MASSON:

Q. I think you -- correct?

MS. MARTELL: It's not on the record.

BY MR. MASSON:

Q. You're listed as the signatory; correct?

Page 102

A. Yeah.

Q. Do you normally sign documents that you don't understand the meaning of their terms?

A. No.

And again --

Q. So I asked --

A. -- LGBCoin, LTD, does not have knowledge of this document.

And you said you weren't going to talk over me.

So if you want to ask me about documents that are signed by LGBCoin, LTD, I am happy to, but this is not in the scope of the dep.

MR. MASSON: Are you instructing him not to answer, Nicole?

MS. MARTELL: I have placed my objection on the record. And we're getting close to needing to just get a protective order.

BY MR. MASSON:

Q. Mr. Koutoulas, you are obligated to answer my questions. Whether you like the questions or not or whether you believe they are beyond the scope or

Page 103

irrelevant is irrelevant.

MS. MARTELL: To the extent --

THE WITNESS: Get a court order.

MS. MARTELL: To the extent your questions are becoming harassing, argumentative, and at this point a complete assault on my client when you designated a specific 30(b)(6), we may just need to move for a protective order and reconvene when we have a court order.

I would like to avoid that. My client is here willingly and has prepared to answer the questions that were designated in the scope of this notice, which I have yet to see more than one answered -- or asked at this point.

BY MR. MASSON:

Q. And the scope of this notice as topic 13, which is the promotional activities engaged by the Foundation and on its behalf, which includes LTD --

A. The LTD --

MS. MARTELL: No, no, hold on.

A. -- has not engaged in any promotional --

MS. MARTELL: Hold on. Hold on.

Page 104

Number 13 is designated within the scope of LGBCoin, LTD, not the Foundation. They are distinct. And solicitation on sale on behalf of LGBCoin tokens, Mr. Koutoulas -- if you want to ask what LGBCoin, LTD, did to participate in solicitation and sale of LGBCoins during your reference time frame, take his answer.

But --

MR. MASSON: I am asking.

MS. MARTELL: But you're asking about the Foundation, which is distinct.

MR. MASSON: Okay, Nicole, Nicole, let me ask my questions. Make your objections. We only have a limited time left. I want to get through some, and I want to honor the -- the agreements to end at 1:00 so you can handle your stuff. Okay?

MS. MARTELL: I just want you to ask the questions that we're here for him to answer so that we can do this properly.

MR. MASSON: I'm going to. Let's do it.

MS. MARTELL: Let's do it.

THE WITNESS: I'm excited.

26 (Pages 101 to 104)

9/25/2024   Eric De Ford, et al. v. James Koutoulas, et al.   James Koutoulas 30(b)(6)
Confidential

Page 105

MR. MASSON: Billy, would you mind going to the first page, please?

A. Again, I'm not discussing this document. It's not an LTD document, so.

BY MR. MASSON:

Q. You're not -- you're refusing to discuss a document that you're the signatory for?

A. LGBCoin, LTD, is not the signatory. It's an LGBCoin, LTD, deposition. In bad faith, you falsely designated a d/b/a in your notice. That d/b/a is not accurate.

I'm not answering it. Properly subpoena the Foundation, and I'll ask -- I'll answer whatever you want.

Q. Strike the entire answer as nonresponsive.

A. I thought it was very responsive.

Q. Mr. Koutoulas, I am trying to understand the corporate structure that you had set up for the Foundation, the LTD, and whatever --

A. So ask those questions. This document has nothing to do with corporate structure. I am -- ask me to describe the corporate structure, I'll describe it at

Page 106

length.

You're not doing that.

You're trying to backdoor a Foundation dep in bad faith, and I'm not going to enable it.

Q. I'm being very kind and not -- and letting you speak, but please do the same for me. Okay?

MS. MARTELL: Go ahead. What's your next question?

BY MR. MASSON:

Q. Do you know who Arbour Entertainment is?

A. Not in my capacity in LGBCoin, LTD.

Q. Do you normally sign documents with entities who you don't know?

A. LGBCoin, LTD, did not sign this document.

Q. And in this mutual referral agreement, it states in section 1 the party obligations.

A. There are no party obligations for LGBCoin, LTD.

MS. MARTELL: Let him finish. You can answer.

BY MR. MASSON:

Q. Do you see that on this page, Mr. Koutoulas?

A. I don't see any party obligations for LGBCoin,

Page 107

LTD.

Q. I'm asking questions about this doc- -- this document.

A. And I am answering that --

MS. MARTELL: Objecting.

A. -- there are no party obligations for LGBCoin, LTD.

MS. MARTELL: We object to the relevance of this document as it is outside the scope of LGBCoin, LTD's purview.

BY MR. MASSON:

Q. "Party obligations" states that "AE," Arbour Entertainment, "will use its best efforts to make introductions of high net worth [sic] individuals, event hosts, sponsors, and channel partners for potential cryptocurrency endorsement, branding, marketing, partnerships, and other potential Foundation relationships to the Foundation."

Do you see that?

A. I don't see any reference to LGBCoin, LTD.

Q. What is the benefit of being introduced to high net worth individuals?

Page 108

MS. MARTELL: Objection, relevance, lack of foundation.

A. There is no benefit for LGBCoin, LTD.

BY MR. MASSON:

Q. Is there a benefit to the Foundation?

A. Maybe. Ask that in a Foundation dep.

Q. In its capacity as a director understand what the benefit to the Foundation would be?

MS. MARTELL: Objection, relevance, lack of foundation.

A. Ask your question again.

BY MR. MASSON:

Q. In its capacity as a director, does LTD understand what the benefit to the Foundation would be for being introduced to high net worth individuals?

A. The Foundation as a nonprofit sought to and continues to seek supporters of our First Amendment advocacy programs and charitable giving. High net worths are generally more able to donate for such causes.

THE WITNESS: Water?

BY MR. MASSON:

27 (Pages 105 to 108)

9/25/2024                    Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
Confidential

Page 109

Q. And why would it -- strike that.

In its capacity as a director, does LTD understand what benefit the Foundation would receive from potential cryptocurrency endorsement, branding, marketing, partnerships, or other potential Foundation relationships?

A. Generally the same as the previous answer.

Q. So what is the benefit to the Foundation for branding, marketing, partnerships?

MS. MARTELL: Objection, lack of relevance and foundation.

A. Yeah, I mean, generally, the Foundation sought to provide advocacy and donate a portion of sales to charities.

BY MR. MASSON:

Q. When you say advocacy, is that what you mean by -- do you mean branding and marketing?

A. No.

Q. Okay. So let me reask my question, then.

What is the benefit to the Foundation for entering into branding and/or marketing relationships?

A. I think you should ask the Foundation that.

Page 110

Q. In its capacitor as a director of the Foundation, does LTD know what the benefit to the Foundation for entering into branding or marketing relationships is?

A. As I've said twice, increasing the awareness of the coin and the associated movement in charitable giving with a portion of sales.

Included in charitable giving is also political giving.

MR. MASSON: If you can go to the second-to-last page, Billy, please.

BY MR. MASSON:

Q. So point 5 says "Consideration, A, introduction/referral fee: As compensation for the obligations listed above in paragraph 1, and subject to the terms and conditions of this agreement, EA shall be entitled to a referral fee 20 percent of the sum of all net revenues paid by the Foundation to each introduced party subsequently engaged by the Foundation."

Can you explain what that means?

MS. MARTELL: Objection, relevance.

A. Not in my capacity with LTD.

Page 111

BY MR. MASSON:

Q. In your -- in its capacity as a director of the Foundation, does LTD understand what this section means?

A. Yes.

Q. Will you please explain it?

A. Explain what?

Q. What your understanding of what this section means.

A. Generally, if AE were to introduce someone that worked with the Foundation, which I believe it never did, then it would receive a portion of revenues in consideration for that referral.

Q. So could you just give an example with some -- some numbers to -- so we can understand what that means?

A. No, because not -- no examples ever occurred.

Q. I'm not asking whether it occurred. I'm really just trying to understand the mechanics of what this referral fee encompasses.

A. It's a hypothetical question, and I'm not going to answer.

MR. MASSON: Let's go to tab K. I'll move

Page 112

this in as Koutoulas 9. And let's pull up tab K as Exhibit -- as Koutoulas 10, please.

MS. MARTELL: And we object to Exhibit 9 as not related to LB -- LGBCoin, LTD.

MR. MASSON: I'm going to assume that you have the same objection -- objections for this document, but I'm going to go ahead with the instruction. This is a document --

MS. MARTELL: I don't even know what document this is yet, so I'll note it if I do.

MR. MASSON: This is a document produced to plaintiffs from defendants, and it is titled "Parler Newsletter Sponsorship Agreement" with the Bates number 03102023PRODKLE00019.

BY MR. MASSON:

Q. Mr. Koutoulas, have you seen this document before?

A. Yes.

Q. And in your capacity as a dir- -- as a director -- strike that.

In its capacity as a director, what is LTD's understanding of what this agreement is?

28 (Pages 109 to 112)

Page 113

A.  The Foundation entered into the sponsorship agreement in order to widely correct the record of NASCAR's defamation, defamation by implication, and illegal sponsorship revocation of the Foundation's sponsorship agreement with NASCAR.

MS. MARTELL:  Sean, I was just able to pull up the document on my end, and we do object to the extent that this is related to the Foundation as a party, not LGBCoin, LTD.

MR. MASSON:  I -- I thought you would.

BY MR. MASSON:

Q.  So, Mr. Koutoulas, in the --

MR. MASSON:  Just for the record, if you could turn to the last page, Billy.

BY MR. MASSON:

Q.  The sponsor signatory is LGBCoin Foundation; correct?

A.  Yeah.

Q.  And this is dated January 31st, 2022; correct?

A.  Yep.

MR. MASSON:  Go back to the first page, Billy, please.

Page 114

BY MR. MASSON:

Q.  In the -- right after the address of the Foundation, there is a section "Sponsors scope and services."

MR. MASSON:  Can you highlight that, please?

BY MR. MASSON:

Q.  That first paragraph states "Parler agrees to showcase sponsor in three locations in the sponsored newsletter:  Top logo placement, short-form callout text with image, and closing slogan, all linked to appropriate landing pages."

Do you see that?

A.  Yes.

Q.  In its capacity as a director of the Foundation, what is LTD's understanding of the services to be provided under this agreement?

A.  I already explained that.  But again, it was to send a newsletter blast to all or materially all Parler subscribers after NASCAR's tortious conduct.

Q.  Do you know what top logo placement means?

A.  I -- not exactly.  I assume it's -- the coin logo was near the top of the newsletter.

Page 115

Q.  And do you know what the short-form callout text with image means?

A.  Not really.

Q.  Same question, do you know what a closing slogan means?

A.  I assume that's words at the bottom.

Q.  Do you know whether this agreement was ever implemented?

A.  Yes.

Q.  Was it?

A.  Yes.

MR. MASSON:  So, Nicole, I'm done with this document.  Let me just -- let -- let's move this in as Koutoulas 10 or 11, whatever it is.

THE WITNESS:  Shouldn't the exhibits be LGBCoin 10 or LTD 10?

MR. MASSON:  I don't mind if you want to -- yeah, actually --

MS. MARTELL:  Make it clear.

MR. MASSON:  You know what, that is a good --

MS. MARTELL:  Yeah.

MR. MASSON:  To distinguish, can we just mark

Page 116

them all as LTD?

MS. MARTELL:  That's fine.

MR. MASSON:  Okay.

MS. MARTELL:  And we maintain our objection to this document for the record.

MR. MASSON:  So just to close this up, we are going to adjourn this deposition due to the previous scheduling issues we've -- we've agreed to.  And we will leave the deposition open.  And everything, unless otherwise stated, should be remain -- treated as confidential.

MS. MARTELL:  Yes.  And just make sure so the court reporter knows, there are documents that are marked confidential that are part of the exhibits.  And if anything is ordered or used, we need to make sure that that is all considered confidential in the record.

MR. MASSON:  Yes.  Agreed.

MS. MARTELL:  Okay.

THE VIDEOGRAPHER:  Shall we go off the record?

MS. MARTELL:  Sean?

MR. MASSON:  Yeah.

29 (Pages 113 to 116)

9/25/2024        Eric De Ford, et al. v. James Koutoulas, et al.      James Koutoulas 30(b)(6)
Confidential

```
                                              Page 117
```

MS. MARTELL: Off the record? The videographer was asking.

MR. MASSON: That's fine.

THE VIDEOGRAPHER: And we'll go off -- I'm sorry.

Off the record at 12:50.

12:55, sorry.

(This deposition was concluded for the day at 12:55 p.m.)

```
                                              Page 118
```

CERTIFICATE OF REPORTER

STATE OF FLORIDA          )
COUNTY OF BROWARD          )

I, Nancy E. Paulsen, CRR, CRC, RPR, RSA, certify that I was authorized to and did stenographically report the deposition of Rule 30(b)(6) Witness of Defendant LGBCoin LTD d/b/a LGBCoin Foundation Through James Koutoulas and that the foregoing pages are a true and complete record of my stenographic notes taken during said deposition.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

Dated this 26th day of September, 2024.

_____
Nancy E. Paulsen, CRR, CRC, RPR, FPR

```
                                              Page 119
```

James Koutoulas 30(b)(6), c/o
Di Pietro Partners, PLLC
901 East Las Olas Boulevard, Suite 202
Fort Lauderdale, Florida  33301-2320

Case: Eric De Ford, et al. v. James Koutoulas, et al.
Date of deposition: September 25, 2024
Deponent: James Koutoulas 30(b)(6)

Please be advised that the transcript in the above referenced matter is now complete and ready for signature. The deponent may come to this office to sign the transcript, a copy may be purchased for the witness to review and sign, or the deponent and/or counsel may waive the option of signing. Please advise us of the option selected.

Please forward the errata sheet and the original signed signature page to counsel noticing the deposition, noting the applicable time period allowed for such by the governing Rules of Procedure. If you have any questions, please do not hesitate to call our office at (202)-232-0646.

Sincerely,

Digital Evidence Group

Copyright 2024 Digital Evidence Group
Copying is forbidden, including electronically, absent express written consent.

```
                                              Page 120
```

Digital Evidence Group, L.L.C.
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

SIGNATURE PAGE
Case: Eric De Ford, et al. v. James Koutoulas, et al.
Witness Name: James Koutoulas 30(b)(6)
Deposition Date: September 25, 2024

I do hereby acknowledge that I have read and examined the foregoing pages of the transcript of my deposition and that:

(Check appropriate box):
( ) The same is a true, correct and complete transcription of the answers given by me to the questions therein recorded.
( ) Except for the changes noted in the attached Errata Sheet, the same is a true, correct and complete transcription of the answers given by me to the questions therein recorded.

_____        _____
DATE                WITNESS SIGNATURE

_____        _____
DATE                NOTARY

30 (Pages 117 to 120)

```
                                      Page 121
```

Digital Evidence Group, LLC

1730 M Street, NW, Suite 812

Washington, D.C.  20036

(202)232-0646

ERRATA SHEET

Case: Eric De Ford, et al. v. James Koutoulas, et al.

Witness Name: James Koutoulas 30(b)(6)

Deposition Date: September 25, 2024

Page No.   Line No.     Change

_____   _____

Signature                 Date

Case 6:22-cv-00652-PGB-DCI    Document 692-2    Filed 08/06/26    Page 32 of 49 PageID 16690

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.          James Koutoulas 30(b)(6)
Confidential

Page 1

**A**

**a.m** 1:15 5:1,10 10:7,7
**able** 21:22 74:15 108:19 113:6
**absent** 119:21
**abuse** 36:6
**abuse-of-proc...** 34:20
**accept** 55:6,13 56:2,3
**access** 18:6,13
**account** 64:3,11
**accounts** 16:21
**accurate** 7:12 41:19 105:11
**acknowledge** 120:10
**act** 21:17 27:9 28:20 31:10 39:11 45:2
**acted** 82:14
**acting** 21:12 75:6 82:9
**action** 1:7 3:12 3:14 23:19,21 27:4 61:19 62:10,21 118:13,14
**activities** 39:2 39:10,19 43:22 44:8 45:5,15 45:20 46:15 79:3 88:7 89:15 103:17
**activity** 44:2,4 88:12
**add** 26:12
**additional** 40:3 40:17 45:22 56:16 71:7 72:7
**address** 8:5,7,9 32:16 35:20 57:8,10,15 64:2 114:2

**addressed** 54:1
**addresses** 57:12 64:8 70:3
**adduced** 6:12
**adjourn** 116:7
**adjourning** 8:15
**admissible** 49:8
**advanced** 41:13 41:18
**advice** 22:12 89:9
**advise** 119:14
**advised** 119:10
**advises** 7:2
**advocacy** 19:19 20:13,17 108:18 109:13 109:16
**advocate** 20:20
**advocating** 87:21
**AE** 107:12 111:10
**affirm** 6:5
**affirmatively** 41:5 42:4 46:3 66:5 75:15 83:1 84:2
**afternoon** 6:16
**agree** 45:4,19 64:10
**agreeable** 8:18
**agreed** 116:8,18
**agreeing** 78:2
**agreement** 4:3,6 4:8,11 61:12 77:9,17 78:2,5 79:15 80:22 83:2 85:15 99:10 100:11 106:15 110:16 112:13,22 113:2,5 114:16 115:7
**agreements** 45:3 104:15

**agrees** 114:7
**ahead** 31:16,18 66:13 71:22 81:5 106:7 112:7
**al** 1:5,8 119:6,6 120:7,7 121:8 121:8
**Alex** 61:12,14 77:16 78:3 83:3 86:9,10 86:12,18,21
**aligned** 35:13
**alleged** 11:4,7
**Allegedly** 34:15
**allocate** 78:4
**allocated** 35:14
**allocation** 36:7
**allow** 21:15
**allowed** 86:5,8 86:14 119:16
**allows** 21:17 96:17
**alternative** 34:10
**Amendment** 108:17
**analysis** 27:21 28:8 32:1,14 33:3,7 68:9,9 68:13
**and/or** 109:21 119:14
**announce** 76:13
**answer** 7:2,3 8:2 14:21 26:5,9 26:16,21 28:7 32:19 35:22 36:2,18 60:20 63:3,3 72:3 80:1 84:15 89:7 90:8,22 102:15,20 103:11 104:7 104:18 105:13 105:15 106:19

109:7 111:21
**answered** 47:3 76:11 103:13
**answering** 79:17 81:2 84:12 101:7 105:12 107:4
**answers** 84:13 120:13,16
**anybody's** 82:14
**anymore** 95:16
**anyway** 49:8 74:14
**Apologies** 39:8 97:19
**app** 54:11,19 55:1 64:2,7 96:3
**appeal** 62:16 63:2
**appear** 42:8
**appearance** 5:15
**APPEARANC...** 2:1
**Appears** 38:22
**appendix** 77:17
**applicable** 119:16
**application** 56:19
**applies** 70:14
**applying** 67:21
**appreciate** 12:17 60:20,22 81:21
**appreciated** 25:2
**approach** 58:19
**appropriate** 75:22 114:11 120:12
**approval** 68:17
**Arbour** 106:10 107:12
**argue** 34:4
**argumentative** 103:5

**arranged** 87:18 87:20
**article** 65:2
**ASAP** 70:3
**asked** 32:22 33:11 37:13 60:21 76:11 102:6 103:14
**asking** 7:1 9:16 12:19 26:2 36:5 37:16 60:14 70:19 86:15 89:13,15 97:20 104:9,10 107:2 111:17 117:2
**asks** 40:6 44:7 54:8
**assault** 103:6
**assessment** 40:3 40:17 46:1
**assets** 24:5 40:13 40:22 46:8
**associated** 21:12 21:18,20,22 110:6
**association** 5:13 19:12
**assume** 6:19 9:11,13 56:8 79:5 112:5 114:21 115:6
**assuming** 98:16 98:18
**attached** 52:9 54:9 56:4 58:1 120:15
**attempts** 93:9
**attention** 55:10
**attorney** 7:2 14:19 26:3 59:9 62:21 63:14 89:1 118:11
**attorney-client** 77:3 89:5

Page 2

**attorneys** 2:4,8
    5:19 89:2,10
    89:15 118:13
**Authority** 19:13
    19:14 22:19,22
**authorized** 12:9
    12:14,21 13:4
    13:9 22:5
    75:20 98:5
    118:6
**Avenue** 2:4
**avoid** 103:10
**aware** 61:19
    62:11
**awareness** 110:5

—————— B ——————

**b** 3:6 4:1 15:14
    54:11 57:7,10
**back** 10:8,10,12
    18:20 52:22
    65:6 72:22
    78:17 82:3,4
    90:7 94:19
    113:21
**backdoor** 60:12
    106:3
**background**
    15:12 16:3,4
    33:20 34:10
**bad** 105:9 106:4
**Balcita** 2:21
**bankruptcy**
    20:14,18
**Bar** 21:5
**based** 80:2
**baseless** 30:2,15
    31:5 32:17
    33:9 34:19
**basically** 78:3
    89:9
**basis** 71:6 83:14
**Bates** 3:15 4:3,6
    4:8,11 38:5
    77:10 85:15
    99:10 112:14
**BB** 97:16,16

**Beach** 8:10
**becoming** 72:13
    103:5
**beginning** 26:5
    35:12 55:6
    56:2
**behalf** 2:3,7,11
    5:19,21 6:1
    13:4 22:11
    26:9 66:18
    79:4,8,9,10
    80:8,8,13,16
    80:17 82:14,18
    84:1,7 88:7
    103:18 104:3
**believe** 8:21 9:1
    11:7 22:5,10
    39:15,22 41:12
    41:13,19 43:7
    43:8,9 49:13
    56:21 59:14
    61:9,13,14,17
    62:17 64:13
    76:21 77:16
    87:17 91:10
    94:10,14,18
    96:17 102:22
    111:11
**benefit** 80:18
    107:21 108:3,5
    108:8,14 109:3
    109:8,20 110:2
**best** 44:2 94:21
    107:13
**beyond** 78:19
    102:22
**billing** 9:18
**billion** 24:17
    25:1,2
**Billy** 2:20 9:19
    15:13 18:20
    23:8,14 24:6
    25:16 26:22
    28:10 29:10,15
    30:4 35:4 38:1
    42:15 44:16

48:12 51:3
    52:4 53:6 55:7
    57:1 63:5 77:5
    81:13 105:1
    110:11 113:14
    113:21
**bind** 12:9,14,21
    13:9
**bit** 12:4 15:12
    72:16 73:4
    97:19
**blast** 114:18
**Block.one** 3:14
    23:20 24:17
    27:4,20 32:1
    32:14 33:2
    36:3
**blockchain**
    24:21 25:4
    40:12 46:7,16
**Blumer** 24:4,5
**BMS** 77:17 78:5
    97:13,17
**body** 23:5 54:3
**bold** 63:17
**bolded** 54:5
**bonding** 95:4
    96:20
**booked** 24:22
**bottom** 28:14
    29:13 39:19
    43:17 44:18
    50:1 115:6
**bought** 88:4
**Boulevard** 2:13
    5:9 119:3
**box** 40:8,16
    43:22 44:18
    46:12 47:2
    120:12
**branding** 107:16
    109:4,9,17,21
    110:3
**Brandon** 81:9
    83:5
**Brandonbilt**

97:17
**break** 7:22 8:2
    72:15
**breaks** 7:19
**Brendan** 24:4,4
**briefly** 11:22
**bright-line**
    62:21
**bring** 62:5,8,10
**bro** 35:3 80:18
    80:21 82:12
**broad** 93:14,18
**Broadway** 2:8
**Brody** 2:22
**BROWARD**
    118:4
**Brown** 81:9 83:5
**build** 24:20
**bullet** 58:5,15
    61:2 63:17
    64:21 65:11,21
    68:9,15 69:3,8
**bullets** 46:9
**business** 14:15
    22:1 39:2,19
    43:22 45:15,20
    46:15 89:20
**buy** 88:2
**buyer** 87:12

—————— C ——————

**C** 23:14
**c/o** 119:1
**California** 2:9
**call** 16:20 75:21
    90:1 119:17
**callout** 114:9
    115:1
**calls** 28:4 29:6
    29:21 30:12
    31:1,11 32:3
**cap** 17:9
**capacitor** 110:1
**capacity** 33:14
    75:7 82:9 86:4
    90:17,19,20
    99:15,16

106:11 108:7
    108:13 109:2
    110:22 111:2
    112:19,21
    114:14
**capital** 16:12,14
    16:16,19 17:1
    17:4,16 24:18
**Carter** 65:2,6
**case** 1:6 18:17
    25:8 27:15,18
    119:6 120:7
    121:8
**cause** 27:3
**causes** 20:20
    108:20
**Cayman** 3:17
    19:13 50:22
    51:1 89:1,10
    89:11,17
**cc** 53:15
**Cc'ing** 72:7
**CEO** 17:15
**certain** 8:16,17
    9:15 81:7
    82:21 83:4
**CERTIFICATE**
    118:1
**certify** 118:6,10
**cetera** 44:11
    95:4
**CF1** 21:6 22:3
    22:22
**CF30** 21:7 22:8
    22:10 23:1
**CFTC** 23:7
**CHADWICK**
    2:7
**chance** 52:5,14
**Change** 121:11
**changed** 59:18
**changes** 120:14
**channel** 94:22
    95:14,18 96:4
    107:15
**channels** 95:20

9/25/2024    Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
Confidential

Page 3

charges 62:12
charitable
 108:18 110:6,8
charities 109:14
charity 87:13
chat 92:22 96:3
check 50:22
 120:12
checked 40:16
 46:12,14
chief 16:16 18:2
circumstances
 7:10 12:6
claim 27:11,14
 27:18 34:1
 62:9,10
claimed 52:6
claims 25:7,7
 30:2,15 31:5
 32:16,17 33:9
 33:9,21 34:2
 34:19 62:6
clarification
 64:15
clarify 60:3 88:9
class 1:7 3:12,14
 11:6 23:19,20
 62:10,20 73:20
 74:1
classification
 44:1
clean 7:13 14:10
clear 14:6 15:2,4
 17:12 22:21
 41:16,21 45:7
 48:3 51:10
 72:3 89:13
 97:15 115:19
clearly 7:11
client 84:14
 103:6,10
close 102:17
 116:6
closing 114:10
 115:4
Coalition 19:18

20:13,15
code 27:19 93:16
 93:16,21
cofounded 19:18
 20:12
coin 87:12 88:3
 88:4 97:13
 110:6 114:21
CoinGecko 95:1
CoinMarketC...
 95:1
coins 17:9,14
 45:12 70:16
com- 75:12
come 67:7 70:5
 119:12
comes 56:15
coming 6:17
 34:20
commencing 5:1
committed
 62:21
committee 68:16
committing 36:6
commodities
 21:13 22:1
commodity
 19:18 20:12,15
 20:22 21:18
common 29:18
 35:8
communicating
 76:12
communicatio...
 89:14 93:8
companies 16:12
company 3:18
 26:9 34:13
 38:20,21 39:10
 39:11,16 40:6
 40:10,20,21
 41:7,11,14
 43:18,19 44:8
 44:10,13,21
 45:7 46:6 47:6
 57:20 58:7,10

58:16,17,18,21
 61:3 68:17,18
 69:1
compel 33:7
compelled 49:14
 56:12,21,22
 65:19
compensated
 9:9,13
compensation
 9:16 97:2
 110:14
competent 37:13
 37:14,14
competently
 13:20
complaint 11:5
 24:10 27:4,21
 32:1,14 33:2
 36:3
complete 14:7
 54:9,11 55:14
 56:4 103:6
 118:9 119:11
 120:13,15
completed 49:5
 61:14
completely
 13:13
compliance 19:5
 19:8 54:9 64:4
 65:22 75:9,13
 89:17
complicated
 75:11
compound 66:8
CON'T 4:1
concept 39:16
concluded 117:8
conclusion 9:11
 9:14 28:5 29:7
 29:22 30:13
 31:2,12 32:4
 62:19
conditions
 110:16

conduct 19:14
 22:18,22 88:18
 114:19
conducted 24:17
 88:12
confer 10:22
confidential
 1:11 116:11,14
 116:16
confidentiality
 52:8
confirm 57:9
 70:4
confirmation
 70:20
Confirmed
 71:12 72:7
confirming
 71:15
conflicts 8:15
connected
 118:13
connections 87:5
consent 119:22
consider 62:3
consideration
 110:13 111:13
considered 61:8
 62:18 116:16
constraints 7:20
consult 9:6
consumer 19:19
contact 69:9,15
contacted 76:19
content 93:9
context 93:11
 94:6 96:16,21
continue 8:18
 35:18
continued 83:18
continues
 108:17
contract 91:3
 93:15,16 96:10
contracts 92:4
contractual 45:3

control 64:3,10
controls 90:5
convention 14:3
copy 14:7 15:20
 119:13
Copying 119:21
Copyright
 119:20
corporate 8:20
 9:3 34:12
 39:15 73:4,8
 73:17 74:11
 89:22 105:18
 105:21,22
correct 11:12
 12:15,17 14:8
 14:9 16:17
 27:15 39:21
 40:22 41:1
 48:20 49:3,21
 50:10,20 54:1
 73:6 77:21
 85:9 88:7 91:1
 91:4 92:7
 94:17 97:11
 101:19,22
 113:2,17,19
 120:13,15
correctly 55:20
cost 41:7,14
costs 41:9 47:5
 47:11
counsel 5:15
 8:17 24:3 43:9
 43:12 59:10
 75:6 78:8
 118:11,13
 119:14,15
country 39:18
 45:15,16,20
COUNTY 118:4
court 1:1 5:6,12
 5:16 6:3,9 7:11
 7:14 33:18
 34:6 35:21
 55:16 85:4

Case 6:22-cv-00652-PGB-DCI   Document 692-2   Filed 08/06/26   Page 35 of 49 PageID 16693

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.          James Koutoulas 30(b)(6)
Confidential

Page 4

103:3,9 116:13
**courts** 62:16 63:2
**cover** 3:12 23:19
**COVID** 87:22
**CRC** 1:19 118:6 118:22
**create** 15:22 46:17 47:1
**created** 46:18 73:22 82:19 89:9 95:20 96:10
**creating** 93:20
**creation** 40:11 40:12,21 46:6 46:8,20
**cross-reference** 65:1
**CRR** 1:19 118:6 118:22
**crypto** 24:5 89:11
**cryptocurrenc...** 96:16
**cryptocurrency** 16:22 17:2 24:19 34:18 37:3 88:3 89:19 93:11 94:6 96:18,21 107:16 109:4
**Currently** 90:6
**customer** 19:18 20:12,13,15,17 20:22 69:7
**customers** 22:11

**D**

**D** 3:1 38:1
**D.C** 1:21 120:3 121:3
**d/b/a** 1:12 3:9 105:10,10 118:7
**damages** 37:10
**date** 50:3 74:4

78:16 119:7 120:9,19,22 121:10,22
**dated** 24:11 47:15 52:1 53:9 63:7 77:19,21 78:11 85:9 98:8 113:19 118:16
**dates** 87:2
**Dave** 91:21
**David** 91:4,7 92:10 98:10
**Davis** 88:15
**day** 117:8 118:16
**day-to-day** 89:18 92:5
**De** 1:5 5:5 119:6 120:7 121:8
**December** 53:10 63:8
**decentralized** 24:20
**decisions** 86:5,8 86:15
**declaration** 56:5 56:7,18
**decline** 36:2
**deconstructed** 19:3
**decreased** 37:5
**defamation** 113:3,3
**default** 7:1 26:5
**defendant** 1:12 3:8 38:4 51:15 77:8 118:7
**defendants** 1:9 2:11 5:21 6:2 85:13 99:8 112:12
**defendants'** 28:18 30:21 31:8 35:13
**degree** 16:7

**deleting** 92:21 93:2,3,3
**delivered** 83:3
**demand** 37:4
**demonstrates** 64:3,10
**dep** 35:1 81:19 81:21 86:7,20 92:3 99:22 102:13 106:3 108:6
**departure** 87:9
**Depends** 75:4
**deponent** 3:2 6:12 119:8,12 119:14
**deposed** 33:13
**deposition** 1:11 3:8 5:3,8 6:19 6:22 8:14,18 9:3,9,17 11:14 11:21 13:6,14 14:8,12,20 26:8,21 28:9 33:8,20 34:2 37:8,9 49:20 52:9 60:11 61:1 68:1 70:13 74:11 78:7,20,21 79:6 94:14 101:4 105:9 116:7,9 117:8 118:7,9 119:7 119:15 120:9 120:11 121:10
**derived** 30:21
**describe** 16:3 105:22,22
**described** 13:7 89:2
**describes** 44:2
**description** 3:7 4:2 18:12 79:2
**designated** 9:2,5 38:5 43:10

103:7,12 104:1 105:10
**designation** 9:7 22:10
**designee** 8:20 9:3 12:13,20 34:13 49:21
**details** 43:18 44:9 47:4 48:9 69:9,15
**determine** 8:17
**develop** 95:2
**developer** 44:5 46:18 93:10
**developers** 92:11 93:19 95:2
**development** 25:5
**Di** 2:13 5:20 119:2
**Diego** 2:9
**difference** 34:3
**different** 13:2 32:16 33:9 96:3
**differentiated** 31:4
**differentiates** 30:15
**difficulty** 97:20
**Digital** 1:20 5:12 5:13 119:19,20 120:1 121:1
**dir-** 112:19
**direct** 3:4 6:14 25:16,17 52:11 83:8
**directed** 26:6 53:17 84:16
**directing** 25:3 26:16 55:10 79:22 84:14
**directly** 9:17
**director** 9:5 39:16 42:5

48:15,17,19,22 49:3 50:10,19 58:19 59:15,21 60:1,5,15 61:4 61:8,18 72:13 74:21 75:19 80:9 82:5 86:4 86:22 87:6 91:1 108:7,13 109:2 110:1 111:2 112:20 112:21 114:14
**directors** 42:3,7 48:8,9 50:9 58:16,16 59:2 59:11,13 61:13
**disbursements** 70:5
**Discord** 94:22 96:2,4
**discovery** 11:5 49:11 99:9
**discuss** 15:11 34:10 105:6
**discussed** 32:10 64:18 66:20 74:19 80:7
**discussing** 105:3
**discussions** 77:2
**dismiss** 61:20
**distinct** 104:3,11
**distinguish** 115:22
**distinguished** 30:1
**distributed** 44:5
**District** 1:1,1 5:6,6
**Division** 1:2 5:7
**divulge** 89:5,14
**doc-** 107:2
**doctors** 87:21
**document** 10:1 10:15 11:12 15:16 23:16,22 24:13 25:12

Case 6:22-cv-00652-PGB-DCI   Document 692-2   Filed 08/06/26   Page 36 of 49 PageID
16694

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.       James Koutoulas 30(b)(6)
                                    Confidential

Page 5

38:3,6,13,16
43:2,11 46:4
49:15,18 50:1
50:18,21 52:5
52:7 57:5
67:16,18 77:7
77:13 83:20
85:12,14,18,21
86:3 90:16
91:5 92:9,15
94:19 99:1,7
99:13,20
100:21 102:8
105:3,4,7,20
106:14 107:3,9
112:6,8,9,11
112:16 113:7
115:13 116:5
**document's** 95:9
**documents** 11:8
12:1,2 15:7
49:11 56:14,16
63:9 71:7
91:19 95:6
101:2,3 102:2
102:11 106:12
116:13
**doing** 14:14
60:19 82:9
106:2
**donate** 108:19
109:13
**donated** 46:19
**donating** 69:10
69:16
**donations** 44:21
45:8 47:7
87:20
**donors** 47:8
**down-drop** 44:1
**downloaded**
15:20
**Dr** 87:20
**draft** 49:5,9,19
**drill** 73:3
**driver** 81:9

**driver's** 91:18
**due** 62:7 116:7
**duly** 6:12
**duties** 34:22

—————————
**E**
**E** 1:19 3:1,6 4:1
118:6,22
**e-discovery**
56:12
**E.1** 51:6
**EA** 110:16
**earlier** 100:1
**early** 68:10,20
**easier** 7:14
**East** 2:13 5:8
119:3
**ecosystem** 95:3
96:6
**education** 16:2
**educational** 16:4
**effect** 74:17
**Effective** 50:2
**effort** 7:13
**efforts** 19:9
30:21 49:16
94:21 107:13
**either** 33:17
47:14 54:8
93:17
**elaborate** 19:8
75:5
**electronically**
119:21
**email** 3:20 51:14
51:16,22 53:2
53:9 54:3
59:10 63:5,7
64:18 66:20
69:21 71:11
98:12
**employee** 118:11
118:12
**enable** 106:4
**encompasses**
111:19
**encryption/fin...**

44:6
**encumber** 96:18
**endorsement**
107:16 109:4
**engage** 17:1
**engaged** 79:3
88:6 89:16
103:17,21
110:19
**Engagement**
54:4
**enrichment** 62:9
**entails** 88:22
**entered** 78:16
113:1
**entering** 91:3
109:21 110:3
**enterprise** 29:19
35:8
**Entertainment**
106:10 107:13
**entire** 13:1
105:15
**entities** 44:9
64:17 66:19
69:10,15 73:17
76:12 106:12
**entitled** 97:7
110:17
**entity** 12:11,11
12:16,17 13:1
13:3,7 14:15
33:12 34:17
45:3 64:16
66:18 71:8
73:11 75:9,13
75:16 76:1
80:19,21 82:19
87:5 89:22
90:3
**EOS** 28:18 29:3
29:18 30:9,10
30:20 31:8
35:7,14 37:2,4
37:8 87:13
**equally** 37:4

**equity** 16:22
**Eric** 1:5 119:6
120:7 121:8
**errata** 119:15
120:15 121:6
**erroneously**
49:14 61:21
**especially** 52:8
**ESQUIRE** 2:3,7
2:12,12
**essentially** 89:21
**establish** 49:22
64:19 80:14
**established**
37:15,19 70:16
82:8 83:8
84:18
**establishment**
80:4
**et** 1:5,8 44:11
95:4 119:6,6
120:7,7 121:8
121:8
**ethical** 34:22
35:2
**event** 107:14
**Everybody**
59:10
**evidence** 1:20
5:12,13 14:2
23:12 51:4
98:20 119:19
119:20 120:1
121:1
**exact** 74:2 92:13
**exactly** 53:7
93:4 114:21
**examination** 3:4
6:14 8:13
**examined**
120:11
**example** 18:16
111:14
**examples** 111:16
**excessive** 33:16
**exchange** 45:2

47:1 57:11
81:7 82:21
83:4 96:18
**exchanges** 37:3
**excited** 104:22
**executive** 16:16
18:2
**exempted** 68:18
69:1
**Exhibit** 3:8,11
3:12,15,17,20
4:3,5,8,10 14:2
90:10 99:3,5
112:2,3
**exhibits** 78:9
115:15 116:14
**exist** 73:20 82:11
82:13
**existed** 83:11
**expand** 90:8
**expected** 30:9,20
**experience**
16:10
**experienced**
62:20
**explain** 18:10
88:21 93:6
110:20 111:6,7
**explained**
114:17
**express** 71:6
119:22
**extent** 67:1,21
70:14 77:2
82:5 83:7
85:20 89:4
103:2,4 113:8

—————————
**F**
**fact** 20:6 62:5
69:14
**factor** 29:8
**factors** 27:22
28:3 29:4,20
30:11,14,22
31:4 32:2,15
33:3

Case 6:22-cv-00652-PGB-DCI    Document 692-2    Filed 08/06/26    Page 37 of 49 PageID 16695

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.          James Koutoulas 30(b)(6)
Confidential

Page 6

**facts** 12:5
**Fahnert** 2:20
  25:15,18 42:19
  52:11,17 90:12
  90:14 99:3
**failed** 60:10 62:3
**failure** 28:18
  31:8
**fair** 31:7,22
  32:13 33:1
  67:10 76:2
**faith** 105:9
  106:4
**falls** 80:5
**falsely** 105:9
**familiar** 6:20
  9:22 10:15
  11:14 23:22
  24:2 38:6,14
  43:1 69:3
  77:12 85:18
  86:3 93:10
  95:12 99:13
**FCA** 21:6 22:14
**February** 98:9
**federal** 62:4,10
**federal-question**
  62:6
**fee** 110:14,17
  111:19
**Feel** 25:10
**fell** 97:22
**Fiduciary** 8:21
  9:1,2 61:17
**fifth** 21:3
**file** 10:20 75:14
**filed** 5:5 61:16
  75:22
**filing** 75:9,13,16
  75:22
**fill** 38:18 43:6
**filled** 39:6,22
  43:8 44:13
  58:1
**final** 47:16 49:10
**finally** 22:8

**finance** 16:7
  18:7,14,16
**financial** 19:14
  22:18,22 35:13
  44:5
**financially**
  118:14
**fine** 7:22 17:7
  37:21 98:1
  116:2 117:3
**finish** 31:14
  49:17 106:19
**finishes** 55:17
**fintech** 39:7
**firm** 19:3 22:6
  41:13,18,21
  43:16 47:14
**first** 6:12 8:2
  16:10 18:7,13
  19:1 20:7 27:3
  34:16 35:12
  42:5,10 43:22
  46:9 47:2
  48:15 52:20
  53:9 65:21
  69:18 88:2
  105:2 108:17
  113:21 114:7
**Floor** 2:4
**Florida** 1:1 2:14
  5:6 8:11 16:6
  118:3 119:4
**fluidly** 76:3
**focus** 16:9 19:4
**following** 9:11
  40:11 46:7
**follows** 6:13
**forbidden**
  119:21
**Ford** 1:5 5:5
  119:6 120:7
  121:8
**foregoing** 118:8
  120:11
**fork** 97:11,13,15
**form** 3:15 19:10

39:22 40:20
  42:13 43:3
  47:15,16,20
  48:1 49:2,4,5,5
  49:6,7,10 50:2
  50:6,7 51:8,9
  57:20 58:12
  67:14
**formal** 87:6
**formation** 47:5
  47:11 50:3
  79:14
**formed** 20:18
**forms** 56:5,7,18
**Fort** 2:14 5:9
  119:4
**forthcoming**
  62:13
**forward** 119:15
**Found-** 70:17
**foundation** 1:12
  3:10,18,19 4:5
  8:8 14:15 15:5
  39:12,14,17
  43:20 45:5
  46:17 47:12,18
  47:18,21 48:19
  49:1,3 50:6,19
  51:2,9 57:20
  59:8 60:5,10
  60:11,16 64:15
  65:6 66:7,9,11
  66:22 67:3,20
  67:22 68:17
  70:13,15,17
  71:1,5 73:9,15
  73:19 74:18,18
  76:15 78:4
  79:13 80:3,8,9
  80:14,19 82:6
  83:7 84:1
  85:14,21 86:6
  86:19 88:20,22
  89:11,18 91:1
  91:3 92:4,6
  94:1 96:7 98:6

100:19 103:18
  104:2,11
  105:13,19
  106:3 107:17
  107:18 108:2,5
  108:6,8,10,14
  108:16 109:3,5
  109:8,11,12,20
  109:22 110:2,3
  110:18,19
  111:3,11 113:1
  113:8,16 114:3
  114:15 118:7
**Foundation's**
  113:4
**four** 32:9
**fourth** 40:8 61:2
  69:3
**FPR** 118:22
**frame** 11:1,3,4,6
  11:7 83:10
  104:7
**fraud** 24:17
**free** 25:10
**Friday** 66:3
**friends** 88:4
**front** 25:13
  41:20 83:2
**full** 39:9 44:7
**fully** 13:13
**function** 75:4
**fund** 16:21 24:5
  41:17 45:1
  47:11
**funded** 41:8,11
  41:12,14 47:6
**funder** 18:17
**funding** 41:13
  41:18
**funds** 41:4,6
  56:5,6,17 57:3
  57:5 64:22
  65:5
**further** 9:12
  37:10 62:12
  64:15 118:10

**future** 37:10
**futures** 16:22
  19:11

_____
**G**
_____

**G** 77:5
**generally** 7:19
  17:6,8 24:1
  45:6 92:21
  108:19 109:7
  109:12 111:10
**getting** 33:16
  70:2 102:17
**gift'** 57:6
**gifted** 57:9
**Gillels** 91:4,7,21
  92:10 97:3
  98:10,15
**GitHub** 93:15
**Giuliani** 61:12
  86:9,12
**Giuliani's** 86:18
  86:21
**give** 6:6 14:9
  22:11 25:15
  39:9 44:7 52:4
  83:13 111:14
**given** 7:20 8:15
  71:4 75:3
  120:13,16
**gives** 65:1
**giving** 12:16
  18:5 28:8
  83:13 108:18
  110:7,8,9
**glanced** 11:22
**Global** 20:14,18
**go** 6:18 10:3
  15:7 16:2
  17:10 18:20
  24:6,8 26:1
  27:21 30:16
  31:16,18 33:7
  35:1,18 37:12
  42:2 48:6,13
  50:15 52:12
  66:13 69:18

Case 6:22-cv-00652-PGB-DCI    Document 692-2    Filed 08/06/26    Page 38 of 49 PageID
16696

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.       James Koutoulas 30(b)(6)
                                Confidential

Page 7

71:22 72:20 77:4 80:14 81:5 97:14 98:3 100:16 106:7 110:10 111:22 112:7 113:21 116:20 117:4
**goes** 32:1,14 33:2
**going** 6:18,19,21 13:6 15:6,7 16:9 20:1 26:2 28:4 32:20 33:11,13,19,20 35:17,19,20 36:1 38:3 46:22 48:12 49:16 51:14 60:12 63:1 72:16 73:5 75:7 77:1,4,6 79:19 80:20 84:11,11 88:16 89:5 93:22 102:9 104:20 105:1 106:4 111:21 112:5,7 116:7
**good** 5:2 6:16,16 58:10 64:22 65:12 72:14,16 115:20
**governance** 39:15 90:3
**governing** 119:16
**graduated** 16:6 16:8
**green** 70:1
**Group** 1:20 5:12 5:13 119:19,20 120:1 121:1
**guess** 10:10 16:20 51:4
**guest** 101:3

**guy** 91:19
**guys** 11:2

—————— **H** ——————
**H** 3:6 4:1
**half** 92:9
**hand** 6:4
**handle** 56:15 104:16
**happen** 66:3
**happy** 64:4 90:22 102:12
**harassing** 103:5
**harassment** 27:6 36:15
**hard** 97:13,15
**Harney** 9:2
**Harneys** 8:21 9:1 43:9,12,16 52:1 53:10 54:11,15 55:1 56:7,19 61:17 65:18 66:6,15 67:10 68:7 70:9 71:16 76:19,22 77:2
**harneysfiduci...** 43:17
**hear** 10:11 15:18
**hearing** 97:20
**heavily** 87:13 88:3
**Heckman** 61:12 61:14 72:7,11 86:9 87:11,15
**hedge** 16:20
**held** 5:8 57:8,10 74:20
**help** 78:8
**helping** 95:2
**hesitate** 119:17
**Hi** 63:8 70:1
**high** 25:2 107:14 107:22 108:15 108:18
**highlight** 30:5 36:21 44:16

53:14 55:7 81:13 114:5
**highlighted** 29:10 57:19
**Hmm** 51:19 68:3
**hold** 18:1 44:10 57:13 103:20 103:22,22
**holdings** 65:14 65:18
**holds** 21:5
**honestly** 65:9
**honor** 104:15
**hostile** 97:13
**hosts** 107:15
**Hotseater** 2:20
**hour** 7:20
**hours** 34:21 71:6
**Howey** 27:21 28:3 29:4,8,20 30:11,22 31:3 32:2,15 33:3
**hypothetical** 93:22 111:20

—————— **I** ——————
**i.e** 44:10 71:6
**ICO** 25:1
**idea** 58:13 74:2
**identities** 79:1
**identity** 54:11 54:12
**ii** 29:12
**iii** 30:5
**illegal** 97:13 113:4
**Illinois** 21:5
**image** 114:10 115:2
**immediately** 58:7
**implemented** 94:12 115:8
**implication** 113:3
**inappropriate** 93:9

**inception** 94:17
**include** 44:9 65:13
**Included** 110:8
**includes** 103:18
**including** 62:4 65:22 79:1 81:8 83:4 119:21
**incorporate** 58:17 61:4 68:17,19 71:5
**incorporating** 66:7
**incorporation** 3:17 11:22 57:20 68:15 70:2 78:19
**incorrect** 10:19 12:16 14:16 15:1 49:1 73:6
**increased** 37:5
**increasing** 110:5
**indicate** 57:6 83:2
**indicated** 16:14 100:1
**indicates** 46:15
**individual** 54:9 58:18,20 90:18 90:20 99:16
**individually** 61:7
**individuals** 69:10,15 107:14,22 108:15
**industry** 21:1,13 21:18 22:1
**information** 67:2 68:6 77:3 89:6
**instructing** 102:14
**instruction** 112:7

**intended** 39:2,9 39:19 43:21 44:2,3,8 45:4 45:15,19 46:15
**interested** 118:14
**interests** 35:13 44:10,11
**Intern** 2:22
**internal** 68:16
**interviews** 87:19
**introduce** 111:10
**introduced** 76:22 107:21 108:15 110:18
**introduction/r...** 110:14
**introductions** 107:14
**invested** 29:3,18 35:7
**investing** 25:4
**investment** 16:21 22:11
**investor** 19:17 20:9
**investors** 18:6 25:3 35:14 37:3
**invoice** 53:16 54:4
**involved** 40:6,10 40:21 46:6 87:13 88:3 101:11
**irrelevant** 64:14 65:7 66:12 68:1 92:15 93:8 95:9 99:1 103:1,1
**Island** 19:13 89:10,17
**issuance** 40:12 40:22 46:8,20
**issue** 25:8 27:14

9/25/2024 — Eric De Ford, et al. v. James Koutoulas, et al. — James Koutoulas 30(b)(6)
Confidential

27:18 33:21 34:2 46:21
**issues** 116:8
**iv** 32:6

---

**J**

**J** 99:4
**James** 1:8,13 3:3 5:3,21 6:2,11 8:7 15:21 41:8 41:15 47:6 51:22 53:11,19 53:19 61:12 63:8,9 69:22 70:1 72:7,11 76:20 86:9 87:11 118:8 119:1,6,8 120:7,8 121:8 121:9
**james@kouto...** 53:20
**January** 52:1 68:10 69:22 79:1 87:3 113:19
**JD** 16:8
**Jeffrey** 65:2,6
**judge** 61:22 62:3 62:15
**jurisdiction** 62:7
**JurisTrade** 16:13 18:2,5
**jury** 93:7

---

**K**

**K** 111:22 112:1
**Kamryn** 2:22
**keep** 7:13 34:21 34:22 75:2
**keeps** 64:4
**kept** 70:6,20
**kind** 15:7 72:15 76:2 106:5
**Kingdom** 22:18
**KLE00082** 85:16

**know** 25:21 36:16,19 37:10 37:11,21 46:16 49:4,7,19 50:3 56:20 58:19 62:20 65:9 66:15 67:13 68:7,14 69:2,7 75:7,9,17 87:3 87:13 91:8,9 91:11,16 92:1 92:18 94:3,5,8 95:15 96:13,20 100:13,14 106:10,13 110:2 112:9 114:20 115:1,4 115:7,20
**knowledge** 12:5 102:7
**knows** 116:13
**Koutoulas** 1:8 1:13 3:3,11,20 5:4,5,22 6:2,11 6:16 8:7,12,19 9:22 10:14 11:11 14:4,11 15:12,16,21,22 16:13 19:17 20:8,9 23:13 23:16 24:15 26:2,14,20 27:3,20 30:8 30:19 31:7 33:1 36:9 38:7 41:8,15,22 42:17 43:1 47:6 51:5,15 51:22 52:21 53:11,19 55:11 56:1 57:4 60:14 61:19 63:8 65:13 69:22 73:3 74:12,19 75:7 76:20 77:12

79:12 80:12 82:18 85:19 90:16 94:3 95:12 98:21 99:14 102:20 104:4 105:17 106:21 112:1,2 112:16 113:12 115:14 118:8 119:1,6,8 120:7,8 121:8 121:9
**Koutoulas-PL** 3:16,22 38:5 51:17
**KYC** 54:4,8 55:5 58:20 69:3,4,8

---

**L**

**L** 2:12
**L.L.C** 120:1
**lack** 62:7 64:15 66:9,9 67:20 70:12,22 71:1 76:15 80:3 83:6,7 94:1 96:7 108:1,9 109:10
**landing** 114:11
**largest** 17:8
**Las** 2:13 5:8 119:3
**late** 87:3,4
**Latona** 86:11
**Lauderdale** 2:14 5:9 119:4
**law** 2:4,8 5:19 16:8,13 41:13 41:18,21,22 43:16 47:14 62:4 65:13 75:8
**laws** 3:13 23:20
**lawsuit** 24:15 26:10 34:5 61:15
**lawyer** 34:22

**lawyers** 75:21
**lay** 73:5
**layman** 18:10
**layman's** 18:12
**LB** 112:4
**leader** 19:17 20:9
**leading** 93:1
**leave** 79:20,21 116:9
**leaving** 58:7
**ledger** 41:20
**ledger/blockc...** 44:6
**left** 104:14
**legal** 5:11 25:7 28:5,8 29:6,21 30:12 31:1,11 32:4 33:6 44:9 45:3 75:6
**lend** 96:17
**length** 106:1
**let's** 14:3 15:11 16:2 21:8 35:5 36:11 38:1 48:6 51:3,4 81:3 98:20 99:4 104:20,21 111:22 112:1 115:13
**LetsGoBrand...** 74:18
**letter** 54:4
**letters** 54:5
**letting** 106:5
**LGB** 8:20 12:9 27:18 36:7 57:8 64:2,8 67:11,14 70:20 73:8 76:13,20 82:19 83:3 84:7 86:18 88:7,9 95:3 96:6
**LGB2** 97:5,8,12 97:12

**LGBCoin** 1:12 1:12 3:9,9,15 3:18 4:3,5 5:22 6:2 8:8 9:5 10:18 13:4 14:15 15:4,5 17:9 25:22 26:9 35:19 36:9 37:8,11 37:17,19 38:22 39:12,13,17 43:16,20 45:5 47:21 48:18 50:6,6,9 51:2 55:14 56:3 57:13,14,17 60:9 66:2 67:9 70:3,6,10 71:16 73:12 74:17 77:9 78:4,19,22 79:7,13,15 80:4,18 82:3 82:15 83:9,10 83:21 84:9,10 84:19,21,22,22 85:14,22 86:4 86:6 87:16 88:18,20 90:17 90:21 92:3,3 92:16 94:22 95:7,9,14,17 96:4,9 98:5 99:2 101:10 102:7,12 104:2 104:4,5 105:8 105:9 106:11 106:14,17,22 107:6,10,20 108:3 112:4 113:9,16 115:16 118:7,7
**LGBCoins** 45:10 94:8 104:6
**LGBT** 12:13,14

Case 6:22-cv-00652-PGB-DCI    Document 692-2    Filed 08/06/26    Page 40 of 49 PageID
16698
9/25/2024                Eric De Ford, et al. v. James Koutoulas, et al.        James Koutoulas 30(b)(6)
Confidential

Page 9

97:5
**license** 21:12
    91:18
**life** 7:14
**light** 70:1
**limited** 14:5
    104:14
**line** 19:1 35:12
    53:15 55:5
    57:1 72:6
    73:18 79:16
    80:22 121:11
**link** 65:1
**linked** 114:10
**LinkedIn** 3:11
    15:21 16:15
    18:4 23:13
**links** 65:13
**liquidity** 45:2
    94:14,16
**list** 44:2 57:12
**listed** 11:15
    38:21 39:21
    41:6 42:5,7,10
    42:12 43:19
    44:3 48:15,19
    49:2 50:16
    86:14 98:6,12
    101:22 110:15
**Listen** 83:20
**listings** 45:2
    95:1
**lists** 50:9
**litigation** 9:12
    9:14 11:8 18:7
    18:14,16 34:11
    35:18 37:10
    51:16 56:10
    62:19 77:9
**litigations** 9:15
**litigators** 18:6
**little** 12:4 15:12
    33:16 60:19
    97:19
**LLC** 16:13
    121:1

**LLP** 2:4,8
**loaded** 56:11
**located** 67:19
**location** 79:2
**locations** 114:8
**locked** 94:8,15
    94:16
**locking** 93:20
    94:3,5,9,11
**log** 56:20
**logged** 49:13
**logo** 114:9,20,22
**London** 2:21
**long** 17:15 83:13
**look** 25:11 49:4
    52:14 54:17
    101:2
**looked** 46:4
**looking** 49:9
    78:15,15
**looks** 43:3 64:22
    65:12
**lot** 6:20 88:3
**loudly** 7:11
**lower** 92:9
**LTD's** 43:16
    107:10 112:21
    114:15

───────────
**M**
───────────

**M** 1:21 2:12
    120:2 121:2
**main** 44:2,3
**maintain** 56:14
    57:12,15 92:14
    95:8 98:22
    116:4
**maintained** 52:8
**maintaining**
    89:3
**maintenance**
    95:2
**making** 75:10
**Malone** 87:21
**manage** 94:22
    95:2
**managed** 16:21

**management**
    16:13,14,19
    17:1,5,16 19:5
    19:9
**managers** 19:3
**manages** 16:21
**managing** 93:17
**mandates** 87:22
**Marc** 52:1 53:10
    63:7
**March** 11:9
    17:17
**mark** 99:5
    115:22
**marked** 116:14
**market** 17:9
**marketed** 24:18
**marketing** 79:3
    81:7 82:21
    83:4 87:15,17
    88:7,12,19
    107:16 109:5,9
    109:17,21
    110:3
**marketplace**
    18:7,14
**Martell** 2:12
    5:20,20 10:22
    14:5 15:2,9
    19:10 20:1,16
    20:21 21:11,16
    21:21 22:4,9
    22:17 23:3
    24:16 26:11,17
    27:5 28:4 29:6
    29:21 30:12
    31:1,11,16,18
    32:3 33:5,10
    34:3,8,15
    35:17 36:9,14
    37:18 42:18
    47:13,17,22
    48:3 50:5 51:7
    51:12,19 52:3
    52:6 58:12
    59:3,6,16 60:1

60:3,6 62:2
63:3 64:13,19
65:7 66:8,11
66:18,21 67:1
67:20 68:3,5
70:12,22 71:19
71:22 72:17
74:6 76:4,15
77:1 78:11
80:2,10 81:3
82:2,7,13 83:6
83:17 84:16
85:20 88:8
89:4 90:2,11
92:14 94:1
95:8,21 96:7
97:22 98:22
99:17 100:4,7
101:1,9,16,20
102:16 103:2,4
103:20,22
104:10,17,21
106:7,19 107:5
107:8 108:1,9
109:10 110:21
112:3,9 113:6
115:19,21
116:2,4,12,19
116:21 117:1
**Mascioli** 77:16
    78:3 83:3
    86:10
**Massa** 2:19 5:11
**Masson** 2:3 3:4
    5:18,18 6:15
    9:19,21 10:3
    10:13 11:10
    14:1,9,17 15:6
    15:10,13,15
    17:11 18:20,22
    19:15 20:5,19
    21:2,14,19
    22:2,7,13,20
    23:4,8,15 24:6
    24:9 25:6,16
    25:19 26:15,18

26:19,22 27:2
27:10 28:6,10
28:13 29:9,11
29:15,16 30:3
30:6,16,18
31:6,14,20
32:8 33:19
34:7,12 35:4,6
35:22 36:4,10
36:17,21 37:1
37:21 38:2,9
38:12 42:14,20
42:22 44:16,19
48:5,7,12,14
50:8 51:3,11
51:13,21 52:4
52:10,13,19
53:5,8,14,18
55:7,9,22 57:1
57:2 58:14
59:4,12,20
60:4,13 62:14
63:4,6 64:17
64:20 65:10
66:10,14,19,22
67:5 68:8
69:18,20 70:18
71:3 72:2,14
73:2 74:10
76:7,18 77:4
77:11 78:14
79:22 80:6
81:6,13,15
82:4,17 83:12
83:22 84:3,4
84:14,20 85:1
85:6,8,11,17
86:2 88:10
89:12 90:4,10
90:13,15 92:17
94:2 95:11
96:1,11 98:2,4
99:4,6,19
100:9,16,18
101:5,12,18,21
102:14,19

Case 6:22-cv-00652-PGB-DCI    Document 692-2    Filed 08/06/26    Page 41 of 49 PageID 16699

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.        James Koutoulas 30(b)(6)
                                    Confidential

Page 10

103:15 104:9 104:12,20 105:1,5 106:9 106:20 107:11 108:4,12,22 109:15 110:10 110:12 111:1 111:22 112:5 112:11,15 113:10,11,13 113:15,21 114:1,5,6 115:12,17,20 115:22 116:3,6 116:18,22 117:3
**materially** 114:18
**materials** 11:20 11:21
**matter** 5:4 20:6 71:21 99:18 119:11
**Mchadwick@...** 2:10
**mean** 17:13 18:13 60:8 65:5 69:6 70:9 86:13 92:2 96:12 109:12 109:16,17
**meaning** 93:15 102:3
**means** 18:11 22:15 33:15 79:5 96:13,20 110:20 111:4,9 111:15 114:20 115:2,5
**meant** 9:4
**mechanics** 111:18
**mechanism** 94:4 94:9,11
**mechanisms** 93:20 94:5

**Media** 87:18
**member** 21:5 50:19 51:2 74:21 76:10
**members** 58:6 78:5
**memorializing** 67:16
**mentioned** 26:4
**meritless** 61:15
**met** 91:10
**MF** 20:14,18
**Miami** 8:10
**Monad** 8:10
**Michael** 2:19
**microphone** 97:22
**mid-January** 68:20
**Middle** 1:1 5:6
**Mike** 5:11
**mind** 105:1 115:17
**minutes** 33:11
**mischaracteri...** 76:4 80:11 100:5,6
**miscommunic...** 88:16
**misquoted** 19:21 20:4
**missed** 85:4
**moderate** 94:21
**moderator** 92:10,18
**MOLLIE** 2:7
**moment** 10:6 72:19
**Monad** 8:10
**Monero** 17:14
**Monetary** 19:13
**money** 29:3
**month** 74:4
**morning** 5:2 6:17,17
**motion** 33:7 61:20

**Motorsports** 77:18 97:17
**move** 14:1 23:12 32:20 37:22 42:16 51:3,4 63:1 66:2 76:2 79:18,19 80:20 81:2 82:1 98:20 100:1 101:16 103:8 111:22 115:13
**movement** 110:6
**Moving** 14:11
**multi-strategy** 19:3
**multiple** 59:18 62:3,21 95:20
**Mutschler** 2:12 6:1,1
**mutual** 4:8 99:9 100:11,12 106:15
**mutually** 8:18

———————
**N**
———————
**N** 3:1
**name** 5:11 8:5 12:17,18 13:1 38:20 43:19 48:15,16 49:9 57:11,11 69:14 74:5,14,16 91:11,17,21 98:16,18 120:8 121:9
**names** 48:9 69:9
**naming** 14:3
**Nancy** 1:19 5:13 118:6,22
**NASCAR** 81:9,9 113:5
**NASCAR's** 113:3 114:19
**National** 19:11
**nature** 39:2 43:21 46:15 87:19 88:5

93:9
**near** 39:19 114:22
**need** 7:22 25:10 34:4,5 35:20 55:16 58:20 80:14 103:7 116:15
**needed** 34:9 83:18
**needing** 102:17
**needs** 52:8 58:16 80:3
**neither** 24:22 60:10
**net** 107:14,22 108:15,18 110:18
**never** 14:14 17:9 34:18 38:13 48:22 91:20 97:6,12 99:20 111:12
**never-before-t...** 44:22 45:9 47:8
**New** 2:5,5
**newly-minted** 44:22 45:8 47:7
**newsletter** 4:10 112:13 114:9 114:18,22
**NFA** 23:7
**Nicole** 2:12 5:20 26:15 72:14 79:22 84:15 102:15 104:12 104:12 115:12
**Nicole@ddpal...** 2:15
**non-privacy** 17:8,12
**nonparty** 48:2
**nonprofit** 19:19 20:13,17

108:16
**nonresponsive** 105:15
**noon** 73:1
**normally** 102:2 106:12
**Northwestern** 16:7
**NOTARY** 120:22
**note** 43:17 112:10
**noted** 51:11 120:14
**notes** 118:9
**notice** 3:8 10:21 11:2 12:18 14:7,12 15:1 26:13,13 27:7 32:5 33:8,13 33:14 34:9 36:15 59:7 60:11 62:12 70:14 103:12 103:16 105:10
**noticed** 12:12 34:17
**noticing** 119:15
**noting** 119:15
**November** 11:1 11:9 77:19,21 78:12,13
**number** 3:16 4:3 4:6,9,11 5:3 23:13 38:5 40:18 46:5 77:10 78:21 81:8 85:15 99:10 104:1 112:14
**numbers** 111:15
**NW** 1:21 120:2 121:2

———————
**O**
———————
**oath** 6:13 13:17
**object** 20:1

Case 6:22-cv-00652-PGB-DCI    Document 692-2    Filed 08/06/26    Page 42 of 49 PageID
16700

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.          James Koutoulas 30(b)(6)
Confidential

Page  11

26:11 28:4
51:8 67:1 77:1
81:4,18 85:20
89:4 93:22
94:1 107:8
112:3 113:7
**objected** 80:2
**Objecting** 107:5
**objection** 10:2
10:16,17,18
14:14 19:10
20:16,21 21:11
21:16,21 22:4
22:9,17 23:3
24:16 26:3,4
27:5 29:6,21
30:12 31:1,11
32:3 33:5
36:14 47:13
51:11 58:12
59:3,6,16 60:6
62:2 64:13
65:7 66:8
67:20 70:12,22
71:19 74:6
76:4,15 83:6
83:14 88:8
90:2 92:14
95:8,21 96:7
98:22 99:17
100:4 101:1,9
102:16 108:1,9
109:10 110:21
112:6 116:4
**objections** 10:20
14:18 26:17
83:13 84:17
104:13 112:6
**obligated** 102:20
**obligations**
94:20 106:16
106:17,22
107:6,12
110:15
**obvious** 84:13
93:5

**occurred** 111:16
111:17
**offering** 24:19
**office** 68:18
119:12,17
**officer** 16:16
18:2
**officers** 42:3
**Oh** 9:4 14:13
23:10,10 25:21
71:20
**okay** 8:12 11:11
13:5,7,22
14:18,22 15:9
23:8 25:14
26:18 32:20
33:22 34:7
38:11 40:2
42:14 47:22
49:15 60:17
66:13,21 71:22
72:7 75:16
79:20 84:20
88:21 89:13
90:13 93:3
98:2 99:4
104:12,16
106:6 109:19
116:3,19
**Olas** 2:13 5:8
119:3
**ongoing** 95:1
**online** 37:3
**open** 116:9
**operate** 76:10
**operating** 75:3
75:18 76:9,14
82:18 89:20
92:5
**operations** 19:5
**opinion** 34:4
**Opportunity**
24:5
**opposed** 55:3
**option** 119:14,14
**order** 33:18

102:18 103:3,8
103:9 113:2
**ordered** 116:15
**organic** 72:15
**organization**
19:19 20:13,17
50:4
**original** 119:15
**Orlando** 1:2 5:6
**outlined** 94:20
**outside** 11:4
26:12 27:6
31:12 32:4
36:14 59:6,17
60:6 65:8
67:22 70:13
71:1 74:1,6
76:13 78:6
92:15 107:9
**ownerless** 58:11
**ownerless.'** 58:7
**owning** 30:10
**owns** 87:17

———————
**P**
———————

**p.m** 1:15 8:16
117:9
**Pack** 3:17
**page** 3:2,7 4:2
24:7,10 25:17
25:20 27:1
28:10,15,21
30:4,17 35:4
35:11 38:9,15
40:2 41:2 42:2
42:9 45:14
46:22 48:6
50:15 52:20
53:5 58:5,15
61:2 63:5
69:18 84:3
97:1 98:3
100:16 105:2
106:21 110:11
113:14,21
119:15 120:6
121:11

**pages** 32:9 52:18
114:11 118:8
120:11
**paid** 66:15 67:10
110:18
**para-** 20:6,7
**paragraph** 19:1
19:16 20:3,8
21:3 30:2,15
31:4 35:11
36:22 71:4
110:15 114:7
**Paralegal** 2:21
**Pardon** 28:12
**Park** 2:4
**Parler** 4:10
112:13 114:7
114:19
**part** 27:20 38:20
42:3,9 43:18
48:8 50:9,12
51:16 52:15
56:9,18 58:5
58:15 61:2
67:11 72:12
77:8 116:14
**participate**
104:5
**particular** 12:11
34:2 76:21
**parties** 42:12
93:19 118:11
**parties'** 118:12
**partners** 2:13
5:21 107:15
119:2
**partnership**
44:10
**partnerships**
107:17 109:5,9
**party** 79:6 94:20
106:16,17,22
107:6,12
110:19 113:9
**Paulsen** 1:19
5:14 118:6,22

**paying** 66:6
71:16
**payment** 65:21
65:21 67:13
70:2,5,10,16
**payments** 55:6
55:13 56:2,3
**PDF** 24:7
**penalties** 13:17
**pending** 8:1
**people** 88:2
**percent** 35:14
110:17
**percentage**
67:13
**period** 73:21
74:1 86:22
87:1 119:16
**perjury** 13:17
**person** 21:13,18
21:20,22 42:10
75:20
**personal** 12:5
34:10
**personally** 26:14
36:13 41:8,11
41:12,15,17
47:6,11 48:22
51:1 59:15
60:9
**pertain** 92:16
**pertains** 26:13
59:7
**phishing** 93:8
**Piano** 3:21 52:1
53:10 63:7
64:22 65:12
68:13 69:22
**pick** 21:8
**Pietro** 2:13 5:20
119:2
**place** 26:1
**placed** 84:17
102:16
**placeholder**
89:21 90:1

Case 6:22-cv-00652-PGB-DCI    Document 692-2    Filed 08/06/26    Page 43 of 49 PageID 16701

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.          James Koutoulas 30(b)(6)
Confidential

Page 12

**placement** 114:9 114:20
**plaintiffs** 1:6 2:3 2:7 3:8 5:4,19 38:4 51:15 77:8 85:13 99:8 112:12
**plaintiffs'** 14:11 49:11
**platform** 18:5
**please** 5:15 6:4 7:6,10 8:5,22 9:19 10:4,5 13:1 14:4 15:13 16:3 19:8 20:8,11 21:4,8 23:14 26:22 28:11 31:19 35:4 38:1,9 39:9 44:1,8,17,20 47:3 53:5 54:8 55:14 56:1,4 57:4,5,6,7 64:1 69:8 70:4 72:18 73:6 75:5 77:5 81:13 83:14 85:2,11 88:21 93:6 100:17 105:2 106:6 110:11 111:6 112:2 113:22 114:5 119:10 119:14,15,16
**PLLC** 2:13 119:2
**point** 7:21 8:14 8:17 9:18 33:17 58:5 61:2 63:17 64:21 65:11,21 68:9,15 69:3,8 75:3 79:13 94:9,11,14,19 103:6,14

110:13
**points** 58:2 74:20
**political** 110:9
**pool** 16:21 94:15 94:16
**portion** 29:8,10 30:1 109:13 110:7 111:12
**position** 11:3,4 18:1
**positions** 100:2
**possibly** 38:19 66:2 95:22
**potential** 107:15 107:17 109:4,5
**potentially** 18:18 64:14
**prefer** 58:18,20
**prepare** 11:21
**prepared** 11:17 13:12 34:9 103:11
**present** 2:18 17:18 79:1
**presently** 16:11 18:1
**preservation** 49:16,18
**preserve** 51:7
**press** 87:18
**pretty** 18:15 50:22 76:3 93:5
**preventing** 13:19
**previous** 38:15 41:3 109:7 116:8
**previously** 19:12 95:17
**price** 37:4
**primary** 45:16 81:8 83:5
**prior** 11:8 17:22 78:18

**privilege** 49:13 52:7 56:20 89:3
**privileged** 43:10 43:13 49:7 51:18,20 56:14 56:16 59:9,16 63:14 65:8 66:9 68:2,4,5 70:12 71:1 77:3 89:2,5,14
**privity** 84:22
**probably** 32:16 32:21 38:17 43:5 45:11 54:21 64:9 69:17 71:2 87:3 89:7 95:16 96:5 99:21
**problem** 85:7
**Procedure** 119:16
**Proceedings** 5:1
**proceeds** 24:20 25:1,3 78:4
**process** 36:6 61:14 72:13 79:14
**processes** 68:16
**produce** 56:9 65:17
**produced** 38:4 49:10,12,14 51:15 56:13,21 77:7 85:13 99:8 112:11
**product** 59:10 63:14 65:8
**profile** 3:11 15:21,22 16:15 18:4 23:13
**profit** 30:9
**profits** 30:20
**programs** 108:18

**project** 93:17
**projects** 95:3
**promise** 7:12
**promotion** 45:1
**promotional** 79:2 103:17,21
**proof** 54:10,12
**properly** 55:15 104:19 105:12
**proposed** 73:20
**protection** 19:17 20:10
**protections** 20:22
**protective** 102:18 103:8
**protocol** 93:17
**provide** 45:1 47:4 54:15 56:6 60:10 64:7 68:18 69:9,14 87:15 109:13
**provided** 34:17 65:18 88:4,19 114:16
**provides** 48:9
**providing** 92:22
**provision** 40:11 46:7
**PSLRA** 62:4,18 62:22
**pull** 9:19 15:8,13 23:14 28:10 35:4 38:1 42:20 51:6 63:4 77:5 85:11 99:4 112:1 113:6
**purchased** 119:13
**purchasers** 29:3 29:18 30:9,20 35:7
**purpose** 63:15
**purposes** 95:9

99:1
**pursuant** 61:11 79:15
**purview** 107:10
**put** 6:21 52:22
**putting** 78:9
**Pyro** 91:7,9 92:2 98:15
**Pyrobraindav...** 98:13

**Q**

**qualified** 13:12
**question** 7:3 8:1 8:2 10:14 31:15 32:11,22 33:12 36:18 60:21 66:8 72:4 74:9 76:17 81:4,5 82:2 85:2 86:17 106:8 108:11 109:19 111:20 115:4
**questioned** 6:13
**questionnaire** 54:10,21,21
**questions** 7:1,2 14:21,21 15:3 26:3,6,9,21 37:11,16 40:3 40:17 46:1 47:3 60:14 63:9 80:1 82:4 84:12,15 100:8 101:7 102:21 102:21 103:4 103:11 104:13 104:18 105:20 107:2 119:16 120:14,16
**quick** 66:2
**quickly** 16:3
**quote** 55:15

**R**

**racking** 34:21

Case 6:22-cv-00652-PGB-DCI    Document 692-2    Filed 08/06/26    Page 44 of 49 PageID
16702

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.          James Koutoulas 30(b)(6)
                                    Confidential

Page 13

37:9
**raise** 6:3 26:4
**raising** 24:18
**reached** 10:22
**read** 12:18 13:1
  19:2 20:7 21:4
  44:18 55:19
  56:1 57:4
  63:22 83:20
  95:6 120:10
**ready** 119:11
**real** 16:3 91:11
  91:17 98:16,18
**realized** 18:17
**really** 16:9 26:1
  74:8 111:18
  115:3
**reask** 10:14
  109:19
**reattached** 98:1
**recall** 8:7 48:22
  50:5 54:22
  55:4 59:19
  66:17 67:4,15
  74:22 87:2
  100:3
**receive** 44:21
  45:8 66:1 67:8
  97:4 109:3
  111:12
**received** 36:7,19
  37:20 47:8
  70:4
**receiving** 70:9
  75:16
**Recess** 72:21
**recipient** 94:21
  97:7
**recognize** 15:16
  23:16 53:2
  90:16,18
**recollection** 12:3
  25:11 54:18
  98:14
**reconvene** 103:8
**record** 5:16 6:21

7:12,14 8:6,14
  10:4,7,9,10,12
  14:10 15:20
  28:2 37:16
  48:4 51:8,10
  72:20 73:1
  77:6 80:12
  83:19 84:17
  85:12 99:7
  101:20 102:17
  113:2,13 116:5
  116:17,20
  117:1,6 118:9
**recorded** 120:14
  120:16
**refer** 13:6
**reference** 104:7
  107:20
**referenced**
  119:11
**referencing**
  47:18 64:16,17
**referral** 4:8
  99:10 100:11
  100:12 106:15
  110:17 111:13
  111:19
**referred** 13:3
**referring** 39:8
  40:17 45:9,12
  66:19 68:13
**refinance** 18:18
**refresh** 12:2
  25:10 54:18
  98:14
**refusing** 105:6
**reg-** 51:1
**regarding** 13:13
  56:17
**Regardless**
  78:18
**register** 22:21
  23:6 28:18
  31:8
**registered** 19:12
  21:6 22:6

68:18
**registry** 51:1
  71:7
**regulated** 19:11
**regulatory** 23:5
**relate** 82:4
**related** 11:1
  12:6 33:12
  37:20 67:2
  78:3 80:4
  82:10 85:22
  93:16 96:9
  112:4 113:8
**relates** 82:3
**relating** 93:16
**relation** 83:8
  87:16
**relationships**
  107:18 109:6
  109:21 110:4
**relative** 118:10
  118:12
**released** 97:6,12
**releases** 87:18
**relevance** 20:2
  20:16 21:11,16
  21:21 22:4,9
  22:17 24:16
  26:11 27:5
  29:22 30:13
  31:2,12 32:3
  36:14 47:13
  58:12 59:6,17
  60:6 67:21
  70:22 74:6
  83:6,21 96:8
  101:1,9 107:8
  108:1,9 109:10
  110:21
**relevant** 11:5
  34:1 45:3 51:9
  84:10 85:21
**reluctant** 101:13
  101:15
**rely** 11:20
**remain** 116:11

**remember** 54:16
  67:17 74:14,16
**remind** 63:13
**reminder** 63:15
**repeat** 8:22
  31:19 32:11
  97:21
**report** 118:6
**REPORTED**
  1:18
**reporter** 5:12,16
  6:3,9 7:11
  55:16 85:4
  116:13 118:1
**reporter's** 7:14
**represent** 38:3
  51:14 77:6
**representative**
  97:18
**represented**
  24:3
**requesting** 67:2
**requests** 49:11
  99:9
**required** 26:21
  54:12 89:10
**reread** 20:6
**resign** 58:7
**respectfully**
  33:10 34:6
  82:7
**respond** 85:3
**response** 20:14
  20:18 49:11
  71:11 99:9
**responses** 10:20
**responsible**
  93:20
**responsive**
  105:16
**rest** 14:20
**restated** 37:7
**retainer** 54:4
**return** 54:10
  55:14 56:4
**returning** 57:6

**revenue** 25:1
**revenues** 110:18
  111:12
**review** 11:20
  52:5 119:13
**reviewing** 52:20
**revocation** 113:4
**rewards** 96:19
**Rick** 86:11
**right** 6:4 7:16
  23:1 34:3
  46:20 71:17
  83:17 97:8
  98:20 114:2
**rigid** 76:9
**risk** 19:5,8 40:3
  40:16,17 45:22
  68:16
**road** 6:18,18
  80:15
**Robert** 87:20
**role** 26:8 39:17
  60:15 75:2,10
  76:13 78:21
  86:18,21 89:18
  92:5
**roles** 74:20 76:3
**room** 92:22
**RoundTable**
  87:18
**route** 6:18
**RPR** 1:19 118:6
  118:22
**RSA** 1:19 118:6
**rule** 1:12 3:8
  14:12 62:15,17
  118:7
**ruled** 61:22
**rules** 6:19 35:2
  119:16

———————
**S**
———————
**S** 3:6 4:1
**sake** 13:6
**sale** 27:11,17
  61:11 78:22
  104:3,6

Case 6:22-cv-00652-PGB-DCI    Document 692-2    Filed 08/06/26    Page 45 of 49 PageID
16703

9/25/2024    Eric De Ford, et al. v. James Koutoulas, et al.    James Koutoulas 30(b)(6)
Confidential

Page 14

**sales** 109:13
110:7
**San** 2:9
**sanctions** 62:18
**saw** 52:15
**saying** 12:19
49:6 52:17
75:13 80:7,16
**says** 34:9 36:5
39:1,18 40:3
40:10 41:7
43:17 45:15
46:20 50:1
55:13 57:19
58:1 63:17
64:21 65:12,20
68:9,15 69:8
71:4 78:16
92:9 110:13
**Schedule** 11:15
13:14
**scheduling** 8:15
116:8
**School** 16:8
**scope** 26:12 27:6
31:12 32:4
35:1 36:15
37:12 59:7,17
60:7,9 65:8
67:22 70:13
71:1 74:7 78:6
78:19 79:18,21
80:5 81:19,21
86:7,20 92:16
94:13 95:7
99:22 102:13
102:22 103:12
103:16 104:1
107:9 114:3
**Scott** 61:12
86:10 88:1,6
**Scott+Scott** 2:4
2:8 5:18
**screen** 14:6
23:11 32:7
**scroll** 25:9

**Sean** 2:3 5:18
14:5 15:2
26:11 33:10
35:17 37:18
48:3 51:7 52:6
80:2 113:6
116:21
**season** 81:10
**SEC** 19:12
**second** 10:4
12:16 20:11
21:3 24:7
48:17 58:5,19
58:20 63:4,17
63:21 69:19
72:6 78:17
79:16 80:22
81:14 97:10
**second-last** 98:3
**second-to-last**
110:11
**secondary** 18:7
18:14
**secretarial**
68:19
**section** 18:21
27:8 28:19
31:8,9,22 32:6
32:6,13 33:2
38:20 39:1,8
40:2 41:2,3
43:18,21 45:22
46:14 55:5
57:19 106:16
111:3,8 114:3
**sections** 27:19
**securities** 3:13
23:20 27:9,12
27:17 28:19,20
30:10 31:9,10
34:14 35:15
37:2,5
**see** 14:6 16:2
18:8 19:6,20
20:3 24:11
28:14,22 29:12

35:9,16 36:1,5
36:6 37:6 39:3
39:18 40:4,8
40:14 44:14
45:17 46:2,5
46:10 47:9
48:10 50:13
52:2 53:12,16
53:16,21 54:6
54:13 55:5,6
55:10 57:21
58:3,8,22 61:5
63:11,19 64:5
65:3,15,20
66:4 68:11,21
69:12 70:7
71:9,13 72:9
78:9 81:11,16
82:22 92:12,13
95:5 97:3
98:10 101:10
103:13 106:21
106:22 107:19
107:20 114:12
**seek** 108:17
**seen** 11:11 38:13
38:16 43:4
91:18 99:20,21
112:16
**select** 44:1
**selected** 8:19
119:14
**self-explanatory**
18:15
**selfie** 64:1 65:14
65:17
**selfies** 63:18
64:1,7 66:1
**selling** 34:13
**send** 70:3 114:18
**sent** 53:15
**sentence** 19:2
20:7,11 21:4
56:2 57:4
63:21 81:14
**separate** 34:5

54:12 58:18
**September** 1:14
5:10 50:2
118:16 119:7
120:9 121:10
**Series** 21:6,10
21:15 23:6
**serve** 79:10
**services** 66:16
68:19 70:10
81:7 82:21
83:4 87:15
88:5 114:4,15
**serving** 82:5
**set** 66:1 67:6,8
105:18
**settlement** 61:11
**sever** 87:4
**Shareholdings**
42:10
**shares** 44:10
**sheet** 3:12 23:19
119:15 120:15
121:6
**short-form**
114:9 115:1
**show** 37:16
**showcase** 114:8
**showing** 64:2,8
65:14,17
**shut** 33:17
**sic** 37:16 107:14
**side** 87:13,14
**sign** 92:4 102:2
106:12,14
119:12,13
**sign-off** 65:22
**signatory** 24:13
84:7,8 100:19
100:22 101:8
101:22 105:7,8
113:16
**signature** 24:10
119:11,15
120:6,19
121:22

**signed** 49:4 84:1
102:12 119:15
**signer** 98:5
**signing** 119:14
**similar** 39:17
**simple** 93:14
**Sincerely** 119:18
**sir** 10:9
**sit** 73:9
**sites** 65:13
**sits** 73:13
**slash** 95:2
**slogan** 114:10
115:5
**small** 28:22
29:14 44:15
**Smasson@sco...**
2:6
**sold** 34:19
**solicitation**
78:22 104:3,6
**somebody** 86:14
**Somewhat** 96:14
**sophisticated**
18:6
**sorry** 6:17 7:6
8:22 9:4 10:3
15:18 23:10
24:4 31:13
32:6,18 33:22
43:14 55:15
88:14 90:14
96:13 97:17
117:5,7
**sort** 94:9
**sorts** 35:2
**sought** 108:16
109:12
**Sounded** 31:17
**sounds** 98:16,19
**source** 41:3,6
56:4,5,6,7,17
56:18 57:3,5
64:21 65:5,11
**space** 39:5
**spam** 92:21 93:1

Case 6:22-cv-00652-PGB-DCI   Document 692-2   Filed 08/06/26   Page 46 of 49 PageID
16704

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.     James Koutoulas 30(b)(6)
Confidential

Page 15

93:2,3,4,8
**speak** 7:6,10
  106:6
**speaking** 83:13
  85:5
**speaks** 36:3
  81:20
**specific** 86:17
  87:2 103:7
**sponsor** 113:16
  114:8
**sponsored** 114:8
**sponsors** 107:15
  114:3
**sponsorship**
  4:10 77:17
  78:5 81:8 83:5
  112:13 113:1,4
  113:5
**staking** 95:3
  96:12,13
**Stand** 10:5
  72:18
**standard** 93:15
**standing** 62:5,7
  62:8 84:21
**start** 35:5 36:11
  52:18 68:16
**starting** 3:21
  44:13 51:17
**Starts** 57:3
**state** 5:15 8:5
  29:2,17 30:7
  30:19 39:6
  71:12 72:6
  80:12 118:3
**stated** 6:13
  21:17 83:18
  116:10
**statement** 39:9
  44:7 76:22
**states** 1:1 19:16
  35:12 37:2
  39:21 40:1
  43:22 45:16,22
  46:5 47:2,5

**54:4 58:6,15**
  61:2 63:8
  64:22 65:21
  70:1 81:1
  94:20 97:3
  106:16 107:12
  114:7
**stating** 72:11
**stenographic**
  118:9
**stenographica...**
  1:18 118:6
**steps** 65:20
**stick** 60:22
**stop** 76:9 81:22
  84:11,11
**stopped** 61:15
**Street** 1:21
  120:2 121:2
**strike** 17:22
  32:20 53:4
  63:1 73:7
  77:20 80:20
  82:1 101:16
  105:15 109:1
  112:20
**string** 69:19
**structure** 73:4,8
  73:18 74:12,13
  89:22 105:18
  105:21,22
**stuff** 6:20 90:21
  104:16
**subheading**
  28:14,17,22
  29:17 30:7
**subheadings**
  32:9
**subject** 13:17
  53:15 110:15
**subjects** 13:13
**submission**
  54:11,19 55:1
**submitted** 56:20
**submitting** 71:7
**subpoena** 27:6

60:11 79:10
  105:12
**subscribers**
  114:19
**subsection** 29:12
  30:5,17 35:7
**subsequent**
  61:11
**subsequently**
  110:19
**subset** 30:14
  31:3
**subsidiary** 73:19
  73:22 74:5
  79:11,12
**subsidiary's**
  79:10
**Substack** 65:2
**suit** 34:20
**Suite** 1:21 2:8,13
  5:9 119:3
  120:2 121:2
**sum** 110:17
**super** 75:11
**supervision**
  88:19,22
**supervisor** 22:5
  39:11,13 50:16
  50:19 61:4
  71:6 74:21
  75:18 92:6,10
**supervisors**
  50:12 61:3
**supervisory**
  80:19,21 82:9
  89:15
**support** 45:2
  92:22
**supporters**
  108:17
**supposed** 61:13
  62:20
**sure** 7:17 12:19
  13:8 15:1,6
  16:5 25:18
  31:21 49:12

50:22 52:13
  72:17 91:13,15
  91:16 116:12
  116:16
**survived** 61:20
**swear** 5:17 6:5
**sworn** 6:13

——————————
**T**

**T** 2:3 3:6 4:1
**tab** 9:20 14:1
  15:14 23:14
  38:1 42:21
  51:6 77:5
  85:11 99:4
  111:22 112:1
**table** 49:15
**take** 7:11,19,19
  7:22 23:11
  29:9 34:5 64:1
  72:15 104:7
**taken** 5:4 8:2
  72:21 118:9
**talk** 7:13 102:9
**talking** 41:22
  73:4
**Tape** 5:2
**TCM** 65:13
**team** 64:4 72:8
  72:12
**techn-** 18:5
**technical** 88:5
  92:22
**technology** 18:5
  18:19 25:4
  40:12 44:5
  46:8,18
**Telegram** 94:22
  95:12,14,17
**tell** 10:10 22:14
**ten** 17:8
**term** 47:17 69:4
  93:10,13,14,18
  94:20 96:15
  100:12
**terms** 18:10,12
  21:9 89:17

102:3 110:16
**Terrace** 8:10
**testify** 11:17
  13:12 37:13
  74:15
**testifying** 12:7
  13:20 41:17
**testimony** 6:5
  9:10,14,17
  12:10,14,21,22
  13:10,16 37:19
  74:22 76:5
  80:11 100:7
  101:17
**text** 39:5 44:12
  114:9 115:2
**thank** 6:9,17 7:8
  7:18 26:22
  90:9
**Thanks** 51:12
  63:9
**thing** 7:9 58:10
  63:22 83:12
**things** 87:19
  88:5 93:9,17
  96:10
**think** 14:18
  18:12,15 24:3
  33:6 35:19
  59:18 73:5
  78:8 80:3,10
  80:13 81:20
  93:5 101:19
  109:22
**third** 13:2 19:1
  19:16 20:8
  64:21
**third-to-last**
  24:7
**thought** 9:4
  105:16 113:10
**thread** 3:20
  51:17 53:9
  69:21
**three** 52:18
  114:8

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.          James Koutoulas 30(b)(6)
Confidential

Page 16

| | | | | |
|---|---|---|---|---|
| **threshold** 62:9 | 97:1 114:9,20 | 58:16 | **unregistered** | 62:4,22 |
| **Thursday** 66:3 | 114:22 | **Tyler** 2:12 6:1 | 27:12,17 34:13 | **virtual** 40:13,22 |
| **tick** 57:5 | **topic** 78:21 80:7 | **Tyler@ddpala...** | **Unsure** 47:15 | 46:8 |
| **tied** 9:17 | 103:16 | 2:16 | **URL** 65:1 | **virtue** 23:7 |
| **time** 5:10 7:20 | **topics** 11:15,18 | **type** 96:19 | **US\$988** 71:8 | **voiced** 26:17 |
| 8:18 11:1,3,4,6 | 12:3,6 13:14 | **Typhon** 16:12 | **USD** 55:13 56:2 | **voluntary** 87:9 |
| 11:7 33:13 | 33:15 74:11 | 16:14,16,19 | 70:10 | **vs** 1:7 |
| 37:9 55:18 | **topmost** 51:22 | 17:1,4,15 19:2 | **USDC** 56:3 | **VVI** 73:19 74:18 |
| 59:11 72:15 | 71:11 | 19:9 | 57:10,16 70:2 | 74:18 |
| 81:22 82:11 | **tortious** 114:19 | **Typhon's** 19:11 | 70:4,20 71:15 | |
| 83:10,17 86:22 | **totally** 7:22 | | **use** 14:3 18:18 | **W** |
| 87:1 104:7,14 | **traced** 65:6 | **U** | 24:19 44:22 | |
| 119:16 | **track** 75:2 | | 94:21 101:2 | **wait** 55:16 |
| **times** 59:19 86:9 | **trade** 18:19 | **Uh** 94:7 | 107:13 | **waive** 119:14 |
| 86:10,10,10 | **tradeable** 37:2 | **Uh-huh** 83:1 | **user** 57:11 96:17 | **Walker** 61:13,15 |
| 91:10 | **traded** 17:4,9 | **UK** 19:13 21:6 | | 86:10 88:1,6 |
| **timing** 10:19 | **trading** 17:2 | 22:6,12,14,22 | **V** | **wallet** 34:18 |
| 50:1 | 19:3,4 | **Um-hum** 41:5 | | 57:8,10,12,15 |
| **timings** 71:5 | **transact** 22:11 | 42:4 46:3 66:5 | **v** 119:6 120:7 | 64:2,7 66:1,1 |
| **title** 28:17 | **transcript** | 75:15 84:2 | 121:8 | 67:8 70:5,21 |
| **titled** 77:9 85:12 | 119:10,12 | **umbrella** 19:4 | **vague** 64:14 | 71:12,17 |
| 85:14 99:9 | 120:11 | **Umm** 54:16,19 | 65:7 70:15 | **wallets** 57:14,17 |
| 112:12 | **transcription** | 94:10 | 76:16 88:8 | **want** 8:13 15:3 |
| **today** 9:10,14,17 | 120:13,15 | **understand** 7:4 | **Vaguely** 53:3 | 33:6,14 34:21 |
| 11:18 12:7,10 | **transfers** 66:3 | 8:3 13:16 26:7 | **valid** 60:11 | 37:11 44:18 |
| 12:14 13:10,20 | **treated** 116:11 | 60:18 74:12 | 83:15 | 52:11,13 55:21 |
| 74:20 | **trillion** 97:4,5,7 | 76:17 85:6 | **varied** 59:11 | 73:3 86:17 |
| **token** 4:5 29:3 | **true** 34:16 118:9 | 102:3 105:17 | **various** 15:7 | 90:1,21 100:8 |
| 29:18 30:9,20 | 120:13,15 | 108:7,14 109:3 | 74:20 | 101:2 102:11 |
| 35:7 46:9 | **trust** 47:15 75:8 | 111:3,15,18 | **VASP** 39:7 | 104:4,14,15,17 |
| 65:14,17 85:14 | 79:15 82:15,20 | **understanding** | **vehicles** 16:22 | 105:14 115:17 |
| **tokens** 17:4 36:8 | **trustee** 75:8,18 | 28:3 29:5 | **version** 97:10 | **wanted** 18:17 |
| 36:19 37:20 | 76:10,20 84:8 | 33:21 93:6,13 | **versus** 5:5 | 78:4 |
| 40:13,22 44:22 | **truth** 6:6,7 | 96:15 100:12 | **videographer** | **Washington** |
| 45:1,9 46:19 | **try** 55:21 | 111:8 112:22 | 2:19 5:2,11 | 1:21 120:3 |
| 47:8 64:2,8 | **trying** 74:12 | 114:15 | 10:5,8 72:18 | 121:3 |
| 67:11,14 69:11 | 105:17 106:3 | **Understood** | 72:22 116:20 | **wasn't** 33:8 |
| 69:16 70:20 | 111:18 | 52:10 | 117:2,4 | 38:14 79:9 |
| 78:22 83:3 | **turn** 28:21 30:3 | **unified** 19:4 | **videotaped** 1:11 | **wasting** 37:9 |
| 97:4,5,8,11 | 38:9 41:2 42:9 | **Uninterrupted** | 5:3 | 81:22 |
| 104:4 | 53:5 84:3 97:1 | 17:20 | **view** 68:19 | **Water** 108:21 |
| **told** 91:21 | 113:14 | **Unit** 8:10 | **violated** 28:19 | **way** 13:2 20:1 |
| **top** 17:8 45:14 | **turning** 40:2 | **United** 1:1 22:16 | 31:9 62:18 | 83:13 89:1,2 |
| 47:2 63:7 73:9 | 90:7 | 22:18 39:21 | **violating** 34:22 | **we'll** 49:15,15 |
| 73:13 78:16 | **twice** 110:5 | 40:1 45:16 | 35:2 | 56:15 58:20 |
| 79:6 80:22 | **two** 46:9 48:9 | **University** 16:6 | **violation** 3:13 | 72:20 81:4 |
| | | 16:7 | 23:20 | 99:5 117:4 |
| | | **unjust** 62:8 | **violations** 27:8 | **we're** 10:8,10 |

Case 6:22-cv-00652-PGB-DCI   Document 692-2   Filed 08/06/26   Page 48 of 49 PageID 16706

9/25/2024     Eric De Ford, et al. v. James Koutoulas, et al.     James Koutoulas 30(b)(6)
Confidential

Page 17

14:6 16:9 35:17,19,20 37:7 41:21 72:22 73:4 75:9 92:2 101:3 102:17 104:18
**we've** 33:10,11 62:11 72:15 74:19 116:8,8
**wealth** 56:5,7,18 65:12
**website** 54:20
**Wednesday** 1:14
**welcome** 25:11
**went** 16:6,7
**weren't** 102:9
**West** 2:8
**whatnot** 47:16
**wholly** 14:16
**widely** 113:2
**willingly** 103:11
**withdraw** 66:10
**Withdrawn** 66:13
**withheld** 56:17
**witness** 1:12 5:17 6:8 10:12 14:13 15:21 17:7 31:17 34:16 47:20 48:1 51:18,20 52:5,15 55:19 60:2 68:2,4 71:21 78:13 80:1 82:11,15 83:15 100:6 103:3 104:22 108:21 115:15 118:7 119:13 120:8,19 121:9
**woman** 86:13,16
**Wonderful** 71:12
**words** 92:13 115:6

**work** 16:3,10,11 59:10 63:14 65:8 66:7
**worked** 111:11
**world-class** 24:20
**worth** 107:14,22 108:15
**worths** 108:19
**writing** 14:19 93:15,16
**written** 119:22
**wrongly** 56:22
**wrote** 77:16 87:18

### X
**X** 1:4,9 3:1,6 4:1
**Xfinity** 81:8

### Y
**yeah** 7:9 15:18 46:21 48:5,13 49:22 52:11,17 53:7 54:7 55:19 59:9,18 60:2,8 65:9 68:7 71:20 74:8,14 75:1 77:14 78:8 79:5 81:17 82:1 83:15 85:10 88:12 89:7,8 97:5 98:18 99:12 102:1 109:12 113:18 115:18 115:21 116:22
**Yep** 13:15 15:17 24:12 27:13 29:1 39:20 46:11 50:11,14 53:1,22 55:12 65:4,16 68:12 71:10,14 72:10 73:14,16 77:22 87:10 91:2

92:19 93:12 97:9 98:11 113:20
**yes-or-no** 32:22
**York** 2:5,5

### Z
**Zcash** 17:14
**Zero** 36:12
**Zoom** 2:3,7,20 2:21,22
**zoomed** 52:16

### 0
**000274_001** 3:16 38:5
**000280_001** 3:22 51:17
**03102023PRO...** 85:15
**03102023PRO...** 4:9 99:11
**03102023PRO...** 4:12 112:14
**03102023PRO...** 4:7
**03102023PRO...** 4:4 77:10

### 1
**1** 3:8 5:3 14:2,4 14:11 38:20 43:18 94:19 106:16 110:15
**1:00** 8:16 104:16
**10** 4:10 28:14 31:8,22 32:6 32:13 33:2 35:14 112:2 115:14,16,16
**10:20** 1:15 5:1 5:10
**10:26** 10:7
**10:27** 10:7
**10169** 2:5
**11** 115:14
**11/21/2021** 85:9

**11:45** 72:20
**111** 30:2
**112** 4:10 35:11
**113** 36:22
**115** 30:15
**12** 73:1
**12(a)(1)** 27:8 28:19 31:9
**12:50** 117:6
**12:55** 1:15 117:7 117:9
**122** 31:4
**13** 25:2 78:21 80:7 103:16 104:1
**1300** 8:10
**14** 3:8
**15th** 77:19,21 78:13,16
**16** 53:10
**1730** 1:21 120:2 121:2
**18th** 17:17 24:11
**1A** 38:20 43:18
**1C** 39:1
**1D** 40:3 43:21 46:14
**1E** 41:2 45:22
**1st** 11:1,2

### 2
**2** 3:11 23:13 35:7 38:9 40:7 42:3
**20** 110:17
**20036** 1:21 120:3 121:3
**2008** 17:17
**202** 1:22 2:13 5:9 119:3 120:4
**202)-232-0646** 119:17
**202)232-0646** 121:4
**2020** 24:11
**2021** 11:1,9 50:2

53:10 63:8 77:21 78:12
**2022** 11:2,9 52:1 81:9 87:3,3,4 98:9 113:19
**2024** 1:14 5:10 118:16 119:7 119:20 120:9 121:10
**21** 63:8 79:1
**21st** 78:12
**23** 3:12
**230** 2:4
**232-0646** 1:22 120:4
**24** 71:6
**24th** 2:4
**25** 1:14 119:7 120:9 121:10
**25th** 5:10
**26th** 118:16
**28** 28:10
**29** 28:12 32:9

### 3
**3** 3:12 21:6,10 21:15 23:6 40:7 42:17 58:5
**30** 35:5
**30(b)(6)** 1:12 3:8 6:22 8:14 12:13 14:12 26:8 49:20 60:8 61:1 80:5 81:19 101:3 103:7 118:7 119:1,8 120:8 121:9
**30(b)(6)-appr...** 74:8
**31** 30:4 35:4,11
**31st** 113:19
**33** 30:17
**3300** 2:8
**33139** 8:11
**33301-2320** 2:14

9/25/2024          Eric De Ford, et al. v. James Koutoulas, et al.          James Koutoulas 30(b)(6)
Confidential

Page 18

119:4
**35** 32:9
**38** 3:15 25:20
27:1

_____
**4**
**4** 3:15 24:17
25:1 40:7,18
42:9,18,19
46:5 48:8 50:9
58:15
**40** 33:11
**42** 3:17
**4B** 8:10
**4th** 52:1 69:22

_____
**5**
**5** 3:17 27:8
28:19 31:9
50:12 51:5
58:5 61:2 97:4
97:5,7 110:13
**51** 3:20
**5th** 77:19

_____
**6**
**6** 3:4,20 48:6
58:15 90:10
**6:22-cv-652-P...**
1:6
**600** 2:8
**68** 81:8

_____
**7**
**7** 4:3 61:3 90:11
**77** 4:3
**7th** 98:9

_____
**8**
**8** 4:5 90:12,13
98:21 99:3
**800-332-2259**
2:9
**800-404-7770**
2:5
**812** 1:21 120:2
121:2

**85** 4:5

_____
**9**
**9** 3:11 4:8 98:21
99:5 112:1,3
**901** 2:13 5:8
119:3
**92101** 2:9
**954-712-3070**
2:14
**988** 72:7
**99** 4:8