# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| ERIC DEFORD, et al, | Case No. 6:22-cv-652-PGB-DCI |
| Plaintiffs, | CLASS ACTION |
| v. | |
| JAMES KOUTOULAS, et al., | |
| Defendants. | |

**PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS
INCURRED IN RESPONDING TO
DEFENDANT KOUTOULAS'S CONTEMPT VIOLATIONS**

Pursuant to the Court's July 23, 2026 Order (Doc. 658) (the "Contempt Order"), Plaintiffs respectfully submit this Application for Attorneys' Fees and Costs incurred in responding to Defendant James Koutoulas's violations of the Court's Order approving the Class Notice Plan (Doc. 534) (the "Notice Order") and the Court's Order to Show Cause (Doc. 539) (the "OSC"). The Court found Defendant Koutoulas in civil contempt and expressly authorized Plaintiffs to file this Application within twenty-one days. (Doc. 658 at 9). Defendants may file a response in opposition, but their argument is limited to the reasonableness, and not the entitlement to, the fees and costs sought. *Id.*

1

## I.    Background

This Application arises from Defendant Koutoulas's refusal to comply with the Court's Class Notice Order.  On December 22, 2025, the Court entered its order approving the Class Notice Plan and directing the content and manner of notice to the Class (Doc. 534).  On January 4, 2026, Plaintiffs filed their Notice to the Court Regarding Notice to the Class, advising the Court that Defendant Koutoulas had failed to provide the Notice Administrator with class-member contact information and had posted a materially modified and unauthorized version of the Court-approved notice — one that depicted the Court's rulings as the product of improper political bias, questioned the merits of Plaintiffs' case, and encouraged Class Members to opt out. (Doc. 538).  On January 7, 2026, the Court issued its Order to Show Cause and set the matter for an evidentiary hearing. (Doc. 539).  On January 16, 2026, the Court held that hearing, at which Defendant Koutoulas testified.  On January 20, 2026, Plaintiffs submitted their proposed order finding Defendant Koutoulas in civil contempt, (Doc. 562), and on January 30, 2026, Defendant Koutoulas submitted his competing proposed order. (Doc. 574).

On July 23, 2026, the Court entered the Contempt Order finding Defendant Koutoulas in civil contempt for (1) intentionally posting a materially modified and

2

unauthorized version of the Court-approved class notice that depicted the Court's rulings as the product of improper political bias, undermined the legitimacy of Plaintiffs' case, and encouraged Class Members to opt out; (2) failing to provide the Notice Administrator with contact information of potential Class Members; and (3) failing to provide a true and accurate copy of all commentary on the LGB-Coin Discord Channel as directed by the OSC.  (Doc. 658 at 7–8).  The Court authorized Plaintiffs to apply for "reasonable costs and attorney's fees accrued in responding to Defendants' violations of the Order (Doc. 534) and the Order to Show Cause (Doc. 539)."  *Id.* at 9.

The fees and costs sought herein were incurred by Scott+Scott Attorneys at Law LLP and Zigler Law Group in connection with (1) preparing and filing Plaintiffs' Notice to the Court Regarding Notice to the Class (Doc. 538), which led the Court to issue the OSC; (2) briefing the show cause proceedings, including preparing Plaintiffs' proposed order and reviewing the competing proposed orders; and (3) preparing for and appearing at the evidentiary hearing on the OSC.  Plaintiffs do not seek their fees for preparing this Application, monitoring Defendant's compliance, or for reviewing and responding to the multiple emergency motions for

stay or extensions of time to comply, (Docs. 661, 663, 664, 683), the motions to disqualify (Doc. 691), the two Eleventh Circuit appeals and emergency motions to stay the contempt order (Case Nos. 26-12606 and 26-12688), or the Supreme Court appeal and application for stay (Case. No. 26A171).

The expenses sought are the travel and lodging costs counsel incurred to attend the January 16, 2026 contempt hearing in person.

These contempt proceedings have been pending since January 2026. In the nearly eight months since the Court entered its Notice Order, Defendant Koutoulas's refusal to comply has needlessly consumed the resources of the parties and the Court. The fees and costs sought here are the avoidable result of that non-compliance.

## II.    Legal Standard

District courts have inherent power to award attorneys' fees as a civil contempt sanction. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65 (1980); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir. 1985) (upholding fee award against party that ran campaign to solicit opt-outs from class members in violation of court order). Fee awards in civil contempt proceedings compensate

4

the aggrieved party for the costs necessitated by the contemnor's non-compliance. *See Roadway Express*, 447 U.S. at 764-65.

In the Eleventh Circuit, courts calculate a reasonable attorneys' fee using the "lodestar" method—the number of hours reasonably expended multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The lodestar figure is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.

### III.   Summary of Fees and Costs

Scott+Scott recorded a total of approximately 59.0 attorney hours in connection with the contempt-related proceedings described herein. In the exercise of billing judgment, Plaintiffs do not seek compensation for all of that time. Counsel excludes 7.9 hours of travel time to and from the January 16, 2026 hearing, 1.7 hours of overlapping trial-preparation work, and 0.5 hours of clerical time, and seeks compensation for only 48.9 hours: 39.2 hours for partner Sean T. Masson and

5

9.7 hours for associate Mollie Elizabeth Chadwick. *See* Table A, *infra*; Masson Decl. at ¶¶ 12-14.

At the reasonable hourly rates set forth in Table A, these hours yield a lodestar of $44,282.50. Scott+Scott also seeks $1,379.21 in reasonable and necessary expenses incurred in connection with the hearing. *See* Table B, *infra*; Masson Decl. ¶¶ 17-18. Together, Scott+Scott's lodestar and expenses total $45,661.71.

**Table A. Fees for Scott+Scott Attorneys at Law LLP — Contempt-Related Time**

| Professional | Title | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Sean T. Masson | Partner | $975 | 39.2 | $38,220.00 |
| Mollie E. Chadwick | Associate | $625 | 9.7 | $6,062.50 |
| **Total** | | | **48.9** | **$44,282.50** |

**Table B. Expenses Incurred by Scott+Scott Attorneys at Law LLP — January 2026 Contempt Hearing**

| Expense | Amount |
|---|---|
| Airfare (New York to Orlando, round trip) | $855.29 |
| Local ground transportation (taxi and rideshare) | $191.37 |
| Hotel lodging (Orlando) | $269.88 |
| Meals | $62.67 |
| **Total** | **$1,379.21** |

These expenses were reasonably incurred by Scott+Scott Partner Sean T. Masson to attend the January 16, 2026 evidentiary hearing in Orlando, Florida in person, an appearance made necessary by Defendant Koutoulas's contempt. *See* Masson Decl. ¶¶ 17-18.

The Zigler Law Group also incurred contempt-related fees and expenses in responding to Defendant Koutoulas's violations, summarized in Tables C and D below.  ZLG's time and expenses are set forth on the same basis as, and subject to the same billing judgment applied to, the Scott+Scott entries above.  *See* Zigler Decl. at ¶¶ 34-36.

**Table C.  Fees for Zigler Law Group, LLC — Contempt-Related Time**

| Professional | Title | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Aaron Zigler | Partner | $1,000.00 | 5.6 | $5,600.00 |
| Kevin McCormack | Attorney | $775.00 | 48.75 | $37,781.25 |
| Candice Aguirre | Paralegal | $275.00 | 4.9 | $1,347.50 |
| **Total** | | | **59.25** | **$44,728.75** |

**Table D.  Expenses Incurred by Zigler Law Group, LLC**

| Expense | Amount |
|---|---|
| Airfare | $1,418.20 |
| Hotel lodging (Orlando) | $937.47 |
| Local ground transportation (rideshare and airport) | $382.53 |
| Meals | $444.01 |
| **Meal Discount (50%)** | -$222.01 |
| **Total** | **$2,960.20** |

ZLG's submission likewise reflects substantial billing discipline.  ZLG excluded every timekeeper other than the principal personnel who responded to the contempt, no-charged or half-charged all of its travel time, and no-charged a sub-

7

stantial number of other entries.  Zigler Decl. ¶34.  Although ZLG's personnel recorded 83.0 hours, ZLG seeks compensation for only 59.25 hours, having written off $18,406.25, or approximately 29% of the value of its time.  *Id.*

In sum, Scott+Scott seeks $45,661.71 in fees and costs ($44,282.50 in fees plus $1,379.21 in costs), and the Zigler Law Group seeks $47,688.95 in fees and costs ($44,728.75 in fees plus $2,960.20 in costs), for a combined total of $93,350.66.  Plaintiffs further voluntarily reduce that combined total to $75,000.00.

## IV.    The Requested Rates Are Reasonable

In determining an appropriate hourly rate, the Florida Supreme Court and Eleventh Circuit have held that courts should look to the following factors (the "*Rowe* factors"): (1) the skill requisite to perform the legal service properly; (2) the likelihood that undertaking the case would preclude other employment; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; and, (7) the experience, reputation, and ability of the lawyers performing the services. *Joyce v. Federated Nat'l Ins.*, 228 So. 3d 1122, 1126 (Fla. 2017) (citing *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985)); *Resol. Tr. Corp. v. Hallmark Builders, Inc.*,

996 F.2d 1144, 1148 (11th Cir. 1993) (recognizing that "Florida follows the lodestar approach as developed by federal case law")[1]. The *Rowe* factors confirm the rates charged by counsel are fair, reasonable, and reflect the rates required for this level and complexity of work in this district.

    1.  The Novelty and Difficulty of the Questions Involved, and Skill Requisite to Perform the Legal Service Properly

Securities class action litigation, even in traditional assets, is a highly complex and specialized field. This complexity increases significantly when dealing with new technology with rapidly changing laws and regulations.

This case involves investment contracts embodied in new and emerging blockchain technologies. Cryptocurrencies and related digital assets are novel and have existed for just over a decade. The blockchain analysis required to trace transactions in this field is complex and difficult, requiring specialized knowledge, skill,

---

[1] In federal fee shifting statutes, "the court is to consider the 12 factors enumerated in *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). The *Johnson* factors are nearly identical to the *Rowe* factors: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Bivins*, 548 F.3d at 1350 n.2. The Eleventh Circuit has noted the similarity: "under Florida law or federal law, courts use the same lodestar approach." *Sheehan v. Big Lots, Inc.*, No. 24-13354, 2025 WL 2461617, at *8, fn. 5 (11th Cir. Aug. 27, 2025)

and technological acumen. The social media used to promote those assets are like-wise new and generate novel challenges in evidence collection, attribution, and authentication. The sheer volume of documents created in cases involving ongoing social media communications create problems of organization and recall of the relevant documents when needed for presentation to a court.

This case sits at the intersection of these new technologies and the already complex area of securities class action. Few attorneys practice in this area for good reason—it is extremely complicated and difficult to succeed in these cases. As the Eleventh Circuit has held in affirming a $950 hourly rate as part of sanctions under a court's inherent powers, the "use of an attorney from a higher-rate market who had extensive prior experience with a particular factual situation could be justified because of efficiencies resulting from that prior experience." *Sheehan v. Big Lots, Inc.*, No. 24-13354, 2025 WL 2461617, at *10 (11th Cir. Aug. 27, 2025). Given the complexity of the technology and law involved in this case, counsel's skill and experience suggest a higher rate is appropriate than in a run-of-the-mill civil case.

2. The Likelihood That Undertaking the Case Would Preclude Other Em-ployment.

Counsel involved in this case have no shortage of gainful work. Both law firms have been and continue to be engaged in highly lucrative class action cases

throughout the United States. Zigler Decl. ¶¶ 18-20. Each of the attorneys involved presently has other cases likely to generate large contingent fee or hourly awards. *Id.* The decision to take on any case under these circumstances necessarily involves a corresponding decision not to handle other matters that could generate significant fees. Each firm has been required to spend time and resources on this case generally, and on unnecessary tasks generated by Defendant Koutoulas's misconduct in particular, that could otherwise have been devoted to other fee generating cases.

3.  The Fee Customarily Charged in the Locality for Similar Legal Services

Courts in this District and in Florida generally have repeatedly approved hourly rates comparable to, and higher than, those sought here in complex securities class actions. In *Theodore v. PureCycle Technologies, Inc.*, (Docs. 218, 224), No. 6:21-cv-00809-PGB-RMN (M.D. Fla., Oct. 8, 2024), this Court approved an award of $4,000,000 in attorneys' fees, supported by a Pomerantz LLP lodestar reflecting partner rates ranging from $975 to $1,325 and associate rates ranging from $450 to $625, including a partner billed at $975 per hour and an associate billed at $625 per hour, the very rates requested for Mr. Masson and Ms. Chadwick here. *See* Masson Decl., Exs. C and D.

11

Likewise, in *Lemen v. Redwire Corp.*, (Docs. 217, 221), No. 3:21-cv-01254-TJC-PDB (M.D. Fla., Aug. 18, 2025), the Court approved a fee award equal to 30% of the $8,000,000 settlement fund (approximately $2.4 million), supported by a Hagens Berman Sobol Shapiro LLP lodestar reflecting partner rates ranging from $800 to $1,425 and associate rates ranging from $525 to $575, together with a $1,250 partner rate submitted by liaison counsel Buckner + Miles. *See* Masson Decl. Exs. E and F. Similarly, in *Edge v. Tupperware Brands Corp.*, *Edge v. Tupperware Brands Corp.*, No. 6:22-cv-01518-LHP, (Docs. 191-3, 193)(M.D. Fla., April 7, 2026), another securities class action in this Division, the Court approved a one-third fee award of $7,264,500 from a $21,750,000 settlement fund, supported by lodestars from co-lead counsel Pomerantz LLP (partner rates ranging from $1,150 to $1,375 and associate rates ranging from $575 to $650) and Levi & Korsinsky, LLP (partner rates ranging from $975 to $1,075 and associate rates ranging from $475 to $600), with local counsel Cullin O'Brien Law, P.A. billing a $1,000 partner rate. *See* Masson Decl. Exs. E & F. Those approved rates again included a partner billed at $975 per hour and an associate billed at $625 per hour, the very rates requested for Mr. Masson and Ms. Chadwick here. And in *City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*, No. 9:22-cv-80418-DMM (S.D. Fla.), the Court approved

12

attorneys' fees of 25% of the $7,900,000 settlement fund (approximately $1.9 million), supported by a Grant & Eisenhofer P.A. lodestar reflecting partner rates ranging from $1,100 to $1,500 and associate rates ranging from $500 to $650. *See* Masson Decl. ¶¶ 20-23 & Exs. I and J.

These rates are corroborated by multiple independent surveys and Florida-specific market data on securities class action billing. The requested $975 partner rate falls below the average ($1,114) and median ($1,075) hourly rates for AmLaw 200 partners reported in the 2024 Major, Lindsey & Africa Partner Compensation Survey (Masson Decl. ¶26 Ex. M), and between the mean ($803) and 75th-percentile ($1,056) litigation-partner rates in the 2024 Wolters Kluwer Real Rate Report. (Masson Decl. ¶25 Ex. L). The 2024 NALFA Litigation Hourly Rate Survey—collecting self-reported data from more than 32,800 attorneys nationwide—similarly reports that partners handling complex matters predominantly charge more than $751 per hour and that a majority of associates in complex matters charge more than $550 per hour. (Masson Decl. ¶24, Ex. K). The locality-adjusted Laffey Matrix, (Masson Decl. ¶27 Ex. N), supports a rate of $1,170 per hour for attorneys with more than 20 years of experience. Most significantly, the rates sought here have

13

already been reviewed and approved by federal courts in analogous cryptocur-

rency securities class actions: Mr. Masson's $975 rate and Ms. Chadwick's $625

rate were submitted to and accepted in *Roberts v. Ehrlich*, No. 1:22-cv-09590-PKC,

(ECF No. 112), (S.D.N.Y. Oct. 9, 2024) , and Ms. Chadwick's $625 rate was likewise

approved in *Boston Retirement System v. Uber Technologies*, No. 3:19-cv-06361, (ECF

No. 475, 481) (N.D. Cal. Dec. 4, 2024).  *See* Masson Decl. ¶¶ 8-9, 19-26.

4.  The Amount Involved

This case involved a collapse in the market capitalization of LGBCoin from

$570 million to around $0. (Doc. 354). A default judgment has now been entered

against Koutoulas, with damages yet to be determined by the Court but expected

to be in excess of $20 million in recessionary relief, plus fees and expenses. Dili-

gence and zeal are required when dealing with a case involving such significant

damages figures.

5.  The Time Limitations Imposed by the Client or by the Circumstances

On December 22, 2025, the Court certified the Class and ordered class notice

by January 4, 2026. (Doc. 534). Plaintiffs' counsel immediately adjusted their holi-

day plans and began working diligently to provide notice to the class. (Doc. 538).

At the same time, Plaintiffs were working on trial preparation in anticipation of

meeting and conferral for the pre-trial order, which was due by January 5, 2026. (Doc. 530). Koutoulas's decision to violate the Court's order came between Christmas and New Year, while Plaintiffs' counsel were already fully engaged on other activities in this case. (Doc. 538-4, 538-5). The circumstances thus required an exceptional effort in a compressed timeframe.

6.  The Nature and Length of the Professional Relationship With the Client.

Plaintiffs' counsel has represented Plaintiffs since the investigation and filing of this case.

7.  The Experience, Reputation, and Ability of the Lawyers Performing the Services.

Plaintiffs' counsel in this matter are seasoned litigators with extensive experience in complex class actions, in general, and in securities class actions including cryptocurrency class actions, in particular. The attorneys from Zigler Law Group brought decades of experience as lead counsel in successful securities class actions and other complex litigation. Zigler Decl. ¶¶9-17. The attorneys from Scott + Scott have similarly impressive experience, including successful cryptocurrency class action experience. Masson Decl. ¶¶ 4, 8-9. The attorneys from both firms have impeccable reputations and bring a refined, highly-focused skillset to this matter. Zigler Decl. ¶¶ 4-17, 25-26, Masson Decl. ¶¶ 2-5, 8-9.

The hourly rates sought by Plaintiffs' counsel are reasonable and consistent with the prevailing market rate in the relevant legal community for attorneys of comparable skill, experience, and reputation handling complex securities class action litigation.[2]  The Masson and Zigler Declarations set forth, for each timekeeper for whom fees are sought, the timekeeper's identity, experience, and qualifications; the hours requested; a description of the tasks performed; the requested rate; lead counsel's verification that the rate is the rate each firm actually charges and its clients actually pay; and evidence of the prevailing market rate.  *See* Masson Decl. ¶¶ 8-11, 19-28; Zigler Decl. ¶¶ 27-37.  Plaintiffs' Counsel's hourly rates are comparable to those used by counsel in other complex securities or shareholder litigation. They are also commensurate with rates used by peer plaintiffs'-side securities firms litigating matters of a similar magnitude.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (explaining that courts should consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation").

---

[2] *See* Table of Peer Law Firm Billing Rates, attached as Exhibit O to the Application, which summarizes the billing rates charged by peer plaintiffs'-side securities firms in comparable securities class actions and confirms that the rates sought here fall within the prevailing market range.

16

## V.    The Hours Expended Are Reasonable

The hours for which Plaintiffs seek compensation were reasonably spent responding to Defendant Koutoulas's violations of the Notice Order and the OSC. Had he complied with those orders, none of this work would have been necessary.

The work was substantial. It included: (i) investigating and documenting Defendant Koutoulas's non-compliance and preparing Plaintiffs' Notice to the Court Regarding Notice to the Class (Doc. 538), which prompted the Court to issue the OSC; (ii) researching the governing civil-contempt standards and the ethical constraints implicated by Defendant Koutoulas's communications with Class Members and solicitation of opt-outs, including Rule 4-4.2 of the Florida Rules of Professional Conduct; (iii) monitoring and reviewing Defendant Koutoulas's continuing communications with putative Class Members on the LGBCoin Telegram channel; (iv) preparing for the January 16, 2026 evidentiary hearing, including assembling the record and examination materials; (v) appearing in person at that hearing, at which counsel examined Defendant Koutoulas, (vi) reviewing the resulting transcript; and (vii) preparing the proposed order on contempt following the hearing. *See* Masson Decl. ¶¶ 7, 13-14.

17

Counsel has likewise exercised billing judgment. As reflected above, Scott+Scott declined to charge for its travel time and excluded overlapping trial-preparation and clerical time, seeking compensation for only 48.9 of the 59.0 hours it recorded. The Zigler Law Group similarly declined to charge for the vast majority of their travel time and excluded large amounts of compensable time, seeking compensation for only 59.25 of the 83.0 hours it recorded.

Lead Counsel have reviewed each time entry, confirmed that the rates set forth above are the rates actually charged by each timekeeper, and removed charges, if any, for tasks that were excessive, duplicative, clerical, or otherwise un-reasonable. *See* Masson Decl. ¶¶ 15-16; Zigler Decl. ¶¶ 33-37.

## VI.    The Expenses Are Reasonable and Were Necessarily Incurred

The expenses sought were incurred for counsel's in-person attendance at the January 16, 2026 hearing. Counsel verifies that each expense was actually in-curred, was reasonable and necessary, and reflects the exercise of billing judgment. *See* Masson Decl. ¶¶ 17-18; Zigler Decl. ¶¶ 38-39. Supporting accountings are at-tached as Exhibit B to the Masson Declaration and Exhibit B to the Zigler Declara-tion.

## VII.   Conclusion

Although Plaintiffs actually incurred all of the fees and costs described herein, Plaintiffs voluntarily reduced their total request significantly.  Plaintiffs respectfully request that the Court grant this Application and award Plaintiffs their attorneys' fees and costs totaling $75,000.00, to be paid by Defendant Koutoulas.

Dated: August 12, 2026          Respectfully submitted,

                                s/ Kevin McCormack
                                Aaron M. Zigler (admitted *pro hac vice*)
                                Nidya S. Gutierrez (admitted *pro hac vice*)
                                Lawrence V. Ashe (FL Bar 932280)
                                Kevin McCormack (admitted *pro hac vice*)
                                **ZIGLER LAW GROUP, LLC**
                                308 S. Jefferson Street | Suite 333
                                Chicago, IL 60661
                                Tel: 312-673-8427
                                aaron@ziglerlawgroup.com
                                nidya@ziglerlawgroup.com
                                larry@ziglerlawgroup.com
                                kevin@ziglerlawgroup.com

John T. Jasnoch (admitted *pro hac vice*)          Sean T. Masson (admitted *pro hac vice*)
**SCOTT+SCOTT**                                     **SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**                            **ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300                         The Helmsley Building
San Diego, CA 92101                                230 Park Avenue, 17th Floor
Tel.: 619-233-4565                                 New York, NY 10169
jjasnoch@scott-scott.com                           Tel.: 212-223-6444
                                                   smasson@scott-scott.com

*Attorneys for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on August 12, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

<u>*s/ Kevin McCormack*</u>