**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ERIC DEFORD, et al, | Case No. 6:22-cv-652-PGB-DCI |
| Plaintiffs, | CLASS ACTION |
| v. | |
| JAMES KOUTOULAS, et al., | |
| Defendants. | |

**DECLARATION OF AARON ZIGLER IN SUPPORT OF**
**PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS IN-**
**CURRED IN RESPONDING TO DEFENDANTS' CONTEMPT VIOLATIONS**

1.     I, Aaron M. Zigler, declare pursuant to 28 U.S.C. §1746 as follows:

## I.   BACKGROUND AND QUALIFICATIONS

2.     I am the founding and managing Partner at Zigler Law Group, LLC , a nationwide complex litigation firm.

3.     I am co-counsel for Plaintiffs Eric De Ford, Sandra Bader, and Shawn R. Key in the above-captioned action.  I submit this Declaration in support of Plaintiffs' Application for Attorneys' Fees and Costs Incurred in Responding to Defendant Koutoulas's Contempt Violations, filed pursuant to the Court's July 23, 2026

1

Order (Doc. 658) (the "Contempt Order"). I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently testify thereto.

4. I am currently admitted to practice in the highest courts of the states of Missouri, Illinois, New York, and California; the Second, Seventh, Ninth, and Eleventh Federal Circuit Courts of Appeal; and in many Federal district courts. I have been actively involved in the prosecution of this action since its inception and personally supervised and performed the ZLG work reflected in this Application.

5. I have received the recognition of my peers through a Martindale-Hubbell AV Preeminent peer rating since 2011, multi-year selections as a Super Lawyers Missouri and Kansas "Rising Star" and 2024-27 selections as an Illinois "Super Lawyer." I have also been honored as a finalist for Public Citizen's Trial Lawyer of the Year award. I am a member of the American Society of Legal Writers.

6. Prior to founding Zigler Law Group, I was a partner at Keller Postman (*f/k/a* Keller Lenkner) where I managed its class action group and supported its mass arbitration practice, and Korein Tillery, where I managed all aspects of high-stakes litigation for nearly two decades.

7.      In my career, I have almost exclusively represented plaintiffs in complex and class action litigations. Some notable decisions for which I served as counsel include: *Passman v. Peloton Interactive, Inc.*, No. 19 CIV. 11711 (LGS), 2025 WL 1284718, 2025 U.S. Dist. LEXIS 84144 (S.D.N.Y. May 2, 2025); *In re Amazon Return Pol'y Litig.*, No. 2:23-CV-1372, 2025 WL 1237665, 2025 U.S. Dist. LEXIS 81253 (W.D. Wash. Apr. 29, 2025), *Fishon v. Peloton Interactive, Inc.*, 620 F.Supp.3d 80 (S.D.N.Y. 2022), *Senne v. Major League Baseball*, 934 F.3d 918 (9th Cir. 2019*); Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, No. 15 CIV. 9945 (LGS), 2018 WL 4253152 (S.D.N.Y. Sept. 6, 2018); *U.S. ex rel. Conroy v. Select Med. Corp.*, 211 F. Supp. 3d 1132 (S.D. Ind. 2016); *U.S. ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581 (S.D.N.Y. 2015); *U.S. ex rel. Garbe v. Kmart Corp.*, 73 F. Supp. 3d 1002 (S.D. Ill. 2014); *U.S. ex rel. Garbe v. Kmart Corp.*, 968 F. Supp. 2d 978 (S.D. Ill. 2013); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902 (S.D. Ill. 2012); *Carr v. Gateway, Inc.*, 944 N.E.2d 327 (Ill. Feb. 3, 2011); *Johnson v. Allstate Ins. Co.*, 2009 WL 3230157 (S.D. Ill. Sept. 30, 2009); and *Hoormann v. SmithKline Beecham Corp.*, 2007 WL 1591510 (Ill. Cir. Ct. May 17, 2007).

8.    The expertise and experience of Lead Counsel is an important factor to be weighed in setting fair fees. As described above, I have practiced law with a focus on complex and class action litigation for twenty-five years and have recovered hundreds of millions of dollars for plaintiffs and class members over the course of my career. My co-counsel are similarly experienced in prosecuting complex litigation.

9.    Some of the cases for which I served a prominent leadership role as counsel include the following:

10.    *Senne v. The Office of the Comm'r of Baseball*, No. 14-CV-00608-JCS, 2017 WL 897338 (N.D. Cal. Mar. 7, 2017). Minor League baseball players alleged that they were paid less than minimum wage during the season and not paid at all during Spring Training violating federal and state wage laws. Plaintiffs won certification of an FLSA collective and a Rule 23 class of minor leaguers who played in California. *Senne*, 2017 WL 897338 (N.D. Cal. Mar. 7, 2017). The Ninth Circuit affirmed the certification of the California class and reversed denial of Arizona and Florida classes. *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 922 (9th Cir. 2019). The case settled for $185 million. *Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608 JCS, 2023 WL 2699972 (N.D. Cal. Mar. 29, 2023).

11.     *Axiom Investment Advisors, LLC v. Barclays Bank PLC,* No. 15-cv-9323-LGS (S.D.N.Y. July 19, 2017). This nationwide class alleged that instead of executing currency orders placed by Barclays' customers as they were received, Barclays delayed execution of matched trades for several hundred milliseconds. If the trade would be unfavorable, Barclays reneged on the agreed price and either rejected the trade or filled the order at a worse price breaching its contract with class members. The matter settled for $50 million.

12.     *United States ex rel. Garbe v. Kmart Corp.,* 73 F. Supp. 3d 1002 (S.D. Ill. 2014). Kmart pharmacies charged low, flat-rate prices for certain generic drug prescriptions when those drugs are purchased by cash customers. However, Kmart charged significantly higher prices to customers with Medicare Part D coverage for the same prescription. In defending against this False Claims Act action, Kmart claimed it had not overcharged the Government because its cash-customers are not the "general public" but rather members of an exclusive "club" through which they are offered the discount prices. The district court rejected Kmart's arguments and denied its motions for summary judgment and granted summary judgment in favor of the Relator. Kmart appealed. The Seventh Circuit ruled that price given to Kmart pharmacy customers paying out-of-pocket should have been passed

along to the Government. *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016). Following additional motion practice, Kmart settled on the eve of trial with Kmart agreeing to pay $59 million.

13. *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 903 (S.D. Ill. 2012). A class of public and private water providers throughout the country alleged that the herbicide atrazine—one of the most-used herbicides in the United States —contaminated their water supplies. After almost eight years of litigation in state and federal court, the case settled for $105 million. Public Justice honored Aaron Zigler as one of its finalists for its Trial Lawyer of the Year award for his work in this case.

14. *Parker v. Sears, Roebuck & Co.*, Case No.: 04-L-716 (Ill. Cir. Ct. Sept. 18, 2007). This action sought to remedy Sears' failure to install anti-tip safety devices, which prevent ranges from tipping over and severely burning or injuring unsuspecting consumers, on ranges that it sold, delivered and set-up in customers' homes. To increase its profits, Sears adopted a policy of refusing to install anti-tip brackets during normal installation unless the customer agreed to incur a substantial cost. At the same time, Sears failed to disclose the hazards associated with forgoing anti-tip bracket installation. The case settled providing complete relief to the

6

class by requiring Sears to install anti-tip brackets for the affected members of the class as well as requiring the installation of such brackets in the future. This settlement was touted by the public interest organization Public Citizen as an example as to how consumer class actions benefit society.

15.    *Barbara's Sales, Inc. v. Intel Corp.*, 367 Ill. App. 3d 1013 (July 25, 2006). Plaintiffs alleged that defendant engaged in consumer fraud by concealing from purchasers that the Pentium 4 was not any faster or otherwise superior to the Pentium III available at the same time. Plaintiffs asked that a class be certified including all purchasers of Pentium 4 computers within the United States and applying California law to the defendant's conduct on the ground that the defendant's wrongful conduct occurred in that California, and the policies animating its conduct-governing law gave the state the most significant relationship with the litigation and that as the defendant's principal place of business, it had a significant aggregation of contacts to support application of its law nationwide. After the trial court certified a class action restricting the class to Illinois purchasers and applying Illinois law, the plaintiffs appealed. The appellate court reversed, agreeing that a nationwide class was appropriate and that California law should apply to all purchases.

16.    *Hoormann v. SmithKline Beecham Corp.*, 04-L-715 (Ill. Cir. Ct. May 17, 2007). A nationwide class of purchasers alleged that SmithKline Beecham promoted Paxil and Paxil CR for prescription to children and adolescents, despite actual knowledge that these drugs exposed them to dangerous side effects while also failing to treat their symptoms violating consumer fraud laws. The nationwide settlement established a $63.8 million fund to reimburse class members 100% of their out-of-pocket expenses. The New York Attorney General's Office settled its lawsuit concerning the same conduct for a $2.5 million fine.

17.    *Prather v. Pfizer Inc.*, 02-L-480 (Ill. Cir. Ct. Dec. 2, 2004). Pfizer marketed its anti-diabetes drug Rezulin as a "breakthrough" that was as "safe as a placebo." But over the course of the three years Rezulin was on the market, many people died and many more were seriously injured as a result of its use. Because of the harmful effects of Rezulin, thousands of personal injury cases and 50 class action cases were filed. Of the class actions, only this one—alleging unfair business practices under the New Jersey Consumer Fraud Act—lead to any recovery. The settlement established a $60 million fund to pay 85% of plaintiffs' out-of-pocket expenses for Rezulin and an additional $20 million cy pres award to finance diabetes research. This settlement was used on the floor of the Senate as an example

of why class actions serve the public good. See 150 Cong. Rec. 92, S7714-17 (July 7, 2004 statement of Sen. Durbin); 151 Cong. Rec. 12, S1082-85 (February 8, 2005 statement of Sen. Durbin).

## II.   ZIGLER LAW GROUP'S PRACTICE

18.   Zigler Law Group is a national high-stakes class action and complex litigation firm committed to protecting consumers and investors from corporate misconduct.

19.   We do not focus on any specific practice area.  Instead, we focus our attention on bringing impactful litigation. We generally limit our practice to cases on behalf of plaintiffs with potential damages exceeding $100 million where there is a palpable harm suffered by the potential plaintiffs and where we believe the case can make a substantial impact in improving the law or society. As a result, our cases run the gamut of industries and causes of action, are always well defended, and are never easy.

20.   My firm maintains a robust case generation pipeline with dozens of cases or potential cases at various stages of development at any time. We maintain an active litigation docket throughout the United States. As a result, my firm has more active and potential cases to pursue than time available to pursue them. At

the beginning of this case and throughout it, time spent on this case necessarily required personnel to divert their time and resources from other, lucrative matters. Many of our potential cases which I consider likely to generate revenue have gone and will go unfiled, simply for lack of time to properly devote to the development, investigation, and prosecution of the case.

## III.   ZLG'S INVOLVEMENT IN THE CONTEMPT PROCEEDINGS

21.   ZLG served as co-counsel for Plaintiffs in responding to Defendant Koutoulas's violations of the Court's Order approving the Class Notice Plan (Doc. 534) (the "Notice Order") and the Court's Order to Show Cause (Doc. 539) (the "OSC"), resulting in the Court's civil contempt finding set forth in the Contempt Order.

22.   ZLG's work in the contempt proceedings included, among other things: investigating Defendant Koutoulas's communications with Class Members, investigating Defendant Koutoulas's modifications to the Court-approved class notice and his failure to provide required class member contact information; researching and drafting Plaintiffs' Notice to the Court Regarding Notice to the Class (Doc. 538); researching civil contempt law, available sanctions, and correc-

10

tive notice procedures; preparing for and attending the January 16, 2026 evidentiary hearing; reviewing and analyzing Defendant Koutoulas's Discord commentary and related Telegram records; drafting Plaintiffs' proposed contempt order; monitoring Defendant's compliance with the contempt order, reviewing multiple motions for stay and extensions of time to comply (Docs. 661, 663, 664, 683), monitoring the two Eleventh Circuit appeals and emergency motions to stay (Case Nos. 26-12606 and 26-12688), moving for and obtaining partial dismissal of one such appeal, and monitoring a Supreme Court appeal and application for stay (Case. No. 26A171).

23.    The Court's Notice Order (Doc. 534) was entered and required notice in a contracted timeframe over the Christmas holiday. My firm immediately worked to provide notice as provided in the Court's order, (videoconferencing with Angieon within hours) while simultaneously preparing for trial and attempting to engage in the meet and confer process.

24.    Koutoulas's non-compliance necessitated additional work at a time when ZLG attorneys were already fully engaged on this and other matters.

11

## IV. QUALIFICATIONS OF ZLG TIMEKEEPERS

### A. <u>Aaron M. Zigler</u>

25.     My background and qualifications are set forth above.  My current billing rate of $1000 per hour is consistent with my experience, the complexity of this litigation, and prevailing market rates in the Orlando Division for attorneys of comparable skill and experience in complex class action matters.

### B. <u>Kevin M. McCormack</u>

26.     Kevin McCormack is an Attorney at ZLG.  He is admitted to the Tennessee bar, the United States Tax Court, and the Fifth, Sixth, and Eleventh Federal Circuit Courts of Appeals, and has been admitted *pro hac vice* in numerous federal district courts. Mr. McCormack has sixteen years of litigation experience, concentrating in complex class action litigation. Mr. McCormack is a Certified Information Privacy Professional (CIPP/US) and a certified Artificial Intelligence Governance Professional (AIGP) with the International Association of Privacy Professionals (IAPP) and has received recognition of his peers by multi-year selection as a member of the American Inns of Court. Mr. McCormack's current billing rate of $775 per hour is consistent with his experience, the complexity of this litigation,

and prevailing market rates in the Orlando Division for attorneys of comparable skill and experience in complex class action matters.

## V.    ZIGLER LAW GROUP'S BILLING PRACTICES

27.    We represent clients on a pure contingency basis, including fronting all costs and indemnifying clients against adverse cost awards. Nevertheless, we do so understanding that we may be required to disclose billing rates and time records for purposes of justifying a fee request using the lodestar method. Accordingly, although we do not invoice our clients for our work, we do record our professional activities and establish and maintain billing rates for our professionals.

28.    To ensure that we maintain accurate time records, our firm utilizes Billables.ai time capture software to record the time our professionals spend on client matters.

29.    The Billables.ai time capture software passively monitors all of the activity on a user's system and contemporaneously records the duration of all of the activity to the tenth of an hour.  Our professionals are expected to review their Billables time entries on a daily basis. My firm's use of the Billables.ai software to capture the actual duration, in six-minute increments, of time spent on client matters prevents entry errors and ensures that time records are true and accurate.

30.     Because the Billables.ai system does not capture the duration of calls on mobile phones, our professionals endeavor to manually record the duration reflected in the call log of calls to or from that line which are related to client matters on a daily basis.

31.     Billables time records are uploaded into ZLG's Salesforce system nightly providing daily updates to firm management through dashboarding and reports. The firm reviews all time records monthly to identify and remove time records that may be unproductive, excessive, or redundant.

32.     There is no incentive for our professionals to bill unproductive time. My firm does not impose minimum billing requirements on its professionals.  Instead, lawyers are incentivized to generate new matters and to increase the value of existing cases and encouraged to seek out pro bono opportunities.

## VI.     ZIGLER LAW GROUP'S FEES AND HOURS INCURRED IN THE CONTEMPT PROCEEDINGS

33.     Attached hereto as Exhibit A is a true and correct copy of ZLG's billing records for the time its professionals spent in connection with the contempt proceedings that are the subject of this Application.  These records document time expended during the period from December 28, 2025 through January 20, 2026.

14

34.     In the exercise of billing judgment, ZLG excluded from this Application every timekeeper other than the principal personnel who responded to the contempt, no-charged or half-charged all of its travel time including all of my own travel time, and no-charged a substantial number of other entries. Although ZLG's personnel recorded 83.0 hours not including my own travel time, ZLG seeks compensation for only 59.25 hours, having written off $18,406.25, or approximately 29% of the value.

35.     After the exercise of billing judgment, ZLG's fees for the contempt proceedings are as follows:

| Professional | Title | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Aaron Zigler | Partner | $1,000.00 | 5.6 | $5,600.00 |
| Kevin McCormack | Attorney | $775.00 | 48.75 | $37,781.25 |
| Candice Aguirre | Paralegal | $275.00 | 4.9 | $1,347.50 |
| **Total** | | | **59.25** | **$44,728.75** |

36.     I have personally reviewed each of the billing entries submitted in connection with this Application.  Each entry was recorded contemporaneously, reflects time actually expended on tasks directly related to responding to Defendant Koutoulas's contempt violations, is of the kind and character that ZLG nor-

15

mally bills, and was reasonably necessary to give Plaintiffs the best possible opportunity to prevail in the contempt proceedings. I have removed any entries that were duplicative, excessive, unproductive, or clerical in nature.

37.   I verify that the billing rates set forth in Table A reflect the rates actually maintained by ZLG for its professionals, that I have personally reviewed all time entries submitted herewith, and that I have removed entries that I determined to be unreasonable.

## VII.   ZIGLER LAW GROUP'S EXPENSES INCURRED IN THE CONTEMPT PROCEEDINGS

38.   Attached hereto as Exhibit B is a true and correct copy of ZLG's expense records for costs incurred in connection with the contempt proceedings. These expenses were reasonably and necessarily incurred in connection with the January 16, 2026 evidentiary hearing in Orlando, Florida, and are of the type that ZLG includes in a bill for professional services and that are not absorbed as firm overhead. All expense entries were verified against the credit card invoices for Aaron Zigler and Kevin McCormack's travel to Orlando. ZLG has voluntarily cut meal expenses by half for this hearing, from $444.01 to $222.00.

16

39.    ZLG's expenses are summarized as follows:

| Expense | Amount |
|---|---|
| Airfare | $1,418.20 |
| Hotel lodging (Orlando) | $937.47 |
| Local ground transportation (rideshare and airport) | $382.53 |
| Meals | $444.01 |
| **Discount (50%)** | **-$222.01** |
| **Total** | **$2,960.20** |

## VIII.    MARKET RATE EVIDENCE

40.    My current rate of $1,000 an hour is well established. While I was at Korein Tillery and Keller Postman (f/k/a Keller Lenkner), my rate was set by the firm's management based on a review of market rates and through negotiation with hourly or hybrid clients. My rate has been accepted numerous times in support of fee petitions in common fund settlements.

41.    In 2023, my billing rate of $900 was accepted by Judge Spero in awarding fees in Senne *v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608 JCS, 2023 WL 2699972, at *20 (N.D. Cal. Mar. 29, 2023) ("The Court has reviewed the hours and rates submitted by Plaintiffs' counsel and finds them to be reasonable given the complexities and length of the case."), *See* Decl. of Garrett Broshuis, ECF No. 1147-1 at *31 (Nov. 23, 2022).  As described above, *Senne* was a wage and hour class

17

action that challenged the classification of minor league baseball players as seasonal employees exempt from minimum wage and overtime. *See Infra* ¶¶ 11, 20-24.

42.     In 2021, my hourly billing rate of $900 was accepted by Judge Freeman in awarding attorney fees in *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 U.S. Dist. LEXIS 58514, 2021 WL 1531171, at *11 (N.D. Cal. Apr. 19, 2021) ("A lodestar cross-check confirms the reasonableness of the requested fees."). *See* Decl. of Aaron M. Zigler, ECF No. 140-3 at ¶ 14 (Feb. 4, 2021).

43.     In 2018, my hourly billing rate of $850 was accepted by Judge Schofield in awarding plaintiffs a fee award of more than $300 million in *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 CIV. 7789 (LGS), 2018 WL 5839691, at *5 (S.D.N.Y. Nov. 8, 2018). *See* Decl. of George A. Zelcs, ECF No. 939-4 at 9 (Jan. 12, 2018).

44.     In 2017, my hourly billing rate of $725 was accepted by Judge Schofield in awarding plaintiffs a fee award totaling $8.75 million in *Axiom Investment Advisors, LLC v. Barclays Bank PLC*, 15-cv-9323, ECF No. 129 (S.D.N.Y. July 24, 2017). *See* Decl. of George A. Zelcs, ECF No. 114 at 5 (Feb. 28, 2017).

## IX.   COMBINED REQUEST AND VOLUNTARY REDUCTION

45.   ZLG's *total* lodestar for the contempt proceedings is $44,728.75 and expenses of $2,960.20. Combined with Scott+Scott's total lodestar of $44,282.50 and expenses of $1,379.21, the total lodestar and expenses for both firms is $93,350.66.

46.   In the exercise of billing judgment and in a spirit of cooperation with the Court's efficient resolution of this matter, Plaintiffs' counsel have voluntarily reduced the total requested amount to $75,000.00—a reduction of $18,350.66, or approximately 19.6%.  The requested amount of $75,000.00 is reasonable, necessary, and commensurate with the work performed in responding to Defendant Koutoulas's three separate contempt violations.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 12, 2026, in Chicago, Illinois.

By:  _____*/s Aaron Zigler*_____

          Aaron M. Zigler

19