**DEFENDANTS' POSITIONS FOR THE JOINT FINAL PRETRIAL STATEMENT**

*De Ford v. Koutoulas*, No. 6:22-cv-652-PGB-DCI (M.D. Fla.)

Working draft for conferral. This is not a standalone filing. Under Local Rule 3.06(b) and Doc. 620 § III.B.1 the parties file a single Joint Final Pretrial Statement signed by lead trial counsel for all parties and by any unrepresented party. Doc. 620 provides that the Court will strike pretrial statements that are unilateral, incompletely executed, or otherwise incomplete. The text below is intended for insertion as Defendants' positions into the joint document based upon Plaintiffs' previous statement of the case. Defendants reserve the right to update their position based on subsequent updates by Plaintiffs.

Defendant LGBCoin, Ltd. is represented in this action by Harry Winderman, Esq., who appeared on its behalf on May 13, 2026 (Doc. 632). Defendant Koutoulas appears pro se (Doc. 623). The positions stated below on behalf of LGBCoin, Ltd. are subject to review and execution by its counsel, and the signature blocks below reflect separate execution by each Defendant.

**Operative deadlines, Sixth Amended Case Management and Scheduling Order (Doc. 620, filed April 15, 2026):**

Meeting in person to prepare the Joint Final Pretrial Statement, and written disclosure of whether each trial witness appears live or by deposition designation: August 3, 2026.

Joint Final Pretrial Statement filed, with jointly proposed jury instructions and verdict form, voir dire questions, witness lists, exhibit lists with objections on the approved form, and deposition designations; jury instructions and verdict form also emailed to chambers in Microsoft Word format; full deposition transcripts delivered to the Court on CD or flash drive: August 17, 2026.

All other motions, including motions in limine (single motion, 25 pages), and objections to deposition designations and counter-designations on the approved form: August 24, 2026.

Objections to counter-designations: August 31, 2026.

Final pretrial conference: September 15, 2026, 3:00 p.m., Courtroom 4B, before Judge Byron.

Trial term begins: October 5, 2026, 9:00 a.m. Estimated length 14 days. Jury.

(1) the basis for the court's jurisdiction,

This Court has federal-question jurisdiction over the sole certified claim, the First Cause of Action under Section 12(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(1), pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 77v. Defendants do not contest the Court's jurisdiction over that claim.

The only other claims remaining are the individual state-law unjust enrichment claims of the three named Plaintiffs. Doc. 455 at 2, 32. Plaintiffs pleaded jurisdiction over their state-law claims under 28 U.S.C. § 1332 on the basis of a putative class of more than 100 members seeking more than $5,000,000 in the aggregate. Third Am. Compl. ¶ 61. Class certification of the unjust enrichment claims was denied, and those claims proceed only as the individual claims of the three named Plaintiffs, none of whom is alleged to satisfy the amount in controversy required by 28 U.S.C. § 1332(a). Whether original jurisdiction over the three individual claims persists under 28 U.S.C. § 1332(d) following the denial of class certification of those claims, or whether they now rest on supplemental jurisdiction under 28 U.S.C. § 1367, is addressed at Section (13)(B)(1) below.

Whatever the jurisdictional basis, Defendants respectfully submit that the individual unjust enrichment claims should not be tried to the jury empaneled for the certified federal class claim. Defendants request that those claims be severed and tried separately under Federal Rule of Civil Procedure 42(b), object under Federal Rule of Evidence 403 to trying them together with the class claim, and, to the extent those claims rest on supplemental jurisdiction, request that the Court decline to exercise it under 28 U.S.C. § 1367(c)(2) and (c)(4). The unjust enrichment claims turn on intent, conduct, and the equities; that evidence has no bearing on the strict-liability registration claim under Section 12(a)(1) and would unfairly prejudice the defense of that claim. The objection is set out at Section (13)(B)(1) below. Fed. R. Civ. P. 12(h)(3).

(2) a concise statement of the action,

Plaintiffs served a draft pretrial statement on July 28, 2026. Defendants do not agree to Plaintiffs' proposed statement of the action, which is argumentative rather than concise, disputes matters addressed in Defendants' positions below, and presents disputed jury questions as established fact. Its closing assertions that Plaintiffs "viewed these purchases of LGBCoin as investments" and that Defendants' solicitations gave Plaintiffs "a reasonable expectation of profits" state the very questions the Court reserved for the jury. Doc. 531 records the first assertion only as Plaintiffs' own (Doc. 531 at 4), and found on the undisputed record that Plaintiffs were not promised, directly or indirectly, any profits, dividends, transaction fees, or appreciation (*id.* at 4–5, 24); that Plaintiffs expressed significant non-investment reasons for purchasing LGBCoin (*id.* at 5, 24); that neither the LGBCoin website statement nor the LGBCoin X account statement emphasized the investment value of LGBCoin (*id.* at 24–25); and that whether a reasonable purchaser had a profit-driven intent remains genuinely disputed (*id.* at 25–27). Defendants will confer toward a joint statement at the August 3, 2026 meeting required by the Sixth Amended Case Management and Scheduling Order (Doc. 620). Defendants propose the following concise statement: Plaintiffs assert a claim for the sale of unregistered securities under Section 12(a)(1) of the Securities Act of 1933. Defendants deny that LGBCoin was a security and deny liability.

(3) a concise statement of each party's position,

# DEFENDANTS' CONCISE STATEMENT OF THEIR POSITIONS

Defendants deny Plaintiffs' characterization of the case and their application of the Securities Act. Plaintiffs' sole certified claim arises under Section 12(a)(1) of the Securities Act against Defendant Koutoulas and depends entirely on the threshold assertion that LGBCoin constituted a "security" within the meaning of federal law. Defendants expressly deny that LGBCoin was a security and deny that Plaintiffs have plausibly alleged, proven, or applied the elements of an investment contract under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).

Plaintiffs have not pleaded a contractual promise of profits derived from the entrepreneurial or managerial efforts of Defendant Koutoulas running to any purchaser, nor have they produced evidence of such a promise. Instead, Plaintiffs rely primarily on evidence of mere asset promotion, advocacy, and charitable or political activities, none of which constitutes entrepreneurial or managerial effort sufficient to transform a digital asset into a security as a matter of law. Promotion and marketing, standing alone, do not create an investment contract under *Howey*.

Plaintiffs pleaded the token itself as the security. The operative pleading states that "LGBCoins are securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. §77b(a)(1) because *they* are investment contracts." Third Am. Compl. ¶ 372 (First Cause of Action); accord Second Am. Compl. ¶ 278 (same theory), described in Doc. 229 at 34 ("Plaintiffs allege LGBCoins are 'investment contracts' under § 77b(a)(1)."). That *is* the theory of the sole remaining federal count. To the extent Plaintiffs now rely on the LGBCoin Trust Agreement or on a broader course of conduct as the required contract, transaction, or scheme, that theory *is* not pleaded in the operative count and, as set out below, *is* legally insufficient in any event. The token code itself provides no promises to conduct any entrepreneurial or managerial efforts nor any mechan*is*m for sharing revenue, profits, a transaction tax, or any other mechan*is*m by which Plaintiffs could have a reasonable expectation of profit.

That is not a cognizable theory. An "investment contract" is by definition "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits . . . from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946). It is not an object. A digital token "is not in and of itself a 'contract, transaction[,] or scheme' that embodies the *Howey* requirements of an investment contract." *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 324 (S.D.N.Y. 2023), *motion to certify appeal denied*, 697 F. Supp. 3d 126 (S.D.N.Y. 2023). Whether an item is the subject of a securities transaction turns on "what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect," *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 352–53 (1943), and "[e]ach transaction must be analyzed and evaluated on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole," *Marine Bank v. Weaver*, 455 U.S. 551, 560 n.11 (1982) (quoted in *Ripple*, 682 F. Supp. 3d at 324).

LGBCoin is a static ERC-20 token. Its code cannot be altered, it performs no function beyond transfer, and it contains no term obligating any person to undertake any effort for the benefit of holders. It is therefore not, and cannot be, the "contract, transaction[,] or scheme" that Howey requires, and it carries no promise capable of supporting the reasonable expectation of profits

derived from the efforts of others that is the sole element of the Howey test the Court has reserved for the jury. Defendants accordingly object to any jury instruction, argument, verdict question, or statement of the case that asks the jury whether LGBCoin was sold as part of, or pursuant to, an investment contract, or that otherwise permits Plaintiffs to substitute a transactional theory for the theory they pleaded. Plaintiffs pleaded that the token itself is an investment contract. Third Am. Compl. ¶ 372. The Court has framed the question for the jury the same way, as "whether LGBCoin is a security." Doc. 531 at 27 n.10. Plaintiffs are confined at trial to the claim they pleaded. Defendants will submit a proposed instruction on this point. See Defendant's Proposed Jury Instructions.

To the extent Plaintiffs point to the LGBCoin Trust Agreement as a contract, transaction, or scheme they are required to identify, it cannot serve that role. The Trust Agreement was made between the developer of the token and Koutoulas Law, LLC, a non-party law firm. No Plaintiff was a party to it, no Plaintiff signed it, and no Plaintiff bargained for or was offered any right under it. Nor was it available to be read until after the Class Period. Defendants contend that the Trust Agreement was not disclosed publicly until after the close of the class period, which runs from November 2, 2021 through March 15, 2022. Doc. 455 at 32. An instrument that no purchaser could see during the period in which he bought cannot have been among "the economic inducements held out to the prospect," *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 352–53 (1943), and it cannot have supplied an objective economic inducement to any purchaser. That rights under the Trust Agreement are said to run with the tokens does not change either point. A right that attaches to an asset by operation of an instrument does not become a promise negotiated with a purchaser, and it cannot induce a purchaser who had never seen the instrument that created it before its purchase(s).

Plaintiffs likewise have never alleged that they were promised an ownership interest in the LetsGoBrandon.com Foundation, a share of its revenue, a distribution from it, or any other right enforceable against it. The Third Amended Complaint identifies no such promise made to any Plaintiff by any Defendant. Plaintiffs' expectation-of-profits theory therefore rests on public promotion and on the hope that the activity of others would raise the price of a token, not on any undertaking running to Plaintiffs themselves. That purchasers acted on NASCAR's approval of a sponsorship confirms only that a discrete third-party event affected the price of a promoted asset. Like trading cards or collectible watches, an asset may have value, may be actively promoted, and may be damaged by third-party conduct, without being a security; acting on a third party's approval of a sponsorship is not a reasonable expectation of profits derived from the entrepreneurial or managerial efforts of a promoter.

Defendants further deny that Defendant LGBCoin, Ltd. sold or offered LGBCoin to Plaintiffs. LGBCoin, Ltd. was not incorporated until January 5, 2022 (DX 00139), after a substantial portion of the transactions at issue allegedly occurred, did not issue LGBCoin, and did not maintain a cryptocurrency wallet from which any alleged sale could have occurred. Plaintiffs plead no claim against LGBCoin, Ltd. under Section 12(a)(1); the only claim pending against it is their unjust enrichment claim, and those facts defeat it. An entity that sold nothing to Plaintiffs received nothing from Plaintiffs. LGBCoin, Ltd. received no part of the consideration Plaintiffs paid for their LGBCoin. Plaintiffs' purchases on public secondary markets were executed against decentralized liquidity pools, and the consideration they paid went into those pools. LGBCoin,

Ltd. received no distribution, payment, or transfer from the LetsGoBrandon.com Foundation or from any other source. It therefore never received a benefit capable of restitution.

Plaintiffs' draft pretrial statement, served July 28, 2026, identifies Section 12(a)(1) as the only claim to be tried. Its statement of the action describes no other claim; its damages section seeks only class-wide relief attributed to Section 12(a)(1); its statement of agreed principles identifies Section 12(a)(1) as "the law governing this matter"; and its issues of fact present only Section 12(a)(1) questions. It asserts no unjust enrichment issue, element, or remedy. The pretrial statement supersedes the pleadings and controls the course of trial. See Fed. R. Civ. P. 16(d). Defendants will accordingly treat the three named Plaintiffs' individual unjust enrichment claims as abandoned, and object to any attempt to revive them in or after the Joint Final Pretrial Statement. Defendants' unjust enrichment defenses below are maintained solely in the event those claims are revived, and the severance and jurisdictional objections at Section (13)(B)(1) are preserved to the same extent. Because the unjust enrichment claim is the only claim pending against Defendant LGBCoin, Ltd. (Doc. 455 at 2), Plaintiffs' pretrial statement leaves no claim to be tried against LGBCoin, Ltd. If that omission stands in the Joint Final Pretrial Statement, LGBCoin, Ltd. should be dismissed as a party, and Defendants will request its dismissal, by stipulation under Rule 41(a)(1)(A)(ii) or by order, at or before the final pretrial conference. Defendants note that Plaintiffs' separately served proposed jury instructions submit unjust enrichment instructions against both Defendants and name LGBCoin, Ltd. in the Section 12(a)(1) elements, in conflict with Plaintiffs' own pretrial statement. Defendants will ask Plaintiffs to state definitively, in the Joint Final Pretrial Statement, the claims and parties they intend to try; the positions stated in this section apply to any claim omitted from the joint statement.

Plaintiffs' damages theory is itself an admission on the merits. Plaintiffs' draft pretrial statement defines the recovery sought as "losses from both swap and liquidity transactions between November 2, 2021 and March 15, 2022, inclusive, within the LGB-WETH pool." On that definition, every transaction for which Plaintiffs seek recovery was executed against a liquidity pool. In every such transaction, title passed from the pool; no Defendant passed title to any purchaser. Plaintiffs' own measure of recovery thus concedes the title-passing element, and their Section 12(a)(1) claim reduces entirely to the solicitation theory addressed above. *Pinter* forecloses the rest: Section 12(1) "imposes liability on only the buyer's immediate seller; remote purchasers are precluded from bringing actions against remote sellers. Thus, a buyer cannot recover against his seller's seller." *Pinter v. Dahl*, 486 U.S. 622, 644 n.21 (1988). On Plaintiffs' own evidence, any sales their expert attributes to Mr. Koutoulas were sales into liquidity pools, upstream of every class purchase from those pools. The $21,306,432.12 theory asks that every pool purchaser recover from an alleged seller to the pool, recovery by remote purchasers against, at most, a seller's seller, which *Pinter* forbids. The theory also sweeps beyond the certified class: "liquidity transactions" are deposits to and withdrawals from a pool by liquidity providers, not purchases of LGBCoin, and the certified class consists of persons who purchased LGBCoin. Mr. Koutoulas did not personally own or operate the pools and made no personal withdrawals from them, and multiple LGBCoin liquidity pools existed that were not created or operated by either Defendant or the Foundation; anyone can create a liquidity pool for any token. Finally, the theory exceeds the pleadings: the Third Amended Complaint alleged approximately $1.6 million in sales by Defendant Koutoulas, Plaintiffs never sought leave to amend, and a pretrial statement

is not a vehicle for amending the complaint. A plaintiff may not amend the complaint through argument in a later filing; the proper procedure is a motion for leave to amend under Rule 15(a), and, after the scheduling order's deadline, a showing of good cause under Rule 16(b)(4). *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Defendants object to trial of any damages theory not pleaded in the operative complaint absent a granted motion for leave to amend.

Plaintiffs' theory also improperly conflates statements and actions of a non-party foundation and unrelated third parties with Defendant Koutoulas individually, despite the absence of any pleaded agency, adoption, or corporate veil-piercing theory. Defendants deny that statements by third parties or non-party representatives are attributable to Defendant Koutoulas.

Plaintiffs have not identified any transactions in which Defendant Koutoulas passed title to any Plaintiff. Beyond the purchases reflected in their PSLRA certifications, Plaintiffs have not identified any transaction with either Defendant or the manner in which Defendant Koutoulas allegedly acted as a statutory seller. Plaintiffs' purchases on decentralized exchanges were executed against liquidity pools, smart contracts holding pooled assets; no seller stood on the other side of those trades, so there is no counterparty to identify and no payment to trace to any person. Plaintiffs' theory nonetheless presumes liability for exchange transactions in which no Defendant participated, despite the absence of any allegation or proof that Defendant Koutoulas sold, offered, or solicited the purchase of a security to any Plaintiff within the meaning of Section 12(a)(1).

Plaintiffs likewise have not pleaded or certified any initial sale transactions involving Defendant Koutoulas. To the extent Plaintiffs' claims are premised on secondary market transactions, Defendants deny that such transactions make either Defendant liable under Section 12(a)(1), which reaches only a purchaser's statutory seller: one who passed title to the purchaser, or who successfully solicited the purchase motivated at least in part by a desire to serve his own financial interests or those of the securities owner. *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988). Secondary-market purchases executed against decentralized liquidity pools do not, without more, make either Defendant a statutory seller as to any purchase. Defendants therefore deny liability for transactions to which no Defendant was a party and deny Plaintiffs' damages theories to the extent they rest on such transactions.

Defendants expressly deny that intent, internal deliberations, private communications, or post-hoc advocacy activities are relevant to the legal determination of whether LGBCoin constituted a security. The inquiry under *Howey* is objective and turns on the nature of the rights offered and promises made to purchasers, not on Defendants' subjective intent or marketing efforts.

Plaintiffs' own prior pleading described LGBCoin as a commodity. In their Second Amended Class Action Complaint (Doc. 74), filed July 19, 2022, Plaintiffs alleged that the coin at issue was "a 'Let's go Brandon!' cryptocurrency (a digital commodity whose value rises with its demand) ('LGBCoin')." The allegation is admissible against Plaintiffs as an evidentiary admission of a party opponent, and Defendants intend to offer it at trial for that purpose. An admission in a superseded pleading remains admissible against the pleader as an evidentiary admission. *Cont'l Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971); *Borel v. U.S.*

*Cas. Co.*, 233 F.2d 385, 388 (5th Cir. 1956) (such an admission is not conclusive and may be explained or controverted, but is competent evidence); see *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc); *Taxinet Corp. v. Leon*, 114 F.4th 1212, 1227 (11th Cir. 2024) (quoting *Sherman*). The operative pleading makes the same characterization in substance, describing the coin as "a 'Let's go Brandon!' cryptocurrency token (a digital currency that's [sic] value rises with its demand)." Third Am. Compl. ¶ 5. As a factual allegation of the operative complaint, that description binds Plaintiffs as a judicial admission and is admissible against them in any event.

The Securities and Exchange Commission examined the same question and closed its investigation without alleging that LGBCoin is a security. The Commission conducted a formal investigation captioned *In the Matter of LGB Tokens* (A-04010), which included whether LGBCoin was offered or sold as an unregistered security, and served an investigative subpoena on Mr. Koutoulas. Mr. Koutoulas moved to quash on the ground that the SEC had not alleged, and could not allege, that LGBCoin was a security. When that motion was denied, Mr. Koutoulas produced documents in response, including all discovery he was permitted to produce from this action and from *LetsGoBrandon.com Foundation v. NASCAR*, No. 2023-002831-CA-01 (44) (Fla. 11th Cir. Ct., Miami-Dade Cnty.). See Appellant's Unopposed Motion to Dismiss Appeal as Moot ¶ 3, *Koutoulas v. SEC*, No. 24-12376 (11th Cir. Mar. 25, 2025), Doc. 38-1 (DX 0071). By letter dated March 10, 2025, the Division of Enforcement advised that it had concluded the investigation and did not intend to recommend an enforcement action. At no point in the subpoena, in its briefing, or in the closing letter did the Commission allege that LGBCoin is a security. In the parties' stipulated filing in the Eleventh Circuit, the SEC agreed that it had "concluded its investigation without alleging that LGBcoin is a security." Doc. 38-1 ¶ 4 (DX 0071). Mr. Koutoulas thereafter moved to dismiss the related district-court proceedings as moot. The SEC reviewed the language of that motion and consented to its being filed as unopposed. See Unopposed Movant's Motion to Dismiss as Moot Following Remand, *Koutoulas v. SEC*, No. 1:23-cv-22345-JEM (S.D. Fla. June 24, 2025), ECF No. 31 (DX 0061); Doc. 38-1 ¶ 7. The motion stated the following in paragraph 4:

"Thereafter, the SEC formally concurred with Mr. Koutoulas's position, admitting it could not allege that LGBcoin was a security and closed its investigation without issuing any findings of wrongdoing. See Exhibit A ("Stipulated Order")." Unopposed Movant's Mot. to Dismiss as Moot Following Remand ¶ 4, *Koutoulas v. SEC*, No. 1:23-cv-22345-JEM (S.D. Fla. June 24, 2025), ECF No. 31 (DX 0061).

Defendants expressly preserve their right to contest all elements of Plaintiffs' Section 12(a)(1) claim at trial, including whether LGBCoin constituted a security, whether Defendant Koutoulas was a statutory seller, whether he passed title to any Plaintiff, and whether Plaintiffs suffered recoverable damages. The Court's Order of December 2, 2025 (Doc. 531) granted Plaintiffs partial summary judgment on the first two elements of the *Howey* test, investment of money and common enterprise, and denied their Rule 56(f) request in all other respects. The third element, a reasonable expectation of profits derived solely or primarily from the entrepreneurial or managerial efforts of others, is accordingly the sole element of the *Howey* test for the jury, and Defendant Koutoulas will contest it. Nothing in Doc. 531 resolved whether Defendant Koutoulas is a statutory seller, a question the Court expressly left for the jury together with the question

whether LGBCoin is a security (Doc. 531 at 27 n.10), and nothing in it resolved the transfer of title, damages, the individual unjust enrichment claims, or any affirmative defense. Defendants specifically preserve their right to contest the elements of investment of money and common enterprise, which Plaintiffs asserted for the first time in an untimely Rule 56(f) cross-motion and which Defendants contend remain factually and legally disputed. Defendants will do this via an offer of proof.

Defendants further state, as to the second prong of the *Howey* test, that in granting partial summary judgment the Court expressly found that "Plaintiffs did not invest in a common pool or share pro-rata in profits." (Doc. 531 at 20). Pooling of investor funds and pro rata distribution of profits are the two traditional indicia of horizontal commonality, and the Court's finding that neither was present is a finding in Defendants' favor under the conventional test. The Court nonetheless concluded that a common enterprise existed under the Eleventh Circuit's more flexible standard. Defendants respectfully disagree with that conclusion, have moved for reconsideration of it (Doc. 624), and preserve the issue for appeal.

Defendants further state that they will make an offer of proof at trial pursuant to Federal Rule of Evidence 103(a)(2) as to the evidence they would offer on the first two prongs of the *Howey* test, including evidence bearing on the absence of pooled funds, the absence of pro rata profit sharing, and the absence of any interest, right, or claim conveyed to purchasers of LGBCoin. Defendants make the offer so that the record is complete for appellate review should the Court exclude that evidence as foreclosed by the partial summary judgment entered at Doc. 531.

Defendants further object to any instruction, argument, or evidence that recites to the jury the findings underlying the Court's ruling on the second prong. As the Court noted, the vertical commonality inquiry "largely overlaps with *Howey*'s final prong." (Doc. 531 at 19 (quoting *SEC v. Kirkland*, 521 F. Supp. 2d 1281, 1292 (M.D. Fla. 2007)).) Because the third prong is the sole element of the *Howey* test reserved for the jury, and because the Court has directed that whether LGBCoin is a security "is to be addressed by the jury" (Doc. 531 at 27 n.10), recitation of the second-prong findings would effectively resolve the question the jury alone is to decide. Defendants respectfully request that the jury be instructed as to any element resolved at summary judgment in neutral terms only, without recitation of the Court's supporting findings, and that the parties be precluded from arguing those findings to the jury. The same objection applies to any instruction characterizing the partial summary judgment as matter for "judicial notice," and to any instruction sourcing purportedly established facts to the order on the motions to dismiss (Doc. 229), which accepted allegations as true under Rule 12(b)(6) and made no findings.

Defendants reserve the right to make specific objections to Plaintiffs' exhibits, witness designations, and evidentiary positions once the exhibit list is provided to them. Defendants will state each objection with specificity as to each numbered exhibit on the Clerk's approved exhibit-list form filed with the Joint Final Pretrial Statement, and reserve the right to supplement or amend their positions as appropriate.

Defendant Koutoulas asserts the following affirmative defenses (subject to supplementation or revision once Plaintiffs provide their proposed PTO):

FIRST AFFIRMATIVE DEFENSE: LGBCoin is not a security and Plaintiffs have admitted it is not a security. Furthermore, Plaintiffs have not applied facts to the cited *Howey* test sufficient to allege the existence of an investment contract.

SECOND AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief has given no basis for disregarding the corporate entities that Mr. Koutoulas was engaged by to make claims against him as an individual.

THIRD AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' alleged damages either did not occur, or the damages are less than alleged by Plaintiffs.

FOURTH AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief is barred because he did not pass title to LGBCoin to any Plaintiff. Section 12(a)(1) creates liability only in favor of "the person purchasing such security from him." 15 U.S.C. § 77l(a)(1). Plaintiffs have admitted the facts that resolve this element in Mr. Koutoulas' favor. Each Plaintiff testified that he or she purchased LGBCoin on cryptocurrency exchanges such as Coinbase and Uniswap (Doc. 531 at 4; Doc. 477-3, 23:8–11; Doc. 477-4, 24:5–17; Doc. 477-5, 19:10–22), and each admitted that he or she did not transact directly with Mr. Koutoulas (Doc. 531 at 4; Doc. 477-3, 26:15–27:2, 32:7–33:17; Doc. 477-4, 34:23–35:16; Doc. 477-5, 115:3–8). Those admissions are dispositive of the title-passing route to liability. *Pinter v. Dahl*, 486 U.S. 622, 642 (1988). As to the solicitation route, one who gratuitously urges another to invest does not thereby become a statutory seller, *id.* at 647, and a participant whose motivation is solely to benefit the buyer does not "solicit" within the meaning of Section 12. *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1527 (11th Cir. 1991). A decentralized exchange such as Uniswap is not a matching engine that pairs a buyer with a seller. Each order is executed against a liquidity pool, a smart contract holding pooled assets, and is filled by no person at all; the purchaser's payment goes into the pool. There is no seller-side counterparty to identify, and no analysis tracing a purchaser's payment to any person on the other side of the trade is possible or appropriate. See *SEC v. Ripple Labs, Inc.*, 697 F. Supp. 3d 126, 133–34 & n.5 (S.D.N.Y. 2023) (purchasers in blind bid/ask exchange transactions could not know to whom their payments went, and a purchase made simply in the expectation that the price would rise is not an expectation of profits derived from the entrepreneurial or managerial efforts of others). Title to the tokens each Plaintiff received therefore passed from the pool, not from Mr. Koutoulas. No Plaintiff has identified, in his or her certification or otherwise, a single transaction in which Mr. Koutoulas passed title to that Plaintiff, and on Plaintiffs' own admissions no such transaction can exist. Plaintiffs' draft pretrial statement confirms the point: the recovery it seeks is defined as losses on transactions "within the LGB-WETH pool." On Plaintiffs' own damages theory, every class transaction was executed against a liquidity pool, and title passed from the pool, not from Mr. Koutoulas.

FIFTH AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief is barred because Plaintiffs would be unjustly enriched if allowed to recover.

SIXTH AFFIRMATIVE DEFENSE: Defendant avers that Plaintiffs' alleged damages, if any, are limited and set off by failure to mitigate damages.

SEVENTH AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief is barred because Plaintiffs are estopped to assert each cause of action, remedy, and/or other right against Defendant by reason of actions, representations, promises, conduct and/or omissions by Plaintiffs.

EIGHTH AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief is barred because, Defendant is entitled to an offset of all sums found to be owing by Plaintiffs to Defendant and any moneys or value received by the same, or waste or damages created by the same.

NINTH AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief is barred in whole or in part by the doctrine of unclean hands. The unclean hands defense applies to bar claims where the claimant has engaged in some manner of unscrupulous conduct, overreaching, or trickery in the matter in controversy. For example, Plaintiff De Ford engaged in widespread promotion of LGBCoin and LETSGO yet accused Defendant of wrongdoing for allegedly doing the same, and as such, would be *in pari delicto* should such conduct be ruled tortious. The *in pari delicto* defense is available in actions under Section 12(a)(1). *Pinter v. Dahl*, 486 U.S. 622, 632–39 (1988); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11 (1985). Plaintiff Key testified that he purchased LGBCoin based on what he described as "insider information," that he bought "100 percent for selfish American profit," and that he saw no legal impediment because "[a]t the time this was not a security." Key Dep. (Dec. 12, 2024) 21:4–12, 34:18–35:7, 36:20–37:8 (DX 0049).

TENTH AFFIRMATIVE DEFENSE: Defendant asserts that to the extent Plaintiffs may have damages, such damages were caused by other parties such as NASCAR's revocation of the sponsorship approval, which Plaintiff admits Defendant reasonably relied on, as well as the breach of the sponsorship agreement by Latona.

In further support of this defense, Defendant Koutoulas states the following, each point of which he expects to establish by documents produced in discovery, by Plaintiffs' own operative pleading, and by Plaintiffs' own deposition testimony.

NASCAR approved the sponsorship in writing. On December 26, 2021, at 8:48 a.m., Dale Howell of NASCAR Racing Operations responded to the Brandonbilt Motorsports paint-scheme submission for Daytona, which identified the entry as the "LGBCoin.io Chevrolet Camaro" and identified LGBCoin.io on the hood, decklid, television panel, rear quarter panel, and roof, by writing: "The sponsors are approved however please clean up the markings around the number especially the white stars touching the white number."

Plaintiffs allege the same approval. The Third Amended Complaint (Doc. 245) alleges that Howell "approved the sponsorship on December 26, 2021, by email writing 'The sponsors are approved,'" that the exchange "confirmed LGBCoin's sponsorship details," and that "[t]he sponsorship approval was unambiguous." Plaintiffs further allege that the press release announcing the sponsorship was issued "[b]ased upon this written approval."

Plaintiffs allege that NASCAR's revocation, not any act of Defendants, caused the loss they claim. The Third Amended Complaint alleges that "[t]he value and sale of LGBCoins increased following the announcement of the approval of the LGBCoin sponsorship; the value sank to zero when it was disclosed that NASCAR had revoked its approval"; that "[t]he price of LGBCoin began to deflate immediately after NASCAR cancelled its official affiliation between LGBCoin and NASCAR"; that between the December 30, 2021 announcement and the January 5, 2022 revocation announcement "the price of LGBCoin fell 63%"; and that "[t]he announcement that LGBCoin would not be allowed to sponsor Brown" and the attendant liquidation "reduced LGBCoin's value to zero." The pleading collects these allegations under Plaintiffs' own heading, "Damage to the Value of LGBCoin and Coinholders Due to NASCAR's Misconduct."

Plaintiffs allege that purchasers relied on NASCAR's approval. The Third Amended Complaint alleges that "thousands of new buyers purchased LGBCoin in reliance on NASCAR's approval of the LGBCoin sponsorship of Brandon's car," that NASCAR "intended to induce purchases of LGBCoin by approving the sponsorship," and that Brandonbilt Motorsports incurred wrap, hauler, and fire-suit costs "in reliance on the approval."

The named Plaintiffs testified to the same reliance. Plaintiff De Ford testified that he purchased LGBCoin "[b]ecause of NASCAR" and that "the biggest thing was just NASCAR, it was just the fact that it was, like, the NASCAR token," and he acknowledged writing that "[i]f NASCAR didn't dump Brandon's sponsorship we would still have the old token." Plaintiff Key testified that NASCAR had approved the sponsorship on December 26, 2021 ("Absolutely, absolutely"), that "any reasonable person that would have read that e-mail would have thought that they were moving forward with a NASCAR partnership," and that after seeing the Howell email he increased his own purchase of LGBCoin.

ELEVENTH AFFIRMATIVE DEFENSE: Defendant Koutoulas asserts that Plaintiffs' claim for unjust enrichment fails because Plaintiffs conferred no benefit on him and he retained no benefit capable of restitution. Under Florida law an unjust enrichment claim requires that the plaintiff conferred a benefit on the defendant, that the defendant voluntarily accepted and retained that benefit, and that the circumstances are such that it would be inequitable for the defendant to retain it without paying its value. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)). Plaintiffs admit they purchased LGBCoin on public secondary markets; those purchases were executed against decentralized liquidity pools, and the consideration they paid went into those pools rather than to Defendant Koutoulas. Defendant Koutoulas further asserts that his net position with respect to LGBCoin and related activity was a loss and not a gain, and that he has sustained substantial lost business revenue, including lost management and performance fees in his investment-management business, attributable to the pendency of this action, in amounts to be established at trial through evidence designated under the Protective Order (DX 00122–00123). Restitution measures the benefit retained by the defendant, not the loss claimed by the plaintiff, and Defendant Koutoulas retained no such benefit.

Defendant Koutoulas further states that the circumstances are not such that it would be inequitable for him to retain any benefit, because the loss Plaintiffs claim is attributable to

NASCAR's revocation of its approval of the sponsorship, as set out under the Tenth Affirmative Defense above and as alleged by Plaintiffs themselves in the Third Amended Complaint.

Defendant Koutoulas further states that he did not retain the value Plaintiffs seek to recover. Funds attributable to LGBCoin-related activity were disbursed rather than retained, including approximately $100,000 contributed to a charitable organization, approximately $50,000 in political contributions, and approximately $500,000 paid in taxes. Those disbursements are also asserted in support of the Eighth Affirmative Defense.

TWELFTH AFFIRMATIVE DEFENSE: *Defendant Koutoulas* asserts that Plaintiffs sued him in his individual capacity only, and that their claim as they have framed it requires proof that the entrepreneurial or managerial efforts from which purchasers allegedly expected profits were his. The Court has framed the reserved element as whether Plaintiffs derived an expectation of profits from Defendants' managerial and promotional efforts (Doc. 531 at 27), and Plaintiffs' pretrial statement and proposed jury instructions frame the element the same way. The efforts on which Plaintiffs rely were not performed by Mr. *Koutoulas* individually: the token was created and deployed by a third-party developer; trustee functions under the Trust Agreement were performed by *Koutoulas* Law, LLC; the project's activities were conducted by the non-party LetsGoBrandon.com Foundation; the project's promotion and development were carried on by a broad volunteer community, including the approximately 96 volunteers reflected in Plaintiffs' own exhibit [Pls.' Ex. ___]; and further efforts were undertaken by third parties including Mascioli, Latona, Brandonbilt Motorsports, and NASCAR. No agency, adoption, alter-ego, or veil-piercing theory has been pleaded or established that would attribute those persons' efforts to Mr. *Koutoulas* individually. On the element as Plaintiffs themselves have framed it, they cannot prove that the efforts of Mr. *Koutoulas* individually were the essential entrepreneurial or managerial efforts on which any purchaser expectation of profits depended.
*Defendant Koutoulas otherwise denies any allegations not answered and reserves the right to add additional affirmative defenses.*

Defendant LGBCoin, Ltd. asserts the following affirmative defenses.

FIRST AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief is barred in whole or in part by the doctrine of unclean hands. The unclean hands defense applies to bar claims where the claimant has engaged in some manner of unscrupulous conduct, overreaching, or trickery in the matter in controversy. For example, Plaintiff De Ford engaged in widespread promotion of LGBCoin and LETSGO yet accused Defendant of wrongdoing for allegedly doing the same, and as such, would be *in pari delicto* should such conduct be ruled tortious. The *in pari delicto* defense is available in actions under Section 12(a)(1). *Pinter v. Dahl*, 486 U.S. 622, 632–39 (1988); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11 (1985). Plaintiff Key testified that he purchased LGBCoin based on what he described as "insider information," that he bought "100 percent for selfish American profit," and that he saw no legal impediment because "[a]t the time this was not a security." Key Dep. (Dec. 12, 2024) 21:4–12, 34:18–35:7, 36:20–37:8 (DX 0049).

SECOND AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief has given no basis for disregarding the corporate entities between LGBCoin, Ltd. and any transactions or business activities.

THIRD AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' alleged damages either did not occur, or the damages are less than alleged by Plaintiffs.

FOURTH AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief is barred because LGBCoin, Ltd. never entered into any transaction with any Plaintiff. No Plaintiff has identified, in his or her certification or otherwise, a single transaction in which LGBCoin, Ltd. sold or transferred LGBCoin to that Plaintiff. That absence of any sale or transfer defeats Plaintiffs' unjust enrichment claim. A defendant that sold the plaintiff nothing received nothing from the plaintiff, and so no benefit was conferred on it and none was retained by it. Plaintiffs bought on public secondary markets, where their purchases were executed against decentralized liquidity pools, and the consideration they paid went into those pools rather than to LGBCoin, Ltd.

FIFTH AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief is barred because Plaintiffs would be unjustly enriched if allowed to recover.

SIXTH AFFIRMATIVE DEFENSE: Defendant avers that Plaintiffs' alleged damages, if any, are limited and set off by failure to mitigate damages.

SEVENTH AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief is barred because Plaintiffs are estopped to assert each cause of action, remedy, and/or other right against Defendant by reason of actions, representations, promises, conduct and/or omissions by Plaintiffs.

EIGHTH AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief is barred because, Defendant is entitled to an offset of all sums found to be owing by Plaintiffs to Defendant and any moneys or value received by the same, or waste or damages created by the same.

NINTH AFFIRMATIVE DEFENSE: Defendant asserts that Plaintiffs' requested relief is barred because Defendant LGBCoin, Ltd. never owned any LGBCoin, never sold any LGBCoin to Plaintiffs or to anyone else, and was never enriched by Plaintiffs. Furthermore, LGBCoin, Ltd. was not incorporated until January 5, 2022 (Certificate of Incorporation, Cayman Islands Registrar of Companies No. HS-385375, DX 00139), after a substantial portion of Plaintiffs' alleged purchases. An entity that never received any consideration, distribution, payment, or transfer, whether from Plaintiffs, from the LetsGoBrandon.com Foundation, or from any other source, cannot have been unjustly enriched at Plaintiffs' expense.

TENTH AFFIRMATIVE DEFENSE: Defendant LGBCoin, Ltd. asserts that Plaintiffs' claim for unjust enrichment fails because no benefit was ever conferred on it and no benefit was ever retained by it. LGBCoin, Ltd. never held or controlled a digital-asset wallet. It never owned any LGBCoin, and it never sold, transferred, or otherwise distributed LGBCoin to any Plaintiff or to

any other person, so it never received sale proceeds from anyone. It never received any distribution, payment, or transfer from the LetsGoBrandon.com Foundation or from any other source. It never received any part of the consideration Plaintiffs paid for LGBCoin, which went into the decentralized liquidity pools against which Plaintiffs' purchases were executed. It therefore never obtained a benefit capable of restitution, and the first two elements of a Florida unjust enrichment claim are not satisfied. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012).

In further support of the foregoing, and to the extent causation and the equities are at issue on the unjust enrichment claim, Defendant LGBCoin, Ltd. adopts and incorporates the evidentiary matter set out under Defendant Koutoulas's Tenth and Eleventh Affirmative Defenses concerning NASCAR's written approval of the sponsorship, NASCAR's subsequent revocation of that approval, and Plaintiffs' own allegations attributing the decline in the value of LGBCoin to that revocation.

*Defendant LGBCoin, Ltd. otherwise denies any allegations not answered and reserves the right to add additional affirmative defenses.*

Nothing in this Pretrial Statement should be construed as a stipulation to liability, damages, admissibility of evidence, jurisdiction, or waiver of any defense, objection, or pending motion.

(4) a list of each exhibit with a notation of each objection,

Defendants' exhibit list is attached on the Clerk's approved form, identifying for each exhibit the exhibit number, a description, the sponsoring witness, and each specific objection asserted by Plaintiffs. Defendants' objections to Plaintiffs' exhibits are stated with specificity on Plaintiffs' list. Exhibits are marked numerically and delivered to the Court as separate PDF files on CD or flash drive five days before trial as required by Doc. 620 § III.B.2 and Local Rule 3.07.

(5) a list of each witness by name only with a notation of each witness's likelihood to testify:

James Koutoulas- high

Eric De Ford- high

Sandra Bader- high

Shawn Key- high

Dale Howell- high

Eric Nyquist- high

Brandon Brown- high

Jerry Brown- high

Mac MacLeod- high

Mike Forde- high

Al Sheeler- high

Alex Mascioli- low

Patrick Horsman- medium

Rick Latona- low

Erik Norden- medium

Walton Comer- medium

(6) a list of each expert witness, with a notation of:

Defendants' expert witness: James Koutoulas (hybrid fact and expert witness under Fed. R. Civ. P. 26(a)(2)(C); rebuttal expert declaration served December 2, 2024 (DX 00119))

(A) the substance of the testimony: Mr. Koutoulas will offer rebuttal testimony responding to the expert report of Plaintiffs' expert Philip Werlau, including the attribution and ownership of wallets on the Ethereum blockchain; the mechanics of ERC-20 tokens and decentralized liquidity pools; the absence of any trades attributed to LGBCoin, Ltd.; the erroneous attribution to Mr. Koutoulas individually of wallets belonging to the LGBCoin Foundation and to third parties; and the resulting overstatement of alleged sales and profits, which, once corrected, shows a net loss. See DX 00119.

(B) each objection to the witness's testifying: Plaintiffs have not yet stated any objection to Mr. Koutoulas's rebuttal testimony; any objections will be reflected in the Joint Final Pretrial Statement.

Plaintiffs' expert witness: Philip Werlau. (A) The substance of the testimony: opinions concerning blockchain transaction tracing, wallet attribution, and alleged

sales and profits, per his declaration. (B) Each objection to the witness's testifying: Defendants object on the grounds stated in Section (7) below, including Fed. R. Evid. 403, 602, and 701–702, and on the grounds that his opinions rest on aggregated transactions of non-parties and on unsupported wallet attributions. Defendants intend to raise these objections by motion in limine on or before August 24, 2026.

(7) a breakdown of the type and amount of monetary damages,

Objection to Plaintiffs' Damages Theory. Defendants object to Plaintiffs' asserted damages figure of $21,306,432.12, which Plaintiffs' draft pretrial statement describes as "losses from both swap and liquidity transactions between November 2, 2021 and March 15, 2022, inclusive, within the LGB-WETH pool," citing the expert declaration of Philip Werlau submitted at summary judgment (ECF No. 488-3). That figure is an aggregate of alleged class-wide market losses within a liquidity pool. It is not a measure of the consideration any purchaser paid to either Defendant, and it is not the statutory remedy: Section 12(a)(1) provides for rescission of the purchaser's own transaction, the consideration paid with interest, less income received, upon tender of the security, or rescissory damages if the purchaser no longer owns the security. 15 U.S.C. § 77l(a)(1). The theory also exceeds the pleadings: the Third Amended Complaint alleged approximately $1.6 million in sales by Defendant Koutoulas, and Plaintiffs never sought or obtained leave to amend. See *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (a plaintiff may not amend the complaint through argument in a later filing; the proper procedure is amendment under Rule 15(a)). Its own terms defeat the claim it is offered to support: recovery defined by transactions "within the LGB-WETH pool" is recovery on transactions in which no Defendant passed title to any purchaser, and "liquidity transactions" are liquidity-provider deposits and withdrawals, not purchases of LGBCoin. Mr. Koutoulas did not personally own or operate the pools, made no personal withdrawals from them, and multiple LGBCoin pools existed that neither Defendant nor the Foundation created or operated. Even with its erroneous attributions, the Werlau report alleges $748,986.83 in total sales by Defendant Koutoulas, less than half of the approximately $1.6 million in sales alleged in the Third Amended Complaint, and its profit figures rest on attributing to Mr. Koutoulas individually 322.224 WETH generated by liquidity-provision activity of the LGBCoin Foundation; with that misattribution removed, the report's own methodology shows a net loss. See Defendant Koutoulas's Rebuttal Expert Declaration (Dec. 2, 2024) (DX 00119) ¶¶ 14–17. The report attributes no sales to Defendant LGBCoin, Ltd., and Plaintiffs have alleged no transaction in which Defendant Koutoulas passed title to a Plaintiff. Plaintiffs pleaded no such theory, and their Rule 26(a)(1) disclosures computed damages under a different, trading-volume model and stated no figure. The $21,306,432.12 figure first appeared in their expert's November 4, 2024 declaration, which describes it as the "total cumulative loss incurred by class members across all transactions," including liquidity-provision activity, while attributing to "defendants" and non-party "insiders" combined a collective profit of $4,149,765.37. An expert declaration is not a pleading and cannot supply a liability theory the operative complaint does not contain. Nor have Plaintiffs identified any methodology attributing the asserted figure to Koutoulas individually. Plaintiffs' late-asserted damages theory is vague, unsupported, inconsistent with their pleadings, and insufficient to provide fair notice of the

claims or to allow Defendants to prepare a defense. Defendants deny liability for the asserted amount and reserve all objections, including objections based on the absence of any transfer of title to a Plaintiff, relevance, prejudice, and failure of proof.

Plaintiffs' newly asserted damages figure should be excluded under Rules 403, 602, and 701–702. Plaintiffs have not identified any competent evidence, witness, or methodology supporting the asserted $21,306,432.12 figure, nor explained how Plaintiffs propose that Defendants should be liable for sales that other unrelated parties made. The number is untethered to any pleaded transaction, ignores undisputed offsets, rests on sales in which no Defendant passed title to a Plaintiff, and would mislead the jury and cause substantial unfair prejudice. Plaintiffs may not present an unquantified, unsupported damages number at trial without proper disclosure and foundation.

(8) a list of each deposition offered in lieu of live testimony, unless the deposition is only for impeachment,

Defendants may offer deposition testimony of the following witnesses in lieu of live testimony: Eric De Ford, Sandra Bader, Shawn R. Key, Brandon Lee Brown, Jerry Brown, Michael Patrick Forde, Dale Howell, Mac MacLeod, and Eric John Nyquist, together with counter-designations to Plaintiffs' designations of the March 3, 2025 deposition of James L. Koutoulas. Complete page-and-line designations, in sequential order and in a separate chart for each deposition date, are served concurrently and will be filed with the Joint Final Pretrial Statement pursuant to Section III.B.4 of the Sixth Amended Case Management and Scheduling Order (Doc. 620). The party-witness designations are as follows. Consistent with the written disclosures to be exchanged on August 3, 2026 under Doc. 620, Defendants presently intend to present the testimony of the non-party witnesses deposed in the NASCAR action (Brandon Brown, Jerry Brown, Forde, Howell, MacLeod, and Nyquist), who are outside Defendants' control and are expected to be hostile, by deposition designation unless they are served with trial subpoenas and appear live, and to present the adverse-party testimony of De Ford, Bader, and Key by designation and by examination if they appear live. Defendants will state their final election in writing, per witness, at the August 3, 2026 meeting. Plaintiffs' draft pretrial statement states only that Plaintiffs "may offer the depositions of Defendants into evidence," without the page-and-line designations required by Doc. 620 § III.B.4. Defendants reserve all objections to any designations first disclosed after the August 3, 2026 meeting.

**De Ford Dep.**

5:14; 10:16-11:07; 19:22-19:23; 21:14-24:19; 25:09-26:06; 26:15-27:02; 31:09-31:20; 32:04-34:05; 45:05-45:12; 45:16-46:07; 46:09-48:07; 50:20-50:24; 58:15-59:24; 82:10-83:25; 85:12-87:19; 113:22-114:05.

**Bader Dep.**

9:17-11:24; 14:22-15:02; 24:04-24:24; 25:01-25:16; 33:02-33:19; 34:01-35:03; 35:04-36:16; 37:01-37:02; 39:02-40:01; 42:09-43:19; 67:13-67:24; 74:01-75:25; 76:03-76:17; 86:01-86:02; 87:02-87:04; 97:01-97:05.

**Key Dep.**

8:22-11:22; 19:01-20:02; 21:04-21:12; 23:24-24:07; 27:02-29:05; 32:01-33:25; 34:18-35:07; 36:20-37:22; 44:01-46:01; 46:23-48:18; 53:03-53:05; 73:21-79:15; 115:06-115:12; 115:23-116:12; 118:13-119:21.

**Koutoulas Dep. (Mar. 3, 2025) (counter-designations)**

25:20-26:06; 55:07-55:16.

Designations of the non-party depositions taken in *LetsGoBrandon.com Foundation v. NASCAR, LLC*, No. 2023-002831-CA-01 (44) (Fla. 11th Cir. Ct., Miami-Dade Cnty., Complex Business Div.), are set out in the charts served concurrently. Defendants reserve the right to call any designated witness live, to counter-designate, and to use any deposition for impeachment or rebuttal without advance designation.

**Brandon Brown Dep.**

6:22-24; 9:22-25; 10:6-15; 14:17-19; 22:2-11; 22:19-23:4; 26:5-22; 27:4-20; 27:25-28:6; 30:18-21; 31:1-7; 34:7-12; 35:19-36:15; 37:25-41:16; 42:2-19; 43:5-8; 43:15-17; 43:23-44:11; 45:4-23; 46:8-47:6; 49:6-14; 50:7-52:9; 57:6-16; 57:19-23; 58:25-59:3; 59:24-60:4; 60:18-61:2; 61:12-62:11; 62:18-64:9; 70:11-71:2; 81:17-20; 82:1-83:24.

**Jerry Brown Dep.**

5:11-13; 8:13-9:3; 10:10-24; 11:10-24; 14:16-21; 24:25-25:20; 27:18-24; 28:10-25; 29:19-30:3; 31:14-33:10; 33:20-34:5; 35:20-36:7; 36:15-38:09; 38:15-41:13; 42:14-19; 42:22-43:13; 44:16-22; 49:2-15; 50:5-8; 50:25-52:25; 56:1-5; 61:8-63:6; 64:9-22; 65:13-20; 65:24-66:1; 68:14-70:25; 71:5-17; 72:5-15; 73:10-15; 73:17-22; 75:1-15; 78:13-79:6; 79:15-80:21; 81:12-82:13; 83:12-84:5; 86:11-87:5; 87:15-88:3; 88:20-89:11; 91:1-92:10; 92:15-93:1; 94:22-95:3; 95:18-97:2; 98:15-22; 100:1-5; 104:18-105:2; 114:5-16; 116:4-119:22.

**Mike Forde Dep.**

5:11-13; 7:12-21; 9:2-13; 9:19-21; 9:25-10:23; 11:7-12:7; 12:13-15; 15:3-9; 16:20-17:4; 18:23-19:8; 22:1-5; 25:24-26:23; 27:14-28:6; 28:8-29:18; 29:24-30:11; 30:14-16; 30:18-20; 30:23; 30:25-31:13; 32:5-33:6; 33:13-34:7; 34:10-13; 34:15-35:6; 35:9-11; 35:13-40:4; 40:8-41:14; 42:9-43:6; 43:9-11; 43:13-22; 43:25-44:3; 44:5-7; 44:10-12; 44:14-16; 44:19-22; 44:24-45:14; 45:25-46:11; 47:16-23; 47:25-51:9; 51:24-52:7; 52:10-11; 52:13-15; 52:18-19; 52:21-53:4; 53:7; 53:9-13; 53:24-56:5; 56:13-58:2; 58:4-6; 58:14-59:16; 59:19-20; 59:22-60:4; 60:7; 60:11-25; 61:3-8; 61:23-62:14; 62:25-65:12; 65:23-66:7; 66:21-24; 67:12-16; 68:9-70:1; 70:17-71:13; 72:3-73:13; 73:16; 73:18-76:5; 76:8-78:14; 78:17-79:10; 79:12-82:13; 83:4-6; 83:12-14; 83:19-84:5; 84:24-85:18; 85:21-86:15; 91:19-22; 92:23-93:3; 93:7-94:13; 96:20-21; 97:4-99:21; 100:6-17; 104:21-23; 105:9-22; 106:16-19; 107:2-15; 110:7-24; 112:1-3; 112:10-114:20; 114:23-24; 115:1-116:3; 116:8-117:1; 118:6-119:4; 119:17-120:12.

**Dale Howell Dep.**

6:9-11; 9:17-19; 10:2-5; 11:3-4; 11:9-20; 13:6-19; 14:6-11; 16:13-18:24; 24:21-25:10; 25:22-26:15; 26:18; 26:20-21; 26:25-27:3; 28:12-29:21; 30:3-5; 30:8; 30:14-17; 30:20-31:4; 31:6-32:5; 34:5-8; 35:2-23; 36:10-38:2; 38:5-7; 38:13-39:20; 39:23-25; 40:7-41:9; 41:12; 41:14-42:4; 42:7; 42:9-14; 43:2-12; 43:15-18; 44:5-45:6; 45:9; 45:11-17; 46:3-50:2; 50:5-18; 50:21; 51:8-16; 51:19-20; 52:11-13; 52:19-54:16; 54:19-20; 55:25-56:15; 57:2-6; 57:9; 57:11-58:1; 58:4; 58:9-11; 58:13-20; 59:18-60:3; 60:6-7; 60:9-18; 60:21-22; 60:24-63:10; 63:13-15; 63:21-64:8; 64:11-13; 64:20-65:4; 65:7-66:21; 67:14-68:1; 68:4; 68:7-70:20; 70:23-71:22; 72:5-73:12; 73:15-17; 73:19-75:8; 75:11-14; 75:16-80:16; 80:19-81:8; 81:11-13; 81:15-82:12; 82:15-16; 82:18-20; 83:2-7; 83:11-84:13; 84:16-25; 85:3-17; 86:2-87:2; 88:4-89:8; 92:9-10; 93:2-11; 94:3-7; 95:2-99:20; 101:15-21; 102:14-103:9; 103:21-104:20; 105:2-107:2; 107:5-8; 107:10-108:21; 108:24; 109:2-5; 109:7-25; 113:18-114:5.

**Mac MacLeod Dep.**

3:16-19; 6:8-9; 6:22-7:3; 8:21-9:25; 14:4-25; 24:23-25:8; 26:19-27:13; 28:16-30:20; 32:17-33:1; 33:21-34:25; 38:18-39:1; 41:7-23; 43:22-44:1; 44:14-25; 48:19-49:18; 50:12-52:15; 53:13-54:1; 57:23-58:11; 61:8-13; 61:22-62:12; 83:11-15; 83:18-19; 83:21-85:19; 87:5-17; 94:7-23; 105:12-106:10; 110:9-111:5; 115:18-116:19; 120:7-121:9; 159:17-160:7; 160:24-161:10; 161:15-162:7; 163:5-23; 164:5-165:8; 165:15-166:25; 167:10-168:21; 174:4-9; 174:23-175:1.

**Eric Nyquist Dep.**

6:18-21; 9:4-12; 10:8-11:10; 14:1-16; 14:19-22; 14:24; 15:2; 15:4-12; 16:15-18:1; 18:18-19:22; 20:6-11; 21:6-9; 21:14-26:18; 26:24-27:20; 28:5-33:14; 33:17-34:23; 35:11-36:24; 37:1-12; 38:12-39:19; 39:24-43:6; 43:15-45:6; 45:9-14; 45:19-47:5; 47:19-20; 47:24-48:1; 48:5-50:24; 52:2-63:20; 64:6-65:10; 66:7-9; 66:18-67:12; 67:24-69:12; 71:9-17; 74:15-75:12; 76:24-77:11; 77:16-78:12; 79:2-80:6; 80:11-12; 80:19-86:5; 86:14-16; 87:3-88:8; 90:5-92:5; 94:7-10; 94:23-95:19; 96:2-97:3; 97:12-98:20; 99:9-11; 99:18-21; 100:7-101:17; 101:25-102:24; 103:1-104:18; 104:21-105:3; 105:5-106:9; 107:21-22; 108:2-4; 109:11-112:20; 112:23-114:4; 114:7-10; 114:12-115:4; 115:7-116:1; 116:3-6; 116:9-117:2; 117:9-118:4; 118:10-13; 118:15-123:2; 123:12-14; 123:20-124:11; 124:17-125:23; 126:4-128:15; 134:19-135:24; 136:2-137:3; 137:17-138:19.

(9) a concise statement of each admitted fact,

The parties stipulated to the following material facts in their Stipulation of Agreed Material Facts (Doc. 479, filed May 22, 2025), which the Court cited in its Order on the cross-motions for summary judgment (see, e.g., Doc. 531 at 4–5). The stipulated facts and their stated sources are restated below. Defendants reserve all objections to the relevance and use at trial of any stipulated fact, and to any characterization beyond its text.

1. LGBCoin was minted on October 27, 2021. Source: LGBCoin Trust Agreement.

2. Defendant Koutoulas drafted a document entitled the "LGBCoin Trust Agreement." Source: Koutoulas NASCAR Dep., H&K_NASCAR_00001342, 19:10–19:11.

3. Pursuant to the LGB Trust Agreement, LGBCoin was transferred from the unnamed Developer to the LGBCoin "Foundation Wallet" on October 29, 2021. Source: LGBCoin Trust Agreement.

4. At no point in time did Defendant Koutoulas register the LGBCoin cryptocurrency with any federal or state regulatory authority. Source: Koutoulas Interrogatory Responses Nos. 33–35.

5. The Trust Agreement named Koutoulas Law, LLC as trustee to perform the following: (a) enter into legal agreements on behalf of all LGBCoins, including but not limited to exchange listing agreements, the creation and management of decentralized liquidity pool(s), advisor agreements, promotional agreements, agreements for technical services, and engage counsel to protect and/or enforce the rights of all LGBCoins collectively; (b) manage a treasury of LGBCoins that can be traded or sold to pay for the above services; and (c) organize a non-profit LGBCoin Foundation (the "Foundation") outside the United States. Source: LGBCoin Trust Agreement.

6. Koutoulas Law, LLC is owned and operated by Defendant Koutoulas. Source: Koutoulas Class Action 30(b)(6) Dep., 9-25-24, 41:12–42:1.

7. Koutoulas' and coin purchasers' rights pursuant to the LGBCoin Trust Agreement "runs with the tokens" without any further intervention or action from the coin purchaser. Source: Koutoulas NASCAR Dep., H&K_NASCAR_1342, 155:6–11.

8. LGBCoin purchasers "believed in" the activities undertaken by the Foundation and Defendant Koutoulas as its trustee, including "donating to charity." Source: Koutoulas Continued NASCAR Dep., H&K_NASCAR_2087, 247:11–249:8.

9. Koutoulas believes that what made LGBCoin immediately successful was its advocacy work. Source: Koutoulas Continued NASCAR Dep., H&K_NASCAR_2087, 255:13–256:9, 263:20–264:12.

10. LGBCoin Foundation entered into indemnification agreements with various agents and/or advisors, including with Koutoulas. Source: Koutoulas Continued NASCAR Dep., H&K_NASCAR_2087, 291:12–292:3.

11. Following the NASCAR revocation, the LGBCoin Foundation tried to "maintain the advocacy of the project" by, among other things, "getting major political figures on board" and "recapitalizing liquidity pool." Source: Koutoulas Continued NASCAR Dep., H&K_NASCAR_2087, 291:12–292:3.

12. The LGBCoin Foundation never held any formal vote before taking action. Source: Koutoulas Class Action Indiv. Dep., 3-3-25, 32:18–33:4.

13. LGBCoin purchasers had no legal say in the activities or control of the LGBCoin Foundation. Source: Koutoulas Class Action Indiv. Dep., 3-3-25, 34:5–10, 35:12–22.

14. Class Representatives purchased LGBCoins consistent with their PSLRA certifications. Source: ECF Nos. 289-3, 289-4, 289-5.

15. Defendants hired Rafael Yakobi to give an advisory opinion letter on whether or not LGBCoins were securities. Source: Koutoulas Class Action Indiv. Dep., 3-3-25, 196:4–7.

16. De Ford offered free multimedia and advertising services to the LGBcoin Foundation. Source: R11 Ltr Exhibits, Ex. 1 ("I am not asking for compensation, only to provide 20+ years of experience in multimedia and advertising.").

**DEFENDANTS' PROPOSED ADDITIONAL STIPULATED FACTS**

Each of the following is drawn from the Court's Order on the Cross-Motions for Summary Judgment (Doc. 531), from Plaintiffs' own operative pleading, or from the public record, and is supported by the record citations given. Facts drawn from the Third Amended Complaint are factual allegations of the operative pleading and are binding judicial admissions. Defendants request that Plaintiffs stipulate to each. To the extent Plaintiffs decline, Defendants will move under Federal Rule of Civil Procedure 56(g) for an order treating these facts as established, and will offer the underlying deposition testimony already designated in Section (8) above.

1. Plaintiffs purchased LGBCoins on cryptocurrency decentralized exchanges such as Coinbase Wallet and Uniswap.
Source: Doc. 531 at 4; Doc. 477-3, 23:8–11; Doc. 477-4, 24:5–17; Doc. 477-5, 19:10–22.

2. None of the named Plaintiffs transacted directly with Defendant Koutoulas when purchasing LGBCoin.
Source: Doc. 531 at 4; Doc. 477-3, 26:15–27:2, 32:7–33:17; Doc. 477-4, 34:23–35:16; Doc. 477-5, 115:3–8.
3. None of the named Plaintiffs directly communicated with Defendant Koutoulas when they purchased LGBCoin.
Source: Doc. 531 at 24; Doc. 477-3, 26:15–27:2, 32:7–33:17; Doc. 477-4, 34:23–35:16; Doc. 477-5, 115:3–8.
4. Plaintiffs were not promised — either directly from Defendant Koutoulas or indirectly through social media and internet posts — any profits, dividends, transaction fees, or appreciation on their investment in LGBCoin.
Source: Doc. 531 at 5; accord Doc. 531 at 24; Doc. 477-3, 32:4–24; Doc. 477-4, 34:23–35:12; Doc. 477-5, 74:2–13.
5. The LGBCoin website stated: "LGBCoin is a ERC-20 Digital Collectible on the Ethereum Blockchain that allows owners to digitally voice their support for America. LGBCoin has no intrinsic value and you should not purchase it with any expectation that you will be able to resell it. Please do not spend money that you cannot afford."
Source: Doc. 531 at 24–25; Doc. 477-3, 25:4–17.
6. On the LGBCoin X account, Defendant Koutoulas stated that LGBCoin "is a digital collectible and digital way to express your support for the Let's Go Brandon movement."
Source: Doc. 531 at 25; Doc. 488-7, p. 36.
7. Neither the LGBCoin website statement nor Defendant Koutoulas's statement on the LGBCoin X account emphasized the investment value of LGBCoin.
Source: Doc. 531 at 25 ("Neither of these statements emphasize the investment value of LGBCoin.").
8. Plaintiffs have asserted non-investment reasons for purchasing LGBCoin, including "fight[ing] back against cancel culture," "help[ing] bring our Conservative party into the 21st century," and "donating to charity."
Source: Doc. 531 at 5; accord Doc. 531 at 24; Doc. 477-9; Doc. 479, ¶ 8; Doc. 477-3, 23:12–25.
9. No registration statement was in effect for LGBCoin at any relevant time.

Source: Third Am. Compl. ¶ 377. (Offered so that the parties need not litigate an undisputed point. Defendants deny that LGBCoin is a security and deny that any registration statement was required.)
10. The SEC conducted a formal investigation into whether LGBCoin was an unregistered security or was sold as an unregistered security. It closed the investigation without alleging either and without any allegation of wrongdoing. In the parties' stipulated filing in the Eleventh Circuit, the SEC agreed that it had "concluded its investigation without alleging that LGBcoin is a security." *Koutoulas v. SEC*, No. 24-12376 (11th Cir.), Doc. 38-1 ¶ 4. Mr. Koutoulas's subsequent motion to dismiss the related district-court proceedings as moot, the language of which the SEC reviewed and consented to being filed as unopposed, stated in paragraph 4:

"Thereafter, the SEC formally concurred with Mr. Koutoulas's position, admitting it could not allege that LGBcoin was a security and closed its investigation without issuing any findings of wrongdoing. See Exhibit A ("Stipulated Order")." Unopposed Movant's Mot. to Dismiss as Moot Following Remand ¶ 4, *Koutoulas v. SEC*, No. 1:23-cv-22345-JEM (S.D. Fla. June 24, 2025), ECF No. 31 (DX 0061).

11. LGBCoin is an ERC-20 token deployed on the Ethereum blockchain at contract address 0x21E783bcf445B515957A10E992aD3c8E9FF51288. The contract was deployed at block 13,508,680, in a creation transaction timestamped October 28, 2021, at 23:30:24 UTC (October 27–28, 2021, U.S. time zones), five days before the first day of the certified class period. The entire supply of 330,000,000,000,000 tokens was created in the constructor at deployment. The contract exposes eleven functions, all of which are the standard ERC-20 balance, transfer, and allowance operations. It contains no owner function, no function to create or destroy tokens, no function to pause or restrict transfers, no function to charge a fee or distribute any dividend, reward, or other payment, and no function to alter the contract. It is not a proxy and cannot be upgraded. Its code has not changed since deployment and cannot be changed, and the token performs no function other than transfer.
Source: LGBCoin smart contract, Ethereum mainnet address 0x21E783bcf445B515957A10E992aD3c8E9FF51288, deployed by creation transaction 0x8a73ca15c77cc4604b9f55ba272be38cafe580b203c2d530e6b27caf33367bea at block 13,508,680 on October 28, 2021; contract source and application binary interface verified by Etherscan (exact match) and independently by Blockscout; DX 00138.

12. NASCAR approved LGBCoin and TradetheChain.com to be Brandon Brown's sponsors for the upcoming Daytona 500 race no later than December 26, 2021.

Source: Third Am. Compl. ¶ 224.

13. BMS's MacLeod submitted all necessary information concerning LGBCoin.io's potential sponsorship to NASCAR's Director of Operations, Dale Howell, and Howell approved the sponsorship on December 26, 2021, by email writing "The sponsors are approved."

Source: Third Am. Compl. ¶ 225.

14. The sponsorship approval was unambiguous.

Source: Third Am. Compl. ¶ 227.

15. Based upon this written approval, Mascioli and BMS issued a press release announcing the LGBCoin sponsorship approval on December 30, 2021.

Source: Third Am. Compl. ¶ 228.

16. Brown filmed a promotion unveiling his car and LGBCoin as his official sponsor, and BMS incurred costs in wrapping the racecar and hauler and purchasing fire suits in reliance on the approval.

Source: Third Am. Compl. ¶ 229.

17. NASCAR did not deny it had given its approval, and did not publicly issue a withdrawal of that approval, until seven days later, on January 5, 2022.

Source: Third Am. Compl. ¶¶ 230, 423.

18. Thousands of new buyers purchased LGBCoin in reliance on NASCAR's approval of the LGBCoin sponsorship of Brandon's car.

Source: Third Am. Compl. ¶ 231.

19. Plaintiffs read and/or were aware of the disclosure of the NASCAR approval and relied upon that approval in deciding to purchase LGBCoin.

Source: Third Am. Compl. ¶¶ 423, 438.

20. On the morning of December 30, 2021, before Brandonbilt Motorsports announced the sponsorship, NASCAR's managing director of racing communications, Michael Forde, was told by a reporter that the announcement was coming at 10:00 a.m. and that the team was saying NASCAR had approved the paint scheme. NASCAR had by then already sent the team its written approval. In an email exchange with Dale Howell that morning, Forde read the team's press release and wrote that the team "position it okay" and that they "do mention Let's Go Brandon but try to pivot it to a nonpolitical deal."

Source: Dep. of Michael Forde, Aug. 16, 2024, taken in *LetsGoBrandon.com Foundation v. National Association for Stock Car Racing, LLC*, No. 2023-002831-CA-01 (44) (Fla. 11th Jud. Cir., Miami-Dade Cnty., Complex Bus. Div.); DX 0078, at 56:19–57:10, 58:1–6, 58:22–59:7, 60:9–18.

(10) a concise statement of each agreed principle of law,

Defendants propose the following as agreed principles of law, subject to Plaintiffs' agreement at the conferral required by the Sixth Amended Case Management and Scheduling Order (Doc. 620). Defendants reserve the right to propose additional principles, and to object to any principle proposed by Plaintiffs, once Plaintiffs state their positions.

1. Section 12(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(1), imposes liability on a person who offers or sells a security in violation of Section 5, 15 U.S.C. § 77e, and that liability runs only "to the person purchasing such security from him." 15 U.S.C. § 77l(a)(1).

2. The term "security" as defined in Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1), includes an "investment contract."
3. An investment contract is a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party. *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946).
4. Plaintiffs bear the burden of proving each element of their Section 12(a)(1) claim, including that LGBCoin was a security.
5. A defendant is a statutory seller subject to liability under Section 12 only if he passed title to the plaintiff, or if he successfully solicited the plaintiff's purchase motivated at least in part by a desire to serve his own financial interests or those of the securities owner. *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988); *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1527 (11th Cir. 1991).
6. A buyer cannot recover under Section 12 against his seller's seller. *Pinter*, 486 U.S. at 644 n.21.
7. Under Florida law, a claim for unjust enrichment requires that the plaintiff conferred a benefit on the defendant, that the defendant voluntarily accepted and retained that benefit, and that the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying for it. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012).

(11) a concise statement of each issue of fact without incorporating another paper,

1. Whether LGBCoin was offered or sold to Plaintiffs containing within it any contractual promise of profits derived solely or primarily from the entrepreneurial or managerial efforts of Defendants.
2. Whether Plaintiffs purchased LGBCoin with a reasonable expectation of profits solely or primarily from the entrepreneurial efforts of Defendant Koutoulas, as opposed to speculation on market forces, third-party activity, or personal motivations.
3. Whether any Defendant made promises or representations to Plaintiffs concerning managerial, operational, or profit-generating efforts beyond basic technical or promotional activity.
4. Whether any Plaintiff was a party to, signed, or was offered any right under the LGBCoin Trust Agreement.
5. Whether any Plaintiff was promised an ownership interest in, a share of the revenue of, or any distribution from the LetsGoBrandon.com Foundation.
6. Whether Defendant Koutoulas sold, offered, or solicited the purchase of LGBCoin to any Plaintiff within the meaning of Section 12(a)(1).
7. Whether LGBCoin, Ltd. existed at the time of Plaintiffs' alleged purchases and whether it issued or controlled LGBCoin during the relevant period.
8. Whether Defendant Koutoulas passed title to LGBCoin to any Plaintiff, including whether any person, as opposed to a decentralized liquidity pool, stood on the other side of each Plaintiff's purchases, the dates of those transactions, and the consideration paid. Defendants contend that this issue is already resolved by Plaintiffs' own admissions that they purchased LGBCoin on decentralized cryptocurrency exchanges and did not transact directly with Mr. Koutoulas, and list it here only to the extent Plaintiffs dispute that it is established.

9. Whether Plaintiffs' alleged transactions, if any, involved initial distributions by a statutory seller or instead involved secondary-market transactions conducted by third parties. Defendants contend that this issue is already resolved by Plaintiffs' admissions that all of Plaintiffs' alleged transactions were on secondary, decentralized exchanges.
10. Whether statements or conduct attributed by Plaintiffs to Defendant Koutoulas were made by him individually or instead by a non-party foundation or unrelated third parties.
11. Whether the non-party foundation acted as an agent of either Defendant or whether its statements and actions were independent and not attributable to Defendants.
12. Whether the objective economic inducements held out to purchasers of LGBCoin were made by Defendants, as opposed to third parties, media, or market participants.
13. Whether Plaintiffs sustained any recoverable damages attributable to transactions involving either Defendant, and if so, the nature and amount of such damages.
14. Whether Plaintiffs' alleged damages, if any, are traceable to purchases in which Defendant Koutoulas passed title to the purchasing Plaintiff, rather than to market fluctuations or to the acts of third parties.
15. Whether Plaintiffs' asserted damages account for offsets, including charitable donations, taxes, political contributions, or operating expenses advanced by Defendant Koutoulas or his law firm.
16. Whether Plaintiffs' late-asserted, unpled damages theory is supported by identifiable transactions, records, or methodologies.
17. Whether Plaintiffs can identify specific purchases, quantities, prices, and dates sufficient to establish liability and damages under Section 12(a)(1).
18. Whether any Plaintiff's purchase of LGBCoin resulted from solicitation by Defendant Koutoulas within the meaning of Section 12(a)(1), undertaken to serve his own financial interests or those of a securities owner.
19. Whether the only investment contract Plaintiffs have ever alleged is the LGBCoin token itself, Plaintiffs having pleaded that "LGBCoins are securities . . . because they are investment contracts," Third Am. Compl. ¶ 372, and whether any attempt at trial to treat the LGBCoin Trust Agreement or a broader scheme as the required contract, transaction, or scheme would present a theory not pleaded in the operative count.
20. Whether any Plaintiff conferred a benefit on Defendant Koutoulas, and if so, the nature and amount of that benefit.
21. Whether any Plaintiff conferred a benefit on Defendant LGBCoin, Ltd., and if so, the nature and amount of that benefit.
22. Whether Defendant Koutoulas voluntarily accepted and retained any benefit conferred by Plaintiffs.
23. Whether Defendant Koutoulas's net position with respect to LGBCoin and related activity was a gain or a loss.
24. Whether Defendant LGBCoin, Ltd. ever received any part of the consideration paid by any Plaintiff for LGBCoin, and if so, from whom, in what amount, and on what date.
25. Whether Defendant LGBCoin, Ltd. ever sold, transferred, or otherwise distributed LGBCoin to any person, and whether it received any proceeds from any such transaction.
26. Whether the circumstances are such that it would be inequitable for either Defendant to retain any benefit without paying its value.
27. The amount of restitution, if any, to which each of the three named Plaintiffs would individually be entitled.

28. Whether the amount recoverable by any class member under Section 12(a)(1), which is the consideration paid for the security with interest, less the amount of any income received thereon, upon tender of the security, can be determined without individualized proof as to each purchaser. 15 U.S.C. § 77l(a)(1).
29. Which digital wallets, and which purchases made through them, fall within the certified class definition, and whether Plaintiffs have offered any methodology by which eligible class members can be identified from blockchain records, exchange records, or any other available source.
30. Whether Plaintiffs can establish, for any class member, the consideration paid for LGBCoin, the amount of any income received thereon, and whether that class member still owns the LGBCoin purchased, each of which Section 12(a)(1) requires before any recovery may be awarded. 15 U.S.C. § 77l(a)(1).
31. Whether the decline in the price of LGBCoin was caused by NASCAR's revocation of its approval of the sponsorship rather than by any act or omission of either Defendant.
32. Whether the losses Plaintiffs claim arose in liquidity pools created or operated by either Defendant, and whether other LGBCoin liquidity pools existed that neither Defendant nor the Foundation created or operated.
33. Whether any portion of the losses Plaintiffs claim arose from liquidity-provision transactions, deposits to and withdrawals from a pool, rather than from purchases of LGBCoin.
34. Whether the entrepreneurial or managerial efforts from which Plaintiffs claim purchasers expected profits were performed by Defendant Koutoulas individually, as opposed to the token's third-party developer, Koutoulas Law, LLC as trustee, the non-party LetsGoBrandon.com Foundation, a community of volunteers numbering approximately 96, or third parties including Mascioli, Latona, Brandonbilt Motorsports, and NASCAR.

(12) a concise statement of each issue of law without incorporating another paper,

1. Whether LGBCoin constituted a "security" within the meaning of the Securities Act of 1933.
2. Whether Plaintiffs can establish the third element of an investment contract under *SEC v. W.J. Howey Co.*, a reasonable expectation of profits derived solely or primarily from the entrepreneurial or managerial efforts of others.
3. Whether promotion, marketing, advocacy, or charitable or political activity—without contractual promises of managerial efforts—can satisfy the "entrepreneurial efforts" element of the *Howey* test.
4. Whether Defendant Koutoulas was a "statutory seller" within the meaning of Section 12(a)(1) of the Securities Act.
5. Whether a promoter who publicly touts a digital asset thereby solicits its purchase for purposes of Section 12 liability, and if so, what showing is required to establish that the solicitation was made to serve the promoter's own financial interest. *Wildes v. BitConnect International PLC*, 25 F.4th 1341 (11th Cir. 2022); *Pinter v. Dahl*, 486 U.S. 622, 647 (1988).

6. Whether any Plaintiff purchased an alleged security from Defendant Koutoulas, such that he passed title to that Plaintiff, as Section 12(a)(1) requires for liability and for rescission.
7. Whether statements or conduct of a non-party foundation or unrelated third parties may be attributed to Defendant Koutoulas absent allegations or proof of agency, adoption, or corporate veil-piercing.
8. Whether Section 12(a)(1) liability may be imposed on a Defendant for secondary-market transactions conducted by third parties, absent proof that the Defendant passed title to the purchasing Plaintiff or successfully solicited the purchase motivated at least in part by his own financial interests or those of the securities owner.
9. Whether Plaintiffs have adequately identified the transactions at issue, including dates, execution venues, and consideration, sufficient to establish liability and damages under Section 12(a)(1).
10. Whether Plaintiffs' damages theories are legally cognizable where Plaintiffs have not identified any purchase in which a Defendant passed title to the purchasing Plaintiff, or any permissible measure of rescissionary damages.
11. Whether intent, internal deliberations, or private communications are relevant to the determination of whether an asset constitutes a security under an objective *Howey* analysis.
12. Whether original jurisdiction over the three named Plaintiffs' individual unjust enrichment claims persists under 28 U.S.C. § 1332(d) following the denial of class certification of those claims, or whether those claims now rest on supplemental jurisdiction under 28 U.S.C. § 1367.
13. Whether, if the unjust enrichment claims rest on supplemental jurisdiction, the Court should decline to exercise it under 28 U.S.C. § 1367(c), and whether those claims should in any event be severed and tried separately under Federal Rule of Civil Procedure 42(b).
14. Whether a functionless crypto token can itself constitute an "investment contract" under Section 2(a)(1) of the Securities Act, or whether the statutory term instead denotes a contract, transaction, or scheme, such that a claim pleaded solely against the asset, and not against any identified contract, transaction, or scheme, fails as a matter of law. See *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946); *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 352–53 (1943); *Marine Bank v. Weaver*, 455 U.S. 551, 560 n.11 (1982); *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 324 (S.D.N.Y. 2023).
15. Whether promotion of an asset, without a representation that the promoter or another will undertake essential ongoing managerial or entrepreneurial efforts to generate a profit for the purchaser, can establish the expectation-of-profits element of *Howey*. See *Rice v. Branigar Org., Inc.*, 922 F.2d 788, 790–91 (11th Cir. 1991).
16. Whether the unjust enrichment claims, as to which class certification was denied for lack of predominance, are limited to the individual claims of the three named Plaintiffs, such that no class-wide restitution is available on those claims. Doc. 455.
17. Whether restitution under Florida law is measured by the benefit retained by the defendant rather than by the loss claimed by the plaintiff.

18. Whether unjust enrichment, an equitable claim, is available to Plaintiffs where they assert an adequate remedy at law under Section 12(a)(1) of the Securities Act arising from the same transactions.

19. Whether a benefit is conferred on a defendant for purposes of Florida unjust enrichment law where the plaintiff purchased on a public secondary market through a decentralized exchange and the consideration was paid into a liquidity pool rather than to the defendant.

20. Whether a defendant that neither sold nor transferred the asset to the plaintiff, and that received no part of the consideration the plaintiff paid and no distribution, payment, or transfer from any other source, can be found to have received and retained a benefit for purposes of Florida unjust enrichment law. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012).

21. Whether Plaintiffs can establish the elements of unjust enrichment under Florida law as to either Defendant, namely that Plaintiffs conferred a benefit on the Defendant, that the Defendant voluntarily accepted and retained that benefit, and that the circumstances are such that it would be inequitable for the Defendant to retain it without paying its value. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012).

22. Whether, for purposes of Florida unjust enrichment law, it is inequitable for a defendant to retain a benefit where the loss the plaintiff claims is attributable to the intervening conduct of a third party rather than to the defendant.

23. Whether restitution is available against a defendant who did not receive the consideration the plaintiff paid and whose overall position was a net loss.

24. Whether an allegation contained in a superseded pleading is admissible against the pleading party as an evidentiary admission of a party opponent. See *Cont'l Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971); *Borel v. U.S. Cas. Co.*, 233 F.2d 385, 388 (5th Cir. 1956); *Taxinet Corp. v. Leon*, 114 F.4th 1212, 1227 (11th Cir. 2024).

25. Whether, and subject to what limitations under Federal Rules of Evidence 401, 402, and 403, evidence of the existence, scope, and disposition of a federal regulatory investigation into the same subject matter is admissible at trial.
26. Whether Plaintiffs' definition of the class recovery as losses on transactions "within the LGB-WETH pool" is an admission that no Defendant passed title to any class member.
27. Whether Plaintiffs' theory that class members who purchased from liquidity pools may recover from an alleged seller into those pools seeks recovery against a "seller's seller," which Section 12(a)(1) does not permit. *Pinter v. Dahl*, 486 U.S. 622, 644 n.21 (1988).
28. Whether the jury may be instructed on, or asked to return a verdict on, a Section 12(a)(1) theory against Defendant LGBCoin, Ltd., where no Section 12(a)(1) claim against it was pleaded, certified, or identified in Plaintiffs' pretrial statement. Doc. 455 at 2.
29. Whether losses on liquidity-provision transactions are recoverable under Section 12(a)(1) by a class certified as purchasers of LGBCoin.

30. Whether Plaintiffs may pursue at trial a damages theory that was not pleaded in the operative complaint, which alleged approximately $1.6 million in sales by Defendant Koutoulas, and that was never added by amendment or leave of Court. See *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

(13) a list of each pending motion or other unresolved issue,

**A. Motions pending before this Court.**

1. **Defendant Koutoulas's Motion for Reconsideration of the Order on Summary Judgment (Doc. 624, filed April 24, 2026)**, directed to the Court's Order of December 2, 2025 (Doc. 531). Plaintiffs responded in opposition (Doc. 628, May 8, 2026). The motion is fully briefed and remains under advisement; the Court advised on June 29, 2026 that it "will rule on 624 Defendant Koutoulas' Motion for Reconsideration on Motion for Summary Judgment in due course." (Doc. 653.) Because the motion is addressed to the partial summary judgment entered against Defendants on the first two prongs of the *Howey* test, its resolution may narrow or expand the issues to be tried and the instructions to be given.

2. **Plaintiffs' Motion for Sanctions (Doc. 614, filed April 13, 2026).** Defendant Koutoulas responded in opposition (Doc. 626, April 27, 2026); Plaintiffs replied (Doc. 635, May 15, 2026); and Defendant filed a sur-reply by leave of Court (Docs. 645, 651, June 12, 2026). Fully briefed and pending.

3. **Defendant Koutoulas's Motion for Rule 11 Sanctions Against Plaintiffs' Counsel (Doc. 637, filed May 19, 2026).** Plaintiff Key responded in opposition (Doc. 639, May 20, 2026); non-party Sheeler filed a limited response (Doc. 641); and Defendant replied by leave of Court (Docs. 646, 648, June 5, 2026). Fully briefed and pending.

**B. Other unresolved issues.**

1. Whether the individual unjust enrichment claims should be severed, and the jurisdictional basis on which they proceed. Plaintiffs' draft pretrial statement, served July 28, 2026, asserts no unjust enrichment claim, issue, or remedy; if that omission stands in the Joint Final Pretrial Statement, the issues in this subsection will be moot. The only claim certified for class treatment is the First Cause of Action under Section 12(a)(1). Doc. 455 at 2, 32. Certification of the unjust enrichment claims was denied, and those claims remain only as the individual claims of the three named Plaintiffs. Plaintiffs pleaded jurisdiction over their state-law claims under 28 U.S.C. § 1332 on the basis of a putative class of more than 100 members seeking more than $5,000,000 in the aggregate. Third Am. Compl. ¶ 61. With certification of those claims denied, a question exists whether original jurisdiction under 28 U.S.C. § 1332(d) persists as to the three individual claims or whether they now rest on supplemental jurisdiction under 28 U.S.C. § 1367; no Plaintiff is alleged to satisfy individually the $75,000 amount in controversy required by 28 U.S.C. § 1332(a).

Defendants' primary request does not turn on the answer to the jurisdictional question. Defendants request that the unjust enrichment claims be severed and tried separately under

Federal Rule of Civil Procedure 42(b), and object under Federal Rule of Evidence 403 to trying equitable claims that turn on conduct, motive, and the equities to the same jury that must decide the strict-liability registration question under Section 12(a)(1). The unjust enrichment claims are governed by Florida law; they turn on what Defendant Koutoulas received, what he retained, what he disbursed, and on whether retention would be inequitable in light of the intervening conduct of a third party; and none of that bears on the single *Howey* element the Court has reserved for the jury on the certified federal claim. Doc. 531 at 27 n.10. The intent- and equities-based evidence those claims invite would unfairly prejudice the defense of the Section 12(a)(1) claim, and the risk of unfair prejudice and of confusing the issues substantially outweighs any gain in efficiency.

To the extent the unjust enrichment claims rest on supplemental jurisdiction, Defendants further request that the Court decline to exercise it under 28 U.S.C. § 1367(c)(2) and (c)(4). Defendants note for the Court that their earlier Motion to Bifurcate Liability and Damages (Doc. 582) was denied by Order of April 27, 2026 (Doc. 625). The relief sought here is different in kind: it is the severance of three individual state-law claims from a certified federal class claim, not the division of liability from damages within a single claim.

The motion presenting the jurisdictional issue (Doc. 543) was stricken on January 16, 2026 (Doc. 558) on the sole ground that a represented party may not file motions in his individual capacity. Defendant Koutoulas has since appeared pro se (Doc. 623). The issue has therefore never been reached on the merits, and an objection to subject-matter jurisdiction may be raised at any time. Fed. R. Civ. P. 12(h)(3).

2. **The admissibility of statements, publications, and filings of the United States Securities and Exchange Commission.** At the hearing of January 16, 2026 (Doc. 555), the Court stated that it would not admit SEC statements or filings into evidence. The statement was made sua sponte, without briefing or argument, and no written order addresses the question. Defendants' notices requesting judicial notice of SEC statements and publications (Doc. 576) and of public filings in *Koutoulas v. SEC*, No. 1:23-cv-22345-JEM (S.D. Fla.) (Doc. 577), and Plaintiffs' opposition (Doc. 587), remain unresolved. Because the third *Howey* prong turns on the objective characteristics of the instrument, Defendant respectfully submits that the issue should be resolved on the record before trial.

3. **Defendant Koutoulas's appeal from the Contempt Order (Doc. 658)**. The Court entered its contempt Order on July 22, 2026. Defendant filed a Notice of Appeal on July 23, 2026 (Doc. 659), and paid the filing fee. No case number has been assigned by the United States Court of Appeals for the Eleventh Circuit, and Defendant has not yet sought a stay in that court. In this Court, Defendant's Emergency Motion to Stay the compelled-statement and fee provisions of the Order pending appeal (Doc. 661) was denied by endorsed Order of July 24, 2026 (Doc. 662).

4. Plaintiffs' anticipated application for costs and fees under the Contempt Order. Doc. 658 permits Plaintiffs to file an application for reasonable costs and attorney's fees within twenty-one days of the Order, with any response limited to the reasonableness of the amounts sought rather than to entitlement. That application, if filed, and any response to it will remain pending on the eve of trial. This application may be precluded by Defendant's appeal.

5. **Mandatory sanctions review under the Private Securities Litigation Reform Act**. Section 27(c) of the Securities Act, 15 U.S.C. § 77z-1(c), requires the Court, upon final adjudication of the action, to include in the record specific findings regarding each party's and each attorney's compliance with Rule 11(b) as to every complaint, responsive pleading, and dispositive motion, and to impose sanctions in accordance with Rule 11 upon a finding of violation. The statute further provides that, for a violation committed in connection with a complaint, the presumptive sanction is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action, and not merely those incurred as a direct result of the violation, which is the measure that applies to a responsive pleading or dispositive motion. 15 U.S.C. § 77z-1(c)(3)(A). Defendant Koutoulas contends that sanctions are warranted against Plaintiffs and their counsel. The review is mandatory but is by statute deferred until final adjudication, and Defendant accordingly lists it here as an unresolved issue rather than as a motion presently requiring decision. Defendant respectfully requests that the Court set a schedule for the required findings promptly after verdict.

6. **Defendant Koutoulas's Rule 11 sanctions motions deferred to the close of litigation.** Defendant Koutoulas has twice moved for Rule 11 sanctions against Plaintiffs and their counsel, and on each occasion the motion was resolved without reaching the merits and expressly subject to renewal at the conclusion of the case. The Court denied the first such motion (Doc. 113) without prejudice by Order of September 27, 2022 (Doc. 121). The second (Doc. 223) was stricken by endorsed Order of March 28, 2023 (Doc. 225), in which the Court stated that "Defendant Koutoulas is reminded of the Court's preference to resolve Rule 11 sanctions motions at the close of litigation," citing its earlier Order denying the first motion without prejudice. Those requests for sanctions therefore remain unresolved and, consistent with the Court's stated preference and with the mandatory review described at B.5 above, are to be taken up at the close of litigation. Defendant Koutoulas's currently pending Rule 11 motion (Doc. 637, listed at A.3 above) does not supersede or exhaust the conduct addressed in the earlier motions. Defendant Koutoulas intends to renew those requests within the deadline for all other motions set by the Sixth Amended Case Management and Scheduling Order (Doc. 620).

7. **Defendant Koutoulas's Renewed Motion to Decertify the Class**. Defendant Koutoulas contends that the certified class can no longer be maintained in light of the Court's Order of December 2, 2025 (Doc. 531), which entered partial summary judgment on the first two prongs of the Howey test while leaving the third prong — and with it the threshold question whether LGBCoin is a security — for the jury, and in light of developments in the record bearing on typicality, adequacy, and the predominance of individualized questions of purchase, transfer of title, and reliance. A conferral has been initiated but Plaintiffs have not responded regarding the relief sought pursuant to Local Rule 3.01(g). Defendant Koutoulas will file the renewed motion within the deadline for all other motions set by the Sixth Amended Case Management and Scheduling Order (Doc. 620), and lists the matter here because its resolution bears directly on the scope of the trial, the composition of the plaintiff class, and the instructions to be given.

8. **Defendant Koutoulas's Motion to Compel Compliance with Local Rule 3.03 and to Direct Plaintiffs to File an Amended Certificate of Interested Persons**. Defendant Koutoulas contends that Plaintiffs' certificate of interested persons does not disclose the third-party litigation funder financing this action, and that Local Rule 3.03 requires that disclosure. A

conferral has been initiated but Plaintiffs have not responded regarding the relief sought pursuant to Local Rule 3.01(g). Defendant Koutoulas will file the motion within the deadline for all other motions set by the Sixth Amended Case Management and Scheduling Order (Doc. 620), and lists the matter here because the identity of the funder bears on juror voir dire and on potential conflicts among trial participants. Defendant respectfully requests resolution in advance of jury selection.

9. **Non-party Albert Sheeler's interlocutory appeal.** By Order of May 21, 2026 (Doc. 640), the Court vacated its earlier Order (Doc. 633), overruled non-party Sheeler's objections (Doc. 634), adopted the Report and Recommendation (Doc. 627), and denied Sheeler's Renewed Motion to Intervene and Notice of Objection to Class Certification (Doc. 560). Sheeler's motion for reconsideration (Doc. 642) was found moot (Doc. 644). Sheeler filed a notice of interlocutory appeal on June 29, 2026 (Doc. 654), docketed in the Eleventh Circuit as No. 26-12300, and his motion for leave to appeal in forma pauperis (Doc. 655) was denied without prejudice on July 23, 2026 (Doc. 660). The appeal is pending. Defendant lists it here because its resolution bears on the composition of the certified class and on whether absent class members' objections have been finally resolved before trial.

10. **Motions in limine and evidentiary objections**. Under the Sixth Amended Case Management and Scheduling Order (Doc. 620), all remaining motions, including a single omnibus motion in limine and objections to deposition designations and counter-designations, are due August 24, 2026, and objections to counter-designations are due August 31, 2026. Defendant Koutoulas intends to file an omnibus motion in limine within that deadline. The parties' respective exhibit and deposition objections, set out above, likewise remain for the Court's resolution.

(14) a statement of the usefulness of further settlement discussions, and

The parties have participated in mediation and a settlement conference without resolution. Defendants remain open to further settlement discussions. Defendants believe further discussions could be productive if Plaintiffs are willing to engage on that framework.

(15) the signatures of trial counsel and any pro se party following this certificate: "In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action."

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.

Dated: __________, 2026

Respectfully submitted,

/s/ ____pending final order______

**JAMES L. KOUTOULAS**
*Defendant, Pro Se*
10 N. Dearborn St., Suite 400
Chicago, IL 60602

Telephone: (312) 836-1180

E-mail: james@koutoulaslaw.com

/s/ ____pending final order______

HARRY WINDERMAN, ESQ.
Florida Bar No. __________
One Boca Place
2255 Glades Road, Suite 205E
Boca Raton, FL 33431
Telephone: (561) 707-0000
Facsimile: (561) 434-0033

E-mail: harry4334@hotmail.com

*Counsel for Defendant LGBCoin, Ltd.*