# EXHIBIT I

## EXCERPTS FROM THE DEPOSITION OF SHAWN R. KEY

## Taken December 12, 2024

Cited pages 19, 23-24 and 113. Plaintiff Key testifies that a transaction ID would show the exchange on which a purchase was made and when; that his interrogatory response names Coinbase and Uniswap; and, shown Schedule A of his own certification, that "there's no evidence that this is on an exchange."

*The transcript is a 4-up condensed reprint, so each sheet carries four transcript pages.*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NO.: 6:22-CV-00652-PGB-DCI

ERIC DE FORD, SUSAN BADER,
SHAWN R. KEY, Individually and on
Behalf of All Other Similarly Situated,
Plaintiffs,
v.
JAMES KOUTOULAS, and
LGBCoin, LTD,

Defendants.
_______________________________________/

DATE: December 12, 2024
TIME: 10:09 a.m. - 1:32 p.m.
PLACE: Via remote video Zoom

VIDEOTAPED CONFERENCE DEPOSITION OF SHAWN ROY KEY

Kimberly Hacker
United Reporting, Inc.
Litigation Building
633 South Andrews Avenue, Suite 202
Fort Lauderdale, Florida 33301
(954) 525-2221



APPEARANCE FOR THE PLAINTIFFS:
THE ZIGLER LAW FIRM
308 South Jefferson Street, Suite 333
Chicago, Illinois 60661
BY: KEVIN MC CORMACK, ESQUIRE

APPEARANCE FOR THE DEFENDANTS:
DI PIETRO PARTNERS, PLLC
901 East Las Olas Boulevard, Suite 202
Fort Lauderdale, Florida 33301
BY: NICOLE M. MARTELL, ESQUIRE and
TYLER L. MUTSCHLER, ESQUIRE

ALSO PRESENT:
KAMRYN BRODEY, INTERN OBSERVER
JAMES KOUTOULAS, DEFENDANT
PATRICIA PFEIL, VIDEOGRAPHER
UNITED REPORTING, INC.



I N D E X


| WITNESS | PAGE |
|---|---|
| SHAWN ROY KEY | |
| Direct Examination by Ms. Martell | 5 |


E X H I B I T S


| DEFENDANT'S | DESCRIPTION | PAGE |
|---|---|---|
| 18 ** | Shawn Key's answers and objections to defendants, James Koutoulas and LGBCoin, Ltd's first set of interrogatories | 23 |
| 10 * | Welcome page to LGB site | 28 |
| 3 * | Sponsorship agreement | 41 |
| 11 * | E-mail document between Dale Howell and Mac MacLeod | 43 |
| 19 | Brandon Built Motorsports press release announcement | 56 |
| 4 * | Coinbase chart document | 74 |
| 20 | Third Amended Complaint | 101 |
| 16 * | Notice of PSLRA compliance | 110 |
| 21 | Declaration certification document | 115 |
| 8 * | NASCAR e-mail document | 115 |


**(Reflects continuation numbering from September 10, 2024 deposition.)

*(Reflects previously marked exhibits.)



VIDEOGRAPHER: We are now on the video record. The time is 10:09:17 a.m. Today is Tuesday, the 10th day of December, 2024.

We are here for the videotaped deposition of Shawn R. Key, Case Number 6: 22-CV-00652-PGB-DCI, Eric De Ford, Susan Bader, Shawn R. Key, Individually and on Behalf of All Others Similarly Situated versus James Koutoulas and LGBCoin, Ltd. Held in the United States District Court, Middle District of Florida, Orlando Division.

The court reporter is Kimberly Hacker, the videographer is Nancy Pfeil; both are of United Reporting.

Will counsel please introduce yourselves for the record? And the court reporter will swear in the witness.

MS. MARTELL: Plaintiff's counsel?

MR. MC CORMACK: This is Kevin Mc Cormack on behalf of the Plaintiffs.

MS. MARTELL: Nicole Martell on behalf of the defendants, along with Mr. Tyler Mutschler.

COURT REPORTER: Very good. Mr. Key, could you please raise your right hand?

Do I have your consent to swear you in via remote video Zoom this morning?



3bbf9897-9ecb-4742-bedd-db04a0f98134

*Transcript page 17 redacted.
Not cited. Contains personal identifying information and unrelated testimony.*

Page 19

wraps -- that would be what goes on the NASCAR cars for Brandon Brown. And he called me up one evening and said I know you're really into crypto, I want to check this coin out. There is a really good possibility that NASCAR is going to back it. And that's what we call buying on rumor before selling on news. That was very exciting for me. So I bought coinage at that time I want to say from Pancakeswap. I believe that's the exchange it was on.

**Q. You said Pancakeswap?**

A. I believe that was the exchange. There were several exchanges. My apologies, I might have to look it up, but that's the one that's ringing a bell. If not, it could have been Uniswap; that was another one. At that time it would be on chain. So with apologies, I'd have to have to double-check.

**Q. What would you need to look at to double-check?**

A. Just to go back and look at my buy and sell transactions, and it would give me a transaction a TX ID and that would show which exchange it was purchased on and when.

**Q. Have those documents been produced in discovery in this case?**

A. To my knowledge, I have, yes -- the bought and

*Transcript page 18 redacted.
Not cited. Contains personal identifying information and unrelated testimony.*

Page 20

sells.

**Q. To your knowledge, were any of those documents withheld?**

A. No -- not that was not purposely if something was.

**Q. You mentioned that NASCAR backing LGBCoin was exciting to you.**

**Why was that?**

A. Well, if you get a national sports company, for lack of a better word, behind a Meme coin, it's going to gain some traction, it's going to excite people.

Everything in the crypto world revolves around what we call fomo, fear of missing out. So you get a name attached or a company attached to a coin, there's speculation that in this case, maybe NASCAR uses that coin to buy and sell merchandise or buy and sell tickets to events, or you may even get extras if you participate by holding the coin. These are all speculative, of course, but they can certainly make a coin go up exponentially in value. So yeah, it would be considered a pretty hot commodity at the time.

**Q. But as you just stated, this is something speculative, correct?**

A. Yes, at the time it was speculative.

Page 21

**Q. And you understood this at the time that you purchased LGBCoin?**
A. Correct.
**Q. Why did you choose to purchase LGBCoin?**
A. Again, fear of missing out, insider information from Brian, the conversation that he'd keep me in the loop so anything that moved forward or changed, I'd certainly have access to it. And because crypto is not regulated like shares -- that type of stuff's not considered illegal, at the time anyway.
So, yeah, I felt like we really were, pun intended, in the driver's seat here.
**Q. Were you aware of LGBCoins' intended purpose or the type of issues that it was intended to support?**
A. Can you clarify that a bit?
MR. MC CORMACK: I object to the form.
**Q. Sure. Did you purchase LGBCoin in order to support any particular charities, for example?**
A. No.
**Q. Did you buy LGBCoin in order to help support any conservative causes?**
A. No.
**Q. Do you recall which dates you purchased LGBCoin on?**
A. Late December, early January 2020, I

Page 22

believe -- 2020 and into --
**Q. Is there anything you would be able to reference in order to confirm those dates?**
A. Again, it should be the on chain information, and I do believe I've supplied that to Zigler law firm. So I think they have that, and, hopefully, you do as well.
**Q. Do you recall responding to interrogatories in this case?**
A. Yes.
**Q. Give me one moment.**
**Are you able to see my screen?**
A. Yes.
**Q. Okay. Do you recognize this document?**
A. Yes, I do.
**Q. What is this?**
A. This would be when I purchased tokens and such. It appears that the 2021 is correct, but perhaps the 2020 was not -- my apologies.
**Q. So let's start very simply.**
**Can you read the title of the document for the record?**
A. At the very top, plaintiff Shawn Key's answers and objections to defendants, James Koutoulas and LGBCoin, Ltd's first set of interrogatories.

Page 23

**Q. Okay, great. And did you assist in drafting these responses?**
A. Providing the responses, yes.
**Q. And is this your signature verifying these answers?**
A. Yes, it is.
(The plaintiff Shawn Key's answers and objections to defendants, James Koutoulas and LGBCoin, Ltd's first set of interrogatories was marked as Defendant's Exhibit Number 18 for Identification.)
**Q. Just so we don't get lost, for housekeeping purposes, this will be defendant's -- I believe it's 17(sic). We will pick up wherever our last exhibit left off from Ms. Bader's deposition. And for ease of reference, Madam Court Reporter, I'm going to put that here for when I sent it to you.**
**All right. So as you referenced, if we look here to Interrogatory Number 2, it states the deeds, quantities and prices for all purchased purchases and sales of LGBCoin, or Let's Go, made by a plaintiff.**
**And can you please refer to your answer as to the dates that you listed for your purchases or sales of LGBCoin?**
A. It would appear the dates are December 29th and December 30th, 2021.

Page 24

**Q. Thank you. And do you believe that's accurate based on your recollection?**
A. I do, yes. Okay.
**Q. And do you see here the second part of your response?**
**Does it indicate on which exchanges you purchased LGBCoin?**
A. Yes, it looks like Coinbase and Uniswap.
**Q. Understood. And is that accurate to the best of your recollection?**
A. I'm fairly certain now, yes.
**Q. Did that come off the screen just for ease of reference?**
A. Yes, it did.
**Q. Okay. Thank you. Are you familiar with an individual named James Koutoulas?**
A. I'm familiar with the name, yes.
**Q. Okay. Who is James Koutoulas to you?**
A. I believe he is the founder of LGBCoin.
**Q. And what do you base that on?**
A. Information I've seen online, participation in a Telegram group, information from Brian Ronquest, probably those three.
**Q. Which Telegram chat are you referencing? Is there a title for it?**

**Q. I will direct your attention back to your certification. All right. So we see here in Paragraph 13 it references Schedule A, which we see here attached.**
**What does the information on Schedule A represent?**
A. The whopping value of the LGBCoin.
**Q. And these transactions appear to be on exchanges, correct?**
A. Actually, there's no evidence that this is on an exchange, but I would not argue that it was. I'm not sure how else it could be obtained.
**Q. Are there any transactions listed on Schedule A of your certification that were between you and Mr. Koutoulas?**
A. Directly? No.
**Q. Are there any transactions on the certification that were between yourself and LGBCoin, Ltd?**
A. No.
**Q. And as I said, this was previously marked, and we'll maintain that marking as Defendant's Exhibit 16.**
**Are you aware that a motion was filed for class certification in this matter?**
A. Was filed?



**Q. Yes.**
A. Yes. If my understanding of class certification is that this is a class action suit filed by three plaintiffs versus the two remaining defendants that we discussed, yes.
**Q. Okay. Did you sign a certification related to the class action motion?**
A. Yes.
**Q. Who wrote your certification?**
A. I believe it was written by Zigler and potentially with the help of Scott & Scott. I'm not certain. I signed it of course.
**Q. Just going to bring it up on the screen so you can identify it for of the record. Give me one moment.**
**Does this appear to be the certification that you recall reviewing and signing?**
A. Yes.
**Q. Okay. So we see here your signature.**
**And on what date did you sign this document?**
A. July 22nd, 24th(sic).
**Q. And we see here in the contents of the certification that you list certain purchases of LGBCoin.**
**In Paragraphs 2, 3 and 4, you state that these were via US based crypto currency exchanges Coinbase and**



**Uniswap, is that correct?**
A. Yes.
**Q. And were any of these three transactions listed between you and Mr. Koutoulas personally?**
A. Not personally, no.
**Q. Were any of these transactions between yourself and LGBCoin, Ltd?**
A. No.
**Q. Okay. And this will be marked defendants -- I believe we're on 22?**
COURT REPORTER: Actually, this is 21.
MS. MARTELL: 21, darn, so close. Let me add this to my file so we don't lose track of it.
(The declaration certification document was marked as Defendant's Exhibit Number 21 for Identification.)
MS. MARTELL: All right. I'm going to show you what's been previously marked as Defendant's Exhibit 8. Of course I've lost my folder.
(The NASCAR e-mail document was previously marked as Defendant's Exhibit Number 8 for Identification.)
**Q. Have you seen this document before, Mr. Key?**
A. Just a moment here. No, have not.
**Q. Take a moment to read through it, and then**



**I'll ask you some questions.**
A. Can you go down so I can see the content? Thank you.
**Q. Absolutely.**
A. Yes, I can read it and I can comprehend it. I don't believe I've seen that before.
**Q. Okay, based on what you just reviewed, what does this document purport to be?**
MR. MC CORMACK: I object to the form.
A. If I'm reading it right -- if I'm reading this right, NASCAR is backtracking and denying that the sponsorship was granted.
It's a little confusing, and I almost suspect there were some other e-mails in between it because it's not very cohesive, but...
**Q. And I'll represent that this was produced by NASCAR.**
**At the top, what appears to be the first e-mail in this exchange, do you see where my cursor is on the screen?**
A. I do.
**Q. Can you read that sentence for me, please?**
A. Add her to the libel list.
**Q. Okay. Are you familiar with what a libel list is?**



3bbf9897-9ecb-4742-bedd-db04a0f98134