**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ERIC DE FORD, SANDRA BADER, and SHAWN R. KEY, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

JAMES KOUTOULAS and LGBCOIN, LTD,

Defendants.

Case No. 6:22-cv-652-PGB-DCI

CLASS ACTION

**CORRECTED — DEFENDANT JAMES L. KOUTOULAS'S MOTION FOR AN EVIDENTIARY HEARING UNDER FEDERAL RULE OF CIVIL PROCEDURE 55(b)(2), AND INCORPORATED MEMORANDUM OF LAW**

This Motion is filed in corrected form. The main document uploaded at Doc. 736 was inadvertently a duplicate of the Renewed Motion Under Rule 23(c)(1)(C) filed the same day at Doc. 733. This is the document intended to be filed at Doc. 736. The exhibits filed at Docs. 736-1 through 736-12 are the exhibits to this Motion and are refiled with it.

Defendant James L. Koutoulas moves under Federal Rule of Civil Procedure 55(b)(2) for an evidentiary hearing before any monetary amount is determined against him, and asks that the order setting the hearing direct Plaintiffs to serve a computation of any amount they seek a stated period before it.

This Motion arises under Rule 55(b)(2) and concerns one subject: the amount of any monetary award. Rule 55(b)(2) is the rule that governs how an unliquidated amount is fixed against a party in default who has appeared, and it is the rule under which Defendant proceeds.

The subject is live for a specific reason. Doc. 688 enters judgment on the Third Amended Complaint and states no sum. Doc. 723 states that "there are no longer any claims remaining against Defendant James Koutoulas." Neither order fixes an amount. Doc. 682 directed the entry of judgment on that pleading. Plaintiffs stated in writing the aggregate amount they intend to seek and undertook to compute it, and their most recent draft removes the figure, the measure, and the undertaking alike. (Ex. B § VI.A; Ex. C §§ V, VI.) No sum has been fixed, none has been computed, and no claim to an amount has been withdrawn. A number and methodology are still to come, and Rule 55(b)(2) is the rule that governs how one is fixed.

Docs. 723 and 724 address the trial of the claims against Defendant LGBCoin, LTD, the August 25 status conference, and the joint final pretrial statement. The amount of any award against Defendant is a distinct subject, governed by a distinct rule, and Docs. 682 and 688 leave it open. Doc. 714, in which Defendant moves to vacate the judgment entered at Doc. 688 and to amend the order entered at Doc. 682, remains pending. This Motion concerns the amount, and the procedure it asks the Court to set governs whatever the outcome of Doc. 714.

## I. THE ORDERS FIX NO SUM ON THE CLAIMS

Doc. 682 concludes with three decretal paragraphs. Paragraph 1 grants the motion at Doc. 614. Paragraph 2 directs the Clerk to enter default judgment on the Third Amended Complaint. No paragraph awards damages on the operative complaint. No paragraph states a dollar figure.

Doc. 688 adjudged "that pursuant to the Court's Order, default judgment entered in favor of the Plaintiffs on their Third Amended Complaint (Doc. 245) against Defendant James Koutoulas." It states no sum.

One monetary matter therefore remains open on the claims: any monetary relief on the claims adjudicated by Doc. 688. Judgment was entered on the Third Amended Complaint. Nothing was awarded. No application to quantify it appears on the docket, and no computation has been served.

If any amount is to be fixed against Defendant on those claims, Rule 55(b)(2) supplies the procedure.

## II. RULE 55(b)(2) GOVERNS THE AMOUNT, AND IT ADDRESSES THE PARTY IN DEFAULT

Rule 55(b)(2) provides that where a party seeks a default judgment the court "may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages" or "establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2).

Rule 55(b)(2) addresses the party in default who has appeared, and it addresses him in the amount phase. The rule provides that where the party

against whom a default judgment is sought "has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2). The rule fixes the appeared party's notice right by reference to a hearing. Defendant appeared in this action and has litigated it for more than four years.

This Motion is directed to procedure. It asks that the procedure Rule 55(b)(2) prescribes govern if any amount is to be fixed against Defendant, and that the Court set that procedure before a figure is submitted rather than after. A party facing the entry of a monetary judgment may ask the court to set the procedure by which the amount will be determined, and Local Rule 3.01(i) supplies the vehicle for the accompanying request that a hearing be held.

The Eleventh Circuit has applied that rule. "A court has an obligation to assure that there is a legitimate basis for any damage award it enters . . . ." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Federal law . . . requires a judicial determination of damages absent a factual basis in the record." *Id.* Where a court enters a default judgment, "the award entered must be at the very least 'a reasonable estimate of damages.'" *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1386 (11th Cir. 2024). In *Hornady* the court affirmed the entry of default judgment and vacated and remanded the calculation of damages, because the record before it left the damages question "incapable of meaningful appellate review." *Id.* The evidentiary record in that case was extensive; the defect was that the basis for the award could not be discerned. Where the record is thin as well as unexplained, the case for taking

evidence is stronger, not weaker. Where the amount is contested and rests on approximation rather than computation, a money judgment entered without an evidentiary basis has been vacated. *SEC v. Smyth*, 420 F.3d 1225, 1231–33 (11th Cir. 2005). Rule 55(b)(1) permits entry without any hearing only where the claim is "for a sum certain or for a sum which can by computation be made certain," and where the figure is "a reasonable approximation" the case "involves neither a sum certain nor a sum that could be made certain by computation." *Id.* at 1231. Rule 55(b)(2), which covers "all other cases," then governs. *Id.* The court in *Smyth* grounded that procedure in due process: "The common sense notions of justice that inhere in the Due Process Clause . . . mandated that Johns was entitled to a fair hearing on the fact issues involved in the disgorgement determination. The rule that most closely satisfies this due process concern is Rule 55(b)(2)." *Id.*

Rule 55(b)(2) does not call for a hearing in every case. "Given its permissive language, Rule 55(b)(2) does not require a damages hearing in every case." *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015). A court may forego one "where all essential evidence is already of record." *Id.* Where the amount is not of that character, the hearing is the tool the Rule supplies, and on a record like this one it is required. "Rule 55(b)(2), which covers 'all other cases,' requires the district court to hold an evidentiary hearing 'to determine the amount' of losses avoided." *Smyth*, 420 F.3d at 1231. And where the district court did not hold one, "Rule 55(b)(2) required the evidentiary hearing that the district court did not grant. Thus, the court abused its discretion when it granted the SEC's motion for judgment." *Id.* at 1232.

## III. THE HEARING, AND THE COMPUTATION THAT MUST PRECEDE IT

Defendant asks that an evidentiary hearing be set under Rule 55(b)(2) before any amount is fixed against him. The predicate for one is present. The figure Plaintiffs have described is an estimate rather than a sum certain or a sum capable of mathematical calculation, and the essential evidence is not already of record: no computation has been served, and the declaration in the record assigns transactions to addresses rather than to persons. *Philpot*, 317 F.3d at 1266 ("We cannot say it is an abuse of discretion for a trial judge to conduct an evidentiary hearing when the amount of damages is uncertain and speculative."). A separate request stating the time necessary accompanies this Motion under Local Rule 3.01(i).

So that the hearing rests on a stated position rather than an estimate, Defendant asks that the order setting it direct Plaintiffs to serve and file, a period beforehand that the Court sets, what they seek and how they compute it: the count on which relief is sought; whether it is sought for the certified class or for the named Plaintiffs individually; the persons on whose behalf an aggregate amount would be entered, and the notice and exclusion record by which that population was fixed; the legal measure applied; the computation of each component of that measure; the transactions or addresses included and the method used to identify them; the persons to whom each included transaction is attributed and the basis for attributing any of them to Defendant; the treatment of interest, including period and rate; offsets, income received, credits for amounts recovered or recoverable from any other person, and amounts realized

on any disposition; the allocation of any amount sought against this Defendant as distinct from any other person; and the controls against duplicate recovery across counts.

Defendant asks for a period to respond in writing after that disclosure is served. Any amount should be determined after that disclosure and response, on a record that contains a computation. The present record contains none.

**IV. THE PRESENT RECORD SUPPLIES NO SUM**

A default establishes liability, not amount. Rule 8(b)(6) provides that "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). An allegation relating to the amount of damages falls outside that rule. The case law is to the same effect. A default is "not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," and "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

The single quantification in the record is an aggregate. The expert declaration at Doc. 488-3 reports "[t]he total cumulative loss incurred by class members across all transactions" as 5,905.512 WETH and $21,306,432.12. (Doc. 488-3, ¶¶ 40, 42.) The supporting files it describes are pool transaction records: swap and liquidity entries with timestamps, quantities, dollar equivalents, and

per-address totals, across 10,820 addresses and 21,778 transactions. (Doc. 488-3, ¶¶ 33, 45–48.) Those records establish what each address did inside one liquidity pool. Identifying who holds an address, what a person paid outside that pool, what a person still holds, what a person received back, and how a figure is allocated among the persons the declaration names requires evidence the record lacks.

The figure and the pleading do not correspond. The Third Amended Complaint alleges that transactions "demonstrate that Koutoulas received over $1.6 million for his LGBCoin sales between November 2021 and January 2022." (Doc. 245, ¶ 242.) That is the pleading's own cumulative figure for Defendant's sales, stated after the individual transactions it describes. The figure Plaintiffs have described as the aggregate rescission amount is $21,306,432. The two are not the same measure: the pleading states what Defendant is alleged to have received, and the declaration reports a loss incurred by class members. That is the point. A defendant reading the pleading learns one figure, and the amount now described is of a different kind and a different order, computed on a basis the pleading does not state. A court "may award substantially less tha[n] what was requested whenever the damage proceeding indicates that only a smaller award is warranted." *Hornady*, 118 F.4th at 1386 (quoting 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2688).

The figure is computed from pool records rather than from transactions between identified persons. The declaration describes the venue: "Uniswap V2 is a decentralized exchange protocol enabling users to trade tokens via automated

liquidity pools," in which "[l]iquidity providers deposit equal values of each token, allowing users to swap between them." (Doc. 488-3, ¶ 12.) The data was extracted from "transaction and event logs directly associated with the LGB-WETH liquidity pool." (Doc. 488-3, ¶ 15.) The loss calculation "considered both swap and liquidity transactions within the LGB-WETH pool." (Doc. 488-3, ¶ 39.) The declaration's class figures are the WETH that class member addresses spent to acquire LGB and the WETH they recouped on later sales, measured against the pool. (Doc. 488-3, ¶ 33.) Each transaction in that aggregate is a swap between an address and the pool.

The measure Plaintiffs state is a claimant-level measure. In the draft pretrial statement served July 31, 2026, Plaintiffs stated that Section 12(a)(1) "affords a rescissory remedy: the purchaser recovers 'the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or . . . damages if he no longer owns the security.'" (Ex. B § VI.A; Ex. E.) They described what they would prove as "the consideration Plaintiffs and members of the Class paid for LGBCoin, less any income or value they received." (Ex. B § V.) That measure has four inputs, and each is particular to a claimant: consideration paid, income received, tender or the amount realized on a disposition, and interest.

The record supplies none of those four. Doc. 488-3 reports WETH flowing into and out of one liquidity pool, by address. What a person paid, what a person received back, whether a person still holds the meme coin or has disposed of it, and which addresses belong to which person are not quantities that pool records

contain. The distance between the measure Plaintiffs state and the data the record holds is the reason a computation must precede any amount.

The declaration itself attributes the activity to different persons, and it does not attribute most of it to Defendant. It reports "total defendant and insiders profits of approximately $4,149,765.37 and class member losses of $21,306,432.12." (Doc. 488-3, ¶ 11.) It attributes to Defendant a cumulative profit of approximately 322.224 WETH. (Doc. 488-3, ¶ 30.) It attributes to "Other Insiders" profits of approximately 867.501 WETH, more than two and a half times that figure, on 417 sell transactions to Defendant's 133. (Doc. 488-3, ¶¶ 30, 31.) The declaration's own components and totals do not reconcile: paragraph 30 reaches 322.224 WETH for Defendant by adding 80.584 WETH of liquidity profit to 241.640 WETH of swap profit, while the aggregate reported elsewhere carries the swap figure alone. It assigns fifteen further addresses to no person at all while counting them in insider activity. (Doc. 488-3, ¶ 29.) The figure Plaintiffs have described exceeds by more than five times the total the declaration attributes to every defendant and insider combined, and of that total the declaration attributes the larger part to persons other than Defendant.

A default admits the allegations of the pleading against the defaulting party. It does not establish that transactions the record attributes to other persons are to be counted against him in fixing an amount. The measure Plaintiffs state supplies the reason. Section 12 makes a person who sells in violation of the registration requirement liable "to the person purchasing such security from him," and the Supreme Court has read that language to reach, beyond an owner

who passes title, one who "successfully solicits a purchase" and is "motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 641-47 (1988). A sum computed on that measure is therefore built claimant by claimant, out of the transactions as to which the defendant stood in that relation to the purchaser. Doc. 488-3 assigns swaps to addresses within a pool; it does not connect an address to a person, or a person to a purchase made from or through Defendant. So which persons' transactions are included in the figure, and the basis on which any of them is attributed to Defendant, is a question that must be answered before a number is entered rather than after. That is among the matters the computation requested below would state and the hearing would test.

The declaration discloses the method by which it assigned addresses to persons, and that method identifies addresses rather than persons. Addresses were identified "through the receipt of substantial, unpaid distributions of LGB tokens from verified distribution wallets," with further attribution resting on text messages, ownership of ENS domain names, and "tracing the initial funding sources of specific wallets back to known, attributed wallets." (Doc. 488-3, ¶ 23.) Applied under the heading bearing Defendant's name, the method yields eight addresses, five of which rest on the direction of a transfer between addresses and four of them on that basis alone. (Doc. 488-3, ¶ 24.) The declaration separately lists fifteen addresses under the heading "Unattributed insiders," assigns them to no person, counts them in insider activity, and removes them from the class

member list. (Doc. 488-3, ¶ 29.) Class membership is then determined by subtracting those addresses from the pool population. (Doc. 488-3, ¶ 32.)

The named Plaintiffs' own certifications and testimony establish that the remaining inputs differ from claimant to claimant. (Doc. 320-3.) One recorded a sale during the class period. Two record none. Plaintiff Bader testified that she retains what she bought: asked how much LGBCoin she still owns, she answered, "All of it. All of what I purchased." (Ex. G, Bader Dep. 24:18-21.) On the measure Plaintiffs state, recovery is available "upon the tender of such security" and, alternatively, only where the purchaser "no longer owns the security." That difference would determine which branch of their own measure applies to which person. There are 10,820 addresses.

The population on whose behalf an aggregate would be entered is not fixed by the present record either. The Court approved a notice plan under which the date to opt out or request exclusion runs "forty-five (45) days from the date the notice is mailed and/or posted." (Doc. 534 at 12.) The summary notice published on December 28, 2025 advised class members of "the February 11, 2026, opt-out deadline." (Doc. 538-2, ¶ 6.) Plaintiffs and their administrator have since treated the deadline as February 10, 2026. (Doc. 606; Doc. 606-1, ¶ 2.) The administrator states that no requests for exclusion were received. (Doc. 606-1, ¶ 3.) An aggregate computed for a class is computed for the persons the notice and exclusion record identifies, and on the measure Plaintiffs state each of those persons supplies a separate set of inputs. Which persons those are, and the date

on which that population closed, are among the matters the computation requested below would state.

The certifications do not identify the transactions well enough to permit a computation. The Private Securities Litigation Reform Act requires of each proposed representative a sworn certification, "filed with the complaint," that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 77z-1(a)(2)(A), (a)(2)(A)(iv). The statute states what the certification must contain. It must be personally signed, and it must state that the plaintiff reviewed the complaint and authorized its filing; that the plaintiff did not purchase the security at counsel's direction or to participate in a private action; that the plaintiff is willing to serve, including by giving testimony at deposition and trial; that it "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint"; that it identifies any other such action in the preceding three years; and that the plaintiff will accept no payment beyond a pro rata share. 15 U.S.C. § 77z-1(a)(2)(A)(i)-(vi). Each was to be filed with the complaint that first named the plaintiff signing it. De Ford brought this action alone on April 1, 2022. (Doc. 1.) Bader was added by the First Amended Complaint on June 6, 2022. (Doc. 21.) Key was added only by the Third Amended Complaint. (Doc. 245.) No certification accompanied any of those pleadings. All three were signed in 2023 — De Ford's and Key's on May 26, Bader's on June 1 — and none was filed until July 25, 2023, when all three were filed together at Doc. 320-3. Each attaches a

Schedule A with six columns: transaction type, date, a token quantity, consideration, an approximate dollar value, and a transaction fee. (Doc. 320-3 at 3, 5, 7.) Each certification asserts that the attached schedule sets out the plaintiff's purchases and sales of "the security that is the subject of the complaint." (Doc. 320-3 at 2, 4, 6, ¶ 3.) What the schedule does not supply is any means of testing that assertion. The columns state a type, a date, a quantity, a consideration, a value and a fee, and stop there.

None of the three schedules states the contract address of the meme coin purchased, the venue on which any purchase was made, the wallet address of the purchaser, or the hash of any transaction. Doc. 488-3 is keyed to those identifiers: it assigns transactions to wallet addresses within one liquidity pool, and it traces addresses by their funding transactions. (Doc. 488-3, ¶¶ 15, 23, 33.) The schedules therefore supply no identifier by which an entry could be matched to the data the expert declaration describes, and the record supplies no method for making that match. Plaintiff Key described the missing identifier himself. Asked what he would need in order to confirm his own transactions, he answered that he would review his buy and sell records, which "would give me a transaction a TX ID and that would show which exchange it was purchased on and when." (Ex. I, Key Dep. 19:19-22.) No transaction identifier appears on any schedule. The venue of the representatives' own purchases likewise appears only in their testimony, and there in qualified terms: each testified to purchasing through Uniswap or Coinbase. (Ex. G, Bader Dep. 24:5-17; Ex. H, De Ford Dep. 115:20-25; Ex. I, Key Dep. 24:6-8.) Shown Schedule A of his own certification and

asked whether the transactions on it appeared to be on exchanges, Key answered: "Actually, there's no evidence that this is on an exchange, but I would not argue that it was. I'm not sure how else it could be obtained." (Ex. I, Key Dep. 113:8-12.) The schedule does not say, and the plaintiff who signed it does not say either. The venue question is not incidental to the amount. The operative pleading itself names Pancake Swap among the decentralized exchanges on which a token may be traded, and alleges that the coin was traded on "Binance, Coinbase, Uniswap, and other decentralized exchanges that allow anyone to list a token." (Doc. 245, ¶¶ 69, 74.) It pleads that Key purchased "via the U.S.-based cryptocurrency exchanges Coinbase and Uniswap." (*Id.* ¶ 21.) Asked at deposition where he had purchased, Key first answered, "I want to say from Pancakeswap. I believe that's the exchange it was on," and then, "If not, it could have been Uniswap; that was another one." (Ex. I, Key Dep. 19:7-16.) The declaration on which the aggregate rests is built from a single pool: it analyzes the "LGB-WETH liquidity pool" on Uniswap V2 and no other, and Pancake Swap appears nowhere in it. (Doc. 488-3, ¶¶ 7, 12.) And the pleading does not allege that Defendant or the LetsGoBrandon.com Foundation operated a pool on Pancake Swap. Where the pleading names a venue for liquidity at all, it names Uniswap. (Id. ¶ 81 (a percentage of the Float to be "used for liquidity on Uniswap").) But the venues on which it alleges the coin traded are several, and it does not say which carried any given claimant's transaction. The pleading therefore does not establish on its face that a given claimant's transaction ran through the pool from which the aggregate is computed. The certifications were

the place to answer that question. Each was late, and lateness aside, none of the three states a transaction identifier or a wallet address. They therefore furnish no means of verifying that any transaction listed on them occurred at all, or where, or in what.

The record does not establish what the representatives acquired. Asked which crypto coins she had put money into, Plaintiff Bader answered "LGB Coin Deutsche Coin," adding that she has "a couple of others" and that "some of the websites just give you coins. So I'm not sure which ones I purchased or not." (Ex. G, Bader Dep. 58:3-7.) The only website document she produced is a four-page capture of lgbcoin.com printed December 5, 2022, nearly nine months after the close of the period Plaintiffs plead, headed "Let's Go Brandon Coin | LGBC on Ethereum" and stating the ticker "$LGBC." (Ex. J, BADER 000001-000004.) Shown that document, she testified, "Actually, that is not what I remember it to look like," and, asked whether it looked like the website she had reviewed, "I do not believe so." (Ex. G, Bader Dep. 21:2-4, 21:19-21.) The domain she produced is not the domain the operative pleading names, and an archived capture of that domain taken during the period Plaintiffs plead states a different contract address and a different supply. (Ex. K.) Her production does not close the gap. Bader produced ninety-one pages. Her Coinbase transaction report for January 2022 records two purchases of ether on January 2 — 0.03472127 ETH for $136.04 and 0.01875137 ETH for $73.60 — each sent within the same minute to 0x84E612f510bc95cD86E0dB94A381D1637260FA2A. (Ex. L, BADER 000044.) The block-explorer page she produced for that address reports three transactions in

its entire history: the two transfers of ether in from Coinbase, and one outbound call to the Uniswap V3 router. That page does not state what the router returned. (Ex. L, BADER 000039.) Her wallet images then show a Coinbase Wallet identified as jsbader12.cb.id holding 58,436,585.829 units of an asset displayed as "LGB" and 58,436,586 units of a separate asset displayed as "LETSGO," the second received on February 10 and then worth $0.11. (Ex. L, BADER 000088-000091.) A further block-explorer page shows LETSGO distributed on February 11, 2022 through a contract labeled Disperse.app in a transaction carrying a value of zero ether. (Ex. L, BADER 000086.) No document in the production states the contract address of either asset. The chain is traceable up to the swap and stops at it: the production identifies the ether paid, the address it went to, and the router the address called, but not the token that came back or the contract it ran against. A rescissory measure begins with what a claimant paid for what, and it is the second half that the record leaves open.

The pleading and that document do not describe the same thing. The Third Amended Complaint pleads that 330 trillion LGBCoin tokens were minted under the creator smart contract 0x21E783bcf445B515957A10E992aD3c8E9FF51288, which it defines as the "LGBCoin Contract." (Doc. 245, ¶ 94.) The operative pleading refers to LGBCoin.io twenty-eight times and never refers to lgbcoin.com. The single website document a representative produced is a capture of lgbcoin.com stating the ticker "$LGBC." (Ex. J.) An archived capture of that same domain dated November 8, 2021, six days into the period Plaintiffs plead, states an "Official $LGBC contract address" of

0xfac79ae042cbd841a69ab84b16dcd803edccf2a1, reports a "Total Supply: 100,000,000 (100 Million)," states that "Currently $LGBC can only be purchased through Uniswap," and cautions that "similar tokens may try to fool you." (Ex. K, http://web.archive.org/web/20211108044505/http://www.lgbcoin.com/ (archived Nov. 8, 2021).) That is a different contract from the one the pleading identifies, and a supply of one hundred million against the 330 trillion tokens the pleading alleges. Identifying which contract a given acquisition ran against is the first step in applying the measure Plaintiffs state, and the record does not take it.

The units do not correspond either. The declaration measures one pool and one pair: "For the LGB token, a liquidity pool was created, pairing LGB with WETH (Wrapped Ether)." (Doc. 488-3, ¶ 12.) Every quantity the declaration reports is WETH, and its loss calculation "considered both swap and liquidity transactions within the LGB-WETH pool." (Doc. 488-3, ¶ 39.) The single sale recorded on any named Plaintiff's schedule states its consideration in stETH, a different token from the WETH the declaration measures. (Doc. 320-3 at 3.) Plaintiff Bader's schedule states ETH rather than WETH. (Doc. 320-3 at 5.) The record contains nothing that reconciles either figure with the pool data, and the reconciliation is not incidental: on the measure Plaintiffs state, the amount realized on a disposition is an input to the sum they seek.

The scale of what the record documents at the claimant level is small. The three schedules record eighteen purchases with a stated aggregate value of $18,397.98, and one sale with a stated value of $2,613.55. (Doc. 320-3 at 3, 5, 7.) Those are the only per-claimant purchase and sale figures anywhere in the

record. For every other address in the pool the record supplies transaction flows measured against the pool, not the consideration a person paid or the income a person received. The aggregate Plaintiffs have described therefore rests almost entirely on data of a different kind from the measure they state, and the computation and hearing requested below are the means of testing whether it can be converted.

The three named Plaintiffs are the only claimants who have filed transaction schedules. If their own purchases cannot be tied to the pool records, the record supplies no method for tying any other person to any address in it. What the measure Plaintiffs state requires of each claimant, consideration paid, income received, and tender or the amount realized on a disposition, cannot be computed from what the record contains. A served computation and a hearing are the means by which that is resolved.

Plaintiffs have described the aggregate figure as an estimate awaiting a computation, and the successive drafts they served show what became of it. Counsel for Plaintiffs served a first draft pretrial statement on July 27, 2026. It stated the aggregate figure and undertook no computation. (Ex. A; Ex. D.) Counsel served a revised draft by electronic mail on July 31, 2026 at 7:13 p.m. (Ex. E.) In that draft Plaintiffs stated the rescissory measure and undertook that they "will serve a computation of the aggregate rescission amount, presently estimated at $21,306,432, before the final pretrial conference." (Ex. B § VI.A.) No computation has been served. Counsel served an updated draft by electronic mail on August 14, 2026 at 12:37 a.m. (Ex. F.) In that draft the figure, the measure

they had stated, and the undertaking are all absent, and the only monetary relief stated is restitution from Defendant LGBCoin, LTD. (Ex. C §§ V, VI.) The undertaking to compute the amount was made on July 31 and has not been performed.

## V. PRESERVATION

In *Giovanno*, the defaulting defendant argued on appeal that the award against him should have been reduced by amounts the plaintiffs had already received. The Eleventh Circuit declined to reach the argument because he "did not raise that issue in his response to the plaintiffs' motion for default judgment." 804 F.3d at 1366 n.6.

Defendant therefore raises and preserves his objections to any amount fixed against him, including objections going to the measure applied, the computation, offsets and income received, credits for amounts recovered or recoverable from any other person, ownership and tender or the amount realized on disposition, interest, the attribution of transactions to persons and the allocation of any amount between Defendant and other persons, duplicate recovery across counts, and the sufficiency of the evidentiary basis for any sum. As to attribution and allocation he relies on the record already before the Court, including Doc. 488-3 and his signed rebuttal report. He also preserves any federal statutory right to a jury trial that Rule 55(b)(2) preserves, and the positions taken in his pending motion at Doc. 714. Plaintiffs have stated the amount they intend to seek and undertaken to compute it. (Ex. B § VI.A.) These

objections are directed to that amount and to any application quantifying it, and the relief requested below places them before the Court at the time Rule 55(b)(2) contemplates.

## VI. THE RELIEF REQUESTED

Defendant requests that the Court enter an order:

(a) setting an evidentiary hearing under Rule 55(b)(2) before any monetary amount is determined against Defendant James L. Koutoulas;

(b) directing Plaintiffs to serve and file the computation described in Part III within a period the Court sets before that hearing;

(c) affording Defendant a period to respond in writing after service of that computation; and

(d) granting such other relief as is just.

## CONCLUSION

Doc. 688 states no sum. No computation has been served. Where the amount is contested and is neither a sum certain nor capable of mathematical calculation, and the essential evidence is not already of record, Rule 55(b)(2) requires an evidentiary hearing before that amount is fixed. *Smyth*, 420 F.3d at 1231–32. Defendant requests the order described above.

Dated: August 24, 2026

Respectfully submitted,

/s/ James L. Koutoulas
James L. Koutoulas, Esq., *Pro se*
10 N. Dearborn St., Suite 400
Chicago, IL 60602
(312) 836-1180
james@koutoulaslaw.com

## LOCAL RULE 3.01(g) CERTIFICATE

Pursuant to Local Rule 3.01(g) and the Court's Order at Doc. 620 at 6, the undersigned conferred by telephone with counsel for Plaintiffs on August 24, 2026 regarding the relief requested in this Motion. Counsel for Plaintiffs stated that Plaintiffs do not oppose the conduct of an evidentiary hearing on the amount of damages, and that Plaintiffs do not agree with all of the positions stated in the Motion. The parties have therefore resolved that part of the Motion which seeks a hearing, and have not resolved the balance.

Dated: August 24, 2026

Respectfully submitted,

/s/ James L. Koutoulas
James L. Koutoulas, Esq., *Pro se*
10 N. Dearborn St., Suite 400
Chicago, IL 60602
(312) 836-1180
james@koutoulaslaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 24, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

Dated: August 24, 2026

Respectfully submitted,

/s/ James L. Koutoulas
James L. Koutoulas, Esq., *Pro se*
10 N. Dearborn St., Suite 400
Chicago, IL 60602
(312) 836-1180
james@koutoulaslaw.com