**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ERIC DE FORD, et al., | Case No. 6:22-cv-652-PGB-DCI |
| Plaintiffs, | CLASS ACTION |
| v. | |
| JAMES KOUTOULAS, et al., | |
| Defendants. | |

**DEFENDANT JAMES KOUTOULAS'S MOTION TO STAY EXECUTION OF ANY AWARD ON DOC. 709 PENDING DISPOSITION OF ELEVENTH CIRCUIT NO. 26-12606**

Defendant James Koutoulas, appearing pro se, respectfully requests that execution of any award of attorneys' fees and costs entered on Plaintiffs' Application (Doc. 709) be stayed until the Eleventh Circuit disposes of No. 26-12606. In the alternative, if the Court concludes that Plaintiffs should be secured during that interval, Defendant asks that any award be satisfied by deposit of the full amount into the Court's registry under Local Rule 7.03 rather than by payment over to Plaintiffs' counsel.

The parties are not far apart on the principle. Counsel for Plaintiffs stated on August 24, 2026 that Plaintiffs do not oppose a stay of execution as such, and regard the request as premature because Defendant's response to the Application has not yet been filed and no award has been entered. The timing is addressed

below. On the substance, the appeal now pending in No. 26-12606 is directed at the contempt adjudication on which any award must rest, and a stay costs Plaintiffs nothing but the use of money that no one can presently quantify.

**I. Why This Motion Is Filed Before Any Award Has Been Entered, and Why It Is Not Premature.**

No amount has yet been awarded. Plaintiffs' Application was filed August 12, 2026, and Defendant's response is due August 26, 2026. Defendant nonetheless brings this motion now because the Sixth Amended Case Management and Scheduling Order sets August 24, 2026 as the deadline for "All Other Motions." (Doc. 620 at 3.) That deadline, not any wish to get ahead of the Application, is why the motion is filed today. The relief sought is prospective, and Defendant asks that it be built into whatever order the Court enters on Doc. 709 rather than litigated afterward. Deciding the terms of execution at the same time as the award avoids a second round of briefing and leaves Plaintiffs no worse off, since nothing is executed upon until an award exists.

**II. Background.**

The Contempt Order directed Plaintiffs to file an application for fees and costs "accrued in responding to" the conduct it found to violate the Order (Doc. 534) and the Order to Show Cause (Doc. 539), and directed that "argument shall be limited to the reasonableness (not entitlement to) of the costs and fees." (Doc. 658 at 9.) Defendant appealed. On August 3, 2026, the Eleventh Circuit held that "the part of the Contempt Order that holds Appellant in contempt and requires him to post a retraction is appealable," and that "the part imposing costs and

attorney's fees is not immediately appealable because that issue is not final." Defendant's challenge to the fee sanction was dismissed on that ground. The contempt adjudication itself remains before the panel.

That posture creates the problem this motion addresses. The findings on which any fee award must rest are under review. The award itself, once entered, will not be separately reviewable while that review proceeds. And the money, once paid, will have been paid to two law firms outside this District.

The earlier stay rulings arose on a different record. When Doc. 662 and the Eleventh Circuit's order issued, no amount had been awarded, nothing had been quantified, and no security had been offered. The arrangement presented here, a stay of execution on a sum the Court has yet to fix with full registry security available in the alternative, was before neither court.

**III. The Stay Standard Is Satisfied.**

A court weighing a stay considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). In this Circuit the first factor is not always dispositive: "Ordinarily the first factor is the most important," but "the movant may also have his motion granted upon a lesser showing of a 'substantial case on the merits' when 'the balance of the equities [identified in factors 2, 3, and 4] weighs heavily in favor of granting the stay.'" *Garcia-Mir v. Meese*, 781 F.2d 1450,

1453 (11th Cir. 1986) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981) (per curiam)); *see Hilton*, 481 U.S. at 776 (citing the same page of *Garcia-Mir*).

**A. A substantial case on the merits.** A likelihood of success is shown where the movant raises "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry." *In re Lickman*, 301 B.R. 739, 743 (Bankr. M.D. Fla. 2003). The appeal turns on the second element of civil contempt, which the Contempt Order itself recites: clear and convincing proof that "the order was clear, definite and unambiguous." (Doc. 658 at 5 (quoting *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000)).) The Supreme Court states the same limit on the contempt power generally: "[i]n cases outside the bankruptcy context, we have said that civil contempt 'should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct,'" because civil contempt is a "severe remedy" and "principles of 'basic fairness requir[e] that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019). Each of the three findings presents that question on the face of the record, and Defendant briefs them fully in No. 26-12606. He summarizes them here only to satisfy this factor.

First, no order entered before the conduct commanded what the first finding says was violated. Doc. 534 ends in six decretal paragraphs. Exactly one is addressed to Defendants, and it concerns the Angeion contact information: "Defendants are DIRECTED to provide Angeion with the names, addresses, and email addresses, where possible, of any potential Class Members that Defendants

have in their possession, custody, or control to notice the Class." (Doc. 534 at 13 ¶ 3.) The obligation to provide notice to the class runs to Plaintiffs and requires notice "in substantially the form approved by the Court." (Id. ¶ 4.) The motion was denied "in all other respects." (Id. ¶ 6.) No decretal paragraph directs Defendants to post anything.

The phrase on which the first contempt finding rests appears once in Doc. 534, in a footnote, and there it describes what Plaintiffs asked for rather than what the Court commanded: "Plaintiffs do not request Defendants post the Proposed Class Notices in their entirety … Instead, Plaintiffs merely seek to have Defendants post a link to the Summary Notice on these channels and on the LGBCoin website." (Doc. 534 at 8 n.4.) The next sentence states that the Court "is skeptical" that a link, rather than the content of the notice, "would cause Defendants to suffer from any undue prejudice." (Id.) A footnote recording what a movant seeks, and doubting that it would prejudice the opposing party, is not a decree.

What the Court did do in response to Defendants' First Amendment objection was require Plaintiffs to change their own text. Having rejected the compelled-speech argument as resting on inapposite authority, the Court found that "modifications to the Summary Notice and the Long-Form Notice will mitigate any potential prejudice to Defendants," and directed that "Plaintiffs shall amend the description of the action" to state that "Defendants deny these allegations against them," that "Defendants do not believe that LGBCoin constitutes a security," and that Defendants "assert that LGBCoin is a meme coin dedicated to conservative advocacy." (Doc. 534 at 9-10.) The remedy the Court

adopted for the objection was revision of Plaintiffs' notice, not a publication command addressed to Defendants.

The Contempt Order nonetheless repeats the footnote's description at page 2 ("ordered Mr. Koutoulas to post a link to the summary notice"), then adjudicates contempt at page 6 on the footing that Defendant "knew the Court had ordered him to post the Notice verbatim." Neither characterization appears in any text entered before the conduct. "Full stop" appears first at the January 16, 2026 hearing, after the postings. (Doc. 569 at 12 ("So the order was: 'File the notice as written,' full stop.").) "Verbatim" appears first in the Contempt Order itself. (Doc. 658 at 6.) Neither word appears in Doc. 534. At that same hearing the Court described its own order accurately, as providing that "plaintiffs will provide the notice in the substantial form that I've approved," and observed that "the short-form notice was submitted as directed but with additional language that was not authorized." (Doc. 569 at 4.)

Second, the record contradicts the finding that Defendant failed to provide a copy of his Discord commentary. The Contempt Order's own footnote records that Defendants submitted that evidence on January 12, 2026. (Doc. 658 at 4 n.3 (citing Doc. 548-1).) The Court said so from the bench: "I compelled it in my order to be produced. It was not produced on time, but it was produced." (Doc. 569 at 9.) It then read the post into the record. Compounding the difficulty, the filing that transmitted that evidence, Doc. 547, Defendant's Notice in Response to Doc. 539, together with Doc. 548, the motion to file its exhibits, was struck on January 16, 2026, the day of the hearing, on the ground that "Defendants represented by

counsel are not permitted to file motions or other notices with the Court in their individual capacity." (Doc. 558.) A second filing responding to the Order to Show Cause, Doc. 549, was struck the same day. (Doc. 553.) That filing was made by Mr. Koutoulas's then-counsel of record.

Third, the record contradicts the finding that Defendant failed to provide Angeion with class-member contact information. Plaintiffs' counsel conceded at the hearing that Angeion "received a single email from Mr. Koutoulas on January 6th providing a list of nine names." (Doc. 569 at 8.) The receipt of that message was described at the hearing; the message itself is Exhibit A hereto, so that the Court may see what it said. It was sent at 5:48 a.m. on January 6, 2026, the day before the Order to Show Cause issued. (Doc. 539, filed January 7, 2026.)

It said considerably more than nine names. Defendant first explained why no subscriber list existed: "transactions were mostly anonymous," and "[m]ost communications were not done via email." (Ex. A.) He then identified where the purchasers could in fact be found. He directed Angeion to the Telegram group at t.me/LETSGO, telling it that it could "see many purchasers by joining" and "viewing the members of the group." He identified the Instagram accounts @letsgo and @letsgo.memes and the X accounts @letsgo and @letsgo_memes, and suggested that Angeion contact the accounts following them, since "a good percentage bought the coin." He then listed the nine individuals whose names, electronic mail addresses and telephone numbers he had. (Ex. A.)

Those were the channels this Court had already approved for reaching this class. Doc. 534 approved publication of the Summary Notice through the LGBCoin

Telegram Channel, the Discord Channel, the LGBCoin website and the subreddit, and found those channels "adequate as modern forms of publication notice." (Doc. 534 at 7-8 n.3.) The class here is defined by the purchase of a token traded pseudonymously on decentralized exchanges. Wallet addresses are not names, and a promoter does not hold the electronic mail addresses of persons who transacted against a liquidity pool. What Defendant offered the notice administrator was the identification method suited to that record, and it is the same method the Court itself had found adequate three weeks earlier.

The Court acknowledged that the underlying directive carried no deadline, stating "In fairness, I did not put a deadline on that. I should have." (Doc. 569 at 4.) It reserved the question of completeness: "If discovery demonstrates that they intentionally left names out, I'll deal with that at the appropriate time." (Doc. 569 at 8.) The directive itself requires only what is "where possible" and within Defendants' "possession, custody, or control." (Doc. 534 at 13 ¶ 3.)

This Court resolves uncertainty of that kind against the party seeking the adjudication: "we will construe any ambiguities or uncertainties in such a court order in a light favorable to the person charged with contempt." *Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007). Whether Plaintiffs carried a clear-and-convincing burden on this record is a serious and substantial question, and it is the Eleventh Circuit's to decide. If those findings are set aside, the fee award has no predicate and falls with them.

**B. Irreparable injury.** The injury asserted here is the one Ferrero identifies: an injury that cannot be undone. See *Ferrero v. Associated Materials, Inc.*, 923 F.2d

1441, 1449 (11th Cir. 1991) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."). A sum paid over cannot be recalled by the appellate judgment that condemns it. Defendant's only remedy would be a claim for restitution against two out-of-state law firms, prosecuted from the position of a former judgment debtor, in a proceeding no one has begun.

Two features of this record sharpen the point. First, Plaintiffs have offered no undertaking to return the money if the contempt is set aside. That distinction was dispositive in *Akridge*, where the court found the harm reparable precisely because the recipient "has pledged to return any monies to her if she prevails on any matter in the appeal." *Id.* at *7. No such pledge by Plaintiffs or their counsel appears anywhere in Doc. 709, Doc. 710 or Doc. 711. Second, the money would not go to a party before the Court but to counsel, and the Application seeks it for two firms neither of which is located in this District.

The Southern District of Florida granted a stay of a sanction on closely comparable reasoning in *In re Gonzalez*, 2012 U.S. Dist. LEXIS 197512 (S.D. Fla. Jan. 23, 2012). The court had "not been properly briefed on the merits" at all, but stayed the sanction because it "will begin to run if it is not stayed, and may be largely complete by the time his appeal is properly briefed and ripe for review," and because a stay "will only toll the sanction period until the appeal is resolved," after which it "will be reinstated and will last an equivalent duration." *Id.* at *2. Both halves of that reasoning apply. A sanction satisfied before review is a sanction the appeal cannot reach; and a deposit into the registry does not reduce what Plaintiffs receive, it only postpones when they may spend it.

**C. No substantial injury to Plaintiffs.** A stay costs Plaintiffs the use of the money for the period of the appeal and nothing else. The award, once entered, is fixed by the Court's order and does not shrink. It remains collectible when the appeal concludes. Their counsel have carried this time since December 2025 without payment, and the incremental burden of a further interval is slight. If the Court concludes that Plaintiffs should hold security in the meantime rather than await the appeal, the registry alternative in Part IV supplies it in full: the money leaves Defendant's control, earns interest, and is disbursed on the Court's order the moment the Eleventh Circuit rules.

**D. The public interest.** There is no public interest in an unwindable transfer of money made while the order supplying its only basis is under appellate review. There is a public interest in the opposite: in preserving the ability of the Court of Appeals to grant effective relief if it concludes that relief is warranted, and in ensuring that a party who offers to secure an obligation in full is not obliged to satisfy it in a form that cannot be undone.

**IV. In the Alternative, Deposit Into the Court's Registry.**

Should the Court prefer that Plaintiffs hold security rather than await the appeal, this alternative supplies it in full. The money leaves Defendant's control and passes to the Clerk's. On that arrangement Plaintiffs are fully secured: the amount is fixed by the Court's order, it is out of Defendant's hands, it earns interest, and it is disbursed on the Court's order the moment the appeal concludes. Local Rule 7.03(a) provides the mechanism. A party seeking to deposit funds into the registry moves for leave and submits a proposed order, and the funds are held

in an interest-bearing account subject to disbursement on further order of the Court. Defendant will file that motion, with a proposed order conforming to the rule, promptly after any award is entered.

The premise of security pending appeal was stated by the former Fifth Circuit in a passage binding on this Court. The purpose of security "is to preserve the status quo while protecting the non-appealing party's rights pending appeal. A judgment debtor who wishes to appeal may use the bond to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal. At the same time, the bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal." *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting the decisions of the former Fifth Circuit as binding precedent in the Eleventh Circuit). The risk the court described, satisfying an obligation and then finding restitution impossible, is precisely the risk here, and the remedy it identified is precisely what Defendant offers.

The same point appears in the negative in the decision Plaintiffs are most likely to cite. In *Akridge v. Alfa Mutual Insurance Co.*, 2022 U.S. Dist. LEXIS 240331 (M.D. Ala. Aug. 16, 2022), a movant sought to stay an award of sanctions and costs pending an Eleventh Circuit appeal. The court identified Rule 62(b), the provision "governing stay by bond or other security," as the only applicable subsection, and denied relief for a single reason: "Because Akridge has not provided a bond or

other security while her appeal has been pending, the Court denies her motion pursuant to Rule 62." Id. at *5. Here the security is offered up front, in the amount the Court itself sets, before any award is entered.

The request rests on the Court's inherent authority to fix the terms on which its own orders are carried out, on Local Rule 7.03, and on Rule 62(b) by analogy.

**V. The Scope of the Relief Requested.**

The Application should be decided on the schedule the Court has set. Courts in this Circuit decline requests to defer quantification in order to avoid piecemeal appeals, see Pretka v. Kolter City Plaza II, Inc., 2013 U.S. Dist. LEXIS 185406, at *2-3 (S.D. Fla. Sept. 10, 2013), and the relief sought here leaves that schedule intact. What Defendant asks is that execution on whatever sum the Court fixes await the Eleventh Circuit.

## CONCLUSION

Defendant respectfully requests that the Court stay execution of any award of attorneys' fees and costs entered on Doc. 709 pending the Eleventh Circuit's disposition of No. 26-12606; alternatively, that any such award be satisfied by deposit of the full amount into the Court's registry under Local Rule 7.03, in an interest-bearing account, with principal and accrued interest to be disbursed on further order of the Court following that disposition; and alternatively, that the Court set the terms on which any award may be secured pending appeal.

Dated: August 24, 2026

Respectfully submitted,

/s/ James L. Koutoulas
James L. Koutoulas, Esq.
Pro se
10 N. Dearborn St., Suite 400
Chicago, IL 60602
(312) 836-1180
james@koutoulaslaw.com

**<u>LOCAL RULE 3.01(g) CERTIFICATE</u>**

Pursuant to Local Rule 3.01(g) and the Court's Order at Doc. 620 at 6, the undersigned conferred by telephone with counsel for Plaintiffs on August 24, 2026 regarding the relief requested in this Motion. Counsel for Plaintiffs stated that Plaintiffs do not oppose a stay of execution as such, but consider the request premature because Defendant's response to Doc. 709 has not been filed and no award has been entered, and that Plaintiffs' position depends on the terms of any order entered on Doc. 709 and on the disposition of the pending appeal. The parties have not resolved all or any part of the Motion.

Dated: August 24, 2026

Respectfully submitted,

/s/ James L. Koutoulas
James L. Koutoulas, Esq.
Pro se
10 N. Dearborn St., Suite 400
Chicago, IL 60602
(312) 836-1180
james@koutoulaslaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 24, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: August 24, 2026

Respectfully submitted,

/s/ James L. Koutoulas
James L. Koutoulas, Esq.
Pro se
10 N. Dearborn St., Suite 400
Chicago, IL 60602
(312) 836-1180
james@koutoulaslaw.com