**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ERIC DE FORD, et al., | Case No. 6:22-cv-652-PGB-DCI |
| Plaintiffs, | CLASS ACTION |
| v. | |
| JAMES KOUTOULAS, et al., | |
| Defendants. | |

**DEFENDANT JAMES KOUTOULAS'S RESPONSE IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS (DOC. 709)**

**PRELIMINARY STATEMENT**

Plaintiffs ask this Court to order Defendant to pay $75,000.00 arising from a fifty-eight-minute hearing that their own lead counsel billed at 2.2 hours. (Doc. 711-1.) The three named Plaintiffs allege meme coin purchases totaling $18,397.98, against which they recorded a single sale of $2,613.55. (Doc. 320-3.) The fee sought is more than four times their alleged purchases. To reach it, two firms recorded 142.0 hours and seek payment for 108.15. No contempt motion was ever filed: the proceeding began with Plaintiffs' notice (Doc. 538) and the Court's own Order to Show Cause (Doc. 539), which issued January 7, 2026 and set the hearing nine days later. The work it called for was a notice to the Court, a proposed order, and one appearance. The records Plaintiffs filed read like the time record of the four-year case itself.

The contempt rests on three findings. (Doc. 658 at 7.) Two are single-sentence failures to provide. Defendant believes the Order was entered on erroneous grounds, and that question is pending before the Eleventh Circuit in No. 26-12606. Those three findings nonetheless bound what a fee award may compensate, because a compensatory sanction reaches only fees incurred "because of, and solely because of, the misconduct at issue." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 113 (2017).

The supporting records cannot be assessed. All nine pages of the Zigler Law Group's Exhibit A are cut off at the left margin as filed, with no transaction date and no timekeeper anywhere in its 234 rows. (Doc. 710 at 20–28.) What is legible includes 12.0 hours at $775 for a "…nner meeting with team" and 0.2 hours at $1,000 for Google Maps. The rates fare no better, and Plaintiffs' own exhibit is why: page 19 of the Real Rate Report they filed puts an Orlando litigation partner at a $482 mean and a $551 third quartile, and they seek $1,000 and $975. (Doc. 711-12 at 19; Ex. 1 hereto.)

Reasonableness turns on what Doc. 534 required, because a compensatory award reaches only the fees the conduct found actually caused. Its only decretal paragraph directing Defendants to act is paragraph 3, which required them to give Angeion the names, addresses and email addresses, "where possible," of potential Class Members "that Defendants have in their possession, custody, or control." Paragraph 3 set no compliance date, as the Court noted: "In fairness, I did not put a deadline on that. I should have." (Doc. 569 at 4.) Plaintiffs' counsel confirmed at the hearing that Angeion received Defendant's email of January 6, 2026, the day before the Order to Show Cause issued. (Id. at 8; Doc. 539.) It gave names, email addresses and telephone numbers, and in good faith provided additional methods

to identify the social media addresses of potential Class Members: the membership of the t.me/LETSGO group and the followers of the LGBCoin accounts on Instagram and X. (Ex. 4 hereto.) The Court ruled on the record Plaintiffs presented. Defendant preserves every objection to entitlement for Eleventh Circuit No. 26-12606, and what follows is addressed to the reasonableness of the fees and costs sought, as Doc. 658 at 9 directs.

## I. The Application Was Filed Without the Required Conferral.

Local Rule 3.01(g)(1) requires a movant to confer "[b]efore filing a motion in a civil action, except a motion for a Rule 11 sanction, for injunctive relief, for judgment on the pleadings, for summary judgment, or to certify a class." A fee application is none of those, and the Clerk's entry reads "MOTION for Attorney Fees and Costs by All Plaintiffs." Doc. 709 carries no certificate, and Plaintiffs never contacted Defendant, before filing or within the three days Local Rule 3.01(g)(3) allows. Nor is conferral collateral to amount. Local Rule 7.01(c) makes it an element of the movant's own showing: the paper must "describe[] the meet-and-confer effort" and "specif[y] the resolved and unresolved issues." LR 7.01(c)(1)–(2). Doc. 709 does neither.

This Court has told the parties what the rule requires. "The term 'confer' in Rule 3.01(g) requires a substantive conversation in person or by telephone … and does not envision an exchange of ultimatums by fax, letter or email. Counsel who merely 'attempt' to confer have not 'conferred.'" (Doc. 620 at 6.) The same paragraph extends the duty to "pro se parties acting as their own counsel," and closes: "The Court will deny motions that fail to include an appropriate, complete Rule 3.01(g) certificate." Id. Courts in this District enforce that rule, including against a fee motion. In *DeShiro v. Branch*, a "Motion for Order Awarding Attorney's Fees … was denied by th[e] Court for failing to comply with Local Rule 3.01(g)." 183 F.R.D. 281, 284 (M.D. Fla. 1998).

Plaintiffs know how to comply. Six days before this Application, they moved for sanctions against LGBCoin, Ltd. and certified that counsel "conferred with counsel for Defendant on August 6, 2026 regarding the relief sought by this Motion." (Doc. 692 at 15.) The parties have conferred by telephone on other matters. Plaintiffs made no attempt concerning Doc. 709, leaving numerous errors in the Application unresolved, including a single figure covering two firms' fees and expenses without identifying the entries their reduction removed. The Application should be denied.

## II. The Standard Is Causation and Proof.

A compensatory sanction is measured by the loss the sanctioned conduct caused. It "counts as compensatory only if it is 'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based," reaching "only the portion of his fees that [the movant] would not have paid but for" the misconduct. *Goodyear*, 581 U.S. at 108–09 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). One that reaches beyond that, to "fees that would have been incurred without the misconduct," "crosses the boundary from compensation to punishment." *Id.* at 108. "A sanctioning court must determine which fees were incurred because of, and solely because of, the misconduct at issue." *Id.* at 113.

The burden is the applicant's, and it includes enabling the Court to separate what is compensable from what is not: "[I]n a case where part of the attorney's efforts are to go uncompensated, the burden is on the attorney to provide sufficient evidence for the court to make a correct division." *Loranger*, 10 F.3d at 782. Applicants "must exclude … 'excessive, redundant, or otherwise unnecessary [hours].'" *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The evidence must be set out "with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* at 427. And "[c]ourts are not authorized to be

generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded . . . ." *Id.* at 428.

**III. The Zigler Law Group's Exhibit Cannot Be Assessed as Local Rule 7.01(d) Requires.**

Exhibit A to the Zigler Declaration spans Doc. 710 at 20–28 and contains 234 billing entries. It is a landscape table reproduced sideways with the left-hand columns cut off the page. The only date in the nine pages is the CM/ECF stamp, yet Mr. Zigler swears the records "document time expended during the period from December 28, 2025 through January 20, 2026." (Doc. 710 ¶ 33.) There is no timekeeper column, though Mr. Zigler swears he "personally reviewed each of the billing entries." (Id. ¶ 36.) And 196 of the 234 rows begin with a lowercase letter or a punctuation mark, and three carry no readable narrative.

Local Rule 7.01(c)(4) requires a movant to place before the Court "the timekeeper's identity, experience, and qualification," the "timekeeper's requested hours," and "each task by the timekeeper during those hours." Exhibit A supplies none of the three in a form the Court can read.

Local Rule 7.01(d) in turn requires a response to identify an unreasonable claim "by day and by timekeeper." Plaintiffs have filed an exhibit that makes compliance impossible. A court in this Division awarded $11,000 on a $2.4 million

request, collecting authorities that deny fees entirely for "extraordinarily vague descriptions of billable hours in block time entries such that the Court cannot even begin to determine how many hours were actually spent." *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, No. 6:06-cv-1757-Orl-DAB, 2012 U.S. Dist. LEXIS 194256, at *45–46 (M.D. Fla. Oct. 5, 2012).

Defendant read every row. Exhibit 2 hereto reproduces all 234 of them in the order filed, with the Date and Timekeeper columns marked "[none]" because the document contains neither. A reader working from the document as filed cannot reproduce the printed subtotals; Defendant's transcription recovers 77.8 of the stated 83.0 hours. Exhibit 2 is the compliance this exhibit permits, and the shortfall is the applicant's to cure.

**IV. The Hours Are Facially Excessive.**

Scott+Scott recorded 59.0 hours and seeks 48.9; the Zigler Law Group recorded 83.0 and seeks 59.25. That is 142.0 recorded and 108.15 sought for one notice, one proposed order, and a hearing lead counsel billed at 2.2 hours. *Loranger*, 10 F.3d at 782–83.

Four line items illustrate the problem. They comprise seven entries and 51.7 hours, carrying $46,507.50 against a request of $75,000.00: 12.0 hours at $775 for a

"…nner meeting with team, additional preparation for same"; 7.5 hours at $775 for a "…pt hearing and return travel afterward"; 20.5 hours at $975 across January 13, 14 and 15, each entry bearing the identical seven-word narrative "Prepare for Civil Contempt hearing"; and 11.7 hours at $975 across January 3 and 4 under the four-word narrative "Notice on Class Notice." (Doc. 710 at 27; Doc. 711-1.) Thirty-two and a half of those hours are preparation, in four entries the Court cannot break down, for a 2.2-hour hearing.

Nor are the recorded hours the product of billing judgment in the ordinary sense. The Zigler Law Group uses software that "passively monitors all of the activity on a user's system and contemporaneously records the duration of all of the activity." (Doc. 710 ¶¶ 28–30.) The difficulty is the audit: the declaration never explains how passively captured activity was reviewed for idle time or for two timekeepers on the same file, and never maps the reduction from 83.0 gross hours to the 59.25 sought. An applicant "must exclude … excessive, redundant, or otherwise unnecessary [hours]," and a record of everything is not a record of that exclusion. *Barnes*, 168 F.3d at 428. The award vacated there was infirm on grounds that included "excessive hours … claimed for drafting the complaint and the

briefs" and "hours … claimed for time that was not expended on the litigation." *Id.* at 426.

Doc. 658 at 9 authorizes fees accrued in responding to violations of Doc. 534 and Doc. 539. The production directive in Doc. 539 required Defendant to file the Discord notice with all commentary on it. That material reached the Court through filings the Court struck on January 16 for a capacity defect (Docs. 547-548, 549, 553, 558), and the Contempt Order rests on the stricken exhibit. (Doc. 658 at 4 n.3 (citing Doc. 548-1).) Plaintiffs moved for nothing to obtain it. What their records bill against that directive is three tenth-of-an-hour entries asking about its deadline, two describing the same communication with the same participants, one at $275 and one at $775. (Ex. 2 hereto, Part C, rows 68, 69, 165.)

Scott+Scott's records bear dates and timekeeper names, and as to that firm Defendant has complied with Local Rule 7.01(d) in full. Exhibit 3 hereto states his position on every entry, by day and by timekeeper, each narrative reproduced as filed and each objection keyed to a numbered ground. Of the 48.9 hours that firm seeks, Defendant objects to 45.7. The balance of 3.2 hours is the hearing appearance and review of the Order to Show Cause. One further entry, 1.20 hours at $975 on

January 12, 2026 for a "supplemental notice to the court regarding notice to the class," is objected to because Plaintiffs never filed such a notice. (Doc. 711-1.)

The Scott+Scott records do not match the period sworn for them. Mr. Masson swears they "document time expended during the period from December 28, 2025 through January 20, 2026." (Doc. 711 ¶ 12.) Exhibit A to that declaration runs past its own stated close, with three later entries totaling 3.0 hours: January 26 (1.0 hour, "review Telegram emssages to/from JK and class members") and January 27 (0.5 hours, "comms with para re ordering transcript"; 1.5 hours, "review transcript from Show Cause hearing"). Mr. Masson identifies what billing judgment removed, "7.9 hours of travel time, 1.7 hours of overlapping trial preparation time, and 0.5 hours of clerical entries" (id. ¶ 13), and 59.0 less 10.1 is the 48.9 sought. Only the 0.5-hour clerical entry falls within them; the remaining 2.5 hours, $1,562.50, were audited, retained, and sit inside the 48.9 though they postdate the sworn period. The Application also seeks fees for "reviewing the competing proposed orders," (Doc. 709 at 3), dated January 30, 2026, after both firms' records close.

## V. The Rates Are Refuted by Plaintiffs' Own Exhibit.

Local Rule 7.01(c)(4)(F) requires "evidence showing the reasonableness of the rates based on the prevailing market rate in the division in which the action is filed." The Eleventh Circuit requires the same: the "'relevant market' … is 'the place where the case is filed,'" and "[i]f a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Barnes*, 168 F.3d at 437. Plaintiffs make no such showing. Florida counsel of record appears on the Application itself, and no hours are sought for him. (Doc. 709 at 19.) *Barnes* vacated an award of $239,677.14 as an abuse of discretion on six grounds, among them that "non-local rates were claimed for some New York attorneys when local attorneys were available to do the work" and that "travel expenses were claimed in connection with unnecessary work done by New York attorneys." *Id.* at 426.

That leaves the Orlando market, and Plaintiffs proved Defendant's case on it. At page 19 of the Real Rate Report they filed as Exhibit 711-12, reproduced as Exhibit 1 hereto, an Orlando litigation partner (n=29) shows a median of $480, a third quartile of $551, and a 2024 mean of $482; an Orlando litigation associate (n=25) shows a median of $363, a third quartile of $389, and a mean of $333.

| Timekeeper | Rate sought | Orlando 3d quartile | Orlando mean |
|---|---|---|---|
| Zigler (partner) | $1,000 | $551 (1.81x) | $482 (2.07x) |
| Masson (partner) | $975 | $551 (1.77x) | $482 (2.02x) |
| McCormack (attorney) | $775 | $551 (1.41x) | $482 (1.61x) |
| Chadwick (associate) | $625 | $389 (1.61x) | $333 (1.88x) |

Plaintiffs cite that same report at page 13 of the Application, for its national mean of $803. The four orders they attach adjudicate no hourly rate: the word “hourly” appears in none of them. (Docs. 711-4, 711-6, 711-8, 711-10.) The rates live instead in the supporting declarations, and those disclaim the premise. Two state that the rates “reflect the amounts that I believe the designated timekeeper could secure if paid on an hourly basis.” (Doc. 711-7.) None mentions Orlando, or any geographic market. (Docs. 711-3, 711-5, 711-7, 711-9.) The rest is national or non-local: two national surveys, a “locality-adjusted Laffey Matrix” built for the District of Columbia, a peer-rate table drawn from California, Texas, New York and Maryland, and each lead counsel’s own out-of-district rate. (Doc. 709 at 11–13; Doc. 710 ¶ 41; Doc. 711 ¶ 29.) None of it supplies an Orlando market rate, meaning a rate actually billed and paid here for comparable work.

Two of the specific claims Plaintiffs draw from those exhibits are not in them. Mr. Masson swears that his “$975 per hour is … squarely within the middle of the M.D. Fla. PSLRA securities class action partner rate range of $800 to $1,425

per hour" that Judge Corrigan "found 'fair and reasonable'" in *Lemen v. Redwire Corp.*, No. 3:21-cv-01254-TJC-PDB, ECF No. 221, ¶¶ 4-5(g). (Doc. 711 ¶ 8.) That order is Doc. 711-6. It awards "30% of the Settlement Fund" and finds "these sums" fair and reasonable. It states no hourly rate, names no timekeeper, and reports no lodestar. The range attributed to a judge of this Court appears nowhere in his order. It appears only in counsel's own exhibit.

The benchmark also fails on its own terms. These fees were not incurred litigating a securities class action. They were incurred on a notice dispute and a fifty-eight-minute contempt hearing, and the inquiry is "the rate charged by attorneys with similar skills in similar cases." *Barnes*, 168 F.3d at 437.

Second, Plaintiffs offer Exhibit C as containing "a partner billed at $975 per hour and an associate billed at $625 per hour, the same rates requested for Mr. Masson and Ms. Chadwick here." (Doc. 709 at 11; Doc. 711 ¶ 20.) The exhibit's only $975 partner is carried at 14.60 hours for $6,337.50. (Doc. 711-3.) At $975 those hours are $14,235.00, and $6,337.50 is 6.5 hours. Of the sixteen rows in that schedule, fourteen multiply exactly and one more is off by fifty cents. The two timekeepers on which the asserted match rests are 23.2 of the exhibit's 2,723.23 hours.

Third, and on Plaintiffs' own designation of the controlling comparator, Mr. Masson swears that his "$975 rate also matches exactly the partner rate submitted without objection by Levi & Korsinsky, LLP and subsequently approved in *Edge v. Tupperware Brands Corp.*, No. 6:22-cv-01518-LHP, ECF No. 191-3 (M.D. Fla. Apr. 7, 2026), a contemporaneous Orlando Division securities class action." (Doc. 711 ¶ 8.) That order is Doc. 711-8, and it adjudicated no hourly rate. It awarded "$7,264,500.00, which represents one-third of the Amended Settlement." The $975 appears only in the counsel declaration at ECF No. 191-3, which the order nowhere adopts. What the order does state is the aggregate: "Plaintiffs' Counsel devoted over 12,197 hours, with a lodestar value of over $7,320,194.00, to achieve the Settlement." (Doc. 711-8 at 5.) Those figures are approximately $600 an hour, across every partner, associate and paralegal in the Orlando securities class action Plaintiffs themselves offer as the measure. They seek $975 and $1,000 here for a contempt hearing.

As for the declarants' own assurance that their rates are "consistent with … prevailing market rates in the Orlando Division" (Doc. 710 ¶¶ 25–26), the Eleventh Circuit has addressed that form of proof. "Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work," and "necessarily

must speak to rates actually billed and paid in similar lawsuits"; "[t]estimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). *Blum v. Stenson*, which Plaintiffs cite at page 16 of the Application, requires evidence "in addition to the attorney's own affidavits." 465 U.S. 886, 895 n.11 (1984). Plaintiffs identify no rate actually billed and paid in an Orlando lawsuit.

Plaintiffs' answer is *Sheehan v. Big Lots, Inc.*, which they describe as "affirming a $950 hourly rate as part of sanctions under a court's inherent powers." (Doc. 709 at 10.) *Sheehan* is unpublished. No. 24-13354, 2025 U.S. App. LEXIS 22000, at *29 & n.7 (11th Cir. Aug. 27, 2025). Plaintiffs' own Real Rate Report supplies the only Orlando market data in this record, and what *Sheehan* approved is the measure of the difference: rates "approximately 25% higher than comparable counsel in the major legal markets in the Middle District of Florida," which "extenuating circumstances" made "modestly higher." *Id.* at *22. Those circumstances were specific: counsel had defended the same client against earlier suits by the same plaintiff "involving the same product," on a record with detailed time entries, an outside expert's rate opinion, and proof of actual payment. *Id.* at *16–17, *30. Plaintiffs seek roughly 80% above the Orlando third quartile on

general subject-matter difficulty, records without dates or timekeepers, no independent rate opinion, and no rate ever paid. A 25% premium called modest is not authority for one more than three times its size.

Three weeks ago a court in this District declined to extend *Sheehan* for exactly that reason, calling it "helpful insofar as the Court's recommendation here is still above market rates for Ocala, but it does not go as far as the Plaintiff seeks because there are differences in the litigation. Specifically, the much higher-than-average market rates awarded in Big Lots were sought by a firm out of Los Angeles (among other differences) to defend a national class action consumer products liability case." *Signature Flight Support LLC v. Cella*, No. 5:25-cv-469-GAP-PRL, 2026 U.S. Dist. LEXIS 173270, at *11 (M.D. Fla. Aug. 4, 2026), *adopted*, 2026 U.S. Dist. LEXIS 186973 (M.D. Fla. Aug. 20, 2026). The court cut every requested rate: $545 to $500 for a lawyer admitted in 2009, $850 to $675 for one admitted in 2001, and a paralegal from $260 to $150. *Id.* at *9. Mr. Masson was admitted in 2009 and seeks $975. (Doc. 711 ¶ 3.)

The totals belong beside each other. Signature Flight was a Lanham Act case carried from a temporary restraining order through a final default judgment and permanent injunction. The court found 137.8 hours reasonable for all of it and

awarded $60,717.50. (2026 U.S. Dist. LEXIS 173270, at *6–7, *11.) Plaintiffs seek 108.15 hours and $75,000.00 for responding to an order to show cause and appearing at a hearing that lasted fifty-eight minutes. Their reduction does not close the distance: crediting every claimed dollar of expense, $75,000.00 leaves $70,660.59 in fees (Doc. 711 ¶ 30), or $653.36 per hour across all 108.15 hours, still above the third-quartile rate for an Orlando litigation partner.

**VI. The Expenses Are Not Documented as Local Rule 7.01(c)(5) Requires.**

For a disputed non-taxable expense the rule asks for "a receipt for, or other evidence of, the expense." Scott+Scott filed a page of a corporate card statement. (Doc. 711-2.) That page shows charges; it does not show that any charge was reasonably and necessarily incurred in responding to the contempt. No receipt or trip record was filed for any of the four rideshare charges making up the $191.37, and the page shows charges unrelated to this matter alongside those claimed. The Zigler Law Group filed less. Mr. Zigler swears that "[a]ll expense entries were verified against the credit card invoices." (Doc. 710 ¶ 38.) Those invoices were not filed; Exhibit B is a six-line summary. (Doc. 710 at 29.)

The amounts invite the comparison. The Zigler Law Group seeks $2,960.20 for two travelers, and Scott+Scott $1,379.21 for one. (Doc. 710 ¶¶ 38–39; Doc. 711

¶¶ 17–18.) Those two sums are the whole of the expense request, and they bought three lawyers at a hearing that ran from 1:03 p.m. to 2:01 p.m. (Doc. 569 at 1.) Only one of the three spoke. Mr. Masson introduced "my cocounsel, Aaron Zigler and Kevin McCormack" (id. at 2–3); neither is recorded saying anything else. Of the Zigler Law Group's total, $1,418.20 is airfare for the two lawyers who did not speak. (Doc. 710 ¶ 39.) The $444.01 Zigler meal charge was halved as billing judgment, with no receipt, date, or number of diners given, so neither half can be tested. And Mr. Zigler swears the firm "no-charged or half-charged all of its travel time" (Doc. 710 ¶ 34), while Exhibit A carries a 7.5-hour entry at $775 block-billing a "…pt hearing and return travel afterward" with nothing to show how the reduction was applied.

**VII. On This Record the Reasonable Award Is Nothing.**

The conduct found produced no exclusion from the class. Finding 1 rests on an intent "to encourage Class Members to opt out." (Doc. 658 at 7.) The opt-out period closed on February 10, 2026, and Angeion's declarant attested that it had "received no requests to opt out of the Certified Class." Plaintiffs so reported. (Doc. 606 at 1; Doc. 606-1 ¶¶ 2–3.) The only request for exclusion in this case was filed by an interested party on October 10, 2025, seventy-nine days before the December

28 posting, and denied without prejudice a week later. (Docs. 525, 526.) None followed the posting. Plaintiffs nonetheless seek 108.15 hours.

The Eleventh Circuit has twice noted, without disapproval, that "a district court may, in its discretion, deny a request for attorney's fees in its entirety when the request is outrageously unreasonable." *Loranger*, 10 F.3d at 782 n.8; *Andrews*, 122 F.3d at 1375. Defendant presses it. "The court's discretion to determine the amount may in an appropriate case approach zero as a limit." *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980). *Andrews* declined to apply the rule where the hours had been found reasonable and only 10% were challenged. 122 F.3d at 1375. Neither condition is present.

The two firms stand differently. As to Scott+Scott the reduction categories are closed and the retained 48.9 hours can be reconstructed to the entry; Defendant objects to 45.7 of them on the grounds in Exhibit 3 and disputes the rates applied to all 48.9. Should the Eleventh Circuit sustain the Contempt Order in No. 26-12606, his objection to the remaining 3.2 hours is to the rates alone. As to the Zigler Law Group none of that is possible: Plaintiffs have not identified which entries, or what fractions of them, make up the 59.25 hours sought. Nor do Plaintiffs say which entries their 19.7% reduction to $75,000.00 abandons, which timekeepers it

affects, or which firm absorbs it, so an across-the-board cut cannot be assumed to have removed the six categories Doc. 709 at 3 disclaims. The lodestar comes from the records before the Court, *Hensley*, 461 U.S. at 433, not from a round number the applicant declines to tie to the entries. Plaintiffs bore the burden of showing which fees were caused, at what rate, and by whom, and on this record they have not carried it.

## CONCLUSION

Defendant respectfully requests that the Court (1) deny the Application in full, both because it was filed without the conferral Local Rules 3.01(g) and 7.01(c) require and because Plaintiffs have failed to establish a recoverable lodestar on the record presented; and (2) alternatively, limit any award to the 3.2 hours identified in Part IV, valued at the Orlando rates in Plaintiffs' own exhibit, or $1,601.20, plus the travel expenses documented for the one lawyer who appeared and argued, which are the $1,379.21 sought for him less the $191.37 in rideshare charges filed without a receipt, or $1,187.84, for a total of $2,789.04, with any amount awarded on any of the foregoing deposited into the Court's registry rather than paid over and execution stayed pending Eleventh Circuit No. 26-12606, as requested in Defendant's separately filed motion. All rights are reserved on appeal.

Dated: August 26, 2026

Respectfully submitted,

/s/ James L. Koutoulas
James L. Koutoulas, Esq.
Pro se
10 N. Dearborn St., Suite 400
Chicago, IL 60602
(312) 836-1180
james@koutoulaslaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ James L. Koutoulas
James L. Koutoulas, Esq.
Pro se
10 N. Dearborn St., Suite 400
Chicago, IL 60602
(312) 836-1180
james@koutoulaslaw.com