**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ERIC DE FORD, et al., | Case No. 6:22-cv-652-PGB-DCI |
| Plaintiffs, | CLASS ACTION |
| v. | |
| JAMES KOUTOULAS, et al., | |
| Defendants. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO KOUTOULAS'S CORRECTED MOTION FOR AN EVIDENTIARY HEARING UNDER RULE 55(b)(2) (DOC. 737)**

Rule 55(b)(2) permits a hearing when the Court "needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). Koutoulas asks for more: an eleven-part disclosure order, a separate round of written briefing, and a hearing at which he may contest who bought, from whom, which token, which class members exist, and whether he answers for purchases made in a pool he promoted. (Doc. 737 at 6–7, 10–18, 21.) Those are liability questions. His default answered them. (Docs. 682 at 21, 688.)

The Court should grant the motion to the extent the Court finds an evidentiary hearing on the amount of the Count I rescission award appropriate,

and deny the rest. The Court has already noticed a December 4 status conference to set damages proceedings on the companion default against LGBCoin, LTD. (Docs. 751, 752.) Plaintiffs ask the Court to set the Count I schedule at the same conference: Plaintiffs' motion for entry of final judgment with a complete computation, Koutoulas's response under the Local Rules, and if necessary or helpful to the Court, an evidentiary hearing limited to amount. That is the procedure Rule 55(b)(2) prescribes, and it requires no special order.

## ARGUMENT

### I. Any Hearing Fixes the Amount of an Established Liability; It Does Not Retry Liability.

#### A. The Default Admits Seller Status and Classwide Liability for Rescission.

A defaulted defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). Koutoulas's own authority agrees: "After a default, the defendant cannot contest the plaintiff's factual allegations." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1382–83 (11th Cir. 2024).

The admitted facts settle the questions Koutoulas wants the hearing to reopen. The complaint pleads that Koutoulas is a statutory seller "because he or his agents solicited Plaintiffs' investments in LGBCoin, including on social media," and that, as a result of his unregistered sales, "Plaintiffs and Class members suffered damages." (Doc. 245 ¶¶ 379, 381.) It pleads that claim on behalf of every purchaser in the class period. (Id. ¶ 18.) The Court certified that class on Count I and identified whether Koutoulas "offered or sold LGBCoin" as a question common to the class. (Doc. 455 at 14–15, 32.)

Koutoulas nonetheless asks the Court to order Plaintiffs to state "the persons to whom each included transaction is attributed and the basis for attributing any of them to Defendant." (Doc. 737 at 6; see id. at 10–11.) That is a demand to re-prove seller status purchase by purchase. The default foreclosed it. The hearing should measure what class members paid, not relitigate whether Koutoulas sold to them.

**B. The Measure Is What Purchasers Paid, Not What Koutoulas Kept.**

Section 12(a)(1) entitles the purchaser "to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security." 15 U.S.C. § 77l(a). If the purchaser has sold, the measure is "a return of the consideration paid, reduced by the amount

realized when he sold the security and by any 'income received' on the security." *Randall v. Loftsgaarden*, 478 U.S. 647, 655–56 (1986) (quoting 15 U.S.C. § 77l).

Every comparison in the motion runs from the seller's side. Koutoulas contrasts the class figure with the $1.6 million the complaint says he received (Doc. 245 ¶ 242), with the $4.1 million the expert attributes to all insiders, and with the share of insider profit attributed to him rather than to "Other Insiders." (Doc. 737 at 8, 10.) Those numbers measure what sellers took out. Rescission returns what purchasers put in. The statute gives the purchaser the full consideration paid; it does not shrink that recovery according to how the seller's proceeds were divided. The reconciliation he questions, between liquidity-pool profit and swap profit in Koutoulas's own wallets (Doc. 737 at 10), concerns the same irrelevant quantity.

Nor does the complaint understate the scale. It pleads that LGBCoin reached "a market value of more than $570 million" on January 1, 2022, and that four days later "[i]nsiders sold and the value of LGBCoin fell to zero." (Doc. 245 ¶¶ 16–17.) Koutoulas admitted both facts by default. Plaintiffs addressed his Rule 54(c) argument in their opposition to Doc. 733. (Pls.' Opp'n to Doc. 733, Part III.C.)

### C. The Membership and Token-Identity Arguments Repeat Doc. 733.

Much of pages 13 through 18 of the motion restates Koutoulas's renewed decertification motion: the timing and content of the named Plaintiffs' certifications, Bader's website printout, and an archived capture of lgbcoin.com, a domain the complaint never mentions, describing a "$LGBC" token. (Compare Doc. 737 at 13–18, and Doc. 737-11, with Doc. 733 at 8–10, 16–20.) Plaintiffs answered those arguments in their opposition to Doc. 733 and will not repeat that response here. Four points bear on the scope of the hearing.

First, the class population is fixed. Notice issued under the Court's plan, the exclusion period closed, and the administrator received no requests for exclusion. (Docs. 534 at 12–13, 606, 606-1 ¶ 3.) Whether the period closed on February 10 or February 11, it closed with no opt-outs; the administrator reported none received through March 26, 2026. (Doc. 606-1 ¶ 3.) Second, the token is pleaded and admitted. The complaint identifies the "LGBCoin Contract" by its address, and the class claim runs to purchases of that token. (Doc. 245 ¶¶ 94, 359.) Third, the named Plaintiffs' certifications have nothing to do with the class award. They serve the PSLRA's requirement for a plaintiff "seeking to serve as a representative party." 15 U.S.C. § 77z-1(a)(2)(A). They do not measure the damages of thousands of other class members. The computation comes from

transaction records, not from three schedules. Fourth, the denomination of De Ford's single sale in stETH and of Bader's ETH-denominated purchases (Doc. 320-3 at 3, 5) goes to the conversion of individual entries, which the computation will reconcile to the transaction records.

## II. The Computation Is Arithmetic on Transaction Records, and Its Method Is Already of Record.

Koutoulas says the record cannot supply the four inputs of the rescissory measure: consideration paid, income received, tender or amount realized, and interest. (Doc. 737 at 9.) The method for supplying them is already of record. Plaintiffs' expert extracted every swap and liquidity event in the LGB-WETH pool from November 2, 2021 to March 15, 2022, valued each transaction at the WETH price prevailing when it occurred, and produced the per-address transaction files. (Doc. 488-3 ¶¶ 15, 17–19.) Class-member addresses spent approximately 15,342.374 WETH to buy LGBCoin and recouped approximately 9,433.430 WETH on later sales. (Id. ¶ 33.) That is consideration paid less amount realized, which is the *Randall* formula, and the declaration computes it address by address in per-wallet totals. (Id. ¶¶ 18, 45–48.) Holders recover the consideration paid upon tender, and the claims procedure will provide for tender. Koutoulas

lists "income received" as an input but identifies no income any purchaser received. Interest is for the Court.

A sum derived this way is "capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985). Fixing the amount on default "by computation from facts of record" is "a familiar practice and an exercise of judicial power." *Pope v. United States*, 323 U.S. 1, 12 (1944).

*SEC v. Smyth* shows how narrow any hearing's work is. The disgorgement figure in *Smyth* was "only 'a reasonable approximation of the losses avoided by Johns,'" built on an assumed baseline stock price, and "none of the evidence [the defendant] sought to present was before the district court." 420 F.3d 1225, 1231–32 & n.13 (11th Cir. 2005). Here no baseline price is assumed. Each pool purchase and sale is recorded on the blockchain, and the declaration already describes the transaction-level files that support it. (Doc. 488-3 ¶ 18.) Those files will be filed with Plaintiffs' motion, and purchases outside the pool will be computed from exchange and counterparty records by the same formula.

Koutoulas's objection that the data identifies addresses rather than persons (Doc. 737 at 9–12) confuses the amount of the judgment with its distribution. In a

class judgment, the defendant's liability is fixed in the aggregate, and members "can obtain their share of the recovery simply by proving their individual claims against the judgment fund." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980). Once that liability is quantified, the defendant "has no interest in any part of the fund." Id. at 481–82. Matching a person to an address is a claims-administration step, accomplished through "claims forms verified by transaction records." *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1370 (11th Cir. 2021). And Koutoulas is poorly placed to complain that addresses lack names. The Court deemed unopposed, and sanctioned, Plaintiffs' showing that he "hid cryptocurrency wallets" and "concealed class members' identities," information he was required to disclose under Rule 26 and after a motion to compel, and that identifies the class members to be notified and paid. (Doc. 682 at 13–15.)

**III. The Court Should Decline the Special Disclosure Order and the Extra Round of Briefing.**

Rule 55(b)(2) gives a party that has appeared one procedural entitlement: written notice of the application "at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2). The Local Rules give him a response to Plaintiffs' motion. Koutoulas wants a court-ordered disclosure, a further written response, and then a hearing. (Doc. 737 at 6–7, 21.) The Rules do not provide that sequence, and the Court has

already struck post-default filings by Koutoulas that the Rules do not authorize. (Doc. 724.)

An ordinary motion will give Koutoulas everything Rule 55(b)(2) contemplates. Plaintiffs' motion for entry of final judgment against Koutoulas will state (1) Count I, the statutory measure, and Plaintiffs' election of the Count I recovery for the class, with no duplicative recovery on any other count; (2) a declaration applying the methodology already disclosed in Doc. 488-3 to each class purchase, identifying the pool and token contract addresses, with the underlying data; (3) the treatment of sales proceeds, liquidity-provider transactions, and acquisitions of the relaunched token; (4) the rate and period of the interest that § 77l(a) makes part of the consideration recoverable; (5) a single-satisfaction mechanism for any recovery from LGBCoin, LTD; and (6) a proposed claims and distribution procedure. Koutoulas may respond to all of it.

The Court should deny the parts of the requested disclosure that reopen liability: the "basis for attributing" transactions to Koutoulas, a fresh account of the "notice and exclusion record," and an "allocation of any amount sought against this Defendant as distinct from any other person." (Doc. 737 at 6–7.) The default and the certification order resolved the first and third: Koutoulas

admitted that he solicited the purchases of "Plaintiffs and Class members" (Doc. 245 ¶ 379) and the Court certified whether he "offered or sold LGBCoin" as a question common to the Class. (Doc. 455 at 14–15.) The docket resolves the second. Any credit for recovery from LGBCoin, LTD will be addressed through the single-satisfaction mechanism described above.

Koutoulas's "preservation" section changes nothing. *Giovanno v. Fabec* declined to reach a setoff argument because the defendant "did not raise that issue in his response to the plaintiffs' motion for a default judgment." 804 F.3d 1361, 1366 n.6 (11th Cir. 2015). Koutoulas will have that response. A list of objections in a scheduling motion preserves only what he later argues. His Doc. 714 positions are briefed separately. (Doc. 755.)

**IV. No Jury Right Survives the Default.**

Koutoulas "preserves any federal statutory right to a jury trial that Rule 55(b)(2) preserves." (Doc. 737 at 20.) He identifies no statute. Rule 55(b)(2) preserves only a "federal statutory right to a jury trial." Fed. R. Civ. P. 55(b)(2). Absent such a statute, a defaulted defendant has no right to a jury trial after default. *In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("[I]n a default case

neither the plaintiff nor the defendant has a constitutional right to a jury trial on the issue of damages." (quotation omitted)).

## CONCLUSION

The Court should grant Doc. 737 in part and set an evidentiary hearing on the amount of the Count I award against Koutoulas, to follow Plaintiffs' motion for entry of final judgment and Koutoulas's response, on a schedule set at the December 4, 2026 status conference, if it believes one is necessary. The Court should deny the motion in all other respects, including the requested disclosure order, the additional round of written briefing, any jury determination of amount, and any reopening of liability, seller status, class membership, or certification.

Dated: November 23, 2026

Respectfully submitted,

/s/ Aaron M. Zigler

Aaron M. Zigler (admitted pro hac vice)
Nidya S. Gutierrez (admitted pro hac vice)
Lawrence V. Ashe (FL Bar 932280)
Kevin McCormack (admitted pro hac vice)
ZIGLER LAW GROUP, LLC
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312-673-8427
aaron@ziglerlawgroup.com

nidya@ziglerlawgroup.com
larry@ziglerlawgroup.com
kevin@ziglerlawgroup.com

John T. Jasnoch (admitted pro hac vice)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
jjasnoch@scott-scott.com

Sean T. Masson (admitted pro hac vice)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: 212-223-6444
smasson@scott-scott.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 23, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s/ Aaron M. Zigler