**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ERIC DE FORD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES KOUTOULAS, et al.,<br><br>Defendants. | Case No. 6:22-cv-652-PGB-DCI<br><br>CLASS ACTION |

**PLAINTIFFS' OPPOSITION TO DEFENDANT JAMES KOUTOULAS'S RENEWED MOTION TO ALTER OR AMEND CLASS CERTIFICATION (DOC. 733)**

This is Defendant Koutoulas's latest attempt to undo the Court's March 28, 2025 order certifying a class on Plaintiffs' Section 12(a)(1) claim. He opposed certification. (Doc. 403.) He moved for reconsideration, and the Court denied that motion. (Docs. 457, 459.) He sought permission from the Eleventh Circuit to appeal under Rule 23(f), and that court denied the petition.[1] He moved to decertify the Class, and the Court denied that motion as well. (Docs. 490; 515 at 6–7.) On August 4, 2026, the Court directed entry of default judgment as a sanction for what it described as a "multi-year campaign of vexatious litigation designed to delay these

[1] Order, *Koutoulas v. De Ford*, No. 25-90007 (11th Cir. May 2, 2025).

proceedings and increase the cost of litigation." (Doc. 682 at 21; Doc. 688.) Twenty days later, he filed this "renewed" motion. (Doc. 733 (the "Motion").)

The Motion fails for the same reason the last one did. Nothing material has changed. The deposition testimony, transaction schedules, website capture, and expert declarations Koutoulas relies on all predate either the certification order or his first decertification motion. The summary judgment ruling he cites did not change the elements of the certified claim or the common questions the Court identified at certification. The only real development is the default judgment, and it defeats the Motion. The default admitted the well-pleaded allegations that Koutoulas offered and sold LGBCoin and that he or his agents solicited purchases, including on social media. The factual questions Koutoulas now says require purchase-by-purchase proof are merits questions, and the default resolved them. The out-of-circuit decision he relies on says that a defaulting defendant loses certification challenges that depend on factual issues it could have contested had it not defaulted.

What remains is the amount of relief. Section 12 prescribes rescission, and the rescissory amount for each purchase can be calculated from transaction records, as Plaintiffs established at certification. Koutoulas's objections to Plaintiffs'

draft computation belong in the damages proceeding. They are not a reason to decertify a class after notice has issued, the opt-out period has closed, and judgment on liability has been entered.

## BACKGROUND

On March 28, 2025, the Court certified a Rule 23(b)(3) class of "[a]ll persons who, between November 2, 2021, and March 15, 2022, purchased LGBCoin," limited to Plaintiffs' Section 12(a)(1) claim against Koutoulas. (Doc. 455 at 32.) The Court identified as common questions "whether LGBCoin is a security; whether LGBCoin was registered as a security; and whether Defendant Koutoulas offered or sold LGBCoin." (*Id.* at 14–15.) It held that the elements of the claim "do not raise any individualized inquiries," so "the same evidence will suffice for each [class] member." (*Id.* at 24.) In rejecting Koutoulas's adequacy argument, it also adopted the reasoning that, because the *Howey* test is objective, whether the asset is a security "will be the same for all class members, regardless of each member's individual expectations." (*Id.* at 20–21 (quoting *Zakinov v. Ripple Labs, Inc.*, No. 18-cv-06753-PJH, 2023 WL 4303644, at *3–4 (N.D. Cal. June 30, 2023)).) Koutoulas did not address typicality, and Defendants did not dispute predominance. (*Id.* at 16, 23.) The Court cautioned defense counsel against "throwing every argument at the wall" and recycling arguments it had already addressed. (*Id.* at 5 n.4.)

Koutoulas then challenged the order three more times. The Court denied reconsideration because Defendants did not "explain how the Court clearly erred" or "present any discussion as to the Court's analysis or application of Rule 23," and instead rehashed their argument that LGBCoin is not a security. (Doc. 459 at 3.) The Eleventh Circuit declined to hear an interlocutory appeal. And the Court denied Defendants' first decertification motion, finding no "materially changed or clarified circumstances" and noting that Defendants relied on "evidence that Defendants have been aware of throughout this litigation." (Doc. 515 at 7.)

In December 2025, the Court approved a class notice plan and directed that notice issue. (Doc. 534.) Koutoulas posted the summary notice on the LGBCoin Discord and Telegram channels with commentary of his own. The Court held him in civil contempt, finding that he had "intentionally deviat[ed] from the Order to disparage the Court, undermine the legitimacy of the Plaintiff's case, and to encourage Class Members to opt out." (Doc. 658 at 7.) The opt-out period has closed. (Doc. 606.)

On August 4, 2026, the Court granted Plaintiffs' motion for sanctions, found that Koutoulas's conduct "was egregious and was undertaken in bad faith," and directed entry of default judgment against him on the Third Amended Complaint.

(Doc. 682 at 1, 21.) The Clerk entered judgment the next day. (Doc. 688.) Plaintiffs moved for sanctions in part because Koutoulas failed to disclose cryptocurrency wallet addresses used for LGBCoin transactions, the identities of class members, and his communications with purchasers of LGBCoin. (Doc. 682 at 13–15.) The Court found that his "conclusory, unsupported, and misleading responses" rendered unopposed Plaintiffs' assertions that he "hid cryptocurrency wallets, concealed class members' identities, failed to preserve evidence, and improperly communicated with class members," and that "[t]hese discovery violations warrant severe sanctions under Rule 37, including entry of default judgment." (*Id.* at 15.) The Court has since recognized that "there are no longer any claims remaining against Defendant James Koutoulas," and it struck his post-default pretrial filings as "not permitted by the Federal Rules of Civil Procedure or the Local Rules." (Docs. 723, 724.) Koutoulas filed this Motion on August 24, 2026. The same day, he moved for an evidentiary hearing under Federal Rule of Civil Procedure 55(b)(2). (Doc. 737.)

## ARGUMENT

### I. NOTHING HAS MATERIALLY CHANGED SINCE THE COURT CERTIFIED THE CLASS AND DENIED DECERTIFICATION

An order granting class certification "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). But "there must be some development or change in circumstances to merit revisiting a class certification decision," and "[i]n the absence of materially changed or clarified circumstances . . . courts should not condone a series of rearguments on the class issues . . . in the guise of motions to reconsider the class ruling." (Doc. 515 at 7 (quoting *In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 133 (S.D.N.Y. 2009), and *Washington v. Vogel*, 158 F.R.D. 689, 692–93 (M.D. Fla. 1994)).) A renewed request also cannot be used to "relitigate old matters, raise argument or present evidence that could have been raised" earlier. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (quotation omitted); (Doc. 459 at 3). As the Eighth Circuit put it in affirming the denial of decertification, "[w]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 832 (8th Cir. 2016) (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)).

Koutoulas accepts that standard and points to four developments he says postdate Doc. 515: the summary judgment ruling, the order denying reconsideration of it, Plaintiffs' draft pretrial statements, and the default judgment. (Motion at 6.) The default is addressed in Part II. None of the others is a material change. Koutoulas does not claim that the depositions, schedules, or declarations are new. He argues that they "show what those later developments now require." (*Id*. at 7.) They do not.

Start with the evidence. Every deposition excerpt Koutoulas attaches was taken before the Court certified the Class: Bader on September 6, 2024, De Ford on September 10, 2024, and Key on December 12, 2024. (Docs. 733-3, 733-4, 733-5.) The Court extended Defendants' deadline to oppose certification so that they could depose Plaintiffs (Doc. 459 at 2 n.2), and Defendants deposed Key in December 2024, more than three months before the certification order (Doc. 733-5 at 2). The transaction schedules Koutoulas relies on were filed in July 2023. (Doc. 320-3.) The website capture Bader produced was printed in December 2022. (Doc. 733-6.) The Hakala and Long declarations were filed with the certification motion, and the damages declaration he quotes was filed in June 2025, before his first decertification motion. (Docs. 374, 375, 488-3.) The Court has already held that

"evidence that Defendants have been aware of throughout this litigation" does not justify revisiting certification. (Doc. 515 at 7.)

The summary judgment rulings do not change the analysis either. Koutoulas reads Doc. 531 to require the Court to identify, for each purchase, "which dated, source-attributed promotional record governs each offer and sale." (Motion at 4.) The Court did not hold that. As Koutoulas acknowledges, the Court applied an objective test that looks to "the motivations of a hypothetical reasonable purchaser" and asks whether the promotional materials would lead "a reasonable purchaser to expect a profit." (*Id.* (quoting Doc. 531 at 24).) At certification, the Court identified whether LGBCoin is a security as a common question (Doc. 455 at 14–15) and found that the elements of the claim "do not raise any individualized inquiries" (id. at 24). Doc. 531 did not change that. It looked to "both the motivations of the purchasers and the promotional materials associated with the offer and sale at issue," and asked whether those materials would "objectively lead a 'hypothetical reasonable purchaser' to expect profits." (Doc. 531 at 23, 25 (quoting *Fedance v. Harris*, 1 F.4th 1278, 1288 (11th Cir. 2021)).) The Court also stated that whether Koutoulas is a statutory seller "is to be addressed by the jury when it considers whether LGBCoin is a security." (Motion at 12 (quoting Doc. 531

at 27 n.10).) That is a classwide question, decided once for every member. Koutoulas twice moved for reconsideration of the summary judgment ruling, and the Court denied both motions. (Docs. 535, 565, 624, 672.) He waited almost nine months after Doc. 531 to argue that it changed the certification analysis.

Nor are Plaintiffs' draft pretrial statements a change in circumstances. The revised draft seeks the statutory rescissory amount and will serve a computation. (Doc. 733-2 § VI.A.) That is the remedy Plaintiffs identified when they moved for certification: Section 12 provides for rescission, and the rescissory amount can be calculated for each class member from transaction data. (Doc. 373 at 4, 18–19; Doc. 375 ¶¶ 48–52.) Draft conferral papers do not alter the certification analysis, and disagreement over the amount of a computation is a damages question. *See* Part III.C, *infra*.

Finally, the arguments themselves are old or could have been raised long ago. At certification, Defendants did not dispute predominance, and Koutoulas did not address typicality. (Doc. 455 at 16, 23.) Koutoulas acknowledges as much. (Motion at 7.) When Defendants later called those findings "clearly erroneous," they did not "explain how the Court clearly erred." (Doc. 459 at 3 (quoting Doc. 457 at 5–6).) His argument that the representatives never transacted directly with

him (*id.* at 12–14) is the "no direct transactions" argument the Court rejected at certification (Doc. 455 at 6–7) and the privity argument it rejected at the motion-to-dismiss stage (*id.* at 9 (citing Doc. 229 at 37–39)). A "renewed" motion is not a vehicle to contest them now. *Wilchombe*, 555 F.3d at 957.

## II. THE DEFAULT JUDGMENT FORECLOSES THE MERITS ARGUMENTS ON WHICH THE MOTION DEPENDS

The one real change since Doc. 515 is the default judgment, and it works against Koutoulas. A default "admits well-pleaded factual allegations." (Doc. 750 at 11 (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975), and *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015)).) As the Court explained in entering default against LGBCoin, LTD, a defaulted party "may contest legal sufficiency and the amount and permissible scope of relief, but may not reopen the factual merits of well-pleaded allegations admitted by the default." (*Id.* at 12.) The Third Amended Complaint alleges that Koutoulas offered and sold LGBCoin, an unregistered security, to Plaintiffs and the Class, and that he or his agents solicited their purchases, including on social media. (Doc. 245 ¶¶ 369–81.) Those allegations are now established.

Most of the Motion asks the Court to reopen them. Koutoulas argues that Plaintiffs must prove, purchase by purchase, that he was each buyer's statutory

seller (Motion at 11–15); that the promotional materials differed by channel and phase (*id.* at 7–11); that the representatives saw different materials (*id.* at 8–9); and that Plaintiffs have not tied the liquidity pool they measured to the pleaded token contract (*id.* at 22–23). Each of these goes to whether Koutoulas is liable under Section 12(a)(1). The default answered that question. The Court has already treated the default as resolving the claims against Koutoulas for purposes of trial. (Docs. 723, 724.) Rule 23(c)(1)(C) is not a vehicle for relitigating liability that a defendant forfeited through his own misconduct.

Koutoulas's own authority makes the point. He relies on *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992), *abrogated on other grounds as recognized in White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334 (3d Cir. 2023), for the proposition that a defaulting defendant may still challenge certification. (Motion at 6.) But the passage he quotes says that the defendant loses that challenge "to the extent that it depends on the court's resolution of factual issues which defendants could have addressed at the scheduled hearings or in required filings had they not defaulted." (*Id.* (quoting *Hoxworth*, 980 F.2d at 923).) That describes this Motion. Which promotional materials class members saw, whether Koutoulas's solicitations succeeded, which pool supplied a given purchaser's tokens, and how the OTC

sales were conducted are factual questions Koutoulas could have tried. He gave up that opportunity through the conduct that led to the default. *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359 (11th Cir. 2021), does not help him. As he describes it, the defaulted defendant there opposed certification before the court ruled on it. (Motion at 6.) Here, the Court certified the Class more than sixteen months before the default, after Koutoulas had every opportunity to oppose.

Koutoulas's complaint that the record lacks transaction-level evidence of solicitation and OTC sales has a further problem: the missing evidence is evidence he withheld. The Court deemed unopposed Plaintiffs' assertions that Koutoulas hid wallets used for LGBCoin transactions, concealed class members' identities, and failed to disclose his communications with purchasers, and it found that those violations "warrant severe sanctions under Rule 37, including entry of default judgment." (Doc. 682 at 13–15.) Those purchasers include persons who bought from Koutoulas over the counter. (Doc. 614 at 16.) He cannot rely on gaps in the record that he created as a reason to decertify the Class.

## III. THE CERTIFICATION ORDER'S ANALYSIS REMAINS CORRECT

Even setting the default aside, the Motion fails on its own terms. Each of its arguments is answered by the certification order.

### A. Statutory-Seller Status and the *Howey* Inquiry Turn on Koutoulas's Conduct

The Court found that whether Koutoulas "offered or sold LGBCoin" is a common question. (Doc. 455 at 14–15.) That finding was correct. Section 12(a)(1) reaches purchasers in the secondary market, not only those who bought in an initial offering. (*Id.* at 6–7.) The solicitation alleged here was public promotion, including on social media. (Doc. 245 ¶ 379.) Whether that promotion amounted to solicitation depends on what Koutoulas said and did, and the evidence on that question is the same for every class member. The Eleventh Circuit has held that promoters who urged the public to buy through online videos could be statutory sellers under Section 12. *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346–47 (11th Cir. 2022). Koutoulas himself describes the channel in *Wildes* as "impersonal." (Motion at 12–13.)

Koutoulas's focus on the representatives' individual reasons for buying misses the point. De Ford's recollection of a marketing video, Bader's memory of the website, and Key's "fear of missing out" (*id.* at 8) describe what individual purchasers experienced. The *Howey* analysis is objective, as Koutoulas agrees. (Doc. 455 at 20–21 (adopting *Zakinov*'s reasoning that "the *Howey* test is an objective one"); Motion at 4.) And "Rule 23(b)(3) requires a showing that

questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Bader's website capture does not change this. It is a December 2022 printout of lgbcoin.com, not the LGBCoin.io site the complaint pleads. (Doc. 733-6; Doc. 245 ¶ 101.) Koutoulas asserts that an archived version of that page listed a different contract address and warned that "similar tokens may try to fool you." (Motion at 9–10.) That confirms the soundness of the class definition. Membership turns on "the objective, verifiable criterion of having purchased LGBCoin during the specific dates of the Class period." (Doc. 455 at 12; *see Rensel*, 2 F.4th at 1370.) LGBCoin is identified by its contract address, which Plaintiffs' expert identified when Plaintiffs moved for certification. (Doc. 375 ¶ 37; Doc. 373 at 2 n.1.) Someone who bought a different token is not a class member, and the blockchain record shows which token each purchaser bought.

**B. The Representatives Remain Typical**

Typicality requires a "sufficient nexus," which exists when "the claims or defenses of the class and the class representative[s] arise from the same event or pattern or practice and are based on the same legal theory." (Doc. 455 at 15 (quoting *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012)).) The

Court found that standard met because the representatives, like every class member, purchased LGBCoin and seek recovery under the same Section 12(a)(1) theory. (*Id.* at 16.) Koutoulas did not contest typicality then (*id.*), and his reconsideration motion did not explain how that finding was wrong (Doc. 459 at 3).

He now argues that no representative bought during the first fifty-seven or last sixteen days of the class period, and that the "phases" described in the complaint (OTC sales, the NASCAR announcement, the liquidity drain, and the relaunch) call for different proof. (Motion at 16–19.) A representative does not need to have bought on every day of the class period. A purchaser in November 2021 and a purchaser in February 2022 present the same questions: whether LGBCoin was a security, whether it was registered, and whether Koutoulas offered or sold it. Purchase timing bears on how much each member recovers, but the claim is the same. See *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("Differences in the amount of damages between the class representative and other class members does not affect typicality."). The "phases" Koutoulas describes are parts of the single course of conduct the complaint alleges and the default admits.

The OTC sales do not help him either. Koutoulas argues that purchasers who bought directly from him proceed under the title-passage branch of *Pinter*, which no representative shares. (*Id.* at 19.) Those purchasers have the most direct claims in the Class: Koutoulas sold them LGBCoin himself. Every representative suffered the injury that gives rise to the certified claim, which is the purchase of an unregistered security that Koutoulas offered or sold. *See Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (class claim may be asserted when at least one named plaintiff has suffered the injury that gives rise to it). And Koutoulas is poorly placed to complain about the record on OTC sales, having withheld the identities of those purchasers and his communications with them. (Doc. 614 at 16–18.)

His proposal to shorten the class period has its own problem. The admitted allegations are that Koutoulas received more than $1.6 million from his own LGBCoin sales between November 2021 and January 2022. (Doc. 245 ¶ 242.) Removing November 2 through December 28 from the class period would carve out much of the window in which he was selling. It would also remove class members who received notice and chose to remain in the Class. His alternative requests (to exclude purchases from February 28 through March 15, 2022, to create subclasses keyed to December 30, January 5, January 28, and February 22–24, and

to require Plaintiffs to identify the token and liquidity structure for each acquisition after February 22 (Motion at 20, 25)) rest on the same phase and pool arguments addressed above and should be denied for the same reasons.

### C. Rescission Can Be Calculated From Transaction Records

Section 12(a)(1) supplies its own remedy. A purchaser may recover "the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. § 77l(a). That measure is tied directly to the certified claim, which is what *Comcast* requires. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Plaintiffs showed at certification that the inputs come from transaction records: the amount paid for each purchase, converted to dollars using historical price data, in a method that "is not affected by the exchange used." (Doc. 375 ¶¶ 48–51; *see* Doc. 373 at 18–19.) Koutoulas did not challenge that showing or offer contrary expert evidence. (Doc. 455 at 12 n.10.)

Individual damages calculations do not defeat predominance unless computing them would be "so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239–40 (11th Cir. 2016) (quotation omitted). Applying a statutory formula to blockchain records is nowhere near that line. Koutoulas reads

*Brown* to say that individualized damages matter when they are "coupled with significant individualized questions of liability." (Motion at 24.) Liability has been established by default, so there are no individualized liability questions left.

The rest of Koutoulas's damages arguments go to the amount of relief. Whether the aggregate estimate in a draft pretrial statement is correct, whether liquidity transactions belong in the computation, and how sales and tenders are credited are questions for the damages determination. (*See id.* at 20–23.) So is his argument under Rule 54(c). (*Id.* at 23.) The same is true of his concern about absent class members' standing. The certification order noted that courts "must eventually ensure that no relief is granted to absent class members who might later turn out not to have standing." (Doc. 455 at 10.) That happens at the damages and claims stage, which is where this case now is. Koutoulas has already asked for an evidentiary hearing under Rule 55(b)(2), the rule that governs relief after default. (Docs. 736, 737.) Plaintiffs do not oppose an evidentiary hearing on the amount of damages (*see* Motion at 23), and that hearing is the proper place for his objections to the computation.

**D. Class Treatment Remains Superior**

The Court found class treatment superior because individual claims are too small to litigate separately, calling this case "a prototypical example of the benefits

of aggregate litigation." (Doc. 455 at 29.) Nothing about that has changed, except that notice has issued and the opt-out period has closed. (Docs. 534, 606.) Class members who received notice and remained in the Class did so in reliance on the certification order. Decertifying now would leave them without a practical remedy, which is the result Koutoulas tried to bring about with his notice commentary. (Doc. 658 at 6–7.) His request for an order requiring Plaintiffs to file a transaction-by-transaction "protocol" (Motion at 25) would reopen matters the default resolved and should be denied for the same reasons.

## CONCLUSION

This is Koutoulas's fourth challenge to class certification, and the first after a default judgment on liability. Plaintiffs respectfully request that the Court deny the Motion in its entirety.

Dated: November 23, 2026

Respectfully submitted,

s/ Aaron M. Zigler

Aaron M. Zigler (admitted *pro hac vice*)
Nidya S. Gutierrez (admitted *pro hac vice*)
Lawrence V. Ashe (FL Bar 932280)
Kevin McCormack (admitted *pro hac vice*)
**ZIGLER LAW GROUP, LLC**
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312-673-8427
aaron@ziglerlawgroup.com
nidya@ziglerlawgroup.com
larry@ziglerlawgroup.com
kevin@ziglerlawgroup.com

John T. Jasnoch (admitted *pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
jjasnoch@scott-scott.com

Sean T. Masson (admitted *pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: 212-223-6444
smasson@scott-scott.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 23, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s/ Aaron M. Zigler